# IN RE MOORE

## (JOHN MOORE DD9449)

# MOTION UNDER 28 U.S.C. §2244 FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SECOND OR SUCCESSIVE APPLICATION FOR RELIEF UNDER 28 U.S.C. § 2254 OR § 2255

PAE AO 241
(Rev. 05/2018

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## Petition for Relief from a Conviction or Sentence
## By a Person in State Custody
## (Petition Under <u>28 U.S.C. § 2254</u> for a Writ of Habeas Corpus)

## INSTRUCTIONS

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from conviction of the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Your habeas corpus petition must be filed within the 1-year statute of limitations time limit set forth in 28 U.S.C. § 2244(d)(1). (There are limited circumstances in which the petition may be amended, within the one-year time period, to add additional claims or facts, <u>see</u> Federal Rules of Civil Procedure 15; or amended after the one-year period expires, in order to clarify or amplify claims which were timely presented, <u>see United States v. Thomas</u>, 221 F. 3d 430 (3d Cir. 2000)).

4. Make sure the form is typed or neatly written.

5. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

6. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or argument, you must submit them in a separate memorandum.

7. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out an Application to Proceed in District Court without Prepaying Fees or Costs. **Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.**

8.  In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

9.  As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim must have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition. 28 U.S.C. § 2254(b)(2) provides that the federal court may deny your petition on the merits even if you have not exhausted your remedies.

10. As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that was presented in a prior habeas corpus petition.

11. As required by 28 U.S.C. § 2244(b)(2), a federal court must dismiss any claim in a second or successive habeas corpus petition that was not presented in a prior habeas corpus petition unless you show:

    (A) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable; or

    (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

    Before such a second or successive petition may be filed in the district court, however, the petitioner must move in the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B) above.

12. When you have completed this form, send the original and **these instructions** to the Clerk of the United States District Court at this address:

    **Clerk**
    **United States District Court**
    **for the Eastern District of Pennsylvania**
    **601 Market Street, Room 2609**
    **Philadelphia, PA 19106**

13. **CAUTION:** You must include in this petition all the grounds for relief from the conviction or sentence that you challenge and you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

14. **CAPITAL CASES:** If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

PAE AO 241
(Rev. 05/2018)

# PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of Pennsylvania |
|---|---|
| **Name (under which you were convicted):**  John Moore | **Docket or Case No.:**  CP-51-CR-0201061-1998 |
| **Place of Confinement:**  SCI Phoenix | **Prisoner No.:**  DD9449 |
| **Petitioner** (Include the name under which you were convicted):  John Moore | **Respondent** (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner):  Jamie Sorber |

**v.**

**and**

**The District Attorney of the County of:** Philadelphia

**and**

**The Attorney General of the State of:** Pennsylvania

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

    Philadelphia Court of Common Pleas

    (b) Criminal docket or case number (if you know): CP-51-CR-0201061-1998

2. (a) Date of judgment of conviction (if you know): May 9. 2000

    (b) Date of sentencing: May 9. 2000

3. Length of sentence: Life

4. In this case, were you convicted on more than one count or of more than one crime?  ☒ Yes  ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: _____

    Second degree murder; possession of an instrument of a crime; criminal conspiracy; robbery

PAE AO 241
(Rev. 05/2018)

Page 5

6.   (a) What was your plea? (Check one)

    ☒ (1)  Not Guilty     ☐ (3)  Nolo contendere (no contest)

    ☐ (2)  Guilty     ☐ (4)  Insanity plea

  (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

  (c) If you went to trial, what kind of trial did you have? (Check one)

    ☐ Jury     ☒ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ☐ Yes     ☒ No

8. Did you appeal from the judgment of conviction?

    ☒ Yes     ☐ No

9. If you did appeal, answer the following:

  (a) Name of court: Superior Court of Pennsylvania

  (b) Docket or case number (if you know): CP-51-CR-0201061-1998

  (c) Result: Denied

  (d) Date of result (if you know): July 17, 2001

  (e) Citation to the case (if you know): _____

  (f) Grounds raised: _____

  (g) Did you seek further review by a higher state court?

    ☒ Yes     ☐ No

PAE AO 241
(Rev. 05/2018)

If yes, answer the following:

(1) Name of court: _Supreme Court of Pennsylvania_____

(2) Docket or case number (if you know): _____

(3) Result: _Denied_____

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?

    ☐ Yes        ☐ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(i) Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

    ☒ Yes        ☐ No

10. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _Philadelphia Court of Common Pleas, Pennsylvania_
         ~~Superior Court, Pennsylvania Supreme Court~~

(2) Docket or case number (if you know): ____CP-51-CR-0201061-1998_____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _Post-Conviction Relief Act Petition_____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☒ No

(7) Result: _Denied_____

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _Philadelphia Court of Common Pleas_____

(2) Docket or case number (if you know): ___CP-51-CR-0201061-1998_____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _PCRA petition_____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☒ No

(7) Result: _Denied because first PCRA appeal was still pending thus depriving the court of jurisdiction_____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _Philadelphia Court of Common Pleas, Pennsylvania Superior Court, Pennsylvania Supreme Court_

(2) Docket or case number (if you know): ___CP-51-CR-0201061-1998_____

(3) Date of filing (if you know): ___May 17, 2005_____

(4) Nature of the proceeding: _Third PCRA_____

(5) Grounds raised: _____

Ineffective assistance of counsel and newly-discovered evidence of innocence_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result: ___Denied_____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

| | | | | |
|---|---|---|---|---|
| (1) | First petition: | ☒ Yes | ☐ | No |
| (2) | Second petition: | ☐ Yes | ☒ | No |
| (3) | Third petition: | ☒ Yes | ☐ | No |

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:
A fourth PCRA petition was filed in 2012 but never adjudicated. In 2021 that petition was
amended. On April 20, 2022, that PCRA was amended again. This habeas is being filed in
conjunction with a request to stay the proceedings and hold in abeyance until the pending PCRA
petition is adjudicated in the state courts.

11. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** Due process violations based on suppression of multiple pieces of evidence
by the prosecution in violation of Brady v. Maryland

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
On April 23, 2021, counsel for Mr. Moore was provided discovery into the investigative and
prosecutor's files for this case and for the first time discovered the following pieces of suppressed,
exculpatory evidence: 1) evidence that an alternate suspect named Robert Turner was identified by
the police and that that suspect fit the description given by three eyewitnesses who failed to identify
Petitioner John Moore; the alternate suspect was very close friends with James Lamb, who committed
this robbery and who received a favorable plea for his testimony against John Moore which  was the
sole evidence against Mr. Moore; and that the alternative suspect, Robert Turner, was dead before
Lamb ever implicated Newton. Additionally, the following pieces of evidence were identified a
having been exculpatory, suppressed, and material: 2) ballistics evidence excluding a gun belonging
to John Moore from having been used in the offense in this case; 3) a property search failed to turn up
evidence that Moore was in possession of anything robbed from the victims; 4) a photo array of 9
people with similar features to Moore was shown to witnesses and they identified none of those
people, indicating that the other perpetrator did not look like Moore at all.

PAE AO 241
(Rev. 05/2018

(b)  If you did not exhaust your state remedies on Ground One, explain why: ___State remedies are still being pursued.

(c)  **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes     ☒ No

(2)  If you did not raise this issue in your direct appeal, explain why? _____
The fact that these pieces of evidence existed and were suppressed was unknown to Petitioner
until April 23, 2021 and could not have been learned sooner as the evidence was solely in the
possession of the prosecution.

(d)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
state trial court?

☒ Yes     ☐ No

(2)  If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: ___Post-Conviction Relief Act Petition

Name and location of the court where the motion or petition was filed: _____
Philadelphia Court of Common Pleas

Docket or case number (if you know): _CP-51-CR-0201061-1998

Date of the court's decision: ___Still pending

Result (attach a copy of the court's opinion or order, if available): _____

(3)  Did you receive a hearing on your motion or petition?          ☐ Yes     ☐ No

(4)  Did you appeal from the denial of your motion or petition?     ☐ Yes     ☐ No

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes     ☐ No

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

PAE AO 241
(Rev. 07/10)

Page 10

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _____

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,
etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** ___ New evidence supporting actual innocence _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

New witness, Robert Hunter, has come forward and stated that he saw James Lamb and Newton, aka
Robert Turner, commit the crime that John Moore was falsely convicted of. Additionally, an
investigation has revealed evidence from Daffanie Turner and Valerie Turner Murray, the sister and
mother of Robert Turner, that provide compelling circumstantial evidence reinforcing that Robert Turner
was known to be close to James Lamb, engaged in armed robberies, and was only known to friends and
family as "Newton."

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

___ PCRA petition still pending as part of the same filing as Ground One _____

_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes ☒ No

PAE AO 241
(Rev. 07/10)

Page 11

(2) If you did not raise this issue in your direct appeal, explain why? _____

The evidence was not known and could not have been ascertained at an earlier time through the exercise of due diligence

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒  Yes      ☐      No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: __PCRA Petition__

Name and location of the court where the motion or petition was filed: _____
Philadelphia Court of Common Pleas

Docket or case number (if you know): __CP-51-CR-0201061-1998__

Date of the court's decision: __still pending__

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion or petition?          ☐  Yes      ☐  No

(4) Did you appeal from the denial of your motion or petition?      ☐  Yes      ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
☐ Yes        ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

PAE AO 241
(Rev. 07/10)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes          ☐ No

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

PAE AO 241
(Rev. 07/10)

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?      ☐  Yes      ☐  No

(4) Did you appeal from the denial of your motion or petition?      ☐  Yes      ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    ☐ Yes      ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

\

(b)  If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

(c)  **Direct Appeal of Ground Four:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        ☐ Yes       ☐ No

    (2)  If you did not raise this issue in your direct appeal, explain why? _____

        _____

        _____

(d)  **Post-Conviction Proceedings:**

    (1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐ Yes       ☐ No

    (2)  If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

    (3)  Did you receive a hearing on your motion or petition?        ☐  Yes        ☐  No

    (4)  Did you appeal from the denial of your motion or petition?     ☐  Yes        ☐  No

PAE AO 241
(Rev. 07/10)

Page 15

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes        ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,
etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

12.    Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court
having jurisdiction?

☐ Yes        ☒ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them: _____

Both grounds are still pending in the Philadelphia Court of Common Pleas.

_____

_____

PAE AO 241
(Rev. 07/10)

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

_____

_____

_____

13. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?

&#9746; Yes      &#9744; No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

A federal habeas corpus petition was filed in the E.D.Pa on June 10, 2005. Case number: 09-2189. Documents attached to this filing.

_____

_____

14. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?

&#9746; Yes      &#9744; No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: _____

Fourth PCRA in Philadelphia Court of Common Pleas

_____

_____

15. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

_____

(b) At arraignment and plea: _____

_____

(c)  At trial: ___Nino Tinari_____

(d)  At sentencing: __Nino Tinari_____

(e)  On appeal: _____

(f)  In any post-conviction proceeding: ___Barbara McDermott, Barnaby Wittels, Jennifer Merrigan_____

(g)  On appeal from any ruling against you in a post-conviction proceeding: _____

16.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

      ☐ Yes      ☒ No

(a)  If so, give the name and location of the court that imposed the other sentence you will serve in the future: _____

(b)  Give the date the other sentence was imposed: _____

(c)  Give the length of the other sentence: _____

(d)  Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?

      ☐ Yes      ☐ No

17.  **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

___The claims are based on new facts discovered on or after April 23, 2021, including evidence that was___
___solely in the possession of the prosecution, and therefore 28 U.S.C. § 2244(d)(B) & (D) apply.___

PAE AO 241
(Rev. 07/10)

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of -

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: _____

_____

Vacate the conviction and release Petitioner from custody.

_____

or any other relief to which petitioner may be entitled.

_____

*Signature of Attorney (if any)*

PAE AO 241
(Rev. 07/10)

Page 19

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this
Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____.

*(month, date, year)*

Executed (signed) on _____(date).

_____
*Signature of Petitioner*

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing
this petition. _____
_____
_____
_____
_____

# United States Court of Appeals for the Third Circuit

1-ERHA RECD CLERK
22 APR 22 PM6:55

**INSTRUCTIONS FOR FILING MOTION UNDER 28 U.S.C. § 2244 FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SECOND OR SUCCESSIVE APPLICATION FOR RELIEF UNDER 28 U.S.C. §§ 2254 OR 2255**

Permission must be obtained from the Court of Appeals before a party can file a second or successive habeas corpus petition under 28 U.S.C. § 2254 or motion to vacate under 28 U.S.C. § 2255.

1. Use the attached form to file a **MOTION UNDER 28 U.S.C. § 2244 FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SECOND OR SUCCESSIVE APPLICATION FOR RELIEF UNDER 28 U.S.C. § 2254 OR § 2255.**

2. Answer completely all the questions on the attached form. Your failure to provide complete answers may result in the Court denying your motion.

3. **Attach to your motion copies of the following documents:**

   A.    The § 2254 or § 2255 application you want to file in the district court if the Court of Appeals grants your motion.

   B.    All § 2254 or § 2255 applications you previously filed in any **federal** court challenging the judgment of conviction or sentence you now want to challenge.

   C.    All court opinions and orders, final and interlocutory, disposing of the claims in your previous § 2254 or § 2255 applications that challenged the judgment of conviction or sentence you now want to challenge.

   D.    All magistrate judges' reports and recommendations issued in all previous § 2254 or § 2255 applications that challenged the judgment of conviction or sentence you now want to challenge.

4. You must **sign the motion in two places** at the end of page 5. Your failure to sign the motion or to complete the Proof of Service on page 7 may result in the Court denying your motion.

5. You must file with the Court of Appeals the **original motion and all documents attached to it**. Please keep a copy for your records.

6. If your motion seeks relief under 28 U.S.C. § 2254, you must serve a copy of the motion and all documents attached to it on the attorney general of the state in which you are confined or the district attorney for the county in which you were convicted. Your failure to serve the attorney general may result in the Court denying your motion.

7. If your motion seeks relief under 28 U.S.C. § 2255, you must serve a copy of the motion and all documents attached to it on the United States Attorney for the federal judicial district in which you were convicted. Your failure to serve the United States Attorney may result in the Court denying your motion.

MOTION UNDER 28 U.S.C. § 2244 FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER
SECOND OR SUCCESSIVE APPLICATION FOR RELIEF UNDER 28 U.S.C. § 2254 OR § 2255

United States Court of Appeals for the Third Circuit

| Name of Movant | Prisoner Number | Case Number |
| John Moore | DD9449 | (leave blank) |

| Place of Confinement | |
| SCI Phoenix | |

**IN RE:** John Moore , **MOVANT**

1. Name and location of court which entered the judgment of conviction from which relief is sought: _____

   Philadelphia Court of Common Pleas
   _____

2. Parties' Names: _____Com._____ vs. _____John Moore_____

3. Docket Number: _CP-51-CR-0201061-1998_     4. Date Filed: _____5. Date of

judgment of conviction: _May 9, 2000_____     6. Length of sentence: Life without parole   7. Nature of offense(s)

involved (all counts): _____

   Second degree murder; possession of an instrument of a crime; criminal conspiracy; robbery
   _____

   _____

8. What was your plea? (Check one)                   ☑ Not Guilty      ☐ Guilty          ☐ Nolo Contendere

9. If you pleaded not guilty, what kind of trial did you have? (Check one)   ☐ Jury        ☑ Judge only

10. Did you testify at your trial? (Check one)                          ☐ Yes          ☑ No

11. Did you appeal from the judgment of conviction? (Check one)         ☑ Yes          ☐ No

12. If you did appeal, what was the

    Name of court appealed to: Superior Court and Supreme Court of Pennsylvania
    _____

    Parties' names on appeal: _____Com._____ vs. ___John Moore_____

    Docket number of appeal: _CP-51-CR-0201061-1998_  Date of decision: _July 17. 2001 (Superior Court)_

    Result of appeal: _Appeal denied_____

    _____

    _____

    _____

    _____

    _____

13. Other than a direct appeal from the judgment of conviction and sentence, have you filed any other petitions, applications for relief, or other motions regarding this judgment in any federal court?   ☑ Yes      ☐ No

14. If you answered "yes" to question 13, answer the following questions:
A. FIRST PETITION, APPLICATION, OR MOTION
(1) In what court did you file the petition, application, or motion? _Philadelphia  Ct of Common Pleas_

(2) What were the parties' names? _____Com_____ vs. __John Moore__

(3) What was the docket number of the case? _CP-51-CR-0201061-1998_

(4) What relief did you seek? _Vacatur of all convictions_

(5) What grounds for relief did you state in your petition, application, or motion? _Ineffective Assistance of_

_counsel_

(6) Did the court hold an evidentiary hearing on your petition, application or motion?      ☐ Yes      ☑ No

(7) What was the result?          ☐ Relief granted      ☑ Relief denied on the merits

                    ☐ Relief denied for          ☐ Relief denied for procedural default
                    failure to exhaust

(8) Date of court's decision: _____

B. SECOND PETITION, APPLICATION, OR MOTION

(1) In what court did you file the petition, application, or motion? _Court of Common Pleas_      (2) What were the parties' names? ___Com___ vs. __John Moore__      (3) What was the docket number of the case? _CP-51-CR-0201061-1998_      (4) What relief did you seek? _____

_Vacatur of convictions_

**C. THIRD AND SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS**
For any third or subsequent petition, application, or motion, attach a separate page providing the information required in items (1) through (8) above for first and second petitions, applications, or motions.

**D. PRIOR APPELLATE REVIEW(S)**
Did you appeal any order regarding your petitions, applications, or motions to a federal court of appeals having jurisdiction over your case? If so, list the docket numbers and dates of final disposition for all subsequent petitions, applications, or motions filed in a federal court of appeals.

| | | | |
|---|---|---|---|
| First petition, application, or motion | ☐ Yes  Appeal No. _____ Date _____ | | ☑ No |
| Second petition, application, or motion | ☑ Yes  Appeal No. 39-3189 Date 3-27-09 | | ☐ No |
| Subsequent petitions, applications or motions | ☐ Yes  Appeal No. _____ Date _____ | | ☐ No |
| Subsequent petitions, applications or motions | ☐ Yes  Appeal No. _____ Date _____ | | ☐ No |
| Subsequent petitions, applications or motions | ☐ Yes  Appeal No. _____ Date _____ | | ☐ No |
| Subsequent petitions, applications or motions | ☐ Yes  Appeal No. _____ Date _____ | | ☐ No |

If you did not appeal from the denial of relief on any of your prior petitions, applications, or motions, state which denials you did not appeal and explain why you did not.

_____   _____

_____   _____

_____   _____

**15. Did you present any of the claims in this application in any previous petition, application, or motion for relief under 28 U.S.C. § 2254 or § 2255? (Check one)**      ☐ Yes      ☑ No

**16. If your answer to question 15 is "yes,"** give the docket number(s) and court(s) in which such claims were raised and state the basis on which relief was denied.

_____   _____

_____

_____ **17. If your answer to question**

**15 is "No," answer the following questions:**

**A. State the claims which you did not present in any previous petition, application, or motion for relief under 28 U.S.C. § 2254 or § 2255:** Due Process violations based on suppression of exculpatory and material evidence; actual innocence claim

**B. State the reasons why you did not present the above claims in any previous petition, application or motion for relief under 28 U.S.C. § 2254 or § 2255:*** The facts were newly discovered within the last year and could not have been discovered sooner through the exercise of due diligence

**\*NOTE: This Court will grant you authority to file in the district court only if you show that you could not have presented your present claims in your previous § 2254 or § 2255 application because . . .**

   **A. (For § 2255 motions only)** the claims involve "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found [you] guilty"; or,

   **B. (For § 2254 petitions only)** "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [you] guilty of the offense"; or,

   **C. (For both § 2254 and § 2255 applicants)** the claims involve "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court [of the United States], that was previously unavailable."

**State how you meet the above requirements:**

Previously undisclosed evidence that was in possession
of the prosecution was provided on April 23, 2021. Further
investigation discovered new evidence of innocence. The new
evidence is such that no factfinder would have found
Petitioner guilty.

**If it has been more than one year since either (1) your conviction became final; (2) you discovered the new evidence on which you rely; or (3) the United States Supreme Court case on which you rely was decided, state why you could not file your petition earlier:**

_____

_____

_____

_____

_____

   **Movant prays that the United States Court of Appeals for the Third Circuit grant an Order Authorizing the District Court to Consider Movant's Second or Successive Application for Relief Under 28 U.S.C. §§ 2254 or 2255.**

Brett Sult -counsel for John Moore

**Movant's Signature**

**I declare under Penalty of Perjury that my answers to all questions in this Motion are true and correct.**

**Executed on**    4-22-22
                [date]

Brett Sult

**Movant's Signature**

**PROOF OF SERVICE**

A copy of this motion and all attachments must be sent to the state attorney general (§ 2254 cases) or the United States Attorney for the United States judicial district in which you were convicted (§ 2255 cases).

I certify that on  4-22-22  I mailed a copy of this motion and all attachments
   [date]

to  Jamie Sorber , Josh Shapiro , and Matthew Steigler  at the following address:

                                                                                                    1712
1200 Makychic Drive , Collegeville, PA 10426; Josh Shapiro, Office of AG, Strawberry Square , Harrisburg

Philadolphia DAO, 3 South Penn Syuare, Philadelphia, PA 19107

                                                   Burt Butt  - Counsel for John Moore

Rev. 2/99                                                           **Movant's Signature**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

IN RE: MOTION OF JOHN MOORE,    :
NO. DD9449, STATE CORRECTIONAL  :   No._____
INSTITUTION AT PHOENIX, FOR     :
DISTRICT COURT TO CONSIDER     :
SUCCESSIVE PETITION FOR WRIT OF  :
HABEAS CORPUS                :

## MOTION FOR ORDER AUTHORIZING DISTRICT COURT TO
## CONSIDER SUCCESSIVE PETITION FOR WRIT OF HABEAS CORPUS

John Moore, through his undersigned counsel, moves for an order

authorizing the District Court to consider his successive petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2244 and Local Appellate Rule 22.5. On

May 8, 2000, Mr. Moore was convicted of second-degree murder, robbery,

aggravated assault, possession of an instrument of crime, and criminal conspiracy

in connection with the July 7th, 1996 robbery outside of a North Philadelphia

Chinese Store that led to the killing of Sammy Cedano and injuries to William

Cintron and Daniel Diaz. The sole evidence that led to Mr. Moore's conviction was

the testimony of his then teenaged, alleged co-conspirator, James Lamb, who

entered into an agreement with the Philadelphia District Attorney Office that

lessened his sentence in exchange for his testimony against Mr. Moore. Three

witnesses to the crime, including the two surviving victims, were able to identify

James Lamb as one of the assailants, but each of them *did not* identify John Moore.

One witness explicitly stated that she had seen each of the perpetrators before on multiple occasions, and could identify them if shown a photo, but did not identify Mr. Moore.

Twenty-six years after his conviction Mr. Moore obtained new evidence supporting his claims of innocence in the form of a new witness statement from Robert Hunter, an eyewitness to incident that led to the death of Sammy Cedano. Mr. Hunter stated that he saw James Lamb and an individual named "Newton" shooting their weapons, and that Mr. Moore was not in the immediate area of the shooting at that time. James Lamb recanted his trial testimony in 2004, stating that he told police officers that Newton did it but that they "kept pointing to John." Mr. Moore had also previously supplemented his appeals with statements from three other individuals that collectively stated that someone other than John Moore committed the shooting with James Lamb. And through the release of police and prosecutor files from the investigation into the death of Sammy Cedano, counsel for the Petitioner can now say that prosecutors failed to disclose material evidence used in connection with this case in the form of a Narcotics Arrest Blotter that featured an individual named Robert Turner, who matched the description given by the three witnesses identified who did not identify Moore, lived just a few houses down the street from the independent eyewitness, and was arrested for selling drugs outside of the same Chinese store just a month prior, notably matching the

description of the perpetrators as "neighborhood drug dealers." For the first time,

Mr. Moore can prove the person who was known as Newton was in fact Robert

Turner, and all the evidence in the case save James Lamb's self-interested trial

testimony implicates him as the perpetrator. Having discredited the paltry evidence

utilized by the Commonwealth at trial, it is clear that his conviction is no longer

supported.

Mr. Moore filed for state post-conviction relief based on this new evidence

on April 20, 2022. Mr. Moore files this federal petition to ensure its timeliness

under 28 U.S.C. § 2244(d).

Because Mr. Moore is awaiting the outcome of state court post-conviction

proceedings that will either provide him relief based on the same factual and

constitutional issues he raises herein, or will exhaust his state remedies if he is

denied relief, Mr. Moore asks this court to hold this motion in abeyance, pending

the outcome of state court review. Mr. Moore has appended his proposed

Successive Petition for Relief Pursuant to 28 U.S.C. § 2254 ("Petition") as Exhibit

A to this motion, along with the documents required by Local Appellate Rule 22.5

and an accompanying memorandum of law.

## I.    Factual and Procedural History

1.      On July 7, 1996, two individuals robbed three men (Sammy Cedano,

Daniel Diaz, and William Cintron outside of a Chinese Store in North Philadelphia

at 900 W. Somerset Street. Two of the men (William Cintron and Sammy Cedano) were shot in connection with the robbery, and Sammy Cedano was killed.

2.    Police arrested 15-year-old James Lamb in connection with this incident on August 11, 1996. The Petitioner was not arrested for this incident until over a year later, in December 1997, well after Mr. Lamb gave a statement to police implicating him on June 9, 1997.

3.    The Commonwealth's sole evidence linking John Moore to this crime was James Lamb's testimony. Three credible eyewitnesses identified the teenaged Lamb as one of the perpetrators of the shooting. None of the three eyewitnesses identified John Moore. The Commonwealth did not find, nor did they present any physical evidence linking the Petitioner to the shooting.

4.    James Lamb testified that he was in the Chinese Store with Newton when he came out and found the Petitioner robbing the individuals. James Lamb then testified that the Petitioner asked him to help rob them. Mr. Lamb also testified that the Petitioner shot Sammy Cedano, in contravention of witnesses statements that state that the lighter skinned perpetrator shot Mr. Cedano.

5.    Domonique Maxwell testified at trial. She watched the shooting take place from her front doorstep. Hours after the shooting, her mother told police that Domonique "saw the job go down" and that the perpetrators were 16-17 year old neighborhood drug dealers.

4

6.      Domonique identified James Lamb in a photo array as "Shortie" or "Reds". She said that although she did not know the second perpetrator's name, she had seen him at least 5 times and could identify him. When given the chance to identify the Petitioner in a photo array, she stated that she did not recognize anyone. At trial, she testified that none of the pictures she saw were of the person she saw that night with Shortie. N.T. 5/5/00 at 50.

7.      Complaining witnesses Diaz and Cintron also testified. Neither identified the Petitioner.

8.      Officers Trenwith, Bannon, Dones, and Silcox provided testimony about the crime scene investigation immediately after the incident. Detective Green provided testimony about his investigation at the hospital where Diaz and Cintron were hospitalized. Neither the officers nor the detective provided any evidence linking Mr. Moore to the crime.

9.      Defense counsel did not present any witnesses at trial nor did they put on any defense.

10.     The Petitioner was convicted in a short bench trial and given a mandatory life without parole sentence. The trial court determined they did not believe everything that Mr. Lamb said, and that he testified in a way that minimized his participation, but still found the verdict to have been supported. He

5

found Mr. Moore guilty of second, rather than first degree murder and found him guilty on all other counts. N.T. 5/9/00 at 127-28.

11.     John Moore (Inmate No. DD9449) is currently incarcerated at SCI Phoenix, 1200 Mokychic Drive, Collegeville Pennsylvania 19426, as a result of this conviction.

12.     Mr. Moore was convicted on May 9, 2000 and sentenced on the same day.

13.     The Pennsylvania Superior Court affirmed Mr. Moore's conviction on direct appeal and the Pennsylvania Supreme Court denied allowance of appeal on November 21, 2001.

14.     Mr. Moore filed a *pro se* PCRA petition on June 10, 2002, arguing that his trial counsel was ineffective. In July 2002, the Court of Common Pleas appointed an attorney to represent Mr. Moore in his PCRA proceedings. The attorney filed a letter pursuant to *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988), claiming there were no appealable issues of merit. Ultimately, the court denied relief, and the Superior Court affirmed. *Com. v. Moore*, No. 311 EDA 2003 (Pa. Super. Ct. 2004).

15.     On May 3, 2004, Mr. Moore filed a motion for a new trial based on newly discovered evidence. The Court of Common Pleas treated the motion as a

second PCRA petition and denied it because Mr. Moore's first PCRA petition was still on appeal at that time.

16.    On May 17, 2005, Mr. Moore filed a third PCRA petition. The Court of Common Pleas appointed counsel, and in February 2006, counsel filed an amended, and then second amended third PCRA. The Court of Common Pleas denied that petition without a hearing because it found that the new evidence was not credible. The Superior Court affirmed.

17.    On June 10, 2005, while his third PCRA petition was still pending, Mr. Moore filed his first habeas petition in the Eastern District of Pennsylvania. The District Court stayed the petition until Mr. Moore's third PCRA was adjudicated. On September 26, 2008, the District Court lifted the stay and appointed counsel. That attorney filed a supplemental habeas corpus petition on March 4, 2008. On October 20, 2008, a Magistrate Judge recommended that the District Court deny the petition without an evidentiary hearing. The District Court adopted the Magistrate Judge's Report and Recommendation on March 27, 2009 over Mr. Moore's objection. Mr. Moore filed a motion for reconsideration and a notice of appeal thereafter, and the Court stayed the appeal until the District Court adjudicated the motion for reconsideration. On September 24, 2010, the Third Circuit issued a certificate of appealability. The Third Circuit affirmed the District Court's opinion on July 19, 2012.

18.    On August 16, 2012 Mr. Moore filed his fourth PCRA as a pro se litigant. On July 17, 2017, the Court of Common Pleas filed a Dismissal Notice under Rule 907 to which Mr. Moore filed a response. Previous counsel for Mr. Moore entered their appearance on April 20, 2020 and filed an amended petition. Current counsel entered their appearances on October 26, 2021. They filed a second amended PCRA petition on April 20, 2022.

19.    In addition to his efforts to obtain relief through the court system discussed above, Mr. Moore has also diligently attempted on his own to ascertain facts to prove his innocence, including trying to obtain help from several dozen law firms and legal organizations.

20.    Mr. Moore seeks this Court's authorization to litigate a successive habeas corpus petition. The issues and supporting evidence included in this successive federal habeas petition are the same as those presented in the pending state PCRA proceedings. They have not been previously litigated.

21.    As detailed in the attached proposed Petition, it is through the newly discovered evidence of witnesses and the suppressed materials found in the newly disclosed files that identify for the first time the alternate suspect Robert Turner, that likely committed the robbery and murder. The identification of the second perpetrator was the central contested issue at trial and since the Petitioner's conviction five other witnesses have come forward to support the Petitioner's

claims of innocence and four of them identify Newton as the second person involved in the robbery and murder.

22.     This list of witnesses includes James Lamb, who recanted his trial testimony in 2004, stating that the Petitioner left the area before the robbery and shooting occurred, and that Newton was the second person involved. The Petitioner filed a 2005 *pro se* state PCRA that was subsequently dismissed without an evidentiary hearing on the recantation issue.

23.     In addition, another eyewitness, Robert Hunter, has come forward after reconnecting with the Petitioner in December 2021 and for the first time disclosing to him that he was present and witnessed the shooting. At the time of the incident Mr. Hunter was across the street. From his view, he saw Newton and James Lamb shooting at two individuals. He also noted that the Petitioner was not in the immediate vicinity at the time of the shooting.

24.     Moreover, Petitioner's counsel has also connected with Ms. Valerie Turner Murray, the mother of Robert "Newton" Turner. She provided a statement to counsel on April 5, 2022 that she called her son Newtin, and that people knew him by that name. She said that she would be surprised if anyone knew that his real name was in fact Robert Turner. She also stated that Newtin was close friends with James Lamb, whom she knew as Reds.

9

25. On April 23, 2021, the Commonwealth produced the Homicide File and DAO File to Petitioner. As detailed in the attached proposed petition and the second amended PCRA petition appended thereto, both files contained significant information never before provided to the defense, including 1) a list of all persons arrested for narcotics violations near 9th and Somerset Streets along with their related demographic information, a list that included Robert Turner, 2) Firearms Analysis of the Petitioner's gun that concluded it had insufficient markings to determine that the gun matched the bullet casings found at the scene, and 3) details of a property search of the Petitioner's home that yielded no further evidence.

26. During the investigation, prosecutors acquired a list of all recent narcotics arrests in the area surrounding the Chinese store, likely due to Domonique's identification of the perpetrators as neighborhood drug dealers. Mr. Robert Turner was arrested on June 4, 1996, for knowing and intentional possession of 420 mg of heroin just steps from the Chinese store where the robbery took place and only one month before.

27. The Narcotics Arrest Blotter included a list of 121 people, along with their demographic and personal information, including their age, race, gender, address, PP number, and date and location of arrest. However, based on age,[1] race,

---

[1] Counsel for Mr. Moore gave a wide berth for age ranges to encompass all individuals between the ages of 15-26 at the time of the incident. Even still, the list dwindled dramatically.

and gender alone, the list of potential suspects dwindled to just 9 names. When narrowing for drug arrests in the year prior to July 1996, the list shortens to 8 names. That list of 8 names includes a Robert L. Turner, aged 17, who according to the Narcotics Arrest Blotter, lived at 934 W. Silver Street. Additional arrest records provided by the DAO in response to a recent request from current counsel further reduced the list of potential suspects to 2, including Robert Turner.

28.     The Commonwealth accused Moore and Lamb of firing their weapons. 5/9/00 N.T. at 119. However, newly disclosed evidence that reveals the Firearms Identification Unit determined that a gun seized from John Moore could not be matched to the ballistics in this case was favorable to the defense.

29.     Third, the Commonwealth failed to turn over handwritten notes from officers, which reveal that the police were comparing property recovered from Moore against property taken from the victims during the crime. App. 59, 63. There is no follow up as to these comparisons. Presumably, however, had they been a match, this would have been introduced against Moore at trial. These notes too were withheld from trial counsel; thus, counsel was unaware that the police had unsuccessfully examined Moore's property for that of the victims.

30.     Petitioner seeks this Court's authorization to litigate a successive habeas corpus petition. The issues and supporting evidence included in this successive federal habeas corpus petition are the same as those presented in the

11

pending state PCRA proceeding. They have not been previously litigated; indeed, they could not have been, as they involve exculpatory evidence made available only through the Commonwealth's recent production of the H file and DAO file, which contain previously-suppressed information.

31. The petition is timely under the limitation period set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). As detailed in the proposed petition and the memorandum of law in support of this motion, the facts upon which the petition are based could not have been discovered previously through the exercise of due diligence, and the facts establish a *prima facie* case of innocence and constitutional error. Mr. Moore seeks to file a successive petition for a writ of habeas corpus within one year of the discovery of the new evidence, thus satisfying the requirements of 28 U.S.C. § 2244(d). As a protective matter, Mr. Moore seeks to file the petition in the District Court to meet the one-year filing deadline. Further, Moore understands the need to exhaust his state claims and, thus requests a stay of the federal court deadline to allow his pending state post-conviction petition to proceed.

32. The facts underlying this claim in light of the evidence as a whole are sufficient to establish, by clear and convincing evidence, that if the jury had heard the information Moore now has no reasonable fact finder would have found him guilty of the offenses at issue here.

## II.    REQUEST OF ABEYANCE PENDING EXHAUSTION OF STATE REMEDIES

33.    Mr. Moore seeks this Court's permission to file the attached petition
to avoid a statute of limitations barrier that could arise from a post-exhaustion
filing.

34.    The claims raised in the attached petition are virtually identical to the
claims raised by Moore in his Pennsylvania (successor) state post-conviction
petition. Mr. Moore's PCRA proceeding will either result in the award of relief to
Moore or the exhaustion of his claims on the underlying facts.

35.    Because Mr. Moore's state post-conviction proceedings are
unresolved, he has not exhausted his state court remedies, and federal habeas
review would be premature. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 842
(1999) ("state prisoner must give the state courts an opportunity to act on his
claims before he presents those claims to a federal court in a habeas petition").

36.    However, Mr. Moore is compelled to seek the protection of the
federal courts before exhausting state court remedies because his failure to do so
could forever bar him from obtaining federal habeas review of the claims he is
currently litigating in state court. AEDPA has a one-year limitations period. *See* 28
U.S.C. § 2244(d)(1). In recognition of the exhaustion requirement, AEDPA allows
the tolling of this one-year limitations period for the "time during which a properly

13

filed application for State post-conviction or other collateral review with respect to
the pertinent judgment or claims is presiding." 28 U.S.C. § 2244(d)(2).

37.     Mr. Moore has pending in state court an "application for state post-
conviction or other collateral review with respect to the pertinent judgment or
claim." *Id.* Thus, if Mr. Moore could be certain that his currently pending state
court application would be deemed "properly filed" within the meaning of §
2244(d)(2), the AEDPA statute of limitations would be tolled by the pending state
proceedings. If that were the case, Mr. Moore would have no reason to seek this
Court's protection, and he would wait until after exhaustion of state remedies
before seeking federal review.

38.     Counsel believes that Mr. Moore's state court proceedings are
"properly filed," but given how the United States Supreme Court has previously
construed the term "properly filed," the answer may not be truly known until after
the state courts rule. If the Commonwealth asserts in the state proceedings that the
PCRA petition is not timely and, under *Pace v. DiGuglielmo*, 544 U.S. 408 (2005),
if the state courts ultimately reject his pending PCRA petition as untimely under
state law, Mr. Moore's state court application would not be deemed properly filed
and the pending state court application would not toll AEDPA's limitations period.
Under these circumstances, Mr. Moore must now seek federal review or risk the
forfeiture of his federal claims.

39. Although there exists a strong argument that Mr. Moore would be entitled to "equitable tolling" of the AEDPA limitations period, if the courts rule that equitable tolling is not available in this case, Moore's failure to seek federal review now could result in forfeiture of his rights under federal law.

40. The claims Mr. Moore raises are worthy of federal review and demonstrate that Moore should have his right to federal review preserved if relief does not come through the state petition. In the meantime, under the "suspense" or "abeyance" doctrines, the federal litigation should be stayed pending exhaustion in the state court. *See Rhines v. Weber*, 544 U.S. 269 (2005).

41. Therefore, Mr. Moore files this motion within the year allowed by AEDPA even though federal review is technically premature. Because state court remedies have not been exhausted, and because even a dismissal without prejudice in federal court could endanger Moore's right to seek federal review after exhaustion, federal habeas proceedings should be held in suspense or abeyance pending the outcome of the state court proceedings.

42. Under 28 U.S.C. § 2244(b)(3), this Court's "gatekeeping" role for successive habeas petitions is to determine whether Moore has made a "prima facie showing that the application satisfies the requirements of [§ 2244]." If the petition makes this *prima facie* showing "as to one of the claims, he may proceed upon his

*entire application* in the district court." *Woratzek v. Stewart*, 118 F.3d 648, 650 (9th Cir. 1997) (emphasis added).

43.     The burden of making a "prima facie showing" under § 2244(b)(3)(C) is a modest one. It requires only a "sufficient showing of possible merit to warrant a fuller exploration by the district court." *Bennett v. United States*, 119 F.3d 468, 479 (7th Cir. 1997); *see also Goldblum v. Klem*, 510 F.3d 204, 219 (3d Cir. 2007) ("adopting the meaning of 'prima facie showing' discussed in *Bennett*"); *Johnson v. Love*, 40 F.3d 658, 663 (3d Cir. 1994) (*prima facie* case generally requires only "some reason to believe" that claim "might" ultimately succeed). This analysis does not include credibility determinations. *See Johnson v. California*, 545 U.S. 162, 171 n.7 (2005) (assessment of *prima facie* showing under *Batson v. Kentucky* "can involve no credibility assessment"); *In re Holladay*, 331 F.3d 1169, 1173 (11th Cir. 2003).

44.     As demonstrated in the attached petition and accompanying memorandum of law, this *prima facie* burden has been fully satisfied.


**WHEREFORE**, John Moore asks this Court:

> A. To hold this Motion in abeyance, pending the outcome of
>     proceedings to exhaust his state court remedies; or, in the
>     alternative,

B. To authorize the district court to consider this, his successive

petition for writ of habeas corpus, following completion of his

state court proceedings.

Respectfully submitted,


Respectfully submitted,

*/s/ Nia O. Holston*
Nia Holston
PA I.D. No. 327384
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA 15221
(267) 357-0948
nia@alcenter.org

*/s/ Bret Grote*
Bret Grote
PA I.D. No. 317273
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA 15221
(412) 654-9070
bretgrote@abolitionistlawcente
r.org

*Counsel for John Moore*


Dated:       April 22, 2022

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

IN RE: MOTION OF JOHN MOORE,              :
NO. DD9449, STATE CORRECTIONAL   :       No._____
INSTITUTION AT PHOENIX, FOR             :
DISTRICT COURT TO CONSIDER              :
SUCCESSIVE PETITION FOR WRIT OF  :
HABEAS CORPUS                                  :

## CERTIFIFATE OF SERVICE

I, Nia O. Holston, counsel for Mr. Moore, do hereby certify that I caused a copy of

this Motion and accompanying attachments to be served by U.S. mail upon:


Jamie Sorber-Superintendent SCI Phoenix
1200 Mokychic Drive
Collegeville, PA 19426

Court Administrator
Philadelphia County Court of Common Pleas Richard T. McSorley, Esquire
Deputy Court Administrator, Criminal Trial Division
The Stout Center for Criminal Justice, Room 203 1301 Filbert Street
Philadelphia, PA 19107

Josh Shapiro, Esq.
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120

Matthew Steigler, Esquire
Philadelphia District Attorneys Office

3 South Penn Square
Philadelphia, PA 19107

/s/ Nia Holston
Nia Holston
Pa. I.D. No. 327384
**ABOLITIONIST LAW CENTER**
P.O. Box 8654
Pittsburgh, PA 15221
267-357-0948

Counsel for John Moore

April 22, 2022

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

IN RE: MOTION OF JOHN MOORE,          :
NO. DD9449, STATE CORRECTIONAL       :     No._____
INSTITUTION AT PHOENIX, FOR          :
DISTRICT COURT TO CONSIDER           :
SUCCESSIVE PETITION FOR WRIT OF      :
HABEAS CORPUS                        :

C-FILED REC'D CLERK
022 APR 22 PM4:38

**MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2244 FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SUCCESSIVE PETITION FOR WRIT OF HABEAS CORPUS**

### I.    INTRODUCTION

Petitioner John Moore, through undersigned counsel, submits this

Memorandum in Support of his Motion pursuant to 28 U.S.C. § 2244 for an Order

Authorizing the District Court to Consider Successive Petition for Writ of Habeas

Corpus. In the proposed successive petition, appended to his motion as Exhibit A,

he makes a *prima facie* showing supporting due process and actual innocence

federal constitutional claims. But for these errors, no reasonable fact finder would

have found him guilty of second degree murder and related charges. The

information contained in the petition could not have been previously discovered

through due diligence. 28 U.S.C. § 2244(b)(2)(B).

1

Mr. Moore's petition demonstrates that he is factually innocent. It shows that the Commonwealth of Pennsylvania suppressed evidence of alternate suspects in violation of his due process rights, including alternate suspect evidence that exculpates Moore, as well as new evidence of innocence in the form of new witnesses to the shooting that have come forward, including a new witness that indicates that Robert "Newton" Turner, who (1) was 17 at the time of the incident matching eyewitness statements that two teenagers committed this crime, (2) whose name and other relevant information was known to law enforcement in connection with this case, (3) was close friends with John Moore's co-defendant James Lamb, and (4) closely matched witness descriptions of the shooter but whose photo was never shown to eyewitnesses even though those same eyewitnesses did not identify the Petitioner –committed the shooting and not John Moore.

Since his arrest, Mr. Moore has used every means available to him to diligently pursue evidence to prove his innocence. Given Mr. Moore's actual innocence and the suppression of evidence, this Court should authorize federal review of Mr. Moore's claims to prevent a manifest miscarriage of justice.

## II.  THIS COURT SHOULD AUTHORIZE THE DISTRICT COURT TO CONSIDER MOORE'S SUCCESSIVE HABEAS PETITION[1]

### A.  Standard of Review

To file a successive petition for writ of habeas corpus, a petitioner must

demonstrate that he has alleged "a *prima facie* showing that the application

satisfies the requirements," 28 U.S.C. § 2244(b)(3)(C), that:

(i)    The factual predicate of the claim could not have been discovered previously through the exercise of due diligence; and

(ii)   The facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B)

The federal courts have consistently held that this standard is modest and

requires only "a sufficient showing of possible merit to warrant a fuller exploration

by the district court." *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997);

*see Goldblum v. Klem*, 510 F.3d 204, 219 (3d Cir. 2007) ("adopting the meaning of

'*prima facie* showing' discussed in *Bennett*"). As in any context where a court

---

[1] In addition to seeking leave to pursue his successive petition, Moore also asks that these proceedings are held in abeyance pending exhaustion of these claims in state court. *See* Mot. Sec. II; Proposed Pet'n at ¶¶ 154-160.

3

determines the evidence of a *prima facie* showing, credibility determinations

should not be attempted at this stage. *See Johnson v. California*, 545 U.S. 162, 171

n.7 (2005) (assessment of *prima facie* showing under *Batson v. Kentucky* "'can

involve no credibility assessment' because 'the burden-of-production

determination necessarily *precedes* the credibility-assessment stage'"). Rather,

they are left to the District Court after an appropriate evidentiary hearing.

## B.   Evidence that Supported Moore's Conviction[2]

Sammy Cedano, Danny Diaz and William Cintron were robbed outside a

Chinese store around 12:10 p.m. on July 7, 1996 on the corner of 9th and Somerset

Streets in Philadelphia. Sammy Cedano and William Cintron were shot in

connection with the robber, and Sammy Cedano died from his injuries. A co-

defendant, James Lamb, who had just turned 15 at the time of the incident was

arrested in August of 1996 in connection with this incident. The Petitioner was not

arrested for this incident until December 1997. The prosecution's theory that Mr.

Moore was the main perpetrator and the one who shot Mr. Cedano had problems

from the outset.  For instance, a .380 bullet was recovered from the decedent's

body.  Police recovered a .380 from Mr. Lamb, and Mr. Lamb professed at trial

---

2

that John Moore possessed a revolver. The sole evidence tying Mr. Moore to the crime was Mr. Lamb's trial testimony against him in a bench trial beginning May 5, 2000.

### 1. *The Commonwealth's Case*

At trial, James Lamb was the sole witness to inculpate Moore in the crime. The Commonwealth presented five law enforcement witnesses who did not testify about Moore's involvement, as well as testimony from three eyewitnesses, Domonique Maxwell, William Cintron, and Daniel Diaz – none of whom could identify Moore. Domonique Maxwell, who was eleven at the time of shooting, testified at trial that she watched the shooting from her home, and saw the perpetrators shooting at the individuals. She had previously told police that she recognized both perpetrators, and did in fact identify James Lamb as an individual nicknamed "Shortie". However, when shown a photo array containing a picture of Mr. Moore, she stated that she did not recognize anybody. At trial, she reiterated that if she had been shown a photograph of the second perpetrator she would have picked that person out, and therefore she believed that none of the pictures contained the person she saw on the corner with James Lamb. Complaining witnesses Diaz and Cintron also testified at trial and did not identify Moore. Five law enforcement officers testified as to the basic crime scene investigation, but

provided no information connecting Moore to the crime. The court convicted Moore and sentenced him to life in prison without the possibility of parole.

**James Lamb Trial Testimony**

As stated *supra*, the only witness that provided evidence against Mr. Moore was James Lamb. At trial, Lamb provided testimony that conflicted with the evidence in the case. He testified that Mr. Moore shot Sammy Cedano with a revolver, even though ballistics evidence in the case proved that Mr. Cedano had been killed by a bullet from a .380, the same kind of gun that police found in Mr. Lamb's possession. Mr. Lamb also testified that an individual named Newton was present at the scene of the incident, but left before the shooting took place.

Mr. Moore's court appointed attorney Nino Tinari did not present any defense witnesses. Judge Steven Geroff found Mr. Moore guilty of all charges, though he did so based on the reliance on a witness that he believed was not being completely truthful with the court. Apparently disbelieving Mr. Lamb's testimony that Mr. Moore shot Sammy Cedano, the judge found Mr. Moore guilty of second-degree felony-murder instead of first-degree murder. Thus, Mr. Moore was convicted based on a witness that the trial court believed had lied to the court. **N.T. 5/9/00 p. 127.**

6

### C. *Prima Facie* Showing that No Reasonable Factfinder Would have Found Mr. Moore Guilty of Second Degree Murder and Related Charges

Mr. Moore's proposed petition alleges that newly-discovered evidence establishes his innocence and negates the scant evidence of guilt presented by the Commonwealth at trial. In total, from the pretrial stage of Mr. Moore's case until today seven witnesses, including Mr. Lamb, have come forward to support his claim of innocence   The newly-discovered evidence is demonstrated in the petition in the form of (1) a letter from the Philadelphia District Attorney office released to Petitioner's counsel pursuant to *Brady v. Maryland* detailing a conversation with Robert Hunter, a new eyewitness; (2) a new witness, Valerie Turner Murray, the mother of Robert "Newton" Turner, who provided Petitioner's counsel with a statement explaining that Mr. Turner was close friends with James Lamb and his friends and family called him Newton and that she would be surprised if people knew his real name; (3) a new witness, Daffanie Turner, Robert Turner's sister who spoke to the DAO and indicated that her brother used and sold drugs and robbed individuals; and (4) significant information from the Philadelphia District Attorney's Office ("DAO") and Philadelphia Police Department's homicide investigation files (the "DAO File" and "H File", respectively) never before provided that is sufficient to establish by clear and convincing evidence

7

that, but for constitutional error, no reasonable factfinder would have found Moore guilty of the underlying offense. *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

## D. *Prima Facie* Evidence of Constitutional Violations

Moore's proposed petition presents *prima facie* evidence of constitutional violations. First, the new evidence presented by Mr. Moore through the new witnesses establishes his actual innocence. Second, not only is Moore actually innocent of the crimes for which he was convicted, but his due process rights were violated insofar as the Commonwealth suppressed material and exculpatory evidence prior to trial and in post conviction proceedings in violation of the Due Process Clause of the United States Constitution.

### 1. *New Witness Robert Hunter*

Robert Hunter spoke to the DAO in connection with the instant case on December 16, 2021. Mr. Hunter stated to the DAO that at the time of the incident Mr. Hunter was across the street. From his view, he saw Newton and James Lamb, not John Moore, shooting at two individuals. He also noted that the Petitioner was not in the immediate vicinity at the time of the shooting. He told the DAO that Newton was not someone that he wanted to cross, implying that he was afraid of him. Hunter stated that Newton was the first of his friends to carry a gun.

8

### 2. *New Witness Valerie Turner Murray*

Ms. Murray provided a statement to the Petitioner's counsel on April 5, 2022. She stated that she lived with her children at 934 W. Silver Street in 1996, and that she gave him the nickname Newton at a young age, and that everyone knew him as Newton, not Robert. She stated that she "would be surprised if someone outside of his classmates and teachers at school knew that his real name was Robert." She also stated that James Lamb, or Reds, as she called him, was a close friend of Newton's and looked up to him.

### 3. *New Witness Daffanie Turner*

Daffanie confirmed to the DAO that her brother Robert Turner was known as Newtin, that he was friends with James Lamb, he was 17 years old at the time of his death, and carried a gun, used drugs, including PCP, and committed robberies. When asked by the DAO if her brother was involved in the shooting of Sammy Cedano, Daffanie stated that she did not know but that "anything is possible."

In addition to statements made to the DAO, Daffanie Turner also wrote and self-published a book about her life in 2017, entitled, *I'm Not Tryna Hurt You...DAFF TALES*. The book included numerous passages referencing her brother "Newtin," who she says was born 4/11/1979 and died on 10/18/1996. The birth date matches the DOB listed in police records for Robert Turner.

9

> "First of all Rest in peace to my only brother.
> I can go further but I rather continue with my brother
> I can't front he was mad a little out of control
> Never told but sold drugs between corners and street poles
> He sold crack, cracked me up, stacked up, backed up
> And still said his pockets was fucked up
> He was real like that and if I needed him in fact he was there
> like that with no rap ready and strapped to take a nigga under
> no wonder the runner with the gunner but it was funner when
> he got away." Daffanie Turner, *I'm Not Tryna Hurt
> You...DAFF TALES* 116 (2017).

### 4. *Undisclosed Information about Robert Turner aka Newton*

The DAO File, released to Mr. Moore's counsel on April 23, 2021 revealed

documents that show that the evidence indicating the identity of the actual second

perpetrator – Robert Turner—was available to prosecutors before trial and was

withheld from Mr. Moore's defense attorney. Prior to the fall of 2021, Mr. Moore

had not been able to determine the identity of Newton, who neighbors in their

community had long suspected of actually participating in the shooting based on

statements of James Lamb. Separately, when counsel for Mr. Moore was able to

obtain the evidence contained in the DAO file, counsel discovered a list of persons

arrested for narcotics offenses outside of the Chinese store where the murder of

Sammy Cedano took place. The Narcotics Arrest Blotter included a list of 121

people, along with their demographic and personal information, including their

age, race, gender, address, PP number, and date and location of arrest. However,

10

based on age[3] and gender alone, the list of potential suspects dwindled to just 9

names. When narrowing for drug arrests in the year prior to July 1996, the list

shortens to 7 names. That list of 8 names includes a Robert L. Turner, aged 17,

who according to the Narcotics Arrest Blotter, lived at 934 W. Silver Street. That

list dwindled even further to just two names (one of which was Robert Turner)

when comparing physical descriptions of the other alleged alternative suspects

with the descriptions given by witnesses and their likely incarceration status at the

time of the incident. Counsel obtained Mr. Turner's arrest photo and corresponding

demographic information (height, weight, etc) and determined that he fit the

description that all three witnesses provided of the second perpetrator involved in

the shooting. That evidence was developed independently of any evidence that

Newton was involved in the shooting, and should not be considered cumulative of

prior discussions of Newton in any court pertaining to this case. If this evidence

had been turned over prior to trial, reasonably competent counsel could have

investigated Turner's identity, physical characteristics, age, arrest record, his

relationship to James Lamb, and shown his photograph to the three eyewitnesses

who did not identify John Moore. At trial, counsel could have impeached James

Lamb's compromised and self-serving testimony with evidence that Newton was

---

[3] Counsel for Mr. Moore gave a wide berth for age ranges to encompass all individuals between the ages of 15-26 at the time of the incident. Even still, the list dwindled dramatically.

11

Robert Turner; that Turner's mother said Lamb was "very close" with her son; that Robert Turner – not John Moore – best fit the description of the three eyewitnesses; and that Robert Turner had died in October 1996, thus rendering it impossible for Mr. Lamb to enter into a plea agreement to offer testimony against his actual co-defendant.

## 5. *Undisclosed Evidence Pertaining to Exculpatory Evidence of John Moore*

First, newly disclosed evidence that reveals the Firearms Identification Unit determined that a gun seized from John Moore could not be matched to the ballistics in this case was favorable to the defense. Second, the undisclosed notes from law enforcement reveal yet another contemporaneous investigation measure that failed to inculpate Moore. Law enforcement examined property recovered from Mr. Moore to determine if he was in possession of property that had been taken from the victims. Reasonably diligent counsel would have used these notes to question officers about the unsuccessful contemporaneous investigation into Mr. Moore, and, as discussed below, about what other measures they took to locate the victims' property, once they had determined that Mr. Moore was not in possession of it.

Reasonable counsel would have used this evidence to strengthen Domonique's testimony. Domonique was a critical witness for John Moore's

12

defense. She witnessed the crime and immediately told both her mother and then, shortly thereafter, law enforcement that she recognized both perpetrators as young boys who dealt drugs in her neighborhood. Three weeks later, she chose Lamb out of a lineup. The following week, she was presented with Moore, and rejected him as the second perpetrator. Her rejection of the entire "Moore lineup" is affirmative evidence that the second perpetrator—a person who she was familiar with and recognized—looked nothing like John Moore. The "Moore lineup" fortifies her critical, exculpatory testimony.

Law enforcement took other measures to investigate John Moore that failed to inculpate him. Newly disclosed evidence reveals that officers created an entire photo lineup based on Moore's features—which every single eyewitness rejected in full. Domonique Maxwell's full rejection of the Moore lineup is particularly favorable. She was familiar with both perpetrators. She recognized them both, having seen them both before on multiple occasions. Domonique's categorical rejection of a lineup of individuals matching Moore's description is exculpatory evidence.

### 2. *Prima Facie* **Evidence of Constitutional Violations**

Mr. Moore's proposed petition presents *prima facie* evidence of constitutional violations. First, the undisclosed materials in the files in possession

13

of the Commonwealth establish constitutional error in violation of the Due Process Clause of the United States Constitution. Second, the new evidence presented through three new witnesses establishes his actual innocence.

### a. **The newly discovered evidence undermines the reliability of Mr. Moore's conviction, the failure to disclose such evidence is violative of his due process rights and warrants relief.**

To succeed on his due process claim, Mr. Moore must show that the failure to disclose such evidence was "material to guilt or punishment, irrespective of the good or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87 (1963) "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotation marks omitted).

When viewed as a whole, it is clear that the newly disclosed evidence undermines Mr. Moore's conviction. Any reasonably competent defense attorney would have used this evidence to investigate Robert Turner as the real perpetrator, cast doubt on Mr. Moore's guilt, and strengthen the initial statement of Domonique Maxwell, whose familiarity with the perpetrators and denial that Moore was involved made her a critical witness for the defense. Had counsel been in

14

possession of this evidence, there is a reasonable likelihood that the result of these proceedings would have been different. Mr. Moore meets the requirements under *Brady*, and therefore this Court must reverse his conviction.

The evidence is also exculpatory in that it reveals the deficient investigation undertaken by law enforcement in this case, undermining Moore's resultant arrest and conviction. Though law enforcement had contemporaneously identified a credible suspect, Robert Turner, who fit the description given by three eyewitnesses, police failed utterly to conduct any investigation into him. Law enforcement did not make attempts to contact or interview the suspect, Robert Turner. They did not include photos of the suspect in lineups for the three witnesses. The failure to show Turner's photograph to the three witnesses is particularly egregious given that each witness was able to correctly identify James Lamb but none of them identified John Moore, indicating that the other perpetrator remained at large. Police did not run checks against the suspect for prior crimes matching the guns. Nor did they conduct canvassing of their neighborhoods or schools. The community was talking about this crime: Shirley Maxwell told police that she had already heard in the streets that Lamb was involved. Yet, police did not contact juvenile officers or other neighbors.

15

### *The New Evidence Establishes a Freestanding Claim of Actual Innocence Under the United States Constitution*

Moore's proposed petition also establishes a *prima facie* case of actual innocence under the United States Constitution. The Supreme Court has not yet decided whether a freestanding claim of actual innocence exists; however, it has left open the possibility of such a claim. In *Herrera v. Collins*, 506 U.S. 390, 417 (1993), the Court stated: "We may assume, for the sake of argument in deciding the case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue to process such a claim." This Court has also considered whether a freestanding actual innocence claim exists even in the non-capital context, but it too has not yet decided the issue.[4]

### *Moore Has Exercised Due Diligence*

As a prerequisite to a successive habeas petition, Moore must show that he has exercised due diligence. Although the District Court may engage in a "factually intensive" review of this issue, this Court is only required to decide

---

[4] *See, e.g., Han Tak Lee v. Glunt*, 667 F.3d 397, 400, 400 (3d Cir. 2012) (declining to decide the issue because the case was resolved on other grounds).

16

whether Moore makes a *prima facie* showing of diligence.[5] Moreover, the "reasonable diligence" standard does not require extreme or exceptional diligence.[6]

Moore establishes a *prima facie* case of due diligence. Moore is indigent and has been incarcerated for over 25 years. Despite this, he has made multiple efforts to obtain relief through the court system, and has also diligently attempted on his own to ascertain facts to prove his innocence, including contacting close to 50 different law firms and legal organizations for assistance in his case. He has never before had access to the Commonwealth's files. The evidence underlying his proposed petition, some of which was contained in files belonging to the Philadelphia District Attorney's Office and the Philadelphia Police Department was in the sole custody and control of the Commonwealth. Moreover, although Moore has diligently investigated his case, he has no affirmative duty of diligence to discover *Brady* material. Of course, Mr. Moore's efforts to track down new witnesses and investigate the identity of Newton were stymied by his incarceration. He did not have access to the sophisticated databases that counsel had once they began representing him. He has been representing himself pro se to the best of his ability, but he needed the help of counsel to continue to push his case forward.

_____

[5] *Holland v. Florida*, 130 S. Ct. 2549, 2565 (2010).

[6] *Lacava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (reasonable diligence does not require "maximum feasible diligence")' *Wilsom v. Beard*, 426 F.3d 653, 660 (3d Cir. 2005) (requiring "reasonable diligence under the circumstances").

17

In sum, Mr. Moore is indigent and has been incarcerated for nearly 26

years. His efforts to uncover new evidence to prove his innocence are particularly

reasonable in light of his limited access to investigative resources from behind

prison walls. Mr. Moore could not have gotten the DAO and police files that

contained exculpatory information without the assistance of counsel. Mr. Moore

establishes a *prima facie* case of due diligence.

## III.  CONCLUSION

For the foregoing reasons, and those stated in Moore's motion and the

attachments thereto, Mr. Moore respectfully requests that this Honorable Court

issues an order authorizing the District Court to consider his successive habeas

corpus petition. Mr. Moore also asks that this Court hold his motion and the

petition in abeyance, pending the resolution of his state court proceedings, and

suggests that, if this Court grants the abeyance, Mr. Moore will submit monthly

reports updating the Court on the progress of the state proceedings.

Respectfully submitted,

*/s/ Nia O. Holston*
Nia Holston
PA I.D. No. 327384
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA 15221
(267) 357-0948
nia@alcenter.org

18

*/s/ Bret Grote*
Bret Grote
PA I.D. No. 317273
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA 15221
(412) 654-9070
bretgrote@abolitionistlawcente
r.org

*Counsel for John Moore*

Dated:     April 22, 2022

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

John Moore,

Docket No.:

Petitioner,

v.

Jamie Sorber, Superintendent, State
Correctional Institution at Dallas; Josh
Shapiro, Attorney General, Office of
Attorney General; Lawrence S. Krasner,
District Attorney, Philadelphia County,
Pennsylvania

Respondents.

## THIRD PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 2254 AND
## CONSOLIDATED INITIAL MEMORANDUM OF LAW

Bret Grote
PA I.D. No. 317273
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA 15221
(412) 654-9070
bretgrote@abolitionistlawcenter.org

Nia Holston
PA I.D. No. 327384
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA 15221
(267) 357-0948
nia@alcenter.org

# Table of Contents

INTRODUCTION ................................................................................................ 4

RELATED PENDING LITIGATION ..................................................................... 6

ELIGIBILITY AND BASIS FOR RELIEF.............................................................. 6

RELEVANT PROCEDURAL HISTORY ................................................................ 6

   A.  Trial ............................................................................................................ 6
   B.  Post-Trial Motions and Appeals ..................................................................... 7
   C.  PCRA Petitions.............................................................................................. 7
   D.  Habeas Corpus Petition ................................................................................. 9

STATEMENT OF THE FACTS RELEVANT TO PETITIONER'S CLAIM ...... 10

   A.  The Incident and Subsequent Investigation................................................... 10
   B.  The Preliminary Hearing ............................................................................. 14
   C.  Mr. Moore's Trial, Conviction, and Post-Trial Efforts to Obtain Relief...... 15
   D.  Newly Discovered Evidence Upon Which This Petition Is Based.............. 18
   E.  Mr. Moore's Efforts to Prove His Innocence ............................................... 31

CLAIMS FOR RELIEF ........................................................................................ 33

   A.  The withheld evidence was suppressed, exculpatory, and material,
   undermining reliability in Mr. Moore's conviction, violating his due process
   rights, and warranting relief. ............................................................................. 35
      i.  The undisclosed evidence that law enforcement identified an alternate
      suspect – Robert Turner – who matched witness descriptions and has since
      been identified as the actual perpetrator is exculpatory and material .............. 36
      1.  The withheld ballistics, property search, and lineup evidence are
      exculpatory........................................................................................................ 43
   B.  Robert Hunter's Declaration constitutes newly-discovered evidence
   requiring a new trial........................................................................................... 48
   C.  Mr. Turner's arrest photo constitutes newly discovered evidence requiring a
   new trial. ............................................................................................................. 50

ALLEGATIONS PURSUANT TO 28 U.S.C. § 2244 ........................................... 51

REQUEST TO HOLD THESE PROCEEDINGS IN ABEYANCE ...................... 52

CONCLUSION AND REQUEST FOR RELIEF.................................................... 54

Petitioner, JOHN MOORE, through undersigned counsel, petitions for habeas corpus relief pursuant to 28 U.S.C. § 2241 et seq. and the Constitution of the United States.

This petition is being submitted in connection with a motion filed in the United States Court of Appeals for the Third Circuit seeking authorization to file a successor habeas corpus petition, pursuant to 28 U.S.C. § 2244. Accordingly, this petition assumes that such permission has been granted.

## INTRODUCTION

Mr. Moore was convicted in the Commonwealth of Pennsylvania of second-degree murder, and related offenses in 2000 in connection with a 1996 incident outside of a North Philadelphia Chinese restaurant at 9th and Somerset Streets. The robbery and subsequent shooting resulted in the murder of a Sammy Cedano and injuries sustained to two others.

Mr. Moore has spent 26 long years imprisoned due to a conviction that was based solely on the compromised, self-interested trial testimony of a 15-year-old, James Lamb, who testified against him in order to be spared the fate of mandatory, permanent imprisonment that Mr. Moore continues to endure. Now, for the first time, Petitioner possesses evidence that the police and prosecution suppressed a document containing the identity of an alternative suspect, Robert Turner, downloaded in connection with the prosecution of the Petitioner Mr. Moore. Before and after the trial, *all* the evidence except Lamb's compromised testimony has pointed toward the person that the Petitioner and counsel now know as Robert Turner, and not John Moore. Mr. Turner, previously known only as "Newton" to Petitioner, James Lamb, and others, (1) was present at the scene of the crime according to trial testimony; (2) fit the description given by all three eyewitnesses of the shooter – none of whom identified Mr. Moore; (3) was implicated under that nickname by three witnesses in a 2004 PCRA filing, including by Mr. Lamb himself in a recantation; (4) was close friends with James Lamb according to several witnesses (5) has once again been identified by a witness who has newly come forward and revealed that he saw Mr. Lamb and this alternative suspect, Robert "Newton" Turner, commit the crime that John Moore was falsely convicted of. Petitioner's lack of knowledge of Newton's real name hindered the investigation of trial and post-trial counsel who did not know his identity. The police and prosecution had access to such information and it was their obligation to disclose such

4

information in the interest of justice. Instead, the evidence of an alternate suspect was suppressed, and this suppression fatally undermined the reliability of the trial and subsequent post-conviction proceedings. If armed with this evidence, trial counsel could have developed and presented a viable alternative suspect defense that would have changed the outcome of the trial. With the information gleaned from the suppressed documents, the Petitioner now knows the following additional facts about Robert Turner: (1) he lived just down the street from the credible, uninvolved eyewitness who stated that she could identify the second perpetrator because she had seen him at least five times before, and (2) he was arrested for narcotics offenses just a few weeks prior to the shooting of Sammy Cedano **at the same location where the robbery took place**, matching the eyewitness description of the perpetrators as two teenaged neighborhood drug dealers.

Additionally, Mr. Moore was prejudiced by further *Brady* violations recently uncovered and raised in a timely fashion in this Petition. First, despite knowing that three credible eyewitnesses rejected Moore as the shooter, police kept trying to find other evidence to link Mr. Moore to this crime. They failed to find additional evidence, but they kept the content and specifics of that failure from Petitioner. In fact, ballistics evidence proving that a gun belonging to Mr. Moore was not a match for the one used in this case was suppressed. A fruitless police search of Mr. Moore's home for property stolen from the victims in this case was also suppressed. Further, it was also not disclosed to trial counsel that the eyewitnesses not only failed to identify Mr. Moore in a photo array but also did not identify any of the other people whose pictures were shown to them whose physical features were similar to those of Mr. Moore.

Viewed cumulatively, as *Brady* evidence must be pursuant to *Kyles v. Whitley*, these exculpating facts combined with the suppression of Robert "Newton" Turner as an alternative

5

suspect and the newly-discovered evidence that also implicates Mr. Turner as the actual co-conspirator with Mr. Lamb, require reversal of Mr. Moore's conviction and his immediate release from prison.

## RELATED PENDING LITIGATION

In addition to moving in the United States Court of Appeals for the Third Circuit for leave to file this successor *habeas corpus* petition, Mr. Staten, as noted above, filed a petition under the Pennsylvania Post Conviction Relief Act ("PCRA") on April 20, 2022, in the Court of Common Pleas, Philadelphia County, Pennsylvania.

As of the date of this filing, requests for an evidentiary hearing, vacatur of his conviction, and release from custody are pending before the state court. The allegations contained in the PCRA petition largely mirror those contained herein. In the interest of comity and judicial economy, Mr. Moore therefore requests that the Court hold this habeas petition in abeyance pending the resolution of the state court litigation.

## ELIGIBILITY AND BASIS FOR RELIEF

Mr. Moore sets forth in this petition claims based on due process violations under the fourteenth amendment to the United States Constitution and on his actual innocence.

## RELEVANT PROCEDURAL HISTORY

1.     Mr. Moore was represented by attorney Nino Tinari at his preliminary hearing, pre-trial motions, trial, and post-verdict motions, Barbara McDermott in his first PCRA proceeding, and Barnaby Wittels for his first habeas petition, and Jennifer Merrigan on his first amended fourth PCRA petition. At all other times Mr. Moore has proceeded pro se.

### A. Trial

2.     Mr. Moore's bench trial proceeded before The Honorable Steven Geroff on May 5-9, 2000 on general murder charges, robbery, and other related offenses. Mr. Moore was convicted on May 9, 2000 and sentenced to life without the possibility of parole for second-

degree murder. Since Mr. Moore's conviction, he has made numerous efforts to obtain relief through the courts.

### B. Post-Trial Motions and Appeals

3.      On direct appeal the Superior Court vacated the concurrent sentences imposed for Petitioner's robbery counts, because they were the predicate for the felony murder conviction. *Com. v. Moore*, 782 A.2d 1057 (Pa.Super. 2001).

### C. PCRA Petitions

4.      On November 15, 2002, PCRA counsel filed a letter pursuant to *Com. v. Finley*, 550 A.2d 213 (Pa.Super. 1988), claiming that Mr. Moore failed to satisfy the three-prong test for ineffective assistance of counsel. Mr. Moore appealed the notice of intent to dismiss based on the *Finley* letter, based on the statement of Lapricia Jessup, who would have testified that Lamb had told her an inconsistent story about the robbery. Jessup was Moore's girlfriend and the older sister of Lamb, and would also have offered context for why Lamb was in Moore's car on July 22 and, more generally, explained that they were associated because of her, in contrast to the Commonwealth's theory that 23-year-old Moore was associating with 15-year-old Lamb for more nefarious purposes. He submitted to the court pre-trial letters he had sent informing counsel of another exculpatory witness, Herman Brooks, who wrote an affidavit swearing that Lamb told him that he had been incarcerated for "the body that Newton did on 9th Street." Inexplicably, PCRA counsel for Mr. Moore failed to raise an ineffective assistance of counsel claim based on Mr. Tinari's failure to investigate the affidavit of Mr. Brooks and call him as a witness at trial. Ultimately, the court denied relief, and the Superior Court affirmed. *Com. v. Moore*, No. 311 EDA 2003 (Pa. Super. Ct. 2004).

5.    Judge McEwan dissented, writing that he would reverse the order of the trial court and remand for an evidentiary hearing on the issue of whether trial counsel was ineffective for failing to present impeachment evidence. *Id.* (McEwen, P.J.E., dissenting). The dissent admonished PCRA counsel for neither amending nor supplementing Mr. Moore's pro se petition, adding that the record did not support "a conclusion that PCRA counsel 'participated meaningfully' when she failed to seek an evidentiary hearing and subpoena witnesses, including the one witness who could have supported appellant's defense." *Id.* Judge McEwen took issue with the fact that counsel was permitted to withdraw, emphasizing that "every post-conviction litigant is entitled to at least one *meaningful* opportunity to have . . .issues reviewed, at least in the context of an ineffectiveness claim." *Id.* n4. (emphasis in original) (internal citations omitted).

6.    Mr. Moore subsequently filed a second state PCRA proffering an affidavit from Ms. Jessup, which was also dismissed.

7.    In 2005, Mr. Moore filed a third state PCRA petition based upon a newly discovered affidavit from James Lamb, recanting his testimony that inculpated the Petitioner, and revealing that his co-conspirator was in fact Newton. Lamb asserted that he was pressured to give up Moore and did so in order to avoid the death penalty. Mr. Moore supplemented that petition with a signed and sworn statement he received from Omar Moore, who stated that James Lamb told him that he and Newton had "shot some dudes" the night before. He later supplemented the petition again with a declaration from Brian Scott, who stated that he was incarcerated with James Lamb prior to John Moore's trial and that Lamb stated he was going to "lie on Jizz and get a deal." Mr. Scott said that he did not know at the time that Jizz was John Moore until about three weeks before authoring his statement. That petition was subsequently

8

dismissed on September 19, 2006, the court finding Lamb's recantation not credible because it

did not explain why his implicating Moore rather than Newton was necessary for him to obtain a

favorable plea deal.[1] *See Com. v. Moore*, 2693 EDPA 2006 (Pa. Super. 2007).

### D. Habeas Corpus Petition

8.    Petitioner was denied habeas corpus relief without a hearing or a certificate of

appealability. *Moore v. Diguglielmo, et. al,* No. 05-2796 (E.D. Pa. March 27, 2009).

9.    Petitioner filed his fourth state PCRA petition on August 16, 2012. The

Philadelphia Court of Common Pleas issued a dismissal notice on July 17, 2017 and the

Petitioner responded on August 17, 2017. Prior counsel Jennifer Merrigan entered an appearance

---

[1] Of course, despite the court's dismissal of the idea that that police would coerce a juvenile to inculpate one person over another, government officials often give more favorable plea deals to defendants who provide information regarding the government's preferred targets. Brad Heath, "Federal Prisoners use snitching for personal gain," *USA Today* (Dec. 14, 2012) https://www.usatoday.com/story/news/nation/2012/12/14/jailhouse-informants-for-sale/1762013/ (last visited Jan 23, 2022). Moreover, there is ample evidence that juveniles are more susceptible to coercive interrogation tactics. Alison D. Redlich & Gail S. Goodman, "Taking Responsibility for an Act Not Committed: The Influence of Age and Suggestibility," 27 LAW AND HUMAN BEHAVIOR 141 (2003). Furthermore, it is a common tactic to pressure witnesses to implicate one person, even if the evidence the witness provides implicates or involves a different person. Consider the case of Reuben White, who was acquitted of the murder of Naasir Westbrook. In White's civil lawsuit following his acquittal, he alleged that three witnesses fabricated statements implicating him after police threatened to charge them with murder. In the case of one witness who told police that he rented his car to an Asian person instead of Mr. White, police kept him in an interrogation room for 30 hours and caused him to believe that "if he did not identify Mr. White he would be criminally charged in relation to Mr. Westbrook's death." The city settled White's lawsuit out of court for $750,000. Samantha Melamed, "The Homicide Files Database," *The Philadelphia Inquirer,* https://www.inquirer.com/crime/inq2/philadelphia-murder-homicide-cases-database-20210507.html#/ (last visited Jan. 22 2022). Also consider the case of Recco Ford, whom two witnesses were coerced into signing statements implicating Ford, even though police detained another person who matched eyewitness descriptions of the shooter but released him. Both witnesses described the actual shooter as far taller than the 5'1 Recco Ford. The city settled that lawsuit for 600,000. *Id.* And with the disclosure of the Robert Turner narcotics blotter and the filing of this petition that shows that Newton was Mr. Turner the fallacy of the court's reasoning can be further exposed because Robert "Newton" Turner was dead by the time James Lamb pointed the finger at Moore, which more than explains why Mr. Lamb would not receive a favorable deal for testifying against his deceased co-perpetrator.

and filed a first amended state PCRA petition. Current counsel began representing Mr. Moore in October 2021.

## STATEMENT OF THE FACTS RELEVANT TO PETITIONER'S CLAIM

### A. The Incident and Subsequent Investigation

10.     On July 7, 1996 at 12:10 am, a robbery in front of a North Philadelphia Chinese Store on the corner of 9th and Somerset Streets left two men (William Cintron and Danny Diaz) injured and one (Sammy Cedano) dead.

11.     William Cintron was taken to the hospital. Diaz was interviewed that night at the police station. He reported that he was waiting to cross the street when a young, light skinned Black individual came up behind him and put a revolver ("like a .32 snubnose") to the side of his head. Diaz described him as 17-21, 5'4", 120-130 pounds, with no facial hair.

12.     Diaz described the second perpetrator as a little taller, 5'6"-5'7", 140-150 pounds, and did not give an age description. App. 79-83. Police notes also reflect that a woman in the Chinese store knew who did it, though law enforcement made no efforts to speak with or identify her.[2]

13.     In the hours following the robbery, police canvassed the neighborhood and were alerted to an eye-witness to the crime, an eleven-year-old girl named Domonique Maxwell,[3] whose mother Shirley told detectives that her daughter saw "the job go down" *by two 16- or 17-year-old neighborhood drug dealers*, whom she recognized because they sold drugs in front of

---

[2] It would make sense that someone inside the store knew who did it, since all accounts reveal that the perpetrators were in the Chinese store just before the robbery, and some recount that the incident actually began in the store.

[3] This filing refers to Domonique Maxwell and Shirley Maxwell by first names for clarity.

the Chinese store across from the Maxwell home. App. 90. Shirley told the police that she was moving, and asked them to wait to interview her daughter until after their move. App. 78.

14.     On the morning of July 22, in an unrelated incident, police arrested *15-year old James Lamb and 23-year old Moore* while Lamb was riding in a vehicle driven by Mr. Moore. The two knew one another because Moore was dating Lamb's older sister, Lapricia Jessup. At the time of arrest police recovered from Lamb his .380 automatic, which he later told officers he had used in the robbery on July 7th. App. 91-96. Mr. Moore fled the scene and was later arrested on July 23 at his apartment on unrelated charges. Lamb was subsequently released from police custody.

15.     Later in the day on July 22, officers interviewed William Cintron for the first time and Diaz for the second time. Cintron told police that a young light skinned Black male pulled a gun from his waist band in the Chinese store, and that there was a taller, dark skinned Black male approximately 5'8" and between the ages of 18-22 with him. App. 86. The light skinned perpetrator had a revolver and shot Cintron. App. 87. Cintron reported that he thought he had seen the males before, as he has relatives in the area. *Id.* Police showed each man a photo array. Both men readily identified James Lamb as the light skinned perpetrator. App. 84, 87.

16.     Two days later, on July 24, officers followed up with Shirley and Domonique Maxwell. Shirley confirmed her initial statement, telling officers that she came downstairs from the bath when her daughter reported that she had seen a murder across from their house, and that she saw who did it. App. 78.

17.     Domonique confirmed that she had witnessed the murder and that she knew who did it, telling police, as she had reported to her mother, that she was familiar with both

11

perpetrators from the neighborhood.[4] She had known one of the perpetrators, "Shortie" (who her mother knew as "Reds") for one year. App. 74. She had spoken with him in her schoolyard. *Id.* She described Shortie as light skinned with blondish hair and a scar on his face. *Id.* She recognized the second perpetrator as well. He also sold drugs in her neighborhood. She reported having seen him 5-6 times, though she did not know his name. She described him as dark-skinned, older than Shortie, taller than Shortie and heavier than Shortie. App. 75.

18.     Police showed Domonique a photo array with nine (9) photographs, from which she identified two persons. She positively identified "Shortie" as James Lamb.[5] Lamb, she told police, was "the one with the gun who was shooting the gun." *Id.*

19.     A week later, on July 30, police returned to the three witnesses with a new photo array, this one with five (5) photos, including one of John Moore. None of the three witnesses identified Mr. Moore. App. App. 076, 085, 089.

20.     On August 10, 1996, Lamb was arrested for the murder of Cedano. On September 12, 1996, Mr. Lamb had his preliminary hearing. Police continued to zero in on Mr. Moore as the suspect despite the lack of identification from witnesses.

21.     During the investigation, prosecutors acquired a list of all recent narcotics arrests in the area surrounding the Chinese store, likely due to Domonique's identification of the perpetrators as neighborhood drug dealers. The most recent arrest identified on the narcotics blotter was Mr. Robert Turner, who was arrested on June 4, 1996, for knowing and intentional

---

[4] Shirley Maxwell also referred to a 7/15 visit from officers, but there are no law enforcement notes of this visit. App. 78.

[5] The interview record listed the PID numbers for the individuals in the lineup, but no other identifying information.

12

possession of 420 mg of heroin just steps from the Chinese store where the robbery took place. App. 100.

22.     The narcotics arrest blotter listed Mr. Turner's age as 17, matching the description noted from the police neighborhood surveys. *Id.*

23.     The narcotics arrest blotter lists Mr. Turner's address as 934 W. Silver Street, only about a dozen houses down the block from where Domonique witnessed the shooting. That Mr. Turner lived close to Domonique corroborates her statement that she had seen the suspect at least five times before. Despite this, none of the witnesses were ever shown a photo of Mr. Turner.

24.     Shortly after Mr. Lamb's preliminary hearing, Turner died in his home on or about October 18, 1996 following a mental breakdown. App. 102.

25.     In June 1997, nearly a year after the crime and approximately nine months after the death of Mr. Turner, Mr. Lamb was questioned by police and gave a statement implicating Mr. Moore in the shooting. App. 092. With a certain life-without-parole sentence awaiting him if he did not cooperate, and even a possible death sentence, on October 10, 1997, Mr. Lamb entered into a formal agreement with the District Attorney's Office for a lighter sentence in exchange for testimony against Moore. Still, the police hesitated and did not arrest or charge Mr. Moore for months after receiving Mr. Lamb's statement implicating John Moore.

26.     Nearly three months after Mr. Lamb's statement, on January 3, 1998, seventeen months after the crime, Mr. Moore was arrested and charged with the murder of Cedano.

27.     According to his 2004 recantation, Mr. Lamb told police on June 1997 that Newton did it, but that they "told me if I didn't say it was John than they was going to make sure I go on death row. That's when I lied and said John was there." App. 374.

28.     After testifying against Mr. Moore, Mr. Lamb was sentenced to 5-30 years in prison, and he served approximately seven years prior to being paroled.

**B. The Preliminary Hearing**

29.     Mr. Moore's preliminary hearing occurred on January 27, 1998 before Judge Louis Retacco. James Lamb testified. Carlos Vega represented the Commonwealth, and Nino Tinari represented Mr. Moore.

30.     Before proceeding with the witness examination, counsel stipulated for the purposes of the preliminary hearing that Mr. Sam Cedano was shot multiple times in the back on July 7th, 1996 at 12:10 am and was pronounced dead at 12:38 a.m. They stipulated that the Medical Examiner ruled his death a homicide. Further, counsel stipulated that two other men, William Cintron and Daniel Diaz were also shot at and injured and did not give anyone permission to take their money. Preliminary Hearing Tr. 6.

31.     James Lamb pled guilty prior to proceeding with his testimony. Mr. Vega noted that Mr. Lamb, his attorney Fortunato Perri, and the Commonwealth had entered into an agreement with respect to his testimony. Mr. Perri was not present for his testimony at the preliminary hearing.

32.     James Lamb testified that he was with John the night of July 7th, 1996 and that they decided to rob some people. Preliminary Hearing Tr. 13. He stated that they both went into the Chinese restaurant, and John came out before him, and when James came out, John had held three men up and was going through their pockets. He stated that John had a revolver and that James also had his gun pointed at the three men. Preliminary Hearing Tr. 15-16. He then stated that when he got the money he heard a shot roll off, and two men tried to jump up and run. At

14

that point, Lamb testified that they both started shooting and then they left. Preliminary Hearing Tr. 21. He stated that they met up later and split up the money. Preliminary Hearing Tr. 22.

33.     On cross-examination, James Lamb testified that he was arrested on April 12, 1996, even though the incident that led to his arrest did not occur until July 7th 1996. Preliminary Hearing Tr. 26. He testified that he was high on codeine and angel dust at the time of the incident. Preliminary Hearing Tr. 35. He testified that Newton was there and that he lived in the neighborhood, but that he didn't know his last name. Preliminary Hearing Tr. 45. Upon cross, he testified that he told the complainants to lay down on the ground, even though on direct he stated that John told them to do so. Preliminary Hearing Tr. 48. He also testified that he had an automatic and that police found it on him in a separate arrest. Preliminary Hearing Tr. 59.

34.     Judge Retacco held Mr. Moore over for trial on all charges.

### C. Mr. Moore's Trial and Conviction

35.     Mr. Moore's bench trial began on May 4, 2000. Carlos Vega prosecuted the case for the Commonwealth. Mr. Tinari again represented Mr. Moore, and Judge Steven Geroff presided.

36.     Officers Trenwith, Bannon, Dones, and Silcox provided testimony about the crime scene investigation immediately after the incident. Detective Green provided testimony about his investigation at the hospital where Diaz and Cintron were hospitalized. Neither the officers nor the detective provided any evidence linking Mr. Moore to the crime.

37.     Domonique Maxwell, the independent witness testified on the second day of trial. She testified that she lived at 904 W. Silver Street and that on July 7th, 1996 she saw two men firing their guns and two men running away from her front door. N.T. 5/5/00 p. 6-7. She said that she saw the two perpetrators leave and run toward Somerset Street. N.T. 5/5/00 p. 14. She

15

testified that she was friendly with James Lamb [whom she called Shortie] and saw him about once per week prior to the incident. N.T. 5/5/00 p. 16.

38.     The prosecution theorized that Mr. Moore was the main shooter. The theory had its problems from the outset as Mr. Lamb was found to be in possession of a .380 automatic gun – the same gun used to kill Sammy Cedano, in contravention of the Commonwealth's theory that Mr. Moore was the ringleader.

39.     On cross examination, Domonique Maxwell testified that the person who was shot and fell to the ground on her corner approximately 20 feet from her door. N.T. 5/5/00 p. 36-37. She testified that she had seen the second perpetrator before on the corner of 9th and Silver and he was familiar to her, and that if she was shown a photograph of the person she saw that night she would have picked that person out of the photo array. She then confirmed that none of those pictures that she saw in the photo array that included John Moore was the person she recognized as the second perpetrator. N.T. 5/5/00 pp. 48, 50.

40.     Daniel Diaz also testified that on the night of the incident he came with his brother Sammy Cedano and his friend William Cintron to buy heroin. N.T. 5/5/00 p. 62 He testified that he walked past the Chinese store and saw his brother and Mr. Cintron lying on the ground with another person standing over them. That person told him to law down and asked if he had money and started going through his pockets and beat him over the head with a pistol. N.T. 5/5/00 p. 64. He stated that the lighter skinned perpetrator told him to get down on the ground. *Id.* He then stated that he heard someone say "don't kill him" and he heard two gunshots and got up and started running toward Lehigh. N.T. 5/5/00 p. 69.  He testified that he identified the lighter skinned man but was not able to identify the other person. N.T. 5/5/00 p. 76.

16

41.     James Lamb testified on May 8, 2000. He testified that he was getting high on angel dust and pills around 9th and Somerset around midnight. N.T. 5/8/00 p. 11. He stated that when he came out of the store John was already robbing the three men, in contravention of Diaz's testimony that he was walking by when James told him to get down on the ground. N.T. 5/8/00 p. 14 and his own testimony at the preliminary hearing. Preliminary Hearing Tr. P. 48. He then testified that he heard a gun go off and one of the men jumped up and James started to shoot. N.T. 5/8/00 p. 17. He then stated that after they were finished shooting they ran in opposite directions. N.T. 5/8/00 p. 20.

42.     On cross examination, James also admitted he robbed people in the past to get money to use for drugs. N.T. 5/8/00 p. 35. He testified that he knew Newton and that he was a friend of his. N.T. 5/8/00 p. 46. He stated that Newton was in the store when John left the store and that James and Newton were in the store for about ten or fifteen minutes together. N.T. 5/8/00 p. 56 and that Newton left a few minutes before he did. He testified that the same person who had been hit in the head was the same person who was later shot in the head. N.T. 5/8/00 p. 67. He also testified that he did not hit anyone that night, in opposition to the statement he provided to police on June 9, 1997, in which he said that he one of the victims in their back.

43.     The Commonwealth called William Cintron on the fourth day of trial. He testified that he came to Philadelphia with Daniel Diaz and Sammy Cedano to purchase heroin at 9th and Somerset Streets. N.T. 5/9/00 p. 8. He testified that a light skinned guy was in the store, and then he followed them out and shortly after that he pulled out a gun and said this is a stickup. N.T. 5/9/00 p. 9. He stated that he noticed he was "real young" and that he kept trying to talk to him and then he kept hitting Danny over the head. N.T. 5/9/00 p. 10. He stated that at first the light skinned person was by himself and then a dark skinned guy showed up and told them to give up

17

the gold and money. *Id.* He testified that the dark skinned perpetrator shot Sammy Cedano and then Cintron lunged at the lighter skinned person and told Daniel to run. He stated that the light skinned man shot him and took a few shots at Daniel while he was running. N.T. 5/9/00 p. 13. He stated that he identified the light skinned person at the Police Administration Building, but could not identify anyone when shown a photo array that included John Moore. N.T. 5/9/00 p. 29.

44.     There was a stipulation between counsel regarding the testimony of Officer William McKenzie of the Firearms Identification Unit that three shell casings and three bullet specimens were recovered from the scene. N.T. 5/9/00 p. 75-76. Counsel also stipulated the bulled that was recovered from the body of Sammy Cedano was a .380, the same kind of gun that James Lamb testified that he possessed. *Id.* Counsel stipulated further that Officer McKenzie would testify that there were "insufficient markings for him to state to a degree of reasonable certainty that these projectiles that were .380 were fired from that handgun nor the casings were fired from that handgun, but he would testify if asked on cross examination that certainly that .380 could have fired those casing, but he could not state based on the markings that it was." N.T. 5/9/00 p. 78.

45.     Before rendering his verdict Judge Geroff stated that James Lamb was "a polluted source" and that he did not believe everything he said and that he did testify "in a manner which minimized his own participation," but nonetheless found Mr. Moore guilty of second-degree murder. N.T. 5/9/00 p. 127.

**D. Newly Discovered Evidence Upon Which This Petition Is Based**

46.     Newly discovered evidence shows that the prosecution failed to pursue credible leads that pointed to Mr. Robert "Newton" Turner, whose name prosecutors and police knew in

18

connection with the robbery and killing of Sammy Cedano. Specifically, prosecutors obtained a list of recent drug crimes near the Chinese store where the robbery and shooting took place. That most recent drug arrest, just steps from the Chinese store and just one month prior to the incident in question, was the arrest of Robert Turner, who matched the physical description of the perpetrator as a teenaged, darker skinned person who was taller and heavier than James Lamb. App. 376.

47.    The Narcotics Arrest Blotter included a list of 121 people, along with their demographic and personal information, including their age, race, gender, address, PP number, and date and location of arrest. However, based on age,[6] race and gender alone, the list of potential suspects dwindled to just 9 names. When narrowing for drug arrests in the year prior to July 1996, the list shortens to 8 names. That list of 8 names includes a Robert L. Turner, aged 17, who according to the Narcotics Arrest Blotter, lived at 934 W. Silver Street. App. 100.

48.    Neither the Homicide File nor the District Attorney File indicate any attempt to follow up on the information obtained in the Narcotics Arrest Blotter, even though they had readily available access to each individual's arrest record, address, and photo. If the prosecution deemed it relevant enough to search and download such information, it is inexplicable that they would then choose to do nothing, especially because none of the witnesses identified John Moore.

49.    Petitioner first obtained this evidence on April 23, 2021 and could not have obtained this information earlier as it has at all times been in the sole possession of the Commonwealth. Only through agreement with the DAO has undersigned counsel been able to

---

[6] Counsel for Mr. Moore gave a wide berth for age ranges to encompass all individuals between the ages of 15-26 at the time of the incident. Even still, the list dwindled dramatically.

19

review this evidence. Counsel for Petitioner reviewed the arrest records and photos of the narrowed suspect list. Several more of the eight remaining on the suspect list can be eliminated based on their physical characteristics and likely incarceration status. For instance, J.B. was sentenced to a period of confinement on June 12, and June 13, 1996, less than a month before the incident. App. 128. K.D. was sentenced to a minimum of 6 months and a maximum of 23 months on June 28, 1996. App. 136. A.L, R.S., S.J, and L.T.'s incarceration status on 7/7/96 is uncertain – they were all facing charges at the time of the incident, however it is unclear from the evidence in counsel's possession if they were released pending disposition of their cases. App. 148-191. However, A.L., S.J., and L.T.'s height appeared to be several inches taller than the description of the second perpetrator given by the eyewitnesses to Sammy Cedano's murder. App. 148, 178, 253. The final alternate suspect's S.W.'s height was 5'2, shorter than James Lamb's in contravention of the eyewitness descriptions of a taller second perpetrator. App. 277.

50.    Therefore, based on these characteristics alone, six of the eight alternate suspects from the narrowed narcotics blotter could have definitively been eliminated pretrial, leaving only two – R.S. and Robert "Newton" Turner.[7]  Evidence of these suspects, and the lack of investigation into them, was withheld from trial counsel.

51.    The withheld evidence reveals that early in the investigation, officers identified credible leads and alternate suspects who were young teenagers suspected of drug activity in the neighborhood, which was consistent with the statement of Domonique Maxwell, who was familiar with the perpetrators.

---

[7] Counsel for the Petitioner was unable to procure Mr. Turner's arrest record through the DAO. However, Mr. Turner's mother, Valerie Turner Murray provided counsel with a statement addressing her son's arrest record. She stated that she bailed him out of jail in the weeks prior to her mother's death in August 1996. She stated that though he had been arrested previously, he had never spent any significant time incarcerated.

52.     With the filing of this successive habeas petition, the failure of the police moves from the theoretical realm into reality. We know that police and prosecutors had access to information that would have led to the arrest of Robert Turner for his participation in the gunpoint robbery and killing of Sammy Cedano if they had chosen to use such information. If prosecutors had not improperly suppressed the information that they identified alternative suspects, that information could have been used by defense counsel to identify Mr. Turner. And because the prosecution suppressed this evidence, it was able to frame and convict John Moore for a crime he did not commit.

The Identity of Newton, Previously Unknown to Mr. Moore, is Confirmed to be Mr. Turner

53.     In 2004, Mr. Lamb drafted and sent a notarized recantation to Mr. Moore.

54.     In that recantation, James Lamb stated that he told detectives in June 1997 "that a friend I used to hang with in the neighborhood name Newton was with me, they kept pointing to a picture of John saying what about him. Then they told me if I didn't say it was John than they was going to make sure I go on death row. That's when I lied and said John was there." App. 376.

55.     Mr. Lamb states that "after John left, a couple of minutes later I went outside and Newton was robbing the dudes, that's when I helped him. John wasn't there he had been left." Mr. Lamb does not mention Newton's real name or any other identifying information. *Id.*

56.     Mr. Moore attempted to communicate with Mr. Lamb after receiving his recantation by asking third parties to have Mr. Lamb contact him or his counsel. Mr. Moore did not have a phone number or address for Mr. Lamb.

57.     The name Newton in reference to this gunpoint robbery was not unknown to the trial court. During his preliminary hearing testimony, Mr. Lamb mentioned a friend from his

21

neighborhood named "Newton" that was in the Chinese restaurant at the time of the incident. Mr. Lamb stated that he did not know his last name. He was not asked if he knew his first name, if he knew whether or not Newton was one of his names or a nickname, or where he lived. Preliminary Hearing Tr. 45.

58.    During his trial testimony, Mr. Lamb also mentioned that Newton was in the Chinese store with him for about ten to fifteen minutes immediately prior to the shooting, but that Newton left the Chinese store. N.T. 5/8/00, 55-56.

59.    Over the years, Mr. Moore asked many people who were familiar with Newton for information about him, including his full, real name, and if they knew how to get in touch with him. Nobody Mr. Moore spoke to ever had helpful information, nor did anybody know this person by any name other than Newton. He did not have any luck tracking down the identity of Newton, however, until previous counsel Jennifer Merrigan began representing him in 2021.

60.    Mr. Moore had limited family and community support, and was not able to access the nonpublic, restricted databases that attorney Merrigan had access to, nor could he access any other source that would lead him to contact information for those that knew Newton.

61.    Though Mr. Moore heard that Newton died and remembered that he had a sister named Daffanie, he had no way of finding out additional information about him, until Ms. Merrigan utilized nonpublic investigatory databases, which have improved in scope and efficacy over the years, and resources on September 15, 2021 to track down a Daffanie Turner who once lived on Silver Street.

62.    Petitioner first confirmed that Mr. Turner is Newton because an investigator was able to contact his sister, Daffanie Turner, in or around December 2021. Ms. Turner then agreed

22

to speak with counsel from the Conviction Integrity Unit of the Philadelphia District Attorney's Office.

63.    Daffanie confirmed to the DAO that her brother Robert Turner was known as Newton, that he was friends with James Lamb, that he was 17 years old at the time of his death, and that he carried a gun, used drugs, including PCP, and committed robberies. When asked by the DAO if her brother was involved in the shooting of Sammy Cedano, Daffanie stated that she did not know but that "anything is possible." App. 99.

64.    In addition to statements made to the DAO, Daffanie Turner also wrote and self-published a book about her life in 2017, entitled, *I'm Not Tryna Hurt You...DAFF TALES*. Counsel for Mr. Moore obtained a copy of that book on November 23, 2021 after the investigator for Mr. Moore discovered it through an internet search after learning Ms. Turner's name.

65.    The book included numerous passages referencing her brother "Newtin,"[8] who she says was born 4/11/1979 and died on 10/18/1996. The birth date matches the DOB listed in police records for Robert Turner.

66.    In one passage, she writes:

> "First of all Rest in peace to my only brother.
> I can go further but I rather continue with my brother
> I can't front he was mad a little out of control
> Never told but sold drugs between corners and street poles
> He sold crack, cracked me up, stacked up, backed up
> And still said his pockets was fucked up
> He was real like that and if I needed him in fact he was there like that with no rap ready and strapped to take a nigga under no wonder the runner with the gunner but it was funner when he got away." Daffanie Turner, *I'm Not Tryna Hurt You...DAFF TALES* 116 (2017).

---

[8] Daffanie Turner and Valerie Turner Murray both spelled Newton as "Newtin." For consistency and clarity, we utilize the Newton spelling in this legal filing.

23

67.    In another passage, she writes about her brother's descent into drug addiction:

> "I looked at my mom that had an expression of disappointment on her face and said, "He is gone mom, his brain is fried. He is not even the same person anymore." By this time my brother had lost a lot of weight and his skin complexion had turned 5 shades darker…I always looked at my brother as being extremely depressed and the drugs that he used did not help the situation at all. My brother got caught up with the wrong crowd. The type of losers that thought it was fun and cool to just get high all day. This is the same losing crowd that walked back and forth through the block cooping angel dust, pills and weed; with no form or purpose in life. *Id.* at 71-72

68.    In another passage, she writes:

> "The dude that shot my brother was from the same hood, but I was told that he was tired of my brother robbing him. From what I was told, my brother didn't sell drugs. My brother was a stick-up boy that went around robbing drug dealers. He was shot in the butt running away from a robbery that went wrong. Because my brother was shot twice, he really thought that he could not be touched. He thought that he was superman out there in them streets." *Id.* at 73.

69.    The suppressed evidence pointing to Robert Turner as an alternate suspect, along with Daffanie Turner's identification of Robert Turner as Newton together provide compelling evidence that Mr. Turner, and not Mr. Moore, committed the gunpoint robbery and murder of Sammy Cedano.

70.    The Petitioner's legal team also met with Newton's mother, Valerie Turner Murray, after Daffanie Turner put them in touch on March 23, 2022. Ms. Murray provided a statement to the Petitioner's counsel on April 5, 2022. She stated that she lived with her children at 934 W. Silver Street in 1996, and that she gave him the nickname Newton at a young age, and that everyone knew him as Newton, not Robert. She stated that she "would be surprised if someone outside of his classmates and teachers at school knew that his real name was Robert." She also stated that

James Lamb, or Reds, as she called him, was a close friend of Newton's and looked up to him. App. 102.

71.    Moreover, the evidence highlights that police failed to adequately investigate the clearly available evidence that could have led to the identification of Robert Turner as a prime suspect. As stated *supra*, the detectives investigating the case never showed any of the witnesses Robert Turner's arrest photo, despite the prosecutor obtaining his name in in connection with drug arrests near the Chinese restaurant. If they had shown witnesses his photo, they would have shown them an individual who matched several witness descriptions, both independent of and comparatively consistent with descriptions of James Lamb as "heavier, taller, and older" than Mr. Lamb, and a perpetrator who was between the ages of 16 and 17.

72.    Further, Domonique Maxwell stated to police that she had seen the second perpetrator at least five times before. That makes it all the more likely that she could have picked the real perpetrator out of a photo array, and if she did not, it was because the perpetrator was not presented to her in that photo array. Therefore, when she did not identify a second perpetrator based on the photos she was shown, it is evidence of an incompetent investigation that police did not show her a photo array that included Robert Turner given that his narcotics arrest blotter had been obtained in the very investigation into this case and it indicated that he fit the description given by three eyewitnesses, including one who said that both perpetrators were involved in drug activity in the neighborhood. The prosecution was obligated to provide such probative evidence of an alternate suspect who fit every description by eyewitnesses to defense counsel pretrial, and their failure to do so flagrantly and unequivocally violates the command of *Brady v. Maryland*. A thorough review of these facts in the instant case calls into question the notion that Mr. Moore

received a fair trial in light of the lack of evidence against him, and the growing evidence that Robert Turner, not John Moore, committed the murder.

73.     Pennsylvania case law is clear on this point. *Brady* establishes that suppressed information that may have led to the discovery of admissible evidence favorable to the defense is probative to a *Brady* analysis. See *Com v. Santiago*, 654 A.2d 1062, 1080 (Pa. Super. 1994). If trial counsel had access to the information contained within the Narcotics Arrest Blotter regarding Robert Turner and the few other potential alternate suspects, they could have whittled down the names of individuals listed even further, as discussed *supra*, they could have conducted a competent investigation into the identity of Robert Turner including finding additional witnesses, and they could have shown his photograph to the already identified witnesses who may have identified him as the shooter – a plausible possibility since Turner fit the witness descriptions and has been identified by his nickname "Newton" as the culprit in numerous post-trial statements, including a recantation from Mr. Lamb.

74.     The rule of *Brady* is violated when suppressed evidence of a plausible alternate suspect deprives a defendant of an opportunity to persuasively argue that the other suspect had committed the murder. See *Graves v. Dretke*, 442 F.3d 334, 343-44 (5th Cir. 2006). Mr. Moore did not know at the time if Newton was a nickname, and he certainly did not know that Newton was Robert Turner. If Mr. Moore knew that Mr. Turner had been arrested for drug possession outside of the Chinese store where the shooting happened just one month before, he could have used that fact to persuasively argue that Mr. Turner had committed the murder given Domonique Maxwell's description of both perpetrators as individuals involved in drug activity in the neighborhood. Further, an investigation could have produced just such information as this PCRA

has produced in the form of a statement from Mr. Turner's mother identifying her son and Mr. Lamb as close friends, with the latter looking up to her son.

75.     Critically, the actual identity of Newton, which was always in the possession of the prosecution, would have allowed reasonably competent trial counsel to point out that Mr. Lamb had to fabricate testimony against somebody if he was going to avail himself of a plea deal and escape a life sentence, because his actual co-perpetrator, Robert Turner, died soon after the crime.

76.     Finally, numerous courts have found that that withholding evidence of another suspect is a *Brady* violation, particularly when the other evidence linking the defendant to the crime was limited. *See, e.g.*, *Canales v. Stephens*, 765 F.3d 551, 575-76 (5th Cir. 2014). That materiality of the undisclosed evidence is heightened even further when there is evidence of a plausible nexus between the alternative suspect and the crime. *Crawford v. Cain*, 2006 WL 1968872 at *18-19 (E.D. La. July 11, 2006), *aff'd*, 248 F. App'x 500 (5th Cir. 2007).

77.     There are several plausible nexuses that link Robert Turner to this crime. First, the 2nd Circuit has found that undisclosed evidence identifying an alternative suspect that placed him in the area of the crime on multiple occasions, combined with the fact that he was later arrested at the location where the murder victims were found was material under *Brady*. *Miller v. Angliker*, 848 F.2d 1312, 1322-23 (2d Cir. 1988). In the instant case, the Narcotics Arrest Blotter places him in the area of the crime – the report states that he had been arrested at the same spot where the incident occurred, and his listed home address is a few hundred feet away from the shooting. Further, the neighborhood survey indicates that Domonique Maxwell knew the two perpetrators as teenaged drug dealers who dealt drugs in front of the Chinese store. App. 377. Most

compellingly, there is a plausible nexus here because James Lamb's testimony indicates that Newton was present at the scene of the shooting just moments before the shooting occurred.

78. A June 4, 1996 arrest photo and accompanying description obtained from the DAO after a request from current counsel states that Mr. Turner was 5'8 inches and 17 years old. The description lists his skin tone as "dark" and his weight as 175 pounds. Mr. Turner was a more precise fit for the witness descriptions in terms of his age, weight and skin tone than Mr. Moore, who was much older than the description given by Domonique Maxwell.

79. Based upon the strength of the alternative suspect evidence weighed against the relatively weak case against Mr. Moore that relied solely on compromised testimony from his co-conspirator James Lamb, this evidence is material for purposes of *Brady* as it could have been used to persuasively identify an alternate suspect and thereby prevented the wrongful conviction of Mr. Moore. See *Kiley v. United States*, 260 F.Supp.2d 248 (D. Mass. 2003).

80. The information discussed *supra* – that Robert Turner is Newton, that he lived just a few houses down the street from Domonique Maxwell, combined with the fact that his physical and age description matches Domonique's description of Lamb's co-conspirator and that he was arrested for narcotics offenses just one month prior, is compelling evidence that Turner – and not the Petitioner – perpetrated this crime with James Lamb.

81. In addition, the newly discovered evidence also reveals that police took early steps to investigate Mr. Moore—each of which actually exculpated him. A review of the record, DAO file, discovery list (App. 97) and trial file makes clear that these records have not been previously disclosed.

82.     First, the prosecution withheld exculpatory evidence that a firearm recovered from John Moore was tested against and found not to match the three shell casings and three bullet fragments recovered from the crime scene. App. 1-2.

83.     On July 22, two weeks after the crime, both Lamb and Moore were arrested with guns. Lamb's gun was impounded by police and examined by the Firearms Investigation Unit. Moore's gun was also impounded by police and was also examined by the Firearms Investigation Unit. The analysis of Lamb's firearm was turned over to trial counsel. 5/5/00 N.T. at 77-79. Neither the firearms analysis—the existence of the testing, or the results—nor the property receipt for the firearm recovered from Moore in a separate case was turned over to trial counsel. *See* App. 1-2, 97.

84.     The undisclosed printout from the firearms unit reflects that the firearm was recovered from Moore on July 22, 1996, after he was arrested at his home, in connection with a separate case, case number 962796 App. 1.

85.     The Firearms Identification Unit printout further reflects that on August 27, 1996, a firearms examiner found "insufficient markings" to match Mr. Moore's gun to the three shell casings and two of the bullet fragments. According to the printout, the third bullet could not have come from the gun because it was a different caliber, make and model.

86.     Notably, since 1996, there has been tremendous progress with regard to firearms analysis. Having criticized firearm toolmark analysis[9] as a product of interpretation of the

---

[9] A federal district court has described the underlying theory of toolmark analysis as follows: "Toolmark identification is based on the theory that tools used in the manufacture of a firearm leave distinct marks on various firearm components, such as the barrel, breech face or firing pin. The theory further posits that the marks are individualized to a particular firearm through changes the tool undergoes each time it cuts and scrapes metal to create an item in the production of the weapon. Toolmark identification thus rests on the premise that any two manufactured products, even those produced consecutively off the same production line, will bear

examiner, and thus, not a real science, in January 2000, the Department of Justice National Institute of Justice published its first Crime Scene Investigation Report, imposing standards for competent firearms analysis. Thus, by the time of Mr. Moore's trial, in May 2000, firearms analyses were being held to a higher standard, than when the 1996 testing was administered. Critically for the present case, the NIJ no longer endorses the terminology used in the 1996 Moore firearms report. Instead of "insufficient markings" an examiner at the time of trial would have testified that the firearm is "inconsistent" with the evidence or simply "not a match."

87.    Second, the Commonwealth withheld exculpatory evidence relating to the photo lineups used in the case. The DAO file reveals that the police generated two separate lineups: one around James Lamb and one around John Moore, titling the latter "Photo Spread for John Moore." App. 29-52. The Lamb lineup consists of nine (9) photographs of young children, ages 13-17, who are adolescent and pre-adolescent children, with pre-pubescent facial features. The "Photo Spread for John Moore," in contrast, was made up of older men, between 20-24, who share features of and resemble Moore. Though trial counsel was aware that officers had shown witnesses photographs (including one of Lamb and one of Moore) on two separate dates, neither the lineups themselves, nor a description of their contents or list of included individuals was ever turned over to counsel.

88.    Third, the Commonwealth failed to turn over handwritten notes from officers, which reveal that the police were comparing property recovered from Moore against property taken from the victims during the crime. App. 59, 63. There is no follow up as to these comparisons. Presumably, however, had they been a match, this would have been introduced

microscopically different marks." *United States v. Otero*, 849 F.Supp.2d 425 (D.N.J. 2012), *aff'd* 557 F.App'x 146 (3d Cir. 2014).

against Moore at trial. These notes, too, were withheld from trial counsel; thus, counsel was unaware that the police had unsuccessfully examined Moore's property for that of the victims.

### E. Mr. Moore's Efforts to Prove His Innocence

89.     Mr. Moore has made significant efforts in the 22 years since his conviction to obtain relief.

90.     He has sought the help of the courts and of attorneys, investigators, innocence organizations, politicians, and journalists. He diligently represented himself over the years, studying the law, and getting a job working in the law library for over a decade. Those efforts resulted in the retention of prior counsel and his current legal team.

91.     Petitioner's claims based on the newly-discovered evidence provided by Valerie Turner Murray, Daffanie Turner, Robert Hunter, and the arrest photo of Robert "Newton" Turner also meet the timeliness exception as the evidence could not have been discovered earlier through the exercise of due diligence.

92.     Since his arrest in this case, Mr. Moore has sought to act in his own defense. His life and freedom has depended on his ability to learn the law, draft legal filings, investigate his own case, obtain affidavits, and to convince a court of his innocence – a difficult feat for even the most seasoned lawyers. Mr. Moore had been diligent in seeking to identify Newton as the actual perpetrator – he gave a letter to trial counsel, Mr. Tinari, from Herman Brooks before his trial that indicated that Lamb had told Brooks that Newton was involved, and he filed a timely PCRA petition with regard to Mr. Lamb's recantation that implicated Newton as his co-defendant. He sought to learn Newton's true identity and legal name but had no means of discerning it from behind prison walls. He also submitted an additional affidavit during prior

PCRA proceedings from Omar Moore, obtained in 2005 and which stated that Lamb had told him in 1996, soon after the murder, that Newton committed it. That simple fact is that despite his best efforts, he could not identify Newton.

93.     Following his direct appeal and denial of his first PCRA, Mr. Moore handled his own appeals until Barnaby Wittels represented him on his habeas petition in 2009. He filed numerous motions, petitions, and appeals, and letters to the court despite the limitations of being a pro se litigant.

94.     For years, as mentioned *supra*, Mr. Moore has sought to determine the identity of Newton without being able to discern any helpful information. Mr. Moore did not know Newton's last name, and did not have confirmation that Newton was a nickname. Now, even Newton's mother can confirm that her son, Robert Turner, was only known to friends and family as Newton. Only upon attorney Merrigan's efforts on September 15, 2021 to utilize the limited information that Mr. Moore had obtained to access TLO, a nonpublic database service restricted to paying attorneys that has improved in efficiency and scope over the years– was a lead able to be developed around Robert Turner, who was the brother of one Daffanie Turner who had lived on Silver Street.

95.     Mr. Moore also had no way of knowing that there was another witness to the crime, Robert Hunter, that he could have followed up with to obtain helpful information. It was only after Mr. Moore reached out to Mr. Hunter in an attempt to find some further bit of information that could help him identify the individual they both knew as Newton that Mr. Hunter came forward as a witness for the first time. Mr. Hunter told counsel for Mr. Moore that he did not come forward sooner because he did not want to be involved and he believed that Mr. Lamb needed to make things right and that he believed he would eventually do so. Mr. Moore

did not know that Mr. Hunter was a witness to the incident on July 7th, 1996, and therefore could not have shared this information with the court any earlier. If the Petitioner had known any of this information, it is clear from his own record within the court system, that he would have utilized it as soon as possible.

## CLAIMS FOR RELIEF

96.     "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). *Brady* requires the prosecutor to disclose all material evidence favorable to the defense. *Id.* "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotation marks omitted). Under this standard, the "question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 434. Accordingly, a "reasonable probability" of a different result is "shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* (internal quotation marks omitted). Thus, *Brady* may be violated even when "the undisclosed information may not have affected the jury's verdict." *Wearry v. Cain,* 136 S. Ct 1002, 1006 n6 (2015).

97.     The *Brady* rule encompasses both "exculpatory" and "impeachment" evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Kyles v. Whitley*, 514 U.S. at 433 (internal quotations

omitted). *see also Breakiron v. Horn*, 642 F.3d 126, 133 n.8 (3d Cir. 2011) (it is "so well-established" as to be "axiomatic that prosecutors must disclose impeachment evidence"); *Bridges v. Beard*, 706 F. App'x 75 (3d Cir 2017) (non-precedential). The substantive admissibility of the suppressed evidence is not dispositive of a *Brady* claim. *Commonwealth v. Johnson*, 174 A.3d 150, 1056 (Pa. 2017) (*Johnson-2*).

98.     Materiality is established where the nature and quality of that evidence would have created a reasonable probability of a different result by raising a reasonable doubt about the defendant's guilt. The reasonable probability standard is less than the preponderance of the evidence standard; it merely requires that the likelihood of a different verdict is sufficient to undermine confidence in the outcome. *Johnson at* 1057. *See United States v. Agurs*, 427 U.S. 97, 112 (1976) ("It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed"); *accord Hinton v. Alabama,* 134 S. Ct. 1081, 1089 (2014) (prejudice exists where there is a reasonable probability that new evidence would lead the jury to have a reasonable doubt about defendant's guilt); *accord Strickland v. Washington*, 466 U.S. 668, 695 (1984).

99.     In determining materiality, "the reviewing court may consider directly any adverse effect . . . on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." *Bagley*, 473 U.S. at 683. Ultimately, the question is "not whether the defendant would more likely than not have received a different verdict with the [suppressed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a

34

verdict worthy of confidence." *Kyles*, 514 U.S. at 434; *accord Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009).

100.    The sufficiency of the untainted evidence is not the test of materiality. Petitioner need not demonstrate that "in light of the undisclosed evidence, there would not have been enough left to convict . . . [S]ufficiency of [the remaining] evidence [is not] the touchstone" of materiality. *Kyles*, 514 U.S. at 434-35 & n.8.  Critically, the materiality of suppressed evidence must be "considered collectively, not item by item." *Id.* at 436; *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 312 (3d Cir. 2016) (en banc).

101.    All of the favorable evidence withheld must be analyzed together to determine if, collectively, they undermine confidence in the outcome of the trial. *Kyles*, 514 U.S. at 436. Here, the singular and cumulative effects of the prosecution's *Brady* violations warrant a new trial.

## A. The withheld evidence was suppressed, exculpatory, and material, undermining reliability in Mr. Moore's conviction, violating his due process rights, and warranting relief.

102.    When viewed as a whole, it is clear that the newly disclosed evidence undermines Mr. Moore's conviction. Any reasonably competent defense attorney would have used this evidence to investigate Robert Turner as the real perpetrator, cast doubt on Mr. Moore's guilt, and strengthen the initial statement of Domonique Maxwell, whose familiarity with the perpetrators and denial that Moore was involved made her a critical witness for the defense. Had counsel been in possession of this evidence, there is a reasonable likelihood that the result of these proceedings would have been different. Mr. Moore meets the requirements under *Brady*, and therefore this Court must reverse his conviction.

103.    The newly discovered evidence paints a clear picture of a stilted investigation. Unbeknownst to counsel, law enforcement took contemporaneous steps to investigate Mr. Moore

that exculpated him. Law enforcement developed leads in accordance with the account of a strong eye-witness, an eye-witness who recognized and was familiar with both perpetrators. Police began to follow up on these leads, identifying alternate suspects, then abruptly abandoned all leads. Ten months later, police arrested Moore, whom they had all but ruled out as a suspect, based solely on the incentivized statement from an admitted perpetrator who was arrested with the murder weapon. This newly discovered evidence is both exculpatory and material.

> **i. The undisclosed evidence that law enforcement identified an alternate suspect – Robert Turner – who matched witness descriptions and has since been identified as the actual perpetrator is exculpatory and material**

104.    The newly disclosed evidence reveals that the Commonwealth identified alternate suspects, in particular Robert Turner, consistent with the statements of three eyewitnesses. App. 65. Immediately following the crime, Domonique Maxwell reported that she had witnessed the crime from her front door and that the perpetrators were two teenage boys, whom she recognized from dealing drugs in her neighborhood. App. 074, 077, 090. That law enforcement identified suspects who were precisely in line with her statement, (i.e., teenage boys who dealt drugs in the neighborhood), was certainly exculpatory to Mr. Moore (a 23-year-old adult man, with facial hair, whom Domonique did *not* pick out of a lineup). Reasonable counsel would have argued that, consistent with Domonique's statement, Lamb's actual co-perpetrator was Robert Turner, as his description fit that of three eyewitnesses thus necessitating that the prosecution turn over his arrest blotter and other police records, including his arrest photo, to the defense, and he was one of the 8 individuals whose information was contained in the narrowed narcotics arrest blotter. This argument would have been consistent with the evidence presented at trial, and easily outweighed the paltry evidence introduced against Moore from Lamb, a teenager in fear of receiving the death penalty, who had been incentivized by a detective with a corrupt history.

105.    Armed with the newly disclosed evidence, defense counsel would have been able to refute the prosecutor's tactics to weaken Domonique's testimony, and show not only that Domonique had clearly and affirmatively identified Mr. Lamb- but that police officers in fact credited her observations and identified suspects consistent with her initial statement. The newly discovered evidence would have strengthened the exculpatory value of her testimony and guarded against the prosecutor's tactic to diminish the value of her lack of identification of Moore. Without this evidence, however, the trial prosecutor was able to dismantle the strongest evidence exculpating Mr. Moore, that a credible eyewitness who stated that she could recognize the person involved failed to identify Mr. Moore.

106.    The evidence is also exculpatory in that it reveals the deficient investigation undertaken by law enforcement in this case, undermining Moore's resultant arrest and conviction. Though law enforcement had contemporaneously identified a credible suspect, Robert Turner, who fit the description given by three eyewitness, police failed utterly to conduct any investigation into him. Law enforcement did not make attempts to contact or interview the suspect, Robert Turner. They did not include photos of the suspect in lineups for the three witnesses. The failure to show Turner's photograph to the three witnesses is particularly egregious given that each witness was able to correctly identify James Lamb but none of them identified John Moore, indicating that the other perpetrator remained at large. Police did not run checks against the suspect for prior crimes matching the guns. Nor did they conduct canvassing of their neighborhoods or schools. The community was talking about this crime: Shirley Maxwell told police that she had already heard in the streets that Lamb was involved. Yet, police did not contact juvenile officers or other neighbors.

107.    Instead of following any of these leads, the investigation file reveals that police did absolutely nothing. Between the July 30, 1996 lineup (where the witnesses all rejected Moore along with the entirety of the Moore lineup) and the June 1997 meeting with Lamb and his attorney, law enforcement conducted absolutely no investigation into the case. In September 1997, Lamb was offered a deal. Three months later, Moore was charged.

108.    Reasonable counsel would have used this information to highlight these significant delays as red flags of an incompetent, careless and incomprehensibly stunted police investigation. Without this evidence, the judge would have reasonably assumed that the long delays in this case were due to zealous police work.  But this was not the case.

109.    Reasonably competent counsel would have used the evidence of the incompetent investigation to underscore the unreliability of Lamb's statement. Police did not come to Moore after exhausting leads, or even following them. Rather, having all but eliminated him as a suspect, they arrested him after totally, abruptly abandoning the case investigation and allowing strong leads to grow cold.

110.    The narcotics blotter record of Robert Turner was exculpatory and should have been provided to trial counsel. If this had been done then trial counsel would have had the key evidence needed to investigate the actual identity of Lamb's co-perpetrator, which has remained a mystery to Mr. Moore until late 2021.

111.    The narcotics blotter identified Robert Turner's date of birth as April 11, 1979, which would have made him 17-years-old at the date of the crime. This age matches Domonique Maxwell's statement as to the age of the other perpetrator. John Moore, on the other hand, was 22-years-old at the date of the offense, only two weeks away from his 23rd birthday.

112.     Further corroborating all witnesses in this case, Robert Turner's arrest photograph,

which was obtained by current counsel from the DAO when following up on the narcotics blotter

evidence, shows that he was 5'8" tall, weighed 175 pounds, and had a darker complexion than

that of James Lamb. This description matches the descriptions of the second perpetrator given by

Domonique Maxwell ("darker-skinned older than [Lamb], and taller than [Lamb]", William

Cintron ("taller, dark skinned Black male approximately 5'8"), and Danny Diaz ("a little taller

[than Lamb], 5'6"-5'7"). These witnesses all readily identified James Lamb, but not John Moore.

A photograph of Robert Turner should have been shown to them by the police; it could not have

been shown by the defense, however, because the prosecution suppressed this critical evidence

of an alternate suspect.

113.     The name and address of Robert Turner would have led reasonably competent trial

counsel to his home where the following information could have been learned from his mother

and sister:

- Robert Turner was known as Newton by his family and friends. This was a nickname given to him by his mother when he was very young, and outside of the classroom he was only ever known as Newton.
- Robert Turner was "very close" friends with James Lamb. In fact, Mr. Lamb "looked up to Newtin and loved him. They spent a lot of time together" and Lamb was at Turner's house "a lot." App. 102.
- Robert Turner had a reputation for committing armed robberies, which his sister believes led to his being shot. Daffanie Turner, *I'm Not Tryna Hurt You…DAFF TALES* at 73. Mr. Turner's mother shared that he had been shot twice.
- Robert Turner died in October 1996, thus making it impossible for James Lamb to secure a plea deal in exchange for testimony against his actual co-perpetrator, since he was dead.

114.     Additionally, reasonably competent trial counsel would have linked the pretrial letter

from Herman Brooks in which he states that Lamb told him that Newton committed this murder

to the Robert Turner blotter. Calling Herman Brooks to testify as an impeachment witness

against Mr. Lamb would have been the certain outcome of disclosure of the narcotics blotter, as this evidence could have been linked to Turner's identity, physical characteristics, and close friendship with Lamb.

115.    The prosecution's obligation to turn over exculpatory evidence does not end with the close of trial, of course. *Brady* requires disclosure of exculpatory evidence during the appeals process. The narcotics blotter evidence pertaining to Robert Turner should have been disclosed during past PCRA proceedings as well, in particular during the PCRA in which James Lamb's recantation was presented. In that recantation, Lamb implicated Newton. Mr. Moore was prevented from countering the government's argument, which was adopted by the PCRA court and affirmed at every level of state and federal appeal, that Lamb's recantation was not credible since he did not state why he would not have been given the same deal for testifying against Newton. If Moore's counsel had the Turner narcotics blotter he could have conducted an investigation that would have established what we now know: Robert Turner died in October 1996, a few months after his participation in the crime that John Moore was falsely convicted of. Turner was dead before Lamb ever implicated Mr. Moore in 1997. Only because the prosecution continued to suppress more than plausible evidence of an alternate suspect were they able to convince the court to dismiss an otherwise valid PCRA claim pointing to another suspect.

116.    The materiality of the narcotics blotter for purposes of *Brady* can be shown in stark relief when one compares the evidence implicating Robert Turner in this crime versus the evidence implicating John Moore and the evidence exculpating each:

| Evidence implicating Robert Turner | Evidence exculpating Robert Turner | Evidence implicating John Moore | Evidence exculpating John Moore |
|---|---|---|---|
| Domonique Maxwell described Lamb's co-perpetrator as a person she recognized from the neighborhood on at least 5 previous occasions, that he sold drugs, and that he fit the physical description of Robert Turner. | Trial testimony of James Lamb that Newton left the scene before the shooting. | Trial testimony of James Lamb. | All three witnesses – Domonique Maxwell, William Cintron, and Daniel Diaz – did not identify Moore as the second perpetrator but were able to correctly identify James Lamb. All three rejected an entire photo array that included Moore and people with similar physical characteristics. |
| James Lamb testified that "Newton" was present at the scene of the crime. | | | A firearm that John Moore was arrested with was tested and shown to not be a match with either of the weapons used in the crime. |
| Police narcotics blotter and arrest record of Robert Turner shows that he was arrested for drug possession in front of the store where the murder in this case occurred, corroborating Domonique's description of the second perpetrator as a neighborhood drug dealer. | | | A search of John Moore's property did not turn up any evidence that he was in possession of property stolen from the victims in this case. |
| Herman Brooks provided a statement before the trial that he heard James Lamb state that Newton committed the murder. | | | Brian Scott provided a statement in 2006 in which he declared that James Lamb told him that he was going to falsely testify against John Moore, known by the nickname "Jizz," in order to get a deal. Lamb told Scott this prior to the trial of John Moore. |
| James Lamb recanted his trial testimony in 2004, stating that he told the police Newton committed the offense with him and that John Moore was not present when the crime occurred. | | | |

| | | | |
|---|---|---|---|
| Omar Moore stated in 2005 that in July of 1996, James Lamb told him that Newton "shot some dudes," that Lamb was there when it happened, and that John Moore left prior to the shooting. | | | |
| Daffanie Turner published a memoir in which she claims her brother, Robert Turner, was known as "Newtin"; sold drugs; committed robberies; carried a gun. Daffanie wrote that her brother died in October 1996. | | | |
| Valerie Turner Murray averred in April of 2022 that Robert Turner was her son, Robert was known as Newtin, and that James Lamb was "very close" with her son and was at her house "a lot". | | | |
| Robert Hunter told counsel for Mr. Moore and the DAO in December of 2021 that he witnessed James Lamb and Newton commit the crime on July 7, 1996. | | | |

117. The narcotics blotter would have allowed trial counsel to marshal key aspects of the evidence implicating Robert Turner before and at trial. Even if turned over during previous PCRA proceedings a court could have intervened much sooner to reverse this odious conviction. Now, more than 26 years after James Lamb and his "very close" friend Robert Turner committed the robberies and murder that John Moore has been framed for, Petitioner can prove that the prosecution suppressed evidence of the identity of an alternate suspect who has been implicated

by *all* other evidence put forward in this case from 1996 to the present with the sole exception of James Lamb's compromised, incentivized, and incredible trial testimony. On the other hand, the only evidence exculpating Robert Turner is the same compromised trial testimony of James Lamb, although there is critical evidence exculpating Mr. Moore, much of it suppressed by the prosecution.

### 1. The withheld ballistics, property search, and lineup evidence are exculpatory

118.    The newly disclosed evidence reveals that law enforcement took contemporaneous steps to investigate Mr. Moore that did not produce evidence against him. In the present case there was no evidence whatsoever to tie Moore to the crime, other than the compromised testimony of Lamb. Any reasonable defense attorney would have used the existence of a contemporaneous exculpating investigation to counter the testimony of Lamb.

119.    First, newly disclosed evidence that reveals the Firearms Identification Unit determined that a gun seized from John Moore could not be matched to the ballistics in this case was favorable to the defense.

120.    According to the Firearms Identification Unit printout, the comparison showed that the ballistics evidence had "insufficient markings" to be matched to the firearm. This testing, however, was conducted in 1996, four years before trial. By the time of trial in May 2000, the state of the science had progressed, the National Integrated Ballistics Information Network (NIBIN) had been created, and forensic toolmark analysis had moved away from subjective observation-based opinions. Instead, the National Institute of Justice had implemented structured forensic standardized testing to permit a national, categorical approach to toolmark analysis. The terminology used in the 1996 report ("insufficient markings") was no longer used. Instead, an

examiner would have testified that the five casings and bullets were either "inconsistent" or "not a match."

121.    Such testimony would have been favorable to Mr. Moore. The Commonwealth accused Moore and Lamb of firing their weapons. 5/9/00 N.T. at 119. Had the judge heard that both men were arrested with guns on the same day, that Lamb admitted to using that gun in the crime, while Moore's gun did not match the ballistics, there is a reasonable likelihood that the result of the trial would have been different. Given the paltry evidence against Mr. Moore, his possession of a firearm that was not a match undermines confidence in his conviction. Considering that there was absolutely no forensic or physical evidence connecting Mr. Moore to the crime, reasonably competent counsel would have certainly relied on the fact that police seized a gun from him and unsuccessfully attempted to match that gun to the crime.

122.    Had the prosecutor disclosed the existence of a firearm belonging to Moore that police could not connect to the crime, reasonable trial counsel would have investigated and presented the case in an entirely different way. Any reasonably diligent attorney would have conducted independent analysis of the firearm and the ballistics, reexamined the Firearms Identification Unit's analysis of Lamb's firearm under the newly applicable 2000 NIJ standards, and then compared to the two.

123.    In addition to unsuccessfully attempting to tie Mr. Moore's gun to the crime, law enforcement took other measures to investigate him that failed to inculpate him. Newly disclosed evidence reveals that officers created an entire photo lineup based on Moore's features—which every single eyewitness rejected in full. Domonique Maxwell's full rejection of the Moore lineup is particularly favorable. She was familiar with both perpetrators. She recognized them both,

having seen them both before on multiple occasions. Domonique's categorical rejection of a lineup of individuals matching Moore's description is exculpatory evidence.

124.     Reasonable counsel would have used this evidence to strengthen Domonique's testimony. Domonique was a critical witness for John Moore's defense. She witnessed the crime and immediately told both her mother and then, shortly thereafter, law enforcement that she recognized both perpetrators as young boys who dealt drugs in her neighborhood. Three weeks later, she chose Lamb out of a lineup. The following week, she was presented with Moore, and rejected him as the second perpetrator. Her rejection of the entire "Moore lineup" is affirmative evidence that the second perpetrator—a person who she was familiar with and recognized— looked nothing like John Moore. The "Moore lineup" fortifies her critical, exculpatory testimony.

125.     Without this valuable evidence, the prosecutor was able to diminish the exculpatory value of her statement. On the stand, the prosecutor distanced her from her original statement, attempting to get her to disavow the fact that she in fact recognized the second perpetrator. N.T. 5/5/00, at 52. He emphasized that she didn't know him as well as she knew Lamb (*id.*), and then attempted to minimize her statement on the stand; asking: "so you only seen him maybe once or twice? . . . So you really couldn't identify [him]." *Id.* at 52- 53. The prosecutor's line of questioning here was deliberately misleading given that he had in his possession a prior statement from Domonique in which she indicated she had seen the second perpetrator on at least five occasions.

126.     The prosecutor's questioning created a false impression that Domonique had not seen the second perpetrator very well. It succeeded in confusing both the court and defense counsel,

45

who, then perplexingly argued that Domonique had not seen the face of the second man, and that, even if she had, that she had not seen him fire a gun.

127.    Given the unreliability of Lamb's testimony, reasonably competent counsel would have used the "Moore lineup" to strengthen Domonique's testimony. This is not a case where the eyewitness did not get a good look at the perpetrators. Not only did she clearly see them, she recognized them. Her rejection of the entire "Photo Spread for John Moore" was a flat refutation that Moore could have possibly been the perpetrator. Her initial statement was strong evidence of Moore's innocence, and the Commonwealth's efforts to weaken her testimony did great damage to Moore's defense. The "Photo Spread for John Moore" reveals not only that Domonique failed to identify Moore, but that she determined that *none* of the individuals matching John Moore's description could possibly be Lamb's co-perpetrator—a perpetrator who she knew, recognized, and had seen at least five times before.

128.    Had defense counsel had the lineup, he would have understood just how strongly her initial statement and subsequent failure to identify Moore actually was. Any reasonable defense counsel would certainly have argued that her rejection of a lineup of individuals designed around and resembling their client, was clear evidence that the second perpetrator did not bear any semblance to their client, especially considering her familiarity with both perpetrators. The Commonwealth's failure to disclose that Domonique had affirmatively rejected the entire Moore lineup, while simultaneously trying to distance her from her initial statement was improper and highly prejudicial.

129.    Finally, the undisclosed notes from law enforcement reveal yet another contemporaneous investigation measure that failed to inculpate Moore. Law enforcement examined property recovered from Mr. Moore to determine if he was in possession of property

that had been taken from the victims. Reasonably diligent counsel would have used these notes

to question officers about the unsuccessful contemporaneous investigation into Mr. Moore, and,

as discussed below, about what other measures they took to locate the victims' property, once

they had determined that Mr. Moore was not in possession of it.

130.    None of this evidence was turned over to trial counsel. The investigative efforts here –

firearms analysis, creation of a photo lineup around Moore, and a comparison of his property

against the victims – produced absolutely no inculpatory evidence against him. These early

unsuccessful efforts to inculpate Mr. Moore are evidence of his innocence, and, combined with

the utter lack of evidence against Petitioner, undermine his conviction. Reasonably competent

counsel would have argued that the absence of any evidence, despite significant efforts on the

part of law enforcement, is exculpatory.

131.    Given the weakness of the case against Moore, the Commonwealth's failure to disclose

evidence that 1) exculpated him and 2) reveals that police developed an alternate suspect who fit

with all other available evidence and then failed to follow up. At bottom, the trial judge had to

choose which witness to credit over the other: Domonique Maxwell or James Lamb. Domonique

was credible and disinterested, while Lamb was incentivized and compromised. That is likely

why the prosecutor used misleading tactics to weaken Domonique's clearly exculpatory

statement. It is against this backdrop that this Court must view the newly disclosed evidence. The

withheld evidence undermines the *only* evidence against Petitioner (Lamb), while fortifying the

exculpatory evidence in his favor (Domonique).

132.    Here, the "adverse effect" of the nondisclosure was in the diminishment of Domonique,

whose familiarity with the perpetrators made her an important witness for Moore.  By

withholding evidence that police developed leads in accordance with Domonique's statement,

47

the prosecutor weakened the credibility of her testimony. By failing to reveal the contents of the lineup, he further anesthetized her testimony. Armed with the newly disclosed evidence fortifying her statement, there is a reasonable probability that a jury or judge would have credited the contemporaneous reports from independent Domonique over Lamb's delayed incentivized statement.

133.    Having obfuscated Domonique's testimony, the prosecutor tied counsel's other hand behind his back, when he failed to turn over additional contemporaneous investigation that actually excluded and exculpated Moore. The suppression of the firearm analysis, the content of the lineup, and the property search further "undermine[d] confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434.

134.    In absence of the withheld evidence, Mr. Moore did not receive a fair trial.

## B. Robert Hunter's Declaration constitutes newly-discovered evidence supporting his actual innocence

135.    The evidence that Robert Hunter witnessed James Lamb and Newton commit the crime that John Moore has been falsely convicted of is newly-discovered evidence that could not have been discerned earlier through the exercise of due diligence. John Moore had no reason to believe that Robert Hunter was a witness to this crime, as Hunter had never revealed that to him.

136.    That Robert Hunter's evidence corroborates or is consistent with all the other evidence adduced at trial and in earlier post-conviction proceedings with the sole exception of James Lamb's trial testimony lends it credibility.

137.    Evidence of a witness who saw Robert Turner, known to Mr. Hunter as Newton, commit the offense and not John Moore, if believed by a fact-finder, is dispositive as to Mr. Moore's innocence. Accordingly, a hearing should be granted to take Mr. Hunter's testimony.

138.    Mr. Hunter knew, consistent with the statements of Daffanie Turner and Valerie Turner Murray that Newton was "smoking PCP" and "losing his mind" around the time of the shooting. He was familiar with Mr. Lamb and Mr. Turner and was friends with both individuals. Mr. Hunter, per his statement to the DAO, believes that Lamb should "make things right" for John Moore, and he is coming forward with what he saw now because Mr. Lamb has not been able to make things right for him.

139.    In addition to his *Brady* claims, Mr. Moore's is actual innocence is an independent substantive ground upon which to relieve him of his unconstitutional incarceration. *See, e.g.*, *House v. Bell*, 547 U.S. 518 (2006) (remanding capital case for evidentiary development on whether petitioner was actually innocent; the petitioner subsequently was exonerated); *Kuhlman v. Wilson*, 477 U.S. 436, 452 (1986) (a prisoner retains a powerful and legitimate interest in obtaining his release from custody if he is innocent of the charge for which he was incarcerated); *In re Winship*, 397 U.S. 358, 264 (1970) (It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned.).

140.    In *Herrera v. Collins*, 506 U.S. 390, 417 (1993), the Supreme Court stated: "We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."

141.    The Third Circuit has also considered whether a freestanding actual innocence claim exists even in the non-capital context, but it too has not yet decided the issue. *See, e.g.*, *Lee I*, 667 F.3d at 400 (declining to decide the issue because the case was resolved on other grounds).

142.     The Supreme Court has treated actual innocence as a gateway for consideration of time barred and/or procedurally defaulted claims. S*ee McQuiggin v. Perkins,* 569 U.S. 383 (2013); *Schlup v. Delo*, 513 U.S. 298 (1995).

143.     The standard for establishing actual innocence in that circumstance is showing that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence. *Schlup*, 513 U.S. at 327-29.

144.     While the standard required to trigger the recognition of a freestanding innocence claim, has yet to be explicitly defined, the Supreme Court has been clear that it would require more than the above *Schlup* standard. *See House v. Bell*, 547 U.S. 518, 555 (2006) (The consequence of the Courts decisions in *Herrera* and *Schlup* first leaving unresolved the status of freestanding claims and then establishing the gateway standard implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*.).

145.     Acknowledging that the standard may be extraordinarily high, *Albrecht v. Horn*, 485 F.3d 103, 122 (3d Cir. 2007) (discussing *Herrera*).

*146.*     This is the appropriate case for recognizing such a claim. Mr. Moore has demonstrated his actual innocence under any standard.

### C. Mr. Turner's arrest photo constitutes newly discovered evidence requiring a new trial.

147.     The DAO provided counsel for Mr. Moore with a picture of Mr. Robert Turner on November 30, 2021. Prior to that date, neither counsel nor Mr. Moore had any photograph of Mr. Turner. The arrest photo, dated June 4, 1996, the same date of the arrest listed in the suppressed narcotics arrest blotter, is accompanied by a physical description. Such information, held within the possession of the Commonwealth, is newly discovered evidence in that it shows that Mr.

Turner fit the description that the three witnesses gave for the second perpetrator. Such

information on his arrest, and his physicality near the time of the shooting are specifically

probative of the failures of the police investigation, and highlight that the information was in

possession of the police.

## ALLEGATIONS PURSUANT TO 28 U.S.C. § 2244

148.    The Court may consider a second or successive habeas corpus petition where:

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-…

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244.

149.    As articulated throughout this petition, Mr. Moore satisfies paragraph 2(b)(i) in

that the facts presented herein could not have been previously discovered through the exercise of

diligence.

150.    First, as discussed supra, Mr. Moore has been duly diligent in attempting to find

new evidence of his innocence.[10]

---

[10] *see also Munchinski v. Wilson*, 694 F.3d 308, 330 (3d Cir. 2012) (stating that due diligence requires only that the petitioner have acted with "reasonable diligence in the circumstances. . . If a petitioner   did what he reasonably thought was necessary to preserve his rights . . . based on information he received . . . , then he can hardly be faulted for not acting more 'diligently' than he did.'") (citing *Holmes v. Spencer*, 685 F.3d 51, 65 (1st Cir. 2012)).

151.    Due diligence is fact-specific, and must be determined case-by-case. It does not require perfect vigilance and punctilious care.[11]

152.    When that analysis is conducted, the Court's jurisdiction over this petition is clear. Both in combination with and independently of his pursuit of relief from his conviction through the state and federal courts, Mr. Moore has diligently attempted to ascertain facts to prove his innocence. Mr. Moore, who has been incarcerated for the last 26 years has done everything in his power to obtain the assistance needed to prove his innocence.

153.    In his 26 years of incarceration, Mr. Moore has been housed in DOC facilities. The prisons in which he has been incarcerated have no internet access and limited legal materials. None have access to the nonpublic TLO database that is restricted to attorneys. Throughout the years, Mr. Moore reached out to numerous attorneys and organizations seeking help with his case. Mr. Moore did receive assistance from immediately prior PCRA counsel, Jennifer Merrigan, but Mr. Moore has proceeded *pro se* in the vast majority of his legal filings and has had to teach himself the law to avoid missing deadlines and being barred procedurally.

## REQUEST TO HOLD THESE PROCEEDINGS IN ABEYANCE

154.    The claims raised in this habeas petition are virtually identical to the claims raised by Mr. Moore his April 20, 2022 Pennsylvania (successor) state post-conviction petition. Mr. Moore's pending PCRA proceeding will either result in the award of relief to Mr. Moore, or the exhaustion of his claims and underlying facts.

---

[11] *See Schlueter v. Varner*, 384 F.3d 69 (3d Cir. 2004) ("due diligence does not require the maximum feasible diligence," but only "reasonable diligence in the circumstances"); *Wilson v. Beard*, 426 F.3d 653, 660-61 (3d Cir. 2005) (for state prisoners seeking federal habeas relief, due diligence is defined as reasonable diligence in the circumstances").

155.    As Mr. Moore's state post-conviction proceedings are unresolved, he has not exhausted his state court remedies, and federal habeas review would be premature.

156.    Mr. Moore is compelled to seek the protection of the federal courts before exhausting state court remedies, however, because his failure to do so could forever bar him from obtaining federal habeas review of the claims he is currently litigating in state court. AEDPA has a one-year limitations period.

157.    Mr. Moore has pending in state court a second amended fourth post conviction relief act petition. Thus, if Mr. Moore could be certain that his currently pending state court application could be deemed "properly filed" within the meaning of § 2244(d)(2), the AEDPA statute of limitations would be tolled by the pending state proceedings. Were that the case, Mr. Moore would have no reason to seek this Court's protection, and he would wait until after the exhaustion of state remedies before seeking federal review.

158.    Mr. Moore and his counsel believe his state court proceedings are "properly filed." Given previous United States Supreme Court construction of the term "properly filed," however, that may not be determined until after the state courts rule. If the Commonwealth argues and the state courts agree that Mr. Moore's PCRA petition is untimely, then, under *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), Mr. Moore's state court application could be deemed improperly filed and the pending state court application would not toll AEDPA's limitations period. Mr. Moore, therefore, must now seek federal review or risk the forfeiture of his federal claims altogether.

159.    Although there exists a strong argument that Mr. Moore would be entitled to "equitable tolling" of the AEDPA limitations period, if the courts rule that equitable tolling is not

available in this case, Mr. Moore's failure to seek federal review now could result in forfeiture of his rights under federal law.

160.    The claims Mr. Moore raises are worthy of federal review and demonstrate that Mr. Moore should have his right to federal review preserved if relief does not come through the state petition. In the meantime, under the "suspense" or "abeyance" doctrines, the federal litigation would be stayed pending exhaustion in the state court.

## CONCLUSION AND REQUEST FOR RELIEF

For all of the above reasons and the attached affidavits and exhibits, Petitioner requests that the Court:

A. Hold these proceedings in abeyance pending resolution of the state court proceedings;

B. Upon reactivation of these proceedings, that the Court require the Commonwealth to respond to this *Petition*;

C. Permit evidentiary development and discovery as needed for the resolution of Petitioner's claims; and

D. Grant habeas corpus relief.

Respectfully submitted,

*/s/ Nia O. Holston*
Nia Holston
PA I.D. No. 327384
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA 15221
(267) 357-0948
nia@alcenter.org

*/s/ Bret Grote*

Bret Grote
PA I.D. No. 317273
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA 15221
(412) 654-9070
bretgrote@abolitionistlawcenter.org

*Counsel for John Moore*

Dated: April 22, 2022

# APPENDIX 1 OF 2

# 001-200

USCC-EDPA REC'D CLERK
2022 APR 22 PM3:57

App. 001

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT

CASE 952796 SER/ 902 DC-ND 9627-037624N  SEO/ 902 ARREST Y          SECURITY 3
OCCURENCE DATE/TIME 072296/N/L          LOCATION NOT LISTED
SUBMITTED BY P/O VEAL                    BARRE/PAYROLL 7804 091843 DIST/UNIT 3390
DATE/TIME SUBMITTED 072296/1201P         PROPERTY REC 2649718
TAKEN FROM NAME JOHN GEORGE MONUE                              AGE 03
ADDRESS 1214 SOMERSET ST                                       ASSOC DC
MFG BRYCO ARMS
TYPE HANDGUN                        SEMIAUTOMATIC ACTION       MOD 38
CAL 380 AUTO                                                  SER 079632
FINISH CHROME                                                 BBL 2 3/4"
GRIP/STK GRY/PLA          MAY CAPACITY 6+1          CAP 040
TEST FIRED YES OPERABLE YES
REMARKS P-1: GUNSHOT RESIDUE AND LINT IN BARREL. SERIAL NUMBER REMOVED BY
ABRASION. RESTORED BY CHEMICAL ETCHING PROCESS. DIGITS MARKED 063296 FOR
IDENTIFICATION. FOUR FEDERAL CTGS., TWO REMINGTON CTGS. ONE CCI CTG., CALIBER
380 AUTO.
NO CONTROL #
FIREARMS EXAMINER P/O FINDO    LTMS DES. #132 881  4735 197/66  0990 175918  EXAM DATE 082396
SUPERVISOR CPL MCLAUGHLIN 8094 124098     C.O. LT STEPHAN     0342 143223
MORE PAGES TO FOLLOW PLEASE SCREEN - ENTER PG/ 91

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT

CASE 962296 SEQ/ 003 DC-NO 9622-037035   SEQ/ 003 ARREST Y   SECURITY 3
OCCURENCE DATE/TIME 622296/N/I            LOCATION NOT LISTED
SUBMITTED BY P/O VEAL                     BADGE/PAYROLL 3804  221843 DIST/UNIT 0690
DATE/TIME SUBMITTED 972296/1201P          PROPERTY REC 2643248
TAKEN FROM NAME JOHN GEORGE MOORE                          AGE 23
ADDRESS 1234 SOMERSET ST                                   ASSOC DC

REMARKS: CONCLUSIONS: THERE ARE INSUFFICIENT MICROSCOPIC CHARACTERISTIC MARK-
INGS TO PERMIT A POSITIVE IDENTIFICATION OF P-1 AGAINST FIRED CARTRIDGE CASES
FCC1 THROUGH FCC3 AND BULLET SPECIMENS B-2 AND B-3. DC# 9625-053384.
FTB# 2632AS.  NOTE: B1 WAS NOT FIRED IN FIROTOL P-1 DUE TO DIFFERENCES IN CAL-
IBER AND CHARACTERISTICS.

FIREARMS EXAMINER P/O ETNRR   4735 103766  5000 1752732   EXAM DATE 082296
SUPERVISOR CPL MCLAUGHLIN     8020 034098   C.O. LT STEPHAN   0317 143223
LAST PAGE

App. 002

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT
CASE 962605 SEQ/ 003 DC-NO 9625-953386    SEQ/ 003 ARREST N    SECURITY 2
OCCURENCE DATE/TIME 070796/300AM    LOCATION 2700 BLK. N. 9TH ST.
SUBMITTED BY P/O TRENWITH    BADGE/PAYROLL  6298 15A59A DIST/UNIT MCDU
DATE/TIME SUBMITTED 070896/105AM    PROPERTY REC 2046231
TAKEN FROM NAME HWY    AGE
ADDRESS ███ ██ ██ ████T █    ASSOC DC
MFG. WINCHESTER    CEN/RIM FIRE C    CAL 380 AUTO
FPN H    MARKED FCC-1
REMARKS: ONE FIRED CARTRIDGE CASE. ITEM #1 ON PR.  NOTE: MOUTH PORTION OF CASE
CRUSHED & DISTORTED.
CON$ H96-223(LAB FEE: $216.62)
FIREARMS EXAMINER P/O MCKENZIE    5999 175238    6735 143766    EXAM DATE 082696
SUPERVISOR CPL MCLAUGHLIN  8020 124098    C.O. LT STEPHAN    0317 143223
MORE PAGES TO FOLLOW CLEAR SCREEN - ENTER PG/ 2/L

App. 003

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT

CASE 962605 SEQ/ 004 DC-NO 9625-05-3386   SEQ/ 004 ARREST N   SECURITY 2
OCCURENCE DATE/TIME 070794/300AM   LOCATION 2700 BLK, N, 9TH ST.
SUBMITTED BY P/O TRENWITH   BADGE/PAYROLL 6298 156504 DIST/UNIT MUDU
DATE/TIME SUBMITTED 070896/1105AM   PROPERTY REC 2045234
TAKEN FROM NAME HIGHWAY   AGE
ADDRESS ███████████   ASSOC NC
MFG, PMC   CEN/RIM FIRE C   CAL 380 AUTO
FFN 4   MARKED FCC-2
REMARKS: ONE FIRED CARTRIDGE CASE, ITEM #3 ON PP
FIREARMS EXAMINER P/O MCKENZIE   5990 175038   6735 147266   EXAM DATE 082596
SUPERVISOR CPL MCLAUGHLIN 8020 174098   C. O. LT STEPHAN   0317 146225
MORE PAGES TO FOLLOW CLEAR SCREEN - ENTER PG/ 3/

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT

CASE 962605 SEQ/ 005 DC-NO 9625-053386   SEQ/ 005 ARREST N   SECURITY C
OCCURRENCE DATE/TIME 070704/3000AM   LOCATION 7700 BLK N. 9TH ST.
SUBMITTED BY P/O TRENWITH      BADGE/PAYROLL 6298 158500 DIST/UNIT MCDU
DATE/TIME SUBMITTED 070804/1030AM   PROPERTY REC 264423
TAKEN FROM NAME HIGHWAY                         AGE
ADDRESS                                         ARREST DF
MFG. FMC                GEN/RIM FIRE C          CAL 380 AUTO
FPN H        MARKED ECC-3

REMARKS  ONE FIRED CARTRIDGE CASE, ITEM 24 ON PR.
EXAMINER EXAMINER P/O MCKENZIE  5099 134463  6735 143734    EXAM DATE 082704
SUPERVISOR CPL MCLAUGHLIN 8075 124098   C.O. LT STEPHAN   0317 143723
MORE PAGES TO FOLLOW CLEAR SCREEN - ENTER PG/ 04

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT

CASE 962605 SEG/ 006 BR-NO 9625-053386  SEG/ 006 APREST A  SEG#PTE C
OCCURRENCE DATE/TIME 072804/7000AM   LOCATION 7700 R W H  9TH ST
SUBMITTED BY P/O TRENWITH          BADGE/PAYROLL 6398 158524 DIST/UNIT MCDU
DATE/TIME SUBMITTED 072804/1454M   PROPERTY PFC 2846231
TAKEN FROM NAME HIGHWAY                                      AGE
ADDRESS ███████ ██                                           ASSOC PC
COATED           UNCOATED       JACKETED COPPER ALLOY
TYPE EXPANDING            BASE FLAT              CAL 38/357
CANNELURE ONE KNURLED                            WEIGHT 121.4 GRMS
LAG 05R                   GUD                    MARKER 962605Y1
REMARKS: ONE BULLET SPECIMEN. B-1, ITEM #2 ON FR. PORTION OF NOSE FLATTENED &
DISTORTED EMBEDDED WITH RED BLOOD LIKE SUBSTANCE. MINOR DISTORTION OF CIRCUM-
FERENCE AREA & BASE EDGE.
FIREARMS EXAMINER P/O MCKENZIE     5099 175939  6735 143766     EXAM DATE 082796
SUPERVISOR CPL MCLAUGHLIN 8020 124098   C.O. LT STEPHAN     0317 143223
MORE PAGES TO FOLLOW CLEAR SCREEN - ENTER PG/ S/A

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT
CASE 962605 SEQ/ 007 DC-NO 9625-053386    SEQ/ 007 ARREST N    SECURITY 2
OCCURRENCE DATE/TIME 070796/300AM    LOCATION 2700 BLK. N. 9TH ST.
SUBMITTED BY P/O TRENWITH    BADGE/PAYROLL  6298 156504 DIST/UNIT MCDU
DATE/TIME SUBMITTED 070896/105AM    PROPERTY REC 2946231
TAKEN FROM NAME HIGHWAY    AGE
ADDRESS  ███████ █ ██████    ASSOC DC
COATED    UNCOATED    JACKETED COPPER ALLOY
TYPE FMJ    BASE FLAT    CAL 380 AUTO
CANNELURE NONE    WEIGHT 95.3 GRNS
LAG 9AR    LWD    GWD    MARKED 962605X2
REMARKS: ONE BULLET SPECIMEN, B-2, NOSE AREA, CIRCUMFERENCE AREA & BASE EDGE
FLATTENED, TORN & DISTORTED
FIREARMS EXAMINER P/O MCKENZIE    5990 175238    6735 143766    EXAM DATE 082796
SUPERVISOR CPL MCLAUGHLIN  8020 124098    C.O. LT STEPHAN    0317 143223
MORE PAGES TO FOLLOW CLEAR SCREEN - ENTER PG/ 4/4

App. 007

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT

CASE 962605 SEQ/ 008 DC-NO 9625-053386    SEQ/ 008 ARREST N    SECURITY 2
OCCURENCE DATE/TIME 070796/12190    LOCATION 2732 N. 9TH ST
SUBMITTED BY DET. FLAHERTY    BADGE/PAYROLL 0871 154174 DIST/UNIT HOM
DATE/TIME SUBMITTED 071296/1040P    PROPERTY REC 2945101
TAKEN FROM NAME BODY OF SAMMY LEDANO█    AGE 34
ADDRESS ████████ ██ █████ ██    ASSOC DC
COATED    UNCOATED    JACKETED COPPER ALLOY
TYPE FMJ    BASE CUPPED    CAL 380 AUTO
CANNELURE NONE    WEIGHT 90.0 GRNS
LAG AAP    LWD    GWD    MARKED 962605Y3
REMARKS: ONE BULLET SPECIMEN, B-3. PORTION OF NOSE AREA FLATTENED & SLIGHTLY
DISTORTED. CIRCUMFERENCE AREA & BASE EDGE SLIGHTLY DISTORTED BEARING FOREIGN
MARKS.
FIREARMS EXAMINER P/O MCKENZIE    5999 175238    6735 143766    EXAM DATE 082796
SUPERVISOR CPL MCLAUGHLIN  8020 124098    C.O. LT STEPHAN    0317 143223
MORE PAGES TO FOLLOW CLEAR SCREEN - ENTER PG/ 7/L

App. 008

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT
CASE 962605 SEQ/ 009 DC-NO 9625-053386    SEQ/ 009 ARREST N    SECURITY 2
OCCURRENCE DATE/TIME 070796/1219A    LOCATION 2737 N. 9TH ST.
SUBMITTED BY DET. FLAHERTY        BADGE/PAYROLL   0871 154174 DIST/UNIT HOM
DATE/TIME SUBMITTED 071296/1049P    PROPERTY REC 2045104
TAKEN FROM NAME BODY OF SAMMY CEDANO        AGE 34
ADDRESS ███████-█ ██████ J█        ASSOC DC
REMARKS: CONCLUSION: FCC-2 & FCC-3 WERE CHAMBERED & EXTRACTED FROM THE SAME
FIREARM. FCC-1 HAS INSUFFICIENT MICROSCOPIC MARKINGS WHEN COMPARED AGAINST
FCC-2 & FCC-3. B-1 WAS NOT FIRED FROM THE SAME FIREARM AS B-2 & B-3 DUE TO
DIFFERENCE IN CALIBER. B-2 & B-3 HAVE INSUFFICIENT MICROSCOPIC MARKINGS WHEN
COMPARED AGAINST EACH OTHER.

FIREARMS EXAMINER P/O MCKENZIE    5999 175238    6735 143766    EXAM DATE 082896
SUPERVISOR CPL MCLAUGHLIN   8020 124098     C.O. LT STEPHAN     0317 143223
MORE PAGES TO FOLLOW CLEAR SCREEN - ENTER PG/ 8/L

App. 009

PHILADELPHIA POLICE DEPARTMENT
FIREARMS IDENTIFICATION UNIT

CASE 962605 SEQ/ 010 DC-NO 9625-053386   SEQ/ 010 ARREST N   SECURITY 0
PROPERTY REC 2045131
REMARKS: EVIDENCE COMPARED AGAINST PISTOL, P-1; SUBMITTED ON FP# 2049718.
FIB# 962796. NOTE: BRYCO, MODEL 38, 380 AUTO CALIBER.
CONCLUSION: THERE WERE INSUFFICIENT MICROSCOPIC MARKINGS TO DETERMINE IF FIRED
CARTRIDGE CASES FCC-1 THROUGH FCC-3 WERE FIRED IN PISTOL, P-1.  BULLET SPECIMEN
B-1 WAS NOT FIRED IN P-1 DUE TO DIFFERENCE IN CALIBER.  THESE ARE INSUFFICIENT
MICROSCOPIC MARKINGS TO DETERMINE IF BULLET SPECIMENS B-2 & B-3 WERE FIRED IN
P-1
FIREARMS EXAMINER P/O MCKENZIE   5999 175928   6735 163744   EXAM DATE 082696
SUPERVISOR CPL MCLAUGHLIN  8020 124098   C.O. LT STEPHAN   0317 143223

LAST PAGE

App. 010

# Philadelphia Police Department





Printed: 07/22/96 06:34

828282

# Philadelphia Police Department





$hek1e3$

# Philadelphia Police Department





Printed: 07/22/96 06:28

29h8C8

# Philadelphia Police Department





Printed: 07/22/96 06:45

$E5C3a8$

# Philadelphia Police Department





Printed: 07/22/96 06:24

9433H4

# Philadelphia Police Department





Printed: 07/22/96 06:20

$5\supset h3e8$

# Philadelphia Police Department





# Philadelphia Police Department





Printed: 07/22/96 06:39

_S7 (ħℰ ℰ

# Philadelphia Police Department





Printed: 07/24/96 10:57

$6 / 1 / 102$

# Philadelphia Police Department





Printed: 07/30/96 00:19

# Philadelphia Police Department





Printed: 07/30/96 00:13

# Philadelphia Police Department





Printed: 07/30/96 00:11

LPH CEL

# Philadelphia Police Department





Printed: 07/30/96 00:14

7940EL

# Philadelphia Police Department





Printed: 07/30/96 07:10

$\#_7 \angle \tilde{c} \angle C \mathcal{S}$

# Philadelphia Police Department





Printed: 07/30/96 06:37

9/1 S/L

# Philadelphia Police Department





9 5 9 9 8 6

# Philadelphia Police Department





OIIOZL

# Philadelphia Police Department





Printed: 07/30/96 07:15

78116L

# Philadelphia Police Department





Printed: 07/30/96 07:06

723 368

# Philadelphia Police Department





# Philadelphia Police Department





Printed: 07/30/96 00:07

# Philadelphia Police Department





Printed: 07/30/96 00:16

| HOMICIDE RECORD | | CASE NO. H96 223 | | DC NO. 96 25 53386 |
|---|---|---|---|---|
| PHILADELPHIA POLICE DEPARTMENT | | LOCATION OF INCIDENT 2737 N 9th St. | | |
| HOMICIDE DIVISION | | | | |

| DATE OF ASSAULT 7-7-96 | TIME 12:10AM | DATE OF DEATH 7-7-96 | TIME 12:38AM | PRONOUNCED BY Dr. Blumstein | |
|---|---|---|---|---|---|
| DECEDENT Sammy CEDANO 34/w/1/m | | RESIDENCE | | PP NO. 734470 | HOSPITAL M.C.P |
| CAUSE OF DEATH Gunshot wound to the back | | | | WEAPON handgun | RECOVERED ☐ Yes ☐ No |
| POSTED BY DR. DR.McDonald | M.E. CASE 2931 | DATE 7-7-96 | | CASE STATUS | FUGITIVES ☐ Yes ☐ No |

**DEFENDANTS**

| NAME James  LAMB  15 B/M | REF* | | PP NO. 821479 | DATE ARRESTED 08-10-96 |
|---|---|---|---|---|
| NAME | RES. | | PP NO. | DATE ARRESTED |
| NAME | RES. | | PP NO. | DATE ARRESTED |

| INVESTIGATED BY (Lt.–Sgt.) SGT Strong 8551 | DETS. DET. William GROSS  683 |
|---|---|

**SUMMARY**

On Sunday July 7,1996 approximately. 12:10AM ,officers from the 25th

district,responded to a radio call,"Shooting 9th & Somerset St." When

the officers arrived on location they observed a light complex Spanish

male laying face down on the pavement in front of 2737 N 9th St. The male

later identified as Sammy CEDANO 34yrs, had a gunshot wound to the back.

CEDANO was transported to M.C.P by Medic 8, where he was pronounced dead

at 12:38AM by Dr Blumstein. A second male identified as, William CINTRON

32 /b/1/m res. ▮▮▮▮▮▮▮ was found on highway,8th & Lehigh

Ave,suffering from a gunshot wound to back. CINTRON was transported to

Episcopal Hospital and admitted in stable condition. A third male

identified a Daniel DIAZ 28/H/M res. ▮▮▮▮▮▮▮▮▮▮▮▮, was

MOTIGV   MOTIVE: ROBBERY

| HOM. RECORD TO ADA | HOM. SUMMARY TO ADA | | BINDER TO ADA | | | | |
|---|---|---|---|---|---|---|---|
| FUGITIVE JAMES LAMB | PP NO. 821479 | LOC. WARR. NO. 220455 | N.C.I.C. | | FUG. WARR. NO. | CIRCULAR NO. |
| FUGITIVE | PP NO. | LOC. WARR. NO. | N.C.I.C. | | FUG. WARR. NO. | CIRCULAR NO. |
| FUGITIVE | PP NO. | LOC. WARR. NO. | N.C.I.C. | | FUG. WARR. NO. | CIRCULAR NO. |
| FUGITIVE | PP NO. | LOC. WARR. NO. | N.C.I.C. | | FUG. WARR. NO. | CIRCULAR NO. |

| FAMILY NOTIF. (Deceased) Petra DIAZ | RELATIONSHIP mother | DATE 7-7-96 | | | TEL. NO. 541  7491 |
|---|---|---|---|---|---|
| VICTIM COMPENSATION FORM same | RELATIONSHIP | DATE | ADDRESS | | TEL. NO. |

75-328 (5/83)

located at the scene. DIAZ was bleeding from the head and was transported

to Episcopal Hospital, where he was treated and released.

   DIAZ informed the officers that he had been with CINTRON and CEDANO at

9th & Somerset Sts,when they were robbed point of gun by two black males.

On Friday, 7-26-96, Det.Gross conferred with ADA Gallagher who approved
the Charges of Murder, 2 Cts.Attempt Murder, 2 Cts.Agg.Assault,
2 Cts.Sim.Assault, 2 Cts.Robbery, 3 Cts.REAP. PIC,Consp, and PUFA
6106 & 6108 against JAMES LAMB.

On Saturday, 7-27-96, Det.McGuffin #632, obtained arrest warrant
#220455 for the arrest of James LAMB. This warrant was signed by BC McCook.
On Saturday, 7-27-96, Sgt.Strong, Det.McGuffin and uniform officers from
the 25th District served this warrant at 1312 Seltzer St. With negative
results.

   **On Saturday, 08-10-96 at 10:00PM, the deft. was arrested inside
227 W. Sulis st. by Det's.  Preliminary hearing set for Wednesday,
8-14-96, Rm 306 CJC.  Family of decedent 24'd.**

# HOMICIDE RECORD
## PHILADELPHIA POLICE DEPARTMENT
### HOMICIDE DIVISION

| | | | | |
|---|---|---|---|---|
| **CASE NO.** H96 223 | | **DC NO.** 96 25 53386 | | |

**LOCATION OF INCIDENT**
2737 N 9th St.

| DATE OF ASSAULT | TIME | DATE OF DEATH | TIME | PRONOUNCED BY |
|---|---|---|---|---|
| 7-7-96 | 12:10AM | 7-7-96 | 12:38AM | Dr. Blumstein |

| DECEDENT | RESIDENCE | PP NO. | HOSPITAL |
|---|---|---|---|
| Sammy CEDANO 34/w/1/m | e | 734470 | M.C.P |

| CAUSE OF DEATH | WEAPON | RECOVERED |
|---|---|---|
| Gunshot wound to the back | handgun | ☐ Yes ☐ No |

| POSTED BY DR. | M.E. CASE | DATE | CASE STATUS | FUGITIVES |
|---|---|---|---|---|
| DR.McDonald | 2931 | 7-7-96 | | ☐ Yes ☐ No |

### DEFENDANTS

| NAME | RES. | PP NO. | DATE ARRESTED |
|---|---|---|---|
| James LAMB 15 B/M | 532 W.Ruscomb st. | 821479 | 08-10-96 |
| NAME | RES. | PP NO. | DATE ARRESTED |
| NAME | RES. | PP NO. | DATE ARRESTED |

| INVESTIGATED BY (Lt.-Sgt.) | DETS. |
|---|---|
| SGT Strong 8551 | DET. William GROSS 683 |

### SUMMARY

On Sunday July 7,1996 approximately. 12:10AM ,officers from the 25th

district,responded to a radio call,"Shooting 9th & Somerset St." When

the officers arrived on location they observed a light complex Spanish

male laying face down on the pavement in front of 2737 N 9th St. The male

later identified as Sammy CEDANO 34yrs, had a gunshot wound to the back.

CEDANO was transported to M.C.P by Medic 8, where he was pronounced dead

at 12:38AM by Dr Blumstein. A second male identified as, William CINTRON

32 /b/1/m res.            t was found on highway,8th & Lehigh

Ave,suffering from a gunshot wound to back. CINTRON was transported to

Episcopal Hospital and admitted in stable condition. A third male

identified a Daniel DIAZ 28/H/M res.            Camden '', was

MOTIGV  MOTIVE: ROBBERY

| HOM. RECORD TO ADA | HOM. SUMMARY TO ADA | BINDER TO ADA |
|---|---|---|
| | | |

| FUGITIVE | PP NO. | LOC. WARR. NO. | N.C.I.C. | FUG. WARR. NO. | CIRCULAR NO. |
|---|---|---|---|---|---|
| JAMES LAMB | 821479 | 220455 | | | |
| FUGITIVE | PP NO. | LOC. WARR. NO. | N.C.I.C. | FUG. WARR. NO. | CIRCULAR NO. |
| GITIVE | PP NO. | LOC. WARR. NO. | N.C.I.C. | FUG. WARR. NO. | CIRCULAR NO. |
| VE | PP NO. | LOC. WARR. NO. | N.C.I.C. | FUG. WARR. NO. | CIRCULAR NO. |

| TIF. (Deceased) | RELATIONSHIP | DATE | | | |
|---|---|---|---|---|---|
| DIAZ | mother | 7-7-96 | | | 1 |
| NSATION FORM | RELATIONSHIP | DATE | ADDRESS | | TEL. NO. |

located at the scene. DIAZ was bleeding from the head and was transported

to Episcopal Hospital, where he was treated and released.

DIAZ informed the officers that he had been with CINTRON and CEDANO at

9th & Somerset Sts,when they were robbed point of gun by two black males.

On Friday, 7-26-96, Det.Gross conferred with ADA Gallagher who approved
the Charges of Murder, 2 Cts.Attempt Murder, 2 Cts.Agg.Assault,
2 Cts.Sim.Assault, 2 Cts.Robbery, 3 Cts.REAP. PIC,Consp, and PUFA
6106 & 6108 against JAMES LAMB.

On Saturday, 7-27-96, Det.McGuffin #632, obtained arrest warrant
#220455 for the arrest of James LAMB. This warrant was signed by BC McCook.
On Saturday, 7-27-96, Sgt.Strong, Det.McGuffin and uniform officers from
the 25th District served this warrant at 1312 Seltzer St. With negative
results.

**On Saturday, 08-10-96 at 10:00PM, the deft. was arrested inside
227 W. Sulis st. by Det's. Preliminary hearing set for Wednesday,
8-14-96, Rm 306 CJC. Family of decedent 24'd.**

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA | |
| --- | --- | --- |
| *CONTINUATION  SHEET* | POLICE    DEPARTMENT | |
| NAME | PAGE | CASE NO. |

Crow

We gave out Photos on
Lamb. I called last out
for Martin. He was'nt in,
they said he'll be in
Sunday night. We can give
him more photos. I'm sure
Martin will find her.

Mc Guffin

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA | |
| --- | --- | --- |
| CONTINUATION  SHEET | POLICE   DEPARTMENT | |
| NAME | PAGE | CASE NO. |
| | | |

75-483A

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA | |
|---|---|---|
| **CONTINUATION  SHEET** | **POLICE   DEPARTMENT** | |

| NAME | | PAGE | CASE NO. |
|---|---|---|---|

Contact Det M. Gross NCD
159 × Det Kerwin NCD
About Beepers and Jewelry
Record From John Moore

75-483A

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA |
|---|---|
| *CONTINUATION  SHEET* | POLICE  DEPARTMENT |

| NAME | PAGE | CASE NO. |
|---|---|---|
|  |  |  |

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |  |
|---|---|---|
| *CONTINUATION SHEET* | POLICE   DEPARTMENT |  |
| NAME | PAGE | CASE NO. |

Shot in left head

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |  |
|---|---|---|
| CONTINUATION SHEET | POLICE    DEPARTMENT |  |
| NAME | PAGE | CASE NO. |

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
| CONTINUATION SHEET | POLICE DEPARTMENT |

| NAME | | PAGE | CASE NO. |
| --- | --- | --- | --- |

Dias

Taken from Danny Dias
Silver gold Cross, Ring with Blue Stone
Beeper

Taken From Sammy Watch square
for black Leather Band
Beeper

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA | |
|---|---|---|
| CONTINUATION SHEET | POLICE DEPARTMENT | |
| NAME | PAGE | CASE NO. |

75-483A

| $Date$ | $Dc^{\#}$ | $EDD^{\#}$ | $Place$ | $Compl$ |
|---|---|---|---|---|
| 6-? | 25-4r4o8 | 1777 | | |
| 6-?/ | 25-48588 | * 7807 | | |
| 6-?? | 48119 | * 7825 | | |
| | No Good 11730 | 1131 | Cincinnati Cincinnati | |
| | No Good 11112 | * 788 | | |
| 6-25 | 49590 | * 7916 | | Lamb, James |
| 6-? | No Good 3111 | 7988 | Fort Indiana | |
| 7-7 | Stobbins 81506 | 8180 | | |
| 7-7 | 82407 | * 8285 | | |
| 7-11 | No Good 54518 | 8596 | 99 Central Ld | |
| 7-17 | 55414 | 8734 | 99 Indiana | |
| 7-16 | Stobbins 86052 | 8810 | | |

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 76 | 21 | 48588 | J | 25 | 12 | 6-21-76 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN |
|---|---|---|---|
| | 411 | 630 | |

**LOCATION OF OCCURRENCE** 3057? Hutchinson St.  ☐ IN ☑ OUT  TYPE OF PREM.

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |
|---|---|---|---|
| 6 76 | 5 | 6 | |

| COMPLAINANT | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|
| | 41 | 1 | M | |

**ADDRESS** PHONE (BUSINESS)

| FOUNDED | REPORT TO FOLLOW | | UNIT | CODE | INV. CONT. NO. |
|---|---|---|---|---|---|
| ☐ Yes ☐ No | ☑ Yes ☐ No ☐ Close Out | | EDD | 59 | 780 |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

**DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)**

Complainants were sitting on front
step of above residence was shot in
Left leg 1st unit 3/4 HFD.
Trans to Temple Hosp. Conditions
P. Van Dugan.

| WITNESS | ADDRESS | PHONE NO. |
|---|---|---|

**OFFENDER INFORMATION** 3/4

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes ☐ No | $ |
| | | | |
| 172071 | 4321 | | |

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|
| | VEHICLE 2 — OPERATOR'S NAME |

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 96 | 35 | 48229 | N | 35 | 98 | 6-22 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN |
|---|---|---|---|
| Agg Aslt. | 411 | 7:10 | |

LOCATION OF OCCURRENCE
Germantown + Hiltow St

☐ IN ☐ OUT  TYPE OF PREM.

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |
|---|---|---|---|
| 6-22-86 | 6 | 2:30 | multibl gunshot wounds |

COMPLAINANT
CJ uei

AGE 26  RACE B  SEX M  PHONE (HOME)

ADDRESS

PHONE (BUSINESS)

| FOUNDED | REPORT TO FOLLOW | | UNIT E | |
|---|---|---|---|---|
| ☐ Yes ☐ No | ☑ Yes ☐ No ☐ Class Out | | | |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)  Hosp Case

R/c — m/cayl Shooting ...
DBoee compl states unknown B/m
Approached him on Hwy and pointer
gun Demanded where is Car was
compl stated he Turned To Run
and This male Fired unknown
number of shots hitting him Several ...

OFFENDER INFORMATION
B/m 30yr Blm 5'8" Thin Bld Blue ...
Gas shirt sleeve sht ...

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes ☐ No $ | |

Compl was Found + Transported by
Pit amBulance Co. To Temple Hosp
Treated For gunshot wounds Lf Hand
Lf Forearm 77 groin area Lf Leg Above
Knee Lf Leg Below Knee; Fragments
Rt upper Thigh Stable cond On 3rd ...

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|
| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME |

| WANTED/STOLEN MESSAGE SENT | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|
| General No.    Date | | | |

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C.) NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 96 | 25 | 10142 | M | 25 | 046 | 6-23 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OCC. | RUB IN |
|---|---|---|---|
| AGG ASSLT | 415 | 720 | A/P |

LOCATION OF OCCURRENCE
2824 Morphine

TYPE OF PREM.
☐ IN  ☒ OUT

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A | NATURE OF INJURY |
|---|---|---|---|---|
| 6-23 | 7 | 710 | G | Head |

COMPLAINANT
AGE RACE SEX  38 B M
PHONE (HOME)

ADDRESS
O O S/A
PHONE (BUSINESS)

| FOUNDED | REPORT TO FOLLOW | | INV. CONT NO. |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No  ☐ Close Out | EOD 59 | 2669 |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)

RVC Assult
Comp States he was struck in Back of
head w/ 2 x 4 by b/law b/m
Treated and Released at Temple

check meg results

| WITNESS | ADDRESS | PHONE NO. |
|---|---|---|

OFFENDER INFORMATION
Harry b/m 38yrs N.F.d
Agg of Agg Semi asslt

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| Comp trans to temple by medic 15 | | ☐ Yes ☐ No | $ |
| Treated by DR Carris | | | |

2
3
0
1
4
2

| VEHICLE 1 – OWNER'S NAME | VEHICLE 2 – OWNER'S NAME |
|---|---|
| VEHICLE 1 – OPERATOR'S NAME | VEHICLE 2 – OPERATOR'S NAME |

| WANTED/STOLEN MESSAGE SENT  General No.  Date | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 96 | 25 | 49590 | M | 25 | 04 | 06-25-96 |

CRIME OR INCIDENT CLASSIFICATION: ACCRAVATED ASSAULT   CODE 411

TIME OUT 250 P  TIME IN

LOCATION OF OCCURRENCE: 1331 W. SOMERSET ST.

IN / OUT  TYPE OF PREM.

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |
|---|---|---|---|
| 06-25-96 | 2 | APP. 2:45 | GUNSHOT |

COMPLAINANT: JAMES LAMB   AGE 14  RACE B  SEX M

PHONE (HOME)   PHONE (BUSINESS)

ADDRESS

FOUNDED ☐Yes ☐No   REPORT TO FOLLOW ☐Yes ☐No ☐Close Out   UNIT   CODE   INV. CONT NO. 7916

WITNESS ☐Yes ☐No   TRACEABLE PROP. ☐Yes ☐No   UNIQUE DESCRIPTION OF OFFENDER ☐Yes ☐No   OTHER EVIDENCE ☐Yes ☐No

DESCRIPTION OF INCIDENT:

R/C SHOOTING
COMPL FOUND ON HIGHWAY AT ABOVE LOC
SHOT MULTIPLE TIMES - LEGS/BACK/HEAD
COMPL TRANSP TO TEMPLE HOSP BY MEDIC 4
25 B. TREATED IN CRITICAL CONDITION
BY DR. ALBERT. EDD NOTIFIED

WITNESS   ADDRESS   PHONE NO.

OFFENDER INFORMATION

PROPERTY DESCRIPTION   PROP. CODE   INSURED ☐Yes ☐No   STOLEN VALUE $

VEHICLE 1 — OWNER'S NAME   VEHICLE 2 — OWNER'S NAME

VEHICLE 1 — OPERATOR'S NAME   VEHICLE 2 — OPERATOR'S NAME

WANTED/STOLEN MESSAGE SENT  General No.  Date   DIST./UNIT TERMINAL   RECEIPT NO.   SENT BY

PHILADELPHIA POLICE DEPARTMENT

# COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 96 | 25 | 51506 | J | 25 | 20 | 6/3/96 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN |
|---|---|---|---|
| Agg Assault | 414 | 1130 P | |

LOCATION OF OCCURRENCE: 9th + Clearfield ☐ IN ☐ OUT TYPE OF PREM.

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |
|---|---|---|---|
| 6/3/96 | | 1130 P | Stabbed |

| COMPLAINANT | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|
| | | H | M | |

AD[DRESS] PHONE (BUSINESS)

| F[OLLOW-UP] | REPORT ... TO FOLLOW | | UNIT | CODE | INV. CONT NO. |
|---|---|---|---|---|---|
| ☑ Yes ☐ No | ☑ Yes ☐ No | ☐ Class Out | EDD | 59 | 8180 |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

DESCRIPTION OF INCIDENT *(Include Description of Crime Scene if Applicable)*

B/M Stabbing Hospital
Compl transported to Hosp.
E.R. with a stab wound to the
left chest area. Compl in critical
condition treated by Dr Kaufman
[illegible] notified [illegible] at scene. P/O [illegible]
#6272.

| WITNESS | ADDRESS | PHONE NO. |
|---|---|---|
| | | |

OFFENDER INFORMATION

Joel [illegible]
3100 Barnett [illegible]

| PROPERTY DESCRIPTION *(Include Make, Model, Color and Serial No. Where Applicable)* | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes ☐ No | $ |

DC NO.

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|
| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME |

| WANTED/STOLEN MESSAGE SENT General No. Date | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|

| REPORT PREPARED BY | NO. | DIST./UNIT | TOTAL PAGES | PAGE NO. |
|---|---|---|---|---|
| M [illegible] | 6273 | 25 | 1 | 1 |

| REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | CEN NO. |
|---|---|---|---|---|
| [illegible] | 4176 | 25 | | |

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FOR...

75-48 (Rev. 6/94)

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 96 | 25 | 57407 | 5 | 25 | 15 | 7-4-96 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN |
|---|---|---|---|
| Agg Assault | 411 | 1130 | 0 |

| LOCATION OF OCCURRENCE | ☐ IN  ☒ OUT | TYPE OF PREM. |
|---|---|---|
| 9th & Somerset | | 53 |

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A | NATURE OF INJURY |
|---|---|---|---|---|
| 7-3-96 | 3 | 1100 | 6 | |

| COMPLAINANT | D.O.B. 9-14-76 | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|---|

| FOUNDED | REPORT TO FOLLOW | | UNIT | CODE | INV. CONT. NO. |
|---|---|---|---|---|---|
| ☒Yes ☐No | ☒Yes ☐No ☐Close Out | | PWC | S9 | 1285 |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐Yes ☐No | ☐Yes ☐No | ☐Yes ☐No | ☐Yes ☐No |

**DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)**

P/c Shooting victim
Comp#2 Shahim moody Blm 15 yrs. D.O.B
1-19-31, 2345 n parier st. Tel# 223-4773
Both compl. were starang outside above
location when they were shot by below
males. Compl #1 was shot once in the left
forearm. Comp #2 was shot in left

| WITNESS | AGE | ADDRESS | PHONE NO. |
|---|---|---|---|

**OFFENDER INFORMATION**
4 Blk males in a burgendy oldsmobile, 4Dr.

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐Yes ☐No | $ |

lower leg. Both are in stable condition.
Dr. Buchman. comp. were taken to H
Temple Hospital by above witness. East
Detectives notified.

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|

| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME |
|---|---|

| WANTED/STOLEN MESSAGE SENT General No.  Date | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|
| REPORT PREPARED BY | | NO. | DIST./UNIT | TOTAL | PAGE |

PURSUANT TO ACT 155 OF 1992 THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

75-48 (Rev. 6/94)

COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 96 | 25 | 54599 | | 25 | 1010 | 7-11-9 |

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 96 | 25 | 54548 | J | 25 | 10 | 7-11-96 |

CRIME OR INCIDENT CLASSIFICATION: Asslt

CODE: 411

TIME OUT / TIME IN

LOCATION OF OCCURRENCE: 9th + Clearfield

☐ IN  ☒ OUT

TYPE OF PREM: 53

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A | NATURE OF INJURY |
|---|---|---|---|---|
| 7-10-96 | 3 | 11⁰⁰ | P | Gunshot |

COMPLAINANT: 12.12.70   AGE: 12   RACE: B   SEX: M   PHONE (HOME):

PHONE (BUSINESS):

FOUNDED: ☒ Yes ☐ No   REPORT/TO FOLLOW: ☒ Yes ☐ No ☐ Close Out

UNIT: DR   CODE: 59   INV. CONT. NO.: 1395

WITNESS: ☐ Yes ☐ No   TRACEABLE PROP.: ☐ Yes ☐ No   UNIQUE DESCRIPTION OF OFFENDER: ☐ Yes ☐ No   OTHER EVIDENCE: ☐ Yes ☐ No

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)

R/C Assault.

Above Compl. Suffered Gunshot Wound
To Pinky Finger of Right Hand. Shot
Was Fired By Unk Person.
Compl In Stable Condition.
Def Unable To ID Shooter.
Dr Rebbecchi

| WITNESS | ADDRESS | PHONE NO. |
|---|---|---|
| | | |

OFFENDER INFORMATION

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED ☐ Yes ☐ No | STOLEN VALUE $ |
|---|---|---|---|
| | | | |

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|
| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME |

| WANTED/STOLEN MESSAGE SENT | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|
| General No.          Date | | | |

PHILADELPHIA POLICE DEPARTMENT
**COMPLAINT OR INCIDENT REPORT**

| YEAR | DIST./OCC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 96 | 25 | 55494 | J | 25 | 20 | 7-14-96 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN |
|---|---|---|---|
| AGG Assault | 411 | 831 | |

LOCATION OF OCCURRENCE
1400 W. Indiana

TYPE OF PREM. □ IN □ OUT

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A | NATURE OF INJURY |
|---|---|---|---|---|
| 7-14-96 | 7 | 828 | | |

| COMPLAINANT | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|
| | | B | M | |

| FOUNDED | REPORT TO FOLLOW | UNIT | CODE | INV. CONT NO. |
|---|---|---|---|---|
| ☑ Yes □ No | □ Yes □ No □ Class Out | KDD | 55 | 5774 |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| □ Yes □ No | □ Yes □ No | □ Yes □ No | □ Yes □ No |

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)

P/C Shooting
Police responded to temple Hosp.
met both witness, who stated he
was with the comp. at above location
when b/m male exited both veh
shot comp. one time in the ___
Comp taken to temple Hosp - stable cond.

| WITNESS | ADDRESS | PHONE NO. |
|---|---|---|
| Andrew Jones | 14 eyes n 1/1 front 2 | |

OFFENDER INFORMATION
3-4/ #1 in cleric  4hr long
Auto  #1 south in front ___

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| Drove comp to Hosp - Nathaniel Lopez H/m 105 Lope Ave. Passaic NJ 01055, B) 629 4758 Dr. Karras temple Hosp | | □ Yes □ No $ | |

DC NO

| VEHICLE 1 - OWNER'S NAME | VEHICLE 2 - OWNER'S NAME |
|---|---|
| | |

| VEHICLE 1 - OPERATOR'S NAME | VEHICLE 2 - OPERATOR'S NAME |
|---|---|
| | |

| WANTED/STOLEN MESSAGE SENT | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|
| General No.        Date | | | |

| REPORT PREPARED BY | NO. | DIST./UNIT | TOTAL | PAGE |
|---|---|---|---|---|
| | | | | |

| INVESTIGATION INTERVIEW RECORD | PHILADELPHIA POLICE DEPARTMENT HOMICIDE DIVISION | CASE NO. H96-223 |
|---|---|---|
| | | INTERVIEWER Walsh/Coogan |

| NAME Domonique Maxwell | AGE 11 | RACE b/f | |
|---|---|---|---|

| ADDRESS | APARTMENT NO. | PHONE NO. 848-3058 |
|---|---|---|

| NAME OF EMPLOYMENT/SCHOOL | | SOC. SEC. NO. |
|---|---|---|

| ADDRESS OF EMPLOYMENT/SCHOOL | DEPARTMENT 5th Grade | PHONE NO. |
|---|---|---|

DATES OF PLANNED VACATIONS

DATES OF PLANNED BUSINESS TRIPS

NAME OF CLOSE RELATIVE
mother-

| ADDRESS same | PHONE NO. |
|---|---|

| PLACE OF INTERVIEW PAB Homicide | DATE 7-24-96 | TIME 10:30am AM PM |
|---|---|---|

| BROUGHT IN BY | DATE | TIME AM PM |
|---|---|---|

WE ARE QUESTIONING YOU CONCERNING the shooting death of Sammy Cedano on 7-7-96 at 2737 N 9th st

| WARNINGS GIVEN BY | DATE | TIME AM PM |
|---|---|---|

ANSWERS
(1)    (2)    (3)    (4)    (5)    (6)    (7)

Q. Did you know the man who was killed (Sammy Cedano)?

A. no

Q. Did you see the shooting in front of a chinese store at 2737 N 9th st on 7-7-96?

A. yes, it was around midnight.

Q. Where were you at the time of the shooting?

A. 226 904 W Silver st I was standing in the door way. two men had guns they were shooting at two men. When there was shooting another male ran by me. I was by myself. One of the guys who did the shooting was a guy I know as Shortie. My mom knows him as Reds. The other guy I do not know his name but I hve seen him before.

Q. Did you see shortie fire a gun?

A. yes

cont...    X Domonique Maxwell        Shirley Maxwell

| RECORD ☐ Yes ☐ No | CHECKED BY |
|---|---|

REVIEWED BY

75-483 (Rev. 7/82)

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA | | |
|---|---|---|---|
| CONTINUATION SHEET | POLICE DEPARTMENT. | | |

| NAME | | PAGE | CASE NO. |
|---|---|---|---|
| Domonique Maxwell | | 2 | H96-223 |

**Q.** Did you see the other male with a gun also fire his gun?

**A.** yes they were on the corner

**Q.** Did you see any one get shot?

**A.** yes the one who was shot in the back, the one who ran past me was shot in the leg.

**Q.** How long have you known Shortie?

**A.** almost a year. he would come into the school yard where I went to school ~~I spoke to him~~

**Q.** ~~Itmxshawingxyouxndnexi2lxphotosxdaxypuxrecanizexanyonexfromxthexshooting2~~

**Q.** ( How long have you seen the other male who had a gun?

**A.** I dont know his name, I had seen him about 5 times before.

**Q.** Describe Shortie?

**A.** light skinned  short, blondish hair, he has a scar on his face.

**Q.** What was shortie wearing that night (the night of the shooting)?

**A.** white shirt, white hat and white sneakers the other male was wearing white shirt jeans black sneakers and a black cap

**Q.** Describe the other male?

**A.** he is dark skinned he was older than shortie  he was taller than shortie he is heavier than shortie

**Q.** This is Det. Joe Walsh, he is going to show you nine (9) photos see if you reconize anyone in regards to the shooting that night? (PPN 993340 PPN828406, PPN 828382, PPN 824165, PPN 821479, PPN ~~833~~ 808293, PPN 826934 PPN 828475 PPN 828459)

**A.** this is Shortie (821479- James LamB) , this other guy (828382 — Asa Wabster) his is from my old block he sells drugs. He is tall and thin

**Q.** What did this Shortie do?

**A.** he is the one with the gun and was shooting the gun.

75-483A

X Domonique Maxwell      Shirley Maxwell

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| CONTINUATION SHEET | POLICE DEPARTMENT |

NAME  Domonique Maxwell

PAGE                CASE NO.

7-30-96        1 PM

Inside

Q   I'm going to show you a group
of photo's will you tell me if
you recognize any of these men?
Shown Photos 82 274 - 715 116 - 730 467
786056 - 720 110

A.  I don't Recognize anybody.
        Domonique Maxwell

75-483A

App. 076

| INVESTIGATION INTERVIEW RECORD | PHILADELPHIA POLICE DEPARTMENT HOMICIDE DIVISION | CASE NO. H 96 - 223 |
|---|---|---|
| | | INTERVIEWER W GROSS 683 |

| NAME Shirley Maxwell | AGE 45 | RACE B/F | DOI |
|---|---|---|---|
| ADDRESS 6 | APARTMENT NO. | | 8c |
| NAME OF EMPLOYMENT/SCHOOL LACC OFF | | | SOC. |
| ADDRESS OF EMPLOYMENT/SCHOOL | DEPARTMENT | | PHONE NO. |

DATES OF PLANNED VACATIONS

DATES OF PLANNED BUSINESS TRIPS

NAME OF CLOSE RELATIVE

| ADDRESS | PHONE NO. |
|---|---|

| PLACE OF INTERVIEW Homicide Division PAB | DATE 7-24-96 | TIME 10 40 AM PM |
|---|---|---|
| BROUGHT IN BY Det. W. Gross & W. Googar | DATE 7-24-96 | TIME 10 30 AM PM |
| WE ARE QUESTIONING YOU CONCERNING Shooting Death of Sammy Cedeno on 7-7-96 | | |
| WARNINGS GIVEN BY | DATE | TIME AM PM |

ANSWERS

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|---|---|---|---|---|---|---|

Q. Where were you living on 7-7-56?

A. 904 W. Silber St.

Q. Where were you on 7-7-96 At About 12:10 AM?

A. In the Bath TuB. TAHing A Bath

Q. DiD you hear Any shots At That Time?

A. I heard two shots. Th

Shirley Maxwell

| RECORD ☐ Yes ☐ No | CHECKED BY |
|---|---|
| REVIEWED BY | |

75-483 (Rev. 7/82)

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| CONTINUATION SHEET | POLICE  DEPARTMENT |

NAME  Shirley Maxwell

PAGE  2    CASE NO.

Q. What happened next?

A. My Daughter Domonique came
   in and said The 'Cops' were
   out there. AFTER I got Tu B
   and Dried off I got Dressed I went
   Down stairs. My Daughter said
   Somebody got killed out there.
   Then the Rescue wagon came
   And left. Domonique said to
   me that she saw who did it
   I never asked who did it but
   I did ask her how she never it
   She said she saw it. I figured
   she would eventially tell me.
   Then the Detectior came Around
   on Sunday Morning. That's when
   I Told them I didn't see
   Anything but my daughter did.
   Then Told them We were mouing.
   They said They would wait until
   we moved and Then Talk.
   Then You Came Around On 7-15-96.

                    Shirley Maxwell

75-483A

| INVESTIGATION INTERVIEW RECORD | PHILADELPHIA POLICE DEPARTMENT HOMICIDE DIVISION | CASE NUMBER H96-223 |
|---|---|---|
| | | INTERVIEWER Det Rocsitec 9113 |

**NAME** DANIEL DIAZ    **AGE** 28    **RACE** H/M

**At** CAMDEN    **APARTMENT NUMBER**

**NAME OF EMPLOYMENT/SCHOOL**

**ADDRESS OF I**    **DEPARTMENT**    **TELEPHON**

**DATES OF PLANNED VACATIONS** N/A

**DATES OF PLANNED BUSINESS TRIPS** N/A

**NAME OF CLOSE RELATIVE**

**ADDRESS**

**PLACE OF INTERVIEW** INSIDE ROOM 104 PAB    **DATE** 7-7-96    **TIME** 2:55 AM

**BROUGHT IN BY** 25TH DISTRICT POLICE    **DATE**    **TIME** AM/PM

**WE ARE QUESTIONING YOU CONCERNING** THE SHOOTING DEATH OF SAMMY CEDANO ON 7-7-96 AT 2737 N 9TH

**WARNINGS GIVEN BY**    **DATE**    **TIME** AM/PM

**ANSWERS**    (1)    (2)    (3)    (4)    (5)    (6)    (7)

Q. CAN YOU READ, WRITE AND UNDERSTAND ENGLISH?

A. YES.

Q. ARE YOU UNDER THE INFLUENCE OF ANY DRUGS OR ALCOHOL AT THIS TIME?

A. NO.

Q. WERE YOU AT 2737 N 9TH EARLIER TODAY WHEN PERSONS WERE SHOT?

A. YES.

Daniel Di

**RECORD** ☐ Yes ☐ No    **CHECKED BY**

**REVIEWED BY**

75-483 (Rev. 7/82)

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
| CONTINUATION SHEET | POLICE DEPARTMENT |

| NAME DANIEL DIAZ | PAGE 02 | CASE NO. H96-223 |

Q. TELL ME WHAT HAPPENED AT 2737 N 9TH ST EARLIER TODAY?

A. I WAS WAITING TO CROSS THE STREET AT 9TH & SOMERSET WHEN A BLACK GUY, LIGHT SKIN WITH A WHITE SHIRT AND A BASEBALL CAP, CAME UP FROM BEHIND ME AND PUT A GUN TO THE RIGHT SIDE OF MY HEAD, LIKE A LITTLE REVOLVER, A .32 SNUBNOSE, AND HE TOLD ME TO WALK BACK DOWN 9TH ST. I HAD JUST PASSED A STORE AT 9TH & SOMERSET, IT WAS A CHINESE STORE, AND THIS BLACK GUY AND ANOTHER DARKER SKIN ONE WITH STRIPED SHIRT WITH HORIZONTAL STRIPES, WERE BOTH OUTSIDE THE STORE. WHEN I PASSED THEM IS WHEN THE GUY CAME UP WITH THE GUN.

Q. WHAT HAPPENED WHEN YOU WALKED DOWN 9TH ST.

A. I DIDN'T GET ½ WAY DOWN THE STREET WHEN THE GUY TOLD ME TO LAY ON THE GROUND AND I LAID ON THE SIDEWALK THE SAME SIDE OF THE STORE — HE ASKED ME IF I HAD ANY MONEY AND I TOLD HIM NO & AND HE STARTED CHECKING ME HE TOOK $17 MAYBE $20 FROM MY PANTS POCKET AND HE TOOK MY BEEPER AFTER HE TOOK MY MONEY HE ASKED ME WHY DID I LIE AND HE HIT ME IN THE HEAD WITH THE GUN.

D—1 D

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| CONTINUATION SHEET | POLICE DEPARTMENT |

| NAME | PAGE | CASE NO. |
|---|---|---|
| DANIEL DIAZ | 03 | 496-223 |

Q. HOW DID YOU RECEIVE THE INJURIES TO YOUR HEAD?

A. WHEN THE GUY HIT ME ON THE HEAD WITH THE GUN I STARTED
BLEEDING. AND I GOT STITCHES ON BOTH SIDES OF MY HEAD.

Q. WHAT HAPPENED AFTER THE MALE HIT YOU IN THE HEAD?

A. HE TOOK MY JEWELRY TOO WHEN HE WAS HITTING ME
TELLING ME TO HURRY UP HE TOOK A GOLD CHAIN WITH
A CROSS AND A GOLD RING WITH A BLUE BIRTHSTONE.
AFTER HE TOOK ALL THAT HE TOLD ME DON'T MOVE AND
HE WALKED AWAY BACK TOWARDS SOMERSET I HEARD TWO
SHOTS AND I GOT UP AND RAN TOWARDS CLIFTON.

Q. WHILE THE MALE WAS ROBBING YOU DID YOU SEE YOUR BROTHER?

A. YES, HE WAS WALKING BEHIND ME WITH ANOTHER GUY NAMED
BILLY AND THE OTHER BLACK GUY GRABBED THEM, MY
BROTHER SAMMY AND BILLY WERE LAYING ON THE SIDEWALK
BEHIND ME WHILE I WAS LAYING THERE.

Daniel Diaz

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
| CONTINUATION SHEET | POLICE DEPARTMENT |

**NAME** DANIEL DIAZ    **PAGE** 04    **CASE NO.** H16 223

Q. DID THE BLACK MALE THAT STRUCK YOU FIRE HIS GUN?

A. I DON'T KNOW WHICH ONE FIRED I HEARD TWO SHOTS WHEN I WAS ON THE GROUND, THEY CAME FROM RIGHT BEHIND WHERE MY BROTHER AND BILLY WERE LAYING.

Q. COULD YOU SEE WHAT THE OTHER MALE WAS DOING?

A. NO. BUT I HEARD HIM TELL MY BROTHER TO GIVE HIM HIS MONEY, MY BROTHER HAD A BEEPER TOO.

Q. CAN YOU DESCRIBE THE MALES?

A. THE ONE THAT HIT ME WAS A B/M, LT BROWN SKIN, ABOUT 17-21 YRS ABOUT 5'4" ABOUT 5'5" ABOUT 120-130 lbs WEARING A WHITE SHIRT WITH 3 BUTTONS A WHITE HAT WITH ANOTHER COLOR, WH SNEAKS AND DARK SHORTS, HIS BASEBALL CAP WAS PULLED DOWN, I DIDN'T SEE A BEARD OR MUSTACHE, THE OTHER GUY WAS DARKER WITH A STRIPED SHIRT, I DON'T REMEMBER IF HE HAD A HAT, HE WAS A LITTLE TALLER, ABOUT 5'6"-5'7" ABOUT 140-150 lbs BOTH OF THEM RAN UP 9TH ST WHEN I HEARD THE FIRST SHOT ONE SAID "DON'T KILL THEM" AND THEN I HEARD THE 2ND SHOT.

Daniel Diaz

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| CONTINUATION SHEET | POLICE DEPARTMENT |

NAME: DANIEL DIAZ    PAGE: 05    CASE NO.: H16-223

Q. AFTER YOU HEARD THE SHOTS WHERE WAS YOUR BROTHER AND BILLY?

A. THEY WERE LAYING BEHIND ME, AFTER THE SHOTS I RAN DOWN 6TH ST AROUND 8TH & CERTICH I RAN INTO A STORE AND TOLD THE KOREAN LADY TO CALL POLICE SHE TOLD ME TO USE THE PHONE OUTSIDE — I USED THE PHONE OUTSIDE AND CALLED 911 WHEN I WAS TALKING TO THEM A LADY COP DROVE UP AND I WENT WITH HER TO THE HOSPITAL AND I ASKED HER ABOUT MY BROTHER AND SHE TALKED ON THE RADIO AND SAID MY BROTHER WENT TO ANOTHER HOSPITAL.

Q. DID YOU EVER HEAR THESE TWO BLACK MALES TALK TO EACH OTHER?

A. YES, WHEN WE WERE ALL LAYING ON THE GROUND AND THE ONE GUY SAID "DON'T KILL THEM" AFTER THE FIRST SHOT AND THEN I HEARD THE SECOND SHOT AND THEN THAT IS WHEN THEY WENT UP 9TH TOWARDS SOMERSET.

Q. WHEN YOU WALKED PASSED THE STORE AT 9TH & SOMERSET WAS THERE ANYONE INSIDE?

A. NO, THE 2 BLACK GUYS WERE THE ONLY ONES THERE LIKE STANDING IN THE DOORWAY,

Daniel Diaz

75-483A

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA | |
|---|---|---|
| CONTINUATION SHEET | POLICE   DEPARTMENT | |

| NAME  Daniel Diaz | PAGE 6 | CASE NO.  H96-223 |
|---|---|---|

Re-interview inside PAB Homicide room D on 7-22-96 at 10:45am by Dets. Coogan

and Groos

Q.   Danny, I'm showing you 9 nine (9) photos see if you reconize anyone

in fegards to the shooting death of Sammy Cedano? (PPN 828475, PPN 828459,

PPN 821479, PPN 793340, PPN 828406, PPN 828382, PPN 824165, PPN 808293,

PPN 826934)

A.   this one (PPN 821479- James Lamb) he looks like the short guy. He had a

white cap on it was a baseball cap it had another color in it. the peak was

in the front. But this male looks like him. He would be the short one

5'3 or 5'4  120 to 130 lbs. He was a young boy 15 ot 18yrs. He was on my

right. I saw mostly his left side. He had a revolver I dont know the

cal. It was small. He took $12.00 from me and my chain and a beeper

(564-3096). He hit me on the head with the gun.

Its this boys eyes and lips that identify him for me

X Daniel Diaz

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| **CONTINUATION SHEET** | **POLICE DEPARTMENT** |

NAME Danny Diaz

PAGE

CASE-NO CROSS 685

7-396  11 am

Inside Homicide

Division

Q   I'm going to show you a group of photos Tell me if you recognize any of these men?

A.   I can't say he was DARK SKIN I only got a look at the LIGHT SKIN good.
Shown (.791,186 -720 /10- 786 056  730 467 - 715116 - 827274  722366 )

Danny Diaz

75-483A

| **INVESTIGATION INTERVIEW RECORD** | | | **PHILADELPHIA POLICE DEPARTMENT HOMICIDE DIVISION** | | CASE NO. H96-223 | |
|---|---|---|---|---|---|---|
| | | | | | INTERVIEWER Coogan | 9086 |

| NAME William Cintron | | | AGE 34 | RACE H/M | DOB | |
|---|---|---|---|---|---|---|
| ADDRESS | J | 5 | APARTMENT NO. beeper-5 | ) | PHONE NO. | |

| NAME OF EMPLOYMENT/SCHOOL | | SOC. SEC. NO. |
|---|---|---|

| ADDRESS OF EMPLOYMENT/SCHOOL | DEPARTMENT | PHONE NO. |
|---|---|---|

DATES OF PLANNED VACATIONS

DATES OF PLANNED BUSINESS TRIPS

NAME OF CLOSE RELATIVE Eddie Cintron (brother)

| ADDRESS | | PHONE NO. |
|---|---|---|
| | ↓ | ) |

| PLACE OF INTERVIEW FAB Homicide room D | DATE 7-22-96 | TIME 9:40am | AM PM |
|---|---|---|---|

| BROUGHT IN BY | DATE | TIME | AM PM |
|---|---|---|---|

WE ARE QUESTIONING YOU CONCERNING
the shooting death of Sammy Cedano on 7-7-96 at 2737 N 9th St

| WARNINGS GIVEN BY | DATE | TIME | AM PM |
|---|---|---|---|

ANSWERS

(1)      (2)      (3)      (4)      (5)      (6)      (7)

Q₀  Did you know Sammy Cedano?

A.   yes I have know him for 30 yrs

Q.   Do you know Daniel Diaz?

A yes for about the same time or since he was a little baby

Q. On Sunday 7-7-96 at about 12:10am were you with Sammy and Daniel?

A.   yes, we were in a park at 5th and Lehigh. We were drinking beer and

soda. We were getting ready to go to churches chicken but instead we

went to the chinese store at 9 & Somerset St.  I went into the chinese

store. Sammy and Danny waited outside. As soon as I got into the store

a short light skinned b/m turned around in front of me and pulled a

gun from his belt. He had the gun in his right hand. He said "this is a

stick up give up your money". There was another taller b/m about my right

height (588) was with this light skinned male. The teller guy said "give

up your money".  This dark skinned male also had a small automatic with him.

| RECORD ☐ Yes ☐ No | CHECKED BY | |
|---|---|---|
| REVIEWED BY | | |

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
| CONTINUATION SHEET | POLICE DEPARTMENT |

| NAME | PAGE | CASE NO. |
| William Cintron | 2 | H96-223 |

A. cont... The light skinned guy had a revolver I think a 22 cal. They

marched me outside and lined me Sammy and Danny up. They said it was a

stick up again. Then the dark skinned male hit me several times with his

gun. Then the light skinned guy hit me with his gun. They hit all three

of us with there guns. The darked skinned guy kept hitting me and Sammy.

The light skinned guy hit me and Danny. These male took my money it was

about $100.00. I dont know if they took money from Danny. I dont think

they took any money from Sammy. He did not kn have any money. After they

took the money (we were in a line) they told us to lay down on the ground.

Both males said to lay down on the ground. I knew from my experience that

that by making us lay on the ground that they were going to kill us.

I pretended that I was going to lay down and then I jumped up and grabbed

the short klight skinned guy. I told Danny to run. As I leaped up the

dark skinned male shot Sammy. Sammy was already on the ground when he got

shot. When I jumped the light skinned male, that's when that male (the

short light skinned male) shot me. I was shot in the back. I think there

were fout shots altogether. I think they fired two shots at us as we were

running away. All three of us ran away but after a half a block Sammy fell

to gkk the ground. The two shooter ran back towards the store.

Q. Did the males ever call each other by name?

A. no

Q. Had you ever seen these males before?

A. yes I think so I have relatives in the area I may have seen them before.

Q. I'm showing you none (9) photos see if you reconize anyone ( PPN 828475,

PPN 828459, PPN 793340, PPN 821479, 828406, PPN 828382, PPN 824165, PPN

808293, PPN 826934)?

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| CONTINUATION SHEET | POLICE DEPARTMENT |

| NAME | | PAGE | CASE NO. |
|---|---|---|---|
| William Cintron | | 3 | H96-223 |

A.   this one (PPN 821479- James Lamb) look like the light skinned one. He

had a cap on when he robbed me. He is abot 5'3 to5'5 135 lbs  When the

robbery happened I told Danny that the guy was about 16 or 17yrs old be-

cause he sounded and acted like a kid. That is what got me scared.

Q.   What did the dark skinned male look like?

A.   he is about 18-22yrs  b/m 5'8 or 5'7 150 lbs mustache short hair eyes

were brown

Q. Can you read and write English?

A. yes

Hxx Q. How far did you go in school?

A.   10 grade

X William Cintron

75-483A

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA | |
|---|---|---|
| CONTINUATION SHEET | POLICE DEPARTMENT | |

| NAME | PAGE | CASE NO |
|---|---|---|

NAME  William Cintron

CASE NO  C-1055685

7-30-96.  10 $\frac{45}{}$ Am

Camden N. J.                Inside Homicide

Division

Q  I'm going To show you A GRoup
of  8 Photo's Tell me if you
Can Recognize any of This Photos?

A  I can't be sure I would have to
See him in Person. I could
Tell him By his Voice.
(Shown 722366 — 827274 — 715116
730467 — 786052 — 720110 — 751186)

William Cintron

75-483A

NEIGHBORHOOD SURVEY

Case or Complainant: _____ *H 96-233* _____

Location of Survey: _____ ████ _____

NOTE: List all occupants of building, whether interviewed or not. List all occupants on front of sheet, and continue interview on reverse side. List all visitors, include name, age, address, who were in building or apartment at time of interview. Include in interview, position of witness at time of occurrence. Take time to be precise.

TYPE OF PREMISES

Priv. Res. _____ ✓

Apt. House _____
Num Stories _____ 2 _____
Num Apts. _____
Num Occupants _____

Business _____

Factory _____

Hotel _____

Vacant Lot _____

DATE/TIME _____ 2/2/96, 10 AM

PRINT OR WRITE LEGIBLY.  BE PRECISE.

Shirley Maxwell 45/0/m,

MOVING TO

ABOVE'S DAUGHTER, Dominique Maxwell 11/B/F,

Saw job go down, Told ABOVE THAT IT WAS

2 YOUNG B/M'S who did job around 16 or 17

years old. They are neighborhood drug dealers.

They sell drugs in front of Chinese store

at 9th & Somerset. Both △'s wearing

white T-Shirts, white baseball caps, jean shorts

Reviewed _____  Detective _____
        Supervisor

| INVESTIGATION INTERVIEW RECORD | PHILADELPHIA POLICE DEPARTMENT HOMICIDE DIVISION | CASE NO. H 2 23 |
|---|---|---|
| | | INTERVIEWER DES. Mitchn / W. Gron |

| NAME James Lamb | AGE 15 | RACE B/M | D |
|---|---|---|---|
| ADDRES | APARTMENT NO. | | PHONE NO. |

| NAME OF EMPLOYMENT/SCHOOL | | SOC. SEC. NO. |
|---|---|---|
| University City H.S. | | |
| ADDRESS OF EMPLOYMENT/SCHOOL | DEPARTMENT | PHONE NO. |

DATES OF PLANNED VACATIONS
None

DATES OF PLANNED BUSINESS TRIPS
None

NAME OF CLOSE RELATIVE
Viola McGee

| ADDRESS | | PHONE NO. |
|---|---|---|

| PLACE OF INTERVIEW | DATE 6/9/97 | TIME 00 AM 12 PM |
|---|---|---|
| BROUGHT IN BY | DATE | TIME AM PM |

WE ARE QUESTIONING YOU CONCERNING THE Homicide By shooting of Sammy Codano 31 W/M which occurred on The Highway at 2737 N. 9th St. on

WARNINGS GIVEN BY 7-7-96 at about 12 am

| DATE | TIME AM PM |
|---|---|

**ANSWERS**

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|---|---|---|---|---|---|---|

Q. James, you are here today in the District Attorney's office along with your attorney. Mr. Fortunato N. Perri Jr. is that correct?

A. Yes.

Q. You, along with your attorney, have agreed to answer questions concerning the homicide by shooting of Sammy Codano which occurred at 2737 N. 9th St. on 7-7-96 at about 12 am. Is that correct?

A. Yes.

Q. Will you go on in your own words and tell us what you know concerning that shooting death?

| RECORD ☐ Yes ☐ No | CHECKED BY |
|---|---|
| REVIEWED BY Sampslamb | |

75-483 (Rev. 7/82

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
| CONTINUATION SHEET | POLICE DEPARTMENT |

| NAME | PAGE | CASE NO. |
| JAMES LAMB | 2 | H96-223 |

A. EARLIER THAT DAY, ME AND JOHN WERE OUTSIDE
AT 13th & SOMERSET. WE WAS GETTING HIGH. JOHN
GAVE ME THIS STUFF THAT WAS IN A BOTTLE,
AND SOME PILLS. THE STUFF THAT WAS IN THE
BOTTLE WAS YELLOW. I THINK IT WAS CODINE.
IT WAS LIKE SEVEN PILLS THAT HE GAVE ME.
THAT WAS LIKE AT 7:30 AT NIGHT. THEN WE
STARTED SMOKING ANGLE DUST. THE HE WENT
IN THE HOUSE AND I WENT IN THE HOUSE. THEN
WE CAME BACK OUT AT ABOUT 10:30 THAT
NIGHT. HE CAME AND GOT ME. THEN WE WENT
BACK ON 13th AND SOMERSET. THEN WE STARTED
GETTING HIGH AGAIN. WE WERE SITTING DOWN
AT 13th & SOMERSET DRINKING BEER AND JOHN
SAID COME ON, LET'S WALK DOWN 9th AND
SOMERSET SO WE CAN SEE WHO WE ARE GOING
TO ROB. THEN WE WERE ON 9th & SOMERSET
BUSTING ON EACH TALKING ABOUT EACH OTHER.
SO I STARTED TALKING ABOUT HIS EYES AND
REAL POPPY. HE WERE BUSTING ON EACH OTHER
IN THE CHINESE STORE. HE LETS OUT THE STORE.
THEN I WENT OUT THE STORE TO SEE WHERE
HE WAS AT AND HE WAS OUTSIDE WITH
A GUN POINTED AT THESE THREE ME, JOHN
TOLD THE ME TO LAY DOWN ON THE GROUND
FACE FLAT. THEN JOHN CALLED ME AND SAID

James Lamb

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| CONTINUATION SHEET | POLICE DEPARTMENT |

| NAME | PAGE | CASE NO. |
|---|---|---|
| JAMES LAMB | 3 | H 96-223 |

A (CONTINUED) COME HERE. JOHN WAS DOWN IN
ONE KNEE NOW AND HE WAS CHECKING
THE DUDES POCKETS. HE TOLD ME TO GO
IN THE OTHER PERSONS POCKETS WHILE I
CHECK HIS POCKETS. SO WHEN HE TOLD ME
TO GO IN THE PERSONS POCKETS THAT WAS
LAYING ON THE GROUND I HESITATED. THE
GUY WHO JOHN WAS CHECKING LOOKED UP AND
JOHN JUMPED UP AND STARTED SMACKING THE
DUDE IN THE HEAD WITH THE GUN. THE HE
TOLD ALL OF THEM TO LAY DOWN, STAY DOWN
AND DON'T LOOK UP. SO THEN JOHN SMACKED
THE PERSON IN THE MIDDLE IN THE HEAD
WITH THE GUN TWO TIMES. JOHN WAS STANDING
UP NOW. HE TOLD ME TO GO IN HIS POCKETS.
I STARTED TO GO IN THE GUYS POCKETS. I
GOT HALF WAY IN HIS POCKETS AND THAT IS
WHEN THE SHOT WENT OFF. I JUMPED STRAIGHT
UP. I HEARD SOMEBODY SCREAMING. THEN I HEARD
SOME MORE SHOTS. I RAN TOWARDS SELTER ST.
AND JOHN RAN BACK TOWARDS THE CHINESE STORE.
I RAN HOME TO MY MOMS HOUSE AT 13TH
AND SOMERSET. JOHN LIVES IN AN APARTMENT
NEXTTOP MY MOMS. JOHN KNOCKED MADE WAS DOOR
CAME IN THE HOUSE AND I WAS STILL AT MY
DOOR. I ASKED JOHN WHY DID HE DO IT. HE SAID

James Lamb

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
| CONTINUATION SHEET | POLICE DEPARTMENT |

NAME JAMES LAMB

PAGE 4

CASE NO. H 96-223

A (CONTINUED) HE HAD TO DO IT. JOHN WENT UPSTAIRS TO HIS HOUSE AND WHEN HE CAME BACK DOWN HE HAD CHANGED HIS CLOTHES.

Q. DID YOU HAVE A GUN AT THE TIME OF THIS INCIDENT?

A YES.

Q. DID YOU HIT ANYBODY WITH YOUR GUN. THAT IS DID YOU SLAP ANYONE WITH YOUR GUN?

A. NO I JUST SHOT IT.

Q. WHO DID YOU SHOOT AT

A. THE WITNESS. AS HE WAS COMING UP FROM THE GROUND I JUST SHAT AT HIM.

Q. DID YOU HIT HIM?

A. YES I HIT HIM.

Q. WHERE DID YOU HIT HIM?

A. IN HIS BACK.

Q. HOW MANY TIMES DID YOU FIRE YOUR GUN?

A. TWO TIMES.

Q. DID YOU HAVE AN AUTOMATIC OR A REVOLVER?

A. I THINK IT WAS A AUTOMATIC.

Q. WHAT HAPPENED TO THE GUN YOU USED TO SHOOT THE MAN.

A. ABOUT TWO DAYS LATER I WAS IN THE CAR WITH JOHN. WE WERE GOING TO ROB THESE PEOPLE. I WAS THE DRIVER. I GAVE HIM MY GUN. HE ROBBED THE PEOPLE. I DROVE AWAY A LITTLE

75-483A

James Lamb

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| **CONTINUATION SHEET** | **POLICE DEPARTMENT** |

NAME: JAMES LAMB

PAGE: 5

CASE NO. #96-223

A. (CONTINUED) BIT TO THE GAS STATION. HE CAME RUNNING AGAIN. THERE AND SAID SCOOT OVER. HE STARTED DRIVING. THE NEXT DAY JOHN WAS DRIVING AND THE POLICE STOPPED US. I HAD PUT THE GUN UNDER THE SEAT. THE POLICE AT THE GUN. IT WAS THE PASSENGER SEAT THAT I WAS IN.

Q. DO YOU KNOW WHAT HAPPENED TO THE GUN JOHN USED TO SHOOT THE MAN?

A. NO.

Q. WHAT HAPPENED AFTER THAT?

A. WHEN THE POLICE STOPPED THE CAR JOHN RAN. THEY GOT ME. I STRUCK THEM WHERE JOHN LIVED AT. THEY GOT HIM IN THE HOUSE AT 13TH AND SOMERSET. THEY LOCKED BOTH OF US UP. THEN THEY LET ME GO.

Q. WHEN YOU AND JOHN ROBBED AND SHE THE MEN AT 9TH AND SOMERSET, DO YOU RECALL JOHN SAYING ANYTHING ABOUT HAVING A BODY?

A. YES. HE SAID SHUT UP BEFORE I KILL YALL. I ALREADY GOT ONE BODY, WHAT'S ANOTHER ONE. THAT ALL HE SAID.

Q. I AM SHOWING YOU A PHOTOGRAPH OF A BLACK MALE. DO YOU RECOGRIZE THIS PERSON? (SHOW PHOTO #730467)

A. THAT IS JOHN. I THINK HIS LAST NAME IS MOORE

75-483A

James Lamb

App. 095

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
| --- | --- |
| CONTINUATION SHEET | POLICE DEPARTMENT |

| NAME | PAGE | CASE NO. |
| James Lamb | 12 | H 96 - 223 |

Q. Is that the same John that was with you when you robbed and shot the males at 9th and Somerset on 7-7-96?

A. Yes.

Q. You said you were high when this shooting occurred. Were you so high that you could not recall what happened?

A. No I wasn't that high.

Q. Can you read and write the English language?

A. No. I can't read.

Q. Your attorney is going to read this statement back to you. If there is anything that is not correct tell me.
(Statement read back by Mr. Perri)

Q. Is there anything you wish to change?

A. No.

_____
James Lamb

75-483A



DISTRICT ATTORNEY'S OFFICE
1421 ARCH STREET
PHILADELPHIA, PENNSYLVANIA 19102
686-8000

LYNNE ABRAHAM
DISTRICT ATTORNEY

February 18, 1998

Nino Tinari, Esquire
1500 Market Street, Suite 1400, Esquire
Philadelphia, PA 19102

Re:   **Commonwealth v. John Moore**
      **CP 98/02-106 & 141**

Dear Mr. Tinari:

In response to your request for discovery in the above-captioned case, enclosed please find the following:

A. Statement of:
1. Daniel Diaz 7/7,7/22,7/30/96
2. William Cintron 7/22,7/30/96
3. Shirley Maxwell
4. Shing Shee Huang
5. Dominique Maxwell 7/24,7/30/96
6. Sgt. Jackson
7. P/O Green
8. P/O Bannon                          11.  P/O Jernigan
9. P/O Dones                           12.  Sgt. Boone
10. P/O Silcox                         13.  James Lamb
   B. Property Receipt #s 2045101, 2046230, 2046231
   C. Warrant of Arrest #229464 with affidavit
   D. Scene Log
   E. Mobile Crime Detection Service Report with sketch (6 pages)
   F. Police 75-49's (3)
   G. Neighborhood Surveys (19)
   H. Defendant 75-229                          ·.
   I. Police 75-48's (3)
   J. Criminal extract of defendant John Moore
   K. Medical Examiner's Report
   L. Criminalistics Laboratory Report
   M. Ballistics Report
   N. Memorandum of Agreement with James Lamb



**DISTRICT ATTORNEY'S OFFICE**
**CONVICTION INTEGRITY UNIT**
THREE SOUTH PENN SQUARE
PHILADELPHIA, PENNSYLVANIA 19107-3499
215-686-8000

LAWRENCE S. KRASNER
DISTRICT ATTORNEY

February 25, 2022

**Via Electronic Mail**

Bret Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221

**Re:    John Moore, CP-51-CR-0201061-1998**
**Post-Conviction Brady Notice**

Dear Mr. Grote:

Pursuant to our Discovery and Cooperation Agreement, I am writing to inform you that the DAO's investigation has uncovered potentially exculpatory and/or impeachment evidence. This letter is meant to constitute a *Brady* Notice regarding the following evidence/information:

### 1. CIU Interview with Robert Hunter

On December 16, 2021, ADA Thomas Gaeta and I interviewed Robert Hunter at the District Attorney's Office in Philadelphia. As I related to you by phone, Mr. Hunter told us the following:

- Mr. Hunter was present on the night of the shooting in the above-captioned case. Also present were individuals whom Mr. Hunter knew as Peaceball, Hucklebutt, and Selime [sp?].
- From his position across the street and behind a car, Mr. Hunter saw James Lamb (whom he knew as "Reds") and "Newtin" shooting their weapons.
- Mr. Hunter saw Mr. Moore down the street on the night of the shooting.
- Mr. Hunter knew Moore, Newtin, and Lamb from the neighborhood. He used to attend parties at Newtin's house and described Newtin's house as the "go-to house."
- Mr. Hunter described Newtin as someone who would kill anyone who told on him. Mr. Hunter recalled that Newtin's mother's boyfriend always had guns. Newtin described himself as "Bishop" and said that he was going to be the first among his friends to get a gun. He did in fact obtain a gun before his other friends. Hunter said he got a gun because Newtin had a gun.
- Around the time of the shooting, Newtin was smoking PCP. He was "losing his mind."

- Mr. Hunter ran into Lamb in jail. Lamb told him, "I didn't do it, Newtin did." Hunter also saw Lamb after he got out of jail and asked him, "Why don't you make things right [for John Moore]"?

## 2. **Daffanie Turner**

On December 14, 2021, ADA Graham Sternberg and I interviewed Daffanie Turner at her home. Ms. Turner provided the following information:

- Ms. Turner confirmed that her brother was known as Newtin.
- Ms. Turner told us that her brother was friends with James Lamb.
- Ms. Turner told us that her brother Newtin committed suicide in 1996.
- Ms. Turner told us that her brother carried a gun, used drugs (including PCP), and committed robberies. She doesn't know where he got his drugs but thinks he was introduced to drugs around 13th and Park or Park and Somerset.
- When asked whether her brother was involved in the shooting in the above-captioned case, Ms. Turner said she did not know but that "anything is possible."

Please let me know if you have questions regarding this notice. Should any additional information come to light, this notice will be promptly supplemented.

Sincerely,


/s/ Jessica Attie Gurvich
Jessica Attie Gurvich
Assistant District Attorney
Special Investigations and Conviction Integrity Unit
Philadelphia District Attorney's Office


Cc: Nia Holston


| | | | |
|---|---|---|---|
| **Name** | ROBERT TURNER | **Photo Date** | 06/04/1996 |
| **Source** | PA | **Databases** | 1 - CPIN ARREST DATABASES |
| **Origin** | PA - OTHER | **Location ID** | OTHER |
| **Alias(s)** | | **Age at Arrest** | 17 |
| **DOB** | 04/11/1979 | **Gender** | MALE |
| **Place of Birth** | PENNSYLVANIA | **Weight** | 175 Lbs |
| **Height** | 5 FT 08 IN | **SSN** | |
| **SID** | 23637987 | **FBI** | |
| **Eye Color** | BROWN | **Hair Color** | BLACK |
| **Hair Length** | ABOVE EARS | **Complexion** | CLEAR |
| ilasses | NO | **Race** | BLACK | **Hispanic/Latino** | |
| kin Tone | DARK | **Teeth** | NORMAL | **Jewelry** | |
| MT (Scars, Marks, attoos) | | | | **Gang Member** | |
| iang Affiliation | | | | | |
| harges | | | | **Charge Category** | DRUGS |

Case: 22-1763    Document: 1-1    Page: 222    Date Filed: 04/26/2022

*** FOR INVESTIGATION USE ONLY    NOT FOR IDENTIFICATION    DESTROY AFTER 90 DAYS ***

All information requests may be monitored and are recorded and solely provided for use by authorized JNET users. The information is provided in response to the JNET user's request and is to be used exclusively by requestor in the performance and is to be used exclusively by requestor in the performance of criminal justice responsibilities only. Information received from this system may not be disseminated beyond law enforcement and criminal justice agencies. Although the information may continue to be valid over a period of time, it should be considered complete and accurate only on the date of response. cess to PennDOT information through JNET on personal devices is strictly prohibited.   Access may only be made using an agency owned and managed device. Using personally owned devices to access PennDOT information is strictly prohibited and constitutes misuse of the system, and your access to PennDOT information through JNET may be suspended, revoked, or terminated immediately and without notice for violating access or acceptable use polices.

App. 101

Declaration of Valerie Turner Murray made pursuant and subject to the penalties of 18 Pa.C.S. § 4904

1) My name is Valerie Turner Murray. I currently reside at 6739 Eastwood St., Philadelphia, PA 19149.

2) I lived at 934 W. Silver St., Philadelphia, PA 19133 in 1996 with my family, including my two daughters and my son.

3) My son was named Robert Lamar Turner, Jr. He was born on April 11th 1979. He died on October 18th, 1996 when he was 17.

4) Robert's nickname was "Newtin". I gave him his nickname when he was very young.

5) I only referred to him as Newtin, and everyone knew him as Newtin. His stepfather raised him instead of his father, Robert Turner, Sr., so we never called him Robert. I would be surprised if someone outside of his classmates and teachers at school knew that his real name was Robert.

6) James Lamb was very close with my son, who was two years and a half years older than him. I knew James as "Reds". Many people called him that because of his short close cropped red hair.

7) Reds looked up to Newtin and loved him. They spent a lot of time together, and Reds was at my house a lot.

8) I bailed my son out of jail before his grandmother passed away in August. He had been arrested a few times, but never spent much time in jail because I would bail him out.

9) My son had been shot twice and recovered. I had a haunting feeling that he was in danger and was constantly worried.

10) My son died in my home while having a mental breakdown.

11) The coroner told me he had drugs in his system and 30 Xanax pills in his stomach.

12) If John Moore was my son, I would want someone to share any knowledge they had that might help him. That's why I feel compelled to assist his legal team by sharing information about my son.

I swear that the foregoing is true and correct.

Signature *Valerie Murray*                    Date 4/5/2022

Valerie Turner Murray                          4/5/2022

Witness                                        Date

 **pennsylvania**
JUSTICE NETWORK

# JNET

| | |
|---|---|
| **EVENT#:** | **140402776** |
| **SID#:** | **21005568** |
| **NAME:** | **JESSE** |
| | **BROGDON** |
| **ARREST DATE:** | **Aug 21 2013 7:43PM** |
| **AGE AT ARREST:** | **40** |
| **HEIGHT:** | **510** |
| **WEIGHT:** | **225** |
| **HAIR COLOR:** | **BLACK** |
| **EYE COLOR:** | **BROWN** |
| **CPIN DATABASE** | |



**FOR INVESTIGATION ONLY
NOT FOR IDENTIFICATION
DESTROY AFTER 90 DAYS**

Printed JNET:  2/28/122 11:2

App. 103

JM (DAO)_0003

1/1

DAO034-00010367 CHR 20220228 13:18:09 13:18:09 0268000F25

PENNSYLVANIA STATE POLICE
CENTRAL REPOSITORY
1800 ELMERTON AVENUE
HARRISBURG, PENNSYLVANIA 17110
(717) 787-9092

PA051471A                                                      ATN :
MORALES
RSN : ADA AITTIE                                               OPR : SM
THREE SO PENN SQUARE
PHILADELPHIA, PA, 19107
=========================================================================
=========
        USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 210-05-56-8
***
                    REGULATED BY ACT 47, AS AMENDED.
                    III - MULTI-SOURCE OFFENDER
=========================================================================
=========
                            IDENTIFICATION
NAME: BROGDON,JESSE
SID: 210-05-56-8                          DOB: 1973/02/16

SEX: MALE           RAC: BLACK           HAI: BLACK              EYE:
BROWN
HGT: 5'10"          WGT: 225
POB: PENNSYLVANIA   US CITIZEN: YES
COUNTRY OF CITIZENSHIP: UNITED STATES

LAST KNOWN ADDRESS:

=========================================================================
=========
                            CRIMINAL HISTORY
NAME: BROGDON,JESSE                       OTN: M531492-3
PHOTO AVAILABLE: NO
ARRESTED: 1992/06/04  PAPEP0000  PHILADELPHIA PD
OCA: C763266
DISPO DATE: 1996/06/12              COMMON PLEAS DOCKET: CP-51-CR-
0651661-1992
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: 9206-5166 1/1

                        *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE               COUNT  GRADE ACCESS  SLATE
-------     ------               -----  ----- -----   -----
1992/06/04  CC3921 THEFT BY        1            N     N
            UNLAWFUL TAKING
            OR DISPOSITION

App. 104



AUTOMOBILES AND
OTHER VEHICLES



*** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| 1992/06/04 GUILTY/ | 183925 RECEIVING STOLEN PROPERTY | 1 | | N | N | FOUND COSTS/ |

REGIONAL

CORRECTIONAL

FACILITY/

03

MOS - 001 YRS

11 MOS

15 DYS

App. 105

JM (DAO) 8005



FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: BROGDON,JESSE                          OTN: M558326-6
PHOTO AVAILABLE: NO
ARRESTED: 1993/01/22  PAPEP0000  PHILADELPHIA PD
OCA: 763266
DISPO DATE: 1993/02/16

*** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 1993/01/22 | CC907A POSSESSING INSTRUMENT OF CRIME | 1 | M1 | N | N |
| 1993/01/22 | CC2701 SIMPLE ASSAULT | 1 | | N | N |
| 1993/01/22 | CC2702 AGGRAVATED ASSAULT | 1 | | N | N |
| 1993/01/22 | CC2705 RECKLESSLY ENDANGERING ANOTHER PERSON | 1 | M2 | N | N |

*** COURT DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | DISPOSITION |
|---|---|---|---|---|---|---|
| 1993/01/22 | CC907A POSSESSING INSTRUMENT OF CRIME | 1 | M1 | N | N | NOLLE PROSSED/ WITHDRAWN |
| 1993/01/22 | CC2701 SIMPLE ASSAULT | 1 | | N | N | NOLLE PROSSED/ |

JM (DAO) 0006

WITHDRAWN

| 1993/01/22 | CC2702 AGGRAVATED ASSAULT | 1 | | N | N | NOLLE |

PROSSED/

WITHDRAWN

| 1993/01/22 | CC2705 RECKLESSLY ENDANGERING | 1 | M2 | N | N | NOLLE |

PROSSED/

ANOTHER PERSON

WITHDRAWN

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD

==========================================================================
=========
*** POSSIBLE DOMESTIC VIOLENCE ***
NAME: BROGDON,JESSE                          OTN: M631313-4
PHOTO AVAILABLE: NO
ARRESTED: 1994/11/02  PAPEP0000  PHILADELPHIA PD
OCA: C763266
DISPO DATE:

                         *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
| ------- | ------ | ----- | ----- | ----- | ----- |
| | CC3502 BURGLARY | 1 | F1 | N | N |
| | CC3503 CRIMINAL TRESPASS | 1 | | N | N |
| | CC2701 SIMPLE ASSAULT | 1 | | N | N |

                        *** COURT DATA ***

                  NO COURT DISPOSITION PROVIDED
==========================================================================
=========
NAME: BROGDON,JESSE                          OTN: M632862-6
PHOTO AVAILABLE: NO
ARRESTED: 1994/11/15  PAPEP0000  PHILADELPHIA PD
OCA: C763266
DISPO DATE: 1995/03/24
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-1110871-1994

                         *** ARREST DATA ***
OFFENSE                                      LIMITED CLEAN

| DATE | CHARGE | COUNT | GRADE | ACCESS | SLATE |
|------|--------|-------|-------|--------|-------|
| | CS13A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | 1 | | N | N |
| | CS13A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | | N | N |

*** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|------|--------|-------|-------|--------|-------|
| ------- | ------ | | | -------- | |



App. 108

SUSTAINED

        SUBSTANCE BY
        PERSON NOT
        REGISTERED, OR
        A PRACTITIONER
        NOT REGISTERED
        CREATING, ETC.
        A COUNTERFEIT
        CONTROLLED
        SUBSTANCE

1994/11/15
QUASHED/

DISMISSED/

DEMURRER

SUSTAINED

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================

=========
NAME: BROGDON,JESSE                          OTN: M667071-6
PHOTO AVAILABLE: NO
ARRESTED: 1995/08/14   PAPEP0000   PHILADELPHIA PD
OCA: C763266
DISPO DATE:
                           *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE                COUNT  GRADE ACCESS  SLATE
-------     ------                -----  ----- -----   -----
            CS13A16 POSSESSION OF  1            N      N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
                           *** COURT DATA ***

                   NO COURT DISPOSITION PROVIDED
================================================================

=========
NAME: BROGDON,JESSE                          OTN: M668083-3
PHOTO AVAILABLE: NO
ARRESTED: 1995/08/22   PAPEP0000   PHILADELPHIA PD

App. 109

```
OCA: C763266
DISPO DATE: 2000/04/25          COMMON PLEAS DOCKET: CP-51-CR-
0410571-1996
DISTRICT JUSTICE: 0151
```

```
                           *** ARREST DATA ***
OFFENSE                                         LIMITED  CLEAN
DATE        CHARGE                COUNT  GRADE  ACCESS   SLATE
-------     ------                -----  -----  -----    -----
1995/08/22  CS13A30 MANUFACTURE   1             N        N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

1995/08/22  CS13A16 POSSESSION OF 1             N        N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

1995/08/22  CC6106 FIREARMS NOT   1      M1     N        N
            TO BE CARRIED
            WITHOUT A
            LICENSE

                           *** COURT DATA ***
OFFENSE                                         LIMITED  CLEAN
DATE        CHARGE                COUNT  GRADE  ACCESS   SLATE
```

App. 110

```
DISPOSITION
-------    ------                 -----  ----- ------   -----  --------
---
1995/08/22  35780-113A30           1             N      N      PLEAD
GUILTY
            MANUFACTURE
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

1995/08/22  █████████████████  █████████████████████
PROSSED/     █
WITHDRAWN    █
             █
             █
             █
             █
1995/08/22  186106 FIREARMS NOT    1      M1     N      N      PLEAD
GUILTY/
            TO BE CARRIED                                      COSTS/
            WITHOUT A
REGIONAL
            LICENSE
CORRECTIONAL

FACILITY/
                                                               004
YRS - 008
                                                               YRS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
============================================================================

NAME: BROGDON,JESSE                    OTN: L010822-0
PHOTO AVAILABLE: NO
ARRESTED: 1998/02/20   PAPEP0000   PHILADELPHIA PD
OCA: C763266

DISPO DATE:

*** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 1998/02/20 | CC6106 FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE | 1 | M1 | N | N |
| 1998/02/20 | CC6108 CARRYING FIREARMS ON PUBLIC STREETS OR PUBLIC PROPERTY IN PHILADELPHIA | 1 | M1 | N | N |
| 1998/02/20 | CC6109 FIREARM LICENSE VIOLATION | 1 | | N | N |

*** COURT DATA ***

NO COURT DISPOSITION PROVIDED

==================================================================================

*** POSSIBLE DOMESTIC VIOLENCE ***
NAME: BROGDON,MICHAEL                          OTN: M942982-5
PHOTO AVAILABLE: NO
ARRESTED: 1999/07/08  PAPEP0000  PHILADELPHIA PD
OCA: C763266
DISPO DATE: 2000/02/16

*** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 1999/07/08 | CC2701A SIMPLE ASSAULT | 1 | | N | N |
| 1999/07/08 | CC2702A AGGRAVATED ASSAULT | 1 | | N | N |
| 1999/07/08 | CC2705 RECKLESSLY ENDANGERING ANOTHER PERSON | 1 | M2 | N | N |
| 1999/07/08 | CC3502A BURGLARY | 1 | F1 | N | N |
| 1999/07/08 | CC3503A1 CRIMINAL TRESPASS-BUILDING AND OCCUPANTS | 1 | | N | N |

App. 112

```
1999/07/08  CC3921A THEFT BY        1              N       N
            UNLAWFUL TAKING
            OR DISPOSITION

1999/07/08  CC3925A RECEIVING       1              N       N
            STOLEN PROPERTY
```

```
                            *** ARREST DATA ***
OFFENSE                                      LIMITED CLEAN
DATE        CHARGE                COUNT  GRADE ACCESS SLATE
-------     ------               -----  ----- ----- -----
1999/07/08  CC3928 UNAUTHORIZED    1     M2    N     N
            USE OF
            AUTOMOBILES AND
            OTHER VEHICLES
```

```
                            *** COURT DATA ***
OFFENSE                                      LIMITED CLEAN
DATE        CHARGE                COUNT  GRADE ACCESS SLATE
DISPOSITION
-------     ------               -----  ----- ------ -----  --------
---
1999/07/08  CC2701A SIMPLE ASSAULT 1            N     N      FOUND
GUILTY/
                                                             COUNTY
PRISON/
                                                             001
YRS - 002
                                                             YRS/
                                                             COSTS/

RESTITUTION

1999/07/08  CC2702A AGGRAVATED     1            N     N
QUASHED/
            ASSAULT
DISMISSED/

DEMURRER

SUSTAINED

1999/07/08  CC2705 RECKLESSLY      1     M2     N     N      FOUND
GUILTY/
            ENDANGERING                                      COSTS/
```

ANOTHER PERSON

RESTITUTION

| 1999/07/08 NOT GUILTY | CC3502A BURGLARY | 1 | F1 | N | N | FOUND |

| 1999/07/08 GUILTY/ PRISON/ YRS - 002 | CC3503A1 CRIMINAL TRESPASS-BUILDIN G AND OCCUPANTS | 1 | | N | N | FOUND COUNTY 001 YRS/ COSTS/ |

RESTITUTION

| 1999/07/08 GUILTY/ PRISON/ YRS - 002 | CC3921A THEFT BY UNLAWFUL TAKING OR DISPOSITION | 1 | | N | N | FOUND COUNTY 001 YRS/ COSTS/ |

RESTITUTION

| 1999/07/08 GUILTY/ PRISON/ YRS - 002 | CC3925A RECEIVING STOLEN PROPERTY | 1 | | N | N | FOUND COUNTY 001 YRS/ COSTS/ |

RESTITUTION

| 1999/07/08 GUILTY/ PRISON/ YRS - 002 | CC3928 UNAUTHORIZED USE OF AUTOMOBILES AND OTHER VEHICLES | 1 | M2 | N | N | FOUND COUNTY 001 YRS/ COSTS/ |

RESTITUTION

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD

```
===============================================================================
=========
NAME: BROGDON,JESSIE                          OTN: N161053-4
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2002/08/06  PAPEP0000  PHILADELPHIA PD
OCA: C0763266
DISPO DATE:
```

```
                           *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE       CHARGE                   COUNT  GRADE ACCESS  SLATE
-------    ------                   -----  ----- -----   -----
2002/08/06 CS13A16 POSSESSION OF 1               N       N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL

2002/08/06 CS13A30 MANUFACTURE   1               N       N
           ETC. OF
           CONTROLLED
           SUBSTANCE BY
           PERSON NOT
           REGISTERED, OR
           A PRACTITIONER
           NOT REGISTERED
           CREATING, ETC.
           A COUNTERFEIT
           CONTROLLED
           SUBSTANCE
                           *** COURT DATA ***

                     NO COURT DISPOSITION PROVIDED
===============================================================================
========
NAME: BROGDON,JESSE                           OTN: N607441-2
PHOTO AVAILABLE: YES 2009/04/08 CPIN PHOTO NUMBER: 181951183
ARRESTED: 2009/04/08  PAPEP0000  PHILADELPHIA PD
OCA: C0763266
DISPO DATE: 2009/09/09
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0015612-2009
```

```
                           *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE       CHARGE                   COUNT  GRADE ACCESS  SLATE
-------    ------                   -----  ----- -----   -----
2009/04/07 CS13A30 MANUFACTURE   1      F        N       N
```

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI... 2/28/2022

JM (DAO) 0015

ETC. OF
CONTROLLED
SUBSTANCE BY
PERSON NOT
REGISTERED, OR
A PRACTITIONER
NOT REGISTERED
CREATING, ETC.
A COUNTERFEIT
CONTROLLED
SUBSTANCE

2009/04/07    CS13A16 POSSESSION OF    1    M    N    N
A CONTROLLED
SUBSTANCE BY AN
UNREGISTERED
PERSON EXCEPT
BY PRESCRIPTION
IS UNLAWFUL



App. 116

```
                    CONTROLLED
                    SUBSTANCE BY AN
                    UNREGISTERED
                    PERSON EXCEPT
                    BY PRESCRIPTION
                    IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
NAME: BROGDON,JESSE                      OTN: N777330-1
PHOTO AVAILABLE: YES 2011/12/03 CPIN PHOTO NUMBER: 151903984
ARRESTED: 2011/12/03  PAPEP0000  PHILADELPHIA PD
OCA: C0763266
DISPO DATE:
                        *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                COUNT  GRADE  ACCESS  SLATE
-------    ------                -----  -----  -----   -----
2011/12/03 CS13A16 POSSESSION OF  1             N       N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL
                        *** COURT DATA ***

                    NO COURT DISPOSITION PROVIDED
=====================================================================
=========
NAME: BROGDON,JESSE                      OTN: N877156-0
PHOTO AVAILABLE: YES 2013/08/21 CPIN PHOTO NUMBER: 140402776
ARRESTED: 2013/08/21  PAPEP0000  PHILADELPHIA PD
OCA: C0763266
DISPO DATE:
                        *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                COUNT  GRADE  ACCESS  SLATE
-------    ------                -----  -----  -----   -----
2013/08/21 CC5124 DEFAULT IN       1            N       N
           REQUIRED
           APPEARANCE
                        *** COURT DATA ***

                    NO COURT DISPOSITION PROVIDED
=====================================================================
=========
```

```
                      PROBATION/PAROLE INFORMATION
                             START        END
LIFE   LIMITED
AGENCY                 OCA         DATE         DATE      PAR/PRO
CODE   ACCESS
------                 ---         -----        -----     -------    ----
------
PA051023G                  0217596B    1994/09/09   1996/09/09
PROBATION        N
PHILADELPHIA

APPLIES TO OTN: M531492-3

PA022035G BOARD OF   315AU       2008/07/31   2011/04/22
PAROLE           N
PROBATION
AND
PAROLE

APPLIES TO OTN: M942982-5
====================================================================
=========
                      ADDITIONAL IDENTIFIERS
AKAS: BROGAN,JESSIE / BROGDON,JESSE HOWARD / BROGDON,JESSEE
DOBS:
SOCS:
MNUS:

 *** DNA SAMPLE AND PROFILE ON FILE PURSUANT TO THE PA DNA ACT (44
PA.C.S., CHAPTER 23). ***
====================================================================
=========
            F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE
NUMERIC=DEGREE
              ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE
```

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE
FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT
PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE
AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN
CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND
PURDON'S
FORMATTED CHARGES.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* END OF RAP SHEET
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...    2/28/2022

```
CR.WVFBINF00
20220228 13:20:57 13348257
20220228 13:20:57 010370 PA051471A
*008052QR
TXT
HDR/2L010051E008052QR
ATN/MORALES
********************  CRIMINAL HISTORY RECORD
**********************
```

```
***************************  Introduction
****************************
```

This rap sheet was produced in response to the following request:

```
Purpose Code          C
Attention             MORALES
```

The information in this rap sheet is subject to the following caveats:

This record is based only on the FBI number in your request-UCN:
72444RA5 Because additions or deletions may be made at any time, a new
copy should be requested when needed for subsequent use. (US)
All entries contained in this FBI record are based on fingerprint
comparisons and pertain to the same individual. (US)
The use of this record is regulated by law. It is provided for
official
use only and may be used only for the purpose requested. (US)

```
**************************  IDENTIFICATION
**************************
```

Subject Name(s)

```
BROGDON, JESSE
BROGAN, JESSIE  (AKA)
BROGDON, JESSE HOWARD  (AKA)
BROGDON, JESSEE  (AKA)
BROGDON, JESSIE  (AKA)
BROGDON, MICHAEL  (AKA)
```

Subject Description



App. 120

Sex                         Race
Male                        Black

Height                      Weight              Date of Birth
5'09"                       160                 1973-02-16
                                                1973-12-16

Hair Color                  Eye Color
Black                       Brown
Scars, Marks, and Tattoos
Code                        Description, Comments, and Images
SC L ARM                    , SCAR ON LEFT ARM

Place of Birth              Citizenship
Pennsylvania                United States

Caution Information

Caution

CASE

NOTIFY

Caution



************************** CRIMINAL HISTORY
**************************

************************** INDEX OF AGENCIES
**************************

Agency                    MUNICIPAL COURT; PA051121J;

---------------------------------------------------------------------

Agency                    SHERIFF'S OFFICE; GA0480000;

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...    JM (DAO)_0021    2/28/2022

* * * END OF RECORD * * *

Triple I Status: Multi-state

JM (DAO) 0022

```
CR.GAIII0000
20220228 13:20:58 13348258
20220228 13:20:58 010371 PA051471A
*008052QR
TXT
HDR/2L010051E008052QR
ATN/MORALES
********************  CRIMINAL HISTORY RECORD
**********************
```

```
***************************  Introduction
***************************
```

This rap sheet was produced in response to the following request:

```
Purpose Code          C
Attention             MORALES
```

The information in this rap sheet is subject to the following caveats:

**THIS RESPONSE IS BEING PRODUCED FOR YOUR REQUEST SENT: 2022-02-28
(GA)
Important! Criminal history record information is obtained one of two
ways: 1) by conducting an inquiry using personal identifiers such as
name and date of birth (name search), or 2) by submitting fingerprint
cards to the Georgia Crime Information Center (GCIC). When conducting
a
name search for criminal history record information, there is a
possibility that the information returned belongs to a different
person
with the same, or similar, identifiers. In this case, a positive match
of the person whose criminal history record is sought requires
submission of fingerprint cards to GCIC. When conducting a fingerprint
search for criminal history record information, the information
returned does, in fact, belong to the individual. In this case,
conducting a name search using the individual's personal identifiers
would be the same information. (GA)
When the information contained in a criminal history report causes an
adverse employment or licensing decision the individual, business or
agency making the decision must inform the applicant of all
information
pertinent to the decision. The disclosure must include information
that
a criminal history record check was conducted, the specific contents
of
the record and the effect the record had upon the decision. Failure to
provide all such information to the person subject to the adverse
decision is a misdemeanor offense under Georgia law. Additionally, any
unauthorized dissemination of this record or information herein also
violates Georgia law. The plea of nolo contendere may be considered a
conviction for some purposes: however, except as otherwise provided by

law, it shall not be used against the defendant in any other court as a
conviction or admission of guilt or for the purpose of effecting any
civil disqualification of the defendant to hold public office, to vote,
to serve upon any jury, or any other civil disqualification imposed
upon a person convicted of any offense under the laws of this state. (GA)
In the event that identifiers are not clearly associated to a specific
cycle, the information is most likely non-fingerprint based information
received from the Department of Corrections at the time of release from
incarceration. (GA)

*************************** IDENTIFICATION
***************************

Subject Name(s)

BROGDON, JESSE HOWARD

Subject Description

FBI Number
72444RA5



Sex                       Race
Male                      Black

Height                    Weight                    Date of Birth
5'11" (2018-08-15)        221 (2018-08-15)          1973-12-16

Hair Color                Eye Color
Black (2018-08-15)        Brown (2018-08-15)

Place of Birth
PENNSYLVANIA



TED))

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   JM (DAO) 0026   2/28/2022





# First Judicial District of Pennsylvania
## Court Summary

| | |
|---|---|
| **Brogdon, Jesse** | DOB: 02/16/1973 |
| Philadelphia, PA 19124 | Sex: Male |
| Aliases: | Eyes: Brown |
| Jesse Brogdon | Hair: Black |
| Jesse H. Brogdon | Race: Black |
| Jessee Brogdon | |
| Jessie Brogan | |

## Closed

### Philadelphia

**CP-51-CR-0651661-1992**     Proc Status: Completed     DC No: 9202019364     OTN:M 531492-3

Arrest Dt: 06/06/1992     Disp Date: 06/12/1996     Disp Judge: Lachman, Marlene F.

Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | | Grade | Description | | Disposition |
|---|---|---|---|---|---|---|
| | Sentence Dt. | Sentence Type | | Program Period | Sentence Length | |
| 2 | 18 § 3925 | | | THEFT BY RECEIVING STOLEN PROPERTY | | Guilty |
| | 06/12/1996 | Confinement | | | | Min: 3 Month(s) Max: 23 Month(s) 15 Day(s) |
| 4 | 18 § 3928 §§ A | | M2 | Unauth Use Motor/Other Vehicles | | Guilty |
| | 09/08/1994 | Probation | | | Min: 2 Year(s) | |

**CP-51-CR-0410571-1996**     Proc Status: Completed     DC No: 9525068692     OTN:M 668083-3

Arrest Dt: 08/23/1995     Disp Date: 06/13/1996     Disp Judge: Means, Rayford A.

Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | | Grade | Description | | Disposition |
|---|---|---|---|---|---|---|
| | Sentence Dt. | Sentence Type | | Program Period | Sentence Length | |
| 1 | 35 § 780-113 §§ A30 | | | MFG/DEL/ OR POSS W/I MFG OR DEL CONTRL SUBS | | Guilty Plea |
| | 06/13/1996 | Confinement | | | Min: 3 Year(s) Max: 23 Month(s) | |
| | 06/13/1996 | Probation | | | Min: 2 Year(s) | |
| 3 | 18 § 6106 §§ A | | M1 | Carrying Firearm Without A License | | Guilty Plea |
| | 04/25/2000 | Confinement | | | Min: 4 Year(s) Max: 8 Year(s) | |

**CP-51-CR-0301511-1998**     Proc Status: Completed     DC No: 9822009874     OTN:M 852380-4

Arrest Dt: 02/21/1998     Disp Date: 04/22/2003     Disp Judge: Rizzo, Annette M.

Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | | Grade | Description | | Disposition |
|---|---|---|---|---|---|---|
| | Sentence Dt. | Sentence Type | | Program Period | Sentence Length | |
| 1 | 18 § 6106 | | | CARRYING FIREARMS WITHOUT LICENSE | | Guilty Plea |
| | 04/22/2003 | Confinement | | | Min: 3 Year(s) Max: 6 Year(s) | |
| | 04/22/2003 | Probation | | | Min: 1 Year(s) | |
| 2 | 18 § 6108 | | M1 | Carry Firearms Public In Phila | | Nolle Prossed |

App. 128

---

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense.   In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.



# JNET

| | |
|---|---|
| **EVENT#:** | 150508562 |
| **SID#:** | 21070157 |
| **NAME:** | KAREEM |
| | DANIELS |
| **ARREST DATE:** | Oct 13 1999 2:37AM |
| **AGE AT ARREST:** | 27 |
| **HEIGHT:** | 510 |
| **WEIGHT:** | 165 |
| **HAIR COLOR:** | BLACK |
| **EYE COLOR:** | BROWN |
| **CPIN DATABASE** | |



**FOR INVESTIGATION ONLY
NOT FOR IDENTIFICATION
DESTROY AFTER 90 DAYS**

Printed JNET:  2/28/122 11:4

DAO034-00010382 CHR 20220228 13:36:32 13:36:32 0268000F2B

PENNSYLVANIA STATE POLICE
CENTRAL REPOSITORY
1800 ELMERTON AVENUE
HARRISBURG, PENNSYLVANIA 17110
(717) 787-9092

PA051471A                                                    ATN :
MORALES
RSN : ADA AITTIE                                             OPR : SM
THREE SO PENN SQUARE
PHILADELPHIA, PA, 19107
======================================================================
=========
     USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 210-70-15-7
***

                    REGULATED BY ACT 47, AS AMENDED.
                    III - SINGLE-SOURCE OFFENDER
======================================================================
=========
                            IDENTIFICATION
NAME: DANIELS,KAREEM
SID: 210-70-15-7   FBI: 214704RA0       DOB: 1972/10/12        ███████

SEX: MALE          RAC: BLACK           HAI: BLACK            EYE:
BROWN
HGT: 5'10"         WGT: 165
POB:               US CITIZEN: YES
COUNTRY OF CITIZENSHIP:
======================================================================
=========
                          CRIMINAL HISTORY
NAME: DANIELS,KAREEM                         OTN: M533759-2
PHOTO AVAILABLE: NO
ARRESTED: 1992/06/23  PAPEP0000  PHILADELPHIA PD
OCA: 764216
DISPO DATE:

                        *** ARREST DATA ***
OFFENSE                                    LIMITED CLEAN
DATE       CHARGE            COUNT  GRADE ACCESS  SLATE
-------    ------            -----  ----- -----   -----
           CS13A30 MANUFACTURE  1           N      N
           ETC. OF
           CONTROLLED
           SUBSTANCE BY
           PERSON NOT
           REGISTERED, OR
           A PRACTITIONER
           NOT REGISTERED
           CREATING, ETC.

App. 130

```
                         A COUNTERFEIT
                         CONTROLLED
                         SUBSTANCE

                         CS13A16 POSSESSION OF  1              N         N
                         A CONTROLLED
                         SUBSTANCE BY AN
                         UNREGISTERED
                         PERSON EXCEPT
                         BY PRESCRIPTION
                         IS UNLAWFUL

                         *** THIS OTN CONTAINS INCOMPLETE DISPOSITION DATA ***
```

```
                              *** COURT DATA ***
OFFENSE                                            LIMITED CLEAN
DATE        CHARGE                    COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------                    -----  ----- ------  -----   --------
---
            CS13A30 MANUFACTURE   1                  N       N
DISPOSITION
            ETC. OF
UNREPORTED
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

            CS13A16 POSSESSION OF  1              N         N
DISPOSITION
            A CONTROLLED
```

App. 131

JM (DAO)_0030

UNREPORTED

                SUBSTANCE BY AN
                UNREGISTERED
                PERSON EXCEPT
                BY PRESCRIPTION
                IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
===========================================================================
=========
NAME: LOWENBRAU,SHARIF                          OTN: M602858-4
PHOTO AVAILABLE: NO
ARRESTED: 1994/03/10  PAPEP0000  PHILADELPHIA PD
OCA: C764216
DISPO DATE: 1996/03/14

                          *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|------|------|------|------|------|------|
| 1994/03/10 | CS13A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | 1 | | N | N |
| | CS13A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | | N | N |

App. 132

```
                                  *** COURT DATA ***
OFFENSE                                              LIMITED CLEAN
DATE        CHARGE                    COUNT  GRADE  ACCESS  SLATE
DISPOSITION
-------     ------                    -----  -----  ------  -----   --------
---
1994/03/10  CS13A30 MANUFACTURE       1              N       N      PLEAD
GUILTY/
            ETC. OF                                                 COUNTY
PRISON/
            CONTROLLED                                              001
YRS - 002
            SUBSTANCE BY                                            YRS/
            PERSON NOT                                              COSTS
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

            CS13A16 POSSESSION OF  1              N       N
DISPOSITION
            A CONTROLLED
UNREPORTED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: LOWENBRAU,SHARIF                        OTN: M661684-2
PHOTO AVAILABLE: NO
ARRESTED: 1995/07/04  PAPEP0000  PHILADELPHIA PD
OCA: C764216
DISPO DATE: 1996/03/13

```
                             *** ARREST DATA ***
OFFENSE                                              LIMITED CLEAN
DATE        CHARGE                    COUNT  GRADE  ACCESS  SLATE
-------     ------                    -----  -----  -----   -----
1995/07/04  CS13A30 MANUFACTURE       1              N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
```

App. 133

```
                A PRACTITIONER
                NOT REGISTERED
                CREATING, ETC.
                A COUNTERFEIT
                CONTROLLED
                SUBSTANCE

1995/07/04      CS13A16 POSSESSION OF  1          N          N
                A CONTROLLED
                SUBSTANCE BY AN
                UNREGISTERED
                PERSON EXCEPT
                BY PRESCRIPTION
                IS UNLAWFUL
```

```
                            *** COURT DATA ***
OFFENSE                                             LIMITED CLEAN
DATE        CHARGE                COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------     ------               -----   ----- ------  -----   --------
---
1995/07/04  CS13A30 MANUFACTURE   1              N         N       FOUND
GUILTY/
            ETC. OF                                                COUNTY
PRISON/
            CONTROLLED                                             001
YRS - 002
            SUBSTANCE BY                                           YRS/
            PERSON NOT                                             COSTS
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

1995/07/04  CS13A16 POSSESSION OF  1     M   N         N       FOUND
GUILTY/
            A CONTROLLED                                          COSTS
            SUBSTANCE BY AN
```

App. 134

                    UNREGISTERED
                    PERSON EXCEPT
                    BY PRESCRIPTION
                    IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: LOWERBREW,SHARIF                            OTN: M691297-5
PHOTO AVAILABLE: NO
ARRESTED: 1996/02/27  PAPEP0000  PHILADELPHIA PD
OCA: C764216
DISPO DATE: 1996/06/28

                          *** ARREST DATA ***
OFFENSE                                           LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
-------   ------                  -----  ----- -----   -----
1996/02/27 CC6106 FIREARMS NOT     1     M1    N       N
           TO BE CARRIED
           WITHOUT A
           LICENSE

1996/02/27 CC6108 CARRYING         1     M1    N       N
           FIREARMS ON
           PUBLIC STREETS
           OR PUBLIC
           PROPERTY IN
           PHILADELPHIA

1996/02/27 CC6109 FIREARM          1           N       N
           LICENSE
           VIOLATION

                          *** COURT DATA ***
OFFENSE                                           LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------   ------                  -----  ----- ------  -----   --------
---
1996/02/27 CC6106 FIREARMS NOT     1     M1    N       N       NOLLE
           TO BE CARRIED
PROSSED/
           WITHOUT A
WITHDRAWN
           LICENSE

App. 135

```
                              *** COURT DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE                COUNT   GRADE ACCESS   SLATE
DISPOSITION
```

```
1996/02/27  CC6109 FIREARM         1            N        N      PLEAD
GUILTY/
            LICENSE                                              COUNTY
PRISON/
            VIOLATION                                            06
MOS - 001
                                                                 YRS/
                                                                 COSTS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=========================================================================
=========
NAME: SHERMAN,SHARIFF                   OTN: M922053-6
PHOTO AVAILABLE: NO
ARRESTED: 1999/03/18   PAPEP0000  PHILADELPHIA PD
OCA: C764216
DISPO DATE: 2001/03/08              COMMON PLEAS DOCKET: CP-51-CR-
1010311-1999
DISTRICT JUSTICE: 0151

```
                              *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE                COUNT   GRADE ACCESS   SLATE
-------     ------                -----   ----- -----    -----
1999/03/18  CS13A16 POSSESSION OF  1             N        N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

1999/03/18  CS13A30 MANUFACTURE    1             N        N
            ETC. OF
```

```
                    CONTROLLED
                    SUBSTANCE BY
                    PERSON NOT
                    REGISTERED, OR
                    A PRACTITIONER
                    NOT REGISTERED
                    CREATING, ETC.
                    A COUNTERFEIT
                    CONTROLLED
                    SUBSTANCE

1999/03/18   CC903 CRIMINAL          1              N        N
             CONSPIRACY TO
             COMMIT A CRIME
```

```
                      *** COURT DATA ***
OFFENSE                                       LIMITED  CLEAN
DATE         CHARGE              COUNT  GRADE  ACCESS   SLATE
DISPOSITION
-------      ------              -----  -----  ------   --------
```



JM (DAO)_0036

```
                POSSESSION OF A
PROSSED/
                CONTROLLED
WITHDRAWN
                SUBSTANCE BY AN
                UNREGISTERED
                PERSON EXCEPT
                BY PRESCRIPTION
                IS UNLAWFUL
```



```
FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
==============================================================
=========
NAME: DANIELS,KAREEM                    OTN: M961436-0
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 1999/10/12   PAPEP0000   PHILADELPHIA PD
OCA: C764216
DISPO DATE: 2000/03/14

                    *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE        CHARGE               COUNT  GRADE ACCESS SLATE
-------     ------               -----  ----- ----- -----
1999/10/12  CS13A16 POSSESSION OF  1            N     N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

1999/10/12  CS13A30 MANUFACTURE    1            N     N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
```

SUBSTANCE

```
                              *** COURT DATA ***
OFFENSE                                              LIMITED  CLEAN
DATE       CHARGE                   COUNT  GRADE  ACCESS  SLATE
DISPOSITION
-------    ------                   -----  -----  ------  -----   --------
---
1999/10/12  CS13A16 POSSESSION OF   1      M      N       N       PLEAD
GUILTY/
            A CONTROLLED                                          COUNTY
PRISON/
            SUBSTANCE BY AN                                       001
YRS - 002
            UNREGISTERED                                         YRS/
            PERSON EXCEPT                                        COSTS
            BY PRESCRIPTION
            IS UNLAWFUL

1999/10/12  CS13A30 MANUFACTURE     1             N       N      NOLLE
            ETC. OF
PROSSED/
            CONTROLLED
WITHDRAWN
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========

```
                        PROBATION/PAROLE INFORMATION
                                 START       END
LIFE   LIMITED
AGENCY              OCA          DATE        DATE      PAR/PRO
CODE   ACCESS
------              ---          -----       -----     -------   ----
------
PA051023G           0230937A     1994/07/18  1995/01/18
PROBATION        N
PHILADELPHIA
```

APPLIES TO OTN: M533759-2

```
PA022035G BOARD OF   91930        1997/10/08  1998/03/14
PAROLE           N
PROBATION
AND
PAROLE
```

APPLIES TO OTN: M602858-4
===================================================================================
=========

                        ADDITIONAL IDENTIFIERS

AKAS:
DOBS: 1974/10/12 1975/10/12
SOCS:
MNUS:
===================================================================================
=========

            F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE
NUMERIC=DEGREE

                ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE
FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT
PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE
AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN
CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND
PURDON'S
FORMATTED CHARGES.

   ***************************** END OF RAP SHEET
*****************************

App. 140

JM (DAO)_0039

```
DAO034-00010361  20220228 12:01:21 12:01:21 0268000F22
7L010268000F222QH
PA051471A
THIS NCIC INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF
YOUR
INQUIRY ON NAM/DIXION,RAHAAN SEX/M RAC/U DOB/19710429 PUR/C
ATN/MORALES
NAME                          FBI NO.        INQUIRY DATE
DIXON,RAHSAAN                 604513FA2      2022/02/28

SEX RACE BIRTH DATE  HEIGHT WEIGHT EYES HAIR PHOTO
M   B    1971/04/29  507    108    BRO  BLK  Y
```



```
FINGERPRINT CLASS      PATTERN CLASS
```

IDENTIFICATION DATA UPDATED 2007/08/15

THE CRIMINAL HISTORY RECORD IS MAINTAINED AND AVAILABLE FROM THE
FOLLOWING:



THE RECORD(S) CAN BE OBTAINED THROUGH THE INTERSTATE IDENTIFICATION
INDEX BY USING THE APPROPRIATE NCIC TRANSACTION.

END

```
DAO034-00010361   20220228 12:01:21 12:01:21 0268000F22
7L010268000F222QH
PA051471A
THIS NCIC INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF
YOUR
INQUIRY ON NAM/DIXON,RAHAAN SEX/M RAC/U DOB/19710429 PUR/C
ATN/MORALES
NAME                              FBI NO.        INQUIRY DATE
DIXON,RAHSAAN                     604513FA2      2022/02/28


SEX RACE BIRTH DATE  HEIGHT WEIGHT EYES HAIR PHOTO
M   B    1971/04/29  507    108    BRO  BLK  Y

BIRTH PLACE
DELAWARE


FINGERPRINT CLASS       PATTERN CLASS




ALIAS NAMES
DICKSON,RASHAN                    DIXON,BABY LEE
DIXON,LONNIE                      DIXON,RAHSAAN
DIXON,RAHSAN                      DIXON,RASHAAN
DUNN,DARNELL                      DUNN,RAHSAAN




IDENTIFICATION DATA UPDATED 2007/08/15


THE CRIMINAL HISTORY RECORD IS MAINTAINED AND AVAILABLE FROM THE
FOLLOWING:




THE RECORD(S) CAN BE OBTAINED THROUGH THE INTERSTATE IDENTIFICATION
INDEX BY USING THE APPROPRIATE NCIC TRANSACTION.


END
```

DAO034-00010386 CHR 20220228 13:39:42 13:39:42 0268000F2D

PENNSYLVANIA STATE POLICE
CENTRAL REPOSITORY
1800 ELMERTON AVENUE
HARRISBURG, PENNSYLVANIA 17110
(717) 787-9092

PA051471A                                                    ATN :
MORALES
RSN : ADA AITTIE                                             OPR : SM
THREE SO PENN SQUARE
PHILADELPHIA, PA, 19107
=====================================================================
=========
        USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 214-09-52-9
***
                REGULATED BY ACT 47, AS AMENDED.
                III - MULTI-SOURCE OFFENDER
=====================================================================
=========
                        IDENTIFICATION
NAME: DUNN,DARNELL
SID: 214-09-52-9    FBI: 604513FA2    DOB: 1971/04/29    ███████

SEX: MALE          RAC: BLACK        HAI: BLACK          EYE:
BROWN
HGT: 5'07"         WGT: 150
POB:               US CITIZEN: YES
COUNTRY OF CITIZENSHIP:
=====================================================================
=========
                        CRIMINAL HISTORY
NAME: DUNN,DARNELL                     OTN: M557996-5
PHOTO AVAILABLE: NO
ARRESTED: 1993/01/19  PAPEP0000  PHILADELPHIA PD
OCA: C774043
DISPO DATE:
                    *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| | CC6106 FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE | 1 | M1 | N | N |
| | CC6108 CARRYING FIREARMS ON PUBLIC STREETS OR PUBLIC PROPERTY IN | 1 | M1 | N | N |

App. 143

```
        PHILADELPHIA

        CC2705 RECKLESSLY        1      M2      N          N
        ENDANGERING
        ANOTHER PERSON

        CS13A30 MANUFACTURE      1              N          N
        ETC. OF
        CONTROLLED
        SUBSTANCE BY
        PERSON NOT
        REGISTERED, OR
        A PRACTITIONER
        NOT REGISTERED
        CREATING, ETC.
        A COUNTERFEIT
        CONTROLLED
        SUBSTANCE
```

```
                        *** ARREST DATA ***
OFFENSE                                      LIMITED  CLEAN
DATE          CHARGE            COUNT  GRADE  ACCESS   SLATE
-------       ------           -----  -----  -----    -----
              CS13A16 POSSESSION OF  1        N        N
              A CONTROLLED
              SUBSTANCE BY AN
              UNREGISTERED
              PERSON EXCEPT
              BY PRESCRIPTION
              IS UNLAWFUL
                        *** COURT DATA ***

              NO COURT DISPOSITION PROVIDED
=================================================================
=========
NAME: DICKSON,RASHAN                    OTN: M599752-6
PHOTO AVAILABLE: NO
ARRESTED: 1994/02/09  PAPEP0000  PHILADELPHIA PD
OCA: C774043
DISPO DATE:
                        *** ARREST DATA ***
OFFENSE                                      LIMITED  CLEAN
DATE          CHARGE            COUNT  GRADE  ACCESS   SLATE
```

App. 144

```
- - - - - - -     - - - - - -               - - - - -   - - - - -  - - - - -      - - - - -
                  CC6106 FIREARMS NOT      1         M1       N            N
                  TO BE CARRIED
                  WITHOUT A
                  LICENSE

                  CC6108 CARRYING          1         M1       N            N
                  FIREARMS ON
                  PUBLIC STREETS
                  OR PUBLIC
                  PROPERTY IN
                  PHILADELPHIA
```

*** COURT DATA ***

NO COURT DISPOSITION PROVIDED

```
==================================================================================
=========
```

ADDITIONAL IDENTIFIERS

AKAS:
DOBS:
SOCS:
MNUS:

```
==================================================================================
=========
```

F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE
NUMERIC=DEGREE

ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE
FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT
PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE
AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN
CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND
PURDON'S
FORMATTED CHARGES.

***************************** END OF RAP SHEET
*****************************

```
CR.NJIII0000
20220228 13:40:20 13348915
20220228 13:40:21 010389 PA051471A
*008842QR
TXT

HDR/2L010051E008842QR
ATN/MORALES
THIS RECORD IS BASED ON THE SID NUMBER IN YOUR REQUEST-SID/NJ580732D
```

NEW JERSEY CRIMINAL HISTORY DETAILED RECORD

USE OF THIS RECORD IS GOVERNED BY FEDERAL AND STATE REGULATIONS.
UNLESS FINGERPRINTS ACCOMPANIED YOUR INQUIRY, THE STATE BUREAU OF
IDENTIFICATION CANNOT GUARANTEE THIS RECORD RELATES TO THE PERSON WHO
IS
THE SUBJECT OF YOUR REQUEST. USE OF THIS RECORD SHALL BE LIMITED
SOLELY TO
THE AUTHORIZED PURPOSE FOR WHICH IT WAS GIVEN AND IT SHALL NOT BE
DISSEMINATED TO ANY UNAUTHORIZED PERSONS. TO ELIMINATE A POSSIBLE
DISSEMINATION VIOLATION, AND TO COMPLY WITH FUTURE EXPUNGEMENT ORDERS,
THIS RECORD SHALL BE DESTROYED *IMMEDIATELY* AFTER IT HAS SERVED ITS
INTENDED AND AUTHORIZED PURPOSES. ANY PERSON VIOLATING FEDERAL OR STATE
REGULATIONS GOVERNING ACCESS TO CRIMINAL HISTORY RECORD INFORMATION
MAY BE SUBJECT TO CRIMINAL AND/OR CIVIL PENALTIES.   THIS RECORD IS
CERTIFIED AS A TRUE COPY OF THE CRIMINAL HISTORY RECORD INFORMATION
ON FILE FOR THE ASSIGNED STATE IDENTIFICATION NUMBER.

██████████████████████   FBI NO. 604513FA2   DATE REQUESTED.
02/28/2022
NAME: DIXON, RAHSAAN

SEX  RACE  BIRTH DATE  HEIGHT  WEIGHT  EYES  HAIR  BIRTH PLACE
M    B     04/29/1971   507     160    BRO   BLK   DE

RECEIVING AGENCY: PA051471A  U.S. CITIZEN:
YES

FPC: ?A\W\WA///          AFIS NO:               III: MULTI STATE
                                                DNA SAMPLE STATUS:
                                                COLLECTION NOT

REQUIRED

████████████████████████████████

████████████████████████████████████████████████

**************************  ARREST 001
********************************



```
**************************************************************************
*
DEPARTMENT OF CORRECTIONS DATA NOT FOUND FOR THIS SID NUMBER
**************************************************************************
*
```

          CRIMINAL HISTORY DIVERSION PROGRAM AND INDICTABLE CONVICTION
SUMMARY

                    PRE-TRIAL INTERVENTION: 000
                         CONDITIONAL DISCHARGE:   000
                         INDICTABLE CONVICTIONS: 000
                         VIOLATION OF PROBATION: 000


COURT DISPOSITION INFORMATION CONTAINED IN THIS RECORD IS
REPORTED
ELECTRONICALLY FROM THE SENTENCING COURT. QUESTIONS CONCERNING
DISPOSITION
INFORMATION SHOULD BE DIRECTED TO THE MUNICIPAL OR SUPERIOR COURT
LISTED ON
THE RECORD. INFORMATION REGARDING CORRECTIONS TO THIS RECORD MAY BE
DIRECTED
TO THE COURT OF
SENTENCING.


                              END OF CCH RECORD

END OF RECORD

2/28/22, 11:11 AM

Mugshot Profile Poster

 **pennsylvania**
JUSTICE NETWORK

# JNET

| | |
|---|---|
| **EVENT#:** | 152454718 |
| **SID#:** | 23647427 |
| **NAME:** | SHAWN |
| | JOHNSON |
| **ARREST DATE:** | Nov 7 2017 8:34PM |
| **AGE AT ARREST:** | 40 |
| **HEIGHT:** | 600 |
| **WEIGHT:** | 240 |
| **HAIR COLOR:** | BLACK |
| **EYE COLOR:** | BROWN |
| **CPIN DATABASE** | |



**FOR INVESTIGATION ONLY**
**NOT FOR IDENTIFICATION**
**DESTROY AFTER 90 DAYS**

Printed JNET: 2/28/122 11:11

App. 148

DAO034-00010373 CHR 20220228 13:24:46 13:24:46 0268000F27

PENNSYLVANIA STATE POLICE
CENTRAL REPOSITORY
1800 ELMERTON AVENUE
HARRISBURG, PENNSYLVANIA 17110
(717) 787-9092

PA051471A                                                        ATN :
MORALES
RSN : ADA AITTIE                                                 OPR : SM
THREE SO PENN SQUARE
PHILADELPHIA, PA, 19107
================================================================================
=========
     USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 236-47-42-7
***

                    REGULATED BY ACT 47, AS AMENDED.
                    III - SINGLE-SOURCE OFFENDER
================================================================================
=========
                              IDENTIFICATION
NAME: JOHNSON,SHAWN
SID: 236-47-42-7    FBI: 145444CB7     DOB: 1977/07/24

SEX: MALE           RAC: BLACK         HAI: BLACK              EYE:
BROWN
HGT: 5'10"          WGT: 240
POB: PENNSYLVANIA   US CITIZEN: YES
COUNTRY OF CITIZENSHIP: UNITED STATES

LAST KNOWN ADDRESS:

================================================================================
=========
                              CRIMINAL HISTORY
NAME: JOHNSON,SHAWN                        OTN: M685821-3
PHOTO AVAILABLE: NO
ARRESTED: 1996/01/14   PAPEP0000   PHILADELPHIA PD
OCA: C765977
DISPO DATE: 1996/12/09                     COMMON PLEAS DOCKET:
CP9602-0720

                           *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE                 COUNT GRADE ACCESS  SLATE
-------     ------                 ----- ----- ------  -----
1996/01/14  CC3701 ROBBERY         1            N      N

1996/01/14  CC3921 THEFT BY        1            N      N
            UNLAWFUL TAKING
            OR DISPOSITION

```
1996/01/14   CC3925 RECEIVING        1              N      N
             STOLEN PROPERTY

             CC2702 AGGRAVATED       1              N      N
             ASSAULT

1996/01/14   CS13A30 MANUFACTURE     1              N      N
             ETC. OF
             CONTROLLED
             SUBSTANCE BY
             PERSON NOT
             REGISTERED, OR
             A PRACTITIONER
             NOT REGISTERED
             CREATING, ETC.
             A COUNTERFEIT
             CONTROLLED
             SUBSTANCE
```

```
                        *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE               COUNT  GRADE ACCESS  SLATE
-------     ------               -----  ----- -----   -----
1996/01/14  CS13A16 POSSESSION OF 1            N      N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

            CC2701 SIMPLE ASSAULT 1            N      N

            CC2705 RECKLESSLY     1       M2   N      N
            ENDANGERING
            ANOTHER PERSON

                        *** COURT DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE               COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------               -----  ----- ------  -----   --------
```

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXbAO)_2/28/2022

---

| | | | | | |
|---|---|---|---|---|---|
| 1996/01/14 QUASHED/ | CC3701 ROBBERY | 1 | N | N | |

DISMISSED/

DEMURRER

SUSTAINED

| | | | | | |
|---|---|---|---|---|---|
| 1996/01/14 QUASHED/ | CC3921 THEFT BY UNLAWFUL TAKING | 1 | N | N | |

DISMISSED/

OR DISPOSITION

DEMURRER

SUSTAINED

| | | | | | |
|---|---|---|---|---|---|
| 1996/01/14 QUASHED/ | CC3925 RECEIVING STOLEN PROPERTY | 1 | N | N | |

DISMISSED/

DEMURRER

SUSTAINED

| | | | | | |
|---|---|---|---|---|---|
| | CC2702 AGGRAVATED ASSAULT | 1 | N | N | NO |

DISPOSITION

REPORTED

| | | | | | |
|---|---|---|---|---|---|
| 1996/01/14 AND | CS13A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY | 1 | N | N | FINES COSTS/ STATE |

CORRECTIONAL
PERSON NOT

FACILITY/
REGISTERED, OR                                                    002

YRS 06 MOS -
A PRACTITIONER                                                   005

YRS/
NOT REGISTERED                                                  PLEAD

GUILTY
CREATING, ETC.
A COUNTERFEIT
CONTROLLED
SUBSTANCE

```
             CC2701 SIMPLE ASSAULT  1              N       N
QUASHED/

DISMISSED/

DEMURRER

SUSTAINED




                            *** COURT DATA ***
OFFENSE                                            LIMITED CLEAN
DATE      CHARGE                    COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------   ------                    -----  ----- ------  -----  --------
---
             CC2705 RECKLESSLY      1      M2    N       N
QUASHED/
             ENDANGERING
DISMISSED/
             ANOTHER PERSON
DEMURRER

SUSTAINED
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================
=========
```
NAME: PEQUES,SHAWN JAMAL                      OTN: M706522-5
PHOTO AVAILABLE: NO
ARRESTED: 1996/06/25  PAPEP0000  PHILADELPHIA PD
OCA: C765977
DISPO DATE: 1996/12/09

                            *** ARREST DATA ***
OFFENSE                                            LIMITED CLEAN
DATE      CHARGE                    COUNT  GRADE ACCESS  SLATE
-------   ------                    -----  ----- -----   -----
1996/06/25  CS13A30 MANUFACTURE     1              N       N
```

App. 152

```
                ETC. OF
                CONTROLLED
                SUBSTANCE BY
                PERSON NOT
                REGISTERED, OR
                A PRACTITIONER
                NOT REGISTERED
                CREATING, ETC.
                A COUNTERFEIT
                CONTROLLED
                SUBSTANCE

1996/06/25      CS13A16 POSSESSION OF  1            N        N
                A CONTROLLED
                SUBSTANCE BY AN
                UNREGISTERED
                PERSON EXCEPT
                BY PRESCRIPTION
                IS UNLAWFUL
```

```
                        *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE                COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------                -----  ----- ------  -----  --------
---
1996/06/25  CS13A30 MANUFACTURE   1             N       N      FOUND
GUILTY/
            ETC. OF
REGIONAL
            CONTROLLED
CORRECTIONAL
            SUBSTANCE BY
FACILITY/
            PERSON NOT                                         003
YRS - 005
            REGISTERED, OR                                     YRS/
            A PRACTITIONER                                     FINES
AND COSTS
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE
```

```
                        *** COURT DATA ***
OFFENSE                                      LIMITED CLEAN
DATE        CHARGE              COUNT GRADE  ACCESS  SLATE
DISPOSITION
-------     ------             ----- -----  ------  -----  --------
---
1996/06/25  CS13A16 POSSESSION OF 1    M      N       N     FOUND
GUILTY/
            A CONTROLLED
REGIONAL
            SUBSTANCE BY AN
CORRECTIONAL
            UNREGISTERED
FACILITY/
            PERSON EXCEPT                                   003
YRS - 005
            BY PRESCRIPTION                                 YRS/
            IS UNLAWFUL                                     FINES
AND COSTS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================
=========
NAME: JOHNSON,SHAWN                    OTN: M908888-1
PHOTO AVAILABLE: NO
ARRESTED: 1999/01/07   PAPEP0000   PHILADELPHIA PD
OCA: C765977
DISPO DATE: 2001/09/06                 COMMON PLEAS DOCKET:
CP9901-0674

                        *** ARREST DATA ***
```
OFFENSE                                      LIMITED CLEAN
DATE        CHARGE              COUNT GRADE  ACCESS  SLATE
-------     ------             ----- -----  -----   -----
1999/01/07  CC2701 SIMPLE ASSAULT 1           N       N

1999/01/07  CC2705 RECKLESSLY    1     M2     N       N
            ENDANGERING
            ANOTHER PERSON

1999/01/07  CC3701 ROBBERY       1            N       N

1999/01/07  CC3921 THEFT BY      1            N       N
            UNLAWFUL TAKING
            OR DISPOSITION

1999/01/07  CC3925 RECEIVING     1            N       N
            STOLEN PROPERTY
```

```
                              *** COURT DATA ***
OFFENSE                                          LIMITED CLEAN
DATE       CHARGE                    COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------    ------                    -----  ----- ------  -----   --------
---
1999/01/07 CC2701 SIMPLE ASSAULT  1               N       N       NOLLE

PROSSED/

WITHDRAWN

1999/01/07 CC2705 RECKLESSLY       1    M2   N       N       NOLLE
           ENDANGERING
PROSSED/
           ANOTHER PERSON
WITHDRAWN

1999/01/07 CC3701 ROBBERY          1         N       N       PLEAD
GUILTY/
                                                             STATE

CORRECTIONAL

FACILITY/
                                                             18
MOS - 36 MOS/
                                                             COSTS

1999/01/07 CC3921 THEFT BY         1         N       N       NOLLE
           UNLAWFUL TAKING
PROSSED/
           OR DISPOSITION
WITHDRAWN

1999/01/07 CC3925 RECEIVING        1         N       N       NOLLE
           STOLEN PROPERTY
PROSSED/

WITHDRAWN
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: JOHNSON,SHAWN                      OTN: M973286-6
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 1999/12/12  PAPEP0000  PHILADELPHIA PD
OCA: C765977
DISPO DATE: 2000/12/07

App. 155

```
                                *** ARREST DATA ***
OFFENSE                                             LIMITED CLEAN
DATE         CHARGE                    COUNT   GRADE ACCESS  SLATE
-------      ------                    -----   ----- -----   -----
1999/12/12   CC6106 FIREARMS NOT        1       M1    N       N
             TO BE CARRIED
             WITHOUT A
             LICENSE

1999/12/12   CC6108 CARRYING            1       M1    N       N
             FIREARMS ON
             PUBLIC STREETS
             OR PUBLIC
             PROPERTY IN
             PHILADELPHIA

1999/12/12   CC6105 PERSONS NOT TO      1       M1    N       N
             POSSESS, USE,
             MANUFACTURE,
             CONTROL, SELL
             OR TRANSFER
             FIREARMS

                                *** COURT DATA ***
OFFENSE                                             LIMITED CLEAN
DATE         CHARGE                    COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------      ------                    -----   ----- ------  -----   --------
---
1999/12/12   CC6106 FIREARMS NOT        1       M1    N       N      PLEAD
GUILTY/
             TO BE CARRIED
REGIONAL
             WITHOUT A
CORRECTIONAL
             LICENSE
FACILITY/
                                                                     002
YRS - 003
                                                                     YRS/
                                                                     COSTS

1999/12/12   CC6108 CARRYING            1       M1    N       N      NOLLE
             FIREARMS ON
PROSSED/
             PUBLIC STREETS
WITHDRAWN
             OR PUBLIC
             PROPERTY IN
             PHILADELPHIA
```

```
1999/12/12  CC6105 PERSONS NOT TO  1      M1    N        N         NOLLE
            POSSESS, USE,
PROSSED/
            MANUFACTURE,
WITHDRAWN
            CONTROL, SELL
            OR TRANSFER
            FIREARMS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: TATE,MICHAEL                         OTN: N008511-6
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2000/06/09  PAPEP0000  PHILADELPHIA PD
OCA: C765977
DISPO DATE: 2000/12/07          COMMON PLEAS DOCKET: CP-51-CR-
0712211-2000
DISTRICT JUSTICE: 0151

                        *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
-------   ------                  -----  ----- -----   -----
2000/06/08  CS13A16 POSSESSION OF  1            N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

2000/06/08  CS13A30 MANUFACTURE    1            N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

                        *** COURT DATA ***
OFFENSE                                  LIMITED CLEAN
```

```
DATE         CHARGE                    COUNT   GRADE ACCESS   SLATE
DISPOSITION
-------      ------                    -----   ----- ------   -----   --------
---
2000/06/08   35780-113A30                1               N      N     PLEAD
GUILTY/
             MANUFACTURE
REGIONAL
             ETC. OF
CORRECTIONAL
             CONTROLLED
FACILITY/
             SUBSTANCE BY                                                001
YRS - 003
             PERSON NOT                                                 YRS
             REGISTERED, OR
             A PRACTITIONER
             NOT REGISTERED
             CREATING, ETC.
             A COUNTERFEIT
             CONTROLLED
             SUBSTANCE
```



```
             IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================
=========
NAME: JOHNSON,SHAWN                         OTN: N433122-4
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2006/10/24   PAPEP0000   PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2007/03/21
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-1306734-2006

```
                            *** ARREST DATA ***
OFFENSE                                           LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE  ACCESS  SLATE
-------     ------                 -----  -----  -----   -----
2006/10/23  CS13A19 UNLAWFUL TO      1      M      N       N
            INTENTIONALY
            PURCHASE OR
            RECEIVE A
            CONTROLLED
            SUBSTANCE ETC.
            FROM AN
            UNAUTHORIZED
            SOURCE

2006/10/23  CS13A16 POSSESSION OF    1      M      N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

```
                            *** COURT DATA ***
OFFENSE                                           LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE  ACCESS  SLATE
DISPOSITION
-------     ------                 -----  -----  ------  -----   --------
```



```
2006/10/23  CS13A16 POSSESSION OF    1      M      N       N      FOUND
GUILTY/
            A CONTROLLED                                          COUNTY
            SUBSTANCE BY AN
PROBATION/
            UNREGISTERED                                          12 MOS/
            PERSON EXCEPT                                         COSTS
            BY PRESCRIPTION
            IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD

```
===================================================================
=========
NAME: JOHNSON,SHAWN                        OTN: N441799-1
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2006/12/07   PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2007/03/05
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-1314051-2006
```

```
                         *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE        CHARGE              COUNT  GRADE  ACCESS  SLATE
-------     ------              -----  -----  -----   -----
2006/10/03  CC2709-1A1 REPEATEDLY  1     M1     N       N
            COMMITS ACTS
            TOWARDS
            ANOTHER PERSON
            WHICH
            DEMONSTRATES
            INTENT TO PLACE
            PERSON IN FEAR


2006/12/07  CC2709A HARASSMENT     1            N       N

2006/10/03  CC6301A1 CORRUPTION    1     M1     N       N
            OF MINORS
```

```
                         *** COURT DATA ***
OFFENSE                                         LIMITED CLEAN
DATE        CHARGE              COUNT  GRADE  ACCESS  SLATE
DISPOSITION
-------     ------              -----  -----  ------  -----   --------
---
2006/10/03  CC2709-1A1 REPEATEDLY  1     M1     N       N      NOLLE
            COMMITS ACTS
PROSSED/
            TOWARDS
WITHDRAWN
            ANOTHER PERSON
            WHICH
            DEMONSTRATES
            INTENT TO PLACE
            PERSON IN FEAR

2006/12/07  CC2709A HARASSMENT     1            N       N      NOLLE

PROSSED/

WITHDRAWN
```

App. 160

| 2006/10/03 | CC6301A1 CORRUPTION | 1 | M1 | N | N | PLEAD |
| GUILTY/ | | | | | | COUNTY |
| | OF MINORS | | | | | |
| PRISON/ | | | | | | 11 MOS |
| 15 DYS - | | | | | | 001 |
| YRS 11 MOS/ | | | | | | COUNTY |
| PROBATION/ | | | | | | 004 |
| YRS/ | | | | | | COSTS |
| 2006/10/03 | CC907A POSSESSING | 1 | M1 | N | N | NOLLE |
| | INSTRUMENT OF | | | | | |
| PROSSED/ | | | | | | |
| | CRIME | | | | | |
| WITHDRAWN | | | | | | |

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: JOHNSON,SHAWN J                    OTN: N503130-5
PHOTO AVAILABLE: YES 2007/10/24 CPIN PHOTO NUMBER: 151444927
ARRESTED: 2007/10/24  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2007/10/31          COMMON PLEAS DOCKET: CP-51-CR-
0013274-2007
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0049859-2007

*** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
| --- | --- | --- | --- | --- | --- |
| 2007/10/24 | CC2701 SIMPLE ASSAULT | 3 | | N | N |
| 2007/10/24 | CC2702 AGGRAVATED ASSAULT | 1 | | N | N |
| 2007/10/24 | CC2705 RECKLESSLY ENDANGERING ANOTHER PERSON | 2 | M2 | N | N |
| 2007/10/24 | CC3701 ROBBERY | 1 | | N | N |
| 2007/10/24 | CC3921 THEFT BY UNLAWFUL TAKING | 2 | | N | N |

OR DISPOSITION

```
                              *** ARREST DATA ***
OFFENSE                                           LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE  ACCESS  SLATE
-------    ------                 -----  -----  -----   -----
2007/10/24 CC3925 RECEIVING       2             N       N
           STOLEN PROPERTY

2007/10/24 CC5104 RESISTING       1      M2     N       N
           ARREST OR OTHER
           LAW ENFORCEMENT

                              *** COURT DATA ***
OFFENSE                                           LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE  ACCESS  SLATE
DISPOSITION
-------    ------                 -----  -----  ------  -----   --------
---
2007/10/24 183701A1IV             1      F2     N       N
DISPOSITION
           ROBBERY-INFLICT
UNREPORTED
           THREAT IMM BOD
           INJ

2007/10/24 183921A THEFT BY       1      M1     N       N
DISPOSITION
           UNLAWFUL TAKING
UNREPORTED
           OR DISPOSITION

2007/10/24 183925A RECEIVING      1      M1     N       N
DISPOSITION
           STOLEN PROPERTY
UNREPORTED

2007/10/24 182701A SIMPLE ASSAULT 1      M2     N       N
DISPOSITION

UNREPORTED

2007/10/24 182705 RECKLESSLY      1      M2     N       N
DISPOSITION
           ENDANGERING
UNREPORTED
           ANOTHER PERSON
```

FOR QUESTIONS REGARDING COURT DATA, PLEASE CONTACT THE COUNTY CLERK OF
COURTS AT (484) 250 - 7700
========================================================================
=========
NAME: JOHNSON,SHAWN J                    OTN: N642197-3
PHOTO AVAILABLE: YES 2009/10/06 CPIN PHOTO NUMBER: 170959396
ARRESTED: 2009/10/06  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2010/03/16
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0046166-2009

                       *** ARREST DATA ***
OFFENSE                                            LIMITED CLEAN
DATE        CHARGE                  COUNT   GRADE  ACCESS  SLATE
-------     ------                  -----   -----  -----   -----
2007/10/24  CC3304A4 CRIMINAL         1      M3     N       N
            MISCHIEF

2007/10/24  CC3502A BURGLARY          1      F1     N       N

2007/10/24  CC3503 CRIMINAL           1             N       N
            TRESPASS

2007/10/24  CC3921A THEFT BY          1      M2     N       N
            UNLAWFUL TAKING
            OR DISPOSITION

2007/10/24  CC3925A RECEIVING         1      M2     N       N
            STOLEN PROPERTY

                       *** COURT DATA ***



App. 163

WITHDRAWN

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: JOHNSON,SHAWN J                      OTN: N674939-6
PHOTO AVAILABLE: YES 2010/04/14 CPIN PHOTO NUMBER: 131470983
ARRESTED: 2010/04/14  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE:
                         *** ARREST DATA ***
OFFENSE                                      LIMITED CLEAN
DATE         CHARGE                COUNT  GRADE ACCESS  SLATE
-------      ------                -----  ----- -----   -----
2010/04/13  CC5121 ESCAPE            1            N       N
                       *** COURT DATA ***

                  NO COURT DISPOSITION PROVIDED
=======================================================================
=========
NAME: JOHNSON,SHAWN                         OTN: N748227-4
PHOTO AVAILABLE: YES 2011/06/10 CPIN PHOTO NUMBER: 131562297
ARRESTED: 2011/06/09  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2011/08/15
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0024875-2011

                         *** ARREST DATA ***
OFFENSE                                      LIMITED CLEAN
DATE         CHARGE                COUNT  GRADE ACCESS  SLATE

```
-------      ------                        -----  -----  -----   -----
2011/06/09   CS13A16 POSSESSION OF  1      M      N      N
             A CONTROLLED
             SUBSTANCE BY AN
             UNREGISTERED
             PERSON EXCEPT
             BY PRESCRIPTION
             IS UNLAWFUL
```

```
                            *** COURT DATA ***
OFFENSE                                            LIMITED CLEAN
DATE         CHARGE                  COUNT  GRADE  ACCESS SLATE
DISPOSITION
-------      ------                  -----  -----  ------ -----   --------
---
2011/06/09   CS13A16 POSSESSION OF  1      M      N      N        COUNTY
             A CONTROLLED
PROBATION/
             SUBSTANCE BY AN                                      06 MOS/
             UNREGISTERED                                         FOUND
GUILTY/
             PERSON EXCEPT                                        COSTS
             BY PRESCRIPTION
             IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================
=========
NAME: JOHNSON,SHAWN                        OTN: N786474-3
PHOTO AVAILABLE: YES 2012/01/31 CPIN PHOTO NUMBER: 121335185
ARRESTED: 2012/01/31  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE:
```
                          *** ARREST DATA ***
OFFENSE                                            LIMITED CLEAN
DATE         CHARGE                  COUNT  GRADE  ACCESS SLATE
-------      ------                  -----  -----  ------ -----
2012/01/31   CC5121 ESCAPE          1             N      N
                          *** COURT DATA ***
```

                  NO COURT DISPOSITION PROVIDED
================================================================

```
=========
NAME: JOHNSON,SHAWN                          OTN: N839089-6
PHOTO AVAILABLE: YES 2012/12/19 CPIN PHOTO NUMBER: 152017642
ARRESTED: 2012/12/18  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2013/04/12
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-SU-0023823-2012
```

```
                        *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE ACCESS SLATE
-------    ------                 -----  ----- ------ -----
2012/12/18  CC3929A1 RETAIL THEFT  1      S     N      N
```

```
                        *** COURT DATA ***
OFFENSE                                         LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE ACCESS SLATE
DISPOSITION
-------    ------                 -----  ----- ------ -----  --------
---
2012/12/18  183929A1 RETAIL THEFT  1      S     N      Y
QUASHED/
```

DISMISSED/

DEMURRER

SUSTAINED

```
FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
===========================================================================
=========
NAME: JOHNSON,SHAWN                          OTN: N841028-6
PHOTO AVAILABLE: YES 2013/01/02 CPIN PHOTO NUMBER: 171148942
ARRESTED: 2013/01/02  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2013/03/06
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0000276-2013
```

```
                        *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE ACCESS SLATE
-------    ------                 -----  ----- ------ -----
2013/01/02  CC3929A1 RETAIL THEFT  1      M1    N      N
```

```
                        *** COURT DATA ***
```

```
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                 COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------    ------                 -----   ----- ------  -----   --------
---
2013/01/02  CC3929A1 RETAIL THEFT  1      M1    N       N       COUNTY

PROBATION/
                                                               12 MOS/
                                                               FOUND
GUILTY/
                                                               COSTS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
NAME: JOHNSON,SHAWN                      OTN: N843070-4
PHOTO AVAILABLE: YES 2013/01/15 CPIN PHOTO NUMBER: 171150964
ARRESTED: 2013/01/15  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2013/03/06
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0002139-2013

                      *** ARREST DATA ***
```
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                 COUNT   GRADE ACCESS  SLATE
-------    ------                 -----   ----- -----   -----
2013/01/15  CC3929A1 RETAIL THEFT  1      M1    N       N
```

                      *** COURT DATA ***
```
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                 COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------    ------                 -----   ----- ------  -----   --------
---
2013/01/15  CC3929A1 RETAIL THEFT  1      M1    N       N       COUNTY

PROBATION/
                                                               12 MOS/
                                                               COSTS/
                                                               FOUND
GUILTY
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
NAME: JOHNSON,SHAWN                      OTN: N846844-5
PHOTO AVAILABLE: YES 2013/02/08 CPIN PHOTO NUMBER: 182134037
ARRESTED: 2013/02/08  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2013/03/20

DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0005563-2013

```
                        *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE              COUNT   GRADE  ACCESS  SLATE
-------     ------             -----   -----  -----   -----
2013/02/08  CC3126A2 INDECENT    1      M1     N       N
            ASSAULT -
            PERSON DOES SO
            BY FORCIBLE
            COMPULSION

2013/02/08  CC6301A1I CORRUPTION  1     F3     N       N
            OF MINORS

2013/02/08  CC6318 UNLAWFUL       1            N       N
            CONTACT WITH
            MINOR
```

```
                        *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE              COUNT   GRADE  ACCESS  SLATE
DISPOSITION
-------     ------             -----   -----  ------  -----   --------
---
2013/02/08  CC3126A2 INDECENT    1      M1     N       N       NOLLE
            ASSAULT -
PROSSED/
            PERSON DOES SO
WITHDRAWN
            BY FORCIBLE
            COMPULSION

2013/02/08  CC6301A1I CORRUPTION  1     F3     N       N       COSTS/
            OF MINORS                                          PLEAD
GUILTY/

REGIONAL

CORRECTIONAL

FACILITY/
```

001

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFX̄bᴀᴏ)_2/28/2022

YRS - 003

YRS

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
==========================================================================
==========
NAME: JOHNSON,SHAWN                         OTN: U065198-0
PHOTO AVAILABLE: YES 2017/01/24 CPIN PHOTO NUMBER: 171300519
ARRESTED: 2017/01/24  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2017/03/27
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0002315-2017

                      *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE ACCESS  SLATE
-------     ------                 -----  ----- ------  -----
2017/01/24  182706A1 TERRORISTIC   1             N       N
            THREATS COMMIT
            ANY CRIME OF
            VIOLENCE WITH
            INTENT TO
            TERRORIZE
            ANOTHER



FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD

```
========================================================================
=========
NAME: JOHNSON,SHAWN                         OTN: U065817-3
PHOTO AVAILABLE: YES 2017/01/31 CPIN PHOTO NUMBER: 152388452
ARRESTED: 2017/01/31  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2017/03/17
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0002798-2017
```

```
                         *** ARREST DATA ***
OFFENSE                                         LIMITED  CLEAN
DATE       CHARGE               COUNT  GRADE  ACCESS   SLATE
-------    ------               -----  -----  -----    -----
2017/01/30 18907A POSSESSING     1      M1     N        N
           INSTRUMENT OF
           CRIME

2017/01/30 182701A SIMPLE ASSAULT 1            N        N

2017/01/30 182702A AGGRAVATED     1            N        N
           ASSAULT

2017/01/30 182705 RECKLESSLY      1      M2     N        N
           ENDANGERING
           ANOTHER PERSON

2017/01/30 183701A1V ROBBERY -    1      F3     N        N
           PHYSICALLY
           TAKES OR
           REMOVES
           PROPERTY FROM A
           PERSON BY FORCE

2017/01/30 183921A THEFT BY       1            N        N
           UNLAWFUL TAKING
           OR DISPOSITION

2017/01/30 183925A RECEIVING      1            N        N
           STOLEN PROPERTY
```



WITHDRAWN

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
======================================================================
=========
NAME: JOHNSON,SHAWN                          OTN: U095722-4
PHOTO AVAILABLE: YES 2017/09/26 CPIN PHOTO NUMBER: 111187908
ARRESTED: 2017/09/26  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2017/10/26
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0028555-2017

                          *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                COUNT  GRADE ACCESS SLATE
-------    ------                -----  ----- ----- -----
2017/09/26 182706A1 TERRORISTIC  1             N     N
           THREATS COMMIT
           ANY CRIME OF
           VIOLENCE WITH
           INTENT TO
           TERRORIZE
           ANOTHER

2017/09/26 183701A1V ROBBERY -   1      F3     N     N
           PHYSICALLY
           TAKES OR
           REMOVES
           PROPERTY FROM A
           PERSON BY FORCE

2017/09/26 183925A RECEIVING     1             N     N
           STOLEN PROPERTY

2017/09/26 183929A1 RETAIL THEFT 1             N     N

                          *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                COUNT  GRADE ACCESS SLATE
DISPOSITION
-------    ------                -----  ----- ------ -----  --------
---
2017/09/26 182706A1 TERRORISTIC  1      M1     N     N      NOLLE
           THREATS COMMIT
PROSSED/
           ANY CRIME OF
WITHDRAWN
           VIOLENCE WITH
           INTENT TO
           TERRORIZE

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXbAO)_2/28/2022

ANOTHER

2017/09/26  183929A1 RETAIL THEFT  1      M1    N       N      FOUND
GUILTY/

                                                               COSTS/
                                                               COUNTY
PRISON/

                                                               COUNTY

PROBATION/

                                                               12 MOS

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================
=========
NAME: JOHNSON,SHAWN                        OTN: U100860-4
PHOTO AVAILABLE: YES 2017/11/03 CPIN PHOTO NUMBER: 121629615
ARRESTED: 2017/11/02  PAPEP0000  PHILADELPHIA PD
OCA: C0765977


DISPO DATE: 2018/01/19
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0033121-2017

                        *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE       CHARGE              COUNT  GRADE ACCESS  SLATE
-------    ------              -----  ----- -----   -----
2017/11/02  182701A SIMPLE ASSAULT 1          N       N

2017/11/02  182705 RECKLESSLY   1      M2    N       N
            ENDANGERING
            ANOTHER PERSON

2017/11/02  183701A1V ROBBERY -  1     F3    N       N
            PHYSICALLY
            TAKES OR
            REMOVES
            PROPERTY FROM A
            PERSON BY FORCE

2017/11/02  183921A THEFT BY     1           N       N
            UNLAWFUL TAKING
            OR DISPOSITION

2017/11/02  183925A RECEIVING    1           N       N
            STOLEN PROPERTY

2017/11/02  183929A1 RETAIL THEFT 1          N       N



```
=========
NAME: JOHNSON,SHAWN                         OTN: U101345-6
PHOTO AVAILABLE: YES 2017/11/07 CPIN PHOTO NUMBER: 152454718
ARRESTED: 2017/11/06  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2018/01/02
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0033591-2017
```

```
                        *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE ACCESS  SLATE
-------    ------                 -----  ----- -----   -----
2017/11/06 183925A RECEIVING       1            N      N
           STOLEN PROPERTY

2017/11/06 183929A1 RETAIL THEFT  1             N      N
```

```
                        *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE ACCESS  SLATE
DISPOSITION
```

App. 174

```
-------    ------                     -----  ----- ------  -----  --------
---
2017/11/06  183929A1 RETAIL THEFT  1     F3    N       Y      NOLLE
```

PROSSED/

WITHDRAWN

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
======================================================================
=========
NAME: JOHNSON,SEAN                          OTN: U101797-3
PHOTO AVAILABLE: YES 2017/11/10 CPIN PHOTO NUMBER: 121630386
ARRESTED: 2017/11/10  PAPEP0000  PHILADELPHIA PD
OCA: C0765977
DISPO DATE: 2018/02/15          COMMON PLEAS DOCKET: CP-51-CR-
0010683-2017
DISTRICT JUSTICE: 0151

                        *** ARREST DATA ***
OFFENSE                                     LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE ACCESS  SLATE
-------    ------                 -----  ----- -----   -----
2017/11/10  183929A1 RETAIL THEFT  1            N       N

                        *** COURT DATA ***
OFFENSE                                     LIMITED CLEAN
DATE       CHARGE                 COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------    ------                 -----  ----- ------  -----  --------
---
2017/11/10  183929A1 RETAIL THEFT  1     F3    N       N      PLEAD
GUILTY/
                                                             COSTS/
                                                             COUNTY

PROBATION/
                                                             001
YRS - 001
                                                             YRS/

INTERMEDIATE

PUNISHMENT

PROGRAM/
                                                             12 MOS

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
======================================================================
=========
```

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaRXbAO)_2/28/2022

```
                           PROBATION/PAROLE INFORMATION
                                       START      END
LIFE   LIMITED
AGENCY                    OCA          DATE       DATE       PAR/PRO
CODE   ACCESS
------                    ---          -----      -----      -------     ----
------
PA022035G BOARD OF    091AA      2009/07/07  2010/10/24
PROBATION        N
PROBATION
AND
PAROLE

APPLIES TO OTN: N503130-5
=====================================================================
=========
                               CUSTODY INFORMATION
FACILITY/                          ADMISSION      RELEASE         LIMITED
INSTITUTION                        DATE           DATE            ACCESS
-----------                        ----           ----            ------
PA021025C  DEPARTMENT OF CORR      2010/04/14     2011/02/14      N
ECTIONS
APPLIES TO OTN(S): N503130-5

PA021025C  DEPARTMENT OF CORR      2013/03/26     2016/02/08      N
ECTIONS
APPLIES TO OTN(S): N846844-5
=====================================================================
=========
```

                         ADDITIONAL IDENTIFIERS

DOBS: 1975/07/28

MNUS:


 *** DNA SAMPLE AND PROFILE ON FILE PURSUANT TO THE PA DNA ACT (44
PA.C.S., CHAPTER 23). ***
```
=====================================================================
=========
```
              F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE
NUMERIC=DEGREE
              ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE
FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT
PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE

REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE
AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN
CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND
PURDON'S
FORMATTED CHARGES.

***************************** END OF RAP SHEET
*****************************



# JNET

| | |
|---|---|
| **EVENT#:** | 221196459 |
| **SID#:** | 23147190 |
| **NAME:** | ANTONIO LEWIS |
| **ARREST DATE:** | Aug 21 2019 7:58AM |
| **AGE AT ARREST:** | 42 |
| **HEIGHT:** | 601 |
| **WEIGHT:** | 240 |
| **HAIR COLOR:** | BLACK |
| **EYE COLOR:** | BROWN |

**CPIN DATABASE**

**FOR INVESTIGATION ONLY**
**NOT FOR IDENTIFICATION**
**DESTROY AFTER 90 DAYS**

Printed JNET:  2/28/122 11:13

App. 178

JM (DAO)_0077

DAO034-00010377 CHR 20220228 13:26:37 13:26:37 0268000F29

PENNSYLVANIA STATE POLICE
CENTRAL REPOSITORY
1800 ELMERTON AVENUE
HARRISBURG, PENNSYLVANIA 17110
(717) 787-9092

PA051471A                                              ATN :
MORALES
RSN : ADA AITTIE                                       OPR : SM
THREE SO PENN SQUARE
PHILADELPHIA, PA, 19107
========================================================================
=========
    USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 231-47-19-0
***

REGULATED BY ACT 47, AS AMENDED.
III - MULTI-SOURCE OFFENDER
========================================================================
=========
                          IDENTIFICATION
NAME: LEWIS,ANTONIO
SID: 231-47-19-0    FBI: 181624AB5    DOB: 1976/11/22    ██████████
██████
SEX: MALE           RAC: BLACK       HAI: BLACK        EYE:
BROWN
HGT: 6'01"          WGT: 240
POB: PENNSYLVANIA   US CITIZEN:
COUNTRY OF CITIZENSHIP:

SCARS, MARKS, TATTOOS:
TATTOOS (TAT) - TAT R ARM
TATTOOS (TAT) - TAT L ARM

LAST KNOWN ADDRESS: ████████████████████████████████████████████████

========================================================================
=========
                          CRIMINAL HISTORY
NAME: LEWIS,ANTONIO                         OTN: M658289-2
PHOTO AVAILABLE: NO
ARRESTED: 1995/06/11  PAPEP0000  PHILADELPHIA PD
OCA: C811716
DISPO DATE: 1996/08/27                COMMON PLEAS DOCKET:
MC#9506-0817

                        *** ARREST DATA ***
| OFFENSE | | | | LIMITED | CLEAN |
| DATE | CHARGE | COUNT | GRADE | ACCESS | SLATE |
| ------- | ------ | ----- | ----- | ----- | ----- |
| | CC3921 THEFT BY | 1 | | N | N |

```
                    UNLAWFUL TAKING
                    OR DISPOSITION

                    CC3925 RECEIVING        1              N         N
                    STOLEN PROPERTY
```

                          *** COURT DATA ***

```
OFFENSE                                              LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE ACCESS  SLATE
DISPOSITION
--------    ------                 -----  ----- ------  -----   --------
---
                    CC3921 THEFT BY         1              N         N      GUILTY/
                    UNLAWFUL TAKING                                         COUNTY
                    OR DISPOSITION
PROBATION/
                                                                           001 YRS

                    CC3925 RECEIVING        1              N         N      GUILTY/
                    STOLEN PROPERTY                                         COUNTY

PROBATION/
                                                                           001 YRS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: LEWIS,ANTONIO                      OTN: M665742-0
PHOTO AVAILABLE: NO
ARRESTED: 1995/08/04  PAPEP0000  PHILADELPHIA PD
OCA: C811716
DISPO DATE: 1995/11/15                    COMMON PLEAS DOCKET:
MC#9507-3876


                          *** ARREST DATA ***

```
OFFENSE                                              LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE ACCESS  SLATE
-------     ------                 -----  ----- -----   -----
            CS13A16 POSSESSION OF   1              N         N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

            CS13A30 MANUFACTURE     1              N         N
            ETC. OF
            CONTROLLED
```

App. 180

SUBSTANCE BY
PERSON NOT
REGISTERED, OR
A PRACTITIONER
NOT REGISTERED
CREATING, ETC.
A COUNTERFEIT
CONTROLLED
SUBSTANCE

```
                              *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE         CHARGE                COUNT GRADE ACCESS SLATE
DISPOSITION
-------      ------               ----- ----- ------ -----  --------
---
             CS13A16 POSSESSION OF  1            N      N     PLEAD
GUILTY/
             A CONTROLLED                                     COUNTY
             SUBSTANCE BY AN
PROBATION/
             UNREGISTERED                                     12 MOS
             PERSON EXCEPT
             BY PRESCRIPTION
             IS UNLAWFUL

             CS13A30 MANUFACTURE    1            N      N     PLEAD
GUILTY/
             ETC. OF                                          COUNTY
             CONTROLLED
PROBATION/
             SUBSTANCE BY                                     12 MOS
             PERSON NOT
             REGISTERED, OR
             A PRACTITIONER
             NOT REGISTERED
             CREATING, ETC.
             A COUNTERFEIT
             CONTROLLED
             SUBSTANCE
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: LEWIS,ANTONIO                    OTN: M669002-5
PHOTO AVAILABLE: NO
ARRESTED: 1995/08/29  PAPEP0000  PHILADELPHIA PD
OCA: C811716
DISPO DATE: 1996/09/27

```
                           *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE         CHARGE                COUNT GRADE ACCESS SLATE
-------      ------                ----- ----- ----- -----
1995/08/29   CS13A30 MANUFACTURE   1           N     N
             ETC. OF
             CONTROLLED
             SUBSTANCE BY
             PERSON NOT
             REGISTERED, OR
             A PRACTITIONER
             NOT REGISTERED
             CREATING, ETC.
             A COUNTERFEIT
             CONTROLLED
             SUBSTANCE

1995/08/29   CS13A16 POSSESSION OF 1           N     N
             A CONTROLLED
             SUBSTANCE BY AN
             UNREGISTERED
             PERSON EXCEPT
             BY PRESCRIPTION
             IS UNLAWFUL

                           *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE         CHARGE                COUNT GRADE ACCESS SLATE
DISPOSITION
-------      ------                ----- ----- ------ ----- --------
---
1995/08/29   CS13A30 MANUFACTURE   1           N     N      PLEAD
GUILTY/
             ETC. OF                                        COUNTY
PRISON/
             CONTROLLED                                     001
YRS - 002
             SUBSTANCE BY                                   YRS/
             PERSON NOT                                     COSTS
             REGISTERED, OR
             A PRACTITIONER
             NOT REGISTERED
             CREATING, ETC.
```

App. 182

JM (DAO)_0081

```
                          A COUNTERFEIT
                          CONTROLLED
                          SUBSTANCE

1995/08/29    CS13A16 POSSESSION OF   1      M       N        Y       NOLLE
                          A CONTROLLED
PROSSED/
                          SUBSTANCE BY AN
WITHDRAWN
                          UNREGISTERED
                          PERSON EXCEPT
                          BY PRESCRIPTION
                          IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=========================================================================
=========
NAME: LEWIS,ANTWON                        OTN: M709206-1
PHOTO AVAILABLE: NO
ARRESTED: 1996/07/17  PAPEP0000  PHILADELPHIA PD
OCA: C811716
DISPO DATE: 2000/05/25

                        *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
| ------- | ------ | ----- | ----- | ----- | ----- |
| 1996/07/17 | CC3921A THEFT BY UNLAWFUL TAKING OR DISPOSITION | 1 | | N | N |
| 1996/07/17 | CC3925A RECEIVING STOLEN PROPERTY | 1 | | N | N |
| 1996/07/17 | CC3928 UNAUTHORIZED USE OF AUTOMOBILES AND OTHER VEHICLES | 1 | M2 | N | N |
| 1996/07/17 | CC3304A CRIMINAL MISCHIEF | 1 | | N | N |

                        *** COURT DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | DISPOSITION |
| ------- | ------ | ----- | ----- | ------ | ----- | -------- |
| 1996/07/17 | CC3921A THEFT BY | 1 | | N | N | NOLLE |

App. 183

JM (DAO)_0082

```
                  UNLAWFUL TAKING
PROSSED/
                  OR DISPOSITION
WITHDRAWN

1996/07/17  CC3925A RECEIVING     1              N        N       PLEAD
GUILTY/
            STOLEN PROPERTY
REGIONAL

CORRECTIONAL

FACILITY/
                                                                  003
YRS - 005
                                                                  YRS/
                                                                  COSTS

1996/07/17  CC3928 UNAUTHORIZED   1      M2     N        N       NOLLE
            USE OF
PROSSED/
            AUTOMOBILES AND
WITHDRAWN
            OTHER VEHICLES

1996/07/17  CC3304A CRIMINAL      1              N        N       NOLLE
            MISCHIEF
PROSSED/

WITHDRAWN
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
======================================================================
=========
NAME: LEWIS,ANTONIO                        OTN: M893988-4
PHOTO AVAILABLE: NO
ARRESTED: 1998/10/14  PAPEP0000  PHILADELPHIA PD
OCA: C811716
DISPO DATE:

                          *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 1998/10/14 | CC3922 THEFT BY DECEPTION | 1 | | N | N |
| 1998/10/14 | CC4101 FORGERY | 1 | | N | N |
| 1998/10/14 | CC4105 BAD CHECKS | 1 | | N | N |

JM (DAO)_0083

```
                          *** COURT DATA ***
OFFENSE                                       LIMITED CLEAN
DATE        CHARGE              COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------     ------             -----  ----- ------  ----- --------
---
1998/10/14  CC3922 THEFT BY      1             N     N     NO
DISPOSITION
            DECEPTION
REPORTED

1998/10/14  CC4101 FORGERY       1             N     N     NO
DISPOSITION

REPORTED




                          *** COURT DATA ***
OFFENSE                                       LIMITED CLEAN
DATE        CHARGE              COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------     ------             -----  ----- ------  ----- --------
---
1998/10/14  CC4105 BAD CHECKS    1             N     N     NO
DISPOSITION

REPORTED

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================
=========
*** DOMESTIC VIOLENCE ***
NAME: LEWIS,ANTONIO                    OTN: N000559-6
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2000/04/30  PAPEP0000  PHILADELPHIA PD
OCA: C811716
DISPO DATE: 2000/12/08

                          *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE        CHARGE              COUNT   GRADE ACCESS  SLATE
-------     ------             -----  ----- -----  -----
2000/04/30  CC907 POSSESSING     1      M1    N      N
            INSTRUMENT OF
            CRIME

2000/04/30  CC2701 SIMPLE ASSAULT 1           N      N

2000/04/30  CC2705 RECKLESSLY    1      M2    N      N
```

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...    2/28/2022

```
                    ENDANGERING
                    ANOTHER PERSON

2000/04/30   CC2706 TERRORISTIC        1      M1   N       N
             THREATS
```

*** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| 2000/04/30 | CC907 POSSESSING INSTRUMENT OF CRIME | 1 | M1 | N | N | GUILTY/ COUNTY |

```
PROBATION/

                                                          002 YRS
```



```
=========
NAME: LEWIS,ANTONIO                        OTN: N439539-2
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2006/11/26   PAPEP0000   PHILADELPHIA PD
OCA: C0811716
DISPO DATE: 2007/09/07
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-1312202-2006
```

```
                               *** ARREST DATA ***
OFFENSE                                            LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE  ACCESS  SLATE
-------     ------                 -----  -----  -----   -----
2006/11/26  CS13A30 MANUFACTURE      1      F      N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

2006/11/26  CS13A16 POSSESSION OF    1      M      N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```



JM (DAO)_0086

```
                    SUBSTANCE BY AN
                    UNREGISTERED
                    PERSON EXCEPT
                    BY PRESCRIPTION
                    IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
==========================================================================
=========
NAME: LEWIS,ANTONIO                        OTN: N449399-6
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2007/01/17  PAPEP0000   PHILADELPHIA PD
OCA: C0811716
DISPO DATE: 2007/09/19
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0002949-2007
```

```
                        *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE        CHARGE                  COUNT  GRADE ACCESS SLATE
-------     ------                  -----  ----- -----  -----
2006/01/16  CS780-113 VIOLATION      1      F     N      N
            OF DRUG DEVICE
            AND COSMETIC ACT

2006/01/16  CS13A16 POSSESSION OF    1      M     N      N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```



App. 188

JM (DAO)_0087



FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
======================================================================
=========
NAME: LEWIS,ANTONIO                          OTN: N535639-6
PHOTO AVAILABLE: YES 2008/04/02 CPIN PHOTO NUMBER: 220326983
ARRESTED: 2008/04/02  PAPEP0000  PHILADELPHIA PD
OCA: C0811716
DISPO DATE: 2009/01/05           COMMON PLEAS DOCKET: CP-51-CR-
0007553-2008


DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0016948-2008

                    *** ARREST DATA ***

App. 189
JM (DAO)_0088

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 2008/04/02 | CS13A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | | N | N |
| 2008/04/02 | CS13A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | 1 | | N | N |

JM (DAO)_0089

```
                CONTROLLED
                SUBSTANCE BY
                PERSON NOT
                REGISTERED, OR
                A PRACTITIONER
                NOT REGISTERED
                CREATING, ETC.
                A COUNTERFEIT
                CONTROLLED
                SUBSTANCE
                (35780-113A30)
```



```
FOR QUESTIONS REGARDING COURT DATA, PLEASE CONTACT THE COUNTY CLERK OF
COURTS AT (484) 250 - 7700
=====================================================================
=========
NAME: LEWIS,ANTONIO                       OTN: N655217-3
PHOTO AVAILABLE: YES 2009/12/17 CPIN PHOTO NUMBER: 220507825
ARRESTED: 2009/12/17  PAPEP0000  PHILADELPHIA PD
OCA: C0811716
DISPO DATE: 2010/05/10
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0057569-2009

                        *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE                COUNT  GRADE  ACCESS  SLATE
-------     ------                -----  -----  -----   -----
2009/12/17  VC3802A1 DRIVING        1      M      N       N
            UNDER THE
            INFLUENCE OF
```

```
                        ALCOHOL OR
                        CONTROLLED
                        SUBSTANCE

                    *** THIS OTN CONTAINS INCOMPLETE DISPOSITION DATA ***
                                        Text
```

```
                              *** COURT DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE                   COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------                   -----  ----- ------  -----   --------
---
2009/12/17  VC3802A1 DRIVING           1      M     N       N      FOUND
GUILTY
            UNDER THE
            INFLUENCE OF
            ALCOHOL OR
            CONTROLLED
            SUBSTANCE

2009/12/17  VC3802B DRIVING UNDER      1      M     N       N      FOUND
GUILTY
            THE INFLUENCE
            AT A HIGH RATE
            OF ALCOHOL

2009/12/17  VC3802D1 DRIVING           1      M     N       N      FOUND
GUILTY
            UNDER THE
            INFLUENCE OF A
            CONTROLLED
            SUBSTANCE

2009/12/17  VC3802D2 DRIVING           1      M     N       N      FOUND
GUILTY
            UNDER INFLUENCE
            OF DRUGS OR
            COMBINATION OF
            DRUGS
```

```
                              *** COURT DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE                   COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------                   -----  ----- ------  -----   --------
---
```

```
2009/12/17  VC3802D3 DRIVING      1     M     N      N      FOUND
GUILTY
            UNDER THE
            COMBINED
            INFLUENCE OF
            ALCOHOL AND A
            DRUG OR
            COMBINATION OF
            DRUGS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
==============================================================================
=========
NAME: LEWIS,ANTONIO                      OTN: N968219-0
PHOTO AVAILABLE: YES 2015/06/21 CPIN PHOTO NUMBER: 182399565
ARRESTED: 2015/06/21  PAPEP0000  PHILADELPHIA PD
OCA: C0811716
DISPO DATE: 2015/10/09
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0019221-2015

                    *** ARREST DATA ***
```
OFFENSE                                   LIMITED CLEAN
DATE        CHARGE             COUNT  GRADE ACCESS  SLATE
-------     ------             -----  ----- -----   -----
2015/06/21  VC3802 DRIVING UNDER  1          N       N
            THE INFLUENCE
            OF ALCOHOL OR
            CONTROLLED
            SUBSTANCE
```

                    *** COURT DATA ***
```
OFFENSE                                   LIMITED CLEAN
DATE        CHARGE             COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------             -----  ----- ------  -----   --------
---
2015/06/21  753802A1 DRIVING     1     M1    N       N      PLEAD
GUILTY
            UNDER THE
            INFLUENCE OF
            ALCOHOL OR
            CONTROLLED
            SUBSTANCE

2015/06/21  753802C DRIVING UNDER 1    M     N       N      PLEAD
GUILTY/
            THE INFLUENCE                                   FINES
AND COSTS/
            AT THE HIGHEST                                  COUNTY
PRISON/
```

```
         RATE OF ALCOHOL                                02 MOS
28 DYS -
                                                        05 MOS
25 DYS/
                                                        COUNTY

PROBATION/
                                                        06 MOS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
===========================================================================
=========
NAME: LEWIS,ANTONIO                          OTN: U116041-2
PHOTO AVAILABLE: YES 2018/03/15 CPIN PHOTO NUMBER: 162108992
ARRESTED: 2018/03/14  PAPEP0000  PHILADELPHIA PD
OCA: C0811716
DISPO DATE:

```
                          *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE                COUNT  GRADE ACCESS  SLATE
-------     ------                -----  ----- ------  -----
2018/03/14  35780-113A19 UNLAWFUL 1            N       N
            TO INTENTIONALY
            PURCHASE OR
            RECEIVE A
            CONTROLLED
            SUBSTANCE ETC.
            FROM AN
            UNAUTHORIZED
            SOURCE
                          *** COURT DATA ***
```

                    NO COURT DISPOSITION PROVIDED
===========================================================================
=========
NAME: LEWIS,ANTONIO                          OTN: U177423-1
PHOTO AVAILABLE: YES 2019/08/21 CPIN PHOTO NUMBER: 221196459
ARRESTED: 2019/08/20  PAPEP0000  PHILADELPHIA PD
OCA: C0811716
DISPO DATE:
                          *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN

JM (DAO)_0093

```
DATE        CHARGE                      COUNT  GRADE ACCESS  SLATE
-------     ------                      -----  ----- ------  -----
2019/08/20  753802A1 DRIVING             1            N       N
            UNDER THE
            INFLUENCE OF
            ALCOHOL OR
            CONTROLLED
            SUBSTANCE
                            *** COURT DATA ***

                     NO COURT DISPOSITION PROVIDED
=====================================================================
=========
                     PROBATION/PAROLE INFORMATION
                              START        END
LIFE   LIMITED
AGENCY               OCA        DATE         DATE       PAR/PRO
CODE   ACCESS
------               ---        -----        -----      -------   ----
------
PA051023G            0240417A   1995/11/15  1996/11/15
PROBATION    N
PHILADELPHIA

APPLIES TO OTN: M665742-0

PA051023G            CC3925A    2000/05/30  2003/06/14
PROBATION    N
PHILADELPHIA

APPLIES TO OTN: M709206-1
=====================================================================
=========
                        ADDITIONAL IDENTIFIERS
AKAS: ANTONIO,LEWIS / LEWIS,ANTONIO B / LEWIS,ANTOWN
DOBS: 1972/11/22 1976/11/23 1977/11/22
SOCS: 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
MNUS:

 *** DNA SAMPLE AND PROFILE ON FILE PURSUANT TO THE PA DNA ACT (44
PA.C.S., CHAPTER 23). ***
=====================================================================
=========
```

```
           F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE
NUMERIC=DEGREE
               ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE
FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT
PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE
AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN
CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND
PURDON'S
FORMATTED CHARGES.

 **************************** END OF RAP SHEET
****************************
```

```
CR.DEDSP0000
20220228 13:27:21 13348479
20220228 13:27:21 010380 PA051471A
*0000835ZQR
TXT
HDR/2L010051E000835ZQR
ATN/MORALES
********************* CRIMINAL HISTORY RECORD
**********************
```

```
**************************** Introduction
****************************
```

This rap sheet was produced in response to the following request:

Purpose Code            C
Attention               MORALES

The information in this rap sheet is subject to the following caveats:

*** This record may contain juvenile detainment information. Please
read arrest category information carefully *** ()

```
************************** IDENTIFICATION
**************************
```

Deceased                 (; ; )
Subject Name(s)

LEWIS, ANTONIO

Subject Description

FBI Number              S
181624AB5               (

Miscellaneous Numbers
T0841596

Sex                     Race
Male                    Black

Height                  Weight                  Date of Birth
6'00"                   170                     1977-11-22

Hair Color              Eye Color
Black                   Brown

Ethnicity

Not Hispanic Or Latino

```
************************* CRIMINAL HISTORY
*************************

============================= Cycle 1 =============================
Tracking Number          95003833
Earliest Event Date      1995-06-07
-------------------------------------------------------------------
-
Arrest Date              1995-06-07
Arresting Agency          WILMINGTON PD
Arrest Type              JUVENILE
Charge                   001
         Charge Number   11795000780001
Charge Tracking Number   9506010140
      Charge Literal     Drug Offenses
  Charge Description      COMPLAINT NUM: 3095013887
          Statute         PWITD NSI CCS-Domestic Related:N
                         (DE-16-4751-000A-F-C; )
   NCIC Offense Code     3599
                         POSSESS W/INTENT TO DELIVER A NARCOTIC SCHEDUL
                         (text)
          Severity       FELONY C
Charge                   002
         Charge Number   21795000780002
Charge Tracking Number   9506010140
      Charge Literal     Drug Offenses
  Charge Description      COMPLAINT NUM: 3095013887
          Statute        POSSW/I1000'SC-Domestic Related:N
                         (DE-16-4767-00A2-F-G; )
   NCIC Offense Code     3599
                         POSS. OF A NONNARCOTIC SCH I CONTROLLED SUBSTA
                         (text)
          Severity       FELONY G
Charge                   003
         Charge Number   31795000780003
  Charge Description      COMPLAINT NUM: 3095013887
          Statute        VIOLATION OF NOISE PROVISIONS-Domestic
                         Related:N (WI--0039-0052-M; )
   NCIC Offense Code     99
          Severity       Misdemeanor
-------------------------------------------------------------------
-
Court Disposition        (Cycle 1)
Court Case Number        1795000780
Court Agency              NEW CASTLE COUNTY FAMILY COURT
Charge                   001
```

```
              Charge Number  1795000780001
      Charge Tracking Number  9506010140
              Charge Literal  Drug Offenses
          Charge Description  COMPLAINT NUM: 3095013887
                     Statute  POSSESS W/INTENT TO DELIVER A NARCOTIC
SCHEDULE
                              I COUNTERFEIT CONTROLLED SUB-
                              (DE-16-4751-000A-F-C; DE)
          NCIC Offense Code  3599
                   Severity  FELONY C
                Disposition  ( 2009-02-11; NOLLE PROSEQUI)
Charge                       002
              Charge Number  1795000780002
      Charge Tracking Number  9506010140
              Charge Literal  Drug Offenses
          Charge Description  COMPLAINT NUM: 3095013887
                     Statute  POSS. OF A NONNARCOTIC SCH I CONTROLLED
                              SUBSTANCE W/I 1000 FEET OF A SCHOOL-
                              (DE-16-4767-00A2-F-G; DE)
          NCIC Offense Code  3599
                   Severity  FELONY G
                Disposition  ( 2009-02-11; NOLLE PROSEQUI)
*************************  INDEX OF AGENCIES
*************************

Agency                       WILMINGTON PD; ;

----------------------------------------------------------------------
-
Agency                       NEW CASTLE COUNTY FAMILY COURT; ;


                    * * * END OF RECORD * * *
```



# JNET

| | |
|---|---|
| **EVENT#:** | 182870607 |
| **SID#:** | 23709210 |
| **NAME:** | RONNIE |
| | STEVENS |
| **ARREST DATE:** | May 20 2020 12:21AM |
| **AGE AT ARREST:** | 42 |
| **HEIGHT:** | 510 |
| **WEIGHT:** | 180 |
| **HAIR COLOR:** | BLACK |
| **EYE COLOR:** | BROWN |
| **CPIN DATABASE** | |



**FOR INVESTIGATION ONLY**
**NOT FOR IDENTIFICATION**
**DESTROY AFTER 90 DAYS**

Printed JNET:  2/28/122 11:14

App. 200

JM (DAO)_0099

# APPENDIX 2 OF 2

# 201-381

US-EDPA REC'D PAGE-322
2022 APR 22 PM 8:57

DAO034-00010392 CHR 20220228 14:01:55 14:01:55 0268000F2F

PENNSYLVANIA STATE POLICE
CENTRAL REPOSITORY
1800 ELMERTON AVENUE
HARRISBURG, PENNSYLVANIA 17110
(717) 787-9092

PA051471A                                                       ATN :
MORALES
RSN : ADA AITTIE                                                OPR : SM
THREE SO PENN SQUARE
PHILADELPHIA, PA, 19107
========================================================================
=========
     USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 237-09-21-0
***
                    REGULATED BY ACT 47, AS AMENDED.
                    III - MULTI-SOURCE OFFENDER
========================================================================
=========
                         IDENTIFICATION
NAME: DICKENS,SHARION
SID: 237-09-21-0    FBI: 145236CB4    DOB: 1977/12/16           ███████

███         SEX: MALE          RAC: BLACK        HAI: BLACK        EYE:
BROWN
HGT: 5'10"          WGT: 180
POB: PENNSYLVANIA    US CITIZEN:
COUNTRY OF CITIZENSHIP:

SCARS, MARKS, TATTOOS:
TATTOOS (TAT) - TAT RF ARM

LAST KNOWN ADDRESS: 2020/05/19 - ████████████████████████████████

========================================================================
=========
                         CRIMINAL HISTORY
NAME: DICKENS,SHARION                      OTN: M689304-0
PHOTO AVAILABLE: NO
ARRESTED: 1996/02/12  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE: 1996/10/08                      COMMON PLEAS DOCKET:
CP9606-0495

                         *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE ACCESS  SLATE
-------     ------                 -----  ----- ------  -----
1996/02/12  CS13A30 MANUFACTURE    1      F     N       N
            ETC. OF

App. 201

JM (DAO)_0100

```
                CONTROLLED
                SUBSTANCE BY
                PERSON NOT
                REGISTERED, OR
                A PRACTITIONER
                NOT REGISTERED
                CREATING, ETC.
                A COUNTERFEIT
                CONTROLLED
                SUBSTANCE

1996/02/12   CS13A16 POSSESSION OF  1      M      N        N
             A CONTROLLED
             SUBSTANCE BY AN
             UNREGISTERED
             PERSON EXCEPT
             BY PRESCRIPTION
             IS UNLAWFUL
```

```
                         *** COURT DATA ***
```

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| ------- | ------ | ----- | ----- | ------ | ----- | -------- |
| 1996/02/12 AND | CS13A30 MANUFACTURE | 1 | F | N | N | FINES |
| | ETC. OF CONTROLLED | | | | | COSTS/ COUNTY |
| PRISON/ | SUBSTANCE BY | | | | | 11 MOS |
| 15 DYS - | PERSON NOT REGISTERED, OR | | | | | 23 MOS/ PLEAD |
| GUILTY | A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | | | | | |

App. 202

JM (DAO)_0101



FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
============================================================================
=========
NAME: DICKENS,RONNIE                          OTN: M701708-0
PHOTO AVAILABLE: NO
ARRESTED: 1996/05/18  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE: 1996/06/12
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0514661-1996

                    *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|------|------|------|------|------|------|
| | CC3928 UNAUTHORIZED USE OF AUTOMOBILES AND OTHER VEHICLES | 1 | M2 | N | N |
| | CC3925 RECEIVING STOLEN PROPERTY | 1 | | N | N |
| | CC3921 THEFT BY UNLAWFUL TAKING OR DISPOSITION | 1 | | N | N |
| | CC3304 CRIMINAL MISCHIEF | 1 | | N | N |
| | CC5121 ESCAPE | 1 | | N | N |

STOLEN PROPERTY

DISMISSED/

DEMURRER

SUSTAINED



App. 205
JM (DAO)_0103

FOR QUESTIONS REGARDING COURT DATA, PLEASE CONTACT THE COUNTY CLERK OF
COURTS AT (484) 250 - 7700
=============================================================================
=========
NAME: STEVENS,RONNIE                         OTN: M757772-1
PHOTO AVAILABLE: NO
ARRESTED: 1997/07/17  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE:



NO

NO

NO

```
                              *** COURT DATA ***
OFFENSE                                        LIMITED  CLEAN
DATE          CHARGE            COUNT  GRADE  ACCESS   SLATE
DISPOSITION
-------       ------            -----  -----  ------   -----    --------
---
              CC2705 RECKLESSLY    1     M2     N        N        NO
DISPOSITION
              ENDANGERING
REPORTED
              ANOTHER PERSON
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================
=========
NAME: STEVENS,RONNIE                    OTN: M779184-0
PHOTO AVAILABLE: NO
ARRESTED: 1997/12/18   PAPEP0000   PHILADELPHIA PD
OCA: 745189
DISPO DATE: 1998/04/22
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0714591-1997

```
                              *** ARREST DATA ***
OFFENSE                                        LIMITED  CLEAN
DATE          CHARGE            COUNT  GRADE  ACCESS   SLATE
-------       ------            -----  -----  -----    -----
              CC907B POSSESSING    1     M1     N        N
              INSTRUMENT OF
              CRIME

              CC2701 SIMPLE ASSAULT 1    M      N        N

              CC2702 AGGRAVATED    1     F      N        N
              ASSAULT

              CC2705 RECKLESSLY    1     M2     N        N
              ENDANGERING
              ANOTHER PERSON

              CC901 CRIMINAL       1            N        N
              ATTEMPT
              MURDER (CC2502)
```

```
                              *** COURT DATA ***
OFFENSE                                        LIMITED  CLEAN
DATE          CHARGE            COUNT  GRADE  ACCESS   SLATE
```

JM (DAO)_0105



*** COURT DATA ***

QUASHED/

App. 207
JM (DAO)_0106
https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

                    INSTRUMENT OF

DISMISSED/

          CRIME

DEMURRER

SUSTAINED

FOR QUESTIONS REGARDING COURT DATA, PLEASE CONTACT THE COUNTY CLERK OF
COURTS AT (484) 250 - 7700
==================================================================================
=========
NAME: STEVENS, RONNIE                            OTN: M887491-3
PHOTO AVAILABLE: NO
ARRESTED: 1998/09/09  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE: 1999/01/15
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0905001-1998

                          *** ARREST DATA ***
OFFENSE                                              LIMITED  CLEAN
DATE        CHARGE                   COUNT  GRADE  ACCESS  SLATE
-------     ------                   -----  -----  -----   -----
1998/09/09  CC3925 RECEIVING            1            N       N
            STOLEN PROPERTY

1998/09/09  CC3928 UNAUTHORIZED         1      M2    N       N
            USE OF
            AUTOMOBILES AND
            OTHER VEHICLES

1998/09/09  CS13A16 POSSESSION OF       1      M     N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

                          *** COURT DATA ***
OFFENSE                                              LIMITED  CLEAN
DATE        CHARGE                   COUNT  GRADE  ACCESS  SLATE





FOR QUESTIONS REGARDING COURT DATA, PLEASE CONTACT THE COUNTY CLERK OF
COURTS AT (484) 250 - 7700
========================================================================
========
NAME: STEVENS,RODNEY                    OTN: M903471-2
PHOTO AVAILABLE: NO


ARRESTED: 1998/12/04  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE: 1999/06/01
DISTRICT JUSTICE DOCKET NUMBER: MC9811-4611

                        *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
| --- | --- | --- | --- | --- | --- |
| 1998/12/04 | CS13A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | M | N | N |
| 1998/12/04 | CS13A30 MANUFACTURE | 1 | F | N | N |

```
                      ETC. OF
                      CONTROLLED
                      SUBSTANCE BY
                      PERSON NOT
                      REGISTERED, OR
                      A PRACTITIONER
                      NOT REGISTERED
                      CREATING, ETC.
                      A COUNTERFEIT
                      CONTROLLED
                      SUBSTANCE
```

```
                          *** COURT DATA ***
OFFENSE                                        LIMITED  CLEAN
DATE       CHARGE                COUNT  GRADE  ACCESS   SLATE
DISPOSITION
-------    ------               -----  -----  ------   -----    --------
---
1998/12/04 CS13A16 POSSESSION OF  1      M      N        N       FOUND
GUILTY/
           A CONTROLLED                                          COUNTY
           SUBSTANCE BY AN
PROBATION/
           UNREGISTERED                                          002
YRS/
           PERSON EXCEPT                                         FINES
AND COSTS
           BY PRESCRIPTION
           IS UNLAWFUL

1998/12/04 CS13A30 MANUFACTURE    1      F      N        N       FOUND
GUILTY/
           ETC. OF                                              COUNTY
           CONTROLLED
PROBATION/
           SUBSTANCE BY                                          002
YRS/
           PERSON NOT                                           FINES
AND COSTS
           REGISTERED, OR
           A PRACTITIONER
           NOT REGISTERED
           CREATING, ETC.
           A COUNTERFEIT
           CONTROLLED
           SUBSTANCE
```

```
FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=============================================================================
=========
NAME: STEVENS,RONNIE                       OTN: N090449-2
```

```
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2001/07/29  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE:
```

```
                              *** ARREST DATA ***
OFFENSE                                           LIMITED CLEAN
DATE      CHARGE                   COUNT  GRADE ACCESS  SLATE
-------   ------                   -----  ----- -----   -----
2001/07/29  CC3921 THEFT BY          1            N      N
            UNLAWFUL TAKING
            OR DISPOSITION

2001/07/29  CC3925 RECEIVING         1            N      N
            STOLEN PROPERTY
```

```
                              *** COURT DATA ***
OFFENSE                                           LIMITED CLEAN
DATE      CHARGE                   COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------   ------                   -----  ----- ------  -----  --------
---
2001/07/29  CC3921 THEFT BY          1            N      N      NO
DISPOSITION
            UNLAWFUL TAKING
REPORTED
            OR DISPOSITION

2001/07/29  CC3925 RECEIVING         1            N      N      NO
DISPOSITION
            STOLEN PROPERTY
REPORTED
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
```
NAME: STEVENS,QURAN                       OTN: N119340-4
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2001/12/24  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE:
```

```
                              *** ARREST DATA ***
OFFENSE                                           LIMITED CLEAN
DATE      CHARGE                   COUNT  GRADE ACCESS  SLATE
```

JM (DAO)_0110

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI... 2/28/2022

```
-------     ------                       -----  ----- -----    -----
2001/12/24  CC3921 THEFT BY              1              N       N
            UNLAWFUL TAKING
            OR DISPOSITION

2001/12/24  CC3925 RECEIVING             1              N       N
            STOLEN PROPERTY

2001/12/24  CC3928 UNAUTHORIZED          1     M2       N       N
            USE OF
            AUTOMOBILES AND
            OTHER VEHICLES
```

                            *** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| ------- --- | ------ | ----- | ----- | ------ | ----- | -------- |
| 2001/12/24 DISPOSITION REPORTED | CC3921 THEFT BY UNLAWFUL TAKING OR DISPOSITION | 1 | | N | N | NO |
| 2001/12/24 DISPOSITION REPORTED | CC3925 RECEIVING STOLEN PROPERTY | 1 | | N | N | NO |
| 2001/12/24 DISPOSITION REPORTED | CC3928 UNAUTHORIZED USE OF AUTOMOBILES AND OTHER VEHICLES | 1 | M2 | N | N | NO |

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=========================================================================
=========
NAME: STEVENS,QURAN                       OTN: N120710-2
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999


ARRESTED: 2002/01/03  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE: 2002/05/02
DISTRICT JUSTICE DOCKET NUMBER: MC0112-4415

                            *** ARREST DATA ***
OFFENSE                                   LIMITED CLEAN

App. 212
JM (DAO)_0111

```
DATE       CHARGE                          COUNT   GRADE ACCESS  SLATE
-------    ------                          -----   ----- -----   -----
2001/01/03 CS13A16 POSSESSION OF  1        M     N       N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL
```

*** COURT DATA ***

```
OFFENSE                                          LIMITED CLEAN
DATE       CHARGE                 COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------    ------                 -----   ----- ------  -----   --------
---
2001/01/03 CS13A16 POSSESSION OF  1       M     N       N       FOUND
GUILTY/
           A CONTROLLED                                         COUNTY
           SUBSTANCE BY AN
PROBATION/
           UNREGISTERED                                         001
YRS/
           PERSON EXCEPT                                        FINES
AND COSTS
           BY PRESCRIPTION
           IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
NAME: STEVENS,QURAN                        OTN: N137793-5
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2002/03/29   PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE: 2002/08/13                     COMMON PLEAS DOCKET:
CP0206-0077

*** ARREST DATA ***

```
OFFENSE                                          LIMITED CLEAN
DATE       CHARGE                 COUNT   GRADE ACCESS  SLATE
-------    ------                 -----   ----- -----   -----
2001/05/20 CC3921 THEFT BY        1             N       N
           UNLAWFUL TAKING
           OR DISPOSITION

2001/05/20 CC3925 RECEIVING       1             N       N
           STOLEN PROPERTY

2001/05/20 CC3928 UNAUTHORIZED    1       M2    N       N
           USE OF
```

```
                    AUTOMOBILES AND
                    OTHER VEHICLES

2001/05/20  CC3304 CRIMINAL           1              N         N
                    MISCHIEF

2001/05/20  CC3934 THEFT FROM         1              N         N
                    MOTOR VEHICLE
```

                              *** COURT DATA ***

```
OFFENSE                                      LIMITED CLEAN
DATE        CHARGE               COUNT GRADE ACCESS  SLATE
DISPOSITION
-------     ------               ----- ----- ------  -----   --------
---
2001/05/20  CC3921 THEFT BY          1              N         N         PLEAD
GUILTY/
                    UNLAWFUL TAKING                                     COUNTY
PRISON/
                    OR DISPOSITION                                      15
MOS - 30 MOS/
                                                                        FINES
AND COSTS
```



NAME: STEVENS,RONNIE                          OTN: N142040-3
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2002/04/18   PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE: 2003/04/11                        COMMON PLEAS DOCKET:
CP0207-1482

*** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 2002/04/18 | CS13A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | M | N | N |
| 2002/04/18 | CS13A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | 1 | F | N | N |

*** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| 2002/04/18 GUILTY/ | CS13A16 POSSESSION OF A CONTROLLED | 1 | M | N | N | FOUND COUNTY |
| PRISON/ | | | | | | |

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

```
              SUBSTANCE BY AN                                    06
MOS - 12 MOS/
              UNREGISTERED                                      FINES
AND COSTS
              PERSON EXCEPT
              BY PRESCRIPTION
              IS UNLAWFUL
```

```
                            *** COURT DATA ***
OFFENSE                                       LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE ACCESS SLATE
DISPOSITION
-------     ------                 -----  ----- ------  -----   --------
---
2002/04/18  CS13A30 MANUFACTURE      1      F     N       N     FOUND
NOT GUILTY
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================
=========
NAME: STEVENS, RONNIE                         OTN: N321899-4
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2005/02/23   PAPEP0000   PHILADELPHIA PD
OCA: 745189
DISPO DATE: 2007/02/01
DISTRICT JUSTICE DOCKET NUMBER: MC0502-2678

```
                            *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE ACCESS SLATE
-------     ------                 -----  ----- -----   -----
2005/02/22  CS13A30 MANUFACTURE      1      F     N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
```

JM (DAO)_0115

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

```
                    NOT REGISTERED
                    CREATING, ETC.
                    A COUNTERFEIT
                    CONTROLLED
                    SUBSTANCE

2005/02/22   CS13A16 POSSESSION OF   1     M     N       N
                    A CONTROLLED
                    SUBSTANCE BY AN
                    UNREGISTERED
                    PERSON EXCEPT
                    BY PRESCRIPTION
                    IS UNLAWFUL
```

                         *** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| 2005/02/22 GUILTY/ | CS13A30 MANUFACTURE | 1 | F | N | N | FOUND |
| | ETC. OF | | | | | COUNTY |
| PRISON/ | | | | | | |
| | CONTROLLED | | | | | 09 |
| MOS - 18 MOS/ | | | | | | |
| | SUBSTANCE BY | | | | | FINES |
| AND COSTS | | | | | | |
| | PERSON NOT | | | | | |
| | REGISTERED, OR | | | | | |
| | A PRACTITIONER | | | | | |
| | NOT REGISTERED | | | | | |
| | CREATING, ETC. | | | | | |
| | A COUNTERFEIT | | | | | |
| | | | | | | |
| | CONTROLLED | | | | | |
| | SUBSTANCE | | | | | |



```
                    PERSON EXCEPT
                    BY PRESCRIPTION
                    IS UNLAWFUL

2005/02/22   CC903 CRIMINAL        1      F      N        N       FOUND
GUILTY/
                    CONSPIRACY                                    FINES
AND COSTS
                    MANUFACTURE
                    ETC. OF
                    CONTROLLED
                    SUBSTANCE BY
                    PERSON NOT
                    REGISTERED, OR
                    A PRACTITIONER
                    NOT REGISTERED
                    CREATING, ETC.
                    A COUNTERFEIT
                    CONTROLLED
                    SUBSTANCE
                    (CS13A30)
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=========================================================================
=========

NAME: STEVENS,RONNIE                        OTN: N342673-2
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2005/06/15   PAPEP0000   PHILADELPHIA PD
OCA: 745189
DISPO DATE: 2005/06/22
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0616121-2005

                    *** ARREST DATA ***
OFFENSE                                      LIMITED CLEAN
DATE         CHARGE              COUNT  GRADE ACCESS  SLATE
-------      ------              -----  ----- -----   -----
2005/06/13   CC3921 THEFT BY       1            N       N
             UNLAWFUL TAKING
             OR DISPOSITION

2005/06/13   CC3925 RECEIVING      1            N       N
             STOLEN PROPERTY

2005/06/13   CC3928 UNAUTHORIZED   1     M2     N       N
             USE OF
             AUTOMOBILES AND
             OTHER VEHICLES

                    *** COURT DATA ***
OFFENSE                                      LIMITED CLEAN
```

App. 218

JM (DAO)_0117



FOR QUESTIONS REGARDING COURT DATA, PLEASE CONTACT THE COUNTY CLERK OF
COURTS AT (484) 250 - 7700
===================================================================
=========
NAME: STEVENS,RONNIE                     OTN: N421842-1
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2006/08/22   PAPEP0000   PHILADELPHIA PD
OCA: 745189
DISPO DATE: 2007/02/01                 COMMON PLEAS DOCKET:
CP0609-2891-92

```
                      *** ARREST DATA ***
OFFENSE                                    LIMITED CLEAN
DATE        CHARGE                  COUNT  GRADE ACCESS  SLATE
-------     ------                  -----  ----- -----   -----
2006/08/21  CC3925A RECEIVING         1     F3    N        N
            STOLEN PROPERTY

2006/08/21  CC3928A UNAUTHORIZED      1     M2    N        N
```

JM (DAO)_0118

USE OF
AUTOMOBILES AND
OTHER VEHICLES

2006/08/21  CS13A16 POSSESSION OF  1     M      N        N
A CONTROLLED
SUBSTANCE BY AN
UNREGISTERED
PERSON EXCEPT
BY PRESCRIPTION
IS UNLAWFUL

2006/08/21  CS13A30 MANUFACTURE   1     F      N        N
ETC. OF
CONTROLLED
SUBSTANCE BY
PERSON NOT
REGISTERED, OR
A PRACTITIONER
NOT REGISTERED
CREATING, ETC.
A COUNTERFEIT
CONTROLLED
SUBSTANCE

\*\*\* COURT DATA \*\*\*

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| ------- --- | ------ | ----- | ----- | ------ | ----- | -------- |
| 2006/08/21 AND | CC3925A RECEIVING | 1 | F3 | N | N | FINES |
| | STOLEN PROPERTY | | | | | COSTS/ COUNTY |
| PRISON/ | | | | | | 09 |
| MOS - 18 MOS/ | | | | | | FOUND |
| GUILTY | | | | | | |

\*\*\* COURT DATA \*\*\*

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| ------- --- | ------ | ----- | ----- | ------ | ----- | -------- |

JM (DAO)_0119

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

| 2006/08/21 | CC3928A UNAUTHORIZED USE OF | 1 | M2 | N | N | NOLLE |
|---|---|---|---|---|---|---|
| PROSSED/ | | | | | | |
| | AUTOMOBILES AND | | | | | |
| WITHDRAWN | | | | | | |
| | OTHER VEHICLES | | | | | |

| 2006/08/21 | CS13A16 POSSESSION OF | 1 | M | N | N | FOUND |
|---|---|---|---|---|---|---|
| GUILTY/ | | | | | | |
| | A CONTROLLED | | | | | | COUNTY |
| PRISON/ | | | | | | |
| | SUBSTANCE BY AN | | | | | | 09 |
| MOS - 18 MOS/ | | | | | | |
| | UNREGISTERED | | | | | | FINES |
| AND COSTS | | | | | | |
| | PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | | | | | |

| 2006/08/21 | CS13A30 MANUFACTURE ETC. OF | 1 | F | N | N | NOLLE |
|---|---|---|---|---|---|---|
| PROSSED/ | | | | | | |
| | CONTROLLED | | | | | |
| WITHDRAWN | | | | | | |
| | SUBSTANCE BY PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | | | | | |

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
==================================================================================

NAME: STEVENS,RONNIE                          OTN: N491758-1
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2007/08/28   PAPEP0000   PHILADELPHIA PD
OCA: 745189
DISPO DATE: 2008/01/09
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0039987-2007

### *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 2007/08/27 | CS13A19 UNLAWFUL TO INTENTIONALY | 1 | M | N | N |

PURCHASE OR
RECEIVE A
CONTROLLED
SUBSTANCE ETC.
FROM AN
UNAUTHORIZED
SOURCE



FOR QUESTIONS REGARDING COURT DATA, PLEASE CONTACT THE COUNTY CLERK OF
COURTS AT (484) 250 - 7700
========================================================================
=========
NAME: STEVENS,RONNIE                     OTN: L370929-6
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2007/08/31   PA0090100   BENSALEM TWP PD
OCA: 55328
DISPO DATE: 2008/05/07
DISTRICT JUSTICE DOCKET NUMBER: 0023-2008

                     *** ARREST DATA ***
OFFENSE                                      LIMITED CLEAN
DATE          CHARGE                 COUNT  GRADE ACCESS  SLATE

App. 222
JM (DAO)_0121

```
-------        ------          -----  -----  -----   -----
2007/08/31  CC3928A UNAUTHORIZED   1     M2     N       N
            USE OF
            AUTOMOBILES AND
            OTHER VEHICLES
```

*** COURT DATA ***

```
OFFENSE                                      LIMITED CLEAN
DATE        CHARGE            COUNT   GRADE  ACCESS  SLATE
DISPOSITION
-------     ------            -----  -----  ------  -----   --------
---
2007/08/31  CC3928A UNAUTHORIZED   1     M2     N       N      FINES
AND
            USE OF                                          COSTS/
            AUTOMOBILES AND                                 COUNTY
PRISON/
            OTHER VEHICLES                                  02
MOS - 23 MOS/
                                                            FOUND
GUILTY
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: STEVENS,RONNIE                    OTN: N496401-3
PHOTO AVAILABLE: YES 2007/09/21 CPIN PHOTO NUMBER: 121001623
ARRESTED: 2007/09/21  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE: 2008/01/28
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0044215-2007

*** ARREST DATA ***

```
OFFENSE                                      LIMITED CLEAN
DATE        CHARGE            COUNT   GRADE  ACCESS  SLATE
-------     ------            -----  -----  -----   -----
2007/08/30  CS13A30 MANUFACTURE    1     F      N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE
```

```
                                *** ARREST DATA ***
OFFENSE                                               LIMITED CLEAN
DATE         CHARGE                   COUNT  GRADE ACCESS  SLATE
-------      ------                   -----  ----- -----   -----
2007/08/30   CS13A16 POSSESSION OF    1      M     N       N
             A CONTROLLED
             SUBSTANCE BY AN
             UNREGISTERED
             PERSON EXCEPT
             BY PRESCRIPTION
             IS UNLAWFUL
```



```
FOR QUESTIONS REGARDING COURT DATA, PLEASE CONTACT THE COUNTY CLERK OF
COURTS AT (484) 250 - 7700
========================================================================
=========
NAME: STEVENS,RONNIE                         OTN: N583952-5
PHOTO AVAILABLE: YES 2008/12/02 CPIN PHOTO NUMBER: 121103955
```

```
ARRESTED: 2008/12/02  PAPEP0000  PHILADELPHIA PD
OCA: 745189
DISPO DATE:
                         *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE        CHARGE               COUNT  GRADE ACCESS  SLATE
-------     ------               -----  ----- ------  -----
2008/12/02  CC5124 DEFAULT IN    1            N       N
            REQUIRED
            APPEARANCE
                         *** COURT DATA ***

                 NO COURT DISPOSITION PROVIDED
========================================================================
=========
NAME: STEVENS,RONNIE                      OTN: N758216-4
PHOTO AVAILABLE: YES 2011/08/07 CPIN PHOTO NUMBER: 182023949
ARRESTED: 2011/08/07  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2011/11/09
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0033829-2011




                         *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE        CHARGE               COUNT  GRADE ACCESS  SLATE
-------     ------               -----  ----- ------  -----
2011/08/07  CS13A30 MANUFACTURE  1      F     N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

2011/08/07  CS13A16 POSSESSION OF 1     M     N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

```
                          *** COURT DATA ***
OFFENSE                                          LIMITED  CLEAN
DATE      CHARGE                 COUNT  GRADE  ACCESS   SLATE
DISPOSITION
-------   ------                 -----  -----  ------   -----    --------
---
2011/08/07  CS13A30 MANUFACTURE    1     F      N        N       NOLLE
            ETC. OF
PROSSED/
            CONTROLLED
WITHDRAWN
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

2011/08/07  CS13A16 POSSESSION OF  1     M      N        N       FOUND
GUILTY/
            A CONTROLLED                                         COUNTY
PRISON/
            SUBSTANCE BY AN                                      30
DYS - 06 MOS/
            UNREGISTERED                                         COUNTY
            PERSON EXCEPT
PROBATION/
            BY PRESCRIPTION                                      001
YRS 06 MOS/
            IS UNLAWFUL                                          COSTS

2011/08/06  CS13A31 PROHIBITS      1     M      N        N       NOLLE
            POSSESSION
PROSSED/
            AND/OR
WITHDRAWN
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
            SMALL AMOUNT
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
NAME: STEVENS,RONNIE                       OTN: N802031-6
PHOTO AVAILABLE: YES 2012/05/03 CPIN PHOTO NUMBER: 121353443

JM (DAO)_0125

ARRESTED: 2012/05/03  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2012/09/05


DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0018019-2012

```
                            *** ARREST DATA ***
OFFENSE                                            LIMITED CLEAN
DATE      CHARGE                    COUNT   GRADE  ACCESS  SLATE
-------   ------                    -----   ----- -----    -----
2012/05/03 CS13A31 PROHIBITS          1      M      N       N
           POSSESSION
           AND/OR
           DISTRIBUTION OF
           SMALL AMOUNTS
           OF MARIHUANA
           AND DEFINES
           SMALL AMOUNT
```

```
                            *** COURT DATA ***
OFFENSE                                            LIMITED CLEAN
DATE      CHARGE                    COUNT   GRADE  ACCESS  SLATE
DISPOSITION
-------   ------                    -----   ----- ------   -----   --------
---
2012/05/03 CS13A31 PROHIBITS          1      M      N       N      FOUND
GUILTY/
           POSSESSION                                               COSTS
           AND/OR
           DISTRIBUTION OF
           SMALL AMOUNTS
           OF MARIHUANA
           AND DEFINES
           SMALL AMOUNT
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================
=========
NAME: STEVENS,RONNIE                           OTN: N811493-4
PHOTO AVAILABLE: YES 2012/06/28 CPIN PHOTO NUMBER: 121364447
ARRESTED: 2012/06/28  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2012/07/27
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0026310-2012

```
                            *** ARREST DATA ***
OFFENSE                                            LIMITED CLEAN
DATE      CHARGE                    COUNT   GRADE  ACCESS  SLATE
-------   ------                    -----   ----- -----    -----
```

JM (DAO)_0126

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...  2/28/2022

```
2012/06/28   CS13A31 PROHIBITS        1      M     N        N
             POSSESSION
             AND/OR
             DISTRIBUTION OF
             SMALL AMOUNTS
             OF MARIHUANA
             AND DEFINES
             SMALL AMOUNT
```



FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD

================================================================
========
NAME: STEVENS,RONNIE                        OTN: N840440-6
PHOTO AVAILABLE: YES 2012/12/29 CPIN PHOTO NUMBER: 121398748
ARRESTED: 2012/12/29  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2013/09/12          COMMON PLEAS DOCKET: CP-51-CR-
0001847-2013
DISTRICT JUSTICE: 01

                    *** ARREST DATA ***
OFFENSE                                   LIMITED CLEAN
DATE         CHARGE            COUNT   GRADE ACCESS  SLATE
-------      ------            -----   ----- -----   -----
2012/12/29   CS13A30 MANUFACTURE   1      F     N        N
             ETC. OF
             CONTROLLED
             SUBSTANCE BY
             PERSON NOT
             REGISTERED, OR
             A PRACTITIONER
```

```
                    NOT REGISTERED
                    CREATING, ETC.
                    A COUNTERFEIT
                    CONTROLLED
                    SUBSTANCE

2012/12/29    CS13A16 POSSESSION OF  1    M    N        N
              A CONTROLLED
              SUBSTANCE BY AN
              UNREGISTERED
              PERSON EXCEPT
              BY PRESCRIPTION
              IS UNLAWFUL
```

*** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| ------- --- | ------ | ----- | ----- | ------ | ----- | -------- |
| 2012/12/29 PROSSED/ WITHDRAWN | CS13A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | 1 | F | N | N | NOLLE |
| 2012/12/29 GUILTY/ PRISON/ MOS - 12 MOS/ | CS13A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | M | N | N | PLEAD COUNTY 06 COSTS |
| 2012/12/28 PROSSED/ WITHDRAWN | CS13A31 PROHIBITS POSSESSION AND/OR | 1 | M | N | N | NOLLE |

JM (DAO)_0128

```
                    DISTRIBUTION OF
                    SMALL AMOUNTS
                    OF MARIHUANA
                    AND DEFINES
                    SMALL AMOUNT
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: STEVENS,RONNIE                         OTN: N886297-6
PHOTO AVAILABLE: YES 2013/10/19 CPIN PHOTO NUMBER: 121455003
ARRESTED: 2013/10/19  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2014/03/27          COMMON PLEAS DOCKET: CP-51-CR-
0013555-2013
DISTRICT JUSTICE: 0151

                        *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE      CHARGE                 COUNT  GRADE ACCESS  SLATE
-------   ------                 -----  ----- -----   -----
2013/10/19  CS13A30 MANUFACTURE    1      F     N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

2013/10/19  CS13A16 POSSESSION OF  1      M     N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

2013/10/19  CS13A31 PROHIBITS      1      M     N       N
            POSSESSION
            AND/OR
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
```

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...    2/28/2022

SMALL AMOUNT

*** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| 2013/10/18 GUILTY/ | 35780-113A30 | 1 | F | N | N | PLEAD |
| | MANUFACTURE ETC. OF | | | | | COSTS/ COUNTY |
| PRISON/ | CONTROLLED SUBSTANCE BY | | | | | COUNTY |
| PROBATION/ | PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | | | | | 005 YRS |

*** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| 2013/10/18 PROSSED/ WITHDRAWN | 35780-113A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | M | N | N | NOLLE |
| 2013/10/18 PROSSED/ | 35780-113A31 PROHIBITS | 1 | M | N | N | NOLLE |

```
                POSSESSION
WITHDRAWN
                AND/OR
                DISTRIBUTION OF
                SMALL AMOUNTS
                OF MARIHUANA
                AND DEFINES
                SMALL AMOUNT
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
==========================================================================
=========
NAME: STEVENS,RONNIE                          OTN: N893023-5
PHOTO AVAILABLE: YES 2013/12/05 CPIN PHOTO NUMBER: 121463416
ARRESTED: 2013/12/05  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2014/02/12
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0046485-2013

```
                         *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
-------   ------                  -----  ----- -----   -----
2013/12/04  CS13A16 POSSESSION OF  1      M     N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

2013/12/04  CS13A31 PROHIBITS      1      M     N       N
            POSSESSION
            AND/OR
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
            SMALL AMOUNT
```

```
                       *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------   ------                  -----  ----- ------  -----   --------
---
2013/12/04  CS13A16 POSSESSION OF  1      M     N       N       COSTS/
            A CONTROLLED                                         FOUND
GUILTY/
            SUBSTANCE BY AN                                     COUNTY
            UNREGISTERED
```

JM (DAO)_0131

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...  2/28/2022

```
PROBATION/
          PERSON EXCEPT                                    09
MOS - 09 MOS
          BY PRESCRIPTION
          IS UNLAWFUL
```

```
                           *** COURT DATA ***
OFFENSE                                         LIMITED CLEAN
DATE      CHARGE                 COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------   ------                 -----  ----- ------  -----   --------
---
2013/12/04  CS13A31 PROHIBITS      1      M     N       N     NOLLE
            POSSESSION
PROSSED/
            AND/OR
WITHDRAWN
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
            SMALL AMOUNT
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: STEVENS,RONNIE                         OTN: N917650-6
PHOTO AVAILABLE: YES 2014/06/05 CPIN PHOTO NUMBER: 121492218
ARRESTED: 2014/06/05  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2014/12/01            COMMON PLEAS DOCKET: CP-51-CR-
0010211-2014
DISTRICT JUSTICE: 0151

```
                           *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE      CHARGE                 COUNT  GRADE ACCESS  SLATE
-------   ------                 -----  ----- -----   -----
2014/06/05  CS13A30 MANUFACTURE    1      F     N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
```

```
              CONTROLLED
              SUBSTANCE

2014/06/05    CS13A16 POSSESSION OF  1     M     N        N
              A CONTROLLED
              SUBSTANCE BY AN
              UNREGISTERED
              PERSON EXCEPT
              BY PRESCRIPTION
              IS UNLAWFUL

2014/06/05    CS13A31 PROHIBITS      1     M     N        N
              POSSESSION
              AND/OR
              DISTRIBUTION OF
              SMALL AMOUNTS
              OF MARIHUANA
              AND DEFINES
              SMALL AMOUNT
```

```
                              *** COURT DATA ***
OFFENSE                                         LIMITED CLEAN
DATE          CHARGE               COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------       ------               -----   ----- ------  -----   --------
---
2014/06/04    35780-113A30         1       F     N       N       PLEAD
GUILTY/
              MANUFACTURE                                         COSTS/
              ETC. OF                                             COUNTY
              CONTROLLED
PROBATION/
              SUBSTANCE BY                                        005
YRS/
              PERSON NOT
INTERMEDIATE
              REGISTERED, OR
PUNISHMENT
              A PRACTITIONER
```

JM (DAO)_0133

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...  2/28/2022

```
PROGRAM/
               NOT REGISTERED                                    12 MOS
               CREATING, ETC.
               A COUNTERFEIT
               CONTROLLED
               SUBSTANCE

2014/06/04     35780-113A16        1      M      N      N        NOLLE
               POSSESSION OF A
PROSSED/
               CONTROLLED
WITHDRAWN
               SUBSTANCE BY AN
               UNREGISTERED
               PERSON EXCEPT
               BY PRESCRIPTION
               IS UNLAWFUL

2014/06/04     35780-113A31        1      M      N      N        NOLLE
               PROHIBITS
PROSSED/
               POSSESSION
WITHDRAWN
               AND/OR
               DISTRIBUTION OF
               SMALL AMOUNTS
               OF MARIHUANA
               AND DEFINES
               SMALL AMOUNT
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================
==========
NAME: STEVENS, RONNIE                     OTN: N978870-4
PHOTO AVAILABLE: YES 2015/09/13 CPIN PHOTO NUMBER: 121561044
ARRESTED: 2015/09/13  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2015/11/04
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0028748-2015

                   *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
| --- | --- | --- | --- | --- | --- |
| 2015/09/13 | CC903 CRIMINAL CONSPIRACY POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED | 1 | | N | N |

```
PERSON EXCEPT
BY PRESCRIPTION
IS UNLAWFUL
(CS13A16)
```

```
                              *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE ACCESS  SLATE
-------     ------                 -----  ----- -----   -----
2015/09/13  CS13A30 MANUFACTURE      1            N      N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE
```

```
                              *** COURT DATA ***
OFFENSE                                         LIMITED CLEAN
DATE        CHARGE                 COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------                 -----  ----- ------  -----   --------
---
2015/09/12  35780-113A30             1     F     N       N       COUNTY
            MANUFACTURE
PROBATION/
            ETC. OF                                              003
YRS/
            CONTROLLED                                           COSTS/
            SUBSTANCE BY                                         PLEAD
GUILTY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE
```

JM (DAO)_0135

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

```
2015/09/12  18903  CRIMINAL         1      M     N     N      NOLLE
            CONSPIRACY
PROSSED/
            CRIMINAL
WITHDRAWN
            CONSPIRACY TO
            COMMIT A CRIME
            (18903)

2015/09/12  35780-113A31            1      M     N     N      NOLLE
            PROHIBITS
PROSSED/
            POSSESSION
WITHDRAWN
            AND/OR
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
            SMALL AMOUNT

2015/09/12  35780-113A16            1      F     N     N
DISPOSITION
            POSSESSION OF A
UNREPORTED
            CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================
=========
NAME: STEVENS,RONNIE                        OTN: N990536-1
PHOTO AVAILABLE: YES 2015/12/17 CPIN PHOTO NUMBER: 121573697


ARRESTED: 2015/12/17  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2016/02/24
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0039042-2015

                       *** ARREST DATA ***
OFFENSE                                        LIMITED  CLEAN
DATE        CHARGE                COUNT  GRADE  ACCESS   SLATE
-------     ------                -----  -----  -----    -----
2015/12/17  CS13A16 POSSESSION OF  1             N        N
            A CONTROLLED
```

```
                                    SUBSTANCE BY AN
                                    UNREGISTERED
                                    PERSON EXCEPT
                                    BY PRESCRIPTION
                                    IS UNLAWFUL

                            *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE                 COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------     ------                 -----   ----- ------  -----   --------
---
2015/12/16  35780-113A16             1       M     N       N      COUNTY
            POSSESSION OF A
PROBATION/
            CONTROLLED                                            12 MOS/
            SUBSTANCE BY AN                                       COSTS/
            UNREGISTERED                                          PLEAD
GUILTY
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

2015/12/16  35780-113A31             1       M     N       N      NOLLE
            PROHIBITS
PROSSED/
            POSSESSION
WITHDRAWN
            AND/OR
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
            SMALL AMOUNT
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=================================================================================
=========
NAME: STEVENS,RONNIE                          OTN: N993836-4
PHOTO AVAILABLE: YES 2016/01/16 CPIN PHOTO NUMBER: 121577023
ARRESTED: 2016/01/16  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE:
                            *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE        CHARGE                 COUNT   GRADE ACCESS  SLATE
-------     ------                 -----   ----- -----   -----
2016/01/16  CC5124 DEFAULT IN        1             N       N
            REQUIRED
            APPEARANCE

App. 238
JM (DAO)_0137
```

```
2016/01/16  CS13A16 POSSESSION OF  1           N        N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

                          *** ARREST DATA ***

```
OFFENSE                                       LIMITED  CLEAN
DATE        CHARGE               COUNT  GRADE  ACCESS   SLATE
-------     ------               -----  ----- ------   -----
2016/01/16  CS13A30 MANUFACTURE   1            N        N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

2016/01/16  CS13A31 PROHIBITS     1            N        N
            POSSESSION
            AND/OR
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
            SMALL AMOUNT
```

                          *** COURT DATA ***

                    NO COURT DISPOSITION PROVIDED
=================================================================================
=========
NAME: STEVENS,RONNIE                          OTN: M792195-5
PHOTO AVAILABLE: YES 2016/03/28 CPIN PHOTO NUMBER: 121584675
ARRESTED: 2016/03/28  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2016/08/24          COMMON PLEAS DOCKET: CP-51-CR-
0005758-2016
DISTRICT JUSTICE: 0151

App. 239
JM (DAO)_0138

```
                          *** ARREST DATA ***
OFFENSE                                          LIMITED  CLEAN
DATE       CHARGE             COUNT  GRADE  ACCESS  SLATE
-------    ------             -----  -----  -----   -----
2016/03/28 CS13A16 POSSESSION OF  1              N       N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL

2016/03/28 CS13A30 MANUFACTURE    1              N       N
           ETC. OF
           CONTROLLED
           SUBSTANCE BY
           PERSON NOT
           REGISTERED, OR
           A PRACTITIONER
           NOT REGISTERED
           CREATING, ETC.
           A COUNTERFEIT
           CONTROLLED
           SUBSTANCE
```

```
                          *** COURT DATA ***
OFFENSE                                          LIMITED  CLEAN
DATE       CHARGE             COUNT  GRADE  ACCESS  SLATE
DISPOSITION
-------    ------             -----  -----  ------  -----   --------
---
2016/03/28 35780-113A30        1      F      N       N       PLEAD
GUILTY/
           MANUFACTURE                                        COSTS/
           ETC. OF                                            COUNTY
PRISON/
           CONTROLLED                                         11 MOS
15 DYS -
           SUBSTANCE BY                                       001
YRS 11 MOS/
           PERSON NOT                                         COUNTY
           REGISTERED, OR
PROBATION/
           A PRACTITIONER                                     005 YRS
```

```
                NOT REGISTERED
                CREATING, ETC.
                A COUNTERFEIT
                CONTROLLED
                SUBSTANCE

2016/03/28    35780-113A16        1      M      N      N      NOLLE
              POSSESSION OF A
PROSSED/
              CONTROLLED
WITHDRAWN
              SUBSTANCE BY AN
              UNREGISTERED
              PERSON EXCEPT
              BY PRESCRIPTION
              IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
NAME: STEVENS,RONNIE                        OTN: U072794-1
PHOTO AVAILABLE: YES 2017/03/31 CPIN PHOTO NUMBER: 121604501
ARRESTED: 2017/03/31  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2017/08/29          COMMON PLEAS DOCKET: CP-51-CR-
0003363-2017
DISTRICT JUSTICE: 0151

                       *** ARREST DATA ***
OFFENSE                                   LIMITED CLEAN
DATE        CHARGE             COUNT  GRADE ACCESS  SLATE
-------     ------             -----  ----- ------  -----
2017/03/31  35780-113A16         1           N      N
            POSSESSION OF A
            CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

2017/03/31  35780-113A30         1           N      N
            MANUFACTURE
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
```

```
                      A COUNTERFEIT
                      CONTROLLED
                      SUBSTANCE
```

```
                          *** COURT DATA ***
OFFENSE                                     LIMITED  CLEAN
DATE        CHARGE             COUNT  GRADE  ACCESS   SLATE
DISPOSITION
-------     ------            -----  -----  ------   -----   --------
---
2017/03/30  35780-113A30        1      F      N        N     PLEAD
GUILTY/
            MANUFACTURE                                       COSTS/
            ETC. OF                                           COUNTY
PRISON/
            CONTROLLED                                        11 MOS
15 DYS -
            SUBSTANCE BY                                      001
YRS 11 MOS/
            PERSON NOT                                        COUNTY
            REGISTERED, OR
PROBATION/
            A PRACTITIONER                                    003 YRS
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

2017/03/30  35780-113A16        1      M      N        N     NOLLE
            POSSESSION OF A
PROSSED/
            CONTROLLED
WITHDRAWN
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================
=========
NAME: STEVENS,RONNIE                         OTN: U073930-3
PHOTO AVAILABLE: YES 2017/04/08 CPIN PHOTO NUMBER: 121605395
ARRESTED: 2017/04/08  PAPEP0000  PHILADELPHIA PD

App. 242
JM (DAO)_0141

OCA: C0745189
DISPO DATE: 2017/08/29
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0009781-2017

```
                              *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE            COUNT  GRADE  ACCESS  SLATE
-------     ------            -----  -----  -----   -----
2017/04/08  35780-113A16        1            N       N
            POSSESSION OF A
            CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

2017/04/08  35780-113A30        1            N       N
            MANUFACTURE
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE
```

```
                              *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE            COUNT  GRADE  ACCESS  SLATE
-------     ------            -----  -----  -----   -----
2017/04/08  35780-113A31        1            N       N
            PROHIBITS
            POSSESSION
            AND/OR
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
            SMALL AMOUNT
```

```
                              *** COURT DATA ***
```

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| ------- --- | ------ | ----- | ----- | ------ | ----- | -------- |
| 2017/04/08 GUILTY/ | 35780-113A16 | 1 | M | N | N | PLEAD |
| | POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | | | | | COSTS |
| 2017/04/08 PROSSED/ WITHDRAWN | 35780-113A31 PROHIBITS POSSESSION AND/OR DISTRIBUTION OF SMALL AMOUNTS OF MARIHUANA AND DEFINES SMALL AMOUNT | 1 | M | N | N | NOLLE |

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================

NAME: STEVENS,RONNIE                        OTN: X251572-6
PHOTO AVAILABLE: YES 2019/04/12 CPIN PHOTO NUMBER: 410356985
ARRESTED: 2019/04/12  PA0090100  BENSALEM TWP PD
OCA: 19-11706
DISPO DATE: 2020/01/31          COMMON PLEAS DOCKET: CP-09-CR-0004954-2019
DISTRICT JUSTICE: 07112

### *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| ------- | ------ | ----- | ----- | ----- | ----- |
| 2019/04/12 | 35780-113A31 PROHIBITS POSSESSION AND/OR DISTRIBUTION OF SMALL AMOUNTS OF MARIHUANA AND DEFINES SMALL AMOUNT | 1 | | N | N |

```
2019/04/12  35780-113A32 USE OF    1           N        N
            DRUG
            PARAPHERNALIA
            FOR PURPOSES IN
            VIOLATION OF
            THIS ACT
```

```
                        *** ARREST DATA ***
OFFENSE                                       LIMITED  CLEAN
DATE        CHARGE              COUNT  GRADE   ACCESS   SLATE
-------     ------             -----  -----   ------   -----
2019/04/12  751543A DRIVING WHILE  1           N        N
            DRIVING
            PRIVILEGE IS
            SUSPENDED OR
            REVOKED

2019/04/12  751301A DR UNREGIST   1     S      N        N
            VEH
```

```
                        *** COURT DATA ***
OFFENSE                                       LIMITED  CLEAN
DATE        CHARGE              COUNT  GRADE   ACCESS   SLATE
DISPOSITION
-------     ------             -----  -----   ------   -----  --------
---
2019/04/12  35780-113A31         1     M       N        N
DISPOSITION
            PROHIBITS
UNREPORTED
            POSSESSION
            AND/OR
            DISTRIBUTION OF
            SMALL AMOUNTS
            OF MARIHUANA
            AND DEFINES
            SMALL AMOUNT

2019/04/12  35780-113A32 USE OF  1     M       N        N        COUNTY
            DRUG
PROBATION/
            PARAPHERNALIA                                       12
MOS - 12 MOS/
            FOR PURPOSES IN                                     PLEAD
GUILTY
            VIOLATION OF
            THIS ACT
```

2019/04/12   35780-113A31I         1      M      N      N      NOLLE
             MARIJUANA-SMALL

PROSSED/

             AMT PERSONAL USE

WITHDRAWN

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
NAME: STEVENS,RONNIE                       OTN: U187470-3
PHOTO AVAILABLE: YES 2019/11/16 CPIN PHOTO NUMBER: 221230817
ARRESTED: 2019/11/16  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2020/02/11          COMMON PLEAS DOCKET: CP-51-CR-
0000122-2020
DISTRICT JUSTICE: 0151

                      *** ARREST DATA ***
OFFENSE                                    LIMITED CLEAN
DATE      CHARGE               COUNT  GRADE ACCESS  SLATE
-------   ------               -----  ----- ------  -----
2019/11/16  35780-113A16          1           N      N
            POSSESSION OF A
            CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL




                      *** ARREST DATA ***
OFFENSE                                    LIMITED CLEAN
DATE      CHARGE               COUNT  GRADE ACCESS  SLATE
-------   ------               -----  ----- ------  -----
2019/11/16  35780-113A30          1           N      N
            MANUFACTURE
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.

```
                      A COUNTERFEIT
                      CONTROLLED
                      SUBSTANCE

                              *** COURT DATA ***
OFFENSE                                            LIMITED CLEAN
DATE         CHARGE             COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------      ------             -----  ----- ------  -----  --------
---
2019/11/16   35780-113A30         1      F     N       N      PLEAD
GUILTY/
             MANUFACTURE                                      COSTS/
             ETC. OF                                          COUNTY
PRISON/
             CONTROLLED                                       03
MOS - 12 MOS/
             SUBSTANCE BY                                     COUNTY
             PERSON NOT
PROBATION/
             REGISTERED, OR                                   003 YRS
             A PRACTITIONER
             NOT REGISTERED
             CREATING, ETC.
             A COUNTERFEIT
             CONTROLLED
             SUBSTANCE

2019/11/16   35780-113A16         1      M     N       N      NOLLE
             POSSESSION OF A
PROSSED/
             CONTROLLED
WITHDRAWN
             SUBSTANCE BY AN
             UNREGISTERED
             PERSON EXCEPT
             BY PRESCRIPTION
             IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=================================================================
=========
NAME: STEVENS,RONNIE                       OTN: U188827-2
PHOTO AVAILABLE: YES 2019/11/30 CPIN PHOTO NUMBER: 221235793
ARRESTED: 2019/11/29  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE:
                              *** ARREST DATA ***
OFFENSE                                            LIMITED CLEAN
DATE         CHARGE             COUNT  GRADE ACCESS  SLATE
-------      ------             -----  ----- -----   -----

JM (DAO)_0146
https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

```
2019/11/29  185121A ESCAPE          1          N        N
                         *** COURT DATA ***
```

                         NO COURT DISPOSITION PROVIDED
=======================================================================
=========
NAME: STEVENS,RONNIE                        OTN: U203678-6
PHOTO AVAILABLE: YES 2020/05/20 CPIN PHOTO NUMBER: 182870607
ARRESTED: 2020/05/19  PAPEP0000  PHILADELPHIA PD
OCA: C0745189
DISPO DATE: 2021/08/30          COMMON PLEAS DOCKET: CP-51-CR-
0002270-2020
DISTRICT JUSTICE: 0151


                    *** ARREST DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 2020/05/19 | 35780-113A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | | N | N |
| 2020/05/19 | 35780-113A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | 1 | | N | N |

                    *** COURT DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | DISPOSITION |
|---|---|---|---|---|---|---|
| 2020/05/19 | 35780-113A30 | 1 | F | N | N | PLEAD GUILTY/ |

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

|  | MANUFACTURE ETC. OF |  |  |  |  | COSTS/ COUNTY |
| PRISON/ | | | | | | |
|  | CONTROLLED |  |  |  |  | 11 MOS |
| 15 DYS - | | | | | | |
|  | SUBSTANCE BY |  |  |  |  | 001 |
| YRS 11 MOS/ | | | | | | |
|  | PERSON NOT REGISTERED, OR |  |  |  |  | COUNTY |
| PROBATION/ | | | | | | |
|  | A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE |  |  |  |  | 002 YRS |
| 2020/05/19 PROSSED/ WITHDRAWN | 35780-113A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | M | N | N | NOLLE |
| 2020/05/19 PROSSED/ WITHDRAWN | 35780-113A31 PROHIBITS POSSESSION AND/OR DISTRIBUTION OF SMALL AMOUNTS OF MARIHUANA AND DEFINES SMALL AMOUNT | 1 | M | N | N | NOLLE |

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
                        ADDITIONAL IDENTIFIERS

AKAS:
DOBS:
SOCS:
MNUS:



  *** DNA SAMPLE AND PROFILE ON FILE PURSUANT TO THE PA DNA ACT (44
PA.C.S., CHAPTER 23). ***
======================================================================
=========
            F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE
NUMERIC=DEGREE
               ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE
FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT
PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE
AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN
CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND
PURDON'S
FORMATTED CHARGES.

  ***************************** END OF RAP SHEET
*****************************

```
CR.NJIII0000
20220228 14:02:42 13349989
20220228 14:02:43 010395 PA051471A
*009472QR
TXT
```

HDR/2L010051E009472QR
ATN/MORALES
THIS RECORD IS BASED ON THE SID NUMBER IN YOUR REQUEST-SID/NJ520368D

                NEW JERSEY CRIMINAL HISTORY DETAILED RECORD

USE OF THIS RECORD IS GOVERNED BY FEDERAL AND STATE REGULATIONS.
UNLESS FINGERPRINTS ACCOMPANIED YOUR INQUIRY, THE STATE BUREAU OF
IDENTIFICATION CANNOT GUARANTEE THIS RECORD RELATES TO THE PERSON WHO
IS
THE SUBJECT OF YOUR REQUEST. USE OF THIS RECORD SHALL BE LIMITED
SOLELY TO
THE AUTHORIZED PURPOSE FOR WHICH IT WAS GIVEN AND IT SHALL NOT BE
DISSEMINATED TO ANY UNAUTHORIZED PERSONS. TO ELIMINATE A POSSIBLE
DISSEMINATION VIOLATION, AND TO COMPLY WITH FUTURE EXPUNGEMENT ORDERS,
THIS RECORD SHALL BE DESTROYED *IMMEDIATELY* AFTER IT HAS SERVED ITS
INTENDED AND AUTHORIZED PURPOSES. ANY PERSON VIOLATING FEDERAL OR STATE
REGULATIONS GOVERNING ACCESS TO CRIMINAL HISTORY RECORD INFORMATION
MAY BE SUBJECT TO CRIMINAL AND/OR CIVIL PENALTIES. THIS RECORD IS
CERTIFIED AS A TRUE COPY OF THE CRIMINAL HISTORY RECORD INFORMATION
ON FILE FOR THE ASSIGNED STATE IDENTIFICATION NUMBER.

STATE ID NO. ▮▮▮▮▮▮▮       FBI NO. 145236CB4   DATE REQUESTED.
02/28/2022
NAME: STEVENS, RONNIE A.

SEX  RACE  BIRTH DATE  HEIGHT  WEIGHT  EYES  HAIR  BIRTH PLACE
M    B     12/16/1977  508     198     BRO   BLK   PA

RECEIVING AGENCY: PA051471A  U.S. CITIZEN:
YES

FPC: \\A////         AFIS NO:                    III: MULTI STATE
                                                 DNA SAMPLE STATUS:
                                                 COLLECTION NOT
REQUIRED

*************************** ARREST 001
********************************
ARRESTED 12/15/2005   AGENCY CASE NO:
C36927
    AGENCY: NJ0041200   CHERRY HILL TOWNSHIP PD          CAMDEN
NAME USED:   STEVENS, RONNIE A.            DOB USED:  12/16/1977
OFFENSE DATE: 12/15/2005
    001 CNT  2C:20-11          SHOPLIFTING

SUMMONS/WARRANT                           AOC
NUMBER:
NO: S  20050016600412                     DISPOSITION DATE: 02/17/2006
AGENCY: NJ004271J                         MUNICIPAL COURT CHERRY HILL

DISPOSITION: CALL COURT/BNCH
WARRANT
001  CNT: 2C:20-11B(1)     DEG:           SHOPLIFTING-TAKE MERCH W/O
PAY

**************************************************************************
*
DEPARTMENT OF CORRECTIONS DATA NOT FOUND FOR THIS SID NUMBER
**************************************************************************
*


        CRIMINAL HISTORY DIVERSION PROGRAM AND INDICTABLE CONVICTION
SUMMARY

              PRE-TRIAL INTERVENTION: 000
                 CONDITIONAL DISCHARGE:  000
                 INDICTABLE CONVICTIONS: 000
                 VIOLATION OF PROBATION: 000


COURT DISPOSITION INFORMATION CONTAINED IN THIS RECORD IS
REPORTED
ELECTRONICALLY FROM THE SENTENCING COURT. QUESTIONS CONCERNING
DISPOSITION
INFORMATION SHOULD BE DIRECTED TO THE MUNICIPAL OR SUPERIOR COURT
LISTED ON
THE RECORD. INFORMATION REGARDING CORRECTIONS TO THIS RECORD MAY BE
DIRECTED
TO THE COURT OF
SENTENCING.


                          END OF CCH RECORD

END OF RECORD



# JNET

| | |
|---|---|
| **EVENT#:** | 180231721 |
| **SID#:** | 22576780 |
| **NAME:** | LAMONT |
| | THOMPSON |
| **ARREST DATE:** | Jun 8 1995 8:46AM |
| **AGE AT ARREST:** | 19 |
| **HEIGHT:** | 600 |
| **WEIGHT:** | 165 |
| **HAIR COLOR:** | BLACK |
| **EYE COLOR:** | BROWN |
| **CPIN DATABASE** | |



**FOR INVESTIGATION ONLY**
**NOT FOR IDENTIFICATION**
**DESTROY AFTER 90 DAYS**

Printed JNET:  2/28/122 11:16

App. 253
JM (DAO)_0152

DAO034-00010397 CHR 20220228 14:03:33 14:03:33 0268000F31

```
                        PENNSYLVANIA STATE POLICE
                            CENTRAL REPOSITORY
                           1800 ELMERTON AVENUE
                       HARRISBURG, PENNSYLVANIA 17110
                              (717) 787-9092
```

PA051471A                                                      ATN :
MORALES
RSN : ADA AITTIE                                              OPR : SM
THREE SO PENN SQUARE
PHILADELPHIA, PA, 19107
==================================================================================
=========

                    *** DECEASED 2019/11/19 ***
==================================================================================
=========

     USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 225-76-78-0
***

                    REGULATED BY ACT 47, AS AMENDED.
==================================================================================
=========

                              IDENTIFICATION

NAME: MCDOWELL,ANDREW
SID: 225-76-78-0    FBI:                    DOB: 1975/12/30

~~SEX: MALE~~         RAC: BLACK        HAI: BALD              EYE:
BROWN
HGT: 6'00"          WGT: 200
POB: PENNSYLVANIA   US CITIZEN:
COUNTRY OF CITIZENSHIP:

SCARS, MARKS, TATTOOS:
SCARS (SC) - SC HEAD
SCARS (SC) - SC L LEG
TATTOOS (TAT) - TAT LF ARM
TATTOOS (TAT) - TAT RF ARM

LAST KNOWN ADDRESS: 2015/11/15 - 2

==================================================================================
=========

                              CRIMINAL HISTORY
NAME: MCDOWELL,ANDREW                         OTN: M625524-4
PHOTO AVAILABLE: NO
ARRESTED: 1994/09/16  PAPEP0000  PHILADELPHIA PD
OCA: C736673
DISPO DATE: 1995/01/31                        COMMON PLEAS DOCKET:
15521-1994
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0915521-1994

JM (DAO)_0153
https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022
```

```
                          *** ARREST DATA ***
OFFENSE                                           LIMITED CLEAN
DATE        CHARGE                  COUNT   GRADE ACCESS SLATE
-------     ------                  -----   ----- ------ -----
            CS13A30 MANUFACTURE       1             N     N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

            CS13A16 POSSESSION OF 1            N     N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL


                          *** COURT DATA ***
OFFENSE                                           LIMITED CLEAN
DATE        CHARGE                  COUNT   GRADE ACCESS SLATE
DISPOSITION
-------     ------                  -----   ----- ------ ----- --------
---
1994/09/16  35780-113A30             1             N     Y
QUASHED/
            MANUFACTURE
DISMISSED/
            ETC. OF
DEMURRER
            CONTROLLED
SUSTAINED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
```

```
          SUBSTANCE

1994/09/16  35780-113A16              1           N       Y
QUASHED/
          POSSESSION OF A
DISMISSED/
          CONTROLLED
DEMURRER
          SUBSTANCE BY AN
SUSTAINED
          UNREGISTERED
          PERSON EXCEPT
          BY PRESCRIPTION
          IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
==============================================================================
=========
NAME: THOMPSON,ANDRE                         OTN: M631298-3
PHOTO AVAILABLE: NO
ARRESTED: 1994/11/02  PAPEP0000  PHILADELPHIA PD
OCA: C736673
DISPO DATE: 1997/10/20

                          *** ARREST DATA ***
OFFENSE                                       LIMITED  CLEAN
DATE      CHARGE                 COUNT  GRADE  ACCESS  SLATE
-------   ------                 -----  ----- -----   -----
1994/11/02  CS13A30 MANUFACTURE    1           N       N
          ETC. OF
          CONTROLLED
          SUBSTANCE BY
          PERSON NOT
          REGISTERED, OR
          A PRACTITIONER
          NOT REGISTERED
          CREATING, ETC.
          A COUNTERFEIT
          CONTROLLED
          SUBSTANCE

          CS13A16 POSSESSION OF  1           N       N
          A CONTROLLED
          SUBSTANCE BY AN
          UNREGISTERED
          PERSON EXCEPT
          BY PRESCRIPTION
          IS UNLAWFUL
```

```
                                 *** COURT DATA ***
OFFENSE                                             LIMITED CLEAN
DATE        CHARGE                      COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------     ------                      -----   ----- ------  -----   --------
---
1994/11/02  CS13A30 MANUFACTURE      1             N       N      PLEAD
GUILTY/
            ETC. OF
REGIONAL
            CONTROLLED
CORRECTIONAL
            SUBSTANCE BY
FACILITY/
            PERSON NOT                                            002
YRS - 003
            REGISTERED, OR                                        YRS/
            A PRACTITIONER                                        COSTS
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

            CS13A16 POSSESSION OF  1             N       N      NOLLE
            A CONTROLLED
PROSSED/
            SUBSTANCE BY AN
WITHDRAWN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: THOMPSON,ANDREW                    OTN: M631593-4
PHOTO AVAILABLE: NO
ARRESTED: 1994/11/04  PAPEP0000  PHILADELPHIA PD
OCA: C736673
DISPO DATE: 1994/12/09                   COMMON PLEAS DOCKET:
1045311-1994
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-1045311-1994
```

JM (DAO)_0156

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...    2/28/2022

```
                          *** ARREST DATA ***
OFFENSE                                      LIMITED  CLEAN
DATE            CHARGE           COUNT  GRADE ACCESS   SLATE
-------         ------           -----  ----- -----    -----
                CC3701 ROBBERY     1            N       N

                CC3921 THEFT BY    1            N       N
                UNLAWFUL TAKING
                OR DISPOSITION

                CC3925 RECEIVING   1            N       N
                STOLEN PROPERTY
```

                          *** COURT DATA ***



FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================

JM (DAO)_0157

```
=========
NAME: THOMSON,ANDRE                            OTN: M634641-0
PHOTO AVAILABLE: NO
ARRESTED: 1994/11/30  PAPEP0000  PHILADELPHIA PD
OCA: C736673
DISPO DATE: 1997/10/20
```

```
                        *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE      CHARGE                COUNT  GRADE  ACCESS  SLATE
-------   ------                -----  -----  ------  -----
1994/11/30  CS13A30 MANUFACTURE   1            N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

            CS13A16 POSSESSION OF 1            N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

```
                        *** COURT DATA ***
OFFENSE                                         LIMITED CLEAN
DATE      CHARGE                COUNT  GRADE  ACCESS  SLATE
DISPOSITION
-------   ------                -----  -----  ------  -----  --------
---
1994/11/30  CS13A30 MANUFACTURE   1            N       N      PLEAD
GUILTY/
            ETC. OF
REGIONAL
            CONTROLLED
CORRECTIONAL
            SUBSTANCE BY
FACILITY/
            PERSON NOT                                        002
YRS - 003
            REGISTERED, OR                                    YRS/
            A PRACTITIONER                                    COSTS
            NOT REGISTERED
```

```
                    CREATING, ETC.
                    A COUNTERFEIT
                    CONTROLLED
                    SUBSTANCE

                    CS13A16 POSSESSION OF  1           N          N          NOLLE
                    A CONTROLLED
PROSSED/
                    SUBSTANCE BY AN
WITHDRAWN
                    UNREGISTERED
                    PERSON EXCEPT
                    BY PRESCRIPTION
                    IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
==================================================================
=========
NAME: JEFFERSON,LAWRENCE                OTN: M640348-2
PHOTO AVAILABLE: NO
ARRESTED: 1995/01/17  PAPEP0000  PHILADELPHIA PD
OCA: C736673
DISPO DATE: 1995/07/24                 COMMON PLEAS DOCKET:
119981-1995



                        *** ARREST DATA ***
OFFENSE                                     LIMITED CLEAN
DATE        CHARGE              COUNT  GRADE ACCESS  SLATE
-------     ------             -----  ----- -----   -----
            CS13A16 POSSESSION OF  1          N      N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

                        *** COURT DATA ***
OFFENSE                                     LIMITED CLEAN
DATE        CHARGE              COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------             -----  ----- ------   -----   --------
---
            CS13A16 POSSESSION OF  1          N      N       PLEAD
GUILTY/
            A CONTROLLED                                     COUNTY
PRISON
            SUBSTANCE BY AN
            UNREGISTERED
```

```
                    PERSON EXCEPT
                    BY PRESCRIPTION
                    IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=============================================================================
=========
NAME: THOMPSON,ANDRE                         OTN: M649557-6
PHOTO AVAILABLE: NO
ARRESTED: 1995/04/03   PAPEP0000   PHILADELPHIA PD
OCA: C736673
DISPO DATE: 1997/10/20
```

```
                         *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE       CHARGE                   COUNT  GRADE ACCESS  SLATE
-------    ------                   -----  ----- -----   -----
1995/04/02 CS13A30 MANUFACTURE      1            N       N
           ETC. OF
           CONTROLLED
           SUBSTANCE BY
           PERSON NOT
           REGISTERED, OR
           A PRACTITIONER
           NOT REGISTERED
           CREATING, ETC.
           A COUNTERFEIT
           CONTROLLED
           SUBSTANCE

           CS13A16 POSSESSION OF  1            N       N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL
```

```
                        *** COURT DATA ***
OFFENSE                                  LIMITED CLEAN
```

```
DATE        CHARGE                  COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------     ------                  -----  ----- ------  -----   --------
---
1995/04/02  CS13A30 MANUFACTURE     1             N      N       PLEAD
GUILTY/
            ETC. OF

REGIONAL
            CONTROLLED
CORRECTIONAL
            SUBSTANCE BY
FACILITY/
            PERSON NOT                                           002
YRS - 003
            REGISTERED, OR                                       YRS/
            A PRACTITIONER                                       COSTS
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

            CS13A16 POSSESSION OF   1             N      N       NOLLE
            A CONTROLLED
PROSSED/
            SUBSTANCE BY AN
WITHDRAWN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: THOMPSON, LAMONT                     OTN: M740255-5
PHOTO AVAILABLE: NO
ARRESTED: 1997/03/11   PAPEP0000   PHILADELPHIA PD
OCA: C736673
DISPO DATE: 1998/12/22

                          *** ARREST DATA ***

```
OFFENSE                                    LIMITED CLEAN
DATE        CHARGE                  COUNT  GRADE ACCESS  SLATE
-------     ------                  -----  ----- -----   -----
1997/03/11  CS13A30 MANUFACTURE     1             N      N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
```

JM (DAO)_0161

```
                   A PRACTITIONER
                   NOT REGISTERED
                   CREATING, ETC.
                   A COUNTERFEIT
                   CONTROLLED
                   SUBSTANCE

1997/03/11  CS13A16 POSSESSION OF  1              N        N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
```

```
                         *** COURT DATA ***
OFFENSE                                          LIMITED CLEAN
DATE        CHARGE              COUNT   GRADE  ACCESS  SLATE
DISPOSITION
-------     ------             -----   -----  ------  -----   --------
---
1997/03/11  CS13A30 MANUFACTURE  1              N        N      PLEAD
GUILTY/
            ETC. OF
REGIONAL
            CONTROLLED
CORRECTIONAL
            SUBSTANCE BY
FACILITY/
            PERSON NOT                                          002
YRS - 004
            REGISTERED, OR                                      YRS/
            A PRACTITIONER                                      COSTS
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

1997/03/11  CS13A16 POSSESSION OF  1     M      N        Y      NOLLE
            A CONTROLLED
```

PROSSED/
          SUBSTANCE BY AN
WITHDRAWN
          UNREGISTERED
          PERSON EXCEPT
          BY PRESCRIPTION
          IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=============================================================================
=========
NAME: THOMPSON,ANDRE                          OTN: N089561-3
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2001/07/26  PAPEP0000  PHILADELPHIA PD
OCA: C0736673
DISPO DATE: 2002/12/04            COMMON PLEAS DOCKET: CP-51-CR-
0313281-2002
DISTRICT JUSTICE: 0151

                        *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                COUNT  GRADE ACCESS  SLATE
-------    ------                -----  ----- -----   -----
2001/07/24 CS13A16 POSSESSION OF 1             N      N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL

2001/07/24 CS13A30 MANUFACTURE   1             N      N
           ETC. OF
           CONTROLLED
           SUBSTANCE BY
           PERSON NOT
           REGISTERED, OR
           A PRACTITIONER
           NOT REGISTERED
           CREATING, ETC.
           A COUNTERFEIT
           CONTROLLED
           SUBSTANCE

2001/07/24 CC903 CRIMINAL        1             N      N
           CONSPIRACY TO
           COMMIT A CRIME

JM (DAO)_0163

```
                             *** COURT DATA ***
OFFENSE                                            LIMITED CLEAN
DATE         CHARGE                COUNT   GRADE  ACCESS  SLATE
DISPOSITION
-------      ------                -----   -----  ------  -----   --------
---
2001/07/24   35780-113A30          1              N       N       PLEAD
GUILTY/
             MANUFACTURE                                          COSTS/
             ETC. OF                                              COUNTY
PRISON/
             CONTROLLED                                           001
YRS 06 MOS -
             SUBSTANCE BY                                         004
YRS/
             PERSON NOT                                           COUNTY
             REGISTERED, OR
PROBATION/
             A PRACTITIONER                                       001
YRS - 001
             NOT REGISTERED                                       YRS
             CREATING, ETC.
             A COUNTERFEIT
             CONTROLLED
             SUBSTANCE

2001/07/24   35780-113A16          1              N       Y       NOLLE
             POSSESSION OF A
PROSSED/
             CONTROLLED
WITHDRAWN
             SUBSTANCE BY AN
             UNREGISTERED
             PERSON EXCEPT
             BY PRESCRIPTION
             IS UNLAWFUL

2001/07/24   18903  CRIMINAL       1              N       Y       NOLLE
             CONSPIRACY
PROSSED/
             CRIMINAL
WITHDRAWN
             CONSPIRACY TO
             COMMIT A CRIME
             (18903)
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========

JM (DAO)_0164
https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

NAME: MCDOWELL, ANDREW                    OTN: N157914-1    PRIVATE
PROSECUTION
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2002/07/17   PAPEP0000   PHILADELPHIA PD
OCA: C0736673
DISPO DATE: 2002/12/04

```
                          *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE       CHARGE                  COUNT  GRADE ACCESS  SLATE
-------    ------                  -----  ----- ------  -----
2002/07/17 CS13A16 POSSESSION OF   1             N      N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL

2002/07/17 CS13A30 MANUFACTURE     1             N      N
           ETC. OF
           CONTROLLED
           SUBSTANCE BY
           PERSON NOT
           REGISTERED, OR
           A PRACTITIONER
           NOT REGISTERED
           CREATING, ETC.
           A COUNTERFEIT
           CONTROLLED
           SUBSTANCE
```

```
                          *** COURT DATA ***
OFFENSE                                          LIMITED CLEAN
DATE       CHARGE                  COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------    ------                  -----  ----- ------  -----
---
2002/07/17 CS13A16 POSSESSION OF   1             N      N      NOLLE
           A CONTROLLED
PROSSED/
           SUBSTANCE BY AN
WITHDRAWN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL

2002/07/17 CS13A30 MANUFACTURE     1             N      N      PLEAD
```

JM (DAO)_0165

GUILTY/
          ETC. OF
REGIONAL
          CONTROLLED
CORRECTIONAL
          SUBSTANCE BY
FACILITY/
          PERSON NOT                                                    002
YRS - 003
          REGISTERED, OR                                               YRS/
          A PRACTITIONER                                               COSTS
          NOT REGISTERED
          CREATING, ETC.
          A COUNTERFEIT
          CONTROLLED
          SUBSTANCE

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: THOMPSON,LAMONT                          OTN: N535003-0
PHOTO AVAILABLE: YES 2008/03/30 CPIN PHOTO NUMBER: 151496538
ARRESTED: 2008/03/30  PAPEP0000  PHILADELPHIA PD
OCA: C0736673
DISPO DATE: 2008/08/05
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0016409-2008

                          *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                    COUNT  GRADE ACCESS  SLATE
-------    ------                    -----  ----- -----   -----
2008/03/30 CS780-113 VIOLATION       1      F     N       N
           OF DRUG DEVICE
           AND COSMETIC ACT

2008/03/30 CS780-113 VIOLATION       1      M     N       N
           OF DRUG DEVICE
           AND COSMETIC ACT

                        *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE       CHARGE                    COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------    ------                    -----  ----- ------  -----   --------
---
2008/03/30 35780-113A30             1      F     N       Y
DISMISSAL RULE
           MANUFACTURE                                            1100
           ETC. OF
           CONTROLLED

```
                    SUBSTANCE BY
                    PERSON NOT
                    REGISTERED, OR
                    A PRACTITIONER
                    NOT REGISTERED
                    CREATING, ETC.
                    A COUNTERFEIT
                    CONTROLLED
                    SUBSTANCE
```



```
FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========
NAME: THOMPSON,LAMONT A                    OTN: N680261-1
PHOTO AVAILABLE: YES 2010/05/12 CPIN PHOTO NUMBER: 151740477
ARRESTED: 2010/05/12  PAPEP0000  PHILADELPHIA PD
OCA: C0736673
DISPO DATE: 2010/12/02
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0020261-2010
```

```
                        *** ARREST DATA ***
```

| OFFENSE DATE | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|---|---|---|---|---|---|
| 2010/04/27 | CC907A POSSESSING INSTRUMENT OF CRIME | 1 | M1 | N | N |
| 2010/04/27 | CC2706A1 COMMIT ANY CRIME OF VIOLENCE WITH INTENT TO TERRORIZE ANOTHER | 1 | M1 | N | N |
| 2010/05/12 | CC3304 CRIMINAL MISCHIEF | 1 | | N | N |
| 2010/04/27 | DR6114A CONTEMPT FOR | 1 | M3 | N | N |

App. 268

JM (DAO)_0167

VIOLATION OF
ORDER

```
                               *** COURT DATA ***
OFFENSE                                          LIMITED CLEAN
DATE      CHARGE                   COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------   ------                   -----  ----- ------  -----  --------
---
2010/04/27  CC907A POSSESSING        1     M1     N       N    FOUND
NOT GUILTY
            INSTRUMENT OF
            CRIME

2010/04/27  CC2706A1 COMMIT ANY      1     M1     N       N    NOLLE
            CRIME OF
PROSSED/
            VIOLENCE WITH
WITHDRAWN
            INTENT TO
            TERRORIZE
            ANOTHER

2010/04/27  DR6114A CONTEMPT FOR     1     M3     N       N    COSTS/
            VIOLATION OF                                        FOUND
GUILTY/
            ORDER                                              COUNTY

PROBATION/
                                                              06 MOS
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
========
NAME: THOMPSON,LAMONT                     OTN: N851993-2
PHOTO AVAILABLE: YES 2013/03/13 CPIN PHOTO NUMBER: 152042691
ARRESTED: 2013/03/13  PAPEP0000  PHILADELPHIA PD
OCA: C0736673

DISPO DATE: 2013/05/21           COMMON PLEAS DOCKET: CP-51-CR-
0010103-2013
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0010147-2013

```
                              *** ARREST DATA ***
OFFENSE                                          LIMITED CLEAN
DATE      CHARGE                   COUNT  GRADE ACCESS  SLATE
-------   ------                   -----  ----- -----   -----
2013/03/13  CC907A POSSESSING        1     M1     N       N
            INSTRUMENT OF
```

JM (DAO)_0168

CRIME

| 2013/03/13 | CC2701A SIMPLE ASSAULT | 1 | M2 | N | N |
| 2013/03/13 | CC2702A AGGRAVATED ASSAULT | 1 | F1 | N | N |
| 2013/03/13 | CC2705 RECKLESSLY ENDANGERING ANOTHER PERSON | 1 | M2 | N | N |
| 2013/03/13 | CC3921 THEFT BY UNLAWFUL TAKING OR DISPOSITION | 1 | | N | N |
| 2013/03/13 | CC3925 RECEIVING STOLEN PROPERTY | 1 | | N | N |
| 2013/03/13 | CC3928 UNAUTHORIZED USE OF AUTOMOBILES AND OTHER VEHICLES | 1 | M2 | N | N |



FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================
=========
NAME: MCDOWELL,ANDREW                      OTN: N892184-6

PHOTO AVAILABLE: YES 2013/11/29 CPIN PHOTO NUMBER: 152119762
ARRESTED: 2013/11/29  PAPEP0000  PHILADELPHIA PD
OCA: C0736673
DISPO DATE:

```
                          *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
-------   ------                  -----  ----- -----   -----
2013/11/29 CC5124 DEFAULT IN        1            N      N
           REQUIRED
           APPEARANCE
```

```
                          *** COURT DATA ***
OFFENSE                                       LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------   ------                  -----  ----- ------  -----  --------
---
          CC5124 DEFAULT IN         1            N      N      NO
DISPOSITION
          REQUIRED
REPORTED
          APPEARANCE
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: MCDOWELL,ANDREW                    OTN: N923266-1
PHOTO AVAILABLE: YES 2014/07/13 CPIN PHOTO NUMBER: 152184336
ARRESTED: 2014/07/13  PAPEP0000  PHILADELPHIA PD
OCA: C0736673
DISPO DATE: 2014/07/31
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0023570-2014

```
                          *** ARREST DATA ***
OFFENSE                                       LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
-------   ------                  -----  ----- -----   -----
2014/07/13 CC5104 RESISTING         1     M2    N      N
           ARREST OR OTHER
           LAW ENFORCEMENT

2014/07/13 CS13A16 POSSESSION OF    1     M     N      N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
```

JM (DAO)_0170

IS UNLAWFUL

| | | | | | |
|---|---|---|---|---|---|
| 2014/07/13 | CS13A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY PERSON NOT REGISTERED, OR A PRACTITIONER NOT REGISTERED CREATING, ETC. A COUNTERFEIT CONTROLLED SUBSTANCE | 1 | F | N | N |

\*\*\* COURT DATA \*\*\*

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| 2014/07/13 PROSSED/ WITHDRAWN | CC5104 RESISTING ARREST OR OTHER LAW ENFORCEMENT | 1 | M2 | N | N | NOLLE |
| 2014/07/13 GUILTY/ PROBATION/ | CS13A16 POSSESSION OF A CONTROLLED SUBSTANCE BY AN UNREGISTERED PERSON EXCEPT BY PRESCRIPTION IS UNLAWFUL | 1 | M | N | N | COSTS/ PLEAD COUNTY 002 YRS |

\*\*\* COURT DATA \*\*\*

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE | |
|---|---|---|---|---|---|---|
| 2014/07/13 PROSSED/ | CS13A30 MANUFACTURE ETC. OF | 1 | F | N | N | NOLLE |

JM (DAO)_0171

                    CONTROLLED
WITHDRAWN
                    SUBSTANCE BY
                    PERSON NOT
                    REGISTERED, OR
                    A PRACTITIONER
                    NOT REGISTERED
                    CREATING, ETC.
                    A COUNTERFEIT
                    CONTROLLED
                    SUBSTANCE

2014/07/13  CC4910-1 TAMPERING    1     M2     N        N       NOLLE
            WITH OR
PROSSED/
            FABRICATING
WITHDRAWN
            PHYSICAL
            EVIDENCE

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: THOMPSON,LAMONT                          OTN: N986692-0
PHOTO AVAILABLE: YES 2015/11/15 CPIN PHOTO NUMBER: 182471121
ARRESTED: 2015/11/15  PAPEP0000  PHILADELPHIA PD
OCA: C0736673
DISPO DATE: 2016/04/14              COMMON PLEAS DOCKET: CP-51-CR-
0013111-2015
DISTRICT JUSTICE: 0151

                      *** ARREST DATA ***
OFFENSE                                     LIMITED CLEAN
DATE        CHARGE               COUNT  GRADE ACCESS  SLATE
-------     ------               -----  ----- -----   -----
2015/11/14  CS13A16 POSSESSION OF  1            N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

2015/11/14  CS13A30 MANUFACTURE    1            N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED

```
                    CREATING, ETC.
                    A COUNTERFEIT
                    CONTROLLED
                    SUBSTANCE
```

```
                         *** COURT DATA ***
OFFENSE                                        LIMITED CLEAN
DATE         CHARGE                COUNT   GRADE ACCESS  SLATE
DISPOSITION
-------      ------                -----   ----- ------  -----   --------
---
2015/11/14   35780-113A30            1       F     N       N      PLEAD
GUILTY/
             MANUFACTURE                                         COSTS/
             ETC. OF
REGIONAL
             CONTROLLED
CORRECTIONAL
             SUBSTANCE BY
FACILITY/
             PERSON NOT                                          001
YRS - 002
             REGISTERED, OR                                     YRS/
             A PRACTITIONER                                     STATE
PROBATION/
             NOT REGISTERED                                     003 YRS
             CREATING, ETC.
             A COUNTERFEIT
             CONTROLLED
             SUBSTANCE

2015/11/14   35780-113A16            1       M     N       N      NOLLE
             POSSESSION OF A
PROSSED/
             CONTROLLED
WITHDRAWN
             SUBSTANCE BY AN
             UNREGISTERED
             PERSON EXCEPT
             BY PRESCRIPTION
```

JM (DAO)_0173

IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================
=========

```
                        PROBATION/PAROLE INFORMATION
                              START        END
LIFE   LIMITED
AGENCY                OCA         DATE          DATE       PAR/PRO
CODE   ACCESS
------                ---         -----         -----      -------    ----
------
PA051023G             0239209A    1995/10/04  1996/07/24
PAROLE         N
PHILADELPHIA

APPLIES TO OTN: M640348-2

PA051023G             0239209B    1996/02/17  1998/04/17
PAROLE         N
PHILADELPHIA

APPLIES TO OTN: M631298-3

PA051023G             0239209C    1996/03/08  1998/05/08
PAROLE         N
PHILADELPHIA

APPLIES TO OTN: M634641-0

PA022035G BOARD OF   630AD       2006/06/06  2006/12/18
PAROLE         N
PROBATION
AND
PAROLE
```

APPLIES TO OTN: N157914-1
=====================================================================
=========

```
                        CUSTODY INFORMATION
FACILITY/                      ADMISSION      RELEASE       LIMITED
INSTITUTION                    DATE           DATE          ACCESS
-----------                    ----           ----          ------
PA021025C   DEPARTMENT OF CORR  2016/04/22    2017/08/07    N
ECTIONS
```
APPLIES TO OTN(S): N986692-0
=====================================================================
=========
                        ADDITIONAL IDENTIFIERS
AKAS:
DOBS:

```
SOCS:
MNUS:

 *** DNA SAMPLE AND PROFILE ON FILE PURSUANT TO THE PA DNA ACT (44
PA.C.S., CHAPTER 23). ***


==========================================================================
=========
            F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE
NUMERIC=DEGREE
                 ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE
FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT
PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE
AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN
CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND
PURDON'S
FORMATTED CHARGES.

 ***************************** END OF RAP SHEET
 *****************************
```

Mugshot Profile Poster



# JNET

| | |
|---|---|
| **EVENT#:** | 24016879 |
| **SID#:** | 23708663 |
| **NAME:** | SHAWN |
| | **WILLIAMS** |
| **ARREST DATE:** | Nov 19 2007 1:22PM |
| **AGE AT ARREST:** | 29 |
| **HEIGHT:** | 5'02" |
| **WEIGHT:** | 140 |
| **HAIR COLOR:** | BLACK |
| **EYE COLOR:** | BROWN |

**PA DOC
INMATE DATABASE**

    



**FOR INVESTIGATION ONLY
NOT FOR IDENTIFICATION
DESTROY AFTER 90 DAYS**

**Printed JNET:  2/28/122 11:17**

App. 277

JM (DAO)_0176

DAO034-00010399 CHR 20220228 14:04:26 14:04:26 0268000F32

```
                    PENNSYLVANIA STATE POLICE
                       CENTRAL REPOSITORY
                      1800 ELMERTON AVENUE
                 HARRISBURG, PENNSYLVANIA 17110
                         (717) 787-9092
PA051471A                                                ATN :
MORALES
RSN : ADA AITTIE                                         OPR : SM
THREE SO PENN SQUARE
PHILADELPHIA, PA, 19107
====================================================================
=========
     USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 237-08-66-3
***
                 REGULATED BY ACT 47, AS AMENDED.
                 III - SINGLE-SOURCE OFFENDER
====================================================================
=========
                         IDENTIFICATION
NAME: LEWIS,SHAWN
SID: 237-08-66-3    FBI: 476694CB0    DOB: 1977/12/18

SEX: MALE           RAC: BLACK        HAI: BLACK          EYE:
BROWN
HGT: 5'02"          WGT: 125
POB: PENNSYLVANIA   US CITIZEN:
COUNTRY OF CITIZENSHIP:

SCARS, MARKS, TATTOOS:
SCARS (SC) - SC HEAD
TATTOOS (TAT) - TAT RF ARM
MEDICAL DEVICES AND BODY IMPLANTS - ART LARYNX
ARTIFICIAL (ART) BODY PARTS AND AIDS - ART L HND
ARTIFICIAL (ART) BODY PARTS AND AIDS - ART R HND

LAST KNOWN ADDRESS: 2018/04/12 - 2937 N BAMBREY
ST,PHILADELPHIA,PA,19132

====================================================================
=========
                         CRIMINAL HISTORY
NAME: LEWIS,SHAWN                       OTN: M689575-5
PHOTO AVAILABLE: NO
ARRESTED: 1996/02/14  PAPEP0000  PHILADELPHIA PD
OCA: C782754
DISPO DATE: 1996/03/12
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0210851-1996
```

App. 278

JM (DAO)_0177

```
                              *** ARREST DATA ***
OFFENSE                                              LIMITED CLEAN
DATE       CHARGE                     COUNT  GRADE  ACCESS  SLATE
-------    ------                     -----  -----  -----   -----
           CS13A16 POSSESSION OF  1                  N       N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL

           CS13A30 MANUFACTURE   1                   N       N
           ETC. OF
           CONTROLLED
           SUBSTANCE BY
           PERSON NOT
           REGISTERED, OR
           A PRACTITIONER
           NOT REGISTERED
           CREATING, ETC.
           A COUNTERFEIT
           CONTROLLED
           SUBSTANCE
```

```
                              *** COURT DATA ***
OFFENSE                                              LIMITED CLEAN
DATE       CHARGE                     COUNT  GRADE  ACCESS  SLATE
DISPOSITION
-------    ------                     -----  -----  ------  -----   --------
---
1996/02/14  185121 ESCAPE             1                N      Y      NOLLE
```

PROSSED/

WITHDRAWN

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
NAME: WILLIAMS,OMAR                        OTN: M711685-2
PHOTO AVAILABLE: NO
ARRESTED: 1996/08/06   PAPEP0000   PHILADELPHIA PD
OCA: C782754
DISPO DATE: 1997/04/30
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0801411-1996

App. 279

JM (DAO)_0178

```
                          *** ARREST DATA ***
OFFENSE                                              LIMITED  CLEAN
DATE       CHARGE                     COUNT   GRADE  ACCESS   SLATE
-------    ------                     -----   ----- -----    -----
           CC3921 THEFT BY              1             N        N
           UNLAWFUL TAKING
           OR DISPOSITION

           CC3925 RECEIVING            1             N        N
           STOLEN PROPERTY

           CC3928 UNAUTHORIZED         1      M2     N        N
           USE OF
           AUTOMOBILES AND
           OTHER VEHICLES
```



FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=====================================================================

JM (DAO)_0179

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

```
= ========
NAME: WILLIAMS,SHAWN                          OTN: M716079-0
PHOTO AVAILABLE: NO
ARRESTED: 1996/09/10   PAPEP0000   PHILADELPHIA PD
OCA: C782754
DISPO DATE: 1997/04/02
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0909571-1996
```

```
                        *** ARREST DATA ***
                                                   LIMITED  CLEAN
OFFENSE
DATE       CHARGE                 COUNT   GRADE   ACCESS   SLATE
-------    ------                 -----   -----   -----    -----
           CC3925 RECEIVING         1               N        N
           STOLEN PROPERTY

           CC3928 UNAUTHORIZED      1       M2      N        N
           USE OF
           AUTOMOBILES AND
           OTHER VEHICLES
```

*** COURT DATA ***



JM (DAO)_0180

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...    2/28/2022

```
FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
===============================================================================
=========
NAME: WARTHY,RASHEED                          OTN: M736703-2
PHOTO AVAILABLE: NO
ARRESTED: 1997/02/15  PAPEP0000  PHILADELPHIA PD
OCA: C782754
DISPO DATE:
                           *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
-------   ------                  -----  ----- -----   -----
1997/02/14  CS13A30 MANUFACTURE    1            N       N
            ETC. OF
            CONTROLLED
            SUBSTANCE BY
            PERSON NOT
            REGISTERED, OR
            A PRACTITIONER
            NOT REGISTERED
            CREATING, ETC.
            A COUNTERFEIT
            CONTROLLED
            SUBSTANCE

1997/02/14  CS13A16 POSSESSION OF  1            N       N
            A CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL
                           *** COURT DATA ***

                  NO COURT DISPOSITION PROVIDED
===============================================================================
=========
NAME: WORTHY,RASHEED                          OTN: M900329-3
PHOTO AVAILABLE: NO
ARRESTED: 1998/11/17  PAPEP0000  PHILADELPHIA PD
OCA: C782754
DISPO DATE: 2001/02/09



                           *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE      CHARGE                  COUNT  GRADE ACCESS  SLATE
-------   ------                  -----  ----- -----   -----
1998/11/17  CS13A16 POSSESSION OF  1            N       N
            A CONTROLLED
```

JM (DAO)_0181

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

```
                SUBSTANCE BY AN
                UNREGISTERED
                PERSON EXCEPT
                BY PRESCRIPTION
                IS UNLAWFUL

1998/11/17    CS13A30 MANUFACTURE      1              N        N
                ETC. OF
                CONTROLLED
                SUBSTANCE BY
                PERSON NOT
                REGISTERED, OR
                A PRACTITIONER
                NOT REGISTERED
                CREATING, ETC.
                A COUNTERFEIT
                CONTROLLED
                SUBSTANCE

1998/11/17    VC1372 SUMMARY          1              N        N
                VIOLATION OF
                MOTOR VEHICLE
                CODE
```

*** COURT DATA ***

| OFFENSE DATE DISPOSITION | CHARGE | COUNT | GRADE | LIMITED ACCESS | CLEAN SLATE |
|-------|--------|-------|-------|--------|-------|



| 1998/11/17 GUILTY/ REGIONAL CORRECTIONAL FACILITY/ YRS - 003 | CS13A30 MANUFACTURE ETC. OF CONTROLLED SUBSTANCE BY PERSON NOT REGISTERED, OR | 1 | | N | N | PLEAD |

002

YRS/

App. 283
JM (DAO)_0182

```
          A PRACTITIONER                                    COSTS
          NOT REGISTERED
          CREATING, ETC.
          A COUNTERFEIT
          CONTROLLED
          SUBSTANCE

1998/11/17  VC1372 SUMMARY          1            N       N
DISPOSITION
          VIOLATION OF
UNREPORTED
          MOTOR VEHICLE
          CODE
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
===============================================================================
=========
NAME: WILLIAMS,SHAWN                         OTN: M933668-1
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 1999/05/19   PAPEP0000   PHILADELPHIA PD
OCA: C782754


DISPO DATE: 2007/11/08          COMMON PLEAS DOCKET: CP-51-CR-
1105441-2000
DISTRICT JUSTICE: 0151

                        *** ARREST DATA ***
OFFENSE                                      LIMITED CLEAN
DATE      CHARGE                 COUNT  GRADE ACCESS  SLATE
-------   ------                 -----  ----- ------  -----
1999/05/19  CS13A16 POSSESSION OF 1            N       N
          A CONTROLLED
          SUBSTANCE BY AN
          UNREGISTERED
          PERSON EXCEPT
          BY PRESCRIPTION
          IS UNLAWFUL
```



JM (DAO)_0183

https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...   2/28/2022

> SUBSTANCE BY
> PERSON NOT
> REGISTERED, OR
> A PRACTITIONER
> NOT REGISTERED
> CREATING, ETC.
> A COUNTERFEIT
> CONTROLLED
> SUBSTANCE



IS UNLAWFUL

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
==========
NAME: WILLIAMS,SEAN                           OTN: M990658-4
PHOTO AVAILABLE: YES   CPIN PHOTO NUMBER: 999999999
ARRESTED: 2000/03/13   PAPEP0000   PHILADELPHIA PD
OCA: C782754
DISPO DATE: 2001/05/24              COMMON PLEAS DOCKET: CP-51-CR-
0603561-2000
DISTRICT JUSTICE: 0151

```
                         *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
DATE        CHARGE                 COUNT   GRADE ACCESS  SLATE
-------     ------                 -----   ----- ------  -----
1999/07/28  CC907A POSSESSING        2     M1    N       N
            INSTRUMENT OF
            CRIME

1999/07/28  CC2502 MURDER            1           N       N

2000/03/13  CC2502 MURDER            2           N       N

1999/07/28  CC2702A AGGRAVATED       1           N       N
            ASSAULT
```

```
                         *** ARREST DATA ***
OFFENSE                                         LIMITED CLEAN
```

| DATE | CHARGE | COUNT | GRADE | ACCESS | SLATE |
|------|--------|-------|-------|--------|-------|
| 1999/07/28 | CC6105 PERSONS NOT TO POSSESS, USE, MANUFACTURE, CONTROL, SELL OR TRANSFER FIREARMS | 2 | M1 | N | N |
| 1999/07/28 | CC6106 FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE | 1 | M1 | N | N |
| 1999/07/28 | CC6108 CARRYING FIREARMS ON PUBLIC STREETS OR PUBLIC PROPERTY IN PHILADELPHIA | 1 | M1 | N | N |
| 1999/07/28 | CC903 CRIMINAL CONSPIRACY TO COMMIT A CRIME | 2 | | N | N |
| 1999/07/28 | CC901 CRIMINAL ATTEMPT MURDER OF THE FIRST DEGREE (CC2502A) | 1 | H1 | N | N |



JM (DAO)_0185



\*\*\* COURT DATA \*\*\*



CRIME

JM (DAO)_0186

WITHDRAWN

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
===========================================================================
=========
NAME: WILLIAMS,SHAWN                          OTN: N134634-3
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2002/03/14  PAPEP0000  PHILADELPHIA PD
OCA: C0782754
DISPO DATE:
                         *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE     CHARGE                  COUNT  GRADE ACCESS  SLATE
-------  ------                  -----  ----- -----   -----
2002/03/14  CC5124 DEFAULT IN      1            N       N
            REQUIRED
            APPEARANCE
                         *** COURT DATA ***

                    NO COURT DISPOSITION PROVIDED
===========================================================================
=========
NAME: WILLIAMS,SHAWN                          OTN: N470390-4
PHOTO AVAILABLE: YES  CPIN PHOTO NUMBER: 999999999
ARRESTED: 2007/05/07  PAPEP0000  PHILADELPHIA PD
OCA: C0782754
DISPO DATE:
                         *** ARREST DATA ***
OFFENSE                                        LIMITED CLEAN
DATE     CHARGE                  COUNT  GRADE ACCESS  SLATE
-------  ------                  -----  ----- -----   -----
2007/05/06  CC5121 ESCAPE          1            N       N
                         *** COURT DATA ***

                    NO COURT DISPOSITION PROVIDED
===========================================================================
=========
NAME: WILLIAMS,OMAR                           OTN: N607057-3
PHOTO AVAILABLE: YES 2009/04/06 CPIN PHOTO NUMBER: 131385532
ARRESTED: 2009/04/05  PAPEP0000  PHILADELPHIA PD
OCA: C0782754
DISPO DATE: 2009/08/14
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0015330-2009

```
                             *** ARREST DATA ***
OFFENSE                                           LIMITED CLEAN
DATE       CHARGE                    COUNT  GRADE ACCESS  SLATE
-------    ------                    -----  ----- ------  -----
2009/04/05 CS13A16 POSSESSION OF  1      M     N       N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
           BY PRESCRIPTION
           IS UNLAWFUL

                             *** COURT DATA ***
OFFENSE                                           LIMITED CLEAN
DATE       CHARGE                    COUNT  GRADE ACCESS  SLATE
DISPOSITION
-------    ------                    -----  ----- ------  -----  --------
---
2009/04/05 CS13A16 POSSESSION OF  1      M     N       N      COUNTY
           A CONTROLLED
PROBATION/
           SUBSTANCE BY AN                                     002
YRS/
           UNREGISTERED                                        FOUND
GUILTY/
           PERSON EXCEPT                                       COSTS
           BY PRESCRIPTION
           IS UNLAWFUL
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=======================================================================
=========
NAME: WILLIAMS,OMAR                      OTN: N608306-6
PHOTO AVAILABLE: YES 2009/04/11 CPIN PHOTO NUMBER: 131387022
ARRESTED: 2009/04/11  PAPEP0000  PHILADELPHIA PD
OCA: C0782754
DISPO DATE: 2010/04/22
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0016439-2009

                             *** ARREST DATA ***
```
OFFENSE                                           LIMITED CLEAN
DATE       CHARGE                    COUNT  GRADE ACCESS  SLATE
-------    ------                    -----  ----- ------  -----
2009/04/11 CS13A16 POSSESSION OF  1      M     N       N
           A CONTROLLED
           SUBSTANCE BY AN
           UNREGISTERED
           PERSON EXCEPT
```

App. 289

JM (DAO)_0188

BY PRESCRIPTION





JM (DAO)_0189
https://ppdms.phila.gov/portalxl/XLMain.aspx?s=MjIzODY2&t=REFPMDM0&d=TaFXI...    2/28/2022

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
============================================================================
=========
NAME: WILLIAMS,OMAR                          OTN: U119591-3
PHOTO AVAILABLE: YES 2018/04/13 CPIN PHOTO NUMBER: 131941615
ARRESTED: 2018/04/12  PAPEP0000  PHILADELPHIA PD
OCA: C0782754
DISPO DATE: 2019/04/25           COMMON PLEAS DOCKET: CP-51-CR-
0006543-2018
DISTRICT JUSTICE: 0151
DISTRICT JUSTICE DOCKET NUMBER: MC-51-CR-0009686-2018

                          *** ARREST DATA ***

OFFENSE                                          LIMITED CLEAN
DATE       CHARGE                  COUNT  GRADE  ACCESS  SLATE
-------    ------                  -----  -----  -----   -----
2018/04/12  18907A POSSESSING        1     M1     N        N
            INSTRUMENT OF
            CRIME

2018/04/12  186105A1 PERSONS NOT     1            N        N
            TO POSSESS,
            USE,
            MANUFACTURE,
            CONTROL, SELL
            OR TRANSFER
            FIREARMS

2018/04/12  186106A1 FIREARMS NOT    1     F3     N        N
            TO BE CARRIED
            WITHOUT A
            LICENSE

2018/04/12  186108 CARRYING          1     M1     N        N
            FIREARMS ON
            PUBLIC STREETS
            OR PUBLIC
            PROPERTY IN
            PHILADELPHIA

2018/04/12  35780-113A16             1            N        N
            POSSESSION OF A
            CONTROLLED
            SUBSTANCE BY AN
            UNREGISTERED
            PERSON EXCEPT
            BY PRESCRIPTION
            IS UNLAWFUL

```
                              *** ARREST DATA ***
OFFENSE                                            LIMITED CLEAN
DATE          CHARGE               COUNT   GRADE ACCESS   SLATE
-------       ------               -----   ----- -----    -----
2018/04/12    35780-113A30            1               N       N
              MANUFACTURE
              ETC. OF
              CONTROLLED
              SUBSTANCE BY
              PERSON NOT
              REGISTERED, OR
              A PRACTITIONER
              NOT REGISTERED
              CREATING, ETC.
              A COUNTERFEIT
              CONTROLLED
              SUBSTANCE

2018/04/12    35780-113A31            1               N       N
              PROHIBITS
              POSSESSION
              AND/OR
              DISTRIBUTION OF
              SMALL AMOUNTS
              OF MARIHUANA
              AND DEFINES
              SMALL AMOUNT

                              *** COURT DATA ***
OFFENSE                                            LIMITED CLEAN
DATE          CHARGE               COUNT   GRADE ACCESS   SLATE
DISPOSITION
-------       ------               -----   ----- ------   -----   --------
---
2018/04/12    35780-113A30            1      F     N        N     NOLLE
              MANUFACTURE
PROSSED/
              ETC. OF
WITHDRAWN
              CONTROLLED
              SUBSTANCE BY
              PERSON NOT
              REGISTERED, OR
              A PRACTITIONER
              NOT REGISTERED
              CREATING, ETC.
              A COUNTERFEIT
              CONTROLLED
              SUBSTANCE
```

JM (DAO)_0191

```
2018/04/12   186105A1 PERSONS NOT   1    F1    N      N      PLEAD
GUILTY/
             TO POSSESS,                                      COSTS/
             USE,                                             COUNTY
PRISON/
             MANUFACTURE,                                     11 MOS
15 DYS -
             CONTROL, SELL                                    001
YRS 11 MOS/
             OR TRANSFER                                      COUNTY
             FIREARMS
PROBATION/
                                                              008 YRS

2018/04/12   186106A1 FIREARMS NOT   1    F3    N      N      NOLLE
             TO BE CARRIED
PROSSED/
             WITHOUT A
WITHDRAWN
             LICENSE
```

```
                           *** COURT DATA ***
OFFENSE                                      LIMITED  CLEAN
DATE         CHARGE            COUNT   GRADE  ACCESS   SLATE
DISPOSITION
-------      ------           -----   ----- ------   -----   --------
---
2018/04/12   35780-113A16      1      M      N        N      NOLLE
             POSSESSION OF A
PROSSED/
             CONTROLLED
WITHDRAWN
             SUBSTANCE BY AN
             UNREGISTERED
             PERSON EXCEPT
             BY PRESCRIPTION
             IS UNLAWFUL

2018/04/12   35780-113A31      1      M      N        N      NOLLE
             PROHIBITS
PROSSED/
             POSSESSION
WITHDRAWN
             AND/OR
```

App. 293

```
                    DISTRIBUTION OF
                    SMALL AMOUNTS
                    OF MARIHUANA
                    AND DEFINES
                    SMALL AMOUNT

2018/04/12    186108 CARRYING         1       M1     N         N         NOLLE
              FIREARMS ON
PROSSED/
              PUBLIC STREETS
WITHDRAWN
              OR PUBLIC
              PROPERTY IN
              PHILADELPHIA

2018/04/12    18907A POSSESSING       1       M1     N         N         NOLLE
              INSTRUMENT OF
PROSSED/
              CRIME
WITHDRAWN
```

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
================================================================================
=========
                    PROBATION/PAROLE INFORMATION
                                 START        END
LIFE   LIMITED
AGENCY                 OCA        DATE         DATE        PAR/PRO
CODE   ACCESS
------                 ---        -----        -----       -------     ----
------
PA022035G BOARD OF     874BC      2007/11/20  2008/01/15
PAROLE        N
PROBATION
AND
PAROLE

APPLIES TO OTN: M900329-3
================================================================================
=========
                    CUSTODY INFORMATION
FACILITY/                          ADMISSION     RELEASE       LIMITED
INSTITUTION                        DATE          DATE          ACCESS
-----------                        ----          ----          ------
PA021025C  DEPARTMENT OF CORR      2007/05/22    2007/11/20    N
ECTIONS
APPLIES TO OTN(S): M900329-3
================================================================================
=========
                    ADDITIONAL IDENTIFIERS
AKAS: HOPKINS,SHAWN / RAMBERT,CHRIS

```
DOBS: 1977/12/12 1977/12/17
SOCS:
MNUS:

 *** DNA SAMPLE AND PROFILE ON FILE PURSUANT TO THE PA DNA ACT (44
PA.C.S., CHAPTER 23). ***
=====================================================================
=========




             F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE
NUMERIC=DEGREE
               ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE
FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT
PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE
AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN
CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND
PURDON'S
FORMATTED CHARGES.

 ***************************** END OF RAP SHEET
****************************
```

System File Edit Database Record Program Window Browse
A                                                    command
Nickname    Name                                                    nickname, name

| Nickname | Name |
|---|---|
| COOKE | PARKS, DERRICK |
| SCIONA | PARKS, DERRICK |
| SCIONA | PARKS, DERRICK |
| COOKE | PARKS, DERRICK |
| SCOOP | HOLMES, RUDOLPH |
| SCOOTE | DORSEY, MELVIN |
| SCOOTE | D RSEY, MELVIN |
| SCOOTE | DAHLBERG, MARK |
| SCOT. | DRAKE, GEORGE L. |
| SCOOTS | DRAKE, GEORGE L |
| SCRAP | BROWN, HOWARD |
| SEE SE | BURBAGE, CLARENCE |
| SHADOW | NAHAVANDIAN, SHAHRAM |
| SHAKA | VICTOR, SEAN |

97585 records indexed
97585 records indexed

System File Edit Database Record Program Window Brows-
A                                                    command
Nickname    Name                                                    nickname, name

| Nickname | Name |
|---|---|
| RED EYE | ALSTON, ROBERT |
| RED EYE | ALSTON, ROBERT |
| REDD | MARTINEZ, LISANDRO |
| REDD | MARTINEZ, LISANDRO |
| RED. | BAPTIST, ALFRED |
| REDS | DOYLE, WILLIAM P. |
| REDS | DOYLE, WILLIAM P |
| REDS | HAINES, DAISY |
| REDS | DOYLE, WILLIAM P |
| REDS | DOYLE, WILLIAM P |
| REDS | SHIMOYAMA, RICHARD |
| REDS | FOUNTAIN, MARCUS |
| REESE | JOHNSON, MAURICE |
| REGGIE | FAIR, REGINALD |

97585 records indexed
97585 records indexed

System  File  Edit  Database  Record  Program  Window  Browse
                                    A                                    Command

Nickna +   Name

SPARLE      HAMLIN, MICHAEL
SHAWN       PERRY, VENSHONE L.
SHAWN       PERRY, VENSHONE L
SHORTY      KING, LELWIN
SHORTY      JONES, TRACE
SHORTY      MC NEAL, DERRICK A.
SHORTY      CLISBY, ARTHUR T.
SHORTY      MCNEAL, DERRICK A
SHORTY      CLISBY, ARTHUR T
SHORTY      COLON, WILFREDO
SHORTY      FELICIANO, IDEL
SHORTY      COLLINS, KANYA
SHORTY      COLON, EDDIE
SHOTTUN     MUSE, JAMES


97585 records indexed
97585 records indexed

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

```
Name         : CARRION, JAVIER   H/M   02/28/73    P.P.N. : 718197
AKA          : CARRION, MIGUEL                     Nickname :
Address      :                    ST.
I.C. Number  : 93-25-0015173     Narc Case # : P93-0715-EA
Charge       : POSS W/I DEL                        UCR # : 1811H
Arrest Loc   : 900 E. SOMERSET ST.      Hwy? : Y
Arrest Date  : 02/17/93    Arrest Time : 1200
Arrest Unit  : 2500
Arrest Off.  : GROVS   9935   Processing Off. : TRAPPER   3515
Search Warr  :              Arrest Warr :
```

App. 298

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $10.00 | Hashish | : | 0 mg. |
| Tape Mark | : | HELP | P2P | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | |
| Heroin | : | 2,510 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name : DIAZ, WILLIAM  H/M  06/13/65   P.B.N. :
AKA :                                  Nickname :
Address :                TH
D.L. Number : 88-25-013/003   Narc Case # : P89-7174-EA
Charge : K/I                               UCR # : 1822
Arrest Loc : 900 E. SOMERSET ST.    Hwy? : Y
Arrest Date : 12/22/88   Arrest Time : 0200
Arrest Unit : 1500
Arrest Off. : SAFFORD  5838   Processing Off. : EVANS  3054
Search Warr :              Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $0.00 | Hashish | : | 0 mg. |
| Tape Mark | : | | P2P | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 1,000 mg. | | | |

NARCOTIC ARREST BLOTTER

NARCOTIC ARREST BLOTTER

Philadelphia Police Department
NARCOTIC ARREST BLOTTER

Search Entire Block
Hotel Location          27XX S. 97TH ST

| NAME-RACE-SEX-DOB | | | | FIN |
|---|---|---|---|---|
| ARR DATE DC # | | | | REG # |
| PEREZ, ROBERTO  H M  08-17-73 | | | | 7.7043 |
| 11/24/95  95-25-257730.  PXX-XX-74 EA | | | | 54038 |
| MELENDEZ, CARLOS  M M  +8-04-71 | | | | 835350 |
| 36/19/95  95-25-204765-2  P95-1927-1A | | | | 91263 |
| GOMEZ, HERBERTO  B M  86/17/55 | | | | 803496 |
| 13/01/95  95-25-029065.  P95-1135-EA | | | | 84674 |
| LUGO, JUVITA  H/F  05/05/52 | | | | 775168 |
| 12/19/95  95-25-190015  P95-1815-2A | | | | 67168 |

>>> LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : PEREZ, ROBERTO  H/M  08/17/73   F.P.N. : 717049
Aka         : BLXXX  ROBERTO                    S.-XXXX.  :
Address     :                        T.
Date/Time   :                         Narc Case # : P95- 1 1-DA
Charge      : POSS W/I DEL                       C T # : 1911N
Arrest Loc  : 27XX S. 99TH ST.    Hwy# : Y
Arrest Date : 11/24 95   Arrest Time : 0845
Arrest Unit : 2538
Arrest Off  : 5000KE  5554  Processing Off : KLEUCKNY  452
Search Warr :          Arrest Warr :

Philadelphia Police Department - Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name      : GOMEZ, HERBERTO  R.H  CC-17.62   P.P.N. : 803436
AKA       :
Address   :                    P.
D.C. Number : 91-25-009568   Ntlo Ca.. # : P94-0123-BA
Charge    : POSS W/I DEL                    OCR # : 1611C
Arrest L.. : 2731 N. 09TH ST.      Hwy? : N
Arrest Date : 11/01/94   Arrest Time : 2050
Arrest L..t : 2452
Arrest Off.. : QUIN-NEZ  4728   Processing Off. : BUTCHER  L..09
Search W.. t :          Arrest Wnr :

| Firearms | : | 1 | Meth | : | 3 mg. |
| Vehicles | : | 3 | PCP | : | 0 mg. |
| Money | : | $1,241.00 | Hashish | : | 0 mg. |
| Tape Mat.. | : | | | | : | . mg. |
| Cocaine | : | 5,.00 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |

| Weight | : | 0 mg. | Other | : | 0 |
| Marihua... | : | 0 mg. | | | |

NAME-RACE/SEX-DOB

LOCATION | APP DATE | DC # | CASE #

2741 N. 9TH ST. — FONTANEZ, ROBERT H/M 12/11/69
04/04/95 35-25-0007004 P95-0030 TA

2745 N. 9TH ST. — VASQUEZ, JUAN H/M 06/22/54
06/07/98 28-25-0060772 N28-0411-91

2755 N. 9TH ST. — PAUL, BRIAN W/M 02/12/74
09/09/94 94-25-0071630 P94-1611-2A

2756 N. 9TH ST. — ROSA, LUIS H/M 09/21/39
01/02/94 94-25-0003528 P94-0366-EA

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name : FONTANEZ, ROBERT H/M 12/11/69 P.P.N. : 806403

AKA :                                          Nickname :
Address : 2369 N. AMERICAN ST.

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Search by:

Delete Entire Block  Y
Enter Location        2701 N. 09th St.

| NAME-RACE-SEX-DOB ARR DATE DC# | | PIN PPN DC# |
|---|---|---|
| 2701 N. 9TH ST. | FONTANEZ, ROBERT H/M 12/11/69 | 804468 |
| | 03/24/95 95-25-002884 P-95-0511-EA | 93472 |
| 2748 N. 8TH ST. | VASQUEZ, JUAN H/M 30/. /64 | 630126 |
| | 06/07/94 96-25-002832 P96-70. -HA | 15096 |
| 2 50 N. 9TH CT. | PAUL, BRIAN W/M 01/12/76 | 736626 |
| | 09/09/94 94-25-207163 P94-1011-EA | 8454P |
| 271 N. 9TH ST. | ROSA, LUIS H/M 09/21/74 | 701201 |
| | 02/02/94 94-25 000510 P94-1166-DA | 79070 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <ins> to view the complainer locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name    : FONTANEZ, ROBERT  H/M  12/11/69   I.P.N. : 80846?
PPN     :                                    Alias :
Address :                        ST.
D.C. Number : 95-25-002884   Narc Case # : P95-0511-??
Charge      : POSS WIT DEL                  UCR # : 12-1H
Arrest Loc  : 2741 N. 9TH ST.     Div : Y
Arrest Date : 03/24/95   Arrest Time : 1815
Arrest Unit : 2400
Arrest Off. : NITKA 5753   Processing Off. : RICHARDS  8 610.

Name          : JASQUEZ, JUAN  
AKA           :  
Address       :  
D.C. Number   :  
Charge        :  
Arrest        :  
Arrest Date   : 06  
Arrest Unit   :  
Arrest Off.   : MARTIN  
Search Warr   :  

Firearms      :                                          Valu        :            0 mg.
Vehicle       :                                          LSD         :            0 mg.
Money         :              $853.10                     Hashish     :            0 mg.
Tape Mari.    : SUPP'                                                :            0 mg.
Cocaine       :               0 mg.                                  :            0 mg.
Crack         :               0 mg.                                  :            0
Heroin        :             210 mg.                      Other       :            0
Marihuana     :               0 mg.

Philadelphia Police Department     Special Investigations Bureau  
NARCOTIC ARREST BLOTTER

Name          : PAUL, BRIAN   W/M            P.P.N. : 736623
AKA           :                              Nickname :
Address       :
D.C. Number   : 94-1         1630     Narc Bura # : 991-1951-DA
Charge        : POSS W/I DEL                 UCR # : 15110
Arrest L      : 2750 N. 05TH ST.
Arrest Date   : 09/09/94   Arrest Time : 1400
Arrest Unit   : 7400
Arrest Off.   : SIMPSON   6164
Search Warr   :         Arrest Warr :

Firearms      :               0                  Valu    :            0 mg.
Vehicle       :               0                          :            0 mg.
Money         :             $13.00              Hashish  :            0 mg.
Tape Mari     : -YELL                           LSD      :            0 mg.

Cocaine       :               0 mg.             LSD             :        0 mg.
Crack         :       1,010,000 mg.             Pills           :        0

App. 306

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : R SA  IUI  P H  09/21/39   P.B.N. : 722201
AKA         :                            Nickname :
Address     :                   ST.
D.O. Number : 94 J6-3007538    Narc Case # : P94-0160 EA
Charge      : POSS W/I DEL                 UCR # : 1811.
Arrest L  : : 1787 N. 69TH ST.   Hwy? : Y
Arrest Date : 39.0. 94   Arrest Time : 1120
Arrest U..t : 2800
Arrest Ofl. : C BLK  9043   Processing Ofr. : TAGGERT  3797
Search Warr :          Atrest Warr :

| | | Meth | : | | mg. |
|---|---|---|---|---|---|
| Firearms | : | 2 | PCP | : | 3 ug |
| Vehicles | : | | Hashish | : | 0 mg. |
| Money | : | $12..00 | P25 | : | . mg. |
| Tape Har | #10 | | LSD | : | 0 mg. |
| Cocaine | : | 2 mg. | Pills | : | 3 |
| Crack | : | ..2 mg. | Other | : | 3 |
| Heroin | : | . mg. | | | |
| Marihuan | : | 0 .g. | | | |

Search by arrest location

.

*** DATA FOR NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK ***
Press <Ins> to view the compl'e no comment

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

TURNER, ROBERT   B M  04/11/79    I I N. : 618595

234 W. SILVER ST.
06 25 0043022   Narc Case # : Pro    8438
K-I                              DOB e : 12 21H
275 N. 09TH ST.    Wey? : Y
06/04/06   Arrest Time : 11 0
2500
COLON  5429   Processing Off. : SULLIVAN  4551
Arrest Warr :

| Marijuana | : | 0 | Meth | : | 0 mg. |
| Powder | : | 0 | PCP | : | 0 mg. |
| Money | : | 50.00 | Hashish | : | 0 mg. |
| Jars Bag | : MILAN | | Ice | : | 0 mg. |
| Codeine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 400 mg. | Other | : | 0 |
| Methadone | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

S e a r c h   B y   a r r e s t   /   l o c a t i o n

Search Entire Block  Y
Enter Location    275 N. 09TH ST.

|  | NAME-RACE/SEX-DOB | | PID |
| DISTRICT | ARR DATE  DC # | CASE # | REC # |

275 N. 09TH ST.    TURNER, ROBERT  B M  04/11/79    618595
06/04/06  06-25-0043022  Pro 1233-EA  57044

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name           : ABATE, ANTHONY  W/M  01/19/63   P.P.N. : 793607
AKA            :                                 Nickname :
Address        :                  T.
D.C. Number    :                   Narc Case # : B34-0119-3A
Charge         : POSS W I DEL                    UCR # : 19110
Arrest Loc     : 2400 N. 20TH ST.    Hwy? : Y
Arrest Date    : 06/28/94   Arrest Time : 1830
Arrest L it :  7300
Arrest Off.    : MCLAUGHLIN  4830   Processing Off. : MCLAUGHLIN  4830
Search P :      :            Arrest Warr :

Firearms      :           0              Meth          :              0  mg.
Vehicles      :           0              PCP           :              0  mg.
Money         :           72.00         Hashish       :              0  mg.
Tape Dat.     :                         P.I           :              0  mg.
Codeine       :           0  mg.        LSD           :              0  mg.
Crack         :           0  mg.        Pills         :              0
Heroin        :           0  mg.        Other         :              0
Marihuan      :           0  mg.

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name           : ADORNO, EDWARDO  H/M  09/20/60   P.P.N. :
AKA            :                                 Nickname :

Philadelphia Police Department ... Investigation Report
NARCOTIC ARREST LISTING

Name        : ALGARIN, ORILLI  B M  11.16.64  S.I.D. : 743...
DOB         : CELIA  DAVILA                          N.Clkname :
Address     :                          ST.
D.C. Number : 94-25-0061_313   Name Case # : P94 1-51-5A
Charge      : DEL                                UCR # : 18911
Arrest      : 2700 N. 09TH ST.      HWY. : Y
Arrest Date : 08/11/94   Arrest Time : 0005
Arrest Unit : 5300
Arrest Off. : CALLAHAN  2930   Processing Off. : ...  6139
Search Warr :                  Arrest Warr :

Firearms    :          0              Meth        :        0 mg.
Vehicles    :          0              Pcp         :        0 mg
Money       :      $26.00            Hashish      :        0 mg.
Type Narc   : +CLEA                   Spd         :        0 ...
Cocaine     :   5,240,000 mg          LSD         :        0 mg.
Crack       :          0 mg.         Pills        :        0
Heroin      :          0 mg.         Other        :        0
Marijuana   :          0 mg.

    Blade                       e Department ... Investigation Report
                          NARCOTIC ARREST LISTING

Name        : ALICEA, JOSE  H M  11/11/71   S.I.D. : 12,965
                                              Nickname :
            : 33.2 N. 05TH ST.
D.C. Number : 95-25-0031389   Name Case # : P95 1-50-5A
Charge      : K/I                                UCR # : 1822
            : 2700 N. 04TH ST.      HWY. : Y
            : 0.05/05   Arrest Time : 144:

Arrest Off. : TAGGART  4343   Processing Off. : CHANDLER  8139
Search Warr :                  Arrest Warr :

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

██████████

BELLO, JOSE   B/M   06/27/60   T.P.N. : 87668.

Address :

██████████   Arr Case # : PD4 3477 8?

D.P. Number :

CF ??? : POSS W/I DEL                        UCR # : 78118

Arrest Loc : 2700 N. 09TH ST.   Hgvt : Y

Arrest Date : 09/30/90   Arrest Time : 1:00

D.C. #? Loc# : 5389

Arrest Off. : O'HANLON  6167   Processing Off. : RICHARDSON  6392

Search Warr :                Arrest Warr :

| | | | | |
|---|---|---|---|---|
| Firearm | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $12.00 | Warrant | : | 0 mg. |
| Type Dr. | : NISCA | | RIT | : | 0 mg |
| Cocaine | : | 1,000 mg. | LTI | : | 0 mg. |
| Meth | : | 0 mg. | P.Tab | : | 0 |
| Heroin | : | 2,500 mg. | Other | : | 0 |
| Marihuan | : | 0 mg. | | | |

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

s  e  a  r  c  h    b  y    a  r  r  e  s  t    l  o  c  a  t  i  o  n

Search Entire Block   Y
Enter Location        2700 N. 09TH ST.

| LOCATION | NAME-RACE-SEX-DOB<br>ARR DATE  DC # | CASE # | PEN<br>REG # |
|---|---|---|---|

700 N   09TH ST                     BROGDON  JESSE  B/M  02/16/73                    762266

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : SMITH, RICARDO  H/M  ...  ...  ...
Nickname :
Address    :

Firearm    :        0              Meth      :
Vehicles   :        0              PCP       :
Money      :     $674.00          Hashish   :
Tape Rec.  :                       PCP       :
Cocaine    :        0 mg.         LSD       :
Crack      :    5,000 mg.         Pills     :
Heroin     :    7,580 mg.         Other     :
Marihuana  :        0 mg.

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : CAMACHO, RICARDO  H/M  08/13/73   S.P.N. :
AKA        :                              Nickname :
Address    :
D.C. Number:                       Narc Case # : PS5-1722-SA
Charge     : POSS W/I DEL                 UCR # : 18.19
Arrest     : 2700 N. 5OTH ST.     Hwy? : Y
Arrest Date:                 Arrest Time : 1620
Arrest :
Arrest :                          Processing Off. : SZANTOWICZ
Search Warr :

Firearms   :        0              Meth      :
Vehicles   :        0              PCP       :
Money      :     $543.00          Hashish   :
Tape Rec   :                       PCP       :
Cocaine    :        0 mg.         LSD       :
Crack      :        0 mg.         Pills     :
Heroin     :      160 mg.         Other     :
Marihuana  :        0 mg.

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Search Entire Block   Y
Enter Location        1700 N. 6/TH ST.

| | NAME-RACE GTX POB | | PPN |
|---|---|---|---|
| LOCATION | ARR DATE  DC # | DATE # | RPC # |
| 1700 N. 8TH ST. | CAMPBELL, JESSIE  B/M  03/01/60 | | 657897 |
| | 06/23/95  95-05-0251876  P95-2053 HA | | 91418 |
| 1700 N. 8TH ST. | CLARK, JOHN  E M  03/21/68 | | 776040 |
| | 11/2/3/08  90-15-0365112  P91-0441-TA | | 7.401 |
| 100 N. 8TH ST. | CLIFTON, BRADLEY  F M  01/11/49 | | 454120 |
| | 12/14/94  94-15-80-3943  F94-01-19-EA | | 87035 |
| 1700 N. 8TH ST. | COLON, REYNALDO  H M  12/07/67 | | 506311 |
| | 03/03/95  95-15-0C004 0  P95-3800 EA | | 08130 |

>>> AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the Registered Locations

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST REGISTER

Name      : CAMPBELL, JESSIE  B M  03/01/60   F.P.N. : 657897
AKA       : CAMPBELL, DONALD            Nickname :
Address   :                   NICK
D.C. Number : 95-25-0051876    Narc Case # : 135-205-1TA            App. 317
Charge    : POSS W I DEL                        UCR # : 1811H
Arrest Loc : 1700 N. 28TH ST.   Ward :

Philadelphia Police Department      Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : CLARK, JOHN                    P.P.N. : 776040
AKA         :                                Nickname :
Address     : 1603  W. VALTER  ST.
D.C. Number : 93-78 006185              Court Case # : F-3-3641-BA
Charge      : K/I                            UCR # : 1821H
Arrest  Loc : 2700 N. 29TH ST.        Hwy? : Y
Arrest Date : 11/04/93   Arrest Time : 1830
Arrest Unit : 7400
Arrest Off. : HENNINGER  4096   Processing Off. : SCARPATO  3981
Search Warr :            Arrest Warr :

| Firearm | | Meth | | U.D.C. |
| Vehicle | | U.S. | | U.S. |
| Money | | Fashion | | U.S. |
| Tape UI : | 9RBNI | U.D. | | U.S. |
| Cocaine | | U.D. | | U.S. |
| Crack | | Pills | | U |
| Heroin | | Other | | U |
| Marihua. | | U | | |

Philadelphia Police Department      Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : CLIFTON, ABLE             I.P.N. : 454126
AKA         :                                Nickname :
Address     :
D.C. Number :                   Court Case # : F94-2199 BA
Charge      :                                UCR # : 1811H
Arrest  Loc :              T.    Hwy? : Y
Arrest Date :              est Time : 0900
Arrest Unit : 7400
Arrest Off. : QUINONES  4773   Processing Off. : RULEY  4563
Search Warr :            Arrest Warr :

App. 318

... Police Department ... Special Investigations ...
NARCOTIC ARREST BLOTTER

Firearm        :        0            Meth         :          0 gr.
Vehi...         :        0            PCP          :          0 gr.
Money          :    $150.00          Hashish      :          0 gr.
Tape ...        :                     P2P          :          0 gr.
Cocai...        :        0 mg.        LSD          :          0 gr.
Crack          :        0 gr.        Pills        :
Heroin         :      330 mg.        Other        :
Heroi...        :        0 mg.

... delphia Police Department    --   Special Investigations Bureau
NARCOTIC ARREST BLOTTER

s e a r c h   b y   a r r e s t   l o c a t i o n

Search Entire Block  Y
Enter Location        2700 N. 09TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE  DC #           CASE # | PPN REC # |
|---|---|---|
| 2709 N.   TH ST. | COLON, REYNALDO  H/M  06/10/71  02/13/95  95-25-0013803  B95-4017-EA | 904311 ...943 |
| 2700 N.   TH ST. | CORNELL, TERRY  B/M  04/23/43  04/26/96  96-25-0001206  B96-9017-EA | 419322 ...681 |
| 2700 N. 09TH ST. | CRUZ, ROBERTO  H/M  04/12/63  01/06/95  95-25-0001402  P95-2057-EA | 305097 87442 |
| 2700 N.   TH ST. | CRUZ, ROBERTO  H/M  04/12/63  08/02/95  95-25-0064273  B95-9016-EA | 305097 91096 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : CORNELL, TERRY   B/M  04/23/4?   P.P.N. : 415222
AKA         : ??????? WADE JAMES SEXTON            Nickname :
Address     :
D.P Number  :                                c Case # : Drc-083?-LA
Charge      : K/I                                UCR # : 18?1?
Arrest L.   : 2700 N. 09TH ST.       Hwy? : ?
Arrest Time : 04/16/96   Arrest Time : 12?0
Arrest O.t. : 250?
Arrest Off. : SGT. WILEY  8601   Processing Off. : RICHARDSON  6352
Charge Warr :            Arrest Warr :

| Firearms |   | 0       | Meth    |   | 0 mg. |
| Vehicles |   | 0       | PCP     |   | 0 mg. |
| Money    |   | $22.00  | Hashish |   | 0 mg. |
| Tops Net | #URAN | 501 |   |   | ? ng. |
| Cocaine  |   | 0 mg.   | LSD     |   | 0 mg. |
| Crack    |   | 800 mg. | Pills   |   | 0 |
| Heroin   |   | 0 mg.   | Other   |   | 0 |
| Marihuan |   | 0 mg.   |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name     : CRUZ, ROBERTO   H/M  04/22/63   P.P.N. : 235097
AKA      :                               Nickname :
Address  :                    r.
D.P Number : 95-?5-0001402   Narc Case # : 195-0957-FA

App. 320

Arrest :
Arrest Date :
Arrest Unit :
Arrest Off. :
Search Warr :

| Firearm | : | | Meth | : | 0 mg. |
|---|---|---|---|---|---|
| Vehicles | : | | PCP | : | 0 mg. |
| Money | : | | Hashish | : | 0 mg. |
| Tape B.M. | : | | TCE | : | 0 mg. |
| Cocaine | : | | LSD | : | 0 mg. |
| Crack | : | | Pills | : | 0 |
| Heroin | : | | Other | : | |
| Marihuana | : | | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name      : CRUZ, ROBERTO    S.D.N. : 808947
AKA       : MI RAIL   LUIS?          Nickname :
Address   :                    PA.
D.C. Number : 95-75-0064314    Dist Case # : E95-0126-EA
Charge    : POSS W/T DEL          UCR # : 1811C
Arrest Loc : 2700 N. 09TH ST.    PHILA. PA
Arrest Date : 02/02/95    Arrest Time : 1400
Arrest Unit : 74??
Arrest Off. : DAVIS  5948   Processing Off. : BROWN  5478
Search Warr :    Arrest Warr :

| Firearm | : | 0 | Meth | : | 0 mg. |
|---|---|---|---|---|---|
| Vehicles | : | 0 | PCP | : | 71,280 mg. |
| Money | : | 50.00 | Hashish | : | 0 mg. |
| Tape Unit | : | #CRAH | TCE | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 155,000 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

s e a r c h   b y   a r r e s t   l o c a t i o n

Search Entire Block  ?
Enter Location    2700 N. 09TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE  DC # | CASE # | IFR REL # |
|---|---|---|---|
| 2700 N.  9TH ST. | DANIELS, KAREEM  B/M  10/13/79 07/01/95  95-25-006?314 | P?? DIST PA | 76121? 91235 |
| 2700 N.  9TH ST. | DAVILA, FELIX  H/M  11/26/70 | | 84113? |

Philadelphia Police Department -- Special Investigation Bureau
NARCOTIC ARREST BLOTTER

Name      : LAYLIL, FELIX  H/M  11/28/73  F.P.N. : 91003.
APN       : FELIX MACHEN              Nickname :
Address   :                      5 ST.
D.C. No...: 3         Narc Case # : P95-1850-FA
Charge    :                       UCR # : 1251.6
Arrest L..:                 Hwy? : Y
Arrest T..:              t Time : 1630
Arrest P.t: 7509
Arrest O..: OFFIC. 9824  Processing O't. : CASTLE  # 54
Search W. ..:         Arrest War.. :

| | | Meth | | |
|---|---|---|---|---|---|
| Time/Date | 0 | PCP | | | |
| Money | $221.20 | Hashish | | | |
| Tape St. | #URAN | PCP | | | |
| Cocaine | 0 mg. | LSD | | | |
| Crack | 200 mg. | Pills | | | |
| Heroin | 0 mg | Other | | | |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : BADILLA, FELIX  H/M  15      ...
SSN         :
File r      :                          ...
Arrest Number : ...          Narc ...
Charge      : POSS W/I DEL                    ...
Arrest Loc  : 2700 N. 09TH ST.         Hvy...
Arrest Date : 03/11/95   Arrest Time ...
Arrest Unit : 7400
Arrest Off. : COOLEN   175   Processing ...   ...
Search Warr :              Arrest Warr :

| Firearms | : | 0 | Hash | : | 0 mg. |
| Vehicles | : | 0 | ... | : | 0 mg. |
| Money | : | $24.00 | Lithium | : | 0 mg. |
| Tape Mark | : | | ... | : | 0 mg. |
| Cocaine | : | 0 mg. | ... | : | 0 mg. |
| Crack | : | 8,680 mg. | ... | : | 0 |
| Heroin | : | 8.190 mg. | ... | : | 0 |
| Marijuana | : | 0 mg. | | | |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : DEJESUS, JOSE  H/M  ...   A.g.N. : 311204
SSN         :                          Narc...
Address     :                  ST.
D.C. Number : 95-25-0043905   Narc Case ...  UCR # : 1821C
Charge      : K/I
Arrest Loc  : 2700 N. 09TH ST.    Hvy... : 0
Arrest Date : 06/01/95   Arrest Time : 1030
Arrest Unit : 2500
Arrest Off. : ORTIZ  5624   Processing Off. : BADILLA  5891
Search Warr :              Arrest Warr :

| Firearms | : | 0 | Hash | : | 0 mg. |
| Vehicles | : | 0 | ... | : | 0 mg. |
| Money | : | $83.00 | Mescalin | : | 0 mg. |
| Tape Mark | : #CRAN | ... | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 100 mg. | Pill | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marijuana | : | 0 mg. | | | |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Search by Arrest ... Location

Search Entire Block  Y

... AT LEAST ONE NARCOTICS RELATED COMPLAINT IS ON FILE IN THIS FILE ...
... at ... view of complaint location.

Philadelphia Police Department ... Special Investigations Bureau
NARCOTIC ARREST PLOTTER

| | |
|---|---|
| Name | : DELLERY, ... B/M ... P.P.N. : 7?413? |
| AKA | : Nickname : |
| Address | : |
| D.C. Number | : 95-... Narc Case # : P95-3198-EA |
| Charge | : ... UCR # : 1821H |
| Arrest L c | : 2?00 N. ... ST. Hwy? : Y |
| Arrest Date | : 10 ... Arrest Time : 0735 |
| Arrest Unit | : 25... |
| Arrest Off. | : IAB ... Processing Off. : GARNICA 1926 |
| Search Warr | : Arrest Warr : |

| | | | | |
|---|---|---|---|---|
| Firearms | : 0 | Meth. | : | 0 mg. |
| Vehicles | : 0 | PCP | : | 0 mg. |
| Money | : Dollars | Hashish | : | 0 mg. |
| Tape Marc | : HEART | PCP | : | 0 mg. |
| Cocaine | : ? mg | LSD | : | 0 mg. |
| Crack | : ? gm. | Pills | : | 0 |
| Heroin | : ?.? mg. | Other | : | 0 |
| Marijuana | : 0 mg. | | | |

Philadelphia Police Department ... Special Investigations Bureau
NARCOTIC ARREST PLOTTER

| | |
|---|---|
| Name | : DIXION, RAHAKAN B/M 04/23/71 P.P.N. : 774043 |
| AKA | : Nickname : |
| Address | : N |
| D.C. Number | : 93-35-0061-24 Narc Case # : P97-0269-2A |
| Charge | : POSS W/I DEL UCR # : 1811H |
| Arrest L c | : 2700 N. 29TH ST. Hwy? : Y |
| Arrest Date | : 01/19/97 Arrest Time : 1027 |
| Arrest Unit | : 2500 |
| Arrest Off. | : COULTER ... Processing Off. : WOMMIENISER 641.. |
| Search Warr | : Arrest Warr : |

App. 324

Philadelphia Police Department  -  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name          : DUELLI, NATHAN  B/M  09/27/63  P.P.N. : 04781
AKA           :                                Nickname : T.C. XXXX
Address       :                        ST.
D.C. # : XX-XX-0000195   Narc Case # : SI2 0155-EA
Charge        : F.V.                            UCR # : 1801E
Arrest  Loc : 1701 N. 60TH ST.    Hwy: Y
Arrest Date : 08/17/97   Arrest Time : 1840
Arrest Amt : 7,00
Arrest      : SAL/  568  Processing Off. : LANIER  0669
Search Warr :              Arrest Warr :

Firearms      :          0            Meth          :           0 mg.
Vehicles      :          0            PCP           :           0 ml.
Money         :       $0.00           Hashish       :           0 gr.
Tape #s       :                       PCP           :           0 gr.
Marijuana     :          0 mg.        LSD           :           0 mg.
Crack         :        400 mg.        Pills         :           0
Heroin        :          0 mg.        Other         :           0
Methamph.     :          0 mg.

Philadelphia Police Department  -  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name          : ECHLAN, JUAN  H/M  11/09/59  P.P.N. : 706571
AKA           :                                Nickname :
Address       :                    m.
D.C. # : XX-XX-0009412   Narc Case # : S95-1755-EA
Charge        : DEL                            UCR # : 1801H
Arrest  Loc : 1701 N. 60TH ST.    Hwy: Y
Arrest Date : 12/08/95   Arrest Time : 0800
Arrest Amt : 7400
Arrest      : LEON  0185  Processing Off. : GEGSNER  0648
Search Warr :              Arrest Warr :

Firearms      :          0            Meth          :           0 mg.
Vehicles      :          0            PCP           :           0 ml.
Money         :      $19.00           Hashish       :           0 mg.
Tape #s       : HRTB4                 PCP           :           0 gr.
Marijuana     :          0 mg.        LSD           :           0 mg.

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : FELIX, LUIS  H/M  08/04/69   P.F.N. : 742623
AKA        :                                       Nickname :
Address    :
I.C. Number : 95-25-0023121   Narc Case # : B95-0087-EA
Charge     : POSS W/I DEL                          UCR # : 1811H
Arrest for : 2700 N. 09TH ST.   Hwy' : Y
Arrest Date : 03/28/95   Arrest Time : 1900
Arrest Unit : 7400
Arrest Off. : DAVIS  5545  Processing Off. : CHRANE  7405
Search W Rt :         Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $29.00 | Hashish | : | 0 mg. |
| Tape Mach | : | | PCP | : | 0 mg. |
| Cocaine | : | 50 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 330 mg. | Other | : | 0 |
| Marihuan. | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name          :
Address       :                          ST.
D.C. Number   :                      Narc Case # : F90-3423-BA
Charge        :    POSS W/I DEL                    UCR # : 1611
Arrest Loc    :                                    Hwy? : Y
Arrest Date   :                    Arrest Time :
Arrest Unit   :
Arrest Off.   : FLETCHER  2721   Processing Off. : MARGARET   2223
Search Warr   :                   Arrest Warr :

---

Firearm       :                           Meth      :              0 mg.
Vehicle       :                           PCP       :              0 mg.
Money,        :                           Hashish   :              0 g.
Tape Mark     : #PINK                      PIP       :              0 g.
Cocaine       :            3 mg.          LSD        :              0 mg.
Crack         :          100 mg.          Pills      :
Heroin        :            0 mg.          Other      :              0
Marihuana     :            0 mg.

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

---

Name          : GARCIA, JOHN  B/M  01/20/53   P.F.N. : 755006
AKA           :                                        Nickname :
Address       :                          ST.
D.C. Number   : 91-25-0104341   Narc Case # : F91-1720-BA
Charge        : POSS W/I DEL                    UCR # : 1611C
Arrest Loc    : 2700 N. 09TH ST.     Hwy? : Y
Arrest Date   : 04/21/92   Arrest Time : 1445
Arrest Unit   : 2500
Arrest Off.   : KING   6742   Processing Off. : LANGLEY   4432
Search Warr   :                   Arrest Warr : 0168027

---

Firearm       :              0            Meth      :              0 mg.
Vehicle       :              0            PCP       :              0 mg.
Money         :            $0.00          Hashish   :              0 mg.
Tape Mark     :                           PIP       :              0 mg.
Cocaine       :            2 mg.          LSD        :              0 mg.
Crack         :            3 mg.          Pills      :              0
Heroin        :            0 mg.          Other      :              0
Marihuana     :            0 mg.

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

---

Name          : LARRETT, JULIA  B/F  08/06/55   P.F.N. : 479534
AKA           :                                        Nickname :
Address       :                          ST.
D.C. Number   : 95-25-0088175   Narc Case # : B95-0135-HA
Charge        : DEL                            UCR # : 1801C
Arrest Loc    : 2700 N. 09TH ST.     Hwy? : Y
Arrest Date   : 10/26/95   Arrest Time : 1830
Arrest Unit   : 7400

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Search by arrest location

Search Entire Block   Y
Enter Location        2700 N. 09TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE DC # TECH # | PPN PCN # |
|---|---|---|
| 2700 N. 09TH ST. | GETER, KEVIN  B/M  10/16/63  05/12/93  93-25-0043008,  B93-0043-BA | 173108  71293 |
| 2700 N. 09TH ST. | GLOVER, KEVIN  B/M  05/15/60  09/28/91  94-25-0005007, 091-511-PA | 579345  71450 |
| 2700 N. 09TH ST. | GONZALES, MARIA  H/F  02/02/59  05/11/95  95-25-0044,81  B95-010,4-LA | 811750  31047 |
| 2700 N. 09TH ST. | GONZALES, MARIA  H/F  02/02/59  06/11/95  95-25-0049181  B95-0102-BA | 811750  31289 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name     : GETER, KEVIN  B/M  10/16/63   P.P.N. : 173108
AKA      :                                Nickname :
Address  :                    ST.
D.C. Num : 93-25-0043008   Narc Case # : B93-0043-BA
Charge   : POSS W/I DEL                  UCR # : 9111
Arrest L : 2700 N. 09TH ST.   Hwy? : Y
Arrest D te : 05/12/93   Arrest Time : 1615
Arrest U it : 7400
Arrest O t. : MCLAUGHLIN  4830   Processing Off. : HOLLMAN  1857
Board. W r :              Arrest Warr :

| Paraph..t : | 0 | Meth. : | P mg. |
|---|---|---|---|
| Amphlt.t : | 0 | PCP : | H mg. |
| Money : | $60.00 | Hashish : | 0 mg. |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : SILVERA, KEVIN                           P.P.N. : 569249
AKA         :                                          Nickname :
Address     :                     T.
D.C. Number :                     Narc                          P.
Charge      : POSS W/I DEL                             DOB # : 18118
Arrest Loc  : 1700 N. 09TH ST.       Buy? : N
Arrest Date : 09/28/93    Arrest Time : 2315
Arrest Unit : 2500
Arrest Off. : HAUSE  2057                              RATTNETTI  5064
Search Warr :          Arrest Warr :

| Firearm. | : | 2 | Meth | : | 0 mg. |
| Vehicles | : | 0 | P P | : | 0 mg. |
| Money | : | $6.00 | Hashish | : | 0 mg. |
| Tape Ma x | : #YELL | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 2,300 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : GONZALES, MARIA  H/F  5'4"  P.P.N. : 811750
AKA         :                                          Nickname :
Address     :                     ST.
D.C. Number : 95-25-0046385    Narc  Dist # : 600-0004 EA
Charge      : DEL                                      PCP # : 18010
Arrest Loc  : 2700 N. 09TH ST.       Buy? : Y
Arrest Date : 06/12/95    Arrest Time : 1510
Arrest Unit : 7400
Arrest Off. : DAVIS  5548                              BROWN  1455
Search Warr :          Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $356.00 | Hashish | : | 0 mg. |
| Tape Mark | : | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 1,200 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        :          [redacted]
AKA         :  [redacted]
Alias       :  [redacted]
D.O.B/Other :
Nation      :
Arrest Loc  :                         Dist :
Arrest Date :                  Arrest Time : 1450
Arrest Unit :
Arrest      :                         [redacted]
Search Warr :          Arrest Warr :

Firearm     :        6                              [redacted]     0 mg.
Vehicle     :        5                              0 mg.
Money       :        $              :              0 mg.
Tape #      : -PPM                                  0 mg.
Cocaine     :        600 mg.        Lsd            :        0 mg.
Crack       :        0 g.          Pills          :        0
Heroin      :        mg.           Other          :        0
Marijuana   :        0 g.

        Philadelphia Police Department        [redacted]
                NARCOTIC ARREST BLOTTER

                s e a r c h   b y   a r r e s t   l o c a t i o n

        Search Entire Block  Y
        Enter Location       2700 N. 09TH ST.

LOCATION                 [redacted]                    #    [redacted]

2700 N. 09TH ST.         [redacted]              65    [redacted]
                                                 2-EA

2700 N. 09TH ST.         [redacted]              66    [redacted]
                                                 3-EA

2700 N. 09TH ST.         [redacted]              00    [redacted]
                                                 7-EA

2700 N. 09TH ST.         [redacted]         /H   [redacted]
                                            28         EA

        <          [redacted]                          CK >>>

        X          [redacted]
                                            TER

Name        : GONZALEZ, CARLOS  H/M  11/05/65   P.P.N. : 311142
AKA         : [redacted]                        Nickname :
Address     :
D.C. Number :        17  [redacted] arc Case # : 195-1822-EA
Charge      :                              UCR # : 1821C
Arrest Loc  :                       Ward : Y

Philadelphia Police Department -- Special Investigation Bureau
NARCOTIC ARREST BLOTTER

Name : CARDIEL, ROBERT H/M ...

Philadelphia Police Department -- Special Investigation Bureau
NARCOTIC ARREST BLOTTER

Philadelphia Police Department - Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : HERNANDEZ, EDWARD   H/M  17  1,152   P.F.N. : 737448
AKA         :                                        Nickname :
Address     : 930 N. SILVER ST.
I.C. Number : 90-15-2179828   Narc Case # : 90 0498 BA
Charge      : PONY W/I DEL                          UCR # : 18110
Arrest L 2  : 2700 N. 29TH ST.   Hwyt : Y
Arrest F N  : 12/15/90   Arrest Time : 1:15
Arrest Unit : 7405
Arrest Off. : KIN. 1/33   Supervising Lt. : VAN HAM  5076
Search Warr :              Arrest Warr :

| Firearms   |        | 0         | Meth    |   | 0 mg.   |
|------------|--------|-----------|---------|---|---------|
| Vehicles   |        | 0         | PCP     |   | 0 mg.   |
| Money      |        | $0.00     | Hashish |   | 0 mg.   |
| Tape Mari  | #PINK  |           | PCP     |   | 0 mg.   |
| Cocaine    |        | 0 mg.     | LSD     |   | 0 mg.   |
| Crack      |        | 0.000 mg. | Pills   |   |         |
| Heroin     |        | 0 mg.     | Other   |   | 0       |
| Marihuana  |        | 0 mg.     |         |   |         |

Philadelphia Police Department - Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : HERNANDEZ, EDWARD   H/M  17  1,152   P.F.N. : 737448
AKA         :                                        Nickname :
Address     : 930 N. SILVER ST.
I.C. Number : 90-15-2179828   Narc Case # : 90 0498 BA
Charge      : PONY W/I DEL                          UCR # : 18110
Arrest L 2  : 2700 N. 29TH ST.   Hwyt : Y
Arrest F N  : 12/15/90   Arrest Time : 1:15
Arrest Unit : 7405
Arrest Off. : KIN. 1/33   Supervising Lt. : VAN HAM  5076
Search Warr :              Arrest Warr :

| Firearms   |        | 0         | Meth    |   | 0 mg.   |
|------------|--------|-----------|---------|---|---------|
| Vehicles   |        | 0         | PCP     |   | 0 mg.   |
| Money      |        | $0.00     | Hashish |   | 0 mg.   |
| Tape Mari  | #PINK  |           | PCP     |   | 0 mg.   |
| Cocaine    |        | 0 mg.     | LSD     |   | 0 mg.   |
| Crack      |        | 0.000 mg. | Pills   |   |         |
| Heroin     |        | 0 mg.     | Other   |   | 0       |
| Marihuana  |        | 0 mg.     |         |   |         |

NAME/RACE/SEX-DOB
A-R OATH  DO A                              ...

RICALRY, RICHARD  H/M  12/11/75

JACKSON, VICTOR  B/M  03/09/56

JACKSON, WILLIAM  B/M  01/08/42

JOHNSON, HERMAN  B/M  09/05/53

... AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK ...
Here click to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name      : RICALRY, RICHARD  H/M  11/11/75   P.P.N. : 1701 7
AKA       :                                    Nickname :
Address   : 2511 N. FRANKLIN ST.
D.C. Number : 99-75-003851?    Marc Case # : P99-1695-EA
Charge    : POSS WIL DEL              UCR # : 1811C
Arrest Loc : 1700 N. 29TH ST.    Hwy? : Y
Arrest Date : 05/19/99   Arrest Time : 1640
Arrest List : 1900
Arrest Off. : M LAUGHLIN  9434   Processing Off. : MICHALSKI  1111
Search Warr :           Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 |
| Vehicles | : | 0 | PCP | : | |
| Money | : | $31.00 | Hashish | : | 0 |
| Paper Value | : | | PLP | : | |
| Cocaine | : | 0 bg. | LSD | : | |
| Crack | : | 1.40? mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuan | : | 1,500 bg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name      : JACKSON, VICTOR  B/M  03/09/56   P.P.N. : 58792:
AKA       : VICTOR JOHNSON                   Nickname :
Address   : 2760 N. 09TH ST.

Philadelphia Police Department     Special Investigation Bureau
NARCOTIC ARREST BLOTTER

Name        : JACKSON, WILLIAM   B/M   01/08/70   P.P.N. : 8.36 ?
AKA         :                                           Nickname :
Address     : 2322 N. FRANKLIN ST.
D.C. Number : 95-25-0064003   Narc Case # : PC 15-13-BA
Charge      : K/I                              UCR # : 1821C
Arrest Loc  : 2700 N. 09TH ST.   Hwy? : Y
Arrest Date : 08/09/95   Arrest Time : 1540
Arrest Unit : 2500
Arrest Off. : JONAS  5858   Processing Off. : CLEARY  6300
Search Warr :           Arrest Warr :

Firearm     :         0            Meth        :         0 gs.
Vehicle     :         0            PCP         :         0  ?.
Money       :         $0.00        Hashish     :         0 mg.
Paper #     : +LINK               P2i          :         0 + g.
Parapher.   :         500 mg.      LSD          :         0 gs.
Crack       :         0 mg.        Pills        :
Heroin      :         0 mg.        Other        :
Marijuana   :         0 mg.

Philadelphia Police Department     Special Investigation Bureau
NARCOTIC ARREST BLOTTER

Name        : JOHNSON, HERMAN   B/M   03/05/56   P.P.N. : 795.35
AKA         :                                           Nickname :
Address     :                       ST.
D.C. Number : 93-25-006707?   Narc Case # : F93-1591-BA
Charge      : DEL                            UCR # : 1801D
Arrest Loc  : 2700 N. 09TH ST.   Hwy? : Y
Arrest Date : 07/26/93   Arrest Time : 1755
Arrest Unit : 7400
Arrest Off. : GRIECO  5369   Processing Off. : BATTERY  6901
Search Warr :           Arrest Warr :

Philadelphia Police Department
NARCOTIC ARREST BLOTTER

Search Unit:
Enter Location:

| LOCATION | | CASE # | PFN |
|---|---|---|---|
| 3700 N. 99TH ST. | JOHN, E., NIL, B/M 04/21/69 | Y95 1667 EA | 683207 |
| 3700 N. 99TH ST. | PERR, H., SHAWN M/M 07/24/77 | F96-0645-EA | 765977 |
| 3700 N. 99TH ST. | AXXX, ELBY M/M 07/28/50 | F96-0645-EA | 435927 |
| 3700 N. 99TH ST. | CARACHENTE, PAELU M/M 07/01/58 | B95 0101-EA | 751519 |

>>> AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK <<<
Press <Ins> to view the complaint locations

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : JOHNSON, ORIE   E/M 04/21/69   I.P.N. : 683207
AKA         :                               Nickname :
Address     :                    ST.
D.C. Number : 95-25-0091435   Warr Case # : 195 1667-EA
Charge      : POSS W/I DEL                  UCR # : 1611H
Arrest Loc  : 3700 N. 99TH ST.   Hospt : Y
Arrest Date : 11/06/95   Arrest Time : 16:3
Arrest Dist : 7500
Arrest Off. : RODRIGUEZ   Asst. Processing Off. : STARBATO  3982
Search Warr :              Arrest Warr :

| Firearms | | 0 | Meth | | 0 mg. |
|---|---|---|---|---|---|
| Vehicles | | 0 | PCP | | 0 mg. |
| Money | | $31.00 | Hashish | | 0 kg. |
| Tape Mark | ROCK | | PCP | | 0 mg. |
| Cocaine | | 0 mg. | LSD | | 0 kg. |
| Crack | | 0 mg. | Pills | | 0 |
| Heroin | | 0 mg. | Other | | 0 |

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name          :
AKA           :                                        Nickname :
Address       : ▓▓▓▓▓▓▓▓
D.C. Number   :                    Warr Case # : 896-063-  ID
Charge        :                              UCR # : 1901
Arrest Loc.   :                    Hwy: N
Arrest Date   :                    Arrest Time : 0150
Arrest Unit   :
Arrest Off.   :          Processing Off. : RULEY  7863
Search Loc.   :          Arrest Warr :

| Firearms |   |          | Meth    |   | 0 mg. |
|----------|---|----------|---------|---|-------|
| Vehicles |   |          | PCP     |   |       |
| Money    |   |          | Hashish |   |       |
| Tape Mach|   |          | PJP     |   |       |
| Cocaine  |   | 300 mg.  | LSD     |   |       |
| Crack    |   |          | Pills   |   |       |
| Heroin   |   | 5,340 mg.| Other   |   |       |
| Marihuana|   | 0 mg.    |         |   |       |

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name          : JONES, BOBBY  B/M  07/28/50   P.P.N. : 425027
AKA           :                                        Nickname :
Address       : ▓▓▓▓▓▓▓▓            .
D.C. Number   : 96-05-9049052    Warr Case # : 896-0645-EA
Charge        : K/I                          UCR # : 18210
Arrest Loc.   : 7702 N. 20TH ST.    Hwy: Y
Arrest Date   : 06/25/96   Arrest Time : 0350
Arrest Unit   : 78CU
Arrest Off.   : CREDIT  6941   Processing Off. : RULEY  7863
Search Loc.   :          Arrest Warr :

| Firearms |   |        | Meth    |   | 0 mg. |
|----------|---|--------|---------|---|-------|
| Vehicles |   | X      | PCP     |   | 0 mg. |
| Money    |   | $0.00  | Hashish |   | 0 mg. |
| Tape Mach|   |        | PJP     |   | 0 mg. |
| Cocaine  |   | 0 mg.  | LSD     |   | 0 mg. |
| Crack    |   | 0 mg.  | Pills   |   | 0     |
| Heroin   |   | 0 mg.  | Other   |   |       |
| Marihuana|   | 0 mg.  |         |   |       |

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name          : LARACUENTE, PABLO  H/M  07/01/59   P.P.N. : 752519
AKA           :

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Search by arrest number

Search Entire Block  Y
Enter Location    1700 N. 09TH ST.

| LOCATION | NAME RACE/SEX/DOB ARR DATE DC # CASE # | PIN REC # |
|---|---|---|
| 1700 N. 09TH ST. | LEWIS, ANTONIO B/M 11/22/76 | 811716 |
| | 03/29/95 95-25-007082 P95-1884-EA | 32532 |
| 1700 N. 09TH ST. | LEWIS, JUSTIN B/M 02/12/74 | 795541 |
| | 06/01/94 94-25-0049040 P94-3187-BA | 3.122 |
| 1700 N. 09TH ST. | LEWIS, MICHAEL B/M 01/07/64 | 454451 |
| | 11/07/93 95-25-0091670 P95-1813-DA | 43765 |
| 1700 N. 09TH ST. | MALDANDO, JUAN H/M 06/01/77 | 811498 |
| | 06/06/95 95-25-0014474 P95-1787-BA | 90065 |

>> AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint location

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

| | | |
|---|---|---|
| Name | : LEWIS, ANTONIO B/M 11/22/76   P.P.N. : 811716 | |
| AKA | : | Nickname : |
| Address | : ST. | |
| D.C. Number | : 95-25-007082   Ward Case # : P95-1884-EA | |
| Charge | : DEL | UCR # : 1801C |
| Arrest Loc | : 1700 N. 09TH ST.   Hwy? : Y | |
| Arrest Date | : 03/29/95   Arrest Time : 1510 | |
| Arrest Unit | : 2500 | |
| Arrest Off. | : FONTANEZ 5635   Processing Off. : CHANDLER 5635 | |
| Search Warr | : Arrest Warr : | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : LEWIS, CURTIS                    P.P.N. : 755541
AKA        :                                  Nickname :
Address    :
D.C. Number :                  Dist.          P95-0207-SA
Charge     : F/I                              UCR # : 1021H
Arrest Loc :
Arrest Date : 08/          Arrest Time :
Arrest Unit : 710U
Arrest Of. : MCLAUGHLIN                 Processing Off. : MCKEEFREY
Search Warr :           Arrest Warr :

| Firearm | : | 0 | Meth | : | 0 mg. |
| Vehicle | : | 0 | PCP | : | 0 mg. |
| Money | : | $0.00 | Hashish | : | 0 mg. |
| Tape Mark | : +CLEA | | | : | mg. |
| Cocaine | : | 700 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : LEWIS, MICHAEL   B.M        /54    P.P.N. : 454451
A          :                                  Nickname :
D.C. Number :                  Dist. # : P95-1613 SA
Charge     :                                  UCR # : 1621H
Arrest L   :
Arrest Date : 11/07/95    Arrest Time : 1510
Arrest Unit : NFU
Arrest Of. : GRIECO    Processing Off. : FRANCIS  3885
Search Warr :

| Firearms | : | Meth | : |
| Vehicles | : | PCP | : |
| Money | : | Hashish | : |
| Tape Mark | : | P22 | : |
| Cocaine | : | 0 mg. | LSD | : |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

S e a r c h   b y   a r r e s t   l o c a t i o n

Search Entire Block  Y
Enter Location        2700 N. 09TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE  DC # | DC-N # | ITEM ITEM # |
|---|---|---|---|
| 2700 N. 09TH ST. | MALDONADO, JUAN  H/M  06/22.77 08/05/95  95-25-0066559  P-5-04.7-EA | | 911434 -2260 |
| 2700 N. 09TH ST. | MARDONADO, NELLY  H/M  03/27.61 10/27/95  25-25-0088345  E95-7770-EA | | 681420 51807. |
| 2700 N. 09TH ST. | HARQUEZ, EDWIN  W/M  07/03/74 07/17/95  95-25-0057336  P95-1214-EA | | 802311 9:770 |
| 2700 N. 09TH ST. | MARQUEZ, JOSE  H/M  11/06/75 06/12/95  95-25-0046235  P-5-2294-EA | | 911143 91249 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

[Heavily redacted/illegible text block with black redaction bars]

Arrest Off. : MALDEFO  COPP  Processing Off. : MICHAEL.. 
Arrest Warr :

| | | | | | |
|---|---|---|---|---|---|
| | | 0 | Meth | | |
| Weed | | 0 | PCP | | |
| Money | | $0.00 | Hashish | | |
| Tape Mark | | | P.I | | |
| Cocaine | | 1,100 mg. | LSD | | |
| Crack | | 0 mg. | Pills | | |
| | | 0 mg. | Other | | 0 |
| | | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name      : MALDONADO, NELLY  H/M  05/12/60   P.F.N. : 632420
AKA       : MALDONADO, JOSE                    Nickname :
Address   :                       AV.
D.T. Number : 95-25-0088345    Narc Case # : 595-3210-EA
Charge    : K/I                               UCR # : 1721C
Arrest    : 2700 N. 09TH ST.   Hwy? :
Arrest Date : 10/27/95   Arrest Time : 0047
Arrest Unit : 2500
Arrest Off. : SPONE  1223  Processing Off. : GARNITA 
Search Warr :           Arrest Warr :

| | | | | | |
|---|---|---|---|---|---|
| Pills | | 0 | Meth | | 0 mg. |
| Weed | | 0 | PCP | | 0 mg. |
| Money | | $32.00 | Hashish | | 0 mg. |
| Tape Mark | | #CLEAN | P.I | | 0 mg. |
| Cocaine | | 0 mg. | LSD | | 0 mg. |
| Crack | | 750 mg. | Pills | | 0 |
| Heroin | | 0 mg. | Other | | 0 |
| | | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name      : MARQUEZ, EDWIN              4   P.F.N. : 809434
AKA       : JIMENEZ, CARLOS                  Nickname :
Address   :                    ST.
D.T. Number :               96   Narc Case # : 595-3210-EA
Charge    :                               UCR # : 1721H
Arrest Loc : 2700 N. 09TH ST.   Hwy? : Y
Arrest Date : 07/17/95   Arrest Time : 1450
Arrest Unit : 2500

App. 340

Tape No. k  : HEART

Philadelphia Police Department ... Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name      : MARQUEZ, JOSE
Address   :
D.C. Number : 95-25-0046385
Charge    : DEL                          UTR # : 18017
Arrest Loc : 2700 N. 09TH ST.
Arrest Date : 06/12/95
Arrest Unit : 7403
Arrest Off. : DAVIS  5541            BROWN  5495
Search Warr :             Arrest Warr :

Firearm   :          .3                              0   mg.
Vehicle.  :          0                               0   mgl
Money     :          $0.00           highish         0   mg.
Tape No.  :                                          0   mg
Cocaine.  :          0  mg.                          0   mg.
Crack     :          0  mg.                          0
Heroin    :          0  mg.                          0
Marihuana :          0  mg.

Philadelphia Police Department ... Special Investigations Bureau
NARCOTIC ARREST BLOTTER

s e a r c h   b y   l o c a t i o n

Search Entire Block : Y
Enter Location     :      N. 9TH ST.

| LOCATION | MALE-RACE-SEX-DOB ARR DATE DC # | CASE # | PPN REC # |
|---|---|---|---|
| 2700 N. 09TH ST. | MARTINEZ, LEONARDO  H/M  03/09/78  07/11/95  95-25-0053570 | P95 2176 EA | 77-013  91129 |
| 2700 N. 09TH ST. | MELCHER, BRIAN  W/M  07/18/56  95-25-0005000 | P96 0174 EA | 737156  36490 |
| 2700 N. 09TH ST. | MCLENDON, HARRIS  H/M  08/04/71  95-25-0001493 | P95 6091 EA | 805150  894 4 |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST PLOTTER

| Firearm | : | | Meth | : | |
| Vehicle | : | | PCP | : | |
| Money | : | $18.50 | Hashish | . | |
| Tape No. | : | | P2P | : | |
| Cocaine | : | 1,400 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | |
| Heroin | : | 0 mg. | Other | : | |
| Marijuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST PLOTTER

Name      : MELCHER, BRIAN   W/M  47/15/56    P.P.N. : 730150
AKA       :                                  Nickname :
Address   :                        PA
D.C. No.  :                   Narc Case # : 595-3124-DA
Charge    :                              UCR # : 1811H
Arrest    : 3300 N. 30TH ST.       Hvyl : V
Arrest    : 01/25/96   Arrest Time : 0600
Arrest    :
Arrest    : PSTRL III    Processing Off. : MICHALSKI
Search    :           Arrest Warr :

| Firearm | : | 0 | Meth | : | 0 |
| Vehicle | : | 0 | PCP | : | 0 |
| Money | : | $0.00 | Hashish | : | 0 mg. |
| Tape Mark | : | OUT V | P2P | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 60 mg. | Other | : | 0 |
| Marijuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST PLOTTER

App. 342

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : MENDEZ, FRANK   H/M   12/06/95    D.P.N. : 754623
AKA         : MENDEZ, JOSE
Address     :                 ST.
D.C. Number : 94-35-0075802   Narc Case # : 193-94-94-8A
Charge      : POSS W/T DEL                    UCR # : 18110
Arrest Loc  : 1700 N. 09TH ST.    How? : V
Arrest Date : 01/18/94   Arrest Time : 1255
Arrest Dist : 7400
Arrest Off. : MCLAUGHLIN  4819  Processing Off. : MCLAUGHLIN  4819
Search Warr :           Arrest Warr :

Cocaine      :          0              Meth.        :         0  mg.
V.H.P.       :          0              PCP          :    0  ml.
Weight       :         $0.00          Hashish      :    0  mg.
Type Cont.   : #OPAN                  E.P          :       0  g.
Marijuana    :          0  mg.        LSD          :    0  mg.
Heroin       :       ,750  mg.        Pills        :        0
Meth.        :          0  mg.        Other        :        0
Black T.H.C. :          0  mg.

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

search  by  arrest  location

Search Entire Blotter  Y
Enter Location         1700 N. 09TH ST.

NARC-RACE/SEX-DOB

*** AT LEAST ONE REPORT RELATED COMPLAINT IS ON FILE IN THIS REGION ***
Please check in data for complaint locations

Philadelphia Police Department - Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : MORALES, RAFAEL    W M             P.P.N. : 788646
                                                  Nickname :

                                                  U R # : 1821K

Arrest Warr :



|             |        | Meth     |   | 0 mg. |
|             | 0      | PCP      |   | 0 mg. |
|             | 040.00 | Hashish  |   | 0 mg. |
| HTBRK       |        | P2P      |   | 0 mg. |
|             | 0 mg.  | LSD      |   | 0 mg. |
|             | 0 mg.  | Pills    |   | 0 |
|             | 110 mg.| Other    |   | 0 |
|             | 0 mg.  |          |   |   |

Philadelphia Police Department - Special Investigations Bureau
NARCOTIC ARREST BLOTTER



Name        : NADER, RAYMOND  W M                P.P.N. : 660749
AKA         : NADER, RAYMOND                     Nickname :
Address     :                        .
D.C. Number : 95-25-0257338   Warr Case # : F95-0258-2A
Charge      : K I                                UCR # : 1821K
Arrest Loc  : 2740 N. 09TH ST.    Hwy? : Y
Arrest Date : 07/17/95   Arrest Time : 1450
Arrest Unit : 2500
Arrest Off. : JONAS  5685   Processing Off. : CLEARY  6460
Search Warr :           Arrest Warr :

NARCOTIC ARREST BLOTTER

| Firearms | : | Meth | : |
| Vehicles | : | PCP | : |
| Money | : $  .00 | Hashish | : |
| Tape Mark | : | PCP | : |
| Cocaine | : 0 mg. | LSD | : |
| Crack | : 1,500 mg. | Pills | : 0 |
| Heroin | : 1,200 mg. | Other | : 0 |
| Marihuan | : 0 mg. |

Philadelphia Police Department — Special Investigations
NARCOTIC ARREST BLOTTER

Name        : UNTIL, ANDY H/M             P.P.N. : 7017
AKA                                       Nickname :
Address     :                      ST.
D.O.B.      : -0083725    Narc Case # : P94 4074-EA
Charge      : POSS W/I DEL                UCR # :
Arrest Loc  : N. 28TH ST.      Hwy# : Y
Arrest Date : 91    Arrest Time : 1245
Arrest
Arrest O.C. : JUANITA       Processing Off. : CHANDLER
Search Warr :         Arrest Warr :

| Firearms | : 0 | Meth | : |
| Vehicles | : 0 | PCP | : |
| Money | : $10.00 | Hashish | : |
| Tape Mark | : | LSD | : |
| Cocaine | : 2,000 mg. | LSD | : |
| Crack | : 0 mg. | Pills | : 0 |
| Heroin | : 300 mg. | Other | : |
| Marihuan | : 0 mg. |

>>> AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name         : PEARSON, RICHARD  B/M  06/18/51    D.P.N. : 447966
AKA          :                                            Nickname :
Address      :                    T
D.C. Number  : 87-05-0023335    Warr Fare # : PF:  N/A DA
Charge       : KAI                                    DC# # : 1691
Arrest  Loc  : 2700 N. 09TH ST.       Dist : T
Arrest Date  : 05/06/87   Arrest Time : 2116
Arrest Unit  : 5 DC
Arrest Off.  : HOLLMAN  3882   Processing Off. : HOLLMAN  3882
Search Warr  :                  Arrest Warr :

Firearm      :          @              Meth      :              @ mg.
Vehicle      :          @              PCP       :              @ mg.
Money        :          $0.00          Hashish   :              @ mg.
Type Dr. K   :                         PLS       :              @ mg.
Cocaine      :      2,500 mg.          LSD       :              @ mg.
Crack        :          @ mg.          Pills     :              @
Heroin       :          @ mg.          Other     :
Marihuana    :          @ mg.

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name         : PEREZ, HECTOR  H/M  07/03/74    D.P.N. : 743119
AKA          :                                            Nickname :
Address      :                    C.
D.C. Number  : 94-05-0059605    Warr Fare # : Undetermined

App. 346

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST PLOTTER

Name        : PEREZ, JOSE
AKA         :                                    Nickname :
Address     :                      V.
D.C. Number :                   Narc Case # :
Charge      : POSS W/I DEL                       UCR # : 1811H
Arrest Loc  : 2700 N. 69TH ST.      Hwy : Y
Arrest Date : 02/13/96    Arrest Time : 11:40
Arrest Unit : 1600
Arrest Off. : DOMALA  6744    Processing Off. : KLIPOSKI  6307
Search Warr :            Arrest Warr :

Firearm     :              0                      :              0 mg.
Vehicles    :              0                      :              0 pg.
Money       :          36.00          Hashish     :              0 mg.
Tape Mark   :                          Pcp        :              0 mg.
Cocaine     :              0 mg.                   :              0 mg.
Crack       :         511 mg.         Pills       :              0
Heroin      :         100 mg.         Other       :              0
Marihua     :              0 mg.

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST PLOTTER

Search By Arrest Location

Search Entire Block : Y
Enter Location      : 2700 N. 69TH ST.

| LOCATION | NAME-RACE-SEX DOB ARR DATE  DC # | FSL # | FBI MPC # |
|---|---|---|---|
| 2700 N. 69TH ST. | PEREZ, LUIS  H/M  01/13/74<br>02/13/96  95-25-041120  P96-1262 EA | 794540 |
| 2700 N. 69TH ST. | LANIPTO, JULIO  H M  01/11/40 | 794253 |

NARCOTIC ARREST BLOTTER

Name          : TULLIS, TITUS  H/M  01/13/74   P.P.N. : 194540
A/K           :
Address       :
D.C. Number   :                    Narc Case # : P98-114-77N
Charge        : PEL                           UCR # : 18.1
Arrest Loc    : 37TH AL. 90TH ST.   Hwy? : N
Arrest Date   :         Arrest Time : 1400
Arrest Unit   :
Arrest Off    :          Processing Off. : MICHALSKI
Search Warr   :        Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $0.00 | Hashish | : | 0 mg. |
| Tape Hit | : | | POP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | |
| Heroin | : | 0 mg. | Other | : | |
| Marijuana | : | 0 mg. | | | |

NARCOTIC ARREST BLOTTER

Name          : RAMIREZ, JULIO  H/M  01/12/46   P.P.N. : 766.7
A/K           :
Address       :
D.C. Number   :                    Narc Case # : P96-2-77-EA
Charge        : PEL                           UCR # : 18017
Arrest Loc    : 68TH ST.   Hwy? : Y
Arrest Date   :         Arrest Time : 1215
Arrest Unit   : TELT
Arrest Off.   : BOUCHER      Processing Off. : BROSNAN
Search Warr   :        Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $76.00 | Hashish | : | 0 mg. |
| Tape Hit | : | JUDIA | POP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 110 mg | Other | : | 0 |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : REEVES, DOUGLAS  B/M  01/25/71   S.S.N. : 612302
AKA         :                    T.                 Nickname :
Arrest ... : 95-25-0009912   Narc Case # : DL 1751-SA
Charge      : K/I                             OTR # : 12024
Arrest ... : 1700 N. 09TH ST.         Bu/D : .
Arrest Date : 12/08/95   Arrest Time : 2302
Proc T Unit : 7100
Arrest ff. : LEON  6105   Processing Off. : BROWER  2041
Search Warr :           Arrest Warr :

| Vis ...   |        |        | Mark     |        |        |
|-----------|--------|--------|----------|--------|--------|
| Value ?   |        |        | ...      |        | ... mg.|
| Money     |        | 016.00 | Hashish  |        | mg.    |
| Tape Mark | HRTBR  |        | PCP      |        | 0 mg.  |
| Cocaine   |        | mg.    | LSD      |        | 0 mg.  |
| Crack     |        | 200 mg.| Pills    |        | 0      |
| Heroin    |        | 510 mg.| Other    |        | 0      |
| Marihuana |        | 0 mg.  |          |        |        |

Philadelphia Police Department — Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Search by arrest location

Search Entire Block Y

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

NARCOTIC COMPLAINTS

| Complaint Location | Complaint Date | Complaint Number | Substance Involved |
|---|---|---|---|
| LOCAT | 718 N. 09TH ST. | 11/14/94 | 94-05743-003 | Crack |

━━ Remarks ━━

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : RICARDO, GABRIEL  H/M  06/20/73   I.P.N. : 811065
AKA                                      Nickname :
Address     :
D.C. Number : 95-15-0041282   Narc Case # : D95-1699-EA
Charge      : POSS W/I DEL                    UCR # : 1811C
Arrest Loc  : 2700 N. 09TH ST.    Hwy? : Y
Arrest Date : 05/27/95   Arrest Time : 1004
Arrest Dist : 2500
Arrest Off  : CAIN  1253   Processing Off : RICHARDSON  639.
Search War  :            Arrest War :

Philadelphia Police Department — Special Investigation Division
NARCOTIC ARREST BLOTTER

Name        : FLOANDO, GABRIEL  H/M  06/06/73   P.P.N. : 811
AKA         :
Address     :
P.C.N.      :
Charge      :                                         UCR # :
Arrest      :
Arrest Date :             Arrest Time : 1801
Arrest Unit :
Arrest Off. :       9419   Processing Off. : CHANDLER   3019
Search Warr :              Arrest Warr :

| | | Meth | | 0 mg. |
|---|---|---|---|---|
| Firearms | 0 | PCP | | mg. |
| Vehicles | 0 | Hashish | | mg. |
| Money | $0.00 | PCP | | mg. |
| Tape Marks | | LSD | | mg. |
| Cocaine | 0 mg. | Pills | | |
| Crack | 0 mg | Other | | |
| Heroin | 0 mg. | | | |
| Marijuana | 0 mg. | | | |

Philadelphia Police Department — Special Investigation Division
NARCOTIC ARREST BLOTTER

Name        : RICH, MICHAEL  B/M  12/08/69   P.     4597
AKA         :
Address     :
D.C.N.      :                      Narc Case # : P95-116-SA
Charge      :      W/I DEL                       UCR # :
Arrest      : 100 N. 69TH ST.     Hwy? : Y
Arrest Date : 07 18/95   Arrest Time : 2045
Arrest Unit : 7400
Arrest Off. : K.TYLER  2319   Processing Off. : FRANICS   3468
Search Warr :              Arrest Warr :

| | | Meth | | 0 mg. |
|---|---|---|---|---|
| Firearms | 0 | PCP | | 0 mg. |
| Vehicles | 0 | Hashish | | 0 mg. |
| Money | $25.00 | PCP | | 0 mg. |
| Tape Marks | 4YELL | LSD | | mg. |
| Cocaine | 1,100 mg | | | |

App. 351

Philadelphia Police Department

RIVERA, ANESTO

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

s e a r c h   b y   a r r e s t   l o c a t i o n

Search Entire Block : Y
Enter Location : 2700 N. 09TH ST.

| LOCATION | NAME-RACE-SEX-DOB AFR DATE LC # | CASE # | PPN PED # |
|---|---|---|---|
| 2702 N. 09TH ST. | RIVERA, ISMAEL  H/M  08/05/73 | P31-4791-DA | 793156 |
| 2700 N. 09TH ST. | RIVERA, RICHARD  H/M  01/26/65 | S90-9153-EA | 605203 |
| 2700 N. 09TH ST. | RIVERA, ROBERTO  H/M  01/18/73 | P94-2-59-EA | 789996 |
| 2700 N. 09TH ST. | RIVERA, SANTOS  H/M  09/19/71 | F91-9701-DA | 174664 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

| Firearm | : | | Meth | : | 0 mg. |
|---|---|---|---|---|---|
| Vehicle | : | | PCP | : | 0 mg. |
| Money | : | $1.00 | Hashish | : | 0 mg. |
| Tape Mark | : | | PIP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 1,370 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : RIVERA, RICHARD  H/M  03/06/68   P.P.N. : 635203
AKA                                              Nickname : RICH
Address     :                      T.
D.C. Number : 92-25-0882105    Narc Case # : S92-0456-EA
Charge      : DEL                               UCR # : 1801C
Arrest Loc  : 3700 N. 09TH ST.     Hwy? : Y
Arrest Date : 03/15/91   Arrest Time : 1343
Arrest Unit : 7405
Arrest Off  : DATS  4542   Processing Off. : LANTER  3064
Search Warr :            Arrest Witn :

| Firearm | : | 0 | Meth | : | 0 ug. |
|---|---|---|---|---|---|
| Vehicle | : | 0 | PCP | : | 0 mg. |
| Money | : | 7 3.00 | Hashish | : | 0 mg. |
| Tape Mark | : | | PIP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 400 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : RIVERA, ROBERTO  H/M  03/18/73   P.P.N : 789996
AKA                                              Nickname :
Address     : 5                    T.
D.C. Number : 94-25-0048847    Narc Case # : P94-0081-FA
Charge      : POSS W/I DEL                      UCR # : 1811C
Arrest Loc  : 1730 N. 09TH ST.     Hwy? : Y
Arrest Date : 06/23/94   Arrest Time : 1245
Arrest Unit : 5309

... Police Department -- Special Investigation ...
NARCOTIC ARREST BLOTTER

NAME, SANTOS  H/M  ...

Narc Case # : P93-0303-EA

... N. 6TH ST.    Phil : Y

... Arrest Time : 1750

... N  3775   Processing Off. : BYARD  ...
Arrest Warr :

| | | Meth | : | |
| | | PCP | : | |
| | 794.00 | Hashish | : | |
| | | ... | : | |
| | 0 mg. | LSD | : | |
| | 100 mg. | Pills | : | |
| | 0 mg. | Other | : | |
| | 0 mg. | | | |

... Police Department -- Special Investigation Bureau
NARCOTIC ARREST BLOTTER

S e a r c h   B y   a r r e s t   l o c a t i o n

Search Entire Block  Y
Enter Location :   2720 N. 6TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE  DC # | PEN REC # |
|---|---|---|
| 2720 N. 19TH ST. | RODRIGUEZ, LOUIS  H/M  05/19/73  11/06/95  95-15-0091420  P93-1307-EA | 93699 |
| 2700 N. 30TH ST. | RODRIGUEZ, NELLIE  H/F  09/29/64  05/18/93  93-25-0070491  P95-0110-TA | 92631 |
| 2730 N. 6TH ST. | RUOA, LUIS  H/M  09/21/58  08/03/95  95-15-0040845  P94 0187-EA | 722261  82111 |

App. 354

<< AT LEAST ONE NARCOTIC RELATED INCIDENT IS ON FILE IN THIS BLOCK >>>
Press <Enter> to view the complaint locations

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name    : RODRIGUEZ, LOUIS  H/M  W  29-7-  P.P.N. :
                                              Nickname :
        SILVER ST.
        -0091421   Narc Case # : P95-1806-DA
Charge  : DEL                          U/C # : 19817
Arrest Loc : 2700 N. 09TH ST.    Hwy? : Y
Arrest Date : 11/30/95   Arrest Time : 1200
Arrest Unit : 55N
Arrest Off. : 9109  2794  Prccessing Off. : GUTSNER  2048
Search Warr :           Arrest Warr :

| | | | | | |
|---|---|---|---|---|---|
| Firearm | : | | Meth | : | 0  mg. |
| Vehicle | : | | PCP | : | 0  mg. |
| Money | : | $57.00 | Hashish | : | 0  mg. |
| Tape Pack | : | =0SSU | Pot | : | 0  mg. |
| Cocaine | : | 1,000 mg. | LSD | : | 0  mg. |
| Crack | : | 1,175,000 mg. | Pills | : | 0 |
| Heroin | : | 040 mg. | Other | : | 0 |
| Marihuana | : | 0  mg. | | | |

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name         : ROSA, LUIS   H/M   09/18/78   P.P.N. : 721701
AKA          :                              Nickname :
Address      :                    ST.
D.C. Number  : 94-25-0040845    Narc Case # : B94-0147-EA
Charge       : UHL                         UCR # : 18010
Arrest Loc   : 1700 S. 09TH ST.    HWY? : Y
Arrest Date  : 06/30/94    Arrest Time : 1:15
Arrest Unit  : 7400
Arrest Off.  : H LAUGHLIN  4576   Processing Off : MCKEEFREY
Search Warr  :             Arrest Warr :

| Firearms | : | | Meth | : | 0 mg. |
| Vehicles | : | | PCP | : | 0 mg. |
| Money | : | N.80 | Hashish | : | 0 mg. |
| Tape Mark | : | CLEA | P2P | : | 1 mg. |
| Cocaine | : | 1,000 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marijuana | : | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name         : ROSA, LUIS   H/M   09/21/39   P.P.N. : 723201
AKA          :                              Nickname :
Address      :                    ST.
D.C. Number  : 94-25-0043932    Narc Case # : N94-0119-EA
Charge       : DEL                        UCR # : 18010
Arrest Loc   : 2700 N. 09TH ST.    HWY? : Y

Philadelphia Police Department -- Special Investigation Division
NARCOTIC ARREST BLOTTER

Search by arrest location

Search Entire Block  Y
Enter Location:   2700 N. 09TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE DC # CASE # | SID SEI # |
|---|---|---|
| 2700 N. 09TH ST. | ROSARIO, EFRAIN H/M 11/24/xx 09/28/95 95-25-0079738 POL-2984-DL | 770302 94105 |
| 2700 N. 09TH ST. | ROSARIO, JOSE H/M 04/24/xx 05/13/92 92-25-9001949 115-xx-xx-MA | A32601 11163 |
| 2700 N. 09TH ST. | ROSARIO, PEDRO H/M xx/xx/xx 08/07/95 95-25-0063886 POL-2590-MR | 814123 92087 |
| 2700 N. 09TH ST. | SANCHEZ, ALBERTO H/M 04/24/xx 12/13/95 95-25-0104159 POL-xxx AA | 819636 94150 |

>>> AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigation Division
NARCOTIC ARREST BLOTTER

Name         : ROSARIO, EFRAIN H/M 11/24/64  P.P.N. : 770301
AKA          : ROSARIO, FREEN         Nickname :
Address      :                 ST.
D.C. Number  : 95-25-0079738   Narc Case # : POL-2984-DL
Charge       : POSS W/I DEL           UCR # : 18111
Arrest Loc   : 2700 N. 09TH ST.   Hwy? : Y
Arrest Date  : 09/28/95   Arrest Time : 1415
Arrest Unit  : 2500
Arrest Off.  : NITKA 6753  Processing Off. : RICHARDSON 6141
Search Warr  :          Arrest Warr :

Firearms         :        0              Mark

Philadelphia Police Department
NARCOTIC ARREST BLOTTER

Name        : ROSARIO, JOSE
AKA         :
Address     :
Charge      : POSS W/I DEL
Arrest Loc  : 2700 N. 09TH ST.
Arrest Date : 03/10/93   Arrest Time :
Arrest Unit : 2500
Arrest Off. : MCCLOSKEY
Search Warr :              Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $0.00 | Hashish | : | 0 mg. |
| Tape Mark | : #GRN | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 700 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department
NARCOTIC ARREST BLOTTER

Name        : ROSARIO, PEDRO  B/M  05/04/69   P.F.N. : 814123
AKA         :
Address     :                       CT.
D.C. Number : 95-75-0065880
Charge      : K/I
Arrest Loc  : 2700 N. 09TH ST.
Arrest Date : 08/07/95   Arrest Time :
Arrest Unit : 2500
Arrest Off. : JONAS
Search Warr :              Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $0.00 | Hashish | : | 0 mg. |
| Tape Mark | : #BLK | | P2P | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 400 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

```
                        PHILADELPHIA POLICE DEPARTMENT

Name            :  SANTIAGO, JOSE           H/M 03/21/64    B.P.N. : 631785
AKA             :  ████████████████
Address         :  ████████████████
D.C. Number     :  92-25-0069780    Narc Case # : B95-0170-EA
Charge          :  DEL                             UCR # : 13010
Arrest Date     :  12/09/72          TH :          Emp :
Arrest Time     :  13:00                            PD :  250
Arrest Unit     :  NFD
Arrest Off.     :  ████████          Prisoner Inf. : INTAKE  2218
Search Auth     :  ████████
```

```
Firearms    :        0            Meth       :        0  mg.
Vehicles    :                     PCP        :        0  mg.
Money       :        ████         Hashish    :        0  mg.
Tape Mark   : #3100               PCP        :        0  mg.
Cocaine     :        0 gr.        LSD        :        0  mg.
Crack       :        3,000 gr.    Pills      :        0
Heroin      :        0  gr.       Other      :        0
Marijuana   :        0  gr.
```

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

                    S e a r c h   b y   a r r e s t   l o c a t i o n

                    Search Entire Block    Y
                    Enter Location         2700 N. 09TH ST.

| LOCATION | NAME-RACE/SEX-DOB<br>ARR DATE   DC #          CASE # | PPN<br>AGE # |
|----------|-----------------------------------------------------|-------------|
| 2700 N. 09TH ST. | SANTIAGO, JOSE  H/M  03/21/64<br>12/15/92  92-15-0069780  B92-0170-EA | 631785<br>4799 |
| 2700 N. 09TH ST. | SANTIAGO, JOSE  H/M  12/09/72<br>00-12-92  93-25-0046585  B95-0900-EA | 717910<br>4043 |
| 2700 N. 09TH ST. | SEPULVEDA, ANGEL  H/M  10/19/76<br>01/27/94  94-13-0043514  F94-1357-EA | 770813<br>1134 |
| 2700 N. 09TH ST. | STEVENS, RONNIE  B/M  12/16/77<br>12/11/94  94-23-0010457  F96-0135 EA | 749159<br>1475 |

    <<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
                Press <En2> to view the complaint locations

            Philadelphia Police Department -- Special Investigations Bureau
                        NARCOTIC ARREST BLOTTER

```
Name            :  SANTIAGO, JOSE  H/M  03/21/64    P.P.N. : 631785
AKA             :                                   Nickname :
Address         :  ████████████████T.
D.C. Number     :  92-25-0069780    Narc Case # : B95-0170-EA
```

App. 359

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : SANTIAGO, JOSE   H/M   12/09/73   P.P.N. : 117318
             :                              ST.        Nickname :
Address     :
D.C. Number : 95-15-0046385    Narc Case # : B95-6294-DA
Charge      : DEL                                    UCR # : 13010
Arrest Loc  : 3160 N. 09TH ST.    Hwy? : Y
Arrest Date : 06/12/95   Arrest Time : 1510
Arrest Unit : Narc
Arrest Off. : DEVLIN  6545   Processing Off. : BROWN   5595
Search Warr :           Arrest Warr :

|  |  | Meth |  | 0 mg. |
|  |  | PCP |  | 0 mg. |
| Money |  | $0.00 | Hashish |  | 0 mg. |
| Tape Wk |  |  | P2P |  | 0 mg. |
| Cocaine |  | 0 mg. | LSD |  | 0 mg. |
| Crack |  | 0 mg. | Pills |  | 0 |
| Heroin |  | 0 mg. | Other |  | 0 |
| Marihu |  | 0 mg. |  |  |  |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : SEPULVEDA, ANGEL   H/M   10/19/67   P.I.N. : 710811
             :              ANGEL             Nickname :
Address     :            T.
D.C. Number : 94-15-0048514    Narc Case # : F94-2055-EA
Charge      : POSS W/I DEL                        UCR # : 13110
Arrest Loc  : 1700 N. 09TH ST.    Hwy? : Y
Arrest Date : 06/27/94   Arrest Time : 1250
Arrest Unit : 5000
Arrest Off. : SPANGLER  3132   Processing Off. : FOREMAN  4581
Search Warr :           Arrest Warr :

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : STEVENS, RONNIE B H        I.P.U. : 745182
Age         : UNK  ROPPY                 U. Case :
Address     :                    ST.
P.I. Number : 96-25-0010127    Narc Case # : 96 0135 EA
Charge      : POSS W/I DEL                UCR # : 18517
Arrest Loc  : 2700 N. 29TH ST
Arrest Date : 02/12/96    Arrest Time :
Arrest Unit : 2180
Arrest Off. : MEISSLER  9327    WARN.OA  6826
Search Warr :    Arrest Warr :

Firearms    :        0              .45            :        0 mg.
Vehicle     :        0              PCP            :        0 mg.
Money       :        $01.00         Hashish        :        0 mg.
Tape M      : #ORAN                 PCP            :        0 mg.
Cocaine     :        0 mg.          LSD            :        0 mg.
Crack       :        700 mg.        Pills          :        0
Heroin      :        0 mg.          Other          :        0
Mariju      :        0 mg.

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

S e a r c h   b y   a r r e s t   l o c a t i o n

Search Entire Block  Y
Enter Location    2700 N. 29TH ST

| | NAME RACE SEX-DOB | | PPN |
| LOCATION | APR DATE PU # | CASE # | REC # |
| --- | --- | --- | --- |
| 2700 N. 29TH ST. | STINSON, STANLEY B/M 07/14/44 | | 203255 |
| | 04/01/94 96-25-0024483 P95-1044-UA | | 20757 |
| 2700 N. 29TH ST. | THOMPSON, LAMONT B/M 09/30/75 | | 337783 |
| | 04/01/95 96-25-0024530 P95-1045-EA | | 29512 |
| 2700 N. 29TH ST. | TORRES, JOSE H/M 06/08/70 | | 304844 |
| | 12/31/94 94-04-0103512 P94-5087 EA | | 27364 |
| 2700 N. 29TH ST. | VALENTINE, RAFEAL H/M 05/04/73 | | App. 361 |
| | 11/27/95 96-25-0091657 B96-0132-EA | | 43040 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : STINSON, VINCENT  B M  ??/??/44   P.P.N. : ??????
SSN         :                              Nickname .
Address     :                     T.
D.C. Number :                     Narc Case # : F95-1046-BA
Charge      :                              UCR # : ??.??
Arrest Loc  : ?? N. ??TH ST.    Hwy? : Y
Arres Date  : 09/??/??   Arrest Time : ?159
Arrest Unit : ???
Arrest Off. : ?? ?? 155.  Processing Off. : CHANDLER  ????
Search Warr :              Arrest Warr .

Firearm     :        ?          Meth        :        0 mg
Vehicles    :        ?          PCP         :        0 mg
Money       :      $?.??        Hashish     :        0 mg
Tape Mark   : +YELL             PIP         :        0 mg
Cocaine     :   1,??? mg.       LSD         :        0 mg
Crack       :        0 mg.      Pills       :        0
Heroin      :        0 mg.      Other       :        0
Marihuana   :        0 mg.

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : THOMPSON, LAMONT  P/M  09/10/75   P.P.N. : ?.773?
AKA         : THOMPSON, ANTHE                    Nickname .
Address     :                     T.
D.C. Number : 95-??-00711??     Narc Case # : F95-1042-TA
Charge      : PCCS H/? 35L                       UCR # : ?211?
Arrest Loc  : ?73? N. 06TH ST.    Hwy? : Y
Arrest Date : 08/20/95   Arrest Time : 1455
Arrest Unit : 21?0
Arrest Off. : ??.LSTGR  ????  Processing Off. : CLEARY  (46?
Search Warr :              Arrest Warr .

Firearm     :        0          Meth        :        0 mg.
Vehicle     :        0          PCP         :        0 mg.
Money       :      $1?.?0       Hashish     :        ? mg.
Tape Mark   : +YELL             PIP         :        ? mg.
Cocaine     :   3,000 mg.       LSD         :        0 mg.
Crack       :        0 mg.      Pills       :        0
Heroin      :        0 mg.      Other       :        0
Marihuana   :        0 mg.

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : TORRES, JOSE  H/M  06/28/70   P.P.N. : 3A4844
AKA         :                              Nickname .

App. 362

Philadelphia Police Department — Special Investigation Bureau
NARCOTIC ARREST BLOTTER

Name : VALENTINE, RAFAEL H/M 25/04/71 P.P.N. :
AKA : Nickname :
Address : T.
D.C. Number : 95-75-0091857 Narc Case # : B95-0191 47
Charge : DEL UCR # : 180.M
Arrest Loc : 2700 N. 09TH ST. Hwy? : Y
Arrest Date : 11/07/95 Arrest Time : 0045
Arrest Dist : 1400
Arrest Off : "RAY" 8772 Processing Off. : RODGERS 1127
Search Warr : Arrest Warr :

| Treasure | : | 0 | Meth | : | 0 Bg. |
| Vehicle | : | 0 | PCP | : | 0 Gy. |
| Money | : | $0.00 | Hashish | : | 0 Pc. |
| Tape Date | : READY | D25 | : | 0 Mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 Gi. |
| Crack | : | 0 mg. | Pills | : | |
| Heroin | : | 0 mg. | Other | : | |
| Marijuana | : | 0 mg. | | | |

Philadelphia Police Department — Special Investigation Bureau
NARCOTIC ARREST BLOTTER

s e a r c h  b y  a r r e s t  l o c a t i o n

Search Entire Block  Y
Enter Location     2700 N. 09TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE DC # | SALE ? | PPN REC # |
| --- | --- | --- | --- |
| 2700 N. 09TH ST. | VEGA, ABRAM H/M 02/10 68 09/14/95 45-15-0036782 | Pur-2400-BA | 007262 |

*** AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS FILE ***
Please first do this by displaying functions

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : VEGA, ABRAH  H/M                          I.R. # : 885068
           : VEGA, ABRAHAM
Charge     : DEL                                       C-R # : 16810
Arrest Loc : 2706 N. 06TH ST.      Hwy  : Y
Arrest Date: 08/16/95   Arrest Time : 14:0
Arrest Unit: 2500
Arrest Off.: HARRIS   5685   Processing Off.: CLEMENT  -113
Search Warr:          Arrest Warr :

| Firearm | : | 0 | Meth | : | 0 mg. |
| Vehicle | : | 0 | PCP | : | 0 mg. |
| Money | : | $0.00 | Hashish | : | 0 mg. |
| Tape Mark | : #GRAN | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 1,450 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : VEGA, JOSE  H/M                           I.R. # : 765287
AKA        :                                           Nickname :
Address    :
D.C. Number: 92-25-0064700   Narc Case # : 592-0130-9A
Charge     : DEL                                       C-R # : 16810
Arrest Loc : 2706 N. 06TH ST.      Hwy  : Y
Arrest Date: 07/15/92   Arrest Time : 10:0
Arrest Unit: 7403
Arrest Off.: FRESH  1062   Processing Off.: HATFEL  1175
Search Warr:          Arrest Warr :

| Firearm | : | 0 | Meth | : | 0 mg. |
| Vehicle | : | 0 | PCP | : | 0 mg. |
| Money | : | $10.00 | Hashish | : | 0 mg. |
| Tape Mark | : #YELL | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |

App. 364

Name       : WATKINS, KEITH  B/M  01/77/68   L.P.N. : 641441
AKA        :                                  Nickname :
Address    :
D.C. Number :                  Narc Case # : PNS-0376-EA
Charge     :                                  UCR # : 11 00
Arrest Loc :
Arrest Date :                  Arrest Time : 1820
Arrest Unit : 14N
Arrest Off. :                  Processing Off. : COOLER  2775
Search Warr :

| Firearm | : | | Meth | : | 0 mg. |
|---------|---|---|------|---|-------|
| Vehicle | : | 0 | PCP | : | 0 mg. |
| Money | : | $27.00 | Hashish | : | 0 mg. |
| Tape Mark | : | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 450 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : WELKES, WILLIAM  B/M  04/05/42   P.P.N. : 562341
AKA        :                                  Nickname :
Address    :                      ST.
D.C. Number :                  Narc Case # : PNS-1626-EA
Charge     : PWL                              UCR # : 18010
Arrest Loc : 1300 S. 60TH ST      Boyd : Y
Arrest Date : 11/06/97  Arrest Time : 1600
Arrest Unit : 14N
Arrest Off. :                  Processing Off. : GISCKLE  2356
Search Warr :                  Arrest Warr :

| Firearm | : | 0 | Meth | : | 0 mg. |
|---------|---|---|------|---|-------|
| Vehicle | : | | PCP | : | 0 mg. |
| Money | : | $44.00 | Hashish | : | 0 mg. |
| Tape No. % | : | ASS0 | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

search by arrest location

[illegible]

| | NAME-RACE/SEX-DOB<br>ARR DATE DC # CASE # | PPN<br>RDC # |
|---|---|---|
| [illegible] | WILLIAMS, ALFRED [illegible]<br>08/28/95 [illegible] | [illegible]<br>[illegible] |
| [illegible] ST. | WILLIAMS, BONITA [illegible]<br>[illegible] | [illegible]<br>[illegible] |
| [illegible] | WILLIAMS, MARGO [illegible]<br>07/26/93 [illegible] | 782222<br>72887 |
| [illegible] ST. | WILLIAMS, SHAWN [illegible]<br>02/14/96 [illegible] -EA | 782754<br>95001 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

s e a r c h b y a r r e s t l o c a t i o n

Search Entire Block Y
Enter Location 2700 N. 29TH ST.

| LOCATION | NAME-RACE/SEX-DOB<br>ARR DATE DC # CASE # | PPN<br>RDC # |
|---|---|---|
| [illegible] N. 29TH ST. | WILLIAMS, ALFRED B/M 04/16/49<br>08/28/95 95-25-0070498 B95-0148-EA | 815030<br>92632 |
| 27[illegible] N. 29TH ST. | WILLIAMS, BONITA B/F 06/19/[illegible]<br>08/28/95 95-25-0070[illegible] B95-[illegible]-EA | 763743<br>92533 |
| 27[illegible] N. 29TH ST. | WILLIAMS, MARGO B/F 05/29/58<br>07/26/93 93-25-0067071 F93-1041-EA | 782232<br>72887 |
| 27[illegible] N. 29TH ST. | WILLIAMS, SHAWN B/M 12/18/77<br>02/14/96 96-25-00[illegible] F95-0[illegible]-EA | 782754<br>95001 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name : WILLIAMS, ALFRED B/M 04/16/49 P.P.N. : 815030
AKA : [redacted] Nickname :
Address : [redacted]
D.C. Number : 95-25-0070498 Narc Case # : B95-0148-EA
Charge : K/I UCR # : 1821C
Arrest Loc : 2700 N. 29TH ST. Hwy? : Y
Arrest Date : 08/28/95 Arrest Time : 1325
Arrest Unit : 7400

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : WILLIAMS, BONITA  B/F  MC/19/64    P.P.N. : 763745
AKA         :                                        Nickname :
Address     : 2[redacted]T.
D.C. Number : 95-25-0070801    Narc Case # : P25-2684-EA
Charge      : K/I                            UCR # : 1821C
Arrest Loc  : 1700 N. 09TH ST.      Huy? : Y
Arrest Date : 08/29/95    Arrest Time : 1322
Arrest Unit : 2500
Arrest Off. : FONTNEZ  6629  Processing Off. : CHANDLER  5620
Search Warr :              Arrest Warr :

| Firearms | : | 3 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $0.00 | Hashish | : | 0 mg. |
| Tape Mark | : +BLUE | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name        : WILLIAMS, BONITA  B/F  MC/19/64    P.P.N. : 763745
AKA         :                                        Nickname :
Address     : [redacted] MICHAELS ST.
D.C. Number :                      Narc Case # : P25-2684-EA
Charge      : K/I                            UCR # : 1821C
Arrest Loc  : 1700 N. 09TH ST.      Huy? : Y
Arrest Date : 08/29/95    Arrest Time : 1322
Arrest Unit : 2500
Arrest Off. : FONTNEZ  6629  Processing Off. : CHANDLER  5620
Search Warr :              Arrest Warr :

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $0.00 | Hashish | : | 0 mg. |

NARCOTIC ARREST BLOTTER

UCR # : 1821C

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $04.00 | Hashish | : | 0 mg. |
| Tape Mark | : +BLUE | | P2P | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

| Name | : WILLIAMS, MARGO  B/F  09/29/58    P.P.N. : 721022 |
| AKA | : | Nickname : |
| Address | : ███████████ EN ST. |
| D.C. Number | : ████████ 71   Narc Case # : P93-1691-EA |
| Charge | : DEL | UCR # : 1801N |
| Arrest Loc | : 2700 N. 09TH ST.    Hwy? : Y |
| Arrest Date | : 07/20/93   Arrest Time : 1715 |
| Arrest Unit | : 7400 |
| Arrest Off. | : GRIECO  5369   Processing Off. : MADDERY  6981 |
| Search Warr | :           Arrest Warr : |

| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $21.00 | Hashish | : | 0 mg. |
| Tape Mark | : HOLYF | | P2P | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 150 mg. | Other | : | 0 |
| Marihuan | : | 0 mg. | | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

WILLIAMS, SHAWN H/M

Arrest Date : 02/16/96   Arrest Time : 1600

Arrest Warr :

| | | Meth | | |
|---|---|---|---|---|
| | | PCP | | |
| Money | $121.00 | Hashish | | |
| | TOFFF | | | |
| | 0 mg. | LSD | | |
| | 0 mg. | Pills | | |
| | 300 mg. | Other | | |
| | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

s e a r c h   b y   a r r e s t   l o c a t i o n

Search Entire Block   Y
Enter Location        1700 N. 09TH ST.

| LOCATION | NAME-RACE/SEX-DOB | | PPN |
|---|---|---|---|
| | ARR DATE   DC # | CASE # | REC # |
| 1700 N. 09TH ST. | PEREZ, VALENTINE   H/M  10/27/74 | | 779795 |
| | 06/06/95   95-25-0044398   P95-1780-DA | | 90953 |
| 1700 N. 09TH ST. | PAGAN, JOSE   H/M  09/15/73 | | 802720 |
| | 06/15/95   95-25-0046147   P95-1876-DA | | 91156 |
| 1711 N. 09TH ST. | RODRIGUEZ, ALEXANDRA  H/M  09/17/75 | | 721303 |
| | 06/22/95   95-25-0046337   P95-0193-DA | | 91291 |
| 1710 N. 09TH ST. | DAVIDA, FELIX   H/M  11/10/66 | | 742038 |
| | 02/10/93   93-25-0015011   P93-0371-DA | | 45951 |

< < AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

| Name | : PEREZ, VALENTINE   H/M  10/27/74    P.P.N. : 779795 |
|---|---|
| AKA | : |
| Address | : ST. |
| D.C. Number | : 95-25-0044398    Narc Case # : P95-1780-DA |
| Charge | : K/I     UCR # : 18010 |
| Arrest Loc | : 1700 N. 09TH ST.    Hwy? : Y |

```
Ann.  Unit : 232.
...  ...  ...  ...  ...  ...  ...  ...  WALKER  ...
...  Date :  ...  ...
```

| | | | | |
|---|---|---|---|---|
| Firearms | : | 0 | ...  | 0 mg. |
| Vehicles | : | 1 | 1... | 0 mg. |
| Money | : | 38.25 | ... | 0 mg. |
| Tape Mark | : | -FINA | ... | 5 ... |
| Cocaine | : | 2,500 mg. | ... | 0 mg. |
| Crack | : | 0 ... | ... | 0 |
| Heroin | : | 0 mg. | ... | 0 |
| Marihuana | : | 0 mg. | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : PAGAN, JOSE  F M  ...  F.P.N. : 202720
AKA        : ...  ...                 Nickname :
Address    : [REDACTED] ST.
D.C. Number : 95-25-004... N... ... # : 095-15-7-EA
Charge     : POSS W/I DEL            UCR # : 1811H
Arrest Loc : 2707 N. 09TH ST.   Hwy? : Y
Arrest Date : 06/18/95   Arrest Time : 1130
Arrest Unit : 2530
Arrest Off. : DIAPASQUALE  4801  Processing Off. : GARNICA  5030
Search Warr :          Arrest Warr :

| | | | | |
|---|---|---|---|---|
| Firearm | : | 0 | Meth | : | 0 mg. |
| Vehicle | : | 0 | PCP | : | 0 mg. |
| Money | : | $10.00 | Hashish | : | 0 mg. |
| Tape Mark | : | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 360 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | |

Philadelphia Police Department    Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name       : RODRIGUEZ, ALEXANDER  H M  05/17/75  F.P.N. : 721503
AKA        : ...                 Nickname :
Address    : [REDACTED] ST.
D.C. Number : 95-25-0049087  Kit. Disc # : 095-0104-EA
Charge     : POSS W/I DEL            UCR # : 1811H
Arrest Loc : 2711 N. 09TH ST.   Hwy? : Y
Arrest Date : 06/22/95   Arrest Time : 1630
Arrest Unit : 7400
Arrest Off. : BROWN  5495  Processing Off. : BROWN  5495
Search Warr :          Arrest Warr :

| | | | | |
|---|---|---|---|---|
| Firearms | : | 0 | Meth | | |
```

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

| | | | |
|---|---|---|---|
| Firecl 2 | 0 | Meth | 0 mg. |
| Vehicl. | 0 | PCP | 0 mg. |
| Money | 10.00 | Hashish | 0 mg. |
| Tape Mark | | F2F | 0 Pcs. |
| Cocaine | 0 mg. | LSD | 0 mg. |
| Crack | 0 mg. | Pills | 0 |
| Heroin | 0 mg. | Other | 0 |
| Marihu. a | 0 mg. | | |

Philadelphia Police Department  --  Special Investigations Bureau
NARCOTIC ARREST BLOTTER

s e a r c h   b y   a r r e s t   l o c a t i o n

Select Battle Block  Y
Enter Location        2700 N  89TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE  DC #        CASE # | PIN PID # |
|---|---|---|
| 2719 N.  9TH ST. | RIVERA, WILSON  H/M  10/10/61 01/27/88  88-25-0009123  N88-0103-EA | 677138 1-823 |
| 2719 N.  9TH ST. | RIVERA, WILSON  H/M  10/10/61 02/29/88  88-25-0309841  N88-0273-EA | 677138 11897 |
| 2719 N.  9TH ST. | RIVERA, WILSON  H/M  10/10/61 04/06/88  88-25-0035792  N88-0638-EA | 677138 13098 |
| 2719 N.  9TH ST. | VASQUEZ, ALICIA  H/F  05/26/51 01/27/88  88-25-0009122  N88-0109-EA | 684095 10527 |

<<< AT LEAST ONE NARCOTIC RELATED COMPLAINT IS ON FILE IN THIS BLOCK >>>
Press <Ins> to view the complaint locations

NARCOTIC ARREST BLOTTER

| | | |
|---|---|---|
| | RIVERA, WILSON H/M 10/10/61 P.P.N. : 877130 | |

Name              : RIVERA, WILSON H/M 10/10/61   F.P.N. : 877130
AKA               :                                Nickname :
Address           :              NT
Poli. Number      : 80-26-8010841   Narc Case # : N86-0771-EA
Charge            : DEL                          UCR # : 18810
Arrest ...        : 2710 N. 09TH ST.    Hwyt : N
Arrest Time       : 02/09/88   Arrest Time : 2035
Arrest Unit       : 7400
Arrest Off.       : ASH  4737   Processing Off. : CULISSE  5599
Search Warr.      : 0015593   Arrest Warr :

| | | | | |
|---|---|---|---|---|
| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $2.00 | Hashish | : | 0 mg. |
| Tape Mark | : | | PZP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 0 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name              : RIVERA, WILSON H/M 10/10/61   F.P.N. : 877130
AKA               :                                Nickname :
Address           :              NT
Poli. Number      : 80-26-8010841   Narc Case # : N86-0771-EA
Charge            : DEL                          UCR # : 18810
Arrest ...        : 2710 N. 09TH ST.    Hwyt : N
Arrest Time       : 02/09/88   Arrest Time : 2035
Arrest Unit       : 7400
Arrest Off.       : ASH  4737   Processing Off. : CULISSE  5599
Search Warr.      : 0015593   Arrest Warr :

| | | | | |
|---|---|---|---|---|
| Firearms | : | 0 | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | $2,506.00 | Hashish | : | 0 mg. |
| Tape Mark | : | #FURF | PZP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 900 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department -- Special Investigations Bureau
NARCOTIC ARREST BLOTTER

Name              : RIVERA, WILSON H/M 10/10/61   F.P.N. : 877130
AKA               :
Address           :

App. 372

Poll Number       :              Narc Case # : N86-0772-EA

Philadelphia Police Department - Special Investigations Bureau
NARCOTIC ARREST PLOTTER

Name         : VASQUEZ, ALICIA     F.P.N. : 684095
AKA          :                      Nickname :
Address      :
P.C. Number  : 88-25-000084   Kit Case # : N88-0169-EA
Charge       : DEL                   UCR # : 1801C
Arrest Loc   : 2719 N. 29TH ST.      Hwy/ :
Arrest Date  : 31/11/83   Arrest Time : 22:5
Arrest Unit  : 7400
Arrest Off.  : MEISCLER  7852   Processing Off. : TOOHEY  5985
Search Warr  : 031580    Arrest Warr :

| | | | | |
|---|---|---|---|---|
| Firearms | : | | Meth | : | 0 mg. |
| Vehicles | : | 0 | PCP | : | 0 mg. |
| Money | : | 5934.00 | Hashish | : | 0 mg. |
| Tape Mark | : | | PCP | : | 0 mg. |
| Cocaine | : | 0 mg. | LSD | : | 0 mg. |
| Crack | : | 94,500 mg. | Pills | : | 0 |
| Heroin | : | 0 mg. | Other | : | 0 |
| Marihuana | : | 0 mg. | | | |

Philadelphia Police Department - Special Investigations Bureau
NARCOTIC ARREST PLOTTER

s e a r c h    b y    a r r e s t    l o c a t i o n

Search Entire Block  Y
Enter Location       2700 N. 29TH ST.

| LOCATION | NAME-RACE/SEX-DOB ARR DATE  DC # | CASE # | PPN REC # |
|---|---|---|---|
| 2719 N. 29TH ST. | VASQUEZ, ALICIA  H/F  05/26/52 05/29/88  88-25-000084  N88-0375-EA | | 684095 31899 |
| 2719 N. 29TH ST. | VASQUEZ, RICARDO  H/M  08/06/69 09/10/93  93-25-001281  F93-0... | | 735435 |

Philadelphia Police Department  --  Special Investigations Bureau
                          NARCOTIC ARREST BLOTTER

Name         : RIVERA, FRANCISCO  H/M  03/16/75   P.P.N. : 731453
AKA          :                                     Nickname :
Address      :                     P.
P.C. Number : 93-25-0008641    Narc Case # : P93-0402-EA
Charge      : K/I                               UCR # : 1811C
Arrest Loc  : 600 E. SOMERSET ST.      Hwy? : Y
Arrest Date : 01/27/93   Arrest Time : 2125
Arrest Unit : 5500
Arrest Off. : HANLON  6167   Processing Off. : BRUNSON  9466
Search Warr :            Arrest Warr :


Firearms    :          0              Meth      :           0  mg.
Vehicle:    :          0              PCP       :           0  mg.
Money       :       $59.00           Hashish   :           0  mg.
Tape Mark   : #WHIT                   P2P       :           0  mg.
Cocaine     :          0  mg.        LSD       :           0  mg.
Crack       :      1,156  mg.        Pills     :           0
Heroin      :          0  mg.        Other     :           0
Marihuana   :          0  mg.

At least one narcotic related charge on this block has
Please click to view the complete event details

Philadelphia Police Department — Narcotics Investigations Bureau
NARCOTIC ARREST DETAILS

VASQUEZ, ALICIA    W/F  05/16/91    PID No : 1194905
APT                                                Charges
Add                              TH
Arrest Number : 88-05-0020841    Narc Case # : 11 0015 PHLA
Charge       : DEL                                 PDN # : 1204?
Arrest Loc   : 2719 N. 09TH ST.     Dept : N
Arrest Date  : 05/29/08   Arrest Time : 0920
Arrest Unit  : 7400
Arrest Off.  : JULIETTE  5515   Processing Off : PILLOT Jose
Search Warr  :            Arrest Warr :

EX: B

### AFFIDAVIT OF JAMES LAMB
### PURSUANT TO TITLE 18 PA.C.S 4904

I, JAMES LAMB 7-4-81, DO HEREBY DECLARE AND VERIFY THAT THE
STATEMENT SET FORTH HERE AND BELOW ARE TRUE AND CORRECT TO THE
BEST OF MY KNOWLEDGE, INORMATION, AND BELIEF.

1. ON MAY 9,2000 I WAS NOT TELLING THE TRUTH WHEN I TESTIFIED
   THAT JOHN MOORE WAS WITH ME DURING THE ROBBERY. HE WAS
   NOT WITH ME.

2. ON JUNE 1997 WHEN I WAS IN THE DETECTIVES OFFICE, I TOLD
   THEM THAT A FRIEND I USED TO HANG WITH IN THE NEIGHBORHOOD
   NAME NEWTON WAS WITH ME, BUT THEY KEPT POINTING TO A
   PICTURE OF JOHN SAYING WHAT ABOUT HIM. THEN THEY TOLD
   ME IF I DIDNT SAY IT WAS JOHN THAN THEY WAS GOING TO
   MAKE SURE I GO ON DEATH ROW. THAT'S WHEN I LIED AND SAID
   JOHN WAS THERE.

3. JULY 7,1996 AT AROUND 12:00 a.m. ME AND MY FRIEND NEWTON
   WENT DOWN 9TH STREET TO ROB SOMEBODY. WHEN WE GOT TO
   THE CHINESE STORE WE SAW JOHN AND WE STARTED CRACKING
   JOKES ON HIM AND THEN HE LEFT WHEN HE GOT HIS FOOD. AFTER
   JOHN LEFT, A COUPLE OF MINUTES LATER I WENT OUTSIDE AND
   NEWTON WAS ROBBING THE DUDES, THAT'S WHEN I HELPED HIM.
   JOHN WASN'T THERE HE HAD BEEN LEFT.

I, JAMES LAMB, DO STATE THAT I UNDERSTAND THAT ANY FALSE
STATEMENTS SET FORTH IN DECLARATION ABOVE WILL SUBJECT ME TO
THE PENALTIES OF PURJURY PURSUANT TO TITLE 18 PA.C.S. 4904

_James Lamb_
JAMES LAMB

DATE: 4 / 14 /2004

NEIGHBORHOOD SURVEY

Case or Complainant: ___ H 96-233 ___

Location of Survey: ___ ▆▆▆▆ ___

NOTE: List all occupants of building, whether
    interviewed or not. List all occupants on
    front of sheet, and continue interview on
    reverse side. List all visitors, include
    name, age, address, who were in building
    or apartment at time of interview. Include
    in interview, position of witness at time
    of occurrence.  Take time to be precise.

TYPE OF PREMISES

Priv. Res. ___ ✓ ___
Apt. House ___
Num Stories ___ 2 ___
Num Apts. ___
Num Occupants ___
Business ___
Factory ___
Hotel ___
Vacant Lot ___

DATE/TIME ___ 2/2/96, 10 Am ___

PRINT OR WRITE LEGIBLY.   BE PRECISE.

Shirley Maxwell 45/0/M, ph# 226-5153
Moving To ▆▆▆ X ▆▆▆ 3rd FL. —
ABOVE'S DAUGHTER, Dominique Maxwell 11/B/F,
Saw job go down, told ABOVE THAT IT WAS
2 young B/M's who did job around 16 or 17
years old. They are neighborhood drug dealers.
They sell drugs in front of Chinese store
at 9th + Somerset.  Both △'s wearing
white T-shirts, white baseball caps, jean shorts

Reviewed ___
        Supervisor
Detective ___

| All individuals identified in NAB HM-Hispanic Male, HF -Hispanic Female, WM-White Male, WF-White Female, BM-Black Male, BF-Black Female | All BM Identified in NAB | DOB: 1970-1981 | Drug Arrests within the last year |
|---|---|---|---|
| Robert Turner (BM) | Robert Turner (BM) | Robert Turner (BM)(4/ | Robert Turner (06/04/96) |
| Javier Carrion (HM) | Herberto Gomez (BM) | Jesse Brogdon (BM) | Jessie Brogdon (08/14/95) |
| William Diaz (HM) | Elzie Allen (BM) | Kareem Daniels (BM) | Kareem Daniels (07/04/95) |
| Abraham Vega (HM) | Jose Bello (BM) | Rahaan Dixion (BM)at | Shawn Johnson (06/25/96) |
| Carlos Castillo (HM) | Jesse Brogdon (BM) | Shawn Johnson BM | Antonio Lewis (08/29/95) |
| Edwin Marquez (WM) | Jessie Campbell (BM) | Antonio Lewis BM | Ronnie Stevens (02/12/96) |
| Roberto Perez (HM) | John Clark (BM) | Ronnie Stevens BM | Shawn Williams (02/14/96) |
| Carlos Melendez (WM) | Gregory Clifton (BM) | Lamont Thomspon BM | . |
| Herberto Gomez (BM) | Terry Cornell (BM) | Shawn Williams BM | |
| Jovita Lugo (HF) | Kareem Daniels (BM) | | |
| Robert Fontanez (HM) | Rahaan Dixion (BM) | | |
| Juan Vasquez (HM) | Nathan Dunlap (BM) | | |
| Brian Paul (WM) | Kevin Geter (BM) | | |
| Luis Rosa (HM) | Kevin Glover (BM) | | |
| Anthony Abate (WM) | Record Expunged (BM) | | |
| Edwardo Adorno (HM) | Victor Jackson (BM) | | |
| Orillio Algarin (HM) | William Jackson (BM) | | |
| Jose Alicea (HM) | Herman Johnson (BM) | | |
| Elzie Allen (BM) | Orie Johnson (BM) (4/21/69) | | |
| Anderson Alviles (HM) | Shawn Johnson (BM) | | |
| Mario Aviles (HM) | Bobby Jones (BM) | | |
| Jose Bello (BM) | Antonio Lewis (BM) | | |
| Jesse Brogdon (BM) | Curtis Lewis (BM) | | |
| William Burns (WM) | Michael Lewis (BM) | | |
| Ricardo Camacho (HM) | Richard Pearson (BM) | | |
| Jessie Campbell (BM) | Douglas Reeves (BM) | | |
| John Clark (BM) | Michael Rice (BM) | | |
| Gregory Clifton (BM) | Ronne Stevens (BM) | | |
| Reynaldo Colon (HM) | Stanley Stinson (BM) | | |
| Reynaldo Colon (HM) | Lamont Thompson (BM) | | |

| | | | |
|---|---|---|---|
| Terry Cornell (BM) | Keith Watkins (BM) | | |
| Roberto Cruz (HM) | William Wilkes (BM) | | |
| Kareem Daniels (BM) | Alfred Williams (BM) | | |
| Felix Davila (HM) | Shawn Williams (BM) | | |
| Felix Davila (HM) | | | |
| Jose Dejesus (HM) | | | |
| Jose Delbrey (HM) | | | |
| Rahaan Dixion (BM) | | | |
| Nathan Dunlap (BM) | | | |
| Juan Esteban (HM) | | | |
| Luis Felix (HM) | | | |
| Albert Garcia (HM) | | | |
| John Garcia (HM) | | | |
| Julia Garrett (BF) | | | |
| Kevin Geter (BM) | | | |
| Kevin Glover (BM) | | | |
| Maria Gonzalez (HF) | | | |
| Carlos Gonzalez (HM) | | | |
| Robert Gonzalez (HM) | | | |
| Record Expunged (BM) | | | |
| Edwardo Hernandez (HM) | | | |
| Richard Irizarry (HM) | | | |
| Victor Jackson (BM) | | | |
| William Jackson (BM) | | | |
| Herman Johnson (BM) | | | |
| Orie Johnson (BM) | | | |
| Shawn Johnson (BM) | | | |
| Bobby Jones (BM) | | | |
| Pablo Laracuente (HM) | | | |
| Antonio Lewis (BM) | | | |
| Curtis Lewis (BM) | | | |
| Michael Lewis (BM) | | | |
| Juan Maldando (HM | | | |
| Nelly Mardonado (HM) | | | |
| Edwin Marquez (WM) | | | |
| Jose Marquez (HM) | | | |
| Leonardo Martinez (HM) | | | |
| Brian Melcher (WM) | | | |
| Marcos Melendez (HM) | | | |
| Frank Mendez (HM) | | | |
| Rafael Morales (HM) | | | |
| Raymond Nader (WM) | | | |
| Ray Nieves (HM) | | | |
| Andy Ortiz (HM) | | | |
| Pedro Ortiz (HM) | | | |

| | | | |
|---|---|---|---|
| Richard Pearson (BM) | | | |
| Hector Perez (HM) | | | |
| Jose Perez (HM) | | | |
| Luis Perez (HM) | | | |
| Julio Ramirez (HM) | | | |
| Angel Ramos (HM) | | | |
| Douglas Reeves (BM) | | | |
| Gabriel Ricardo (HM) | | | |
| Michael Rice (BM) | | | |
| Anesto Rivera (HM) | | | |
| Ishmael Rivera (HM) | | | |
| Richard Rivera (HM) | | | |
| Roberto Rivera (HM) | | | |
| Santos Rivera (HM) | | | |
| Louis Rodriguez (HM) | | | |
| Nellie Rodriguez (HF) | | | |
| Efrain Rosario (HM) | | | |
| Jose Rosario (HM) | | | |
| Pedro Rosario (HM) | | | |
| Alberto Sanchez (HM) | | | |
| Jose Santiago HM | | | |
| Jose Santiago (HM) | | | |
| Angel Sepulveda (HM) | | | |
| Ronnie Stevens (BM) | | | |
| Stanley Stinson (BM) | | | |
| Lamont Thompson (BM) | | | |
| Jose Torres (HM) | | | |
| Rafeal Valentine (HM) | | | |
| Abram Vega (HM) | | | |
| Jose Vega (HM) | | | |
| Keith Watkins (BM) | | | |
| William Wilkes (BM) | | | |
| Alfred Williams (BM) | | | |
| Bonita Williams (BF) | | | |
| Margo Williams (BF) | | | |
| Shawn Williams (BM) | | | |
| Valentine Perez (HM) | | | |
| Jose Pagan (HM) | | | |
| Alexander Rodriguez (HM) | | | |
| Felix Davila (HM) | | | |
| Wilson Rivera (HM) | | | |
| Alicia Vasquez (HF) | | | |
| Ricardo Vasquez (HM) | | | |
| Francisco Rivera (HM) | | | |
| Alfredo Diaz (HM) | | | |

Jacquiline Figueroa (HF)

Case: 22-1763    Document: 1-1    Page: 504    Date Filed: 04/26/2022
United States District Court Eastern District of Pennsylvania

4/21/22, 11:40 AM

CLOSED,HABEAS

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:05-cv-02796-EGS

MOORE v. DIGUGLIELMO et al
Assigned to: HONORABLE EDWARD G. SMITH
Case in other court: USCA for the third circuit, 09-02189
      THIRD CIRCUIT COURT OF APPEALS,
      15-02633
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 06/10/2005
Date Terminated: 03/27/2009
Jury Demand: None
Nature of Suit: 530 Habeas Corpus:
(General)
Jurisdiction: Federal Question

**Petitioner**

**JOHN MOORE**

represented by **JOHN MOORE**
#DD 9449
SCI GRATERFORD
BOX 244
GRATERFORD, PA 19426
PRO SE

**BARNABY C. WITTELS**
LACHEEN DIXON WITTELS &
GREENBERG LLP
1429 WALNUT ST.
SUITE 1301
PHILADELPHIA, PA 19102
215-421-8034
Fax: 215-561-1860
Email: barnabyw@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**DAVID DIGUGLIELMO**

represented by **MAX COOPER KAUFMAN**
PHILADELPHIA DISTRICT ATTY'S
OFFICE
3 SOUTH PENN SQUARE
PHILADELPHIA, PA 19107
215-686-5747
Email: max.kaufman@phila.gov
*ATTORNEY TO BE NOTICED*

**SUSAN ELIZABETH AFFRONTI**
PHILA DISTRICT ATTYS OFFICE
THREE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107-3499
215-686-5701
Email: DAFed.Lit@phila.gov
*TERMINATED: 08/17/2018*

**Respondent**

**THE DISTRICT ATTORNEY OF THE**
**COUNTY OF PHILADELPHIA**

represented by **MAX COOPER KAUFMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SUSAN ELIZABETH AFFRONTI**
(See above for address)
*TERMINATED: 08/17/2018*

**Respondent**

**THE ATTORNEY GENERAL OF THE**
**STATE OF PENNSYLVANIA**

represented by **MAX COOPER KAUFMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SUSAN ELIZABETH AFFRONTI**
(See above for address)
*TERMINATED: 08/17/2018*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/10/2005 | 1 | PETITION for Writ of Habeas Corpus together with statement in support of request to proceed in forma pauperis , filed by JOHN MOORE.(cw, ) (lvj, ). (Additional attachment(s) added on 4/22/2009: # 1 petition, # 2 petition, # 3 petition) (lvj, ). (Entered: 06/13/2005) |
| 06/13/2005 | | Filing fee: $ 5.00, receipt number 918101 (jms, ) (Entered: 07/11/2005) |
| 07/20/2005 | 2 | ORDER THAT THE CLERK OF COURT FURNISH PETITIONER WITH A BLANK COPY OF THIS COURT'S CURRENT STANDARD FORM FOR FILING A PETITION PURSUANT TO 28 U.S.C. SECTION 2254 AND ORDERED THAT PETITIONER SHALL COMPLETE THIS COURT'S CURRENT STANDARD FORM AND RETURN IT TO THE CLERK OF COURT WITHIN THIRTY DAYS, ETC.. SIGNED BY JUDGE LOUIS H. POLLAK ON 7/20/05. 7/20/05 ENTERED AND COPIES MAILED.(lvj, ) (Entered: 07/20/2005) |
| 08/18/2005 | | Filing fee: $ 5.00, receipt number 920146 (jms, ) (Entered: 08/22/2005) |
| 08/19/2005 | 3 | Revised forms returned (lvj, ) Additional attachment(s) added on 7/12/2007 (va, ). (Entered: 08/22/2005) |

| 08/22/2005 | 4 | Revised forms returned (lvj, ) (lvj, ). (Entered: 08/22/2005) |
|---|---|---|
| 08/30/2005 | | Remark: RECEIPT # 920146 REGARDING $5.00 FILING FEE RETURNED TO PETITIONER, BY FISCAL DEPARTMENT AS OF 8/30/05. (jms, ) (Entered: 08/30/2005) |
| 08/31/2005 | 5 | ORDER THAT THE ABOVE CASE IS REFERRED TO MAGISTRATE JUDGE ARNOLD C. RAPOPORTFOR A REPORT AND RECOMMENDATION. SIGNED BY JUDGE LOUIS H. POLLAK ON 8/31/05. 9/1/05 ENTERED AND COPIES MAILED TO PRO SE PETITIONER AND FAXED TO MAGISTRATE RAPOPORT'S CHAMBERS. (jpd, ) (Entered: 09/01/2005) |
| 09/15/2005 | 6 | REPORT AND RECOMMENDATIONS BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT THAT THE PETITION FOR WRIT OF HABEAS CORPUS BE STAYED AND ALLOW PETITIONER TO EXHAUST HIS STATE COURT REMEDIES. OBJECTIONS TO R&R DUE BY 10/4/2005. SIGNED BY JUDGE ARNOLD C. RAPOPORT ON 9/15/05. 9/15/05 ENTERED AND COPIES MAILED. (ky, ) (Entered: 09/15/2005) |
| 11/09/2005 | 7 | Letter dated 9/19/05 from JOHN MOORE re: Order of 9/15/05 regarding PCRA court. (ky, ) (lvj, ). (Entered: 11/09/2005) |
| 11/09/2005 | 8 | Letter dated 10/3/05 from JOHN MOORE re: Status of Second PCRA State Proceeding. (ky, ) (lvj, ). (Entered: 11/09/2005) |
| 12/30/2005 | 9 | ORDER THAT REPORT AND RECOMMENDATION IS APPROVED AND ADOPTED; THE INSTANT PETITION IS STAYED; PETITIONER'S MOTION REQUESTING THE COURT TO STAY AND ABEY IS GRANTED; PETITIOENR SHALL FILE HIS SECOND APPLICATION FOR STATE POST-CONVICTION RELIEF WITHIN THIRTY DAYS OF THE DATE OFTHIS ORDER, ETC. PETITIONER SHALL REPORT IN WRITING TO THIS COURT THE STATUS OF HIS SECOND APPLICATION FOR STATE POST-CONVICTION RELIEF PETIITON WITHIN THIRTY DAYS OF THE DATE OF THIS ORDER.. SIGNED BY JUDGE LOUIS H. POLLAK ON 12/28/05. 12/30/05 ENTERED AND COPIES MAILED.(lvj, ) Modified on 12/30/2005 (lvj, ). (Entered: 12/30/2005) |
| 07/05/2007 | 10 | MOTION BY JOHN MOORE TO SUPPLEMENT 28 U.S.C. SEC. 2254 (HABEAS CORPUS) PETITION WITH MEMORANDUM SUPPORTING AFTER DISCOVERED EVIDENCE,PROOF OF SERVICE.(fb) (Entered: 07/05/2007) |
| 07/11/2007 | 11 | MOTION FOR APPOINTMENT OF COUNSEL FOR FEDERAL PROCEEDING PURSUANT TO 28 U.S.C. SECTION 2254 RULE 8(c), ETC. FILED BY JOHN MOORE, PROOF OF SERVICE.(lvj, ) (Entered: 07/12/2007) |
| 07/11/2007 | 12 | EXHIBIT by JOHN MOORE.. (lvj, ) (Entered: 07/12/2007) |
| 07/23/2007 | 13 | MOTION TO LIFT STAY. PETITIONER REQUESTS COURT TO TAKE PREVIOUSLY FILED 2254 HABEAS CORPUS PETITION OUT OF "CIVIL SUSPENSE." PROOF OF SERVICE. VERIFICATION. filed by JOHN MOORE..(ap, ) Additional attachment(s) added on 7/24/2007 (ap, ). (Entered: 07/24/2007) |

| 09/26/2007 | 14 | ORDER THAT PLAINTIFF'S MOTION TO LIFE STAY IS GRANTED. CLERK OF COURT SHALL TRANSFER THE CASE FROM THE CIVIL SUSPENSE FILE TO THE CURRENT DOCKET FOR FINAL DISPOSITION; TH CASE IS AGAIN REFERRED TO THE HONORABLE ARNOLD C. RAPOPORT FOR A REPORT AND RECOMMENDATION.. SIGNED BY JUDGE LOUIS H. POLLAK ON 9/26/2007.9/26/2007 ENTERED AND COPIES MAILED.(ap, ) (Entered: 09/27/2007) |
| 10/22/2007 | 15 | ORDER THAT THE DISTRICT ATTORNEY OF PHILADELPHIA COUNTY SHALL FILE A RESPONSE TO THE PETITION, RESPONDING TO THE MERITS OF THE PETITION AND PROVIDING SPECIFIC ANSWERS AND A BRIEF IN SUPPORT THEREOF WITHIN 45 DAYS FROM THE DATE OF THIS ORDER PURSUANT TO RULE 5, 28 U.S.C. 2254. SIGNED BY JUDGE ARNOLD C. RAPOPORT ON 10/22/07. 10/22/07 ENTERED AND COPIES MAILED.(ky, ) (Entered: 10/22/2007) |
| 11/09/2007 | 16 | ORDER THAT PETITIONER'S MOTION TO SUPPLEMENT 28 U.S.C. 2254 PETITION WITH MEMORANDUM SUPPORTING AFTER DISCOVERED EVIDENCE IS GRANTED, AND PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS PETITION FOR WRIT OF HABEAS CORPUS SHALL BE FILED ON OR BEFORE 12/10/07. SIGNED BY JUDGE ARNOLD C. RAPOPORT ON 11/9/07. 11/13/07 ENTERED AND COPIES MAILED.(ky, ) (Entered: 11/13/2007) |
| 11/09/2007 |  | MEMORANDUM IN SUPPORT DUE BY 12/10/2007. (ky, ) Modified on 11/14/2007 (afm, ). (Entered: 11/13/2007) |
| 11/16/2007 | 17 | ORDER THAT PLFF'S 11 MOTION FOR THE APPOINTMENT OF BARNABY C. WITTELS AS COUNSEL IS GRANTED. THE CLERK IS HEREBY DIRECTED TO APPOINT BARNABY C. WITTELS, ESQUIRE TO REPRESENT PETITIONER IN THE ABOVE-CAPTIONED MATTER.. SIGNED BY JUDGE LOUIS H. POLLAK ON 11/15/07.11/16/07 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 11/16/2007) |
| 12/06/2007 | 18 | First MOTION for Extension of Time to File Response/Reply filed by DAVID DIGUGLIELMO, THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA.Certificate of Service.Motions referred to ARNOLD C. RAPOPORT.(AFFRONTI, SUSAN) (Entered: 12/06/2007) |
| 12/07/2007 | 19 | MOTION for Extension of Time to File *Supplemental Pleadings & Memorandum of Law* filed by JOHN MOORE.certificate of service.Motions referred to ARNOLD C. RAPOPORT.(WITTELS, BARNABY) (Entered: 12/07/2007) |
| 12/12/2007 | 20 | First MOTION for Extension of Time to File *counseled pleadings* filed by JOHN MOORE.amended motion for extension of time to file counseled pleadings.Motions referred to ARNOLD C. RAPOPORT.(WITTELS, BARNABY) (Entered: 12/12/2007) |
| 12/12/2007 | 21 | ORDER THAT RESPONDENT'S MOTION FOR ENLARGEMENT OF TIME TO FILE A RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS IS GRANTED, AND RESPONDENTS SHALL FILE THEIR RESPONSE WITHIN 45 |

| | | DAYS OF PETITIONER FILING AN AMENDED PETITION FOR WRIT OF HABEAS CORPUS. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 12/12/07. 12/12/07 ENTERED AND COPIES MAILED AND E-MAILED.(ky, ) (Entered: 12/12/2007) |
|---|---|---|
| 12/12/2007 | 22 | ORDER THAT PETITIONER'S MOTION FOR AN EXTENSION OF TIME TO FILE AMENDED PETITION FOR WRIT OF HABEAS CORPUS IS GRANTED, AND PETITIONER SHALL FILE AN AMENDED PETITION ON OR BEFORE 2/10/08. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 12/12/07. 12/12/07 ENTERED AND COPIES MAILED AND E-MAILED.(ky, ) (Entered: 12/12/2007) |
| 12/14/2007 | 23 | ORDER THAT PETITIONER'S AMENDED MOTION FOR EXTENSION OF TIME TO FILE COUNSELED PLEADINGS, IS DENIED AS MOOT. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 12/14/07.12/14/07 ENTERED AND COPIES MAILED, E-MAILED.(er, ) (Entered: 12/14/2007) |
| 02/08/2008 | 24 | Second MOTION for Extension of Time to File *amended petition for writ of habeas corpus and memorandum of law* filed by JOHN MOORE.certificate of service.Motions referred to ARNOLD C. RAPOPORT.(WITTELS, BARNABY) (Entered: 02/08/2008) |
| 02/12/2008 | 25 | ORDER THAT PETITIONER'S 2ND MOTION FOR EXTENSION OF TIME TO FILE COUNSELED PLEADINGS, IS GRANTED, AND PETITIONER SHALL FILE AN AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND/OR MEMORANDUM OF LAWO N 2/29/08. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 2/12/08.2/13/08 ENTERED AND COPIES MAILED, E-MAILED.(er, ) (Entered: 02/13/2008) |
| 02/13/2008 | | ***Set/Reset Deadlines: AMENDED PLEADINGS DUE BY 2/29/2008. (er, ) (Entered: 02/13/2008) |
| 02/29/2008 | 26 | Third MOTION for Extension of Time to File *Counseled Pleadings* filed by JOHN MOORE, Certificate of Service. Motions referred to ARNOLD C. RAPOPORT. (WITTELS, BARNABY) Modified on 3/6/2008 (fh) (Entered: 02/29/2008) |
| 03/03/2008 | 27 | *Amended petition for writ of habeas corpus* filed by JOHN MOORE.amende petition, Motions referred to ARNOLD C. RAPOPORT.(WITTELS, BARNABY) Modified on 3/4/2008 (nd). (Entered: 03/03/2008) |
| 03/03/2008 | 28 | Plaintiff's Brief and Statement of Issues in Support of Request for Review filed by JOHN MOORE.brief in support of amended petition for writ of habeas corpus.Motions referred to ARNOLD C. RAPOPORT.(WITTELS, BARNABY) (Entered: 03/03/2008) |
| 03/03/2008 | 29 | ORDER THAT PETITIONER'S THIRD MOTION FOR EXTENSION OF TIME TO FILE COUNSELED PLEADINGS IS GRANTED, AND PETITIONER SHALL FILE AN AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND/OR MEMORANDUM OF LAW ON OR BEFORE 3/4/08. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 3/3/08. 3/3/08 ENTERED AND COPIES MAILED AND E-MAILED.(ky, ) (Entered: 03/03/2008) |
| 03/03/2008 | | AMENDED PLEADINGS DUE BY 3/4/2008. (ky, ) (Entered: 03/03/2008) |

| 03/04/2008 | 30 | Amended Petition for Writ of Habeas Corpus against DAVID DIGUGLIELMO, THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, filed by JOHN MOORE, certificate of service.(lvj, ) (Entered: 03/05/2008) |
|---|---|---|
| 03/04/2008 | 31 | Brief in support of Amended Petition for Writ of Habeas Corpus by JOHN MOORE, certificate of service. (lvj, ) (Additional attachment(s) added on 3/5/2008: # 1 exhibits) (lvj, ). Modified on 3/5/2008 (lvj, ). (Entered: 03/05/2008) |
| 04/16/2008 | 32 | MOTION for Extension of Time to File Response/Reply *to the Petition for Writ of Habeas Corpus* filed by DAVID DIGUGLIELMO, THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA..Motions referred to ARNOLD C. RAPOPORT.(AFFRONTI, SUSAN) (Entered: 04/16/2008) |
| 04/18/2008 | 33 | ORDER THAT MOTION FOR ENLARGEMENT OF TIME TO FILE RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS IS GRANTED, AND PETITIONER SHALL FILE A RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS ON OR BEFORE 6/2/08. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 4/18/08.4/18/08 ENTERED AND COPIES MAILED, E-MAILED.(er, ) (Entered: 04/18/2008) |
| 06/02/2008 | 34 | MOTION for Extension of Time to File Response/Reply *to the Petition for Writ of Habeas Corpus* filed by DAVID DIGUGLIELMO, THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA..Motions referred to ARNOLD C. RAPOPORT.(AFFRONTI, SUSAN) (Entered: 06/02/2008) |
| 06/02/2008 | 35 | ORDER THAT RESPONDENT'S MOTION FOR ENLARGEMENT OF TIME TO FILE RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS IS GRANTED, AND RESPONDENTS SHALL FILE A RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS ON OR BEFORE 6/16/08. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 6/2/08. 6/2/08 ENTERED AND COPIES MAILED AND E-MAILED.(ky, ) (Entered: 06/02/2008) |
| 06/16/2008 | 36 | Response to the Petition for Writ of Habeas Corpus by DAVID DIGUGLIELMO, THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, Certificate of service. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit) (AFFRONTI, SUSAN) Modified on 6/18/2008 (afm, ). (Entered: 06/16/2008) |
| 06/18/2008 | 37 | ORDER THAT PETITIONER'S MOTION FOR LEAVE FOR THE EXPANSION OF THE RECORD IN COMPLIANCE TO HABEAS CORPUS RULE 7(A)(B) (DOCKET NO. 14) IS GRANTED, AND PETITIONER SHALL BE PERMITTED TO INCLUDE THE THREE EXHIBITS LISTED IN HIS MOTION AS PART OF THE RECORD IN THIS CASE. PETITIONER SHALL FILE THESE THREE EXHIBITS ON OR BEFORE JULY 19, 2008. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 6/18/08. 6/18/08 ENTERED AND COPIES MAILED AND E-MAILED.(ky, ) (Entered: 06/18/2008) |

| 07/01/2008 | 38 | MOTION for Extension of Time to File Response/Reply filed by JOHN MOORE.motion for extension of time to file traverse.Motions referred to ARNOLD C. RAPOPORT.(WITTELS, BARNABY) (Entered: 07/01/2008) |
| 07/02/2008 | 39 | ORDER THAT PETITIONER'S 38 MOTION FOR EXTENSION OF TIME TO FILE TRAVERSE IS GRANTED, AND PETITIONER SHALL FILE A REPLY TO RESPONDENTS' RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS ON OR BEFORE AUGUST 15, 2008. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 7/2/08. 7/2/08 ENTERED AND COPIES MAILED, E-MAILED.(mas, ) (Entered: 07/02/2008) |
| 07/18/2008 | 40 | MOTION BY JOHN MOORE TO COMPEL THE STATE TO PRESENT DISCOVERY DOCUMENTS,PROOF OF SERVICE.Motions referred to ARNOLD C. RAPOPORT.(fb) (Entered: 07/18/2008) |
| 07/22/2008 | 41 | ORDER THAT THIS COURT'S JUNE 18, 2008 ORDER (DOCKET NO. 37) IS VACATED, AS IT WAS ENTERED IN ERROR. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 7/22/08. 7/23/08 ENTERED AND COPIES MAILED AND E-MAILED. (ky) (Entered: 07/23/2008) |
| 07/22/2008 | 42 | ORDER THAT PETITIONER'S PRO SE MOTION TO COMPEL IS DENIED WITHOUT PREJUDICE. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 7/22/08. 7/23/08 ENTERED AND COPIES MAILED AND E-MAILED.(ky, ) (Entered: 07/23/2008) |
| 08/15/2008 | 43 | Second MOTION for Extension of Time to File Response/Reply filed by JOHN MOORE.certificate of service.Motions referred to ARNOLD C. RAPOPORT. (WITTELS, BARNABY) (Entered: 08/15/2008) |
| 08/18/2008 | 44 | ORDER THAT PETITIONERS MOTION IS GRANTED, AND PETITIONER SHALL FILE A REPLY TO RESPONDENTS RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS ON OR BEFORE SEPTEMBER 15, 2008. NO FURTHER EXTENSIONS SHALL BE GIVEN. REPLIES DUE BY 9/15/2008. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 8/18/08.8/18/08 ENTERED AND COPIES MAILED, E-MAILED.(er, ) (Entered: 08/18/2008) |
| 09/10/2008 | 45 | Plaintiff's Brief and Statement of Issues in Support of Request for Review *Traverse Brief* filed by JOHN MOORE.brief.Motions referred to ARNOLD C. RAPOPORT. (WITTELS, BARNABY) (Entered: 09/10/2008) |
| 10/20/2008 | 46 | REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE ARNOLD C. RAPOPORT THAT THIS MATTER BE DISMISSED WTIHOUT AN EVIDENTIARY HEARING. OBJECTIONS TO R&R DUE BY 11/7/2008. SIGNED BY MAGISTRATE JUDGE ARNOLD C. RAPOPORT ON 10/20/08. 10/20/08 ENTERED AND COPIES MAILED AND E-MAILED.(ky, ) (Entered: 10/20/2008) |
| 10/28/2008 | 47 | First MOTION for Extension of Time to File Response/Reply as to 46 REPORT AND RECOMMENDATIONS re 30 Amended Petition for Writ of Habeas Corpus filed by JOHN MOOREREPORT AND RECOMMENDATIONS re 30 Amended Petition for |

| | | Writ of Habeas Corpus filed by JOHN MOORE filed by JOHN MOORE.motion for extension of time to file objections to report and recommendation of magistrate judge.Motions referred to ARNOLD C. RAPOPORT.(WITTELS, BARNABY) (Entered: 10/28/2008) |
|---|---|---|
| 11/11/2008 | <u>48</u> | Objections by JOHN MOORE *objections to report and recommendation of magistrate judge*, Certificate of Service. (Attachments: # <u>1</u> Exhibit petitioner's objections) (WITTELS, BARNABY) Modified on 11/17/2008 (fh, ). (Entered: 11/11/2008) |
| 11/18/2008 | <u>49</u> | ORDER THAT PLFF MOTION FOR EXTENSION OF TIME TO FILE OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE IS GRANTED. AND THE TIME FOR PLFF'S SUBMISSION SHALL BE EXTENDED FROM OCTOBER 30, 2008 UNTIL NOVEMBER 10, 2008.. SIGNED BY HONORABLE LOUIS H. POLLAK ON 11/13/08.11/1 9/08 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 11/19/2008) |
| 03/27/2009 | <u>50</u> | ORDER THAT PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS ARE OVERRULED. THE REPORT AND RECOMMENDATION IS APPROVED AND ADOPTED. PETITIONER'S EPTITION FOR A WRIT OF HABEAS CORPUS IS DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING. A CERTIFICATE OF APPEALABILITY IS NOT GRANTED.. SIGNED BY HONORABLE LOUIS H. POLLAK ON 3/27/09. 3/30/09 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 03/30/2009) |
| 04/08/2009 | <u>51</u> | MOTION FOR RECONSIDERATION FILED BY JOHN MOORE, CERTIFICATE OF SERVICE.(lvj, ) (Entered: 04/09/2009) |
| 04/20/2009 | <u>52</u> | MOTION TO APPEAL IN FORMA PAUPERIS FILED BY JOHN MOORE, CERTIFICATE OF SERVICE.(lvj, ) (Entered: 04/21/2009) |
| 04/20/2009 | <u>53</u> | NOTICE OF APPEAL as to <u>50</u> Order Adopting Report and Recommendations, by JOHN MOORE. Copies to Judge, Clerk USCA, Appeals Clerk and SUSAN ELIZABETH AFFRONTI, BARNABY C. WITTELS (lvj, ) (Entered: 04/21/2009) |
| 04/20/2009 | <u>54</u> | Clerk's Notice to USCA re <u>53</u> Notice of Appeal : (lvj, ) (Entered: 04/21/2009) |
| 04/20/2009 | <u>55</u> | MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE PURSUANT TO FED.R.EVID. RULE 201 FILED BY JOHN MOORE, VERIFICATION, CERTIFICATE OF SERVICE.(lvj, ) (Entered: 04/21/2009) |
| 04/23/2009 | <u>56</u> | MOTION FOR CERTIFICATE OF APPEALABILITY BY PETITIONER JOHN MOORE, CERTIFICATE OF SERVICE.(ky, ) (Entered: 04/23/2009) |
| 04/23/2009 | | Record Complete for Purposes of Appeal re <u>53</u> Notice of Appeal. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (om, ) (Entered: 04/23/2009) |
| 04/24/2009 | <u>57</u> | MOTION FOR CERTIFICATE OF APPEALABILITY FILED BY JOHN |

Case: 22-1763   Document: 1-1   Page: 512   Date Filed: 04/26/2022
United States District Court Eastern District of Pennsylvania

4/21/22, 11:40 AM

| | | |
|---|---|---|
| | | MOORE.VERIFICATION, CERTIFICATE OF SERVICE. (Attachments: # 1 motion, # 2 motion)(lvj, ) (Entered: 04/27/2009) |
| 04/28/2009 | | NOTICE of Docketing Record on Appeal from USCA re 53 Notice of Appeal filed by JOHN MOORE. USCA Case Number 09-2189 (lvj, ) (Entered: 04/29/2009) |
| 04/29/2009 | 58 | Certified Copy of Order from USCA that the above-entitled appeal is stayed pending disposition of the motion. The parties are directed to file writte reports addressing the status of the pending motion on 5/29/09 and every thirty days thereafter until the last motion is decided, etc. this stay does not apply to the obligation to pay filing and docketing fees or the filing of the case opening forms, etc. (lvj, ) (Entered: 04/30/2009) |
| 05/13/2009 | 59 | Petitioner's notice of supplemental authorities filed by JOHN MOORE, verification, certification. (Attachments: # 1 notice, # 2 notice)(lvj, ) (Entered: 05/14/2009) |
| 05/26/2009 | 60 | CJA 20: APPIONTMENT OF ATTORNEY BARNABY C. WITTELS for JOHN MOORE,. SIGNED BY HONORABLE LOUIS H. POLLAK ON 5/6/09. 5/27/09 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 05/27/2009) |
| 07/22/2009 | 61 | MOTION FOR CLARIFICATION FILED BY JOHN MOORE.VERIFICATION, CERTIFICATION.(lvj, ) (Entered: 07/23/2009) |
| 08/20/2009 | 62 | MOTION FOR LEAVE OF COURT TO FILE AMENDMENT, ETC, AND MOTION FOR AMENDMENT FILED BY JOHN MOORE..(lvj, ) (HARD COPY ONLY) (Entered: 08/21/2009) |
| 02/16/2010 | 63 | ORDER THAT THE CLERK OF THE QUARTER SESSIONS COURT OF PHILADELPHIA COUNTY SHALL FILE WITH THE CLERK OF THIS COURT COPIES OF ALL RECORDS, INCLUDING TRANSCRIPTS OF NOTES OF TESTIMONY AT ARRAIGNMENT, TRIAL, SENTENCING, SUPPRESSION HEARINGS, POST CONVICTION HEARINGS, PETITIONS, PLEADINGS, OPINIONS AND BRIEFS OF STATE COURT PROCEEDINGS IN THE MATTER OF COMMONWEALTH V. MOORE, COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY,NOS. 9802-0106 AND 9802-0141 WITHIN 20 DAYS OF THE DATE OF THIS ORDER. PRISONER STATE RECORD DUE BY 3/18/2010.. SIGNED BY HONORABLE LOUIS H. POLLAK ON 2/16/10. 2/17/10 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 02/17/2010) |
| 03/19/2010 | | State Court Record received and forwarded to Judge Pollak. CP-020141-1998 and CP-020106-1998(lvj, ) Modified on 3/19/2010 (lvj, ). (Entered: 03/19/2010) |
| 03/22/2010 | 64 | Receipt for state court record returned signed by chambers on 3/22/10 for CP020106-1998 (lvj, ) (Entered: 03/23/2010) |
| 03/22/2010 | 65 | Receipt for state court record returned signed by chambers on 3/22/10 for CP020141-1998 (lvj, ) (Entered: 03/23/2010) |
| 04/09/2010 | 66 | MOTION TO COMPEL THE STATE TO PRESENT DISCOVERY DOCUMENTS FILED BY JOHN MOORE, VERIFICATION, CERTIFICATE OF SERVICE.(lvj, ) (lvj, ). (Entered: 04/09/2010) |

| 04/09/2010 | 67 | EXHIBIT by JOHN MOORE.. (lvj, ) (Entered: 04/09/2010) |
| 05/20/2010 | 68 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE LOUIS H. POLLAK ON 5/18/10. 5/21/10 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 05/21/2010) |
| 05/20/2010 | 69 | ORDER THAT PETITIONER'S MOTION FOR RECONSIDERATION IS GRANTED IN PART AND DENIED IN PART, ETC. PETITIONER'S MOTION TO APPEAL IN FORMA PAUPERIS IS DENIED WITHOUT PREJUDICE,; PETITIONER'S MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE IS DEINED AS MOOT; THE CLERK IS DIRECTED TO FORWARD PETITINER'S TWO MOTIONS FOR A CERTIFICATE OF APPEASLABILITY TO THE USCA FOR THE THIRD CIRCUIT; PETITIONER'S MOTION FOR CLARIFICATION IS GRANTED; PETITIONER'S MOTION FOR LEAVE OF COURT TO FILE AMENDMENT IS DISMISSED; AND PEITITONER'S MOTION TO COMPEL THE STATE TO PRESENT DISCOVERY DOCUMENTS IS DENIED.. SIGNED BY HONORABLE LOUIS H. POLLAK ON 5/18/10. 5/21/10 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 05/21/2010) |
| 05/20/2010 | | Petitioners' to motions for a certificate of appealability 56 and 57 sent to the USCA for the third circuit per order filed 5/20/10. (lvj, ) (Entered: 05/21/2010) |
| 05/24/2010 | 72 | NOTICE OF APPEAL as to 69 Order (Memorandum and/or Opinion by JOHN MOORE. Copies to Judge, Clerk USCA, Appeals Clerk, certificate of service (lvj, ) Modified on 6/7/2010 (lvj, ). (Entered: 06/07/2010) |
| 05/27/2010 | 70 | Request for grant of C.O.A. pursuant to rule 22(b) of Fed.R.App.P filed by JOHN MOORE, verification, certificate of service. (lvj, ) (Entered: 05/28/2010) |
| 06/02/2010 | 71 | ORDER THAT PETITIONER'S REQUEST FOR A CERTIFICATE OF APPEALABILITY IS DENIED.. SIGNED BY HONORABLE LOUIS H. POLLAK ON 6/1/10. 6/3/10 ENTERED AND COPIES MAILED, E-MAILED AND FAXED. (COPY SENT TO PRO SE)(lvj, ) (Entered: 06/03/2010) |
| 06/04/2010 | 73 | Clerk's Notice to USCA re 72 Notice of Appeal : (lvj, ) (Entered: 06/07/2010) |
| 06/08/2010 | | (State Court Record forwarded to USCA). (om, ) (Entered: 06/08/2010) |
| 06/08/2010 | | Record Complete for Purposes of Appeal re 72 Notice of Appeal. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (om, ) (Entered: 06/08/2010) |
| 06/11/2010 | 74 | AFFIDAVIT AND MOTION FOR PERMISSION TO APPEAL IN FORMA PAUPERIS FILED BY JOHN MOORE..(lvj, ) (Entered: 06/14/2010) |
| 06/15/2010 | 75 | ORDER THAT PETIITONER'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS IS GRANTED.. SIGNED BY HONORABLE LOUIS H. POLLAK ON 6/14/10.6/16/10 ENTERED AND COPIES MAILED, E-MAILED AND FAXED. (COPY TO PRO SE)(lvj, ) (Entered: 06/16/2010) |
| 09/24/2010 | 76 | ORDER of USCA as to 53 Notice of Appeal filed by JOHN MOORE, dated 9/24/10, |

| | | re: The application for a certificate of appealability is granted in part and denied in part, etc.. (fb) (Entered: 09/27/2010) |
|---|---|---|
| 08/31/2012 | 77 | ORDER of USCA dated 7/19/2012 THAT THE JUDGMENT OF THE DISTRICT COURT DATED 3/30/2009 IS HEREBY AFFIRMED. ALL OF THE ABOVE IN ACCORDANCE WITH THE OPINION OF THIS COURT. (ems) (Entered: 09/04/2012) |
| 10/03/2012 | | State court returned from USCA and forwarded to Tom Clewley. (lvj, ) (Entered: 10/03/2012) |
| 06/04/2013 | 78 | Letter from Michael Finney, Supervisor of Records to Clerk of Quarter Sessions of Phila dated 6/4/13 re: return of state court record (lvj, ) (Entered: 06/06/2013) |
| 06/17/2013 | 79 | Letter from Clerk of Quarter Sessions of Phila dated 6/6/13 re: receipt for the return of the state court record (lvj, ) (Entered: 06/18/2013) |
| 08/08/2013 | 80 | Certified Copy of Order from USCA that petitioner's request for appointment of counsel; his request to proceed in forma pauperis, submitted for appointment of counsel purposes; and his request to hold his case in abeyance pending the outcome of his state post-conviction relief act proceedings are denied. (lvj, ) (Entered: 08/09/2013) |
| 05/29/2015 | 81 | PETITIONER JOHN MOORE'S EXHIBITS TO RULE 60(b) MOTION. (jpd, ) (Entered: 05/29/2015) |
| 06/01/2015 | 82 | PETITIONER JOHN MOORE'S MOTION TO REOPEN THE JUDGMENT PURSUANT TO RULE 60(b)(6)(1)(3), CERTIFICATE OF SERVICE. (jpd) (Entered: 06/02/2015) |
| 06/03/2015 | 83 | ORDER THAT THIS CASE IS REASSIGNED FROM THE CALENDAR OF THE LATE HONORABLE JUDGE LOUIS H. POLLAK TO THE CALENDAR OF THE HONORABLE JUDGE EDWARD G. SMITH FOR ALL FURTHER PROCEEDINGS. SIGNED BY MICHAEL E. KUNZ, CLERK OF COURT ON 6/3/15. 6/3/15 ENTERED AND COPIES MAILED TO PRO SE PETITIONER AND E-MAILED. (jpd) (Entered: 06/03/2015) |
| 06/05/2015 | 84 | ORDER THAT PETITIONER'S MOTION (DOC. NO. 82) IS CONTRUED AS AN UNAHOTORTIZED SECOND OR SUCCESSIVE HABEAS CORPUS PETITION UNDER 28 USC 2254 AND IS DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION; AND A CERTIFICATE OF APPEALABILITY SHALL NOT ISSUE. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/5/15.6/5/15 ENTERED AND COPIES MAILED TO PRO SE' AND E-MAILED. (ky, ) Modified on 6/8/2015 (lisad, ). (Entered: 06/05/2015) |
| 06/15/2015 | 85 | PETITIONER JOHN MOORE'S MOTION FOR RECONSIDERATION, CERTIFICATE OF SERVICE.(jpd) (Main Document 85 replaced on 6/16/2015) (jpd, ). (Entered: 06/16/2015) |
| 06/18/2015 | 86 | ORDER AS FOLLOWS: 1. TO THE EXTENT THAT THE MOTION (DOC. NO. 85) IS CONSTRUED AS AN UNAUTHORIZED SECOND OR SUCCESSIVE HABEAS CORPUS PETITION UNDER 28 U.S.C. SECTION 2254, IT IS DISMISSED FOR |

| | | LACK OF SUBJECT-MATTER JURISDICTION AND A CERTIFICATE OF APPEALABILITY SHALL NOT ISSUE; AND 2. TO THE EXTEND THAT THE MOTION (DOC. NO. 85) IS CONTRUED AS A TRUE RULE 59(e) MOTION, IT IS DENIED. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/18/2015.6/18/2015 ENTERED AND COPIES MAILED TO PETITIONER AND E-MAILED.(lbs, ) (Entered: 06/18/2015) |
|---|---|---|
| 06/26/2015 | 87 | NOTICE OF APPEAL as to 84 Order on Motion for Relief Under 60B, by JOHN MOORE. IFP PENDING Copies to Judge, Clerk USCA, Appeals Clerk, Certificate of Service. (jpd) (Entered: 07/02/2015) |
| 07/02/2015 | 88 | Clerk's Notice to USCA re 87 Notice of Appeal : (jpd, ) (Entered: 07/02/2015) |
| 07/06/2015 | | NOTICE of Docketing Record on Appeal from USCA re 87 Notice of Appeal filed by JOHN MOORE. USCA Case Number 15-2633 (jpd) (Entered: 07/06/2015) |
| 02/05/2016 | 89 | ORDER of USCA dated 2/5/16 that Appellant's request for a certificate of appealability is DENIED, etc. (pr, ) (Entered: 02/05/2016) |
| 08/17/2018 | 90 | NOTICE of Appearance by MAX COOPER KAUFMAN ON BEHALF OF THE RESPONDENTS IN THE ABOVE-CAPTIONED MATTER. NOTICE OF WITHDRAWAL OF APPEARANCE OF SUSAN E. AFFRONTI ON BEHALF OF THE RESPONDENTS IN THE ABOVE-CAPTIONED MATTER. (kp, ) (Entered: 08/29/2018) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/21/2022 11:37:30 | | | |
| **PACER Login:** | bretgrote | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:05-cv-02796-EGS |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**LP**



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 USC §2254

(eff.10/01/02)

**JOHN MOORE**    ~~FILED~~    PETITIONER

(Full name) (Include name under which you were convicted)

Aug 0 2005

vs.    MICHAEL E. KUNZ, Clerk    CASE NO. **05-2796**
By _____ Dep Clerk    (supplied by the Court)

**David DiGuGLielMO**    RESPONDENT

(Name of Warden, Superintendent, Jailor, or authorized
person having custody of petitioner)
and

THE DISTRICT ATTORNEY OF THE COUNTY OF **PHILADELPHIA**
and

THE ATTORNEY GENERAL OF THE STATE OF **PENNSYLVANIA**

ADDITIONAL RESPONDENT

**JOHN MOORE**    **DD 9449**

Name    Prison Number

**STATE CORRECTIONAL INSTITUTION GRATERFORD**

Place of Confinement

(If petitioner is attacking a judgment which imposed a
sentence to be served in the future, petitioner must fill in the
name of the state where the judgment was entered. If petitioner
has a sentence to be served in the future under a federal
judgment which he wishes to attack, he should file a motion under
28 U.S.C.§2255, in the federal court which entered the judgment.)

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

### INSTRUCTIONS - READ CAREFULLY

1. YOU MUST INCLUDE ALL POTENTIAL CLAIMS AND SUPPORTING
FACTS FOR WHICH YOU MIGHT DESIRE TO SEEK REVIEW BECAUSE A SECOND
OR SUCCESSIVE HABEAS CORPUS PETITION CANNOT BE FILED EXCEPT
UNDER VERY SPECIFIC AND RARE CIRCUMSTANCES REQUIRING
CERTIFICATION BY THE THIRD CIRCUIT COURT OF APPEALS AS SET FORTH IN
INSTRUCTION #13.

2. YOUR HABEAS CORPUS PETITION MUST BE FILED WITHIN THE 1-YEAR STATUTE OF LIMITATIONS TIME LIMIT SET FORTH IN 28 U.S.C. § 2244(d)(1). (THERE ARE LIMITED CIRCUMSTANCES IN WHICH THE PETITION MAY BE AMENDED, WITHIN THE ONE-YEAR TIME PERIOD, TO ADD ADDITIONAL CLAIMS OR FACTS, SEE FEDERAL RULE OF CIVIL PROCEDURE 15; OR AMENDED AFTER THE ONE-YEAR PERIOD EXPIRES, IN ORDER TO CLARIFY CLAIMS WHICH WERE TIMELY PRESENTED, SEE UNITED STATES v. THOMAS, 221 F.3d 430 (3d Cir. 2000).)

3. Any false statement of a material fact in your petition, in a motion for leave to proceed in forma pauperis, or in any other motion you file in this case may serve as the basis for prosecution and conviction for perjury.

4. This petition must be typewritten, printed, or legibly handwritten and signed by you as the petitioner on Page 12. You should answer all questions concisely in the proper space of the petition. If you need more room to answer any question, you may write on the reverse blank sides of the petition.

5. You may not attach additional pages to the petition. You do not have to list or cite the cases or law that you are relying on. If you do want to cite the cases and law you are relying on and make legal arguments, you should do so in a separate concise brief or memorandum which should be filed along with the petition.

6. When you file your petition, you must include a filing fee of $5.00. If you cannot pay the full filing fee, you must request permission to proceed in forma pauperis as explained in instruction #8.

7. Your petition will be filed if you have followed these instructions and it is in proper order. Petitions which are not in proper order will be returned to you with a notation as to what is improper.

8. To request permission to proceed in forma pauperis without paying the full filing fee, you must completely fill out pages thirteen through twenty of the petition. You should answer all questions and sign where indicated on Pages 13 and 19. You should see to it that an authorized prison official completes the certification on Page 20. You must prove that you cannot pay the full filing fee and other costs because of poverty and a discharge in bankruptcy will not excuse you from this requirement. The Court will let you know if you may proceed in forma pauperis.

9. Only final judgments entered by one state court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

10. As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim must have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition and send it back to you so that you can exhaust all your claims and file your petition again. 28 U.S.C. § 2254(b)(2) provides that if it is perfectly clear that no colorable claims are presented, the federal court can also deny your petition on the merits.

11. As required by 28 U.S.C. § 2254(e)(1), a federal court, when considering your habeas corpus petition, must deem as correct a determination of fact made by a state court unless you rebut the presumption of correctness by clear and convincing evidence. Under 28 U.S.C. § 2254(e)(2), if you have failed to develop the factual basis of a claim in state court proceedings, a federal court cannot hold an evidentiary hearing on that claim unless you show that:

(i) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U. S. Supreme Court, that was previously unavailable, or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence.

You must also show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found you guilty of the offense in question.

12. As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that <u>was</u> presented in a prior habeas corpus petition.

13. As required by 28 U.S.C. § 2244(b)(2), a federal court must dismiss any claim in a second or successive habeas corpus petition that <u>was not</u> presented in a prior habeas corpus petition unless you show:

(A) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U. S. Supreme Court, that was previously unavailable; or

(B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim if proven and viewed in light of the said d

by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found you guilty of the offense in question.

        Before such a second or successive petition may be filed in the district court, however, the petitioner must move the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B) above.


        14. 28 U.S.C. § 2254(i) provides that ineffectiveness of counsel during post-conviction, habeas corpus and P.C.R.A. proceedings in state or federal court may not be grounds for relief in your petition.


        15. When the petition is fully completed, the original and four copies must be mailed to the Clerk of the United States District Court, Room 2609, 601 Market Street, Philadelphia, PA 19106. You must return all pages, including these instructions.

## PETITION

1. (a) Name and location of court which entered the judgment of conviction under attack: PHILADELPHIA COURT OF COMMON PLEAS
   (b) Name of Prosecutor: CARLOS VEGA
   (c) Prosecution conducted by District Attorney's Office of PHILADELPHIA County

2. (a) Date of Judgment of conviction: MAY 9, 2000
   (b) Indictment number or numbers: 9802-0106, 0141

   Term: FEBUARY    Criminal Case Number: 9802-0106, 0141

3. Length of sentence: LIFE    Sentencing Judge: STEVEN GEROFF

4. Nature of offense or offenses for which you were convicted:

   2ND. DEGREE MURDER, POSESSION OF INSTRUMENT OF CRIME, AND CONSPIRACY

5. What was your plea? (check one)
   (a) Not Guilty (✓)    (b) Guilty ( )    (c) Nolo contendere ( )
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: _____

   _____

   _____

6. Kind of trial: (check one)
   (a) Jury ( )    (b) Judge only (✓)

7. Did you testify at the trial?  Yes ( )  No (✓)

8. Did you appeal from the judgment of conviction?
   Yes (✓) No ( )

9. If you did appeal, answer the following:

(a) Name of court: PENNSYLVANIA SUPERIOR COURT

(b) Result: CONVICTION AFFIRMED

(c) Date of Result: JULY 17, 2001

~~If you filed a second appeal or filed a petition for~~
certiorari in the Supreme Court, give details: ALLOCATUR
TO SUPREME COURT OF PENNSYLVANIA FILED SEPT. 14, 2004
DENIED

10. Other than a direct appeal from the judgment of conviction
and sentence, have you previously filed any petitions,
applications, or motions with respect to this judgment in any
court, state or federal?              Yes (✓)    No ( )

11. If your answer to 10 was "yes", give the following
information:

   (a) (1) Name of Court: COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

      (2) Nature of proceeding: POST CONVICTION RELIEF ACT PETITION

      _____

      (3) Grounds raised: _____

      _____

      _____

      (4) Did you receive an evidentiary hearing on your
petition, application or motion?
          Yes ( )    No (✓)

      (5) Result: PCRA PETITION SUMMARY DENIED

      _____

      _____

      (6) Date of result: DECEMBER 20, 2001

(7)  Did you appeal the result to a higher court?  Yes(✓)  No( )

Court Name(s) Superior Court  Result(s) AFFIRMED  Result Date(s) AUGUST 27, 2004

ALLOCATUR to Supreme Court of PA DENIED

   (b) As to any <u>second petition</u>, application or motion give the same information:

      (1) Name of Court: _____NA_____

      (2) Nature of proceeding: ___NA_____

      _____

      (3) Grounds raised: ___NA_____

      _____

      _____

      (4) Did you receive an evidentiary hearing on your petition, application or motion?
          Yes ( )    No (✓)

      (5) Result: _____NA_____

      _____

      _____

      (6) Date of result: _____NA_____

      (7) Did you appeal the result to a higher court? Yes( )  No( )

Court Name(s) NA    Result(s) NA    Result Date(s) NA

   (c) As to any <u>third petition</u>, application or motion, give the same information:

      (1) Name of Court: ___NA_____

      (2) Nature of proceeding: ___NA_____

      (3) Grounds raised: _____NA_____

_____

_____

(4) Did you receive an evidentiary hearing on your
petition, application or motion?

Yes ( ) No ( )

(5) Result: _____ NA _____

(6) Date of Result: _____ NA _____

(7) Did you appeal the result to a higher court? Yes( ) No( )

Court Name(s) NA ___ Result(s) NA ___ Result Date(s) NA ___

(d) If you did not appeal from the adverse action on any
petition, application or motion, explain briefly why you did not:

_____

_____ NA _____

_____

12. State concisely every ground on which you claim that you are
being held unlawfully. GIVE SPECIFIC FACTS SUPPORTING EACH GROUND

CAUTION: In order to proceed in the federal court, you must
ordinarily first exhaust your state court remedies, you should
set them forth in this petition if you wish to seek federal
relief. If you fail to set forth all such grounds in this
petition, you may be barred from presenting them at a later date.

For information, the following is a list of the most
frequently raised grounds for relief in habeas corpus
proceedings. Each statement preceded by a letter constitutes a
separate ground for possible relief. You may raise any grounds
which you may have other than those listed if you have exhausted
all you state court remedies with respect to them. However, you
should raise in this petition all available grounds (relating to
this conviction) on which you base your allegations that you are
being held in custody unlawfully.

8

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

~~(c) Conviction obtained by use of evidence gained pursuant~~ to an unconstitutional search and seizure, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(I) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: PETITIONER WAS DENIED his SIX AMENDMENT RIGHT WHEN TRIAL COUNSEL FAILED TO INVESTIGATE, INTERVIEW, AND Call WITNESS (LapriciA Jessup)

(Specific FACTS supporting this ground without citing cases or law): TRIAL/APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO INVESTIGATE, INTERVIEW, AND CALL ONE Ms. Lapricia Jessup, WHO TESTIMONY WOULD HAVE WENT DIRECTLY TO THE HEART OF THE CLEMENT OF PETITIONER'S DEFENSE OF being INNOCENT. Ms Jessup WOULD (CONTINUE ON BACK)

B. Ground two: TRIAL/APPELLANT COUNSEL WAS CONSTITUTIONALLY (CONT. ON NEXT PAGE)

(**Ground one cont**.)- have testified that she is the sister of one James Lamb who was the chief and only witness against petitioner. She would have testified that her brother told her approximately a week after his arrest that he did not know who was with him and in fact remembered little about the event due to his inebriation from drugs, which was contradictory to what he testified to at petitioner's trial. Her testimony would have buttressed petitioner's claim of innocense and of not being at the scene of the crime when it occured, as well as impeached the testimony of Mr. Lamb.

Petitioner asserts that counsel's actions deprived him of his sixth amendment right of the effective assistance of counsel, and the right to compulsory process of obtaining witnesses in his favor.

CONFRONT AND CROSS EXAMINE THE WITNESS AGAINST HIM, AND ALLEVIATED PROSECUTION OF IT'S RESPONSIBILITY TO PROVE EVERY ELEMENT OF THE OFFENSE CONTRARY TO THE DUE process Clause OF THE FOURTEENTH AMENDMENT.

(Specific FACTS supporting this ground without citing cases or law):

IN THE INSTANT CASE, TRIAL COUNSEL stipulated TO THE CORONER'S REPORT AS TO THE CAUSE OF DEATH depriving Petitioner the RIGHT TO CONFRONT AND CROSS EXAMINE this WITNESS AGAINST him, AS WELL AS ALLEVIATING THE COMMONWEALTH OF THE burden OF Proving EVERY ELEMENT OF THE OFFENSE, This INSPITE OF THE FACT, THE Prosecution PERMITTED THE ONLY (CONT. ON BACK)

C. Ground three: TRIAL COUNSEL WAS Constitutionally INEFFECTIVE FOR NOT RAISING PROSECUTORIAL MISCONDUCT WHEN THE Prosecutor SUBORNED PERJURED TESTIMONY THAT, JAME LAMB THE ONLY witness AGAINST Petitioner TESTIFIED THAT Petitioner SHOT THE
(Specific FACTS supporting this ground without citing cases or law):

VICTIM IN THE HEAD WHEN THE deceased DIED FROM A .380 AUTOMATIC Bullet IN THE back. (FACTS supporting →) IN THIS INSTANT CASE NOT ONLY DID THE Prosecutor suborned THE PERJURED Testimony OF THE ONLY WITNESS AGAINST Petitioner (James Lamb) That THE DECEASED WAS SHOT IN THE HEAD by Petitioner WHEN IN FACT HE WAS ASSERTED to have been shot IN the back with (CONT.

D. Ground four: TRIAL COUNSEL WAS Constitutionally INEFFECTIVE FOR Advising APPELLANT NOT TO TESTIFY ON his OWN beHALF.
(Specific FACTS supporting this ground without citing cases or law):

IN THE INSTANT CASE, THE ONLY WITNESS AGAINST Petitioner TESTIFIED THAT THE Petitioner shot THE VICTIM IN THE HEAD. THIS TESTIMONY WAS elicited FROM JAMES LAMB WHO IN FACT WAS THE shooTER OF THE VICTIM (SEE N.T. VOL. 3, PAGE 71, 5/3/2000) WHO ACCORDING to His TESTIMONY STATED FROM EARLY IN THE DAY UP UNTIL THE TIME OF THE INCIDENT (cont. →)

10

(<u>Ground two cont</u>.)- witness against petitioner to testify that
the victim was shot in the head, contradictory to the coroner's
report of death being cause by a shot in the back. This allowing
the purjured testimony of the witness , or the falsification of
the coroner's report, all contrary to the due process clause of
the fourteenth amendment and his sixth amendment right to
effective assistance of counsel and the right to a fair and
impartial trial.

(<u>Ground three cont</u>.)- a .380 automatic projectile, but he in fact
elicited the purjured testimony (see N.T. vol. 3, 5/8/00 P. 11-
19, 60, 63, 65) while simlultaneously submitting the coroner's
report which asserted that the decease was shot in the back with
a .380 automatic projectile. The petitioner here asserts that Mr.
Lamb's testimony is purjured  or the coroner's report is false,
either way, false evidence or purjured testimony offended the
petitioner's right to due process under the fourteenth amendment
of the United States Constitution and the sixth amendment right
to effective assistance of counsel.

(<u>Ground four cont</u>.)- he had used PCP (i.e. Phenycyclidine) a
hollucingen drug commonly known as Angel Dust, in combination
with Marijuana, Alcohol, Codine, and Xanax (see N.T. vol. 3,
5/8/00, at 11-19, 60, 63, 65) and who was subverted and coerced
via plea bargain to give testimony against petitioner, which
petitioner asserts is purjury i.e. contrary to the medical
examiner report stipulated to and entered into evidence by
prosecution, which unequivocally refutes the cause of death of
the victim, which is either false or Mr. Lamb's testimony
purjured. Pursuant to these facts counsel coerced and induced
petitioner not to testify in his own behalf. Even though there
was a colloquy in this matter it can not unequivocally be said
that appellant knowingly and intelligently waived his
constitutional right to testify, as the record does not
pellucidly show (<u>Ground four cont. on back of next page</u>)-

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state **briefly** what grounds were not so presented, and give your reasons for not presenting them:

_____

_____

N A

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ( ) No (✓)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing: NINO TINARI ESQ.

_____

(b) At arraignment and plea: NINO TINARI

(c) At trial: NINO TINARI

(d) At sentencing: NINO TINARI

(e) On appeal: NINO TINARI

(f) In any post-conviction proceeding: BARBARA McDermott

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding: N A

11

(Ground four cont.)- petitioner clearly understood the
ramification of his waiver of this sixth amendment constitutional
right. The colloquy consist solely of mono sylabic replies to the
inquring which our circiut court of appeal (i.e. 3rd cir.) has
held are insufficient to substantiate the waiver of important
constitutional rights. Had petitioner testified he would have
refuted Mr. Lambs allegations of being co-culprit in this
offense. He would have testified that he did know Mr. Lamb and
that they in fact had engaged in the smoking of Angel dust,
Marijuana, and consumption of Alcohol on a few occassions prior
to the incident in question, However at the time in question that
he had not associated with Mr. Lamb for several days prior to the
incident. He would have also testified that on the day in
question he had socialized with several other friends seperately
at different intervals during that day, whom was known to
appellant most of his life. He would have also testified that in
fact he was no where near the scene of the incident at the time
of it's occurrence and in fact had no knowledge of it what so
ever, except what he had learned through the police, prosecutor,
and Mr. Lamb's testimony. (Grounds five and six follows seriatim)

(Ground five)-  WHETHER THE TRIAL COURT IN CHARGING HIMSLEF
ON THE POLLUTED SOURCE OF JAMES LAMB'S
TESTIMONY RAISED DOUBT WHICH THE COURT
EXPRESSED HESITATION OF THE TESTIMONY
TRUTHFULNESS IN, (THE TRUTH DETERMINATION
PROCESS) DENY PETITIONER DUE PROCESS OF LAW
WHICH NEGATED THE COMMONWEALTH BURDEN OF
PROVING EVERY ELEMENT OF THE OFFENSE BEYOND
REASONABLE DOUBT.

(supporting facts)- The petitioner in this matter had a bench
trial before the Honorable Steven Geroff in the court of Common
Pleas of Philadelphia county, Pa. The commonwealth presented four
witnesses, one alleged to have been the co-defendant of
petitioner Mr. James Lamb. Who's testimony therein is the only
germane evidence being challenged herein. The other three
witnesses positively identified Mr. James Lamb as the culprit of
the crime. However, at no time did they identify the petitioner
as a participant in the offense (cont. on back of next page)

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes (✓) No ( )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
        Yes ( )   No (✓)

        (a) If so, give name and location of court which imposed sentence to be served in the future:

NO / NA
_____

        (b) And give date and length of sentence to be served in future:

NO / NA
_____

        (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?        Yes ( )   No (✓)


        I declare under penalty of perjury that the foregoing is true and correct.

Executed on _April 18, 2005_        _John Moore_
                                        Signature of Petitioner


_N/A_
_____
        Signature of Attorney (if any)


12

(Ground five cont.)- charged. NOTE: at no time during trial did
any of the other three witnesses make any in court identification
or statement asserting petitioner was in any way involved in the
offense. This non obstante petitioner sitting in front of them
during the whole trial. It is unequivocally clear that the court
in coming to it's conclusion considered only the testimony of Mr.
Lamb who clearly as set forth supra in issue "D" (ground four)
committed purjury. The Trial court stated in pertinent part:

> "Having considered the evidence and having
> charged myself as I would a jury, and
> also in particular I want to make one
> comment, I did charge myself with respect
> to the quality of the testimony presented
> by Mr. Lamb who is a polluted source and
> I took that very seriously into
> consideration. I did not believe
> everything that Mr. Lamb said but I think
> that he did testify in a manner which
> minimized his own participation.
> nonetheless, I am satisfied that the
> following verdicts are supported by the
> evidence" (N.T. vol 4, 5/9/00 at 127)

The court statement pellucidly espouses doubt which under the
due process clause of the fourteenth amendment should have been
resolved in favor of the petitioner and he should have been
acquitted.

(Ground six)-     **WHETHER TRIAL COUNSEL WAS CONSTITUTIONAL
INEFFECTIVE FOR COERCING PETITIONER TO
WAIVE HIS CONSTITUTIONAL RIGHT TO A JURY
TRIAL**

(supporting facts)- In the instant manner trial counsel indured
and coerced petitioner to waive his constitutional right to a
jury trial with threats and promises of trial counsel. Counsel
emphatically impress the threat of the death penalty upon
petitioner if he took a jury trial. However, if he took a bench
trial the court would not impose the death penalty thereafter.
The petitioner rejected the bench trial and insisted upon a jury,
but counsel continued (Ground six cont. on back of next page)-

Affidavit Accompanying Motion for Permission to Proceed in the District court and/or on Appeal in Forma Pauperis in Habeas Corpus Cases under 28 U.S.C. Sections 2241 and 2254.

United States District Court for the Eastern District of Pennsylvania

JOHN MOORE
(Plaintiff)

v.

David DiGuglielmo ET. AL
(Defendant(s))

FILED

JUN 1 0 2005

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

District Court Case No. _____

---

Affidavit in Support of Motion

.I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.)

Signed: JOHN MOORE

---

Instructions

Complete all questions in the application and then sign it. Do not leave any blanks. If the answer to a question is "O," "none," or "not applicable (N/A)," write in that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.

Date: APRIL 14, 2005

---

13

(**Ground six cont**.)- to press for a bench trial and to help
persuade petitioner to accept the same; counsel arrange for a
special visit of appellant's mother in the attorney client
conference booth, who after being thoroughly indoctrinated by
counsel, anett petitioner being giving the death penalty if he
takes a jury trial, proceeded to break down constantly weeping
and begging petitioner to take a bench trial because she did not
want her son dead, petitioner subsequently aucumbed to counsel's
request due to his mother's stressful condition which in turn had
posed stress on petitioner. Under these circumstances petitioner
waived his right to a jury trial which he asserts was not a
knowing and intelligent waiver of his constitional right,
especially giving the fact that counsel threatened to withdraw
from the case and leave petitioner in the lurch. Under these
circumstances counsel clearly was ineffective under the sixth
amendment of United States constitution for inducing and coercing
petitioner to waive his right to a jury trial. Also denied him
due process under the fourteenth amendment of the United States
Constitution.

(**Ground seven**)- THE VERDICTS WERE AGAINST THE WEIGHT OF
THE EVIDENCE INSOFAR AS THE VERDICTS WERE
ENTIRELY BASED ON THE TESTIMONY OF JAMES
LAMB, AN ADMITTED PARTICIPANT IN THE
INCIDENT, WHOSE TESTIMONY WAS REPLETE
WITH INCONSISTENCIES AND MOTIVATED BY
SELF INTEREST

(**supporting facts**)- Petitioner asserts that the verdict of guilt
was against the weight of the evidence, in that the evidence
presented was insufficient to prove the element of the crime,
namely conspircy, the most important element in which petitioner
was convicted.

The law has been settled that the Commonwealth has the duty
to prove beyond a reasonable doubt every fact necessary to
constitute the crime with which a person is charged.

Here, the Commonwealth not only presented insufficient
evidence, but presented known perjured testimony and failed to

**(Ground seven cont.)-** correct it when Jamb Lamb, the chief and only witness who places petitioner at the sceene of the crime, testified that petitioner shot the deceased in the head with a revolver (N.T. vol. 3, trial 5/8/00, at 11-19, 60, 63, 65), When there is incontrovertible physical facts that states the deceased died from a gunshot wound to the back (N.T. vol 4, trial 5/9/00, at 79-80)

Petitioner contends Lamb's testimony should not be held credible, in that it totally "shocks the interest of justice". There is no way humanly possible for the cause of death to be from a gunshot wound to the "head" if the medical examiner's report is to be deemed as correct. The judge based his reasoning on Lamb's testimony, coupled with the testimony of two witnesses to infer conspiracy. However, the record shows that the judge gave undue weight to the Commonwealth's entire case. In fact, the judge reasoning is totally based on false facts, in that none of the witnesses identified petitioner as one of the perpetrators. (see N.T. vol 2. trial 5/5/00, at 48-50)(see N.T. vol 4, trial 5/9/00, at 4-74)

The is no sufficient evidence presented to justify the trial court's finding that petitioner was part of a conspiracy. The trial judge based his conviction of conspiracy soley upon misstating the facts of the testimony of Domonique Maxwell and William Cintron, stating that they actaully identified petitioner, when no where throughout the whole notes of testimony does it ever state that anyone besides Lamb placed petitioner at the seen of the crime, therfore due process under the Fourteenth Amendment was denied. The conviction was an unreasonable determination of the facts and contrary to clearly established federal law. Even more so because of the judge expressing doubt when he charged itself and failed to sway the verdict in favor of the petitioner as required by the fourteenth amendment. (see vol 4, trial 5/9/00, at 127).

My issues are:

I. PETITIONER WAS DENIED his SIX AMENDMENT RIGHT WHEN
TRIAL COUNSEL WAS   TO INVESTIGATE, INTERVIEW, AND CALL
WITNESS (LAPRICIA JESSUP).→ OTHER ISSUES II THROUGH VI ARE
ON THE BACK.

**1. For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.**

| Income source | Average monthly amount during During the past 12 months | Amount expected Next month |
|---|---|---|
| | You | You |
| Employment | $ NONE | $ NONE |
| Self-employment | $ NONE | $ NONE |
| Income from real property (such as rental income) | $ NONE | $ NONE |
| Interest and Dividends | $ 0 | $ 0 |
| Gifts | $ 0 | $ 0 |
| Alimony | $ 0 | $ 0 |
| Child Support | $ 0 | $ 0 |
| Retirement (such as social security, pensions, annuities, insurance) | $ 0 | $ 0 |
| Disability (such as social security, insurance payments) | $ 0 | $ 0 |
| (Unemployment payments | $ 0 | $ 0 |
| Public Assistance (such as welfare) | $ 0 | $ 0 |
| Other specify): | $ 0 | $ 0 |
| Total monthly income: | $ 0 | $ 0 |

**2. List your employment history, most recent employer first. (Gross monthly pay is before taxes or other deductions.)**

14

II. TRIAL/APPELLANT   COUNSEL WAS CONSTITUTIONALLY
INEFFECTIVE   WHEN   ACTIONS DENIED PETITIONER
OF THE   RIGHT   TO   CONFRONT AND CROSS EXAMINE
THE   WITNESS AGAINST   HIM,   AND ALLEVIATED
PROSECUTION   OF IT'S   RESPONSIBILITY TO PROVE
EVERY ELEMENT OF   THE OFFENSE CONTRARY TO THE
DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

III. TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE
FOR NOT RAISING   PROSECUTORIAL MISCONDUCT WHEN
THE   PROSECUTOR   SUBORNED PERJURED TESTIMONY
THAT,   JAMES   LAMB   THE ONLY WITNESS AGAINST
PETITIONER TESTIFIED   THAT PETITIONER SHOT THE
VICTIM IN THE HEAD WHEN THE DECEASED DIED FROM
A   .380 AUTOMATIC   BULLET   IN   THE   BACK.

IV. TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE
FOR   ADVISING   APPELLANT NOT TO TESTIFY ON HIS
OWN BEHALF.

V. WHETHER THE TRIAL COURT IN CHARGING HIMSELF ON
THE POLLUTED   SOURCE OF JAMES LAMB'S TESTIMONY
RAISED   DOUBT   WHICH   THE   COURT EXPRESSED
HESITATION OF   THE   TESTIMONY TRUTHFULNESS IN,
(THE   TRUTH   DETERMINATION.   PROCESS)   DENY
PETITIONER   DUE   PROCESS OF LAW WHICH NEGATED
THE   COMMONWEALTH   BURDEN   OF PROVING EVERY
ELEMENT   OF   THE OFFENSE   BEYOND REASONABLE
DOUBT.

VI. WHETHER   TRIAL   COUNSEL WAS CONSTITUTIONALLY
INEFFECTIVE FOR COERCING PETITIONER TO WAIVE
HIS   CONSTITUTIONAL   RIGHT TO   A JURY TRIAL.

VII. WHETHER   THE VERDICTS WERE AGAINST THE   WEIGHT
OF   THE   EVIDENCE INSOFAR AS THE VERDICTS WERE
ENTIRELY BASED ON THE TESTIMONY OF JAMES LAMB,
AN ADMITTED PARTICIPANT IN THE INCIDENT, WHOSE
TESTIMONY WAS REPLETE WITH INCONSISTENCIES AND
MOTIVATED BY SELF INTEREST

| Employer | Address | Dates of employment | Gross monthly pay |
|----------|---------|---------------------|-------------------|
|          |         |                     |                   |
|          |         |                     |                   |

**3. List your spouse's employment history, most recent employer first. (Gross monthly pay is before taxes or other deductions.)**

| Employer | Address | Dates of employment | Gross monthly pay |
|----------|---------|---------------------|-------------------|
|          | NONE    |                     |                   |
|          | NONE    |                     |                   |
|          | NONE    |                     |                   |

**4. How much cash do you and your spouse have?    $ NONE**

Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial Institution | Type of account | Amount you have | Amount your spouse Has |
|-----------------------|-----------------|-----------------|------------------------|
|                       | NONE            |                 |                        |
|                       | NONE            |                 |                        |
|                       | NONE            |                 |                        |

If you are a prisoner, you must attach a statement *certified by the appropriate institutional officer* showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account

**5. List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.    NONE**

15

Home (Value)    Other estate    Real (Value)    ....

0           NONE
0           NONE
0           NONE

**Motor Vehicle #1**
Value _____ 0 _____
Make & Year _____ 0 _____
Model: _____ 0 _____
Registration #: _____ 0 _____

**Motor vehicle #2**
Value _____ 0 _____
Make & year: _____ 0 _____
Model: _____ 0 _____
Registration # _____ 0 _____

Other Assets          Value of other assets
NONE                    0
NONE                    0
NONE                    0

**6. State every person, business, or organization owing your or your spouse money, and the amount owed.**

Person owing you or your    Amount owed to you    Amount owed to your spouse
Spouse money

NONE          0          0
NONE          0          0
NONE          0          0

**7. State the persons who rely on you or your spouse for support.**

Name          Relationship    Age

N/A           N/A             0
N/A           N/A             0
N/A           N/A             0

8. Estimate the average monthly expenses of you and your family.  Show separately the amounts paid by your spouse.  Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate:

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (include lot rented for mobile home) | $ NONE | $ NONE |
| Are real-estate taxes included? | Yes | No NONE |
| Is property insurance included: | Yes | No NONE |
| Utilities (electricity, heating fuel, water, sewer and Telephone) | $ NONE | $ NONE |
| Home maintenance (repairs & upkeep) | $ NONE | $ NONE |
| Food | $ NONE | $ NONE |
| Clothing | $ NONE | $ NONE |
| Laundry & Dry-Cleaning | $ NONE | $ NONE |
| Medical and dental expenses | $ NONE | $ NONE |
| Transportation (not including motor vehicle payments) | $ NONE | $ NONE |
| Recreation, entertainment, newspapers magazines, etc. | $ NONE | $ NONE |
| Insurance, not deducted from wages or included in Mortgage payments) | $ NONE | $ NONE |
| Homeowner's or renter's | | |
| Life | $ NONE | $ NONE |
| Health | $ NONE | $ NONE |
| Motor Vehicle | $ NONE | $ NONE |
| Other: | $ NONE | $ NONE |
| Taxes (not deducted from wages or included in mortgage payments) (specify): 0 | | |
| Installment payments | $ NONE | $ NONE |
| Motor Vehicle | $ NONE | $ NONE |
| Credit card | $ NONE | $ NONE |
| (Name) 0 | | |
| Department store (Name): 0 | $ NONE | $ NONE |
| Other 0 | $ NONE | $ NONE |
| Alimony, maintenance, and support Paid to others | $ NONE | $ NONE |
| Regular expenses for operation of | | |

business, profession, or farm (attach
detailed statement)                          s  NONE        s  NONE

**TOTAL MONTHLY EXPENSES:**          s  NONE        s  NONE

9. Do you expect any major changes in your monthly income or expenses or in your assets
or liabilities during the next 12 months?

Yes ____     No ✓    If yes, describe on an attached sheet.

10. Have you paid or will you be paying an attorney any money for services in connection
with this case, including the completion of this form?  Yes ____  No ✓
If yes, state the attorney's name, address, and telephone number:

_____

_____

_____

11.  Have you paid - or will you be paying- anyone other than an attorney (such as a
paralegal or typist) any money for services in connection with this case, including the
completion of this form?

Yes ____  No ✓

If yes, how much?         s  NONE

If yes, state the person's name, address, and telephone number:

_____NONE_____

_____

_____

12. Provide any other information that will help explain why you cannot pay the docket
fees for your appeal.

13. State the address of your legal residence.
SCI-GRATERFORD   • BOX 244 • GRATERFORD PA 19426

Your daytime phone number: _____0_____

Your age: __31__    Your years of schooling: __10th GRADE (GED)__

Your Social Security number: __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__

       I declare under the penalty of perjury that the foregoing is true and correct.

_John Moore_

Petitioner's signature

Executed on __April 16, 2005__

     (DATE)

IN THE FEDERAL DISTRICT COURT OF PENNSYLVANIA
EASTERN DISTRICT

NO.

JOHN MOORE

V.

DAVID DIGUGLIELMO

PETITIONER'S PROCEDURAL HISTORY, FACTUAL HISTORY,
AND MEMORANDUM OF LAW IN  SUPPORT OF HIS
28 U.S.C.A. § 2254 HABEAS CORPUS PETITION

JOHN MOORE DD9449
P.O. BOX 244
GRATERFORD PA 19426

## A.  **PROCEDURAL HISTORY**:

ON FEBUARY 19, 1997, A PRELIMINARY HEARING WAS HELD, WHEREIN
THE COMMONWEALTH AND THE DEFENSE COUNSEL, NINO V. TINARI, ESQUIRE
ENTERED INTO "A **STIPULATION**, ... FOR PURPOSE OF THE PRELIMINARY
HEARING ONLY." THE STIPULATION TO INTRODUCE THE MEDICAL EXAMINER.
(Id. N.T. PREL. HRG. 2/19/97, AT 4-5)

THE COMMONWEALTH INTRODUCED AN ALLEGED CO-DEFENDANT JAMES
LAMB, ON A PLEA NEGOTIATION FOR HIS TESTIMONY AGAINST THE
PETITIONER (Id., AT 7, 30-31) TESTIFIED THAT HE AND PETITIONER
SET OUT ON JULY 7, 1996, TO COMMIT A ROBBERY. (Id., AT 13-14). IT
WAS DURING THE COURSE OF THE ROBBERIES, BEAT SAMMY CEDANO,
WILLIAM CINTRON AND DANIEL DIAZ, AND SHOT ("DECEASED, CEDANO")
AND CINTRON. (id., AT 11-60).

ON **MAY 4, 2000**, PETITIONER APPEARED WITH HIS ATTORNEY MR.
TINARI, BEFORE THE HONORABLE STEVEN R. GEROFF, SITTING WITHOUT A
JURY, WHEREIN, A COLLOQUY WAS CONDUCTED REGARDING PETITIONER
WAIVING HIS CONSTITUTIONAL RIGH TO AJURY TRIAL. (SEE: VOL. 1,
N.T. TRIAL, 5/4/00, AT 5-23)

ON **MAY 5, 2000**, THE COMMONWEALTH INTRODUCED SEVERAL WITNESS',
AN EYEWITNESS DOMONIQUE MAXWELL (id., VOL. 2, TRIAL, 5/5/00, AT
5-58): ASSAULT VICTIMS DANIEL DIAZ (id., VOL. 2, TRIAL, 5/5/00,
AT 59-111), THE ALLEGED CO-DEFENDANT JAMES LAMB (id., VOL. 3,
TRIAL, 5/8/00 AT 4-105) AND THE ASSAULT VICTIM WILLIAM CINTRON
(id., VOL. 4, TRIAL 5/9/00, AT 4-74)

THE COMMONWEALTH AND TRIAL COUNSEL MR. TINARI INFORMED THE
COURT THAT "...THERE HAS BEEN A **STIPULATION WITH RESPECT TO THE
MEDICAL EXAMINER REPORT**. I'LL MARK THAT C-7 ... THAT **STIPULATION**

i

**WOULD BE THAT THE DECEASED IN THIS CASE WAS A YOUNG MAN BY THE
NAME SAMMY CEDANO."** (Id., VOL. 4 TRIAL 5/9/00 AT 79-84)

A COLLOQUY FOLLOWED REGARDING PETITIONER'S WAIVER OF HIS
CONSTITUTIONAL RIGHT TO TESTIFY. (id., VOL. 4 TRIAL, 5/9/00 AT
91-93).

THE COURT INSTRUCTED ITSELF (id., VOL 4 TRIAL, 5/9/00, AT
127-128) FOUND PETITIONER GUILTY OF POSSESSING OF AN INSTRUMENT
OF CRIME, SECOND-DEGREE FELONY-MURDER OF SAMMY CEDANO, FIRST-
DEGREE ROBBERIES, AND AGGRAVATED ASSAULTS UPON THE VICTIMS OF
WILLIAM CINTRON AND DANIEL DIAZ. (id., VOL. 4, TRIAL 5/9/00, AT
128) THE COURT IMPOSED A SENTENCE OF LIFE IMPRISONMENT WITH
CONCURRENT SENTENCES OF 10 TO 20 YEARS ON THE ROBBERY BILL; 5 TO
10 YEARS FOR CONSPIRACY; PIC $2\frac{1}{2}$ TO 5 YEARS AND 10 TO 20 YEARS ON
AGGRAVATED ASSAULT. (Id., VOL. 4 TRIAL 5/9/00, AT 129-132)

TRIAL COUNSEL MR. TINARI FILED A DIRECT APPEAL WITH THE
SUPERIOR COURT AT COMMONWEALTH V. JOHN MOORE, NO. 1601 EDA 2000,
JUDGEMENT OF SENTENCE WAS AFFIRMED ON JULY 17, 2001. THE SUPREME
COURT OF PENNSYLVANIA REFUSED ALLOCATUR REVIEW ON NOVEMBER 21,
2001. AT NO. 406 EAL 2001.

ON JUNE 10, 2002, PETITIONER FILED A PRO SE PETITION UNDER
THE POST CONVICTION RELIEF ACT ("PCRA"), 42 Pa. C.S.A. § 9542 ET
SEQ. (SUPP. 2002). WHEREIN, CLAIMS UNDER § 9543 (a)(2)(i)(ii)
WERE RAISED ON HIS PCRA PETITION.

THEREAFTER, THE COURT APPOINTED BARBARA A. McDERMOTT, ESQUIRE
TO REPRESENT PETITIONER.

ON NOVEMBER 15, 2002, PCRA COUNSEL MS. McDERMOTT FILED IN THE
PCRA UNIT, A "NO MERIT" [FINLEY LETTER]

ii

PETITIONER FILED HIS RESPONSE TO COUNSEL'S "NO MERIT" LETTER
WITH THE COURT, PUSUANT TO **COMMONWEALTH V GLOVER**, 738 A.2d 460
(Pa. SUPERIOR CT. 1999).

ON NOVEMBER 18, 2002, THE PCRA JURIST, JUDGE GEROFF GAVE
NOTICE OF INTENTION TO DISMISS THE INSTANT PCRA PETITION PURSUANT
TO Pa. R. CRIM.P. 907, WITHIN 20 DAYS OF SAID NOTICE.

ON NOVEMBER 28, 2002 PETITIONER FILED "PETITIONER's ANSWER TO
NOTICE OF INTENTION PCRA PETITION PURSUANT TO RULE 907(1).

ON DECEMBER 2, 2002, PCRA COUNSEL MS. McDERMOTT WROTE
PETITIONER ENCLOSING THEREWITH, COPIES OF THE NOTES OF TESTIMONY
FROM HIS TRIAL.

ON DECEMBER 12, 2002, PETITIONER RECEIVED THE ORDER OF
DISMISSAL TO PCRA PETITION.

ON DECEMBER 26, 2002, APPELLANT MAILED HIS PRO SE NOTICE OF
APPEAL, THERFORE, PETITIONER FILED WITH THE PCRA COURT A
"STATEMENT OF MATTERS COMPLAINED OF PURSUANT TO 1925(b) OF
PENNSYLVANIA RULES OF APPELLATE PROCEDURE" SETTING FORTH 15
ISSUES.

ON MAY 12, 2003, THE PCRA JURIST, FILED IT'S OPINION.

ON MAY 27, 2003, THE COURT GRANTED APPLICATION FOR EXTENSION
UNTIL SEPTEMBER 22, 2003.

ON SEPTEMBER 10, 2003, PETITIONER FILED HIS BRIEF.

ON JANUARY 20, 2004, COMMONWEALTH BRIEF WAS FILED.

ON JANUARY 29, 2004, PETITIONER FILED A REPLY BRIEF.

ON APRIL 16, 2004, PETITIONER SUBMITTED TO THE PCRA UNIT A
MOTION FOR A NEW TRIAL BASED ON AFTER/NEWLY DISCOVERED EVIDENCE.
AN AFFIDAVIT OF JAMES LAMB WAS ATTACHED THERETO. (SEE EXHIBIT

iii

"E").

ON AUGUST 2, 2004, PETITIONER SUBMITTED TO THE SUPERIOR COURT A POST SUBMISSION MOTION/APPLICATION FOR RELIEF PURSUANT TO RULE 123 AND 2501(b) OF PA.R.APP.P. CONCERNING HIS STIPULATION ISSUE. ATTACHED THERETO WAS A COPY OF THE HONORABLE JUDGE J. YOUNG PRESIDING OVER COMMONWEALTH V. ANTHONY G. FLETCHER. (SEE EXHIBIT "F").

ON AUGUST 27, 2004, SUPERIOR COURT AFFIRMED AND DENIED RELIEF.

IN SEPTEMBER OF 2004, PETITIONER SUBMITTED ALLOCATUR TO PENNSYLVANIA SUPREME COURT.

ON FEBUARY 15, 2005 PETITIONER'S MOTION BASED ON NEWLY DISCOVERED EVIDENCE WAS DISMISSED DUE TO AN APPEAL PENDING WITH THE LOWER COURTS. PETITIONER WAS TOLD TO RESUBMITT IF THE APPEAL WAS DECIDED ADVERSELY ON HIS BEHALF. (SEE EXHIBIT "G")

ON APRIL 12, 2005, PETITIONER'S ALLOCATUR WAS DENIED.

ON MAY 9, 2005, PETITIONER FILED A PCRA PETITION/MOTION FOR NEW TRIAL BASED ON AFTER/NEWLY DISCOVERED EVIDENCE.

## B. **FACTUAL HISTORY:**

ON JULY 7, 1996, SHORTLY AFTER MIDNIGHT, THE POLICE RECEIVED A DISPATCH CALL TO INVESTIGATE GUN SHOTS IN THE 2700 BLOCK OF NORTH 9th STREET. UPON THE POLICE ARRIVAL, THE OFFICER OBSERVED " AN HISPANIC MALE LYING ON THE EAST SIDEWALK FACE DOWN WITH A BULLET WOUND TO HIS UPPER LEFT BACK. (SEE VOL. 1, N.T. TRIAL, 5/4/00 AT 59, 65, 75, 76)

THE RSCUE, MEDIC - AID ARRIVED ON THE SCENE, THE WOUNDED MALE

iv

Case: 22-1763 cv-02900 Document: 150 Page: 547 Filed Date Filed: 04/26/2022

WAS TRANSPORTED TO M.C.P HOSPITAL WHERE SAMMY CEDANO WAS
PRONOUNCED DEAD FROM A .380 AUTOMATIC WEAPON (id. VOL. 1, N.T.
TRIAL 5/4/00 AT 66), THE POLICE "IDENTIFIED AS WILLIAM CINTRON.
HE STATED THAT HE WAS SHOT." (id. VOL. 1, TRIAL 5/4/00, AT 71)
AND A SECOND HISPANIC MALE "HE IDENTIFIED HIMSELF AS DAIEL DIAZ."
(id. VOL. 1 TRIAL 5/4/00, AT 72).

IN THE EARLY MORNING OF JULY 22, 1996, PETITIONER WAS IN CAR
WITH A JAMES LAMB. WHILE LAMB, THE PASSENGER, WAS ASLEEP;
PETITIONER COMMITTED A ROBBERY RESULTING IN A CAR CHASE BY
POLICE. PETITIONER JUMPED OUT OF THE CAR AND MANAGED TO GET AWAY.
JAMES LAMB WAS AWAKEN BY AUTHORITIES AND A .380 AUTOMATIC WAS
TAKEN FROM HIS POSSESSION. MINUTES LATER, LAMB SHOWED OFFICERS
WHERE PETITIONER LIVED AND PETITIONER WAS ARRESTED FOR AN ARMED
ROBBERY.[1] PETITIONER AND JAMES LAMB WERE TAKEN TO THE POLICE
STATION WHERE LAMB WAS RELEASED INTO THE CUSTODY OF HIS MOTHER
SHORTLY THEREAFTER.

ON JULY 22, 1996, AT 9:40 A.M. AFTER JAMES LAMB WAS RELEASED,
DETECTIVES INTERVIEWED WILLIAM CINTRON ABOUT THE INCIDENT THAT
OCCURED ON JULY 7, 1996 IN WHICH HIS FRIEND WAS KILLED AND HE
RECEIVED A GUN SHOT WOUND. IN HIS INTERVIEW HE WAS SHOWN A PHOTO
ARRAY WHERE HE POSITIVELY IDENTIFIED JAMES LAMB AS ONE OF THE

---

[1]
Petitioner's initial arrest was for the armed robbery. The words
in petitioner's warrant for probable cause is structured to paint
a false picture to the courts having them believe that
petitioner's arrest on July 22, 1996 was for the homicide
committed on July 7, 1996. Petitioner was arrested for the
homicide on December 17, 1997 one year after the fact.
Petitioner's July 22, 1996 arrest has no relevance to the
homicide.

ASSAILANTS WHO WAS INVOLVED IN THE INCIDENT. MR. CINTRON WAS ALSO
SHOWN ANOTHER ARRAY OF PHOTOS IN WHICH A PICTURE OF PETITIONER'S
WAS INCLUDED, HE DID NOT IDENTIFY THE PETITIONER.

ON JULY 24, 1996, DOMONIQUE MAXWELL WAS INTERVIEWED BY
       2
DETECTIVES AS TO HER WITNESSES THE INCIDENT THAT OCCURED ON JULY
7, 1996. SHE WAS SHOWN AN ARRAY OF PHOTOS WHERE SHE POSITIVELY
IDENTIFIED JAMES LAMB AS ONE OF THE ASSAILANT'S. SHE EXPLAINED
THAT SHE KNOWS HIM FORM THE NEIGHBORHOOD AND CALLS HIM SHORTY
(N.T. VOL. 2, TRIAL 5/5/00 AT 45-46) JULY 30, 1996 SHE WAS SHOWN
ANOTHER SET OF PHOTOS WHERE SHE FAILED TO IDENTIFY APPELLANT. ON
JULY 29, 1996 DANIEL DIAZ WAS INTERVIEWED BY DETECTIVES ABOUT THE
INCIDENT THAT OCCURED ON JULY 7, 1996. HE WAS SHOWN AN ARRAY OF
PHOTOS IN WHICH HE POSITIVLEY PICKED JAMES LAMB AS ON OF THE
ASSAILANTS. HE WAS SHOWN ANOTHER ARRAY OF PHOTOS THAT INCLUDED
PETITIONER'S PICTURE, WHERE HE DID NOT IDENTIFY PETITIONER AS A
PARTICIPATER.

IN AUGUST OF 1996, THE HOMICIDE DIVIDION, DETECTIVES ARRESTED
AND CHARGED JAMES LAMB OF THE FELONY HOMICIDE BY SHOOTING OF
SAMMYCEDANO AND RELATED FELONIES COMMITTED UPON THE PERSONS OF
WILLIAM CINTRON AND DANIEL DIAZ, WHICH OCCURED ON JULY 7, 1996.

ON JUNE 9, 1997, JAMES LAMB, ON THE ADVICE OF COUNSEL GAVE
THE HOMICIDE DETECTIVES A STATEMENT OF HIS AND PETITIONER'S
ALLEGED INVOLVEMENT IN THE JULY 7, 1996 INCIDENT. BASED ON THIS

---
2

In her interview, Domonique Maxwell stated that prior to the
incident, she seen the perpetrator who accompanied James Lamb
several times on the corners in her neighborhood (N.T. vol 2, at
50). However, note she never stated that, that individual was the
petitioner.

STATEMENT AND TESTIMONY AGAINST PETITIONER, LAMB ON PLEA
AGREEMENT PLED TO THIRD DEᶦlREE MURDER WOULD TESTIFY FOR THE
COMMONWEALTH.

    ON DECEMBER 17, 1997, THE HOMICIDE DETECTIVE WILLIAM T.
GROSS, BADGE NO. 917, OBTAINED AN ARREST WARRANT NO. 229464,
CHARGING PETITIONER (JOHN MOORE) WITH FELONY MURDER AND RELATED
OFFENSES.

    ON DECEMBER 19, 1997, THE PETITIONER MOORE WAS ARRESTED.AND
WAS TAKEN IN CUSTOD AT GRATERFORD STATE CORRECTIONAL
INSTITUTION WHERE HE WAS UNDERGOING A SENTENCE ON UNRELATED
CONVICTION, AND CHARGED WITH THE INSTANT MURDER, ETC.

**PETITIONER WAS DENIED HIS SIXTH AMENDMENT
RIGHT WHEN COUNSEL FAILED TO INTERVIEW,
INVESTIGATE, AND CALL WITNESS (LAPRICIA
JESSUP)**

IN THE INSTANT CASE PRIOR TO TRIAL PETITIONER RELATED TO TRIAL COUNSEL BY WAY OF LETTERS OF LAPRICIA'S EXISTENCE WITH SPECIFITY EXPLAINING THE RELEVANCE OF HER TESTIMONY.[1] RATHER THAN INVESTIGATING, INTERVIEWING, AND CALLING WITNESS LAPRICIA JESSUP, COUNSEL IGNORED PETITIONER'S LETTERS AND MOUNTED NO DEFENSE.[2]

MS. JESSUP'S TESTIMONY WAS ESSENTIAL IN THAT IT GOES TO THE HEART OF THE ELEMENT OF THE OFFENSE AND TO A CONVERSATION SHE HAD WITH HER BROTHER, THE COMMONWEALTH'S CHIEF AND ONLY WITNESS JAMES LAMB, WHO TOLD MS. JESSUP APPROXIMATELY A WEEK AFTER HIS ARREST THAT HE DID NOT KNOW WHO WAS WITH HIM ON JULY 7th, 1996 DUE TO HIS INEBRIATION FROM DRUGS. THIS STATEMENT GOES DIRECTLY TO THE HEART OF PETITIONER'S INNOCENSE, AS WELL AS TO THE HEART OF MR. LAMB'S CREDIBILITY AS THE ONLY WITNESS.

THE COMMONWEALTH INTRODUCED JAMES LAMB, THE ALLEGED CO-CONSPIRATOR WHO TESTIFIED THAT FROM EARLY IN THE DAY OF THE INCIDENT, UP UNTIL MINUTES BEFORE THE INCIDENT, HE USED (PHENYCYCLIDINE, CALLED PCP) A HALLUCINOGEN DRUG COMMONLY KNOWN AS "ANGLE DUST" IN COMBINATION WITH "MARIJUANA", "ALCOHOL",

---

[1]
After receiving no response from counsel, petitioner filed a number of complaints with The **Supreme Court of Pennsylvania "The Disciplinary Board"** at no. C1-99-539, in which copies of the letters were filed. (see exhibit "C"). Despite of having proof of the letter to counsel about Ms. Jessup's existenc on file at No. C1-99-539, The Supreme Court Denied allocatur.

1

"CODINE", AND "XANAX". (SEE VOL. 3, N.T. TRIAL, 5/8/00, AT 11-12, 28-33).

JAMES LAMB ON A NEGOTIATED PLEA FOR THIRD DEGREE MURDER, TESTIFIED THAT HE SHOT WILLIAM CINTRON IN THE BACK WITH HIS .380 AUTOMATIC WEAPON, AND PETITIONER ARMED WITH A REVOLVER SHOT THE DECEASED SAMMY CEDANO IN THE HEAD.[3] (VOL 3, N.T. 5/8/00, AT 11-19, 60, 63, 65).

THE DECEASED WAS **NOT SHOT** IN THE **"HEAD"** AS JAMES LAMB SAYS, RATHER THE DECEASED DIED FROM A SHOT TO HIS **"BACK"** WHERE THE PROJECTILE, A .380, ENTERED LEFT UPPER BACK, WHERE IT WAS RECOVERED FROM THE ABDOMINAL WALL (VOL. 4, N.T. 5/9/00, AT 80-81)

IT IS PETITIONER'S CONTENTION THAT HE WAS DENIED HIS SIXTH AMENDMENT RIGHT WHEN COUNSEL OPT NOT TO MOUNT A DEFENSE AND FAILED TO INVESTIGATE, INTERVIEW, AND CALL MS. JESSUP TO TESTIFY AND DISCREDIT THE TESTIMONY OF THE COMMONWEALTH'S CHIEF AND ONLY WITNESS, WHICH WOULD HAVE PUT THE COMMONWEALTH'S EVIDENCE THROUGH AN ADVERSARIAL TESTING AS THE UNITED STATES SUPREME COURT HELD IN **CRONIC,** 466 U.S. 648, 104 S.CT. 2039 (1984).

IN A RECENT 2004 CASE, THE DISTRICT COURT OF PENNSYLVANIA HELD THAT:

> "PERFUNCTORY ATTEMPTS BY COUNSEL TO
> INVESTIGATE, LOCATE, AND INTERVIEW
> DISINTERESTED EXCULPATORY WITNESS
> WHOSE TESTIMONY WOULD HAVE BEEN

---
2
Despite of counsel's decision not to pursue Ms. Jessup as a witness she was at petitioner's trial.
3
As of to date Mr. Lamb has signed a sworn affidavit recanting his testimony. The affidavit states that police officers coerced

2

MATERIAL IN A MURDER CASE
CONSTITUTES INEFFECTIVE ASSISTANCE
OF COUNSEL"

**SATTERFIELD V. JOHNSON,** 322 F.Supp.2d 216 (E.D. PA. 2004),QUOTING **SULLIVAN V. FAIRMAN,** 819 F.2d 1382 (7th CIR 1987), AND A NON BONDING **COMMONWEALTH V. TWIGGS,** 460 PA. 105, 331 A.2d 440 (1975), FOR IN TWIGGS, EVEN THE PENNSYLVANIA STATE SUPREME COURT HAS RECOGNIZES SPECIFIC DUTIES UPON COUNSEL. IT RULED:

> "[I]F COUNSEL'S FAILURE TO SEEK COMPULSORY PROCESS WAS THE RESULT OF SLOTH OR LACK OF AWARENESS OF AVAILABLE ALTERNATIVES THEN HIS ASSISTANCE WAS INEFFECTIVE. IN A CASE WHERE VIRTUALLY THE ONLY ISSUE IS CREDIBILITY OF THE COMMONWEALTH WITNESS VERSUS THAT OF THE DEFENDANT, FAILURE TO EXPLORE ALL ALTERNATIVES TO ASSURE THAT JURY HEARD TESTIMONY OF A KNOWN WITNESS MIGHT BE CAPAPBLE OF CASTING A SHADOW OF DOUBT UPON THE COMMONWEALTH WITNESS' TRUTHFULNESS IS INEFFECTIVE ASSISTANCE OF COUNSEL"

[EMPHASIS ADDED].

A FUNDAMENTAL PRINCIPLE OF THE SYSTEM OF CRIMINAL JUSTICE IS THAT THE PETITIONER IS PRESUMED INNOCENT, THAT THE COMMONWEALTH HAS THE BURDEN OF PROVING EACH ELEMENT OF THE CRIME BEYOND A REASONABLE DOUBT WHICH WAS ABSENT FROM PETITIONER'S TRIAL.

IF LAMB'S TESTIMONY WAS THAT PETITIONER SHOT THE DECEASED, SAMMY CEDANO IN THE HEAD (VOL. 3, N.T. 5/8/00, AT 11-19, 60, 63, 65), AND THE DECEASED **WAS NOT** SHOT IN THE **"HEAD"**, THAT IN FACT THE CAUSE OF DEATH WAS FROM A GUN SHOT WOUND IN THE **"BACK"** (VOL.

him by threats into involving petitioner as an alleged co-conspirator and gives the name of his actual accoplice (see exhibit C attached) note: at the time this occured Lamb was a juvenile who couldn't read and bearly write. e.g. **Roper v. simmons**, 125 S.CT. 1183 (2005), as justice Kennedy mentions: "A

4, N.T. 5/9/00, AT 80-81), THAN LAMB'S USE OF DRUGS FROM EARLY IN THE DAY OF THE INCIDENT, UP UNTIL MINUTES BEFORE THE INCIDENT IS CLEARLY RELEVANT IN THE SCHEME OF THE TRUTH DETERMINING PROCESS.

MS. JESSUP'S TESTIMONY ALONG WITH THE FACTUAL EVIDENCE, SHOW THAT NOT ONLY THE DECEASED WAS NOT SHOT IN THE HEAD, BUT NO ONE FROM THE ALLEGED INCIDENT POINTS TO PETITIONER'S GUILT, BUT TOWARDS HIS INNOCENSE, AS HE MAINTAINED FROM THE TIME OF ARREST UNTIL NOW.

THE FEDERAL COURT HELD THAT EVIDENCE OF INTOXICATION USED TO DISCREDIT A WITNESS TESTIMONY IS A PROPER MATTER FOR CONSIDERATION OF A JURY. **MILES V. RYAN,** 484 F.2d 1255 (1973)(3rd CIR.). (RELIEF DENIED FOR OTHER REASONS) HERE, MS. JESSUP'S TESTIMONY GOES DIRECTLY TO THE COMMONWEALTH'S ONLY WITNESS' ABILITY TO PERCEIVE OR REMEMBER AFTER THE EXTREME VOLUNTARY CONSUPTION OF INEBRIATING AND HALLUCINATING INTOXICANTS.

AS STATED IN FOOT NOTE #2, DESPITE OF COUNSEL'S LACK OF INTEREST IN MS JESSUP AS A WITNESS, SHE WAS PRESENT AT PETITIONER'S TRIAL READY AND WILLING TO TESTIFY (SEE ATTACHED EXHIBIT D, PAGE 6 PARAGRAPH 5 OF PCRA COUNSEL FINLEY LETTER), HOWEVER SHE HAD TO WAIT OUTSIDE OF THE COURTROOM BECAUSE SHE HAD HER INFANT CHILD WITH HER.

IN REVIEW OF THIS ISSUE THE PCRA COURT ADOPTED THE REASONING OF THE FINLEY LETTER FILED BY PETITIONER'S PCRA COUNSEL, MS. BARBARA MCDERMOTT. CITING **COMMONWEALTH V. FULTON**, 574 Pa. 282,

juvenile is vulnerable or susceptible to negative influence and outside pressures, which is what happened in the instant case.
4
Ms Jessup explained in a phone conversation to PCRA counsel that she did not remember ever talking to trial/appellant counsel.

4

830 A.2d 567, 572 (2003) QUOTING **COMMONWEALTH V. FLETCHER**, 561 Pa. 266, 292, 750 A.2d 292 (2000), IN ACCORD, THE SUPERIOR COURT DENIES RELIEF PURSUANT TO **COMMONWEALTH V. HARRIS**, 852 A.2d 1168 Pa. (2004)[5], IN THAT PETITIONER FAILED TO ASSERT THAT TRIAL COUNSEL KNEW OF MS. JESSUP'S EXISTANCE OR SHOULD HAVE KNOWN.

PETITIONER ASSERTS THAT PRIOR TO TRIAL HE HAD WRITTEN TRIAL COUNSEL NUMEROUS TIMES ABOUT SAID WITNESS LAPRICIA JESSUP, AS STATED IN FOOTNOTE #1, THE LETTERS MENTIONED THAT HER TESTIMONY IS MATERIAL IN PROVING HIS INNOCENSE. (SEE EXHIBIT "A")

IN **HARRIS** SUPRA, THE COURT HELD THAT EVIDENCE OF THE DEFENDANT'S PRIOR HISTORY OF DRUGS USE WAS INADMISSABLE, IN THAT IT HAD NO RELEVANCE TO THE DEFENDANT'S MENTAL STATE OF MIND AT THE TIME THAT THE CRIME OCCURED.

IN THE INSTANT CASE THE RELEVANCE IS CLEAR, THE COMMONWEALTH PRESENTED IT'S CHIEF AND ONLY WITNESS, JAMES LAMB, WHO TESTIFIED THAT FROM EARLY IN THE DAY OF THE INCIDENT, UP UNTIL MINUTES BEFORE THE INCIDENT HE USED INTOXICANTS. **HARRIS** SUPRA, AS THE SUPERIOR COURT RELIES UPON IT, IS CLEARLY MISPLACED, AS **HARRIS** SUPPORTS THE PETITIONER'S CLAIM HEREIN, VIA WITNESS IMPSE DIXIT.

IN **COMMONWEALTH V. DREW**, THE SUPREME COURT HAS ADRESSED THE QUESTION OF ADMISSIBILITY OF EVIDENCE PERTAINING TO DEFECTS OF IN PERCEPTION OR MEMORY OFFERED TO IMPEACH. IT HELD THAT:

> [A]NY DEFICIENCY OF THE SENSES, SUCH AS
> DEAFNESS, OR COLOR BLINDNESS OR DEFECT
> OF OTHER SENSES WHICH WOULD SUBSTANTIALLY
> LESSON THE ABILITY TO PERCEIVE THE FACTS
> WHICH THE WITNESS PURPORTS TO HAVE
> OBSERVED, SHOULD OF COURSE BE PROVABLE

---

[5] concerning this ISSUE P.J.E. McEWEN dissented (see exhibit "E")

TO ATTACK THE CREDIBILITY OF THE WITNESS
EITHER UPON CROSS EXAMINATION OR BY
PRODUCING OTHER WITNESSES TO PROVE THE
DEFECT.. **DREW** SUPRA, 500 Pa. 590, 549 A.2d 321

THE MERE FACT THAT MS. JESSUP WAS PRESENT AT PETITIONER'S
TRIAL AS PCRA COUNSEL STATED IN EXHIBIT "D", SURELY CONSTITUTES
TRIAL COUNSEL'S INEFFECTIVENES ALONE, BY PASSING UP THE
OPPORTUNITY TO INVESTIGATED, INTERVIEW, AND CALL AN AVAILABLE
WITNESS. **SATTERFIELD V. JOHNSON** SUPRA.

NOTWITHSTANDING, THIS POTENTIAL WITNESS TOLD THE PCRA COUNSEL
HER BROTHER, JAMES LAMB STATE OF MIND WAS SUCH WITHIN THE
MEANING OF **COMMONWEALTH V. DREW** SUPRA, (i.e. AN ATTACK ON THE
CREDIBILITY OF THE WITNESS SHOWING AT THE TIME OF THE EVENT OF
HIS POWERS OF PERCIPTION AND MEMORY WERE IMPAIRED). THIS STATE OF
MIND WAS REINFORCED BY THE STATES OWN EVIDENCE THAT JAMES LAMB
WAS UNDER THE INFLUENCE OF PHENCYCLIDINE, A HALLUCINGEN DRUG
"ANGEL DUST" WITH CANNABIS "MARIJUANA" AND THE INTOXICATING
CONSUMPTION OF ALCOHOL "BEER" (see VOL. 3, N.T. 5/8/00, at 10-11)

DUE TO CONSEL'S ACTIONS PETITIONER WAS DENIED THE OPPORTUNITY
TO HAVE THE COURT CONSIDER MS. JESSUP'S TESTIMONY AS EVIDENCE IN
THE TRUTH DETERMINING PROCESS. THIS IN FACT RELIEVED THE
COMMONWEALTH OF IT'S BURDEN OF PROOF.

"[T]HE DECISION TO FOREGO WHAT MAY BE THE
ONLY AVAILABLE DEFENSE CAN FALL BELOW
SIXTH AMENDMENT STANDARDS"

**SULLIVAN V. FAIRMAN**, SUPRA, QUOTING **KEYS V. DUCKWORTH**, 761 F.2d
390, AT 392 (7th CIR)(1985). IN ACCORD, **UNITED STATES V. CRONIC**,
104 S.CT. 2045 HELD THAT:

6

"THUS, THE ADVERSARIAL PROCESS PROTECTED BY
THE SIXTH AMENDMENT REQUIRES THAT THE
ACCUSED HAVE "COUNSEL ACTING IN THE ROLE OF
AN ADVOCATE" (CITATION OMITTED) "THE RIGHT
TO EFFECTIVE ASSISTANCE OF COUNSEL IS THUS
THE RIGHT OF THE ACCUSED TO REQUIRE THE
PROSECUTION'S CASE TO SURVIVE THE CRUCIBLE
OF MEANINGFUL ADVERSARIAL TESTING. WHEN A
TRUE ADVERSARIAL CRIMINAL TRIAL HAS BEEN
CONDUCTED - EVEN IF DEFENSE COUNSEL MAY
HAVE MADE DEMONSTRATABLE ERRORS THE KIND OF
TESTING ENVISIONED BY THE SIXTH AMENDMENT
HAS OCCURED. BUT IF THE PROCESS LOSES IT'S
CHARACTER AS A CONFRONTATION BETWEEN
ADVERSARIES THE CONSTITUTIONAL GURANTEE IS
VIOLATED"

WHEREFORE, GIVEN THE FACTS STATED ABOVE, IT IS WITH CERTANTY
THAT COUNSEL'S PERFORMANCE FELL BELOW THE REASONABLE STANDARDS
REQUIRED IN **STRICKLAND V. WASHINGTON**, 466 U.S. 668, 104 S.CT.
2052 (1984). APPELLANT WAS PREJUDICED IN THAT HAD IT NOT BEEN FOR
COUNSEL'S INEFFECTIVENESS, THE COURT WOULD HAVE BEEN AFFORDED THE
OPPORTUNITY TO HEAR MATERIAL AND RELEVANT EVIDENCE THAT WOULD
HAVE PROVEN PETITIONER'S INNOCENSE AND RENDERED THE OUTCOME OF
THE TRIAL DIFFERENT. THERFORE, THE STATE COURTS AFFIRMATION
REGARDING PETITIONER'S CONVICTION CONSTITUTE "AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW". THUS, DENIED
PETITIONER DUE PROCESS IN ACCORD WITH THE FOURTEENTH AMENDMENT.

THEREFORE, PETITIONER REQUEST RELIEF BY WAY OF A HEARING AND
THEREAFTER, THE GRANTING OF HIS PETITION OF HABEAS CORPUS AND
ORDERING HIM DICHARGED FROM CUSTODY.

7

**TRIAL COUNSEL WAS CONSTITUTIONAL
INEFFECTIVE WHEN ACTIONS DENIED
PETITIONER THE RIGHT TO CONFRONT
AND CROSS EXAMIN THE WITNESS
AGAINST HIM, AND ALLEVIATED THE
PROSECUTION OF IT'S DUTY TO PROVE
EVERY ELEMENT OF THE OFFENSE**

HERE, COUNSEL FAILED TO PROTECT PETITIONER'S SIXTH AMENDMENT
CONSTITUTIONAL RIGHT AND HAVE THE "MEDICAL EXAMINER" TESTIFY
CONCERNING CAUSATION, WHICH IS AN ESSENTIAL ELEMENT OF THE CRIME.
INSTEAD, WITHOUT CONSULTING WITH PETITIONER OR HAVING HIS CONSENT
COUNSEL STIPULATED TO THE "MEDICAL EXAMINER" REPORT WITHOUT THE
NECESSITY FOR THE "MEDICAL EXAMINER" TO TESTIFY.

THE PETITIONER'S RIGHT TO CONFRONT AND CROSS EXAMIN WITNESSES
AGAINST HIM, UNDER THE CONFRONTATION CLAUSE, APPLIES TO THOSE WHO
BEAR TESTIMONY AGAINST HIM, WHICH IS TYPICALLY A SOLEMN
**DECLARATION** OR **AFFIRMATION** MADE FOR PURPOSE OF **ESTABLISHING** OR
**PROVING** SOME FACT. U.S.C.A. CONST. AMEND. 6 **CRAWFORD V.
WASHINGTON**, 124 S.CT. 1354, 541 U.S. 36 (U.S. WASH. 2004)

IN THE INSTANT CASE, ON FEBUARY 19, 1997, PETITIONER'S
COUNSEL STIPULATED UPON ENTERING INTO EVIDENCE THE MEDICAL
EXAMINER REPORT "FOR PURPOSES OF THE PRELIMINARY HEARING ONLY",
WITHOUT THE NECCESSITY OF CALLING THE MEDICAL EXAMINER TO
TESTIFY. THE REPORT INDICATED THAT THE CAUSE OF DEATH WAS FROM A
GUNSHOT WOUND IN THE BACK. (N.T. PREL. HRG. 2/19/97, at 4-5).

ON MAY 8th, 2000, UPON A NEGOTIATED PLEA FOR THIRD DEGREE
MURDER, THE COMMONWEALTH INTRODUCED THE TESTIMONY OF JAMES LAMB
FOR PURPOSES OF **ESTABLISHING** OR **PROVING** THAT PETITIONER WAS THE
ALLEGED CO-CONSPIRATOR OF THE INCIDENT THAT OCCURED ON JULY 7TH,

8

1996.

LAMB, THE CHIEF AND ONLY WITNESS TESTIFIED THAT HE SHOT WILLIAM CINTRON IN THE BACK WITH HIS .380 AUTOMATIC WEAPON, AND PETITONER ARMED WITH A REVOLVER SHOT THE DECEASED SAMMY CEDANO IN THE HEAD.

ON MAY 9TH, 2000, THE FOLLOWING DAY AFTER HAVING PRESENTED THE MAY 8TH, 2000 TESTIMONY OF JAMES LAMB, TRIAL COUNSEL AGREED TO HAVE THE COMMONWEALTH ENTER INTO EVIDENCE THE "MEDICAL EXAMINER'S" REPORT BY WAY OF STIPULATING TO EXCLUDE THE NECESSITY OF HEARING THE MEDICAL EXAMINER TESTIFY THAT THE ACTUAL CAUSATION WAS FROM A GUN SHOT WOUND TO THE "BACK", FROM THE GUN THAT MR. LAMB TESTIFIED TO HAVING, A .380 AUTOMATIC. THE PROSECUTOR, MR. VEGA, READING INTO EVIDENCE THE MEDICAL EXAMINER'S REPORT AS FOLLOWS:

> MR. VEGA: YOUR HONOR, ADITIONALLY THERE HAS BEEN A STIPULATION WITH RESPECT TO THE MEDICAL EXAMINER'S REPORT I'LL MARK THAT C-37.

> MR. VEGA: YOUR HONOR, THAT STIPULATION WOULD BE THAT THE DECEASED IN THIS CASE WAS A YOUNG MAN BY THE NAME OF SAMMY CEDANO. C-E-D-A-N-O. AT THE TIME OF HIS DEATH HE WAS A THIRTY FOUR YEAR OLD HISPANIC MALE...ON JULY 7th, 1996, AT ABOUT 12:10 A.M. HE RECEIVED A GUNSHOT WOUND AND AT 12:38 ON THAT SAME DATE WAS PRONOUNCE DEAD BY DOCTOR BLUMSTEIN, B-L-U-M-S-T-E-I-N.

(id. vol. 4, AT 79-80)

> HE WOULD TESTIFY THAT HIS REMAINS WERE TAKEN TO THE OFFICE OF MEDICAL EXAMINER WHERE AN AUTOPSY WAS CONDUCTED BY DOCTOR GREGORY McDONALD, M-c-D-O-N-A-L-D.

> IT WAS DETERMINED TO A REASONABLE DEGREE OF MEDIAL CERTAINTY THAT THE CAUSE OF DEATH WAS A GUNSHOT WOUND, MANNER OF DEATHE WOULD BE HOMICIDE MORE SPECIFICALLY IT WAS A CLOSE RANGE GUNSHOT WOUND TO THE LEFT UPPER BACK. THE PATH OF THE PROJECTILE WAS FRONTWARDS, DOWNWARDS AND A COPPER

9

JACKET PROJECTILE WAS RECEIVED FROM THE ABDOMINAL
WALL.

PETITIONER ASSERTS THAT COUNSEL NEVER CONSULTED NOR DID
PETITIONER CONSENT TO SUCH PROCEEDING[6] AND THE STIPULATION
VIOLATED HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION, THUS
RELIEVED THE COMMONWEALTH OF IT'S DUTY TO PROVE EVERY ELEMENT OF
THE CRIME BEYOND A REASONABLE DOUBT. SANDSTROM V. MONTANA, 422
U.S. 509, 523, 99 S.CT. 2450, 2458 (1979) FRANCIS V. FRANKLIN,
471 U.S. 301, 313, 105 S.CT. 1965, 1970, (1985).

CAUSATION IS THE MOST IMPORTANT ELEMENT OF THE CRIME IN A
CRIMINAL HOMICIDE. HERE, GIVEN THE TESTIMONY OF JAMES LAMB, THAT
THE PETITIONER SHOT THE DECEASED IN THE HEAD (VOL. 3, N.T.
5/8/00. AT 11-19, 60, 63, 65), AND THE EVIDENCE STIPULATED TO...
THAT THE DECEASED DIED FROM A GUNSHOT WOUND TO THE BACK (id. VOL.
4, AT 79-80), IT IS CLEAR THAT CAUSATION SHOULD HAVE BEEN A
FACTOR OF DEFENSE BY COUNSEL.

COUNSEL'S PERFORMANCE WAS DEFICIENT IN THAT HE NOT ONLY
STIPULATED TO THE CAUSE OF DEATH BEING FROM A GUN SHOT WOUND IN
THE "BACK" AT PETITIONER'S PRELIMINARY HEARING, BUT AFTER
STIPULATING TO THIS CAUSATION, HE STOOD BY AT TRIAL AND ALLOWED
THE DISTRICT ATTORNEY TO SUBORN THE PURJANT TESTIMONY OF JAMES
LAMB, THAT CAUSATION WAS FROM A GUN SHOT WOUND IN THE "HEAD".
THEN AGAIN, STOOD BY AND ALLOWED THE DISTRICT ATTORNEY TO READ
INTO

---

[6] Furthermore, where the question is in concern as to waiving the
sixth amendment right, a right of such magnitude, a colloquy is
appropriate to see if petitioner knowing and intelligently waived
the right, just as it is with any other constitutional right. see
**John v. Zerbst**, 58 S.CT. 1019 (1938).

10

EVIDENCE THAT THE CAUSE OF DEATH WAS FROM A GUN SHOT WOUND IN THE "BACK" (i.d. VOL. 4 N.T. AT 79-80).

GIVEN THIS PERJANT TESTIMONY IT IS CLEAR THAT THE STIPULATION TO THE CAUSE OF DEATH BY COUNSEL EXACERBATED HIS INEFFECTIVENESS AND THE VIOLATION OF PETITIONER'S CONSTITUTIONAL RIGHT TO CONFRONTATION, THUS CONTRIBUTED TO RELIEVE THE PROSECUTION OF IT'S DUTY TO PROVE EVERY ELEMENT OF THE CRIME BEYOND A REASONABLE DOUBT (i.e. fair and impartial trial). THIS FAILED TO SUBJECT THE PROSECUTION'S CASE TO A MEANINGFUL ADVERSARIAL TESTING, CONTRARY TO **CRONIC**, 446 U.S. 648, 649, 104 S.CT. 2039, 2047 (1984).

THE COMMONWEALTH'S OBJECTIVE IN ADMITTING THE MEDICAL EXAMINER'S REPORT WAS TO ESTABLISH AND PROVE THE CAUSE OF DEATH. IT'S OBJECTIVE IN PRESENTING THE TESTIMONY OF THE CHIEF AND ONLY WITNESS, JAMES LAMB, WAS TO ESTABLISH PROOF THAT PETITIONER WAS ALLEGEDLY INVOLVED IN THE INCIDENT. HOWEVER, ONCE LAMB TESTIFIED THAT PETITIONER SHOT THE DECEASED IN THE HEAD WITHOUT THE COMMONWEALTH CORRECTING THE FACTS, THE MEDICAL EXAMINER REPORT, WHICH WAS STIPULATED TO AS TO THE CAUSE OF DEATH AT THE PRELIMINARY HEARING BECAME QUESTIONABLE. IN FACT, ONCE LAMB'S TESTIMONY BECAME CONTRADICTORY TO THE MEDICAL EXAMINER REPORT PETITIONER'S COUNSEL SHOLD NOT HAVE STIPULATED WITHOUT THE NECCESSITY TO CALL THE EXPERT TO TESTIFY AFTERWARDS, AS HE DID AT THE PRELIMINARY, BUT COUNSEL SHOULD HAVE CROSS EXAMINED THE EXPERT TO BRING OUT THE TRUTH.

THE MEDICAL EXAMINER SHOULD HAVE BEEN CALLED TO VERBALLY STATE WITH A DEGREE OF CERTAINTY OR BEYOND A REASONABLE DOUBT AS

11

TO THE CAUSE OF DEATH. PETITIONER CONTENDS THAT COUNSEL'S STIPULATION MOUNTED TO A PRESUPMPTION OF CORRECTNESS WITHOUT EVEN THE THOUGHT OR ATTEMPT TO PUT THE COMMONWEALTH'S EVIDENCE THROUGH AN ADVERSARIAL TESTING **CRONIC** SUPRA. SUCH TRIAL STRATEGY IS CLEARLY UNREASONABLE IN A CRIMINAL HOMICIDE, FOR MR. LAMB'S TESTIMONY CLEARLY PROVES THAT ANY FACTS CAN BE UNEARTHED AT TRIAL PROCEEDINGS.

IN LIGHT OF THE TWO, (i.e. MEDICAL EXAMINER REPORT AND LAMB'S TESTIMONY) IF EITHER ARE TO BE HELD AS THE TRUTH, THAN UNDOUBTEDLY, ONE WOULD DEEM THE OTHER TO BE FALSE AND WOULD BE CONSIDERED AS "INCONTROVERTIBLE PHYSICAL FACTS". THERFORE, ONE OF THE TWO ARE NOT TO BE ACCEPTED. **ERNST V. MOTOR SALES, INC**, 550 F.SUPP 1220, AT 1224-1225 (E.D. PA 1982). IN **ERNST V. MOTOR SALES, INC**, SUPRA, THE COURT HELD THAT:

> "INCONTROVERTIBLE PHYSICAL FACTS" ARE THOSE WHICH WOULD MAKE A DIFFERENT VERSION OF THE ACCIDENT LITERALLY IMPOSSIBLE" .....(CITATION OMITTED)

> "TESTIMONY MUST BE REJECTED IF IT CONFLICTS WITH PHYSICAL FACTS "SO CLEARLY ESTABLISHED THAT THEY CANNOT BE ERRONEOUS" ....(CITATION OMITTED)

> "FOR EXAMPLE, IF A VEHICLE IS DAMAGED ONLY ON THE FRONT RIGHT SIDE, A PARTY CANNOT CONTEND THAT THE CAR WAS HIT ONLY IN THE REAR. THE ACTUAL DAMAGE TO THE VEHICLE WOULD CONSTITUTE AN "INCONTROVERTIBLE PHYSICAL FACT."

THE COMMONWEALTH HAS CLEARLY FAILED TO PROVED EVERY ELEMENT OF THE OFFENSE, NAMELY CAUSATION. AFTER CONSIDERING THE EVIDENCE PRESENTED AGAINST PETITIONER, ANY RESONABLE MIND WOULD STILL HAVE THE QUESTION OF CAUSATION LINGERING.

THE STATE HAS THOROUGHLY ADDRESSED THE QUESTION OF CONSTITUTIONAL VIOLATION OF THE CONFRONTATION CLAUSE AS TO

CAUSATION IN **COMMONWEALTH V. McCLOUD**, 457 PA. 310, 322 A.2d 653

(1974). IT HELD:

> [C]AUSATION IS AN ELEMENT OF THE CRIME OF MURDER AND
> MUST BE PROVED BEYOND A REASONABLE DOUBT BY THE
> COMMONWEALTH IN EVERY HOMICIDE PROSECTION. . .
> THE CAUSE OF DEATH IS SERIOUSLY IN ISSUE AND, ...

(Id., at 312)

> "...THE TESTIMONY OF A DOCTOR AS TO THE EXTENT OF
> INJURIES AND THEIR EFFECTS IS PRIMARILY OPINION
> EVIDENCE AT BEST, AND, WHERE THE PERSON STATING THE
> OPINION IS PRESENT IN COURT, IS SUBJECT TO THE
> SEVEREST OF EXAMINATIONS TO TEST IT'S STRENGTH." IT
> IS PRECISELY BECAUSE MEDICAL EVIDENCE IS OPINION
> EVIDENCE THAT THIS COURT HAS HELD THAT "CAUSATION IS
> AN ISSUE OF FACT FOR THE JURY."
>
> HAD THE MEDICAL EXAMINER BEEN CALLED TO TESTIFY, THE
> OPINIONS, CONCLUSIONS, AND INTERPRETATION CONTAINED
> IN THE AUTOPSY REPORT WOULD HAVE BEEN SUBJECT TO
> CROSS-EXAMINATION. THE DEFENSE WOULD HAVE BEEN ABLE
> TO SUBJECT THE RELIABILITY OF THE EXAMINER'S OPINION
> TO THE JURY'S SCRUTINY. ANY WEAKNESS COULD HAVE BEEN
> UNEARTHED.

(Id.,at 313)

> WE THERFORE HOLD THAT IN HOMICIDE PROSECUTION,
> EVIDENTIARY USE, AS A BUSINESS RECORDS EXCEPTION TO
> THE HEARSAY RULE OF AN AUTOPSY REPORT IN PROVING
> LEGAL CAUSATION IS IMPERMISSIBLE UNLESS THE ACCUSE
> IS AFFORDED THE OPPORTUNITY TO CONFRONT AND CROSS-
> EXAMINE THE MEDICAL EXAMINER WHO PERFORMED THE
> AUTOPSY, ABSENT A COMPELLING NECESSITY.

(Id. McCLOUD SUPRA, 457 Pa. at 313) (EMPHASIS ADDED) (CITATIONS

OMITTED). IN ACCORD, **CRAWFORD V. WASHINGTON**, 124 S.CT. 1354

(2004), HOLDING THAT THE SIXTH AMENDMENT CONFRONTATION CLAUSE IS

"A BEDROCK PROCEDURAL GUARANTEE THAT APPLIES TO BOTH FEDERAL AND

STATE PROCEEDINGS". IT IS PELLUCIDY CLEAR THAT AFTER THE

COMMONWEALTH DISPLAYED MISCONDUCT AND ALLOWED IT'S CHIEF AND ONLY

WITNESS TO GIVE KNOWN PERJURIOUS TESTIMONY, THIS CLEARLY

PREJUDICED PETITIONER. HAD IT NOT BEEN FOR COUNSEL'S PERFORMANCE

13

PETITIONER'S RIGHT TO CONFRONT AND CROSS EXAMIN THE MEDICAL
EXAMINER WOULD HAVE BEEN SECURED TO TEST THE TRUTHFULLNESS OF THE
ACTUAL CAUSE OF DEATH. THE TRIAL JUDGE WOULD NOT HAVE GIVEN THE
PROSECUTION'S CHIEF AND ONLY WITNESS UNDUE WEIGHT TO INFER
PETITIONER WAS THE ALLEGED CO-CONSPIRATOR AND THE OUTCOME SURELY
COULD HAVE BEEN DIFFERENT. **CRAWFORD V. WASHINGTON**, SUPRA.

THERE CAN BE NO REASONABLE BASIS TO EFFECTUATE A CLIENT'S
INTEREST WHEN COUNSEL WAIVES A SUBSTANTIAL RIGHT SUCH AS
CONFRONTATION AND RELIEVE THE COMMONWEALTH FROM IT'S DUTY TO
PROVE EVERY ELEMENT OF THE CRIME BEYOND A REASONABLE DOUBT AS
REQUIRED IN **IN RE WINSHIP**, SUPRA. THIS PARTICULAR ERROR IS
STRUCTURAL AND NOT PROCEDURAL, WHICH CARRIES AND INHERENT
PREJUDICE THEREIN **YOHN V. LOVE**, 76 F.3d 508 (3rd cir. 1996).

WHERFORE, GIVEN THE FACTS STATED ABOVE IT IS WITH CERTIANTY
THAT COUNSEL'S PERFORMANCE FELL WELL BELOW THE REASONABLE
STANDARDS REQUIRED IN **STICKLAND V. WASHINGTON**, 446 U.S. 668, 104
S.CT. 2052 (1982), CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW,
NAMELY, THE SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL. THUS, CONTRIBUTED TO A VIOLATION OF PETITIONER'S
FOURTEENTH AMENDMENT RIGHT UNDER THE DUE PROCESS CLAUSE (i.e.
FAIR AND IMPARTIAL TRIAL) BY RELIEVING THE COMMONWEALTH OF IT'S
DUTY TO PROVE EVERY ELEMENT OF THE CRIME BEYOND A REASONABLE
DOUBT. THEREFORE, PETITIONER REQUEST RELIEF IN FORM OF A NEW
TRIAL, A HEARING, OR RELEASE FROM CUSTODY.

**TRIAL COUNSEL WAS CONSTITUTUIONALLY INEFFECTIVE FOR NOT RAISING PROSECUTORIAL MISCONDUCT WHEN THE PROSECUTOR SUBORNED PERJURED TESTIMONY THAT, JAMES LAMB THE ONLY WITNESS AGAINST PETITIONER TESTIFIED THAT PETITIONER SHOT THE DECEASED IN THE HEAD, WHEN THE DECEASED DIED FROM A .380 AUTOMATIC BULLET IN THE BACK**

IN THE INSTANT CASE, TRIAL COUNSEL AND THE PROSECUTION [MR. VEGA] STIPULATED TO THE MEDICAL EXAMINER REPORT AS TO THE CAUSE OF DEATH AT PETITIONER'S PRELIMINARY HEARING ON **FEBUARY 19, 1997**. THE REPORT BEING THAT THE CAUSE OF DEATH WAS FROM A GUNSHOT WOUND IN THE BACK BY A .380 AUTOMATIC WEAPON, (SEE N.T PREL. HRG. 2/19/97, at 4-5).

ON **MAY 8, 2000**, AT PETITIONER'S TRIAL , THE PROSECUTION PRESENTED THE TESTIMONY OF IT'S CHIEF AND ONLY WITNESS JAMES LAMB. UPON A NEGOTIATED PLEA FOR THIRD DEGREE, LAMB TESTIFIED THAT HE SHOT WILLIAM CONTRON IN THE BACK WITH HIS .380 AUTOMATIC WEAPON AND PETITIONER ARMED WITH A REVOLVER SHOT THE DECEASED IN THE HEAD. (SEE: VOL 3, N.T. TRIAL 5/8/00, AT 11-19, 60, 63, 65).

IT IS PETITIONER'S CONTENTION THAT THE PROSECUTOR UNPROFESSIONALLY PERMITTED FALSE TESTIMONY TO PROCEED BEFORE THE TRIER OF FACTS, (i.e. JUDGE GEROFF) WHO HEARD THE TESTIMONY AS FIRST HAND EVIDENCE.

THE COURT, IN **UNITED STATES V. AUGURS**, 427 U.S. 97 (1976), HELD THAT THE KNOWING USE OF PERJURED TESTIMONY INVOLVES PROSECUTIORIAL MISCONDUCT AND, MORE IMPORTANTLY, INVOLVES "A CORRUPTION OF THE TRUTH SEEKING FUNCTION OF THE TRIAL PROCESS".

SIMILARILY, THE COURT REAFFIRMED THIS PRICIPLE IN **NAPUE V. ILLINOIS**, 360 U.S. 264, 79 S.CT. 1173, (1959). IN **NAPUE**, THE

15

PRINCIPLE WITNESS FOR THE PROSECUTION FALSELY TESTIFIED THAT HE HAD BEEN PROMISED NO CONSIDERATION FOR HIS TESTIMONY. THE COURT HELD THAT THE KNOWING USE OF FALSE TESTIMONY TO OBTAIN A CONVICTION VIOLATES DUE PROCESS REGARDLESS OF WHETHER THE PROSECUTOR SOLICITED THE FALSE TESTIMONY OR MERELY ALLOWED IT TO GO UNCORRECTED WHEN IT APPEARED. THE COURT EXPLAINED THAT THE PRINCIPLE THAT A STATE MAY NOT KNOWINGLY USE FALSE TESTIMONY TO OBTAIN A CONVICTION --- EVEN FALSE TESTIMONY THAT GOES TO THE CREDIBILITY OF WITNESS --- IS "IMPLICIT IN ANY CONCEPT OF ORDERED LIBERTY" Id., AT 269, 79 S.CT. AT 1177.

THERE IS A PRESUMPTION OF INNOCENSE IN FAVOR OF THE ACCUSE THAT IS UNDOUBTED LAW, AXIOMATIC AND ELEMENTRY, AND IT'S ENFORCEMENT LIES AT THE FOUNDATION OF THE ADMINISTRATION OF THE CRIMINAL LAW AND SCHEME OF JUSTICE. WHEN THE PROSECTUION HALES A DEFENDANT INTO COURT AND SEEKS TO OVERCOME THE PRESUMPTION OF INNOCENSE BY PROVING BEYOND A **REASONABLE DOUBT**, THE BURDEN MUST BE SURLEY OVERCOMED BY THAT STANDARD. **IN RE WINSHIP**, 390 U.S. 358, 90 S.CT. 1068 (1970). A "CORRUPTION OF THE TRUTH SEEKING FUNCTION OF THE TRIAL PROCESS" IS FAR FROM BEING WIHTIN THE SCHEME OF JUSTICE. IN FACT, THE PROSECUTOR'S KNOWINGLY USE OF FALSE TESTIMONY WAS A DIRECT VIOLATION OF PETITIONER'S FOURTEENTH AMENDMENT RIGHT UNDER DUE PROCESS CLAUSE (i.e. FAIR AND IMPARTIAL TRIAL).

WHEN THE WORD 'KNOWINGLY' IS USED IN THIS ISSUE, PETITIONER MEANS THAT THE PROSECUTOR REALIZED WHAT HE WAS DOING AND WAS AWARE OF THE NATURE OF HIS CONDUCT, AND DID NOT ACT THROUGH IGNORANCE, MISTAKE, OR ACCIDENT. THE PROSECUTOR'S KNOWLEDGE IS

16

PROVED BY HIS CONDUCT OF NOT CORRECTING THE TESTIMONY OF JAMES
LAMB AND BY ALL THE FACTS AND CIRCUMSTANCES SURROUNDING THE CASE.

THE PROSECUTION, IN AGREEMENT WITH PETITIONER'S COUNSEL,
STIPULATED TO THE MEDICAL EXAMINER REPORT AT PETITIONER'S
PRELIMINARY HEARING. BOTH (THE PROSECUTOR AND COUNSEL FOR
PETITONER) AFFIRMING THAT THE CAUSE OF DEATH WAS FROM A GUNSHOT
WOUND IN THE BACK WITH A .380 AUTOMATIC WEAPON, WHICH MR. LAMB,
THE PROSECUTION'S CHIEF AND ONLY WITNESS POSSESSED DURING THE
INCIDENT. (SEE: N.T. PREL. HRG. 2/19/97, AT 4-5)

THE PROSECUTION'S CONDUCT OF STIPULATING TO THE MEDICAL
EXAMINER REPORT IS CLEAR PROOF THAT THERE WAS KNOWLEDGE OF JAMES
LAMB'S TESTIMOY BEING FALSE. HOWEVER, PETITONER'S COUNSEL FAILED
TO OBJECT AND THE PROSECUTOR DID NOT BOTHER TO CORRECT IT'S
WITNESS PERJURY. THE PROSECUTION PREYED ON PETITIONER'S LIBERTY
AND MALISCIOUSLY SOUGHT A CONVICTION BY ANY MEANS, EVEN AT THE
MEANS OF DENYING PETITONER DUE PROCESS OF A FAIR TRIAL UNDER THE
FOURTEENTH AMENDMENT RIGHT. ONCE THE MEDICAL EXAMINER REPORT WAS
STIPULATED TO, THAT RENDERED IT A "INCONTROVERTIBLE PHYSICAL
FACT" AND ANY TESTIMONY CONTRARY TO IT, WOULD BE IMPOSSIBLE FOR A
REASONABLE MIND TO BELIEVE, AS WAS MR. LAMB'S TESTIMONY (SEE
**ERNST V. ACE MOTORS INC.**, 550 F.SUPP 1220, (E.D. Pa. 1982).

ON THIS INSTANT ISSUE OF PERJURY THE SUPERIOR COURT DID NOT
BOTHER TO ADDRESS THE ISSUE, BUT RATHER ADOPTED THE PCRA COURT'S
TREATMENT THEREOF BY REFERENCE THERETO. THE COURT STATES AS
FOLLOWS:

> "WITH RESPECT TO THE ALLEGATION THAT THE COMMONWEALTH
> PRESENTED KNOWING PERJANT TESTIMONY, THIS WRITER

17

ADDRESSED THE ISSUE OF JAMES LAMB'S CREDIBILITY AND
THE INCONSISTENCY BETWEEN HIS TESTIMONY AND THE
PHYSICAL EVIDENCE DURING TRIAL AT 'N.T. TRIAL 5/9/00
P. 127, AND IN HIS OPINION ON DIRECT APPEAL AT PAGE
8. THE TESTIMONY OF JAMES LAMB WAS OBVIOUSLY
INTENDED TO MINIMIZE HIS PARTICIPATION IN THE CRIME.
AND THE TRIAL JUDGE TREATED IT ACCORDINGLY. THE
RECORD DOES NOT SUPPORT A CONCLUSION THAT THE
COMMONWEALTH KNOWINGLY OFFERED PERJURED TESTIMONY"

THE COURT'S EX POST FACTO TREATMENT OF THE PERJURY ISSUE IS
IRRELEVANT TO WHAT THE JUDGE HEARD AS FIRST HAND EVIDENCE. THE
FACT OF THE MATTER IS THE PROSECUTION INDUCED PETITIONER'S
ATTORNEY TO STIPULATE TO THE MEDICAL EXAMINER REPORT, WHICH IS
THE OFFICIAL CAUSE OF DEATH AS SET FORTH IN PRIOR ISSUES SUPRA,
WHICH IS AN ESSENTIAL ELEMENT OF THE OFFENSE. THEN THE PROSECUTOR
AND THE COURT ALLOWS THE ONLY WITNESS AGAINST THE PETITIONER,
WHOM THE PROSECUTION SUBVERTED AND COERCED VIA PLEA BARGAIN TO
GIVE THE TESTIMONY AT ISSUE TO CONTRADICT THE MEDICAL EXAMINER
REPORT AS TO THE CAUSE DEATH WHEN HE STATED THE DECEASED WAS SHOT
IN THE HEAD (SEE: N.T. VOL. 3 TRIAL 5/8/00 AT P. 11-19. 60, 63,
65).

THIS IS CLEARLY A MATERIAL FACT, WHICH IS CRUCIAL TO THE
PROSECUTION'S EVIDENCE AGAINST PETITIONER. IT IS OBVIOUS IF THE
COURT HAS ACCEPTED THE MEDICAL EXAMINER REPORT AS CORRECT, THAN
THE WITNESS UNEQUIVOCALLY COMMITTED PERJURY WITHOUT BEING
CORRECTED BY THE COURT OR THE PROSECUTION BECAUSE HIS TESTIMONY
IS A ESSENTIAL ELEMENT TO THE CASE, SEE **PYLE V. KANSAS**, 317 U.S.
213, 215, 216, 63 S.CT. 178 (1942).

IF THE COURT IS SUGGESTING THAT THE MEDICAL EXAMINER REPORT
IS FABRICATED THAN IT WOULD HAVE THE SAME DIRE EFFECTS AS THE

18

PERJURED TESTIMONY, SEE, **MILLER V. PATE**, 87 S.CT. 785 (1967).

THE EX POST FACTO TREATMENT OF THE PERJURY IS EVEN MORE EGREGIOUS IN THAT THE TRIAL JUDGE EXPRESSED "HESITATION" OF THE TRUTH DETERMINING PROCESS WHEN THE TESTIMONY OF LAMB RAISED DOUBT. THE LEARNED TRIAL JUDGE CHARGED ITSELF BY SAYIN:

> "I DID CHARGE MYSELF WITH RESPECT TO THE QUALITY OF THE TESTIMONY PRESENTED BY MR. LAMB WHO IS A POLLUTED SOURCE AND I TOOK THAT VERY SERIOUSLY INTO CONSIDERATION. I DID NOT BELIEVE EVERYTHING THAT MR. LAMB SAID BUT I THINK THAT HE DID TESTIFY IN A MANNER WHICH MINIMIZED HIS OWN PARTICIPATION. NONETHELESS, I AM SATISFIED THAT THE FOLLOWING VERDICTS ARE SUPPORTED BY EVIDENCE"

(SEE: VOL. 4, TRIAL 5/9/00, AT 127)

PETITIONER ASSERTS THAT THERE ARE NO FUNDAMENTAL DIFFERENCES IN A PETITIONER'S RIGHT OR LEGAL PRINCIPLES INVOLVED BETWEEN A JURY AND A NON JURY AS TO ONE WITH A JURY. **ONEIL V MCANINCH**, 513 U.S. 432, 115 S.CT. 992 (1995).

HAD A JURY SAT IN ON PETITIONER'S TRIAL AND HEARD THE "CONSCIOUS SHOCKING" TESTIMONY OF LAMB, THAT THE DECEASED WAS SHOT IN THE HEAD, AND HAD GRAVE DOUBTS AS THE TRIAL JUDGE DID; THAN THREE THINGS MAY HAVE RESULTED. 1) THE JURY WOULD MAY HAVE ASKED TO HEAR THE EVIDENCE AGAIN FOR CLEARITY. 2) THEY WOULD MAY HAVE AGREED TO A MISTRIAL. 3) THEY WOULD HAVE ACQUITTED.

HERE, THE JUDGE SITTING IN AS THE JURY, DONE NEITHER AFTER HAVING EXPRESSED DOUBT. THE VERDICT OF GUILT WAS TOTALLY AN UNREASONABLE DETERMINATION OF THE FACTS AND CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW SET FORTH IN **IN RE WINSHIP**, SUPRA. THUS

19

THE JUDGE FAILED TO IMPOSE ON THE PROSECUTOR A CONSTITUTIONAL DUTY TO SERVE THE CAUSE OF JUSTICE. RATHER, THE PROSECUTOR'S CONDUCT WAS CONTRARY TO CLEARLY ESTABLISHED LAW SET FORTH IN **NAPUE V. ILLINOIS**, SUPRA, AND A VIOLATION OF PETITIONER'S FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL UNDER THE DUE PROCESS CLAUSE.

IT IS PETITIONER'S CONTENTION THAT HE IS INNOCENT AND IT WOULD "SHOCK THE CONSCIOUS" OF THE CONGRESSIONAL FRAMERS AND THE CITIZENS, WHOM FAITHFULLY RELY UPON THE JUDICIAL SYSTEM...HAD THEY'VE KNOWN OF THE LENGTH THE PROSECUTOR WENT FOR PURPOSES OF DEPRIVING PETITIONER OF HIS LIBERTY. A MISCONDUCT THAT SERIOUSLY AFFECTED THE FAIRNESS, INTEGRITY, AND THE PUBLIC REPUTATION OF JUDICIAL PROCEEDINGS. THAT THE PETITIONER'S PRESUMPTION OF INNOCENSE WAS ALLEGEDLY OVERCOMED BY THE USE OF KNOWN PERJURED TESTIMONY AND DESPITED OF THREE COURT OFFICIALS BEING PRESENT (PETITIONER'S COUNSEL, THE PROSECUTOR, AND JUDGE) NO ONE CARED TO ASSURE THAT THE PETITIONER GET AFFORDED A FAIR TRIAL UNDER THE DUE PROCESS CLAUSE.

THE PREJUDICE THAT THE PETITIONER SUFFERED IS EVIDENT. HAD IT NOT BEEN FOR THE PROSECUTION MISCONDUCT, THE PETITIONER WOULD HAVE BEEN AFFORDED A FAIR TRIAL AND THE OUTCOME WOULD HAVE BEEN DIFFERENT.

WITHOUT JAMES LAMB'S TESTIMONY THERE COULD HAVE BEEN NO OFFENSE WHICH THE PETITIONER HAS BEEN CHARGED AND NO ALLEGED EVIDENCE TO CARRY THE CASE. THERE WERE NO WITNESSES IDENTIFYING THE PETITIONER AS THE ALLEGED CO-CONSPIRATOR OTHER THAN MR. LAMB, WHOM MIGHT I REMIND THE COURT, SIGNED A AFFIDAVIT RECANTING HIS

20

TESTIMONY... STATING THAT PETITIONER WAS NOT HIS CO-CONSPIRATOR AND THAT THE POLICE PREYED ON HIS LACK OF CULPABILITY AS A JUVENILE AND COERCED HIM INTO LYING ON PETITONER.

MR. LAMB TESTIFIED IN A MANNER THAT IS TO BE CONSIDERED IMPOSSIBLE TO BELIEVE ACCORDING TO HUMAN EXPERIENCE. FURTHERMORE, THE PROSECUTOR PRESENTED INTO EVIDENCE THE "MEDICAL EXAMINER REPORT" THAT STATES THAT THE DECEASED WAS NOT SHOT IN THE "HEAD" WITH A REVOLVER BY PETITIONER, AS LAMB SAYS (VOL. 3. N.T. TRIAL 5/8/00, AT 11-19. 60, 63. 65). RATHER THE DECEASED DIED FROM A GUNSHOT WOUND TO THE BACK, A .380 AUTOMATIC THAT LAMB TESTIFIED TO HAVING DURING THE CRIME (N.T. PREL. HRG. 2/19/97 AT 4-5)(VOL. 4 N.T. TRIAL 5/9/00 AT 79-80).

PETITIONER'S COUNSEL CLEARLY FELL BELOW THE STANDARDS SET FORTH IN **STRICKLAND V. WASHINGTON**, 446 U.S. 668, 104 S.CT. 2052 (1982), WHEN HIS DEFICIENT REPRESENTATION ACQUIESCED IN THE PROSECUTOR USE OF KNOWN PERJANT TESTIMONY. AT THAT POINT OF THE TRIAL, LIKE OTHER POINTS, IT WAS AS IF PETITIONER HAD NO COUNSEL AT ALL. **UNITED STATES V. CRONIC**, 446 U.S. 648, 104 S.CT. 2039 (1984). IT WAS EVEN MORE EGREGIOUS, IN THAT COUNSEL KNEW THAT THE TESTIMONY OF JAMES LAMB WAS FALSE. IT IS NO DOUBT THAT PETITIONER'S COUNSEL COULD HAVE CONTESTED THE PROSECUTORIAL MISCONDUCT WITH OBJECTIONS.

EVEN IF, BY CHANCE, COUNSEL'S ACTS WERE WITHIN SOME PLANNED STRATEGY, THAN COUNSEL WOULD STILL BE INEFFECTIVE, FOR ANY TRIAL STRATEGY SHALL NOT ACQUIESCE IN A DEPRIVATION OF PETITIONER'S DUE PROCESS RIGHT TO A FAIR TRIAL, BUT SHALL BE WITHIN THE CLIENTS BEST INTEREST. **STRICKLAND V. WASHINGTON**, SUPRA.

PROCEEDINGS. THE CONSTITUTION CLEARLY DOES REQUIRE THAT ANY - OR AT LEAST INITIAL - DIRECT APPELLATE PROCEDURE THAT A STATE PROVIDES PETITIONER AS OF RIGHT MUST MEET MINIMAL STANDARD OF FAIRNESS AND DUE PROCESS. **EVITTS V. LUCEY**, 469 U.S. 387, 393 (1985), IN ACCORD, **FORD V. WAINWRIGHT**, 477 U.S. 399, 428-31 (1986). PETITIONER NEED NOT EXPLAIN THAT WITHIN THE DUE PROCESS CLAUSE OF A FAIR TRIAL LIES THE RIGHT TO EFFECTIVE ASSISTANCE AS IT IS AXIOMATIC.

PETITIONER WAS PREJUDICED IN THAT HAD COUNSEL RAISED THE ISSUE OF PROSECUORIAL MISCONDUCT. PETITIONER WOULD HAVE AT LEAST BEEN AFFORDED A MINIMAL SENSE OF ASSISTANCE AFTER HAVING BEEN FAILED THROUGHOUT TRIAL PROCEEDINGS.

PETITIONER IS INNOCENT AND HIS CONVICTION WAS AN UNREASONABLE DETERMINATION OF THE FACTS, AN UNRESONABLE APPLICATION OF THE LAW AND TOTALLY CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW UNDER THE SIXTH AND FOURTEENTH AMENDMENT. WHERFORE THE REASONS SET FORTH PETITIONER REOUEST RELIEF IN THE FORM OF A HEARING, AND THEREAFTER GRANTING OF HIS PETITIONER OF HABEAS CORPUS AND ORDERING HIM DISCHARGED FROM CUSTODY.

22

### TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR ADVISING PETITIONER NOT TO TESTIFY ON HIS OWN BEHALF

IN THE INSTANT CASE, THE ONLY EVIDENCE ALLEGED AGAINST PETITIONER IS THAT OF JAMES LAMB, WHOM MIGHT I AGAIN REMIND THE COURT, SIGNED A SWORN AFFIDAVIT RECANTING HIS TESTIMONY, STATING THAT THE DETECTIVES COERCED HIM AND TOOK ADVANTAGE OF HIS LACK OF CULPABLITY AS A JUVENILE.

THE SELF ADMITTED CULPRIT TO THE OFFENSE, WHO WAS GIVEN A REDUCED CHARGE AND SENTENCE BY THE COMMONWEALTH, FOR ALL PRACTICAL PURPOSES WHO INCIDENTLY LIED ABOUT THE CAUSE OF DEATH OF THE VICTIM ASSERTING THAT HE WAS SHOT IN THE HEAD BY PETITIONER WITH A REVOLVER (SEE: VOL. 3 TRIAL 5/8/00 AT 11-19, 60, 63, 65)[7] WHEN IN FACT, IF THE MEDICAL EXAMINER REPORT IS CORRECT THE VICTIM WAS SHOT IN THE BACK WITH A .380 AUTOMATIC, WHICH LAMB TESTIFIED TO HAVING DURING THE CRIME.

A DECISION WHETHER TO TESTIFY ULTIMATELY REST WITH THE DEFENDANT. **ROCK V. ARKANSAS**, 483 U.S. 44, 107 S.CT. 2704 (1987), A WAIVER OF THE PETITIONER RIGHT TO TESTIFY MUST BE KNOWINGLY INFORMED, AND INTELLIGENT.

AT THE CLOSE OF THE COMMONWEALTH'S CASE, THE TRIAL COURT ADDRESSED THE PETITIONER AS TO HIS RIGHT TO TESTIFY, WHEREAS, THE COURT COLLOQUIZED PETITIONER.

COUNSEL HEREIN WAS CLEARLY INEFFECTIVE FOR ADVISING PETITIONER NOT TO TESTIFY AND THE COLLOQUY SHOULD NOT STAND UNDER

---

[7] The petitioner does not confirm or deny the correctness of the report in this pleading.

23

THE   CIRCUMSTANCES   OF   THIS   CASE.   GIVEN THE TESTIMONY OF THE
COMMONWEALTH'S CHIEF AND   ONLY   WITNESS JAMES LAMB, WHO TESTIFIED
THAT ON   THE   NIGHT   OF SAID CRIME, FROM THE START OF THE DAY, UP
UNTIL   MINUTES   BEFORE THE      INCIDENT,      HE      WAS      SMOKING      THE
HALLUCINOGEN   DRUG   PHENCYCLIDINE   **"ANGLE DUST"**,   COMBINED      WITH
CANNABIS **"MARIJUANA"**, **"CODINE"**, **"XANAX"**, AND CONSUMPTING ALCOLHOL
**"BEER"**

THE RECORD   SHOWS   THAT   LAMB'S   TESTIMONY   WAS   PERJURED AND
CONVOLUTED.   THEREFORE,   PETITIONER   SHOULD   HAVE BEEN ADVISED TO
TAKE THE STAND. IT   CANNOT BE SAID THAT PETITIONER KNOWINGLY   AND
INTELLINGENTLY      WAIVED   HIS   CONSTITUTIONAL   RIGHT   TO   TESTIFY.

THE COLLOQUY   CONSIST SLOEY OF MONOSYLLABIC REPLIES WHICH OUR
COURT HAVE   HELD ARE   INSUFFICIENT TO SUBSTANTIATE   THE WAIVER OF
IMPORTANT CONSTITUTIONAL RIGHTS. **JERMYN V. HORN**,   266   F.2d   257,
295 (3rd cir. 2001), QUOTING **MORAN V. GODINEZ**, 972   F.2d 263 (9th
cir. 1992). THERE IS NO INDICATION OF   PETITIONER'S   AWARENESS OF
THE IMPORTANCE   OF   HIS   RIGHT   NOR THAT IT WAS NOT SUBVERTED VIA
THREATS AND/OR   PLAIN   ERRONEOUS   INFORMATION   BY   COUNSEL TO THE
PETITIONER   WHICH   WAS   THE   CAUSE   OF   SUCH   WAIVER IN QUESTION.

THE   PETITIONER   TESTIMONY   IN   THIS   PARTICULAR   CASE   WAS
ESSENTIAL AS   NOTWITHSTANDING HIS HONOR   BEING   A   LEARNED   TRIAL
JUDGE HEARING THE CASE,   HIS   HUMAN   NATURE   IS NOT   PLACE ON THE
SHELF   WHEN   HE   SITS   ON THE BENCH, AND LIKE ALL HUMAN BEINGS HE
WOULD HAVE TO ENTERTAIN SOME DOUBT AS TO WHY AN INDUVIDUUAL WOULD
NOT   RESPOND   TO   ACCUSATIONS OF   MALISCIOUS ACTS BEING   HURLED
AGAINST HIM IF IN FACT   HE   IS   INNOCENT,   WHICH   PETITIONER IS.

HAD   PETITIONER   TESTIFIED HE WOULD HAVE REFUTED MR. LAMB'S
24

ALLEGATIONS OF HIM BEING A CO-CULPRIT IN THIS OFFENSE. HE WOULD HAVE TESTIFIED THAT HE IN FACT DID KNOW ME. LAMB AND THAT THEY IN HAD ENGAGED IN THE SMOKING OF ANGLE DUST, MARIJUANA, AND CONSUMPTION OF ALCOLHOL ON A FEW OCCASSIONS PRIOR TO THE INCIDENT IN QUESTION. HOWEVER AT THE TIME IN QUESTION HE HAD NOT ASSOCIATED WITH ME. LAMB PRIOR TO THE INCIDENT. HE WOULD HAVE ALSO TESTIFIED THAT ON THE DAY IN QUESTION HE HAD SOCIALIZED WITH SEVERAL OTHER FRIENDS SEPERATELY AT DIFFERENT INTERVALS DURING THAT DAY WHOM WAS KNOWN TO PETITIONER MOST OF HIS LIFE. HE WOULD HAVE TESTIFIED THAT IN FACT THAT HE WAS NOWHERE NEAR THE SCEEN OF THE INCIDENT AT THE TIME OF IT'S OCCURRENCE AND IN FACT HAD NO KNOWLEDGE OF IT WHAT SO EVER EXCEPT WHAT HE HAS LEARNED THROUGH THE POLICE, PROSECUTOR, AND MR. LAMB'S TESTIMONY.

THE RIGHT TO PRESENT A DEFENSE IS ALSO A REQUIREMENT EMBODIED IN THE CONSTITUTIONAL SIXTH AMENDMENT OF THE FEDERAL LAW, AND ARTICLE 1 § 9 OF THE CONSTITUTION OF PENNSYLVANIA; THERFORE, TRIAL COUNSEL TALKED PETITIONER INTO WAIVING HIS RIGHT TO TESTIFY.

NOWHERE DOES IT APPEARS IN THIS CASE THAT TRIAL COUNSEL PRESENTED A DEFENSE TO THE PROSECUTION'S CHARGES, AS EXHIBITED BY COUNSEL CLOSING REMARKS AFTER THE COLLOQUY WAS COMPLETED, WHEN TRIAL COUNSEL REMARKED TO THE COURT.

> **MR. TINARI:** YOUR HONOR, WITH THAT BEING THERE IS NO FURTHER TESTIMONY THAT WILL BE ADVANCE ON BEHALF OF THE DEFENDANT AND THE COLLOQUY DEFENSE REST. YOUR HONOR

(Id. VOL. 4 N.T. TRIAL, 5/9/00, AT 93)

IN SHORT, PETITIONER CITES IN SUPPORT FOR AUTHORITY OF **BERRY V. MORTON**, 100 F.3d 1069 (3rd. cir. 1996) (DEFENSE COUNSEL WAS NOT GUIDED BY ANY STATEGY OR THEORY), HENCE IN THE INSTANT CASE, PETITIONER SUBMITS THAT TRIAL COUNSEL WAS INEFFECTIVE FOR HIS FAILUR TO MOUNT A DEFENSE, BUT RATHER TALKED PETITIONER IN WAIVING HIS RIGHT TO TESTIFY.

THE FACT THAT PETITIONER DID WANT TO TESTIFY BUT SUCCUMBED TO COUNSEL'S ADVISE CAND BE VERIFIED BY LETTERS OF COMPLAINT FILED WITH THE DISCIPLINARY BOARD (**NO. C1-99-539 MS. MARCIA LIEBERMAN D.C.**) AS STATED IN FOOT NOTE #1 IN PRIOR ISSUES AGAINST COUNSEL ANENT THE OBTAINING OF HIS WITNESSES, WHICH HE PRESUMED H E WOULD AUTOMATICALLY BE ONE OF THEM.

PETITIONER WAS PREJUDICED IN THAT HAD COUNSEL NOT ILL-ADVISED PETITIONER NOT TO TESTIFY, THAN PETITIONER WOULD HAVE HAD THE OPPORTUNITY TO LET THE COURT HEAR HIM DECLARE HIS INNOCENSE UNDER OATH AND PUT THE COMMONWEALTH CASE THROUGH AN ADVERSARIAL TESTING **CRONI** SUPRA

UNDER THIS MATTER IT IS PELLUCIDLY CLEAR THAT COUNSEL WAS CONSTITUTIONAL INEFFECTIVE, WHICH IS CLEARY AN UNREASONABLE STATEGY REQUIRED BY DEFENSE COUNSEL AS STATED IN **BERRYMAN** SUPRA. SEE ALSO **STRICKLAND V. WASHINGTON**, 466 U.S. 668, 104 S.CT. 2052 (1984).

WHEREFORE THE REASONS ABOVE, IT IS CLEAR THAT COUNSEL'S ACTIONS WERE CONTRAY TO CLEARLY ESTABLISHED FEDERAL UNDER THE SIXTH AMENDMENT. PETITIONER'S CONVICTION AMOUNTED TO AN UNREASONABLE DETERMINATION OF THE FACT, UNREASONABLE APPLICATION OF THE LAW AND HE REQUEST THAT THE COURT GRANT RELIEF IN THE FORM

OF A HEARING, AND THEREAFTER, GRANTING HIS PETITION OF HABEAS CORPUS AND ORDERING HIM DISCHARGED FROM CUSTODY.

WHETHER THE TRIAL COURT IN CHARGING HIMSELF
ON THE POLLUTED SOURCE OF JAMES LAMB'S
TESTIMONY RAISED DOUBT WHICH THE COURT
EXPRESSED HESITATION OF THE TESTIMONY
TRUTHFULNESS IN, (THE TRUTH DETERMINING
PROCESS) DENY PETITIONER DUE PROCESS OF LAW
WHICH NEGATED THE COMMONWEALTH BURDEN OF
PROVING EVERY ELEMENT OF THE OFFENSE BY
REASONABLE DOUBT.

IN THIS PARTICULAR MATTER THE PETITIONER HAD A BENCH TRIAL IN
WHICH THE COURT HEARD EVIDENCE AS THE JURY WOULD HAVE HEARD. THE
COMMONWEALTH PRESENTED FOUR WITNESSES; THREE OF THE WITNESSES
ALLEGE TO HAVE VIEWED THE INCIDENT IN QUESTION IN SOME POSTURE OR
ANOTHER. THE THREE WITNESSES POSITIVELY IDENTIFIED ONE JAMES LAMB
AS ONE OF THE CULPRITS. HOWEVER, THE OTHER PERPETRATOR COULD NOT
BE IDENTIFIED BY THE WITNESSES, NON OBSTANTE ALL OF THEM BEING
SHOWN PHOTOGRAPHIC ARRAYS WITH PETITIONER'S PHOTO THEREIN. (SEE
N.T. VOL. 2, TRIAL 5/5/00 AT P. 55 L.22-25) (SEE VOL. 4, TRIAL
5/9/00 AT P. 29 L. 1-10 AND 12-20) (SEE VOL. 4, TRIAL 5/9/00 AT
73) NOTE AT NO TIME DURING THE WHOLE TRIAL DID ANY OF THE
WITNESSES EVER INDICATE ON THE RECORD THAT THE PETITIONER WAS THE
OTHER INDIVIDUAL INVOLVED IN THIS INCIDENT. MAUGRE THE DEFENDANT
SITTING AT THE DEFENSE TABLE AT ALL TIMES DURING THE TRIAL.

THE ONLY WITNESS TO ASSERT PETITIONER'S PRESENCE AS AN
ACCOMPLICE WAS ONE JAMES LAMB WHOM HAD TESTIFIED AS A CONFESSED
PARTICIPANT AS PART OF A PLEA BARGAIN WITH THE COMMONWEALTH, FOR
A THIRD DEGREE MURDER AND SUBSTANTIAL DEDUCTION OF SENTENCE
THEREON. THE COURT, AFTER HEARING THE EVIDENCE ASSERTED THAT HE
CHARGE ITSELF AS FOLLOWS:

28

> "I DID CHARGE MYSELF WITH RESPECT TO THE QUALITY OF
> THE TESTIMONY PRESENTED BY MR. LAMB WHO IS A
> POLLUTED SOURCE AND I TOOK THAT VERY SERIOUSLY INTO
> CONSIDERATION.  I DID NOT BELIEVE EVERYTHING THAT
> MR. LAMB SAID BUT I THINK THAT HE DID TESTIFY IN A
> MANNER WHICH MINIMIZED HIS OWN PARTICIPATION.
> NONETHELESS, I AM SATISFIED THAT THE FOLLOWING
> VERDICTS ARE SUPPORTED BY THE EVIDENCE."

(SEE: VOL. 4, TRIAL 5/9/00. AT 127)

THE REQUIREMENT OF "PROOF OF GUILT BEYOND A REASONABLE DOUBT"
HAS BEEN HELD BY THE SUPREME COURT OF THE UNITED STATES TO BE A
CONSTITUTIONAL DIMENSION. **IN RE WINSHIP**, 397 U.S. 358, 90 S.CT.
1068 (1970).

THE ABOVE CHARGE IS CONTRARY TO CLEARLY ESTABLISHED LAW SET
FORTH IN **IN RE WINSHIP**, SUPRA, AS WHEN THE PROSECUTION PRESENTED
THE CASE, IT'S THEORY WAS BASED UPON THE ALLEGED CO-CONSPIRATOR,
JAMES LAMB TESTIFYING TRUTHFULLY, AND THAT THE COURT FINDING HIM
MINIMIZING HIS OWN PARTICIPATION IN THE MURDER AND RELATED
CRIMES.

UNDER THE CIRCUMSTANCES IT IS INCONCEIVABLE AS TO WHAT
EVIDENCE WAS CONSIDERED IN THE DISPOSITION OF THIS MATTER. IT IS
OBVIOUS AS THE COURT STATED IN **CAGE V. LOUISIANA**, 498 U.S. 39,
40, 111 S.CT. 328, 329 (1990), THAT ANY REASONABLE DOUBT OF
DEFENDANT'S GUILT OR INNOCENSE MUST BE RESOLVED IN HIS FAVOR BY
VERDICT OF NOT GUILTY. NOTWITHSTANDING **CAGE** BEING A JURY
INSTRUCTION GIVEN TO A JURY THIS SAME STANDARD A FORTIORI IS
APPLICABLE TO A BENCH TRIAL (SEE: **ONIEL V. MCANINCH**, 513 U.S.
432, 115 S.CT. 992 (1995).

IT IS A FACT THAT MR. LAMB DOWN PLAYED HIS INVOLVEMENT WHEN
HE GAVE FALSE TESTIMONY THAT WAS NOT SUPPORTED BY THE RECORD,

WHERE HE SAYS THAT PETITIONER SHOT THE DECEASED IN THE **"HEAD"**
WITH A REVOLVER. HOWEVER, THE RECORD IS CLEAR THAT THE DECEASED
WAS SHOT IN THE BACK WITH THE SAME MURDER WEAPON, A .380
AUTOMATIC WHICH MR. LAMB ADMITTED THAT HE HAD DURING THE ENTIRE
INCIDENT, AND INCLUDING HIS ARREST WHERE POLICE FOUND THE .380
AUTOMATIC HANDGUN IN HIS POSSESSION (VOL. 3 N.T. TRIAL 5/8/00, AT
11-19, 60, 63, 65)

THE AUTOPSY PERFORMED ALSO ESTABLISHED THAT THE .380
AUTOMATIC HANDGUN DISCHARGED A COPPER PROJECTILE INTO THE BACK OF
THE DECEASED.

IT IS PATENTLY CLEAR THE COURT'S CHARGE REEKED WITH DOUBT OF
IT'S DECISION, SPECIFICALLY GIVEN THE LACK OF IDENTIFICATION OF
ANY FACT RELIED ON IN REACHING THE VERDICT. THE IDENTIFICATION OF
PETITIONER HEREIN ASSERTS THAT THE COURT FAILED IN CARRYING OUT
IT'S DUTY IN REDERING THE ADVERSE DECISION CONTRARY TO IT'S
REASONABLE DOUBT. AS IN THIS PARTICULAR CASE THE COURT WOULD
APPLY THE CORRUPT SOURCE PROPERLY TO ITSELF AS SET FORTH IN
**COMMONWEALTH V. CHMILE**, 689 A.2d 9, 13 (Pa. 1999).

PETITIONER IS INNOCENT AND THE COURT'S CONDUCT PRJUDICED HIM,
IN THAT HAD IT NOT BEEN FOR THE JUDGE DISREGARDING THE REASONABLE
DOUBT STANDARD SET FORTH IN **IN RE WINSHIP** SUPRA, WHICH IS CLEARLY
ESTABLISHED FEDERAL LAW, THE PROSECUTION'S EVIDENC WOULD HAVE NOT
BEEN GIVEN UNDUE WEIGHT AND THE OUTCOME WOULD HAVE RESULTED IN A
VERDICT OF NOT GUILTY AS THE COURT HEL IN **CAGE** SUPRA. THE COURT'S
VERDICT WAS CLEARLY AN UNREASONABLE APPLICATION OF THE LAW AND
DETERMINATION OF THE FACT. FOR THE REASONS SET FORTH HEREIN THE
PETITIONER REQUEST RELIEF OF A HEARING, THEREAFTER A GRANTING OF

30

PETITIONER'S WRIT OF HABEAS CORPUS.

**WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY
INEFFECTIVE FOR COERCING PETITIONER TO
WAIVE HIS CONSTITUTIONAL RIGHT TO A JURY
TRIAL**

IN THIS MATTER THE PETITIONER WAIVED HIS RIGHT TO A JURY
TRIAL AS A RESULT OF COUNSEL'S INFORMING HIM IF HE CHOSE TO TAKE
A JURY TRIAL HE WOULD BE PUT ON DEATH ROW WITH THE DEATH PENALTY,
BUT IF HE TOOK A BENCH TRIAL HE COULD CONVINCE THE JUDGE NOT TO
GIVE PETITIONER THE DEATH PENALTY.

THE PETITIONER REJECTED THE BENCH TRIAL AT FIRST BLUSH.
HOWEVER; AFTER FURTHER HARANGUING AND A SPECIAL VISIT OF
PETITIONER'S MOTHER IN THE ATTORNEY CLIENT CONFERENCE BOOTH, AND
PETITIONER'S MOTHER WEAPING PLEAS TO WAIVE A JURY TRIAL AS HIS
COUNSEL REQUESTED THE PETITIONER SUBSEQUENTLY SUCCUMB. COUNSEL
INFORMED PETITIONER AS WELL AS HIS MOTHER IF HE CHOSE TO TAKE A
JURY TRIAL COUNSEL WOULD WITHDRAW BECAUSE HE DID NOT WANT TO BE
RESPONSIBLE FOR OR BE A PART OF THE PETITIONER'S FINAL DEMISE

IN LIGHT OF THESE EVENTS AS STATED SUPRA. PETITIONER HAS
WAIVED HIS RIGHT TO A JURY TRIAL. THE PETITIONER ASSERTS THAT
THIS COURT HAS HELD THAT THE THREAT OF THE DEATH PENALTY CANNOT
BE USED IN ATTEMPT TO THWART THE EXERCISE TO COUNSEL BY THE
ACCUSED SEE **COMMONWEALTH V STORY**, 497 Pa. 273, 281, 440 A.2d 488,
492 (1981), WHICH WAS EXACTLY DONE IN THE INSTANT MATTER.

IN THIS CASE AS PETITIONER STATED SUPRA COUNSEL THREATENED TO
WITHDRAW IF PETITIONER REFUSED TO WAIVE HIS RIGHT TO A JURY
TRIAL. THIS ACT HAD BEEN CONDEMNED IN THE STRONGEST OF TERMS WHEN
THE THIRD CIRCUIT COURT OF APPEALS STATED IN **HEISER V. RYAN**, 951

F.2d 559, 561 (1991) **"A THREAT BY A DEFENDANT'S ATTORNEY TO WITHDRAW FROM THE CASE IF THE DEFENDANT DOES NOT PLEAD GUILTY MAY RENDER GUILTY PLEA INVOLUNTARY"** (CITATION OMITTED)---**THIS IS TRUE NOT WITHSTANDING THE MITIGATING EFFECT OF AN ATTORNEY'S ASSURANCE THAT NEW COUNSEL WOULD BE APPOINTED IF THE DEFENDANT INSISTED ON PROCEEDING TO TRIAL** (CITATION OMITTED)---**LIKEWISE, IF AN ATTORNEY THREATENS TO WITHDRAW TO PREVENT A DEFENDANT FROM CHANGING HIS MIND ABOUT PLEADING GUILTY AND BACKING OUT OF A PLEA BARGAIN, THE PLEA COULD BE RENDERED INVOLUNTARY** id. 951 F.2d AT 561 (1991).

IT IS CLEAR THAT THE COLLOQUY IS QUESTIONABLE IN THAT ALL OF PETITIONER'S ANSWERS WERE **MONOSYLLABIC** WHICH SHOWS NO INDICATION OF HIS AWARENESS OF THE IMPORTANCE OF THIS RIGHT. GIVEN THE **MONOSYLLABIC** ANSWERS AND THE SIGNIFIGANCE OF THE CONSTITUTIONAL RIGHT THAT WAS BEING WAIVED, THE STATE SHOULD HAVE ENTERTAINED PETITIONER'S ACTUAL AWARENESS OF KNOWINGLY AND INTELLIGENTLY WAIVE OF THIS RIGHT BY DELVING INTO PETITIONER'S UNDERSTANDING OF HIS WAIVER VIA IQUIRY REQUIRING MORE DETAILED REPLIES.

THE PETITIONER CONTENDS GIVEN THE DEARTH OF EVIDENCE IN THIS MATTER THAT GAVE RISE TO REASONABLE DOUBT OF THE LEARNED TRIAL JUDGE (AS SET FORTH SUPRA IN #5) IT IS VERY CONCEIVABLE THAT A LESS LEARNED JURY WOULD HAVE COME TO AQUITTAL WITH THE PROPER INSTRUCTIONS FROM THE COURT. PETITIONER WAS PREJUDICED IN THAT HAD COUNSEL NOT COERCED HIM TO WAIVE HIS RIGHT, PETITIONER WOULD HAVE PICKED A JURY AND THE OUT COME WOULD HAVE BEEN DIFFERENT. COUNSEL'S PERFORMANCE FELL WELL BELOW THE CLEARLY ESTABLISHED FEDERAL LAW REQUIRED IN **STRICKLAND V. WASHINGTON**, 446 U.S. 668, 104 S.CT. 2052 (1982).

33

FOR THE REASONS STATED ABOVE, PETITIONER REQUEST RELIEF IN FORM OF A HEARING, THEREAFTER, GRANTING PETITIONER'S WRIT OF HABEAS CORPUS AND DISCHARGE FROM CUSTODY.

**THE VERDICTS WERE AGAINST THE WEIGHT OF THE EVIDENCE INSOFAR AS THE VERDICTS WERE ENTIRELY BASED ON THE TESTIMONY OF JAMES LAMB, AN ADMITTED PARTICIPANT IN THE INCIDENT, WHOSE TESTIMONY WAS REPLETE WITH INCONSISTENCIES AND MOTIVATED BY SELF INTEREST**

IN THE INSTANT CASE, ON **MAY 8, 2000**, AT PETITIONER'S TRIAL, THE COMMONWEALTH INTRODUCED JAMES LAMB, THE ALLEGED CO-CONSPIRATOR WHO TESTIFIED THAT FROM EARLY IN THE DAY OF THE INCIDENT, UP UNTIL MINUTES BEFORE THE INCIDENT, HE USED (PHENYCYCLIDINE, CALLED PCP) A HALLUCINOGEN DRUG COMMONLY KNOWN AS **"ANGLE DUST"** IN COMBINATION WITH **"MARIJUANA"**, **"ALCOHOL"**, **"CODINE"**, AND **"XANAX"** (SEE VOL. 3, N.T. TRIAL 5/8/00, 11-12, 28-29).

JAMES LAMB ON NEGOTIATED PLEA FOR THIRD DEGREE MURDER, TESTIFIED THAT HE SHOT WILLIAM CINTRON IN THE BACK WITH HIS .380 AUTOMATIC WEAPON AND PETITIONER ARMED WITH A REVOLVER SHOT THE DECEASED SAMMY CEDANO IN THE HEAD (VOL 3, N.T. TRIAL 5/8/00, 11-19, 60, 63, 65,).

THE DECEASED WAS NOT SHOT IN THE **"HEAD"**, RATHER THE DECEASED DIED FROM A GUNSHOT WOUND IN THE **"BACK"** WITH A .380 AUTOMATIC WEAPON, IN WHICH THE PROSECUTION AND DEFENSE COUNSEL STIPULATED TO PRIOR TO TRIAL AT PRLIMINARY PROCEEDINGS (N.T. PREL. HRG. 2/19/97, AT 4-5).

THE COMMONWEALTH ALSO PRESENTED THE TESTIMONY OF THREE WITNESSES WHOM ALLEGE TO HAVE VIEWED THE INCIDENT IN QUESTION IN SOME POSTURE OR ANOTHER. THE THREE WITNESSES POSITIVELY IDENTIFIED ONE JAMES LAMB AS ONE OF THE CULPRITS. HOWEVER, THE

OTHER PERPETRATOR COULD NOT BE IDENTIFIED BY WITNESSES, NON OBSTANTE ALL OF THEM BEING SHOWN PHOTOGRAPHIC ARRAYS WITH PETITIONER'S PHOTO THERE IN. (SEE N.T. VOL 2, TRIAL 5/5/00, AT 55), (SEE N.T. VOL 4, TRIAL 5/9/00, AT 29), (SEE N.T. VOL 4, TRIAL 5/9/00, AT 73) NOTE AT NO TIME DURING THE WHOLE TRIAL DID ANY OF THE WITNESSES EVER INDICATE ON THE RECORD THAT THE PETITIONER WAS THE OTHER INDIVIDUAL INVOLVED IN THIS INCIDENT. MAUGRE THE PETITIONER SITTING AT THE DEFENSE TABLE AT ALL TIMES DURING THE TRIAL.

PETITIONER ASSERTS THAT THE VERDICT OF GUILT WAS AGAINST THE WEIGHT OF THE EVIDENCE, IN THAT THE EVIDENCE PRESENTED WAS INSUFFICIENT TO PROVE THE ELEMENT OF THE CRIME, NAMELY CONSPIRACY, THE MOST IMPORTANT ELEMENT IN WHICH PETITIONER WAS CONVICTED. **JACKSON V VIRGINIA** 443 U.S. 307, 99 S.CT. 279 (1979).

THE LAW HAS BEEN SETTLED IN THE CASE OF **IN RE WINSHIP**, 397 U.S. 358, 90 S.CT. 1068 (1970) THAT THE COMMONWEALTH HAS THE DUTY TO PROVE BEYOND A REASONABLE DOUBT EVERY FACT NECESSARY TO CONSTITUTE THE CRIME WITH WHICH A PERSON IS CHARGED.

HERE, THE COMMONWEALTH NOT ONLY PRESENTED INSUFFICIENT EVIDENCE, BUT PRESENTED KNOWN PERJURED TESTIMONY AND FAILED TO CORRECT IT WHEN JAMES LAMB, THE CHIEF AND ONLY WITNESS WHO PLACES PETITIONER AT THE SCEENE OF THE CRIME, TESTIFIED THAT PETITIONER SHOT THE DECEASED IN THE HEAD WITH A REVOLVER (N.T. VOL 3, TRIAL 5/8/00, AT 11-19, 60, 63, 65), WHEN THERE IS INCONTROVERTIBLE PHYSICAL FACTS THAT STATES THE DECEASED DIED FROM A GUNSHOT WOUND TO BACK (N.T. VOL 4, TRIAL 5/9/00, AT 79-80) SEE ALSO (N.T. PREL. HRG. 2/19/97 AT 4-5)

PETITIONER CONTENDS LAMB'S TESTIMONY SHOULD NOT BE HELD
CREDIBLE, IN THAT IT TOTALLY "SHOCKS THE INTEREST OF JUSTICE".
THERE IS NO WAY HUMANLY POSSIBLE FOR THE CAUSE OF DEATH TO BE
FROM A GUNSHOT WOUND TO THE "HEAD" IF THE MEDICAL EXAMINER'S
REPORT IS TO BE DEEMED AS CORRECT. THE JUDGE BASED HIS REASONING
ON LAMB'S TESTIMONY, COUPLED WITH THE TESTIMONY OF TWO WITNESSES
TO INFER CONSPIRACY. HOWEVER, THE RECORD SHOWS THAT THE JUDGE
GAVE UNDUE WEIGHT TO THE COMMONWEALTH'S ENTIRE CASE.

IN DNYING RELIEF, THE TRIAL COURT RELIES UPON **COMMONWEALTH V.
ROUX** 465 Pa. 482, 350 A.2d 867 (1976) QUOTING **COMMONWEALTH V.
TUMMINELLO**, 292 Pa. Super 381, 437 A.2d (1981), HOLDING THAT
THE EVIDENCE AGAINST PETITIONER WAS MORE THAN SUFFICIENT TO
SUSTAIN THE CONVICTION. THE COURT SAID:

> "ALTHOUGH THE EVIDENCE POINTS TO THE GUN USED
> BY JAMES LAMB AS THE MURDER WEAPON, AND HE
> AN OBVIOUS INTEREST IN TESTIFYING AS HE DID,
> IT IS CLEAR THAT HE AND THE DEFENDANT WERE
> CO-CONSPIRATORS IN THE ROBBERY"

> "THERE WERE CONFLICTING VERSIONS OF WHAT
> EXACTLY HAPPENED THAT NIGHT. THE TESTIMONY
> AS A WHOLE SHOWED THAT THE DEFENDANT AND MR.
> LAMB SET OUT ROB THE THREE HISPANIC MEN
> DOMONIQUE MAXWELL SAW BOTH THE DEFENDANT AND
> MR. LAMB FIRE THEIR WEAPONS MULTIPLE TIMES
> AS DID WILLIAM CINTRON. BOTHE MEN ACTIVELY
> PARTICIPATED NOT ONLY IN THE ROBBERY BUT
> ALSO IN THE SHOOTING. ONCE A CONSPIRACY IS
> ESTABLISHED, A MEMBER OF THE CONSPIRACY IS
> ALSO GUILTY OF THE CRIMINAL ACTS OF HIS
> CO-CONSPIRATOR, EVEN IF HE IS NOT PRESENT
> WHEN THEY ARE COMMITTED.

PETITIONER ASSERTS THAT THE TRIAL COURT'S CITING **ROUX**, SUPRA
IS AN UNRESONABLE APPLICATION. IN **ROUX**, UNLIKE THE INSTANT

37

IT IS INCONCEIVABLE AS TO THE JUDGE ERRONEOUSLY DRAWING INFERENCES OF CONSPIRACY BASED ON TESTIMONY FULL OF INCONSISTANCIES SO DAMAGING, THAT THE PROSECUTION SUBORNED PERJURED TESTIMONY BY IT'S CHIEF AND ONLY WITNESS JAMES LAMB, WHOM TESTIFIED UPON A NEGOTIATED PLEA, AND WHOM SIGNED A SWORN AFFIDAVIT AS OF TO DATE RECANTING HIS TESTIMONY. THE WITNESS JAMES LAMB HAD TESTIFIED THAT AT THE TIME OF THE INCIDENT HE HAD CONSUMED "ANGLE DUST" (A HOLLUCINOGEN CALLED PCP), "MARIJUANA", "CODINE", "XANAX", AND "ALCOHOL". HE ALSO TOLD HIS SISTER, LAPRICIA JESSUP, THAT HE DID NOT REMEMBER WHO WAS WITH HIM DURING THE INCIDENT APPROXIMATELY A WEEK AFTER HIS ARREST (SEE EXHIBIT "D" PAGE 6 PARAGRAPH 5 OF PCRA COUNSEL'S FINLEY LETTER).

IT IS CLEAR THAT THE PETITIONER ESTABLISHED BY A PREPONDERANCE OF EVIDENCE AND OF THE RECORD THAT THE FALSE MISSTATEMENTS OF THE FACTS USED BY THE JUDGE TO CONVICT PETITIONER OF CONSPIRACY WAS KNOWINGLY AND INTENTIONALLY, OR WITH RECKLESS DISREGARD FOR THE TRUTH. THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION THEREFORE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

PETITIONER WAS PREJUDICED IN THAT HAD THE JUDGE GIVEN THE PROPER WEIGHT TO THE EVIDENCE THE OUTCOME OF THE TRIAL WOULD HAVE RESULTED IN AN ACQUITTAL. PETITIONER IS INNOCENT AND THE JUDGE ABUSED HIS DISCRETION BY USING FALSE FACTS TO OVERCOME THAT PRESUMPTION. THE JUDGE'S VERDICT WAS AN UNREASONABLE APPLICATION OF THE LAW, AN UNREASONABLE DETERMINATION OF THE FACTS, AND CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW UNDER THE FOURTEENTH AMENDMENT (DUE PROCESS OF A FAIR TRIAL).

SITUATION, THE PERPETRATOR [ROUX] HAD SAT IN A BAR WITH FOUR OF HIS FRIENDS AND VOICED HIS INTENTION OF THE ROBBERY TO THEM, PASSED THE MURDER WEAPON [KNIFE] BACK AND FORTH UNDER A TABLE, FOLLOWED THE VICTIM OUTSIDE WHERE HE AND HIS FRIENDS ROBBED THE VICTIM. UPON LEAVING THE VICTIM SOMEONE GRABBS THE KNIFE FROM ROUX, STABS THE VICTIM, AND GAVE THE KNIFE BACK TO ROUX WHERE HE HID THE WEAPON AT A GIRLFRIEND'S HOUSE.

HERE, THE COURT'S REASON FOR INFERING THAT PETITIONER CONSPIRED IS TOTALLY BASED ON FALSE FACTS, IN THAT DOMONIQUE MAXWELL NEVER TESTIFIED TO SEEING PETITIONER AS ONE OF THE ALLEGED CO-CONSPIRATORS AND NEITHER DID WILLIAM CINTRON. (SEE N.T. VOL 2, TRIAL 5/5/00, AT 48-50) (SEE N.T. VOL 4, TRIAL 5/9/00 AT 4-74)

THERE IS NO SUFFICIENT EVIDENCE PRESENTED TO JUSTIFY THE TRIAL COURT'S FINDING THAT PETITIONER WAS A PART OF A CONSPIRACY. THE TRIAL JUDGE RELIED SOLELY UPON TENUOUS INFERENCED DERIVED FROM MISSTATED FACTS TO ESTABLISH A MATERIAL ELEMENT OF THE CHARGE, THEREFORE DUE PROCESS WAS DENIED. **TURNER V. UNITED STATES**, 396 U.S. 398, 90 S.CT. 642 (1970).

IN **COMMONWEALTH V. BROWN**, 538 Pa. 410, 648 A.2d 1177 (1994), THE COURT HELD THAT A JUDGE MUST DO MORE THAN REASSES THE CREDIBILITY OF THE WITNESSES. IN REVIEWING A CLAIM THAT THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE, A TRIAL JUDGE DO NOT SIT AS THE THIRTEENTH JUROR. RATHER, THE ROLE IS TO DETERMINE THAT NOTWITHSTANDING ALL THE FACT, CERTAIN FACTS ARE SO CLEARLY OF GREATER WEIGHT THAT TO INGNORE THEN OR TO GIVE THEM EQUAL WEIGHT WITH ALL THE FACTS IS TO DENY JUSTICE.

WHEREFORE, THE PETITIONER REQUEST RELIEF IN THE FORM OF A
HEARING, THEREAFTER A GRANTING OF HIS PETITION OF HABEAS CORPUS
AND DISCHARGE FROM CUSTODY.

# THE DISCIPLINARY BOARD

## OF THE

## SUPREME COURT OF PENNSYLVANIA

John. L. Doherty
Chief Disciplinary Counsel

Paul J. Burgoyne
Deputy Chief Disciplinary Counsel

DISTRICT I OFFICE
16th Floor
Seven Penn Center
1635 Market Street
Philadelphia, PA 19103
(215) 560-6296
Fax (215) 560-4528

DISTRICT I

Disciplinary Counsel-in-Charge
Marcia J. Lieberman

Disciplinary Counsel
Barbara S. Rosenberg
Anthony P. Sodroski
Richard Hernandez
Donna M. Snyder
Gloria Randall Ammons
Raymond S. Wierciszewski

**OFFICE OF DISCIPLINARY COUNSEL**

January 26, 1999

PERSONAL AND CONFIDENTIAL

Mr. John Moore
DD-9449
P.O. Box 244
Graterford, PA 19426-0244

> RE: Complaint against
> Nino V. Tinari, Esquire

Dear Mr. Moore:

This will acknowledge receipt of your January 7, 1999 letter concerning the above matter. Once again, you are complaining that Mr. Tinari has failed to keep you informed of the progress of your action, failed to interview witnesses who are essential to your case, and has failed to provide to you a copy of discovery.

According to Mr. Tinari's letter of October 20, 1998, Mr. Tinari has reviewed the discovery and is continuing in his efforts to contact your witnesses. At this time, there is nothing new to report to you. In fact, there will be no progress on the case until the action is placed in the ready pool. At that stage, Mr. Tinari has told you that he will visit you and further his investigation. Regarding giving your mother a copy of the discovery, Mr. Tinari is not required to do so. Since he is your court-appointed attorney, unless you pay the copying costs he is not required, and should not turn over to you, the discovery.

Please note, the Rules of Professional Conduct require an attorney to keep a client informed of the status of the matter when that status changes. Since nothing has changed in your matter, Mr. Tinari is not required to send you periodic reports.

Mr. John Moore
January 26, 1999
Page Two

For the above reasons, your complaint against Mr. Tinari will remain closed. I am sorry we are unable to assist you in this.

Very truly yours,

Marcia J. Lieberman
Counsel-In-Charge

MJL:rbc

# THE DISCIPLINARY BOARD

## OF THE

## SUPREME COURT OF PENNSYLVANIA

John. L. Doherty
Chief Disciplinary Counsel

Paul J. Burgoyne
Deputy Chief Disciplinary Counsel

DISTRICT 1 OFFICE
16th Floor
Seven Penn Center
1635 Market Street
Philadelphia, PA 19103
(215) 560-6296
Fax (215) 560-4528

Ext. 37

**OFFICE OF DISCIPLINARY COUNSEL**
June 1, 1999

DISTRICT 1

Disciplinary Counsel-in-Charge
Marcia I. Lieberman

Disciplinary Counsel
Barbara S. Rosenberg
Anthony P. Sodroski
Richard Hernandez
Donna M. Snyder
Gloria Randall Ammons
Raymond S. Wierciszewski

### PERSONAL AND CONFIDENTIAL

Mr. John Moore
#DD9449
P.O. Box 244
Graterford, PA 19426-0244

RE: Complaint against
Nino V. Tinari, Esquire
File No. C1-99-539

Dear Mr. Moore:

This will acknowledge receipt of your complaint against the above attorney dated May 11, 1999.

At the outset, it is important for you to know some limitations on our consideration of your complaint. First, our jurisdiction and authority are limited to attempting to enforce the Rules of Professional Conduct, a set of minimum ethical standards with which all attorneys must abide. While the Rules are quite broad in their scope, they simply do not prohibit all conduct by an attorney which might be considered as unprofessional, inappropriate, or unethical.

Second, even though you have filed a complaint, this office does not represent you or your personal interests. We are not your attorney and cannot provide you with any personal legal advice. We cannot attempt to obtain any remedy or damages you might feel you are entitled to nor can we interfere with or intercede in any pending or future legal proceedings in which you might be involved. We will, however, deal with your complaint in a fair and unbiased manner.

Third, under Rules 209(a) and 402 of the Pennsylvania Rules of Disciplinary Enforcement of the Supreme Court of Pennsylvania, copies of which are enclosed for your reference, all complaints submitted to the Disciplinary Board or Disciplinary Counsel shall

Mr. John Moore
June 1, 1999
Page 2

be confidential. Additionally, all proceedings before the Disciplinary Board or Disciplinary Counsel are confidential until and unless certain events described in the rules occur. As long as you do not violate these rules of confidentiality, the rules provide that you shall be immune from civil suit based upon your communication or testimony in this matter.

These rules **do not** prohibit you from taking any other action you deem appropriate. For example, you may discuss the underlying basis of your claim with an attorney to determine whether any civil action is appropriate, or with a prosecutorial agency if required. What is prohibited is revealing that you have filed a complaint with the Disciplinary Board or Disciplinary Counsel, unless the events described in Rule 402 occur.

I have obtained the docket entries in your case. They show that Mr. Tinari has continued your case on numerous occasions, and that he has failed to appear in court on several occasions. If Mr. Tinari was court-appointed to represent you, you may wish to contact the court to request that new counsel be appointed.

In order that I may investigate the matter further, please provide the following additional information and documentation:

> 1. Provide copies of any correspondence you have sent to or received from Mr. Tinari, other than that which you did provide, including copies of the letter that you wrote requesting discovery and the check that you sent;
>
> 2. If he was retained, provide copies of any fee agreement and copies of cancelled checks and receipts evidencing payments to him.

You also need to write to Mr. Tinari on one more occasion to direct him to deliver to a family member or you your discovery as he agreed to do in his letter of October 20, 1998 or to advise him that he is discharged, if you wish to do so. Be sure to date the letter and set a reasonable deadline for a written response. Make a photocopy of the letter and send the original by certified mail, return receipt requested. When the green return receipt card comes back, please send me a copy of the card along with a copy of the letter and of any response that you receive.

Kindly provide the information and/or documentation requested above by June 15, 1999. If nothing further is received from you by that date, your complaint will be dismissed without further notice to you as lacking sufficient factual foundation upon which to meet our burden of proof.

Mr. John Moore
June 1, 1999
Page 3

Thank you for your cooperation.

Very truly yours,

Barbara S. Rosenberg
Disciplinary Counsel

BSR:kad

Enclosures

2

John Moore, DD-9449
P. O. Box 244
Graterford, Pa 19426

January 7, 1999

Marcia Lieberman, Esq.
1635 Market St., 16th Fl.
Phila., Pa 19103-2217

RE: Com. v. John Moore, CP#9802-0141, 0106

Dear Ms. Lieberman:

I am informing you that since my last letter to you (October
5, 1998) concerning my problem with Mr. Tinari nothing has
changed. Mr. Tinari contacted me by letter stating that someone
in my family could come in and pick up my discovery. Shortly
thereafter, my mother took off from work and made an appointment
with Mr. Tinari for that sole purpose; however, Mr. Tinari did
not stick to his committment.

As of now, I have been unsuccessful in obtaining a copy of the
discovery and my witnesses have not been interviewed for this
matter from the appointed counsel, Nino Tinari. The testimony
of my witnesses are essential to my case (my innocense).

Also, Mr. Tinari, has expressed to me in his letter that I can
call him collect. I was unsuccessful in doing so, because his
phone number does not take collect calls. Furthermore, Mr. Tinari
has not been to the prison to see me to disacussed my defense.

Once again, I truly believe that Mr. Tinari can provide adequate
representation for me. My life is on the line, with out these
documents and witnesses neither myself nor Mr. Tinari have a
chance for properly preparing for trial. I am hoping that you
can assist me in gaining these documents.

Any assistance given to this matter will be greatly appreciated.
I look forward to hearing from you soon. Thank for your time
and consideration. Take care.

Sincerely,

John Moore
John Moore

J. S07008/04

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| Appellee | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN MOORE, | : | |
| Appellant | : | No. 311 EDA 2003 |

Appeal from the Order Entered December 20, 2002, in the
Court of Common Pleas of Philadelphia County, Criminal
Division, at No. 9802-0106, 0141.

BEFORE: BOWES, GANTMAN, JJ., and McEWEN, P.J.E.

**FILED AUGUST 27, 2004**

**DISSENTING STATEMENT BY McEWEN, P.J.E.:**

While the Memorandum of the Majority reflects a careful analysis and
provides a persuasive expression of rationale, I am compelled to a differing
position.

Appellant, following the exhaustion of his remedies on direct appeal,
filed a petition for relief under the Pennsylvania Post Conviction Relief Act,
42 Pa.C.S. §§ 9541–9546, which initiated the proceedings that culminated in
the present appeal. Although counsel was appointed to assist appellant, that
attorney filed a "no merit" letter pursuant to **Commonwealth v. Turner**,
518 Pa. 491, 544 A.2d 927 (1988), and **Commonwealth v. Finley**, 550
A.2d 213 (Pa.Super. 1988), and the trial court granted counsel permission to
withdraw. Appellant, himself, was thus obliged to file this appeal and he
now, by necessity, appears *pro se*. Appellant, in his brief, claims, *inter alia*,
that his trial attorney failed to interview and present a witness who would
have contradicted the Commonwealth's key witness on the question of

appellant's presence at the scene of the crime, and that this failure constituted ineffective assistance of counsel. The trial court, finding no arguable merit to any of appellant's claims, did not conduct an evidentiary hearing, dismissed the petition of appellant, and permitted appointed PCRA counsel to withdraw.

Although the trial court's decision may ultimately prove to be correct, since there was no evidentiary hearing, I am unable to accept the implicit conclusion of the trial court that appellant was afforded a full opportunity to develop a record in this case.[1] I would, therefore, reverse the order of the

---

[1] It follows, of course, that I am unable to agree that the trial court was correct in permitting appointed counsel to withdraw. Thus, on remand I would direct the trial court to appoint new counsel. In *Commonwealth v. Hampton*, 718 A.2d 1250 (Pa.Super. 1998), this Court in an Opinion by our esteemed colleague Judge Justin M. Johnson, emphatically stated the rule that "every post-conviction litigant is entitled to 'at least one *meaningful* opportunity to have … issues reviewed, at least in the context of an ineffectiveness claim.'" *Id.* at 1252 (citations omitted), *quoted in Commonwealth v. Karanicolas*, 836 A.2d 940, 945-946 (Pa.Super. 2003). Judge Johnson further opined:

> "When appointed counsel fails to amend an inarticulately drafted pro se [post-conviction] petition, or fails otherwise to participate meaningfully, this court will conclude that the proceedings were, for all practical purposes, *uncounselled and in violation of the representation requirement … ." [Commonwealth v.] Ollie, supra,* 450 A.2d at 1028 *quoting Commonwealth v. Sangricco,* 490 Pa. 126, 415 A.2d 65 (1980) (internal quotation marks omitted).

*Commonwealth v. Hampton, supra,* 718 A.2d at 1253 (emphasis supplied). This right to representation exists "throughout the post-conviction proceedings, including any appeal from disposition of the petition

- 2 -

trial court and remand this case for a hearing on the issue of whether trial

counsel was ineffective for failing to present the impeachment evidence.

---

for post conviction relief." *Commonwealth v. Karanicolas, supra*, 836
A.2d at 946 (citation omitted).

In the instant case, appointed counsel neither amended nor supplemented
the *pro se* petition of appellant. Nor does the record support a conclusion
that PCRA counsel "participated meaningfully" when she failed to seek an
evidentiary hearing and subpoena witnesses, including the one witness who
could have supported appellant's defense. I, therefore, would reverse the
order of the trial court, and remand this case for appointment of new
counsel to assist appellant in this collateral attack.

- 3 -

The Commonwealth committed no misconduct in presenting Mr. Lamb as a witness. This Court considered Mr. Lab's credibility in determining the facts of the case and convicting petitioner of second degree murder. At the time that this Court rendered its verdict, it stated, " . . . I did charge myself with respect to the quality of the testimony presented by Mr. Lamb who is a polluted source and I took that very seriously into consideration. I did not believe everything that Mr. Lamb said but I think ✝ that he did testify in a manner which minimized his own participation (N.T. 5/9/00, p.127).

In this Court's opinion, the Court further addressed this issue acknowledging that there were conflicting versions of the events of that night. This court, however, concluded that the testimony as a whole showed that petitioner and Mr. Lam set out to rob the victims and both men not only participated in the robbery, but they both fired their guns. Consequently, a conspiracy was established and petitioner was responsible for the acts of his co-conspirator (12/27/00 Opinion, p. 8).

In communication with present counsel, petitioner has alleged that trial counsel was ineffective for failing to present the testimony of Laprisia Jessup, the mother of his child, and the sister of James Lamb, to testify that James Lamb had told her that he wasn't sure if petitioner was present with him at the time of the incident.

To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the petitioner must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced petitioner. Commonwealth v. Fletcher, 561 Pa. 266, 291, 750 A.2d 261, 291 (2000). Thus, trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the petitioner that the witness's testimony would have been helpful to the defense. Commonwealth v. Auker, 545 Pa. 521, 548, 681 A.2d 1305, 1319 (1996). "A failure to call a witness is not per se ineffective assistance of counsel for such decision usually involves matters of trial strategy."

Present counsel has spoken with Ms. Jessup who indicated that she was present at petitioner's trial but was not permitted into the courtroom because she had her young child with her. She does not remember speaking with defense counsel. Ms. Jessup has informed counsel that she did have a conversation with Mr. Lamb shortly after his arrest. During that conversation, James Lamb told her that he did not remember who was present with him during the robbery.

Ms. Jessup, however, expressed her reluctance to sign an affidavit memorializing this conversation. She also expressed reluctance at testifying at a hearing. Ms. Jessup

6

## AFFIDAVIT OF JAMES LAMB
## PURSUANT TO TITLE 18 PA.C.S 4904

I, JAMES LAMB 7-4-81, DO HEREBY DECLARE AND VERIFY THAT THE
STATEMENT SET FORTH HERE AND BELOW ARE TRUE AND CORRECT TO THE
BEST OF MY KNOWLEDGE, INORMATION, AND BELIEF.

1. ON MAY 8,2000 I WAS NOT TELLING THE TRUTH WHEN I TESTIFIED
   THAT JOHN MOORE WAS WITH ME DURING THE ROBBERY. HE WAS
   NOT WITH ME.

2. ON JUNE 1997 WHEN I WAS IN THE DETECTIVES OFFICE, I TOLD
   THEM THAT A FRIEND I USED TO HANG WITH IN THE NEIGHBORHOOD
   NAME NEWTON WAS WITH ME, BUT THEY KEPT POINTING TO A
   PICTURE OF JOHN SAYING WHAT ABOUT HIM. THEN THEY TOLD
   ME IF I DIDNT SAY IT WAS JOHN THAN THEY WAS GOING TO
   MAKE SURE I GO ON DEATH ROW. THAT'S WHEN I LIED AND SAID
   JOHN WAS THERE.

3. JULY 7,1996 AT AROUND 12:00 a.m. ME AND MY FRIEND NEWTON
   WENT DOWN 9TH STREET TO ROB SOMEBODY. WHEN WE GOT TO
   THE CHINESE STORE WE SAW JOHN AND WE STARTED CRACKING
   JOKES ON HIM AND THEN HE LEFT WHEN HE GOT HIS FOOD. AFTER
   JOHN LEFT, A COUPLE OF MINUTES LATER I WENT OUTSIDE AND
   NEWTON WAS ROBBING THE DUDES, THAT'S WHEN I HELPED HIM.
   JOHN WASN'T THERE HE HAD BEEN LEFT.

I, JAMES LAMB, DO STATE THAT I UNDERSTAND THAT ANY FALSE
STATEMENTS SET FORTH IN DECLARATION ABOVE WILL SUBJECT ME TO
THE PENALTIES OF PORJURY PURSUANT TO TITLE 18 PA.C.S. 4904

JAMES LAMB

DATE: 4 / 14 /2004



JUN — 9 2004

## IN THE COURT OF COMMON PLEAS
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA Criminal Appeals Unit First Judicial District of PA
### CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL DIVISION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | March Term, 1992 |
| ANTHONY G. FLETCHER | : | NOS. 6001, 6002, 6003 and |
| | | 6004 |

### OPINION

YOUNGE. J.

Before this Court is a petition under the Post-Conviction Relief Act (42 Pa.C.S. §

9542, et seq.), which was assigned to this court following the death of the Honorable

Robert A. Latrone and the elevation of the Honorable Legrome Davis to the United States

District Court for the Eastern District of Pennsylvania.

I.     Procedural Background

The relevant procedural history of this case is as follows: In January 1993,

Anthony Fletcher was convicted of murder in the first degree and possession of an

instrument of crime by a jury before the Honorable Judge Latrone. Following a penalty

hearing, the jury determined that two aggravating circumstances existed and imposed a

sentence of death for the murder conviction, despite finding the existence of some

mitigating evidence. The death sentence was formally imposed in February 1993.

Fletcher's conviction was affirmed by the Pennsylvania Supreme Court in March 2000

and certiorari was denied by the United States Supreme Court in December 2000. On

January 18, 2001, Mr. Fletcher filed a pro se PCRA petition. Mr. Fletcher's present

counsel filed an amended petition December 3, 2001.

At his initial trial, Anthony Fletcher was represented by court-appointed counsel

Stephen Patrizio, Esquire. Fletcher was represented by then attorney, now the Honorable

Willis J. Berry for his post-trial motions. Fletcher was represented by court-appointed

counsel, John Cotter, Esquire on direct appeal. Fletcher was represented by Jerome J.

Shestack, Esquire for his Emergency Motion for Stay of Execution and was represented

by Joseph Crawford, Esquire , Jarett Decker, Esquire and Lindsay Pockers, Esquire for

the PCRA Evidentiary Hearing.

In his PCRA petition, Anthony Fletcher alleged twenty (20) violations upon

which relief should be granted. In September 2003, this court granted Fletcher's request

for an Evidentiary Hearing but permitted argument on only 5 of the 20 alleged grounds,

including:

1. Trial counsel failed to present compelling exculpatory testimony from Dr. Hydow Park, the pathologist who performed the decedent's autopsy and also failed to expose a critical error by the testifying pathologist, Dr. Hood;

2. The police in this case lost or withheld critical physical evidence regarding the decedent's clothing, and trial counsel was ineffective for failing to investigate and raise this issue of deficient police work at trial;

3. Trial counsel was ineffective for failing to investigate, develop, and present significant mitigating evidence, including mental health evidence;

4. Trial counsel was ineffective for failing to object where the jury found that the aggravating circumstance of "grave risk of death" to a person other than the victim existed based upon improperly admitted evidence, unconstitutionally broad jury instructions and improper argument by the prosecution; and

5. Trial counsel was ineffective for failing to object to the trial court's instruction regarding the possibility of parole.

Of the five issues heard by this court at the Evidentiary Hearing, issues one and two requested relief in the form of a new trial. The third, fourth and fifth issues requested relief in the form of a new penalty phase hearing. Because of the courts decision on the first issue, no decision was reached on issues three, four and five. With respect to the second issue, the court flatly rejected this claim. However, this court granted relief on the first issue: the failure by trial counsel to call Dr. Park, the pathologist who performed the autopsy and failure by trial counsel to expose a critical error by Dr. Hood. Based on a finding that this issue warranted relief, in accordance with Pa. R. Crim. Proc. 909(b)(3), this court issued an order vacating the sentence of death and granting Mr. Fletcher a new trial. The Commonwealth of Pennsylvania appeals this decision, and presents three questions for review: (1) whether the claim on which relief was granted had been waived; (2) whether defendant proved actual prejudice; and, (3) whether defendant proved that there was no reasonable basis for trial counsel's decision not to attempt to present evidence from Dr. Park.

II.     Factual History

The relevant facts of this case are as follows: In the early morning hours of March 2, 1992, Anthony Fletcher shot Vaughn Christopher on a Philadelphia street corner outside of a drug house. The motive and sequence of events leading up to the shooting were the only issues for determination at trial. While the defendant's statement, introduced by the Commonwealth, alleged the shooting occurred in self-defense following a struggle, the Commonwealth introduced the eye witness testimony of Natalie Grant, who alleged that Fletcher demanded money from Christopher, shot the victim execution-style, and subsequently fled the scene. During the guilt phase of trial, another

eyewitness, Ronald Williams, recanted his eyewitness account provided to the police days after the incident and denied having provided police with a statement implicating Anthony Fletcher. His initial statement was therefore admitted as substantive evidence. In that statement, Ronald Williams gave a similar version of events as Grant. The Commonwealth also introduced Anthony Fletcher's statement to police to show that Fletcher was responsible for the shooting death of Christopher. In Fletcher's statement to police, taken approximately a week after the shooting, Fletcher admitted that he committed the shooting, but claimed that the shooting occurred in self-defense after he and Christopher struggled following an argument.

In order to disprove self-defense on the part of the defendant, the Commonwealth presented evidence from the Office of the Medical Examiner in the form of testimony by Dr. Ian Hood. Dr. Hood testified that no evidence of a struggle existed despite a large bruise apparent on the chest of Christopher. Dr. Hood further testified that a bullet lodged in Christopher's chest probably caused the bruise, despite defense counsel's contention that Christopher could have received the bruise during the struggle Fletcher mentioned in his statement. When questioned as to whether the bruise could have been inflicted during the alleged struggle between Fletcher and Christopher, Dr. Hood stated at trial: "I don't think it's probable that the victim had his hands or wrists around the barrel or close to the barrel of the gun when it was fired...I cannot say from the physical evidence that there was any evidence of struggling on the part of the decedent, but it doesn't mean it didn't occur." See N.T., January 26, 1993, Page 43-44. It is important to note that Dr. Hood did not perform the autopsy on the body of the decent or prepare the resulting report. In his testimony before the jury he merely presented his interpretation of

the autopsy report prepared by Dr. Hydow Park. Based solely upon his interpretation of the autopsy report, Dr. Hood testified that the bruise found on the decedent's chest was more than likely caused by a bullet and no evidence of a struggle existed to indicate self-defense.

At the Evidentiary Hearing, Dr. Ian Hood testified that for the first time in his twenty-year career as medical examiner, he felt the need to retract testimony he had given at trial. See Evidentiary Hearing Notes, 9/5/03, p. 53. Dr. Hood stated that he had made a mistake in interpreting the autopsy report of Dr. Park. He further testified that he could no longer say whether evidence of a struggle existed. Dr. Hydow Park also testified at the Evidentiary Hearing and stated that it was unclear whether evidence of a struggle existed, but that it was unlikely that the bruise was caused by the bullet. See Evidentiary Hearing Notes, 9/4/03, p. 188-191.

III. Discussion

It is important to note that this is a capital case, and that, as noted in Ford v. Wainwright, 477 U.S. 399, 411 (1986), "death is different." For this reason, this court's analysis of the issues presented in this case considers the interests of justice in equal measure with the applicable law. Anthony Fletcher was sentenced to death primarily based upon evidence that has since been retracted by the Office of the Medical Examiner.[1] Even the Commonwealth, in an attempt to bolster its theory of the execution-style shooting, reinforced the lack of evidence of a struggle primarily based upon the testimony of Dr. Hood. During closing arguments, the Commonwealth stated: "[t]he

---

[1] Eye-witness testimony was also provided by Natalie Grant, an admitted crack addict who was a fugitive on six outstanding bench warrants when she first gave her statement accusing Fletcher, over three weeks after the shooting occurred. Her credibility as an eyewitness was clearly an issue. It is obvious that Dr. Hood's claim that no physical evidence of a struggle existed was essential to the jury's finding the shooting did not occur in self-defense. See N.T. 1/22/93 at p. 112-114.

Medical Examiner is absolutely important to this case, because it refutes the defendant's version of what happened", " and, "Dr. Hood said no, there was no evidence of a struggle here, no bruising or anything..." See N.T. 1/27/1993, p. 149, 156. The importance of what is at stake in this capital case is not lost on this court.

In his PCRA Petition, Anthony Fletcher claims that his trial and appellate counsel were ineffective for failing to present the expert testimony of Dr. Hydow Park, the pathologist who performed the decedent's autopsy and for failing to expose the critical error by the testifying pathologist, Dr. Ian Hood. To establish an Ineffective Assistance of Counsel claim, the Defendant must prove by a preponderance of the evidence that: (1) the underlying claim had merit, (2) that counsel's performance had no reasonable basis, and (3) that counsel's ineffectiveness worked to his detriment. Commonwealth v. Copenhefer, 553 Pa. 285, 300 (1998). See also, Commonwealth v. Stevens, 559 Pa. 171, 180 (1999) (stating trial counsel's action must have "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place").

To establish a claim for failure to present expert testimony, the defendant must allege that (1) the witness existed, (2) the witness was available, and (3) the witness was willing to testify for the defense about the facts presented at the PCRA hearing, (4) trial counsel knew of or should have known of the existence of the witness, and (5) the absence of the testimony of such witness was so prejudicial as to have denied him a fair trial. See Commonwealth v. Smith, 544 Pa. 219, 237-38 (1996); Commonwealth v. Holloway, 524 Pa. 342, 351 (1990). Trial counsel need not call an expert witness where counsel is able to effectively cross-examine the Commonwealth's expert and elicit helpful testimony. See Commonwealth v. Williams, 537 Pa. 1, 29 (1994):

Commonwealth v. Showers. 2001 Pa. Super 242, 782 A.2d 1010, 1021 (2001). Finally,
Defendant must show there is a reasonable probability that the outcome of the trial would
have been different had the expert been presented by the defense. See Commonwealth v.
Showers, 2001 Pa. Super. 242, 782 A.2d 1010, 1021 (2001).

Anthony Fletcher, through his counsel, has met this burden and proven by a
preponderance of the evidence that prior counsel was ineffective for failing to present the
expert testimony of Dr. Hydow Park. Dr. Hydow Park (who obviously existed) was
available and willing to testify at trial. Dr. Park testified at the Evidentiary Hearing that
he was in the country and available to testify in the trial of Anthony Fletcher on January
19th and 20th, 1993. See PCRA Transcript, Sept. 4, 2003, p: 166-170. Trial counsel knew
or should have known of the existence of Dr. Park and the evidence Dr. Park testified to
at the Evidentiary Hearing. Dr. Park signed the autopsy report received by trial counsel,
who should have known the evidence surrounding the alleged struggled was critical to
the defense's case. The absence of testimony from Dr. Park was obviously prejudicial to
the defense's case. Here, the jury relied on the eyewitness testimony of an eyewitness,
Ms. Natalie Grant to find beyond a reasonable doubt that Fletcher was guilty of an
execution-style shooting. Further, Dr. Hood erroneously testified at the trial that there
was no evidence of a struggle, ruling out the possibility of self-defense. Since Dr. Park,
who actually performed the autopsy would have stated that he could not rule out a
struggle based on his medical findings concerning the victim, there is a reasonable
probability that the jury would not have convicted Mr. Fletcher had they heard the
testimony of Dr. Park.   Finally, trial counsel was not able to effectively cross-examine
Dr. Hood, the substitute expert regarding these issues since Dr. Hood was not even aware

7

that his own conclusions were erroneous. See Evidentiary Hearing Transcript, 9/5/03, p.
53-63. Accordingly, defense counsel has met his burden showing trial counsel was
ineffective for failing to call Dr. Hydow Park.

Mr. Fletcher has also met his burden with regards to an Ineffective Assistance of
Counsel claim. First, the underlying claim clearly has merit. The issue of whether
evidence of self-defense existed went to the heart of the defense's theory of the case, and
was relevant to rebut the Commonwealth's allegations that no self-defense evidence
existed. See Evidentiary Hearing Transcript, 9/4/03, p. 69-70. Second, trial counsel
admitted he had no reasonable basis for failing to call an expert to support his own theory
of the case or to rebut the Commonwealth's evidence. See Id at p. 71-73. Finally, trial
counsel's failure to call Dr. Park clearly worked to Mr. Fletcher's detriment, since the
jury obviously believed the Commonwealth's evidence that no evidence of a struggle
existed, and therefore, self-defense was not likely.

In its appeal, the Commonwealth presents three questions for review: (1) whether
the claim on which relief was granted had been waived; (2) whether defendant proved
actual prejudice; and, (3) whether defendant proved that there was no reasonable basis for
trial counsel's decision not to attempt to present evidence from Dr. Park. Those
questions are addressed as follows:

A.    Whether the claim on which relief was granted had been waived

· First, it is important to note that this is a capital case where a death sentence has
been imposed. It is critical to "the interest of justice" and fairness to only impose such a
sentence where the evidence is constitutionally presented and a fact finder with accurate
and reliable information has decided such a punishment is merited. To deny this PCRA

petition on a "technicality" or procedural error in such questionable circumstances would constitute a miscarriage of justice.

However, addressing this claim of waiver on its face, this court finds that although this issue has not been raised previously by trial or appellate counsel, this Ineffective Assistance of Counsel claim has not been waived, consistent with Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002). The Commonwealth alleges that this claim has been waived since the defendant, on post-conviction motions and direct appeal, "was free to raise any claims he identified – including those he now contends should have been raised." Commonwealth Post-Hearing Memorandum, p. 2-3. The Commonwealth argues that since Fletcher elected to represent himself at his post-conviction motions, and the current petition alleges all prior counsel was ineffective, he should not now be allowed to allege his own ineffectiveness on appeal to the PCRA Court.[2] See Id.

In Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002), the Supreme Court of Pennsylvania addressed this issue at length as to when an Ineffective Assistance of Counsel claim should be brought. The court stated:

> We now hold that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review. Thus, any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity. Our holding today does not alter the waiver provision of the PCRA, 42 Pa. C.S.§ 9544(b); it merely alters that time when a claim will be considered waived. Simply stated, a claim raising trial counsel ineffectiveness will no longer be considered waived because new counsel on direct appeal did not raise a claim related to prior counsel's ineffectiveness.

---

[2] There is some discrepancy as to whether Fletcher represented himself at his post-trial motions or was represented by the Honorable Willis Berry. Despite this, under Pennsylvania case law, this is not relevant since this is the proper forum for these issues to be raised, regardless of who represented Fletcher.

Grant, 572 Pa. at 67, 813 A.2d 738 (2002). See also, Commonwealth v. Mitchell, 839

A.2d 2002, 207 (Pa. 2003); Commonwealth v. Johnson, 838 A.2d 663, 673 (Pa. 2003);

Commonwealth v. Overby, 836 A.2d 20, 22 (Pa. 2003). The Supreme Court of

Pennsylvania has indicated that the PCRA petition is the appropriate time to raise claims

of Ineffective Assistance of Counsel. In this case, the defendant alleged a layered claim

of ineffective assistance of his trial and appellate counsel. This is proper and Fletcher's

claims are not waived. See Grant, 572 Pa. at 59-60. See also, Commonwealth v. Craig

Williams, 566 Pa. 553, 782 A.2d 517, 527 (2001); Commonwealth v. Marrero, 561 Pa.

100, 748 A.2d 202, 203 (200).

      ·    Regarding the Commonwealth's claim that Fletcher's pro se filing of post-

conviction motions precludes this claim of ineffective assistance of counsel, this court

finds that this claim also fails. While it is true that a defendant may not claim his own

ineffectiveness, See Commonwealth v. Tilley, 566 Pa. 312, 780 A.2d 649, 653 (2001),

this court does not believe the filing of post-conviction motions constitute the type of

self-representation that precludes future claims of ineffective counsel. In this case,

Fletcher filed his post-conviction motions pro se, and was then represented by then

attorney, now the Honorable Willis Berry on those motions. This is clearly

distinguishable from those cases where a defendant attempts to represent himself at trial

or a hearing and later is precluded from claiming his own ineffectiveness at that trial or

hearing. See, e.g. Id. See also, Commonwealth v. Auker, 545 Pa. 521, 681 A.2.d 1305,

1319 (1996). Under the facts of this case, Fletcher's pro se filing of his post-conviction

motions did not constitute a waiver of this ineffective assistance of counsel claim.

10

## B. Whether defendant proved actual prejudice

The Commonwealth alleges that Fletcher has failed to prove actual prejudice
regarding the expert testimony of Dr. Hood and Dr. Park . This, too, is without merit. In
this case, the sole issues at trial were Fletcher's motive and the events leading up to the
shooting of Christopher Vaughn. While defense counsel alleged self-defense, the
Commonwealth attempted to establish through eyewitness and expert medical testimony
that the shooting did not occur in self-defense.[3] Dr. Hood's testimony established a lack
of evidence of a struggle based on scientific evidence and analysis and completely ruled
out the defense's version of events. Further, the Commonwealth re-emphasized the lack
of evidence of a struggle in its closing arguments. The Commonwealth is therefore hard-
pressed to allege the presentation of this faulty evidence of Dr. Hood and lack of
evidence by Dr. Park did not constitute prejudice to the defense. In this capital case, the
defense was unable to effectively cross-examine the medical examiner and unable to
present a proper defense without the accurate assessment of the autopsy report of Dr.
Park. Having heard the retraction of Dr. Hood's trial testimony and his subsequent
opinions, and the evidence Dr. Park would have presented at trial, this court is convinced
that this defendant was in fact prejudiced by his trial and appellate counsel's failure to
present the expert testimony of Dr. Park, a known expert witness who could have given
an accurate assessment of the autopsy.

## C.  Whether defendant proved that there was no reasonable basis for trial counsel's decision not to attempt to present evidence from Dr. Park

---

[3] It is important to note that self-defense only became an issue because the Commonwealth made it an
issue. The Commonwealth introduced the defendant's statement in its case in chief. It therefore became
the Commonwealth's burden of disproving self-defense and it attempted to do so using the expert
testimony at issue here.

Regarding this claim, trial counsel, Stephen P. Patrizio, Esquire testified at the

Evidentiary Hearing. Mr. Patrizio testified that he did not consider interviewing Dr.

Hydow Park and had no strategic reason for failing to call Dr. Park as a witness.

Evidentiary Hearing Notes, 9/4/03, p. 71-73. This court has no reason to believe Mr.

Patrizio was not completely honest and forthright with this court. This court believes him

when he testified he did not focus his attention on the autopsy report or the possibility of

error by Dr. Hood. The Commonwealth's claim has no merit.

IV.    **Conclusion**

Based on the previous discussion, this court grants defendant's petition for post-

conviction relief, in the form of a new trial.

BY THE COURT:

THE HONORABLE JOHN M. YOUNGE

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS**
**JUDGE'S CHAMBERS**



**STEVEN R. GEROFF**
**JUDGE**

1414 CRIMINAL JUSTICE CENTER
1301 FILBERT STREET
PHILADELPHIA, PA 19107
(215) 683-7139
(215) FAX: 683-7141

March 8, 2005

John Moore DD9449
PO Box 244
Graterford, PA 19426

RE: Commonwealth v. John Moore
CP 9802-0141
Motion for Clarification of Order dated February 15, 2005

Dear Mr. Moore:

Your PCRA petition was dismissed because your case is on appeal in the Supreme
Court of Pennsylvania. If the appeal is decided adversely to you, you may re-file your petition.

Very truly yours,

W. Wallace Dyer, Jr.
Law Clerk

WWD/sd

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| **JOHN MOORE** | , | : | **NO. 2:05-cv-02796-LP** |
| | **Petitioner** | : | |
| **v.** | | : | |
| | | : | |
| **DAVID DIGUGLIELMO, et al.** | | : | |
| | **Respondents** | : | |

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS

1. On May 20, 2000, after a non-jury trial before the Honorable Steven R. Geroff of the Court of Common Pleas of Philadelphia County, Petitioner was found guilty of murder in the second degree, three counts of robbery (felonies of the first degree), possession of the instrument of crime and criminal conspiracy. Petitioner was represented at trial by represented by Nino Tinari, Esquire of Philadelphia.

2. Petitioner was adjudicated guilty on May 20, 2000 after a four day bench trial, in Docket No 98-02-106.

3. Petitioner was sentenced to life imprisonment on the murder count and three concurrent sentences of tent to twenty years for te three robberies. Concurrent and underlapping sentences were imposed on the PIC and conspiracy counts.

1

4. That, Petitioner subsequently appealed the judgment sentence to the Superior Court of Mr. Tinari represented Moore on appeal as well. The judgment of sentence was affirmed by panel of the Superior Court in an unpublished memorandum decision dated July 17, 2001. Petitioner subsequently filed a Petition for Allowance of Appeal with the Supreme Court Pennsylvania which denied the Petition for Allowance of Appeal in a per curiam dated November 21, 2001.

5. Petitioner timely filed his first PCRA petition on June 10, 2002. Barbara McDermott, Esquire was appointed to represent Petitioner. Ms. McDermott filed a Finley letter ("no merit") on November 15, 2002. This Court sent Petitioner a 907 Notice on November18,2002. Thereafter, in an order dated December 20, 2002 this Court dismissed the petition without a hearing.

6. On January 9, 2003 Petitioner filed a Notice of Appeal with the Clerk of Quarter Sessions. That appeal was subsequently docketed in the Superior Court of Pennsylvania on January 23, 2003 as 211 EDA 2003.

7. The Superior Court of Pennsylvania affirmed the PCRA Court's dismissal of Petitioner's Post Conviction Petition for Relief in an unpublished Memorandum Opinion (McEwen, P.J.E., Bowes and Gantman, JJ's) dated August 27, 2004.

8 Petitioner subsequently filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania (451 EAL 2004). That Petition was denied in a per curiam order dated April 12, 2005.

9. While his Petition for Allowance of Appeal was pending, Petitioner filed his second PCRA petition which was dismissed by the state Court on January 14, 2005 because there was an

2

appeal pending. Thereafter, on May 17, 2005 Petitioner re-filed this second Petition for Post Conviction Relief. Present counsel was thereafter appointed..

10. In his Second PCRA Petitioner, as amended by counsel, Petitioner raised the following grounds for relief:

           a.     After discovered evidence, specifically, an affidavit from the co-operating co-defendant, James Lamb, who was the only witness at the trial to identify Petitioner as a participant in the crimes for which he was convicted and who now recants his identification of Petitioner and his testimony given under oath to this court.

           b.     Testimony of Brian Scott who, while a prisoner awaiting trial in the Philadelphia County Prisons became friendly with James Lamb and to whom James Lamb admitted that he was going to falsely implicate Petitioner in the crime for which Petitioner was ultimately convicted.

           c.     Actual innocence of the crimes for which he has been convicted.

11. The Commonwealth filed a Motion to Dismiss in which it argued, inter alia, that the Second PCRA Petition was untimely. The PCRA Court, (Geroff, J.) granted the Commonwealth's Motion to Dismiss without holding an evidentiary hearing on Petitioner's allegations in an order dated September 19, 2006. Although he rejected the Commonwealth's assertion that the Petition was untimely, he dismissed the Petition on the ground that the proffered testimony from the co-defendant, James Lamb, was incredible.

12. Petitioner filed a direct appeal to the Superior Court of Pennsylvania (2683 EDA

3

2006), which affirmed judgment of sentence by order and memorandum opinion dated June 28, 2007.

13. Petitioner had previously filed a Petition for Writ of Habeas Corpus with this Court on June 10, 2005 after which the Court Clerk furnished him with the proper forms and the revised forms were returned and filed with this Court on August 15, 2005. Thereafter, on August 31, 2005, the matter was referred to Magistrate Judge Arnold C. Rapoport for a report and recommendation.

14. Thereafter, on September 15, 2005 Magistrate Judge Rapoport issued a report and recommendation in which he recommended that the instant matter be stayed so as to allow Petitioner to exhaust his state remedies. The Court entered an order staying proceedings on December 30, 2005 in which the matter was placed in civil suspense so as to allow Petitioner to exhaust his state remedies.

15. Thereafter, on July 23, 2007, Petitioner filed a Motion to Lift Stay in which he asked that the matter be removed from civil suspense. Petitioner also asked that counsel be appointed and present counsel was thereafter appointed on November 16, 2007.

16. The Court entered an order lifting the stay and transferring the matter from the civil suspense file to the current docket for final disposition on November 9, 2007/ Thereafter, present

4

counsel sought and was granted two extensions within which to file an Amended Petition for

Writ of Habeas Corpus and a Brief in Support of the Petition for Writ of Habeas Corpus.

17. Petitioner brings this Petition for Writ of Habeas Corpus, asserting the following

grounds for relief:

> A. Ground One: Deprivation of the Right To Effective
> Assistance of Counsel, As Guaranteed by the Sixth
> and Fourteenth Amendments to the Constitution of
> the United States.

Petitioner's trial counsel was ineffective for failing properly investigate the case

and for proceeding to trial after advising petitioner to plead guilty while discounting without

investigation Petitioner's claims of innocence. But for this incompetent advice, Petitioner would

not have ben convicted.. Petitioner's direct appeal counsel was his trial counsel and was thus

unable to raise his own ineffectiveness and Petitioner was therefore deprived of the opportunity

to raise the ineffectiveness of trial counsel as an issue on his direct appeal. Petitioner's prior

PCRA counsel was likewise ineffective for failing to raise the ineffectiveness of trial counsel and

for, instead, filing a Finley or "no merit" letter. The Pennsylvania Courts' conclusions to the

contrary are based on objectively unreasonable factual determinations given the record, and

constitute unreasonable applications of controlling federal law.

5

By way of additional factual support for his claim, Petitioner respectfully
incorporates by reference those facts set forth in his Brief in Support of Amended Petition for
Writ of Habeas Corpus, which is being filed contemporaneously herewith.

> B.  Ground Two: Deprivation of Rights Under the Due
> Process Clause.

Petitioner's rights to due process were violated by the trial court's failure to

conduct an evidentiary hearing inquiry into Petitioner's claims, as raised in his PCRA Petition

and in the Amended Petition filed by counsel, in light of the available and proffered evidence

concerning Petitioner's innocence. Petitioner attached to his second PCRA Petition an affidavit

from his co-defendant at trial, James Lamb, in which Lamb asserted that he had lied in his

testimony at trial and that, in fact, Petitioner did not participate in the robberies and murders for

which he was convicted.  Instead, the PRCA Court held that the Petition was untimely. Petitioner

asserts that the PCRA court erred and that its dismissal of his Petition was wrong on both the

facts and the law. Moreover, the Pennsylvania Courts' conclusions to the contrary are based on

objectively unreasonable factual determinations given the record, and constitute unreasonable

applications of controlling federal law.

> C.  Ground Three. Actual Innocence.

6

Petitioner asserts that based on the proffered testimony and the affidavit of his co-
defendant, James Lamb, and on the paucity of evidence produced at his trial that
he is actually innocent of the charges for which he was convicted.

By way of additional factual support for his claim, Petitioner respectfully

incorporates by reference those facts set forth in his Brief in Support of Amended Petition for

Writ of Habeas Corpus, which is being filed contemporaneously herewith.

18. The grounds stated above were substantially presented in the Court of

Common Pleas of Philadelphia County and in the Superior Court of Pennsylvania in connection

with Petitioner's aforementioned Motion for Post Conviction Collateral Relief.

19. The instant Petition is the only petition now pending with respect to this

conviction.

20. Petitioner was represented at his arraignment, trial, sentencing and direct

appeal by Nino V. Tinari. Esquire, 123 S. Broad Street, Suite 1970 Philadelphia, PA 19106.

Petitioner's appointed counsel in his first PCRA proceeding was court-appoint counsel, Barbara

A. McDermott, Esquire1515 Market Street, Suite 1915, Philadelphia, PA 19107. After Ms.

McDermott was permitted to withdraw, Petitioner represented himself *pro se* in both the

Superior Court and the Supreme Court of the Commonwealth of Pennsylvania. Petitioner was

represented in his second PCRA and on the appeal of the PCRA Court's dismissal of his second

7

PCRA Petition by undersigned counsel who was appointed by the Court of Common Pleas of

Philadelphia County

   21. Petitioner was sentenced on multiple counts as set forth above and is

currently therefore serving a sentence.

   22. Petitioner does not have any future sentence to serve after completing the

sentence imposed by the judgment under attack.

   I declare under penalty of perjury that the foregoing is true and correct, to the best

of my knowledge, information and belief.


          Respectfully submitted,

          _bcw 2127_____

_____ BARNABY C. WITTELS, ESQUIRE

          Attorney for Petitioner, John Moore

          LaCheen Dixon Wittels & Greenberg, LLP

          1429 Walnut Street

          Suite 1301

          Philadelphia, PA 19102

          (215) 735-5900

          (215) 561-1860 (facsimile)

          barnabyw@aol.com

8

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**JOHN MOORE**            :        **CIVIL ACTION**

   **v.**                                    :

**DAVID DIGUGLIELMO, et al.**    :        **05-2796**

## CERTIFICATE OF SERVICE

I hereby certify that I have, this date, served a copy of the foregoing Amended

Petition for Writ of Habeas Corpus, upon the following person by first class mail and by

electronic filing:

Susan E. Affronti, Esquire
Assistant District Attorney
Federal Litigation Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107-3499

Dated: 3/3/08

                       bcw 2127
                       Barnaby C. Wittels, Esquire
                       LaCheen Dixon Wittels & Greenberg, LLP
                       1429 Walnut Street, Suite 1301
                       Philadelphia, PA 19102
                       215-735-5900 (voice)
                       215-561-1860 (fax)
                       barnabyw@aol.com
                       Attorney for Petitioner John Moore

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MOORE, | : CIVIL ACTION |
| | : |
| Petitioner, | : |
| | : |
| v. | : NO. 05-2796 |
| | : |
| DAVID DIGUGLIELMO, | : |
| et al., | : |
| | : |
| Respondents. | : |
| | : |

ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

John Moore has filed a Petition for writ of habeas corpus.
For the following reasons, I recommend that the Petition be
dismissed without an evidentiary hearing and with no certificate
of appealability issued.

### I.  FACTS AND PROCEDURAL HISTORY.[1]

On July 7, 1996, Moore and his associate James Lamb
conspired to rob drug buyers in an area of Philadelphia noted for
its drug trafficking activity.  They selected three victims, whom
they forced to lie face down in the street and pistol-whipped
them.  One of the victims, Sammy Cedano, resisted the attempt to
take his gold chain.  He was shot in the back and later died of
his wound.  Another victim, William Cintron, received permanent

---

[1]The facts of Moore's crimes are taken from the Pennsylvania
Superior Court's opinion deciding Moore's direct appeal.
Commonwealth v. Moore, No. 1601 EDA 2000 (Pa. Super. Ct. July 17,
2001) (Attached as Ex. A to Respondents' Response).

injuries from a gunshot wound as he fled from the robbers.

Moore was tried in a bench trial before Judge Steven R.
Geroff of the Philadelphia Court of Common Pleas. The trial
evidence included the testimony of James Lamb who, on the advice
of counsel, cooperated with police in exchange for a guilty plea
to third degree murder. The defense theory pursued by counsel
Nino Tinari, Esquire, was that Lamb shot Cedano, not Moore.
(Response at 18 citing N.T. 5/9/00 at 86.) Moore was found
guilty of one count each of second degree murder, criminal
conspiracy, and possessing an instrument of crime; two counts of
aggravated assault; and three counts of robbery. Moore received
a sentence of life imprisonment on the murder conviction and
concurrent terms of imprisonment on the other counts of
conviction.

On direct appeal, Moore preserved the following issues for
review: 1) the trial judge erred in failing to grant a mistrial
predicated on references to prior criminal conduct; 2) the
verdicts were contrary to the weight of the evidence; and 3) the
trial judge imposed an illegal sentence because the concurrent
terms imposed for the robbery conviction involving victim Cedano
should have merged with the second degree murder sentence. The
Superior Court affirmed the judgments of conviction, but vacated
the portion of sentence for the Cedano robbery, agreeing with

Moore that the sentences should have merged.[2]  The Pennsylvania

Supreme Court denied allowance of appeal on November 21, 2001.

Commonwealth v. Moore, 790 A.2d 1019 (Pa. 2001).

Moore filed his first petition pursuant to the Pennsylvania

Post Conviction Relief Act ("PCRA") on June 10, 2002.  He alleged

that trial counsel Tinari was ineffective for failing to file a

motion in limine to bar Lamb's testimony, by coercing Moore to

waive his right to a jury trial, by advising him not to testify,

and for failing to communicate with him prior to the trial.  He

also alleged that the prosecutor committed misconduct by using

perjured testimony and failing to correct the perjured testimony

of James Lamb.  (Response Ex. B.)

Barbara McDermott, Esquire was appointed to represent Moore

by Judge Geroff, but upon her review of the record, counsel

concluded there were no viable grounds to proceed and filed a

Finley letter with the court.  See Commonwealth v. Finley, 550

A.2d 213 (Pa. Super. Ct. 1988) (en banc) (describing the

requirements of a Finley letter, which must be filed when

appointed counsel seeks to withdraw from a collateral appeal

filed under the PCRA).  Specifically, McDermott informed the

---

[2]The illegality of the sentence was cured by vacating the
sentence for the predicate offense and leaving the sentence for
the second degree murder conviction in place.  In reaching this
conclusion, the Superior Court noted that the trial judge himself
acknowledged the error and requested that the robbery sentence be
vacated.  Id. slip op. at 8.

-3-

court that she contacted Lapricia Jessup, the sister of James
Lamb and mother of Moore's child, whom Moore had identified to
trial counsel as a potential exculpatory witness, but who was
never called to testify.  (Response Ex. C at 6-7.)   While Moore
never raised this issue of ineffective assistance in his *pro se*
Petition, he apparently raised the issue with McDermott, who
advised the Court in the Finley letter that she contacted Jessup.
Jessup told McDermott that: 1) she had a conversation with Lamb
after his arrest; 2) Lamb told her that he could not remember who
was involved in the robbery with him; 3) Moore and Lamb spent
time together on a daily basis at the time of the murder; and 4)
Jessup told Lamb to cooperate with the Commonwealth and identify
his co-conspirator.  (Response Ex. C at 6-7.)   McDermott
reported, however, Jessup would not testify or sign an affidavit.
(Id.)  Accordingly, PCRA counsel determined that there was no
evidence that would support Moore's claim that Attorney Tinari
was ineffective for failing to present Jessup as a trial witness.
She added that any attempt by trial counsel to elicit evidence
from Jessup would have been questionable trial strategy, since
Jessup would have testified to her knowledge that Moore and Lamb
spent time together on a daily basis at the time of the incident,
and that she counseled her brother to cooperate with the
Commonwealth and identify his co-conspirator.  (Id. at 7.)
Accordingly, she concluded that Moore could not demonstrate any

-4-

prejudice arising from Tinari's failure to call Jessup as a witness.  (Id.)

Based on McDermott's Finley letter, Judge Geroff issued a Notice of Intent to Dismiss the Petition.  (Response Ex. D.) Moore filed a response to the Notice setting forth the same issues he raised in his pro se petition, and adding the additional argument that PCRA counsel McDermott was constitutionally ineffective because she could not predict what favorable evidence Jessup could have provided to trial counsel Tinari.  (Response Ex. E. at 3-5.) Moore also attached to the response an affidavit of Herman Brooks, who asserted that while in the Youth Study Center he asked James Lamb "what he was locked up for and he told me for that body that Newton did on 9th Street."  He also attached what purports to be a letter he wrote to trial counsel dated October 14, 1999, identifying Jessup as a potential witness. (Response Ex. E.)

Thereafter, on December 23, 2002, Judge Geroff dismissed the PCRA petition without a hearing. (Response Ex. F.)  On May 12, 2003, he issued an opinion explaining his decision for the dismissal. (Response Ex. G.)  Based on the facts presented by McDermott's Finley letter, he found that Moore could not meet his burden under the Pennsylvania law governing ineffective assistance of counsel claims on the issue of Tinari's failure to investigate Jessup's evidence.

-5-

Moore appealed, raising seven issues: 1) trial counsel was ineffective for failing to object to Lamb's false testimony; 2) the trial court erred in crediting portions of Lamb's testimony; 3) trial counsel was ineffective for advising Moore not to testify after Lamb implicated him in the robbery; 4) PCRA counsel was ineffective for failing to obtain an affidavit from Jessup; 5) PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for stipulating to the Coroner's report concerning the cause of death; 6) PCRA counsel was ineffective for failing to file an amended PCRA petition; and 7) the PCRA Court erred in concluding that none of the issues raised in Moore's *pro se* petition had arguable merit. (Response Ex. I at 3-4.) On August 27, 2004, the Pennsylvania Superior Court, with one judge dissenting, dismissed the appeal of the PCRA decision. (Id.)

On May 17, 2005, Moore filed a third PCRA petition.[3] He alleged he was entitled to a new trial based upon James Lamb recanting his testimony. (Response Ex. J.) Moore attached to the petition an affidavit by Lamb averring that he swore falsely when he testified at trial that Moore was with him during the robbery; that he had told the police that a neighborhood friend

---

[3]Moore filed a second PCRA petition on May 3, 2004, while the appeal of his first petition was still pending. The PCRA Court noted that this petition was summarily dismissed because the first petition was still pending. (Response Ex. K at 2.) It has not been included in either parties' habeas submissions.

named Newton was with him, but that police threatened him with
the death penalty if he didn't implicate Moore; and that while
Lamb saw Moore on the night of the murder, it was before Newton
robbed the victims with Lamb's help.

Judge Geroff dismissed the third petition, finding that
although it was timely, Lamb's recantation was "absurd and
totally incredible. If another man from the neighborhood had
been involved instead of the petitioner, Mr. Lamb could have
received the same deal for his testimony against that man."
(Response Ex. K at 4-5.) The dismissal was affirmed by the
Superior Court on June 28, 2007. (Response Ex. M.)

Moore filed the current federal habeas petition on June 10,
2005, while his third PCRA petition was still pending, raising as
issues: 1) ineffective assistance of trial counsel for failing to
investigate, interview and call witness Lapricia Jessup; 2)
ineffective assistance of trial and appellate counsel for
stipulating to Coroner's report; 3) ineffective assistance of
trial counsel for failing to object to Lamb's false testimony; 4)
trial counsel ineffectiveness in advising Moore not to testify on
his own behalf; and 5) a due process claim arising from the trial
court's failure to properly weigh the probity of Lamb's
testimony. In a prior Report and Recommendation dated September
15, 2005, I recommended that the petition be stayed pending
resolution of Moore's third PCRA petition. On June 5, 2007,

-7-

following the denial of his appeal in state court, Moore moved to
lift the stay and file a counseled amended habeas petition. In
the counseled amended habeas petition, Moore raises as issues: 1)
ineffective assistance of trial counsel for failing to
investigate Moore's claims of innocence and advising Moore to
plead guilty and derivative ineffective assistance of PCRA
counsel for failing to raise the issue; 2) a due process
violation arising from the PCRA court's failure to conduct an
evidentiary hearing into the facts raised by the Lamb affidavit;
and 3) a due process violation arising from the PCRA Court's
dismissal of Moore's claim of actual innocence based on Lamb's
recantation. Thereafter, the Commonwealth filed its Response to
both the *pro se* claims and the new claims raised in the counseled
amended petition. Counsel then filed a Traverse Brief. I will
first discuss the claims in the counseled petition, then address
Moore's other *pro se* claims.

## II. **LEGAL STANDARDS**

I analyze these claims according to the precepts of
Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)
which altered habeas review of state convictions brought under §
2254. Under AEDPA, a petitioner must demonstrate that the state
court's adjudication of the merits "resulted in a decision that
was contrary to, or involved an unreasonable application of
clearly established Federal law, as determined by the Supreme

-8-

Court of the United States." See Penry v. Johnson, 532 U.S. 782,
792-92 (2001) (explaining two-prong standard); Williams v.
Taylor, 529 U.S. 362, 403-04 (2000) (same). Additionally, state
court findings of fact are to be presumed correct unless the
petitioner rebuts the presumption with clear and convincing
evidence. See 28 U.S.C. § 2254(e)(1). This presumption applies
even if the finding was made by a state court of appeals rather
than by the state trial court. Bragg v. Galaza, 242 F.3d 1082,
1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).

The Supreme Court has said that "a state court decision will
be 'contrary to' our clearly established precedent if the state
court either 'applies a rule that contradicts the governing law
set forth in our cases,' or 'confronts a set of facts that are
materially indistinguishable from a decision of this Court and
nevertheless arrives at a result different from our precedent.'"
Penry, 532 U.S. at 792 (quoting Williams v. Taylor, 529 U.S. 362,
405-06 (2000). A state court decision is an unreasonable
application of the Supreme Court's precedent if the court
"correctly identifies the governing legal rule but applies it
unreasonably to the facts" of the case. Id.

## III.  **LAPRICIA JESSUP**

The first issue raised in Moore's amended counseled petition
is that trial counsel Tinari was ineffective for failing to
investigate Moore's claims that Lapricia Jessup could have

provide exculpatory evidence.[4]  I recommend that this issue was never fairly presented to the state courts and thus is unexhausted and procedurally defaulted.  In addition, I recommend that even if it was fairly presented, the state court's conclusion that counsel was not ineffective was not contrary to Supreme Court law.

### A.    **Procedural Default**

The habeas statute requires that prisoners exhaust their claims in state court before seeking relief from the federal courts.  See 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  Absent exceptional circumstances, a federal court may not determine the merits of a habeas corpus petition until the petitioner has exhausted all

---

[4]I note that Moore also raises a derivative ineffective assistance of counsel issue based upon PCRA counsel's failing to raise trial counsel's ineffectiveness regarding Jessup and for filing the Finley letter.  There is no constitutional right to counsel in a post-conviction proceeding and hence there can be no claim for constitutionally ineffective assistance.  See Pennsylvania v. Finley, 481 U.S. 551 (1987) (establishing that there is no constitutional right to an attorney in state post-conviction proceedings) and Wainwright v. Torna, 455 U.S. 586 (1982) (establishing that where there is no constitutional right to counsel there can be no ineffective assistance of counsel claim); Coleman v. Thompson, 501 U.S. 722, 752 (1991) (citing Finley and Torna); Dunn v. Colleran, 247 F.3d 450, 467 (3d Cir. 2001) (citing Finley).

-10-

means of available relief under state law.  28 U.S.C. § 3354(b);

O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Slutzker v.

Johnson, 393 F.3d 373, 379 (3d Cir. 2004).  Principles of comity

"dictate that when a prisoner alleges that his continued

confinement for a state court conviction violates federal law,

the state courts should have the first opportunity to review this

claim and provide any necessary relief."  O'Sullivan, 526 U.S. at

844-45.  The petitioner bears the burden of proving that he has

exhausted available state remedies.  Landano v. Rafferty, 897

F.2d 661, 668 (3d Cir. 1990).

"Just as in those cases in which a state prisoner fails to

exhaust state remedies, a habeas petitioner who has failed to

meet the State's procedural requirements for presenting his

federal claims has deprived the state courts of an opportunity to

address those claims in the first instance."  Coleman v.

Thompson, 501 U.S. 722,731-732 (1991).  The default will be

excused if a petitioner can demonstrate cause and prejudice, or

that a failure to consider his claims will result in a

miscarriage of justice.  Id. at 750.  To satisfy the cause and

prejudice requirement, courts have held that cause exists when a

petitioner demonstrates "some objective factor external to the

defense impeded efforts to comply with the State's procedural

rule."  Slutzker, 393 F.3d at 381 (quoting Murray v. Carrier, 477

U.S. 478, 488 (1986)).  The cause must be "something that cannot

fairly be attributed to the petitioner." Coleman, 501 U.S. at
753. Prejudice means that the alleged error worked to the
Petitioner's actual and substantial disadvantage. United States
v. Frady, 456 U.S. 152, 170 (1982). To show a fundamental
miscarriage of justice, a Petitioner must present new evidence
that he is actually innocent of the crime for which he has been
convicted. Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002).
To establish the requisite probability of actual innocence, the
Petitioner must show that "it is more likely than not that no
reasonable juror would have convicted him in light of the new
evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). The United
States Supreme Court has repeatedly held, however, that the scope
of the miscarriage of justice exception is a narrow one. Sawyer
v. Whitley, 505 U.S. 333 (1992); McCleskey v. Zant, 499 U.S. 467
(1991); Dugger v. Adams, 489 U.S. 401 (1989). This exception
only applies when "a constitutional violation has probably
resulted in the conviction of one who is actually innocent."
Murray, 477 U.S. at 496. The Supreme Court has suggested that
the test for actual innocence is whether there is "a fair
probability that, in light of all the evidence, including that to
have been . . . wrongly excluded or to have become available only
after trial, the trier of the facts would have entertained a
reasonable doubt of his guilt." Kuhlmann v. Wilson, 477 U.S.
436, 454-5 n.17 (1986).

-12-

The procedural default in this case was Moore's failure to timely file a PCRA petition raising the specific issue of **trial counsel** ineffectiveness involving Jessup.[5] The record demonstrates that Moore did not raise the issue on the face of any of his PCRA petitions. Rather, he apparently mentioned it to McDermott after she was appointed his counsel by the PCRA Court. Because she filed the Finley letter suggesting there was no merit to the claim, **Moore asserted that PCRA counsel McDermott – not trial counsel Tinari - was ineffective.** This, I recommend, does not satisfy the requirement that the issue of trial counsel ineffectiveness be fairly presented to the state courts.

In order to satisfy the exhaustion requirement, a federal habeas claim must have been "'fairly presented' to the state courts. . . . This means that a petitioner must 'present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005) (internal citations omitted). A claim is not fairly presented if the state court "must read beyond a petition or

_____

[5]Under Pa. Con. Stat. Ann. tit. 42, § 9545(b), a PCRA petition "shall be filed within one year of the date the judgment becomes final." Exceptions to the one year statute of limitations are provided in cases where the delay was the result of interference by government officials, the facts supporting the claim were unknown, and where the right asserted is a newly recognized one. There is no claim that any of these exceptions apply. As the one year period has long expired, any issue not previously raised in the state courts has now been waived.

-13-

brief . . . that does not alert it to the presence of a federal
claim." Baldwin v. Reese, 541 U.S. 27, 32 (2004). Mere
similarity of the federal and state issues is insufficient to
prove exhaustion. Duncan v. Henry, 513 U.S. 364, 366 (1995).
The relevant inquiry is whether the petitioner presented in state
courts the legal theory and supporting facts asserted in the
federal habeas petition. Nara v. Frank, 488 F.3d 187, 198 (3d
Cir. 2007); Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).

The PCRA court was clearly required to "read beyond" the
Petition, which never raised the issue of trial counsel
ineffectiveness regarding the failure to investigate or call
Jessup. In addition, Moore also failed to raise the issue in his
response to the Notice to Dismiss, wherein he raised only
McDermott's alleged ineffectiveness. Finally, after his petition
was dismissed, Moore did not raise the issue on appeal.
Accordingly, I recommend that the issue is unexhausted and
procedurally defaulted.

I recommend that the default cannot be excused. Moore has
failed to satisfy his burden of showing that some objective
factor external to the defense impeded his efforts to raise the
trial counsel ineffectiveness issue. Indeed, in his counseled
Traverse Brief, Moore attempts no such showing, arguing only that
the state court determinations were contrary to or an
unreasonable application of Supreme Court law. I also recommend

-14-

that Moore has failed to demonstrate prejudice. The PCRA Court's
findings – adopting as fact McDermott's findings that Jessup
would not testify, and that if called she would have given highly
prejudicial testimony – are entitled to a presumption of
correctness. See 28 U.S.C. § 2254(e)(1). On this record, Moore
cannot show that the failure of trial counsel to investigate and
call Jessup worked to his actual and substantial disadvantage.

Finally, I recommend that Moore cannot show that this
alleged failure constituted a fundamental miscarriage of justice.
Moore's burden is to present new evidence that he is actually
innocent of the crime for which he has been convicted, i.e. that
it is more likely than not that no reasonable juror would have
convicted him had it heard Jessup's testimony. This proposition
is highly unlikely given that Jessup would have offered clearly
inculpatory evidence had she actually testified.

## B.  **The Strickland Standard**

Even if the trial counsel ineffectiveness issue involving
Jessup had been properly preserved and exhausted, I recommend
that the state court's adjudication of the claim was not improper
under the AEDPA standard. The clearly established Supreme Court
law governing claims of ineffective assistance of counsel is
Strickland v. Washington, 466 U.S. 668, 687 (1984), wherein the
Court established a two-pronged test to evaluate Sixth Amendment
claims of ineffective assistance of counsel. An individual

-15-

making such a claim must show: (1) that "counsel's performance was deficient," which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense." Id. at 687-90.

Counsel's failure to investigate potential witnesses can amount to ineffective assistance of counsel. United States v. Gray, 878 F.2d 702 (3d Cir. 1989). This principle is derived from the Strickland mandate that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. However, "trial counsel is not bound by an inflexible constitutional command to interview every possible witness. Instead, counsel [is] simply required to exercise reasonable professional judgment in deciding whether to interview [a witness]." Lewis v. Mazurkiewicz, 915 F.2d 106, 113 (3d Cir. 1990).

The PCRA Court determined as a matter of fact that, while Jessup was present at the trial, she was not in the courtroom and did not speak with defense counsel.[6]  (Response Ex. G at 6-7.)[7]

_____

[6]In her Finley letter, McDermott stated that Jessup appeared at court during the trial but was not permitted into the courtroom because she had her young child with her. (Response Ex. C at 6.)

[7]In its opinion, the Superior Court added that Moore did not assert that trial counsel knew of Jessup's existence or that counsel should have known of her existence. I note that the Superior Court's finding, while binding on habeas review, is

-16-

Moore also did not assert in the state courts that Jessup was prepared to cooperate with the defense or that she would have testified on Moore's behalf if trial counsel had contacted her. (Response Ex. I at 8.) Indeed, the PCRA Court determined as fact that Jessup, when contacted by McDermott, indicated that she would not sign an affidavit or testify. (Response Ex. G at 6-7.) Because the PCRA court found that Jessup was unwilling to testify, its decision to deny relief on that basis was not an unreasonable application of the deficiency prong of Strickland, as construed by the Third Circuit in Lewis.[8]

## IV. PCRA COURT ERRORS

The second issue raised in the amended counseled habeas petition is that the PCRA Court erred when it failed to hold an evidentiary hearing on the issue of Lamb's recantation of his

somewhat at odds with the fact that Jessup was the mother of Moore's child. However, Moore's relationship with Jessup does not by itself satisfy Moore's burden to show that trial counsel was aware of the fact that Jessup had knowledge of exculpatory facts.

[8]Moore also cannot establish the prejudice prong of Strickland. It is not enough that petitioner demonstrate that counsel's errors had some conceivable effect on the outcome of the proceeding. Id. at 693. "Virtually every act or omission of counsel would meet that test." United States v. Valenzuela-Bernal, 458 U.S. 858, 866-67 (1982). Instead, petitioner must show that counsel's actions were so unprofessional that they prejudiced the jury and undermined the outcome. As I stated above, Jessup would have offered clearly inculpatory evidence had she actually have been called to testify. Rather than prejudice the defense, trial counsel's failure to call her may have aided the defense. The failure to investigate a witness that would have given inculpatory evidence cannot constitute prejudice.

-17-

trial testimony before concluding that the recantation was absurd and incredible. The third issue raised in the amended counseled habeas petition is that the PCRA Court erred when it dismissed the PCRA petition's claim of actual innocence based on Lamb's recantation. Because allegations of due process violations occurring during state collateral review proceedings are not cognizable on habeas review, I recommend that these issue have no merit. See Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) (holding that "habeas proceedings are not the appropriate forum . . . to pursue claims of error at the PCRA proceeding. . . . It is the original trial that is the 'main event' for habeas purposes."); Abu-Jamal v. Horn, 520 F.3d 272, 297 (3d Cir. 2008) (agreeing with the District Court's determination that "a viable habeas claim cannot be predicated on petitioner's allegation of error in his PCRA hearing.").[9]

## V.  THE CORONER'S REPORT

Moore argues in his *pro se* Petition that trial counsel Tinari was ineffective for agreeing to stipulate to the Coroner's

_____

[9]The Third Circuit noted in Abu-Jamal that even though error in state collateral proceedings cannot be grounds for federal habeas relief, the error "may affect the deference we owe the court's findings under § 2254(d) and 2254(e)(1)." Id. at 297 n.25 (quoting Lambert, 387 F.3d at 247). I note, specifically, that I have taken into consideration the PCRA Court's failure to hold a hearing in my determination to defer to that Court's factual findings. Judge Geroff was not merely the PCRA judge, he was also the trial judge in the non-jury trial. As such, he was intimately familiar with the trial evidence and the circumstances surrounding Lamb's recantation.

-18-

report.  This issue was raised as part of a derivative claim in

Moore's appeal from the denial of his first PCRA Petition.  The

Superior Court rejected the claim, holding,

> Appellant claims that his underlying claim [i.e. the
> derivative trial counsel ineffectiveness claim] has
> merit because the stipulation deprived him of the
> opportunity to cross-examine the medical examiner,
> resulting in a violation of Appellant's constitutional
> right to confront witnesses.
>     Upon review, we find this claim to be patently
> meritless as Appellant fails to explain how he was
> prejudiced by the stipulation.  Moreover, we agree with
> the Commonwealth that the stipulation was reasonable
> under the circumstances because the manner and cause of
> Cedano's death was not in dispute.  Accordingly, trial
> counsel was not ineffective in this regard.

(Response Ex. I at 8-9.)  I recommend that this determination was

not contrary to nor an unreasonable application of Supreme Court

law.

In his *pro se* brief, Moore essentially repeats the arguments

he made in his brief to the Superior Court, to wit, that

counsel's stipulating to the report lent credibility to Lamb's

testimony that the victim was shot in the back of the head.  He

does not explain how counsel's stipulating to the report was

itself a violation of professional norms, nor does he make any

showing that the Coroner's report was subject to impeachment,

which the stipulation effectively waived.  He also makes no

argument that the Superior Court decision improperly interpreted

the Strickland standard.  While Moore may not have liked the

content of the report, and wished the Commonwealth had not

-19-

offered it into evidence, the fact that trial counsel stipulated

to its entry does not establish constitutional ineffectiveness.

## VI. **LAMB'S TESTIMONY**

The next issue raised in the *pro se* brief is that trial

counsel Tinari was ineffective for failing to object to Lamb's

false testimony and/or argue prosecutorial misconduct.  I

recommend that the state court's consideration of the issue was

not an unreasonable application of Strickland.  Any objection to

Lamb's trial testimony would have proved meritless; thus Tinari's

failure to raise the objection cannot constitute ineffective

assistance.

In deciding Moore's third PCRA petition, Judge Geroff

rejected the factual underpinnings of any assertion that an

objection to Lamb's trial testimony would have had any merit:

> In his affidavit of April 14, 2004, Mr. Lamb asserts
> that he lied when he testified at trial that the
> defendant participated with him in the robbery and
> murder.  He now alleges that it was another man from
> the neighborhood named Newton who joined him.  He
> states that the petitioner had left the area prior to
> the robbery and shooting.  Mr. Lamb gives as his reason
> for saying that the petitioner was with him the fact
> that the police told him that he would get the death
> penalty if he did not testify against petitioner.  Mr.
> Lamb's assertion is absurd and totally incredible.  If
> another man from the neighborhood had been involved
> instead of the petitioner, Mr. Lamb could have received
> the same deal for his testimony against that man as the
> one he received to testify against the petitioner.

(Response Ex. K at 4-5.)  The Superior Court, in affirming the

dismissal of the PCRA petition, stated:

In rejecting Moore's claim, the PCRA judge, who also
presided over Moore's non-jury trial, assessed the
credibility and significance of the recantation in
light of the evidence as a whole and determined that
Lamb's recantation was "absurd and totally incredible."
. . . Neither Moore nor Lamb could proffer any
explanation for why the police would ignore Newton's
involvement in the shooting and elect to prosecute
Moore for a crime he did not commit. Further, Lamb's
plea agreement, which was outlined on the record during
Moore's trial, did not require Lamb to identify Moore
specifically; instead it merely required Lamb to
cooperate and testify truthfully. . . . As such the
record reveals no logical reason for Lamb to name Moore
as his accomplice unless Moore, in fact, had
participated in the robberies.

(Response Ex. M at 7.) On habeas review, the credibility

determination on Lamb's recantation is presumed correct unless

the petitioner rebuts the presumption with clear and convincing

evidence. Moore has failed to carry this burden.

## VII. **ADVISING MOORE NOT TO TESTIFY**

Next, Moore asserts that trial counsel Tinari was

ineffective in advising him not to testify in his own behalf. In

addressing the issue on the first PCRA petition, Judge Geroff

stated that he:

conducted a colloquy with the defendant at the
conclusion of the Commonwealth's case concerning the
defendant's right to testify and his decision not to
exercise that right. . . . The record is clear that
the defendant consulted with his attorney, that he was
satisfied with the advice of counsel and that he had
not been threatened or coerced into waiving his right
to testify. The defendant fails to allege any specific
act or advice other than " . . . advising defendant not
to testify" which could support a finding that counsel
interfered with the defendant's right to testify or
that he gave unreasonable advice on the subject.

-21-

(Response Ex. G at 5 (citations to the trial record omitted).)[10]
In his instant petition, Moore argues that his colloquy with the
trial judge was inadequate because his responses thereto
consisted only of monosyllabic replies to the Court's questions,
which do not reflect that he was actually aware of the rights he
was waiving.  (Pro Se Mem. at 24.)  I recommend that the state
court's consideration of the issue was not an unreasonable
application of Strickland.

The PCRA Court's determinations that Moore actually
consulted with Tinari on the issue of whether he should testify,
that he was satisfied with Tinari's advice, and that he had not
been threatened or coerced into waiving his right to testify, are
factual findings which I must presume to be correct.  Moore has
offered nothing to meet his burden to demonstrate they are not
correct.  Further, Moore's argument attacks not his attorney's
advise, but rather the adequacy of the Court's colloquy – an
issue he did not exhaust in the state courts as part of his
direct appeal.  While he asserts that if he had testified he
would have refuted Lamb's version of the events, I recommend that
this assertion is insufficient to demonstrate that the state
courts reached an improper determination of his ineffectiveness
claim.

---

[10]On appeal, the Superior Court adopted this reasoning as
its own.  (Response Ex. I at 5.)

-22-

## VIII.     DUE PROCESS VIOLATION – NEGATING THE COMMONWEALTH'S
### BURDEN OF PROOF

Moore next argues in his *pro se* brief that the trial judge
"in charging himself on the polluted source of James Lamb's
testimony raised doubt which the court expressed hesitation of
the testimony truthfulness in, (the truth determining process)
deny Petitioner due process of law which negated the Commonwealth
burden of proving every element of the offense by reasonable
doubt." (Pro Se Br. at 28.)  This issue was never exhausted in
the state courts, and is procedurally defaulted with no showing
of cause and prejudice or fundamental miscarriage of justice.  I
recommend that it be dismissed on this basis.

## IX.     TRIAL COUNSEL COERCING MOORE TO WAIVE HIS RIGHT TO JURY
### TRIAL

Finally, Moore argues that trial counsel Tinari was
constitutionally ineffective when he coerced Moore into accepting
a bench trial.  In determining that this issue had no merit,[11]
Judge Geroff found:

Jury selection was to commence on May 3, 2000.  Jury
selection was postponed to allow the defendant to
consult with his mother about his decision to be tried
by a jury or by a judge. . . .  On May 4, 2000, the
defendant advised the court that he had decided to be
tried without a jury, and the court conducted an
extensive colloquy in which the court explained the
essentials of a trial by jury and the various charges

---

[11]Judge Geroff also determined, initially, that the issue
was not cognizable under the PCRA.  (Response Ex. G at 3.)

against him including the possible penalties which
could be imposed as provided in Pa. Crim. P. 620. . . .
The defendant indicated that he had consulted with his
attorney, that he was satisfied with his attorney's
advice and that no one had threatened him or promised
him anything to induce him to waive his right to a jury
trial. . . . In addition, the defendant signed two
separate written jury waiver colloquies.

(Response Ex. G at 3-4.)

Moore did not include this issue in his subsequent appeal to
the Superior Court. (Response Ex. H at i-ii.) Because Moore did
not include the issue in his appeal to the Superior Court, I
recommend that it was never exhausted and is procedurally
defaulted with no showing of cause and prejudice or fundamental
miscarriage of justice. I recommend that it be dismissed on this
basis.

Even if it was exhausted, I recommend that the claim is
meritless. Moore asserts in his federal habeas petition that he
waived his right to a jury trial because Tinari told him that if
he chose to take a jury, he would be put on death row, but that
Tinari could convince a judge not to give him the death penalty.
(Pro Se Br. at 32.) He also asserts that he initially rejected a
bench trial but, during a meeting with Tinari and his mother, he
succumbed to his mother's weaping plea that he take Tinari's
advice. Finally, he asserts that Tinari threatened to withdraw
as counsel if he did not accept a bench trial. (Id.)

Judge Geroff's findings that Moore made his decision to
waive a jury trial after he consulted with his attorney, that he

-24-

was satisfied with Tinari's advice, and that no one had threatened him or promised him anything to induce him to waive his right to a jury trial, are factual findings entitled to the presumption of correctness. Moore's factual assertions, I recommend, are insufficient to overcome that presumption. To meet his burden, Moore must present clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). His factual assertions regarding coercion, which contradict the PCRA court's findings, are wholly unsupported. It begs wondering why, if Moore is correct that his mother was present when Tinari threatened to withdraw as counsel, he has offered no affidavit or other evidence from his mother to support his factual assertions.

For all of these reasons, I make the following:

**RECOMMENDATION**

AND NOW, this 20th day of October 2008, IT IS RESPECTFULLY
RECOMMENDED that this matter should be DISMISSED without an
evidentiary hearing.  I further RECOMMEND that there is no
probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and
Recommendation.  See  Local Civ. Rule 72.1.  Failure to file
timely objections may constitute a waiver of any appellate
rights.

                              BY THE COURT:


                              /s/ Arnold C. Rapoport
                              ARNOLD C. RAPOPORT
                              UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**JOHN MOORE,**

        Petitioner,

   v.

**DAVID DIGUGLIELMO,** et al.,

        Respondents.

CIVIL ACTION

No. 05-2796

**FILED**

MAR 2 7 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**AND NOW,** this 27 day of March, 2009, upon review of the Report and Recommendation of Magistrate Judge Arnold C. Rapoport, it is hereby **ORDERED** that:

1.    Petitioner's objections to the Magistrate Judge's report and recommendation are **OVERRULED**.

2.    The Report and Recommendation is **APPROVED** and **ADOPTED**.

3.    Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED** without an evidentiary hearing.

4.    A Certificate of Appealability is **NOT GRANTED**.

Pollak, J.

9

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**JOHN MOORE**,

        Petitioner,

    v.

**DAVID DIGUGLIELMO,** et al.,

        Respondents.

CIVIL ACTION

No. 05-2796

## MEMORANDUM

Petitioner John Moore was convicted in state court on one count of second-degree murder, one count of criminal conspiracy, one count of possessing an instrument of crime, two counts of aggravated assault, and three counts of robbery. Moore subsequently filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court, which included both counseled and uncounseled claims. I referred the petition to United States Magistrate Judge Arnold C. Rapoport for a Report and Recommendation ("R&R"). Judge Rapoport's R&R recommended dismissing the petition, and on March 27, 2009, this court approved and adopted that recommendation. Petitioner has now filed (1) a motion for reconsideration of this court's March 27, 2009 Order,[1] (2) a motion to

---

    [1]    Petitioner's motion was timely filed on April 8, 2009. *See* Fed. R. Civ. P. 59(e) (allowing ten days for a motion to alter or amend the judgment); *id.* 6(a)(2)

1

amend the motion for reconsideration, and (3) numerous other motions related to his §
2254 petition.[2]

## I.

"The purpose of a motion for reconsideration is 'to correct manifest errors of law
or fact or to present newly discovered evidence.' A proper Rule 59(e) motion therefore
must rely on one of three grounds: (1) an intervening change in controlling law; (2) the
availability of new evidence; or (3) the need to correct clear error of law or prevent
manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (quoting
*Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Where errors of
law or fact are alleged, factual or legal issues may be reconsidered if they were
"overlooked by the court in its decision," but "[a] motion for reconsideration is not
properly grounded on a request that a court reconsider repetitive arguments that have

---

(excluding weekends and holidays from periods of less than eleven days); L.R. 7.1(g)
(specifying that motions for reconsideration must be filed within ten days of the order
being challenged).

    [2]    Because Moore timely filed a motion for reconsideration, this court retains
jurisdiction over all of petitioner's motions even though he also filed a notice of appeal
from the March 27 Order. *See United States v. Rogers Transportation, Inc.*, 751 F.2d
635, 637 (3d Cir. 1985) (holding that a timely motion filed under Fed. R. Civ. P. 59(e)
precludes a court of appeals from exercising jurisdiction while the motion is pending);
*Venen v. Sweet*, 758 F.2d 117, 122 (3d Cir. 1985) (holding that a motion captioned as one
for reconsideration is treated as one made pursuant to Rule 59(e) for purposes of
determining whether the district court retains jurisdiction after a notice of appeal has been
filed); Fed. R. App. P. 4(a)(4)(B)(I) ("If a party files a notice of appeal . . . before [the
court] disposes of [motions including motions filed under Rule 59(e)], the notice becomes
effective . . . when the order disposing of the last such remaining motion is entered.").

[been] fully examined by the court." *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 398-99 (E.D. Pa. 2002) (internal quotation marks omitted).

## A.

Petitioner's motion does not claim either that (1) the relevant law has changed, or (2) newly-discovered evidence is available. Instead, the motion chiefly relies on previously-submitted affidavits from four individuals – James Lamb, Lapricia Jessup, Brian Scott, and Herman Brooks. *See* Mot. at 2-4. All four affidavits in some way assert that Lamb, a cooperating co-defendant, fabricated his trial testimony against Moore. Specifically, the Lamb and Brooks affidavits both state that Lamb told Brooks that a man named "Newton," not Moore, committed the crimes with Lamb. Scott's affidavit, meanwhile, states that Lamb had earlier told him that he was going to "lie on" someone to get a better deal – and that Scott recently discovered that Lamb was referring to Moore. Finally, Jessup's affidavit states that Jessup would have testified that Lamb told her that he did not remember who assisted him in committing his crimes .

None of the affidavits demonstrates that the R&R erred in its analysis of any of the claims in Moore's § 2254 petition, and this court will therefore deny petitioner's motion insofar as it rests on the affidavits. Because neither the R&R or this court's order adopting the R&R expressly considers the effect of the affidavits, however, I briefly consider their relationship to the claims in Moore's petition.

3

Jessup's affidavit is certainly both (1) relevant to Moore's argument that his trial counsel "was ineffective for failing to investigate Moore's claims that Lapricia Jessup could have provide[d] exculpatory evidence," R&R at 9-10, and (2) potentially exculpatory on its face. Nevertheless, the possibility that Jessup would have testified to this fact was before Judge Rapoport, who correctly concluded that (1) Jessup also would have provided *inc*ulpatory evidence against Moore, meaning that Moore could not have been prejudiced by counsel's failure to investigate Jessup as a witness, and (2) the performance of petitioner's trial counsel was not deficient given that the state Post Conviction Relief Act ("PCRA") court found that Jessup later proved unwilling to "sign an affidavit or testify." R&R at 17. This court also adopted Judge Rapoport's recommendation that petitioner procedurally defaulted this issue by failing to fairly present it to the state courts. None of these conclusions is altered by Jessup's affidavit – or, for that matter, any of the other affidavits on which petitioner relies.

Similarly, while the affidavits may be factually relevant to Moore's claim that his trial counsel "was ineffective for failing to object to Lamb's false testimony and/or argue prosecutorial misconduct," R&R at 20, the PCRA court denied this claim on the ground that Lamb's later assertion that he lied on the stand was incredible. I adopted Judge Rapoport's conclusions that Moore had not presented "clear and convincing evidence" to rebut this "credibility determination," and that "[a]ny objection to Lamb's trial testimony would have proved meritless." *Id.* at 21. The affidavits are collectively insufficient to

4

alter these conclusions. The affidavits by Scott, Brooks, and Lamb – which variously state that it was someone named "Newton" who really assisted Lamb with the crimes for which Moore was convicted and that Lamb was "l[ying] on" Moore to get a better deal, cannot explain away the fact that "'Lamb could have recieved the same deal for his testimony against'" whoever helped him commit the crimes at issue. *Id.* at 20 (quoting Resp. Ex. K, at 4-5). The Jessup affidavit is also of no help to Moore on this score, because it contradicts the Brooks and Lamb affidavits in stating that Lamb told Jessup he did not remember who helped him commit the crimes. For these reasons, the affidavits do not provide clear and convincing evidence to overcome the PCRA court's credibility determination.

The petition also argues that the PCRA court should have held an evidentiary hearing and should not have dismissed his actual innocence claim. These arguments, however, were dismissed "[b]ecause allegations of due process violations occurring during state collateral review proceedings are not cognizable on habeas review," R&R 18, and the affidavits cannot change that rule of law.

The affidavits are simply not relevant to the remaining claims in Moore's § 2254 petition, which involve (1) the propriety of counsel's stipulating to a Coroner's report, (2) counsel's advice to Moore that he not testify on his own behalf, (3) counsel's advice that Moore waive his right to a jury trial, and (4) the trial judge's purported application of a

5

standard lower than guilt beyond a reasonable doubt.[3]

**B.**

The motion for reconsideration also asserts that petitioner "has complied with all

of the stringent procedures" necessary to bring a § 2254 petition, *id.* at 7, even though this

court adopted Judge Rapoport's conclusion that several of petitioner's claims were not

fairly presented to the state courts and were therefore procedurally defaulted. In

considering this argument, this court has discovered an error of fact in Judge Rapoport's

R&R. The R&R states that Moore's arguments to the PCRA court on his first petition

---

[3]     Moore also suggests that the evidence at trial was insufficient to sustain his
conviction, *see* Mot. at 6, but that claim was not presented in his § 2254 petition and
therefore cannot be considered here. In any case, a sufficiency of the evidence inquiry
extends only to evidence in the trial record and therefore could not encompass the
affidavits Moore now proffers. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Insofar as Moore contends that he is actually innocent, meanwhile, even assuming
*arguendo* that the affidavits are newly discovered evidence that may support such a claim,
a demonstration of actual innocence may only be used to overcome a procedural default
that would otherwise prevent a petitioner's claims of constitutional error from being
heard. *See, e.g.*, *Herrera*, 506 U.S. at 400; *Goldblum v. Klein*, 510 F.3d 204, 225-26 (3d
Cir. 2007). Judge Rapoport's R&R considered and rejected the merits of all but one of
petitioner's claims. The remaining claim essentially argues that comments by the trial
judge indicated that he convicted Moore on a standard lower than proof beyond a
reasonable doubt. But although the trial judge did "t[ake] . . . very seriously into
consideration" the issue of Lamb's credibility, he unequivocally stated that he was
"satisfied that the . . . verdicts are supported by the evidence." Trial Tr. vol. 4, 127, May
9, 2000. There is thus no indication in the record that the judge applied an incorrect
standard of proof, and Moore's argument to the contrary would lack merit even if the
barrier of procedural default could be overcome.

Because Moore's Motion to Compel the State to Present Discovery Documents
(docket no. 66) is relevant only to a claim of actual innocence and not to any of the
asserted constitutional errors at trial, that motion will be denied.

"never raised the issue of trial counsel ineffectiveness regarding the failure to investigate or call Jessup." R&R at 14. This is incorrect. Pages 3-5 of Moore's submission to the PCRA court include arguments captioned "[t]rial counsel was ineffective for failure to present a defense" and "[t]rial counsel was ineffective for failure to investigate, interview and call a witness to testify," and these arguments deal expressly with the failure to call Jessup. Gov't Resp., Ex. E, at 3-4. Petitioner thus fairly presented these claims to the PCRA court as claims concerning trial counsel.

This error does not, however, render incorrect Judge Rapoport's conclusion that Moore did not fairly present this issue to the state courts. "In order for a claim to be exhausted, it must be 'fairly presented' to the state courts 'by invoking one complete round of the State's established appellate review process.'" *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). Petitioner did not do so; in his brief to the Pennsylvania Superior Court, his claim is unambiguously one that PCRA counsel, and not trial counsel, was ineffective with regards to the handling of Jessup. *See* Gov't Resp., Ex. H. Thus, this court will grant petitioner's motion for reconsideration in part in order to correct this error of fact, but will not reconsider its denial and dismissal of the § 2254 petition.[4]

---

[4]     The motion for reconsideration asks this court to revisit *all* of the issues in the petition, *see* Mot. at 6, but Moore provides no other basis for doing so. It further requests a hearing, but nothing in the motion "presents a *prima facie* showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim." *Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010).

7

**II.**

On August 21, 2009 – well after the ten-day period prescribed for motions for reconsideration under both Federal Rule of Civil Procedure 59(e) and Local Rule 7.1(g) – Moore filed a motion to amend his motion for reconsideration on the basis of the Supreme Court's decisions in *Cone v. Bell*, 129 S. Ct. 1769 (2009), and *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009). "Courts are divided on the question of whether an otherwise untimely amended motion for reconsideration under Rule 59(e) relates back to the date on which the original motion was filed." *In re J.A.R. Barge Lines, Inc. L.P.*, No. 03-cv-163, 2007 WL 916876, at *3 (W.D. Pa. Mar. 23, 2007). In the circumstances of a motion to reconsider a § 2254 petition on the substantive basis of subsequent law, however, I do not think that an out-of-time amendment to a reconsideration motion is permissible. In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court made clear that a Rule 60(b) motion arguing "that a subsequent change in the law is a reason justifying relief from the previous denial of a claim" is, in fact, a second or successive habeas petition. *Id.* at 531 (internal citation and quotation marks omitted). To allow petitioner to bring the same claim before this court via an out-of-time amendment to a Rule 59(e) motion would allow petitioner to accomplish what *Gonzalez* forbids merely by captioning the motion as one under Rule 59 as opposed to one under Rule 60. Accordingly, I will dismiss petitioner's motion to amend as a second or successive

8

petition.[5]

## III.

Moore has filed five other motions that require determination. Two of these,

which are substantively identical, are captioned as Motions for a Certificate of

Appealability pursuant to 28 U.S.C. § 2253 and are directed at the Third Circuit. The

Clerk will therefore be directed to forward these motions to the Court of Appeals.

Petitioner also asks this court to take judicial notice of certain letters he wrote to

his trial counsel concerning Lapricia Jessup, which he states are contained in the record of

his disciplinary proceeding against counsel. This motion will be denied as moot, because

---

[5]     Assuming *arguendo* that petitioner's motion to amend should instead be
granted, reconsideration would remain improper. The potentially relevant portion of
*Cone* rejected the argument that a "claim was properly dismissed by the state
postconviction court on the ground it had been waived" when the state court had, in fact,
held that the claim had been "previously determined," not waived. 129 S. Ct. at 1781.
Although petitioner attempts to apply *Cone* to his argument that trial counsel was
ineffective for failing to investigate or call Jessup as a witness, he did not fairly present
this claim to the state courts. *See* R&R at 13. *Cone* is therefore of no help to Moore.

Nor is *Melendez-Diaz*, which held that a defendant was entitled to confront at trial
forensic analysts who had provided affidavits. *See* 129 S. Ct. at 2532. Petitioner asks this
court to apply *Melendez-Diaz* to the Coroner's report at his trial, but assuming for the
sake of argument that that report is also a "testimonial statement" triggering the
Confrontation Clause, *Melendez-Diaz* is distinguishable. Petitioner's counsel stipulated
to the introduction of the Coroner's report at trial, and indeed, petitioner's claim as
presented in his petition and to the state courts is one of ineffective assistance, not of a
violation of the Confrontation Clause. Petitioner's claim is, in other words, governed by
*Strickland v. Washington*, 466 U.S. 668 (1984), and he must therefore show that counsel's
actions prejudiced him. Judge Rapoport rejected this argument, finding that the state
court's determination that the stipulation did not prejudice Moore was not an
unreasonable application of the *Strickland* standard. *See* R&R at 19. *Melendez-Diaz*
does nothing to remedy that deficiency in petitioner's argument.

Judge Rapoport's R&R reflects an awareness of at least one of these letters. *See* R&R at 5. In any case, the letters do not affect the merits of petitioner's argument that trial counsel was ineffective for failing to investigate or call Jessup as a witness for the same reasons discussed above with regard to Jessup's affidavit.

Moore's penultimate motion is one for clarification. Specifically, petitioner seeks an explanation of why the docket in this case includes a form apparently appointing Barnaby Wittels as Moore's counsel dated May 26, 2009, nearly two months after Wittels ended his representation of Moore as a result of this court's order denying Moore's § 2254 petition. This motion will be granted. The answer to petitioner's question is that the form docketed on May 26, 2009 relates to Wittels's representation of Moore between November 2007 and March 2009 and was filed so that Wittels will be compensated for that representation. The form does not mean that Wittels will continue to represent Moore in the future.

Finally, petitioner has moved to appeal this court's March 27, 2009 Order in forma pauperis. Under Federal Rule of Appellate Procedure 24(a)(1), in order to file for leave to proceed in forma pauperis on appeal, petitioner is required to attach an affidavit that:

> (A) shows in the detail prescribed by Form 4 of the Appendix of Forms the party's inability to pay or to give security for fees and costs;
> (B) claims an entitlement to redress; and
> (C) states the issues that the party intends to present on appeal.

Fed. R. App. P. 24(a)(1). Moore's motion does not satisfy these requirements and therefore will be denied without prejudice. Petitioner may refile his motion to appeal in

forma pauperis that complies with Rule 24(a)(1).[6] A copy of that rule, as well as a copy

of Form 4 of the Appendix of Forms, is attached to the annexed order and should be of

assistance to petitioner in filing a proper motion.

An appropriate order is annexed to this memorandum.

---

[6]     Petitioner's motion states that he proceeded in forma pauperis in this court, but that is incorrect; the docket reflects that he paid the $5.00 fee to file his § 2254 petition.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**JOHN MOORE**,

CIVIL ACTION

Petitioner,

No. 05-2796

v.

**DAVID DIGUGLIELMO,** et al.,

Respondents.

## ORDER

**AND NOW**, this 18th day of May, 2010, for the reasons enumerated in the

accompanying Memorandum, it is hereby **ORDERED** as follows:

(1) Petitioner's Motion for Reconsideration (Docket No. 51) is **GRANTED IN**

**PART AND DENIED IN PART**. Specifically, the motion is granted to the extend that it

seeks reconsideration of the factual conclusion that petition did not present to the PCRA

court his claim that trial counsel was ineffective for not investigating for not investigating

or calling Lapricia Jessup as a witness, and this court's Order dated March 27, 2009

(Docket No. 50) is **VACATED IN PART** to the extent that it adopts that factual

conclusion. The motion for reconsideration is otherwise denied;

(2) Petitioner's Motion to Appeal In Forma Pauperis (Docket No. 52) is **DENIED**

**WITHOUT PREJUDICE**. In refiling the Motion, petitioner must comply with Federal

Rule of Appellate Procedure 24(a)(1);

(3) Petitioner's Motion for the Court to Take Judicial Notice (Docket No. 55) is

**DENIED AS MOOT**;

(4) The Clerk is directed to forward petitioner's two Motions for a Certificate of

Appealability (Docket Nos. 56 and 57) to the United States Court of Appeals for the

Third Circuit;

(5) Petitioner's Motion for Clarification (Docket No. 61) is **GRANTED**;

(6) Petitioner's Motion for Leave of Court to File Amendment (Docket No. 62) is

**DISMISSED**; and

(7) Petitioner's Motion to Compel the State to Present Discovery Documents

(Docket No. 66) is **DENIED**.

BY THE COURT:

/s/Louis H. Pollak
Pollak, J.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2189
_____

JOHN MOORE,
                                                        Appellant

v.

DAVID DIGUGLIELMO; THE DISTRICT
ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:05-cv-02796)
District Judge: Honorable Louis H. Pollak

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 22, 2012

_____

Before: RENDELL, FISHER, and CHAGARES, Circuit Judges.

(Filed: July 19, 2012)

_____

OPINION
_____

CHAGARES, Circuit Judge.

John Moore appeals the District Court's denial of his 28 U.S.C. § 2254 petition for

a writ of habeas corpus. Moore avers that his trial counsel in Pennsylvania state court

provided ineffective assistance of counsel by failing to investigate properly a potential witness, Lapricia Jessup. We conclude that Moore's ineffective assistance of counsel claim is meritless and we will affirm the order of the District Court.

I.

We write solely for the parties' benefit and, as such, we set forth only the facts essential to our disposition. This habeas petition arose out of an incident on July 7, 1996. On that day, Sam Cedano and two friends were walking down the street in Philadelphia when two men approached them and proceeded to beat and rob them. As Cedano attempted to resist, he was shot in the back and fatally wounded. Another victim was shot in the back and permanently injured. Moore and his co-defendant, James Lamb, were arrested and charged with, among other things, the murder of Cedano. Lamb pled guilty to third-degree murder and testified at Moore's trial that Moore shot Cedano. On May 9, 2000, after a bench trial in the Pennsylvania Court of Common Pleas, Moore was convicted of second-degree murder, three counts of robbery, two counts of aggravated assault, possession of an instrument of a crime, and criminal conspiracy.

The post-conviction procedural history is lengthy. The Pennsylvania Superior Court affirmed Moore's conviction on direct appeal and the Pennsylvania Supreme Court denied allowance of appeal on November 21, 2001. On June 10, 2002, Moore filed a pro se Pennsylvania Post Conviction Relief Act ("PCRA") petition, arguing that his trial counsel, Nino Tinari, was ineffective for various reasons. In July 2002, the Court of Common Pleas appointed Barbara McDermott to represent Moore in his PCRA proceedings.

2

Attorney McDermott subsequently filed a letter pursuant to Commonwealth v.

Finley, 550 A.2d 213 (Pa. Super. Ct. 1988), stating that there were no meritorious issues

to appeal and moving to withdraw from the case. She reported in her motion that Moore

claimed that Attorney Tinari was ineffective for failing to investigate and present the

testimony of Jessup, the mother of Moore's child and the sister of the prosecution's key

witness, James Lamb. Attorney McDermott interviewed Jessup, who told her that,

shortly after his arrest, Lamb had told her that he did not remember who was present with

him during the robbery. Jessup also told Attorney McDermott that Attorney Tinari never

interviewed her. Jessup declined, however, to sign an affidavit or testify at a hearing.

Attorney McDermott provided Jessup with her contact information and asked her to

contact her if she changed her mind. Jessup did not contact Attorney McDermott

thereafter. Attorney McDermott concluded that Jessup did not want to testify and that,

even if Jessup was forced to testify at a hearing or provide an affidavit, Moore would be

unable to show that her absence at his trial prejudiced him because her testimony would

have been inculpatory. Jessup would have testified that Moore and Lamb spent time

together daily and that she had counseled Lamb to cooperate with the Commonwealth by

identifying his coconspirator.

In response to the Finley letter, the Court of Common Pleas issued a notice of

intent to deny Moore's PCRA petition. Moore responded, arguing that Attorney

McDermott was ineffective for refusing to present his ineffective assistance of counsel

claim in a PCRA petition. Over Moore's objection, the Court of Common Pleas denied

the PCRA petition on December 20, 2002. Moore appealed that denial, maintaining,

3

inter alia, that Attorney McDermott was ineffective for failing to obtain an affidavit from Jessup or subpoenaing her to testify and for refusing to present his ineffective assistance of counsel claim in his PCRA petition. On May 12, 2003, the Court of Common Pleas issued an opinion explaining that it denied Moore's petition because Moore did not meet his burden of showing that Attorney Tinari was ineffective for failing to investigate Jessup as a witness. On August 27, 2004, the Superior Court affirmed the denial of Moore's PCRA petition. The Superior Court explained that Attorney McDermott was not ineffective because Moore had failed to allege facts that would support a finding that Attorney Tinari was ineffective.

Meanwhile, on May 3, 2004, Moore filed a motion for a new trial based on newly discovered evidence. He submitted an affidavit from Lamb attesting that he swore falsely at Moore's trial that Moore was with him during the robbery. The Court of Common Pleas treated the motion as a second PCRA petition and denied it because Moore's first PCRA petition was still on appeal at that time.

On May 17, 2005, Moore filed a third PCRA petition. Along with a number of other exhibits, he submitted a notarized written statement from Jessup, dated September 22, 2005, stating that no lawyer questioned her on Moore's behalf at the trial phase, that she attended Moore's trial, and that she was willing to testify. Finally, Moore included letters he sent to Attorney Tinari on March 22, April 10, and October 14, 1999, advising him that Jessup could testify. He attached the receipts for certified mail indicating that the letters had reached Attorney Tinari's office.

4

The Court of Common Pleas appointed Attorney Barnaby C. Wittels as counsel for Moore. In February 2006, Attorney Wittels filed an amended, and then second amended third PCRA petition premised solely on Lamb's recantation of his trial testimony. The Court of Common Pleas denied the petition because it found that the new evidence was not credible and, therefore, Moore could not avail himself of the after-discovered evidence exception to the PCRA statute of limitations. Once again, the Superior Court affirmed the denial of Moore's PCRA petition, agreeing that Lamb's affidavit was not credible.

On June 10, 2005, while his third PCRA petition was still pending, Moore filed the habeas petition that is the subject of this appeal. The District Court stayed the petition until Moore's third PCRA petition was fully adjudicated. On September 26, 2008, the District Court lifted the stay and appointed Attorney Wittels as counsel. Attorney Wittels filed a supplemental habeas corpus petition on March 4, 2008, seeking an evidentiary hearing and raising claims for, inter alia, ineffective assistance of trial and PCRA counsel based on the failure to present Jessup's alleged testimony.

On October 20, 2008, a Magistrate Judge recommended that the District Court deny the petition without an evidentiary hearing because the ineffective assistance of trial counsel claim was procedurally defaulted and that, even if it was not, Moore could not prevail because he had not satisfied the elements of a claim for ineffective assistance of trial counsel. With respect to Attorney McDermott's effectiveness, the Magistrate Judge noted that there is no constitutional right to counsel in a post-conviction proceeding and, hence, there can be no claim for constitutionally ineffective assistance of PCRA counsel.

5

The Magistrate Judge went on to conclude that Moore failed to demonstrate prejudice as required for his ineffective assistance of counsel claims because factual findings by the Court of Common Pleas — that Jessup was not willing to testify, did not speak with defense counsel, and if called would have given highly prejudicial testimony — were entitled to a presumption of correctness that he had not rebutted. The Magistrate Judge opined that Moore's other grounds for relief were also meritless.

The District Court adopted the Magistrate Judge's Report and Recommendation on March 27, 2009 over Moore's objection. Moore filed a motion for reconsideration and a notice of appeal shortly thereafter. This Court stayed the appeal until the District Court adjudicated the motion for reconsideration. In response to the motion for reconsideration, the District Court corrected an error in the Report and Recommendation with respect to exhaustion — clarifying that Moore had presented his ineffective assistance of trial counsel claim to the PCRA court, but not the Superior Court. Then, on September 24, 2010, this Court issued a certificate of appealability with respect to Moore's claim that his trial counsel rendered ineffective assistance by failing to interview Jessup or to call her as a witness at trial. Thus, that is the sole issue before us in this appeal.

II.

The District Court had jurisdiction over this habeas petition pursuant to 28 U.S.C. § 2254 and we have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Because the District Court ruled on the habeas petition without holding an evidentiary hearing, our review is de novo. Blystone v. Horn, 664 F.3d 397, 416 (3d Cir. 2011).

III.

A.

The District Court held that Moore's ineffective assistance of trial counsel claim was inexcusably procedurally defaulted. On appeal, however, Moore waived the procedural default issue by failing to discuss it in his opening brief, or even his reply brief. Skretvedt v. E.I. DuPont DeNemours, 372 F.3d 193, 202–03 (3d Cir. 2004) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court."). Thus, we need not address it here. Nevertheless, we exercise our discretion to review the District Court's finding of procedural default. See Sweger v. Chesney, 294 F.3d 506, 520 (3d Cir. 2002) ("This Court has ruled that we may, in our discretion, consider whether a claim is procedurally defaulted *sua sponte*."); Szuchon v. Lehman, 273 F.3d 299, 321 & n.13 (3d Cir. 2001) (reaching the procedural default question despite concluding that "the Commonwealth may well have waived its procedural-default defense").

This Court may not grant a petition for a writ of habeas corpus unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "In order for a claim to be exhausted, it must be 'fairly presented' to the state courts 'by invoking one complete round of the State's established appellate review process.'" Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844–45 (1999)). The petitioner must present the claim to the state courts in a recognizable way so that the court is not required to "read beyond a petition" to understand the claim. Baldwin v. Reese, 541 U.S. 27, 32 (2004).

7

The exhaustion requirement "ensures that state courts have an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (quotation marks omitted). Where a petitioner is clearly foreclosed from bringing an unexhausted claim in state court, the claim is procedurally defaulted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001). We review the District Court's finding of procedural default de novo. Fahy v. Horn, 516 F.3d 169, 179 (3d Cir. 2008).

The question of exhaustion in this case is thorny, but we ultimately conclude that the Pennsylvania Superior Court adjudicated Moore's ineffective assistance of trial counsel claim on the merits such that we can review its holding. Technically, Moore failed to exhaust his ineffective assistance of trial counsel claim by failing to request new counsel and raise it on direct appeal. He (and his counsel) compounded that error by failing to plead that claim in his first or his third PCRA petitions. Moore did, however, discuss Jessup's purported testimony at length in his response to the notice by the Court of Common Pleas of its intention to deny his first PCRA petition. In response to Moore's contentions, both the Court of Common Pleas and the Superior Court analyzed and ruled on Moore's ineffective assistance of trial counsel claim when they adjudicated his first PCRA petition. The Court of Common Pleas held that Moore failed to meet the requirements under Pennsylvania law for an ineffective assistance of trial counsel claim. In its opinion on August 27, 2004, the Superior Court agreed, holding that Moore had failed to establish the first prong of his ineffective assistance of PCRA counsel claim because he did not "allege facts which would support a finding that trial counsel was

8

ineffective for failing to call Jessup as a witness." Appendix ("App.") 570. Specifically, he did not allege that Attorney Tinari knew or should have known about Jessup as a potential witness. Nor did he allege that Jessup was prepared to cooperate with the defense or that she would have testified on Moore's behalf. Due to the absence of those allegations, the Superior Court affirmed the denial of his PCRA petition by the Court of Common Pleas. Notably, the Superior Court held that Moore had properly layered his ineffectiveness claim and preserved the issue for its review. On May 24, 2005, the Pennsylvania Supreme Court denied Moore's petition for allowance of appeal.

We conclude that the Superior Court adjudicated Moore's ineffective assistance of trial counsel claim on the merits on August 27, 2004 when it affirmed the denial by the Court of Common Pleas of Moore's PCRA petition. Although Moore did not directly raise his ineffective assistance of trial counsel claim in his first PCRA petition, both the Court of Common Pleas and the Superior Court addressed his claim and assessed whether he had pled sufficient facts to prevail on such a claim. While the Superior Court did not rule on Moore's ineffective assistance of trial counsel claim directly in the usual manner, its decision was based on the substance of that claim.

The Superior Court's disposition of Moore's claim is analogous to the state court's adjudication in Albrecht v. Horn, 485 F.3d 103, 116 (3d Cir. 2007). In Albrecht, we held that the state Supreme Court had adjudicated petitioner's claim for relief on the merits where it addressed the merits "in the context of the prejudice prong of an ineffective assistance of post-conviction counsel claim." Id. The same is true here, where the Superior Court addressed the merits of Moore's claim in the context of the "arguable

9

merit" prong of his ineffective assistance of PCRA counsel claim. App. 569. As the Superior Court explained, in order to move forward on his ineffective assistance of PCRA counsel claim, Moore had to show that he had a meritorious claim for ineffective assistance of trial counsel and he had not done so.

In these circumstances, where the state courts recognized that Moore was making a constitutional argument, overlooked the failure to exhaust, and addressed the merits of his claim, it would be hollow to hold that Moore's claim is nevertheless procedurally defaulted. See, e.g., Hull v. Kyler, 190 F.3d 88, 97 (3d Cir. 1999) ("A petitioner with a defaulted claim may nonetheless raise this claim in federal habeas proceedings if . . . the state has waived (or declined to rely on) the procedural default[.]" (citations omitted)); Walton v. Caspari, 916 F.2d 1352, 1356 (8th Cir. 1990) ("A habeas [p]etitioner need not actually have raised a claim in a state petition in order to satisfy the exhaustion [requirement], if a state court with the authority to make final adjudications actually undertook to decide the claim on its merits in petitioner's case." (quotation marks omitted)); Cooper v. Wainwright, 807 F.2d 881, 886 (11th Cir. 1986) ("One instance in which a federal court may reach the merits of a habeas claim, notwithstanding procedural default, is when the state court ignores the default and decides the merits of the claim."). In this situation, the purpose of the exhaustion doctrine — to give state courts the first word on a claim — has been satisfied. See Cooper, 807 F.2d at 886–87 ("When a state court decides a constitutional question, even though it does not have to, it necessarily holds that the policies underpinning its procedural rule are unworthy of vindication under

10

the particular circumstances of the case before it."). As a result, we conclude that we

may address the merits of Moore's habeas petition.[1]

B.

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act

("AEDPA"), which substantially changed federal habeas corpus law. In particular,

AEDPA created § 2254(d), which provides that:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a difficult to meet and highly deferential standard for

evaluating state-court rulings, which demands that state-court decisions be given the

benefit of the doubt[.]" Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (quotation

marks and citations omitted). "To determine whether a particular decision is contrary to

then-established law, a federal court must consider whether the decision applies a rule

that contradicts [such] law and how the decision confronts [the] set of facts that were

before the state court." Id. at 1399 (quotation marks omitted). "If the state-court decision

identifies the correct governing legal principle in existence at the time, a federal court

---

[1] See also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be
denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies
available in the courts of the State.").

must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case." Id.[2]

In order for § 2254(d) deference to apply, the state court must have adjudicated petitioner's claim on the merits. A state court decision is an "adjudication on the merits" for the purposes of applying the deferential standard of § 2254(d) where it is "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Simmons v. Beard, 590 F.3d 223, 232 (3d Cir. 2009) (quotation marks omitted). Res judicata prevents a party from commencing a second suit based on the same cause of action as a prior lawsuit against that same adversary. Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010). In order for a decision to have res judicata effect, there must be a final judgment on the merits. Id. If a petitioner's claims were not adjudicated on the merits in state court, they do not fall under § 2254(d) and we apply the pre-AEDPA standard of review, "reviewing pure legal questions and mixed questions of law and fact *de novo*." Simmons, 590 F.3d at 231.

In this case, the District Court applied the deferential AEDPA standard set forth in § 2254(d). We review de novo the District Court's legal conclusion as to whether AEDPA deference applies to this petition. Id. In considering whether § 2254(d) applies,

---

[2] In some cases, this Court has indicated that an "'unreasonable application'" of Supreme Court precedent might also be found where "'the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Appel v. Horn, 250 F.3d 203, 209 (3d Cir. 2001) (quoting Williams v. Taylor, 529 U.S. 362, 407 (2000)).

12

we review the "last reasoned decision" of the state courts on the petitioner's claims. Id. at 231–32. As we explained above, the Superior Court's August 27, 2004 assessment of the merits of Moore's ineffective assistance of trial counsel claim was a final decision on the merits that has preclusive effect. As such, it was an adjudication on the merits for the purposes of applying the deferential standard in § 2254(d).[3] We turn, therefore, to consideration of whether Moore is entitled to relief under § 2254(d) and hold that he is not.

First, the Superior Court's adjudication of Moore's ineffective assistance of trial counsel claim did not result in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law[.]" 28 U.S.C. § 2254(d)(1). Under federal law, to succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's performance was deficient, i.e., "counsel's representation fell below an objective standard of reasonableness," and (2) the deficiency prejudiced petitioner, i.e., "there is a reasonable probability that, but for counsel's unprofessional

---

[3] The Superior Court's refusal to grant Moore an evidentiary hearing on his claims does not mean that its decision was not an adjudication on the merits. See Pinholster, 131 S. Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."); Rolan v. Vaughn, 445 F.3d 671, 679 (3d Cir. 2006) ("AEDPA, unlike prior law, has no requirement that the state court hold a hearing or comply with other prerequisites to deference listed in the previous habeas statute.").

Moore argues that the District Court erred in refusing to hold an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). In Cullen v. Pinholster, however, the Supreme Court limited the possibility of an evidentiary hearing in district court to cases where § 2254(d)(1) does not bar federal habeas relief. 131 S. Ct. at 1401. Because we agree with the District Court that Moore is not entitled to relief under § 2254(d), we conclude that an evidentiary hearing was not warranted.

13

errors, the result of the proceeding would have been different." Strickland v.

Washington, 466 U.S. 668, 688 & 694 (1984). "[C]ounsel has a duty to make reasonable

investigations or to make a reasonable decision that makes particular investigations

unnecessary." Id. at 691. "[T]rial counsel [i]s not bound by an inflexible constitutional

command to interview every possible witness. Instead, counsel [i]s simply required to

exercise reasonable professional judgment in deciding whether to interview [a witness]."

Lewis v. Mazurkiewicz, 915 F.2d 106, 113 (3d Cir. 1990).

The Superior Court found that Moore had not pled facts that would satisfy the

Pennsylvania standard for a claim of ineffective assistance of counsel based on failure to

call a witness, which requires a showing

> (1) that the witness existed; (2) that the witness was available; (3) that
> counsel was informed of the existence of the witness or should have known
> of the witness's existence; (4) that the witness was prepared to cooperate
> and would have testified on appellant's behalf; and (5) that the absence of
> the testimony prejudiced appellant.

Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003). While the Superior Court did

not apply the federal Strickland v. Washington test for ineffective assistance of counsel,

the Pennsylvania test is not contrary to the test set forth in Strickland. The five

requirements set forth by the Pennsylvania Supreme Court would necessarily need to be

shown to prevail under Strickland on a claim of this nature. See Rolan, 445 F.3d at 683

(affirming the District Court's grant of writ of habeas corpus in part because the state

court's finding that a witness was unwilling to testify was objectively unreasonable).

Nor would the Superior Court's decision be an unreasonable application of the

Strickland standard because it did not result "in an outcome that cannot reasonably be

14

justified under *Strickland.*" Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). While there is certainly evidence here that Attorney Tinari was deficient for failing to investigate a potentially exculpatory witness, Moore did not meet his burden of showing that Attorney Tinari's error prejudiced his case. In order to show that the absence of a witness prejudiced his or her case, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In considering whether a petitioner suffered prejudice, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" United States v. Gray, 878 F.2d 702, 710–11 (3d Cir. 1989) (quoting Strickland, 466 U.S. at 696).

In his response to the notice by the Court of Common Pleas of its intention to deny his PCRA petition, Moore alleged that Jessup told Attorney McDermott that Lamb told her that he did not remember who was with him during the robbery. That assertion lacks critical information, such as when that conversation took place and the circumstances surrounding the conversation. This bare-bones statement is insufficient to show a reasonable probability that, had Jessup testified, the result of the proceeding would have been different. Moreover, Lamb was extensively cross-examined about his memory of the events on the day of the murder. On cross-examination, Lamb admitted that he had smoked marijuana before meeting Moore and used other drugs on the day of the murder,

15

including angel dust and codeine. He remembered many other details from that day. For instance, he recalled spending time with a number of friends that afternoon, that he carried a gun that he owned for approximately one week or one week-and-a-half, the streets he and Moore had walked down, that he and Moore had had Chinese food for dinner at a store for which they paid about $5 or $6, that Moore left the store because Lamb said something was wrong with his eyes, who the other people in the Chinese food store were, and how many shots were fired during the robbery and in what sequence. With all of this evidence demonstrating Lamb's memory of the day in question, a statement by Lamb at some unknown time to Jessup that he did not remember who was with him does not create a reasonable probability that, had Jessup testified, the result of the proceeding would have been different. Thus, Moore has not convinced us that Attorney Tinari's error prejudiced his case and the Superior Court's decision did not amount to an unreasonable application of the Strickland standard.

We also conclude that the Superior Court's decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. Appel, 250 F.3d at 209.

The Superior Court's finding that Moore did not allege that Attorney Tinari knew or should have known about Jessup as a potential witness is admittedly troublesome. With his answer to the notice by the Court of Common Pleas of its intent to deny the first PCRA petition, Moore submitted a letter that he sent to Attorney Tinari on October 14,

1999 stating: "Im (sic) requesting Lapricia Jessup gets subpoena to testify. She has information that is essential in proving my innocence." App. 970–71. Thus, there was evidence in the state court record at the time the Superior Court ruled on Moore's first PCRA petition that Attorney Tinari knew about Jessup as a potential witness and yet failed to interview her. Despite the Superior Court's questionable conclusion on this fact, the Superior Court's holding was also based on the reasonable determination that Moore had not alleged other, critical facts.

In particular, it was not unreasonable for the Superior Court to find that Moore failed to demonstrate that Jessup would have cooperated with the defense and testified in Moore's favor. Jessup's reluctance to sign an affidavit or to testify at a hearing for Attorney McDermott indicates that she would have refused to testify. More importantly, Moore did not at that time provide the Court with an affidavit from Jessup stating that she was willing to testify or what she would testify about.[4] Thus, we conclude that the Superior Court's holding was supported by a reasonable determination of key facts.

---

[4] Moore later submitted a notarized statement from Jessup stating that she was willing to testify at Moore's trial. Because we hold that § 2254(d) applies, however, we are bound by the United States Supreme Court's holding in Cullen v. Pinholster that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S. Ct. at 1398. Although Moore filed a later PCRA petition, he did not raise Jessup's alleged testimony as grounds for relief in that petition. Thus, the Superior Court's August 27, 2004 decision was the last state decision on that claim and we must consider only the evidence that was before the Superior Court when it issued that ruling. In any event, consideration of Jessup's notarized statement does not alter our conclusion.

17

For these reasons, we hold that Moore is not entitled to relief under § 2254(d) and

we will affirm the District Court's denial of Moore's petition for a writ of habeas corpus.[5]

IV.

For the foregoing reasons, we will affirm the District Court's denial of Moore's

petition for a writ of habeas corpus.

---

[5] Although Moore presents some arguments in his brief regarding the other two
claims in his habeas petition, we did not issue a certificate of appealability with respect to
those claims and, therefore, they are not before us on appeal. We also note that, although
it is not at issue on appeal, Moore's ineffective assistance of PCRA counsel claim is
unavailing, as there is no constitutional right to counsel in a post-conviction proceeding.
In a recent opinion, Martinez v. Ryan, 132 S. Ct. 1309, 1319 (2012), the United States
Supreme Court established a "limited qualification" to its holding in Coleman v.
Thompson, 501 U.S. 722, 752–54 (1991), that an attorney's error in a post-conviction
proceeding does not establish cause to excuse a procedural default. The Court left
standing, however, its long-established principle that there is no right to counsel in post-
conviction collateral proceedings. See id. at 1315; Pennsylvania v. Finley, 481 U.S. 551,
555 (1987); Dunn v. Colleran, 247 F.3d 450, 467 (3d Cir. 2001).

18

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2189

JOHN MOORE,
Appellant

v.

DAVID DIGUGLIELMO; THE DISTRICT
ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:05-cv-02796)
District Judge: Honorable Louis H. Pollak

FILED

JUL 3 1 2012

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 22, 2012

JUDGMENT

This cause came to be considered from the United States District Court for the

District of Delaware and submitted pursuant to Third Circuit L.A.R. 34.1(a) on March 22,

2012. On consideration whereof, it is hereby

ADJUDGED and ORDERED by this Court that the judgment of the District Court

dated March 30, 2009 is hereby affirmed. All of the above in accordance with the

opinion of this Court.

ATTEST:

/s/Marcia M. Waldron
Clerk

Dated: July 19, 2012

Certified as a true copy and issued in lieu
of a formal mandate on Sept. 4, 2012

Teste: Marcia M. Waldron
Clerk, U.S. Court of Appeals for the Third Circuit

IN THE UNITED STATES DISTRICT    COURT OF    PENNSYLVANIA
EASTERN        DIVISION

JOHN MOORE                 :
    PETITIONER          :
                      :
                      :
      V.              :     CIVIL ACTION NO.05-2796
                      :
                      :
                      :
DAVID DIGUGLIELMO, ET AL     :

MOTION TO REOPEN THE JUDGEMENT PURSUANT TO RULE
60(b)(6),(1),(3);     and MARTINEZ V RYAN,
132 S.CT. 1309(2012), McQUIGGIN V. PERKINS, 133
S.CT. 1924(2013); and COX V. HORN, 2014 U.S. APP.
LEXIS 15207

And now comes, John Moore, Pro Se, seeks for the Eastern District Court to
reopen the judgement and grant relief from the order affirming the conviction. This
motion is pursuant to rule 60(b)(6),(1),(3); 60(D), Martinez v. Ryan, 132 S.CT. 1309
(2012), McQiggin v. Perkins, 133 S.CT. 1924 (2013), and Cox v. Horn, 2014 U.S. APP.
LEXIS 15207.

### OVERVIEW:

The Petitioner, John Moore, was convicted of conspiracy to committ second degree
murder. The Commonwealth's key and only witness against Mr. Moore was a **Juvenile**
named, James Lamb, whom was also was charged and testified for a plea agreement
of third degree. Mr. Moore's Trial Counsel was also Direct appeal counsel. Following
dirct appeal Mr. Moore filed a pro se PCRA petition. It should be noted that the pro
se petiton was filed without Mr. Moore having any notes of testimony or transcripts
of any kind. When PCRA counsel was appointed a No-Merit Finley letter was subsequen'
tly filed. Mr. Moore, Then entered the Superior Court and P.A. Supreme Court with a
number of **"layered claims"** where no relief was granted. Mr. Moore filed a Habeas
petition (2254) and along with it a stay and abey petition, because of the need to
exhaust newly/after discovered evidence of a recantation of the **juvenile,** James Lamb

1

and other affidavits. Relief was not granted and the evidence **"caught-up"** with the Habeas Corpus petition with a prayer of being viewed together with the claims. Mr. Moore's habeas petition was denied and a reconsideration was filed, which ultimately was given no relief. Mr. Moore, now present "extraordinary circumstances" and facts that warrant a reopen of the judgement dated **May 20, 2010,** respectively.

**PROCEDURAL FACTS**

On July 7, 1996, a robbery was committed that resulted in the murder of Sammy Cedano.

On August 11, 1996, James Lamb, a 15 year old juvenile was arrested for the murder of Sammy Cedano.

On December 19, 1997, based on a statement given by the juvenile, James Lamb, Mr Moore was arrested and charged as Lamb's accomplice. **NOTE:** The Juvenile's statement was given in **August of 1997,** one year after his initial arrest. Mr. Moore was appointed Nino Tinari to represent him. The Plea of not guilty was entered and the case was subsequently held over for trial. Prior to the commencment of trial, Mr. Moore contacted trial counsel about a witness Lapricia Jessup on two occassions. However, the witness was never called and Petitioner was convicted based soley off of the juvenile, James Lamb's testimony.

On May 10, 2000, Trial counsel, proceeding as direct appeal counsel, filed a direct appeal and additional briefs throughout the direct appeal stage, which ended November 21, 2001. **NOTE:** Trial/direct appeal counsel could not file his own ineffectiveness under Pennsylvania law.

On June 10, 2002, Mr. Moore filed a 1st Pro se PCRA petition. **NOTE:** Moore's PCRA petition was filed without any notes of testimony in his possession, but to preserve the issues, stop the "clock" and toll the time. PCRA Counsel was appointed there after. Rather than presenting Mr. Moore's issues of Trial/direct appeal counsel's ineffectiveness, a No-Merit Finley letter was filed. Mr. Moore was sent a notice to

2

dismiss the PCRA petition and he filed an answer (907 motion). Mr Moore's PCRA was dismissed on December 20, 2002.

On September 8, 2003, Mr. Moore submitted a brief to The Superior Court. The brief contained all "Layered Claims" that is consistant with Pennsylvania Law.

On May 2, 2004, While the Superior court had yet to rule on Mr. Moore's claims, Mr. Moore filed a motion for new trial (PCRA). The motion was based on a recantation affidavit of the juvenile, James Lamb. On September 16, 2004, While Mr. Moore's second PCRA was pending with the lower court, Mr. Moore filed an allocatur. While the allocatur was in the PA. Supreme Court, the movement on Mr. Moore's second PCRA (recantation) had began. Because the allocatur was indeed pending, The PCRA court dismissed the recantation evidence on January 14, 2005. However Mr. Moore was advise to to resubmitt the recantation evidence by the jurist clerk if the allocatur was denied.

On April 12,2005 the Allocatur was denied and Mr. Moore resubmitted the PCRA concerning the recantation. On June 10, 2005 while the PCRA (recantation) was pending with the lower court, Mr. Moore filed a 2254 Habeas Petition with the Federal District Court and asked for a stay and abey so the recantation evidence can be exhausted and catch up with the Habeas Petition. The Stay was granted.

When Mr. Moore revisted the lower courts, attorney Barnaby Wittles was appointed asPCRA counsel (2nd PCRA). On May 2, 2006, an amended Pcra was submitted along with additional affidavits in support of JamesLamb recantation. Those affidavits were of Lapricia Jessup, Brian Scott, herman Brooks. The PCRA court dismissed the petition without a hearing. The Superior Court also denied relief and Pursuant to rule 218, Mr. Moore opted to seek adequate review in the Federal Court and forego allocatur.

On March 3, 2008, when mr. Moore arrived back at the Federal Stage, the District Court Magistrate treated the issues as procedually default. The Habeas Petition was dismissed and Mr. Moore filed a reconsideration. In the answer to Mr. Moore's reconsideration, the Court also held that Mr. Moore's claims were not fairly presented.

3

**ANALYSIS IN SUPPORT OF MOTION TO REOPENJUDGMENT**

Mr. Moore asserts that pursuant to, and in accordance with Fed.R.Civ.P. 60(b), this Honorable Court may alter or amend, or reopen the judgment entered in the instant matter by order dated May 20, 2010.

Indeed, upon review of rule 60(B), it is clear that "On motion and just terms the court may relieve a party or its legal representation from a final judgment, order or proceeding for the following reasons: 1) Mistake, inadvertance, surprise, or excusable neglect; 2). newly discovered evidence that, without reasonable diligence could not have been discovered in time to move for a new trial; 3). fraud, misrepresentation, or misconduct by an opposing party; 4). the judgment is void; 5) the judgment is satisfied, released, or discharged; or 6). any other reason that satisfies relief."

Mr. Moore's instant motion will include claims that warrant relief in accordance with rul 60(b)(1), (3),(6), respectively. Of course this motion is procedurally proper because "after judgment dismissing the complaint is entered, a party may seek to amend the complaint (and there by disturb the judgment) only through Federal rules of Civil Procedure 59(e), 60(B). Burtch v. Millberg Factors, inc, 662 F.3d 212, 230 (3d Cir 2011) quoting Fletcher-Harlee Corp V. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). In other words, after a final judgment has been entered, rule 60(B) provide a window by which a party may seek to reopen the judgment .Therefore, these rules are appropriate in the instant matter.

As an initial matter, Mr. Moore recognizes that a rule 60(B) motion cannot be used to relitigate claims previously litigated or in an effort add new claims to a petition for writ of Habeas Corpus that was previously file. indeed a motion in accordance with rule does not attack

4

a Federal Court's determination on the merits if it "merely asserts that a prior ruling which precluded a merits determination was in error, for example, a denial for such resons as a failure to exhaust state remedies a procedural default, or a statute of limitation bar." Gonzales v. Crosby, 545 U.S. 534, 531-532 (2005). Of course the District Court's determination in the instant matter precluded a merits determination when it held that Mr. Moore did not fairly present the claims, when it misrepresented and omitted facts stated within the affidavits. Moreover, a denieal of this motion under 60(B)(1),(3),(6) will result in a mis-carriage of justice because of Mr. Moore never being able to have his claims adequately adjudicated.

It is clear that the United States Court has long held, and brightly illuminated that "because the writ of Habeas Corpus is the highest safeguard of liberty, any action that would deny the petitioner the protections of the 'great writ' entirely is a particularly serious matter and the Federal rules would be interpreted liberally to avoid such circumstances. Lochar v. Thomas, 116 S.Ct. 1293, 1298-1299 (1996).

The opinions and case citations out lined previously herein support the court's granting of this motion. However, it is true that this Honorable Court must consider the merit of the underlying claims.

**RULE 60(B)(1),(6) - RELIEF**

This court should find merit within this motion to grant relief upon rule 60(B)(1), and (6) in regards to Mr. Moore's claim of **trial counsel's ineffectiveness for failing to investigate, interview, and call a witness.** In the instant matter, The District Court denied Habeas Corpus relief. The Court held, in pertinent part:

> "...In considering this arguement, this Court has discovered and error of fact in Judge Rapaport's R&R. The R&R states that Moore's arguement to the PCRA Court on his first petition "Never raised the issue of trial counsel's ineffectiveness regarding the failure to

5

investigate, interview, and call a witness to testify..."

"...This error does not, however render incorrect Judge
Rapaport's conclustion that Moore did not fairly present this
issue to the State Court. "In order to be exhausted, it must be
fairly presented to the state court by invoking one complete round of
the state's established appellate review process" Petitioner did not do
so; in his brief to the Pennsylvania Superior Court, his claim **is
unambiguously one that PCRA counsel, and not trial counsel, was ineff-
ctive with regards to the handling of jessup, this court will grant
petitioner's motion for reconsideration in part in order to correct
the error of fact, but will not reconsider it's denial and dismissal
of the 2254 petition(**see pg. 6-7 of Court's opinion)

The District Court's determination that the issue had not been

through a complete round of the states appellate review process - thus

having not been fairly presented is a manifest error. Mr. Moore present-

ed the issue in the Superior Court and PA. Supreme Court (See ex:"A").

Furthermore, the District Court's reasoning for this determination -

that Mr. Moore's claim was "unambiguously that PCRA counsel and not tri-

al counsel was ineffective is a suggestion that Mr. Moore is to be pen-

alyzed for following the law of Commonwealth v. Grant, 813 A.2d 726 (PA.

2002), where the Supreme Court held that "A Petitioner should wait to

raise ineffective assistance of counsel until collateral review. Thus

the claim must be a **"layered claim"**.

Of course it is true that the claim in question was that PCRA counsel

was ineffective, but it is inaccutate to say that Mr. Moore did not Layer the claim, or

did not fairly present the claim in one complete round. The layered claim bears extra

importance because trial counsel was also Mr. Moore's direct appeal counsel. Therefore,

Mr. Moore first and only opportunity to present the claim was to rely on PCRA counsel

to do so; and if PCRA counsel does not raise the claim, than PCRA counsel's failures

shall be raised also, hence a "Layered claim".

It is clear, and supported by the record, that the claim at bar was recognized

bythe Superior court as a "Layered Claim", thus pointing ineffectiveness to both

trial/direct appeal; and PCRA counsel. In their opinion the Superior Court held:

6

"Our Supreme Court recently reiterated the governing standard for reviewing a "layer
claim" of ineffectiveness, i.e., an allegation that appellate counsel was
ineffective for failing to raise a claim of trial counsel's ineffectiveness"...
"Appellant has properly layered his ineffectiveness claim in this instance. Trial
counsel also represented Appellant on direct appeal; thus, by challenging Attorney
McDermott's stewardship for failing to raise trial counsel's ineffectiveness,
appellant has preserved this claim for our review" (see ex: "A" pg.6 of the Superior
Court's opinion).

It should be noted that Mr. Moore received a dissenting opinion concerning the
issue of Ms. Jessup. The Superior Court's Justice, Mcewen, P.J.E; in his dissent
stated:

> "It follows, of cours, that I am unable to agree that the trial
> court was correct in permitting appointed counsel to withdraw.
> Thus, on remand I would direct the trial court to appoint new
> counsel. In Commonwealth v. hampton, 718 A.2d 1250 (Pa.Super),
> This Court in an Opinion by our esteemed couleague Judge Justin
> M. Johnson, emphatically stated the rule that "every post-
> conviction litigant is entitled to 'at least one meaningful
> opportunity to have ... issues reviewed, at least in context
> of an ineffectiveness claim..."

> "...In the instant case, appointed counsel neither amended nor
> supplemented the pro se petition of appellant. Nor does the
> record support a conclusion that PCRA counsel "participated
> meaningful" when she failed to seek an evidentiary hearing and
> subpoena witnesses, including the one witness who could have
> supported appellant's defense. I, therefore would reverse the
> order of the trial court, and remand this case for appointment
> of new counsel to assist appellant in this collateral attack.

(see exi "B", Superior Court's Dissenting Opinion)

Mr. Moore contend that the case of Martinez v. Ryan, 132 S.CT. 1309 (2012),
should explicitly assist in the granting of this motion concerning said issue in
light of 60(B)(6), and (1). In Martinez, the United States Supreme Court held:

> "Where, under state law, claims of ineffective assistance of trial counsel
> must be raised in an initial - review collateral proceeding, a procedural
> default will not bar a Federal Habeas Court from hearing a substantial
> claim of ineffective assistanc at trial if, in the initial review
> collateral proceeding, there was no counsel or counsel in that
> proceeding was ineffective"..

> "Inadequate assistance of counsel at initial - review collateral proceeding
> may establish cause for a purpose procedural default or a claim of

7

ineffectiveness assistance of counsel at trial" ID. at 1315

Although M. Moore was not actually procedural defau.lted <u>Martinez v. Ryan</u>, can afford extreme assistance in regards to the layered claim of ineffectiveness. By ultimately viewing Mr. Moore's claim as defaulted, adequate review was denied. The District Court made attempts to address the merits in light of other affidavits and not as to whether the lower Court's adjudiction was "Contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of The United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings".

This case begs review because inorder to get to whether trial counsel's competenc rendered him ineffective for not calling the witness at Mr. Moore's trial an examination of the PCRA counsel's actions must be in order. This examination must first be held by the state Court. Because PCRA counsel filed a no - merit finley letter, the state's examination falls upon whether the no - meritt letter should be adopted, thus whether or not Mr. Moore's claim had merit. Thus, whether the state court's properly handled the Constitutional claims.

Relief is warranted pusuant to 60(B)(1), because this court claims that Mr. Moore did not fairly present the claim is a **mistake, and or inadvertance of not carefully viewing the record.**

## THE DISTRICT COURT'S INADEQUATE REVIEW OF THE ISSUE

The District Court improperly dismissed the claim as procedural default because Mr. Moore Layered the claim, which in it of itself shows inadequate review. However The District **Court took two other positions** concerning this specific issue: 1). That the Magistrate's R&R in regards to the Finley Letter was not in error. 2). And that the juvenile, Lamb's recantation renders Ms. Jessup's affidavit incredible.

Mr. Moore has explained lack of merit of the reliance of the Finley letter herein previously pages. However The District Court's view of Mr. Moore's

8

affidavits are inadequat and deserves clearity in order for the court to view them in light of the Constitutional injustice that occured surrounding Mr. Moore's trial and conviction. Thus, in addition to Martinez, supra "extraordinary circumstances are now presented as this motion also relates to Cox v. Horn.

In Cox, The Third Circuit explained  . their multifactor approach to rule 60(b) (6) motions include those built upon a post judgement change in law, that takes into account all the particulars of movants case. However, the court identified with the fact that their had been no discussion as to what those  extraordinary circumstances would--or could be to warrant relief in the context of Martinez. Thus, Mr. Moore put forth factors narrowly tailored to his case; and to assist the the court in determining the "exraordinary circumstances" on case by case analysis.

## EXTRAORDINARY CIRCUMSTANCES

To begin, Mr. Moore calls attention to the Juvenile case of Miller v. Alabama, 567 U.S __, 132 S.CT.__ 2012 U.S. LEXIS 4873. Mr. Moore was not a juvenile at the time of his trial. However, the prosecutor's chief and only witness, James Lamb was. The Miller, case is presented herein because of the reasoning withing The United States Opinion  that specifically points to the **scientific facts that ajuve**nile **lacks maturity, has an underdeveloped sense of responsiblity leading to recklessness impulsive, and heedless risk taking.** The Miller Court explains that their is a eigth amendmant constitutional violation that extend to criminal procedural laws that fail to take a defendants youthfulness into account. The Court labled such procedures as flawed. Mr. Moore avers that, such considerations and safeguards that extend to a juvenile as a defendant also extend as a witness. see, Medina v. Diguglielmo, 461 F.3d 417 (3d Cir. 2006). Thus such treatment of a juvenile should in fact, be unconstitutional when a defendant is convicted from a juvenile testimony.

Mr. Moore was convicted based on the sole testimony of a Juvenile, James Lamb who could not read. No other witnesses were presented against Mr. Moore. Upon a plea

9

agreement for third degree, The Juvenile, Lamb, Testified that from early in the morning - up until minutes before the crime - he consumed a combination of **Marijuana, Xanax, Codine, PCP - also known as "Angel Dust", and Alcohol.** His testimony contued to state that Mr. Moore shot the deceased in the head with a revolver (See ex: **"c"**). This testimony bears on the juvenile's mental capacity because according to the Medical Examiner's report (stipulated upon), the deceased died from a gunshot wound to the back (see ex: **"b"**). This conscious shocking testimony is exactly what the Court itself has called **"incontrovertible physical facts"**. In Ernest v. Motor Sales, Inc, the court held that: ("incontovertible physical facts" are those which would make a different version of the accident literally impossible".... "Testimony must be rejected if it conflicts with physical facts "soclearly established that they can not be erroneous"). For example, if a vehicle is damaged only on the front right side, a party cannot contend that the car was hit only in the rear. "The actual damage to the car would constitute an "incontrovertible physical fact".

In the instant case, If the Medical examiner's report is to be held as true, than the Juvenile's testimony begs an inquiry into the mental capacity given the trial testimony. In addition to the Juvenile's trial testimony, what hightens the inquiry of mental capacity is his Preliminary hearing testimony as well. At Mr. Moore's Preliminary hearing, the juvenile, Lamb, was asked when was he arrested for the crime in question. Lamb responded by saying:

> The Court: When were you arrested, do you know?
> The witness: I think August 12.
> The Court: Of '97?
> The Witness: No, April 12, '96.

By Mr. Tinari:

Q.      '96?

A.      Yes.

Q.      This incident occurred in July of '96, are you aware of that?

A.      What happened?

Explain it to me.

10

(see ex: "E", Pg. 25-26 Prel. Hrg. notes)

Following Mr. Moore's conviction, Mr.Moore received an affidavit of recantation from the juvenile, Lamb. In his recantation he states that During his initial encounter with the detectives he told the detectives that it was a friend from the neighborhood named "Newton" with him when he committed the robbery murder; and that Mr. Moore was not his true accomplice, but the detectives kept pointed to Mr. Moore photograph and threatened to make sure that he went on death row if he didn't say Mr. Moore was his accomplice.

Mr. Moore submitted Lamb's recantation affidavit along with three other affidavits - those affidavits are of Lapricia Jessup, Herman Brooks, and Brain Scott; all of which supports Lamb's recantation and points to Mr. Moore's innocence. However, the Court's treatment of Lamb's affidavit was that it does not warrant relief of a hearing or new trial because Ms. Jessup's affidavit contradicts Lamb's affidavit.

Ms. Jessup's affidavit states that approximately a week after Lamb's arrest he told her that he did not remember who was with him during the crime. The Court ironically held Ms. Jessup's affidavit credible only to discredit Lamb's affidavit. and not credible enough to warrant a hearing concerning trial counsels ineffectiveness explained herein. The **irony** goes further when Ms. Jessup's affidavit is not held credible in order to give Lamb's trial testimony credibility. Mr. Moore avers that if either of the Affidavits were to be viewed as credible than a hearing or new trial was in order. The Court conveniently viewed them as both credible and incredible to deny Mr.Moore relief.

## McQUIGGIN V. PERKINS _ - ACTUAL INNOCENCE

The innocence of Mr. Moore is not only apparent if viewing the fact that no wtnesses were presented against Mr. Moore except the juvenile, Lamb who testimony was not only replete with inconsistancies and conscious shocking, but who has since recanted stating that Mr. Moore was not at all his accomplice.

The other affidavits in support of the juvenil, Lamb's recantation are from Lapricia Jessup, who affidavit states that approximately a week after his arrest he told her that he did not remember who was with him during the robbery crime. Herman Brooks, who affidavit states that when he and Lamb was in the Youth Study Center, Lamb told him that he was locked up for "that body that 'Newton' did" on 9th street. (Newton was mention in the preliminary hearing as someone who was present around the time of the crime) see (ex: "F" prel. hrg. notes pg. 45); and Brain Scott, who affidavit states that Lamb told him that he was going to lie on Mr. Moore to get a deal.

The Court's view of these affidavits was that none of them offers Mr. Moore any lattitude toward a new trial or even a hearing. The court held:

"....The affidavit by Scott, Brooks, and Lamb - which variously state that it was someone named "Newton" who really assisted Lamb with the crimes for which Moore was convicted and that Lamb was lying on moore to get a better deal, cannot explain away the fact that Lamb could have received the same deal for his testimony against whoever helped him committt the crimes at issue. The Jessup affidavit is also of no help to Moore on this score, because it contradicts the brooks and Lamb affidavits in stating that Lamb told Jessup he did not remember who helped him committt the crimes".

The Court continues stating:

"....The petitioner also argues that the PCRA court should have held an evidentiary hearing and should not have dismissed his actual innocence claim. The arguements, however, were dismissed because allegations of due process violations occuring during state collateral review proceedings are not cognizable on Habeas review"

This Court, in viewing the Affidavits in light of whether Lamb's recantation was totaly inadequate because the Court, either **mistakingly or inadvertantly**

**12**

omitted a key factor within the Juvenile, Lamb's affidavit. The court never dealt with the fact that Lamb states that he was coerced into stating that Mr. Moore was his accomplice. Given the fact that Lamb was a juvenile this aspect of his recantation is significant in assessing the other affidavits. Without considering Lamb's entire affidavit, the view of the others becomes obscured.

Our sister circuit has recently decided the case of Gordon v. Braxton, No. 137070 2015, BL 56012 4th Cir. March 3, 2015. There, the petitioner presented an affidavit in the state court. The state Court purported to have resolved critical factual disputes by only focusing on one line of the petitioner's affidavit. However, the Gordon Court held that the state court failed to consider all the allegations in the filings of the petitioner, thereby did not adjudicate the merits of a classic credibility contest. It held that the decision was based on a "materially incomplete record".

Mr. Moore avers that the principle of law adopted by our sister circuit in Gordon, is the law put forth in 2254(d) of habeas Corpus. If a Federal Court is to hold a state court to such fairness than indeed, a Federal Court itself should apply the same view. The District Court has not done so in the instant case.

Instead, The District court misrepresented the affidavit of Brian Scott and thereby - in view of The juvenile, Lamb's affidavit - held Mr. Moore to present a requirement of relief outside of the stated relief of Habeas Corpus 2254. The Court read Mr. Scott's affidavit to say "Lamb told Scott that he was going to lie on Mr. Moore to get a better deal". This account of Mr. Scott's affidavit is misrepresented. Mr. Moore request the Court to take judicial notice that Mr. Scott's affidavit states: "Lamb told Scott that he was going to lie on Mr. Moore 'to get a deal'".

On the surface it may appear to be no difference, however the operative phrase is "better deal" compared to "a deal". The phrase better deal changes the dynamic

13

of the view. it leads a person to belief that the juvenile, Lamb knew of a deal other than the deal he received for his testimony against Mr. Moore. These facts are extraordinary when in light of the Court's "Better deal" view, Mr. Moore was expected to "explain away the fact that Lamb could have received the same deal for his testimony against whoever committed the crimes." Mr. Moore asserts that explaining away whether or not the juvenile would have received a deal is not a criteria for a petitioner to present in seeking Habeas Corpus relief. Furthermore, had the Court would acknowledge that the recantation affidavit states that the detectives coerced him into stating th t Mr. Moore was his accomplice. When considering Lamb's entire affidavit, the Court's expectation of explaining away would not have been place on Mr. Moore.

The Court's Misrepresentation of Brian Scotts affidavit is a clear showing of the inadequate viewing of Mr. Moore's Habeas Petioion. Because of the misrepresentation, relief is warranted pursuant to **rule 60(B)(3).** Also, in context of rule **60(B)(6),** a showing of actual innocence pursuant to McQuiggin, Id. may assist in overcoming a procedural default. Mr. Moore does not actually have a default issue because the record itself may correct the Court's findings. However, even if for a strange occurrence that the record is somehow not carefully examined (as was Mr. Moore's prior result with his filings), a claim of actual innocence may serve as a gateway.

**PREJUDICE**

In considering this motion in regards to the application of the rules 60(B)(1), (3), and (6); the Court must consider the Contitutional violations in light of a man who by law is presumed innocent until proven guilty. Thus the Actions taken by the prosecutor and Mr. Moore's trial counsel can be viewed in the best manner of whether any wrong was committed. All of the collateral proceeding arguement are those that stem from whether Mr. Moore received a fair trial. The

**14**

view of whether a fair trial was given has been hiding under the collateral _
procedural **"Cloak"** That a PCRA Counsel is often allowed to wear as a shield to
protect the wrong doings at trial level. But for the reasons stated within this _
petition Mr. Moore would have received a fair trial and The Courts would not have
a Miscarriage of justice situation before them in the instant matter. A close
analysis of the overall pciture will baffle a legal mind as to what fairness has
been afforded to a presumed innocent person who in hauled into Court based on a
juvenile's statement and the juvenile shows signs of some kind of mental impairment
as to what actually occured and when he himself was arrested for the incident. And
this "presumed innocent" person does not have the chance to have a witness to
testify on his behalf inspite of a witness ready and willing to do so. Instead,
no defense is presented on his behalf and the right to cross examine the Medical
Examiner is denied by trial counsel's stipulation to the cause of death. Where
is the justice in a prosecutor presenting the tesimony of a juvenilt who outright
lies about the cause of death and the prosecutor is allowed not to correct it. Or
having the very same juvenile recant and with other supporting affidavits still
get denied an evidentiary hearing. To date no one have ever had the chance to
testify or Mr. Moore's behalf - hence the "Cloak" that PCRA counsel wears.
conclusion

    **The rules of 60(B)(6),(3),(1);**               HAS been layed out. wherfore
Mr. Moore request that this Court grant relief. The public interest also supports
this much. see Valero Terrestrial Corp. v. Page, **211 F.3d 112,** 121 (4th Cir. 2000)
("public interest" is relevant factor under rule 60(B)(6). And the public interest
clearly protects the Constitutional rights in any case. see Council of
Alternative political parties V. Hooks, 121 F.3d 876, 889 (3rd Cir. 1997)

**V E R I F I C A T I O N     S T A T E M E N T**

I, John Moore, the Petitioner, do hereby verify that the facts set forth in the
attached filing are true and correct to the best of my knowledge, information or
belief, and that any false statements therein are made subject to the penalties
under 28 U.S.C. § 1746, relating to unsworn falsification to authorities.

Respecfully Submitted,

John Moore

DATE: MAY 20, 2015

**16**

# CERTIFICATE OF SERVICE

I, John Moore, The petitioner do hereby certify that I served a true and correct copy of the foregoing document on the  below listed individuals via U.S. first Class Mail on this 20th  day of May 2015 in accordance with 28 U.S.C.A. §1746.


.   (original and 3 copies

Clerk of Court
United States DisTRicT CouRT
EASTERN DivisioN
601 Market Street
Philadelphia, Pa. 19106-1790

District Attorney's office
Three South Penn Square
Philadelphia, Pa. 19107-3499


John Moore
/John Moore

DATE: May 20, 2015

17

John Moore #DD9444
P.O. Box 244
Waterford, Pa 16146



Clerk of Court for The
United States District Court
601 Market Street   Eastern Division
Philadelphia Pa 19106

CERTIFIED MAIL™

7012 1640 0000 1501 2442

7012 1640 0000 1501 2442

U.S.M.S.
X-RAY

PA DEPARTMENT OF CORRECTIONS
INMATE MAIL

Master
05/21/2015
US POSTAGE $009.50º
ZIP 19426
011D11802070

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MOORE, | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. 05-2796 |
| | : | |
| v. | : | |
| | : | |
| DAVID GIGUGLIELMO, THE DISTRICT | : | |
| ATTORNEY OF THE COUNTY OF | : | |
| PHILADELPHIA, and THE ATTORNEY | : | |
| GENERAL OF THE STATE OF | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Respondents. | : | |

## ORDER

**AND NOW**, this 5th day of June, 2015, the Honorable Petrese B. Tucker having

transferred this matter from the late Honorable Louis H. Pollak to the undersigned on June 3,

2015 (Doc. No. 83), and after considering the petitioner's motion to reopen the judgment, and

accompanying exhibit (Doc. Nos. 81-82), it is hereby **ORDERED** as follows:

1. The motion (Doc. No. 82) is construed as an unauthorized second or successive

habeas corpus petition under 28 U.S.C. § 2254 and is **DISMISSED** for lack of subject-matter

jurisdiction;[1] and

2. A certificate of appealability **SHALL NOT** issue.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] The petitioner, John Moore, filed the instant motion to reopen the judgment pursuant to, in part, Rule 60 on June 1, 2015. *See* Mot. to Reopen the J. Pursuant to Rule 60(b)(6), (1), (3); and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013); and *Cox v. Horn*, 2014 U.S. App. Lexis 15207 ("Mot. to Reopen"), Doc. No. 82. The pertinent procedural history of this matter leading to the filing of the instant motion has been

recounted in *Moore v. DiGuglielmo*, 489 F. App'x 618 (3d Cir. 2012). As to that motion, the court concludes that it is actually a second or successive § 2254 petition and, consequently, that the court lacks jurisdiction to entertain it because the petitioner has not obtained the necessary authorization under 28 U.S.C. § 2244.

A Rule 60(b) motion should be treated as a second or successive habeas petition when the motion seeks "to add a new ground for relief" or when it "attacks the federal court's previous resolution of a claim *on the merits*." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005) (emphasis in original) (citation and footnote omitted). A Rule 60(b) motion is properly brought as such if, however, it "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.* (footnote omitted). When a petitioner asserts that a "previous ruling which precluded a merits determination was in error," such as a denial for procedural default, he or she is not making a habeas corpus claim and may therefore resort to a Rule 60(b) motion. *Id.* n.4.

Here, the petitioner bases his motion primarily on the idea that Judge Pollak denied him a merits review of his ineffective assistance of counsel claim revolving around the failure to properly investigate a potential witness, namely Lapricia Jessup, because the claim was procedurally defaulted. *See* Mot. to Reopen at 4-8. In turn, the petitioner asserts that the court has authority to consider the Rule 60(b) motion under *Gonzalez*. *See id.* at 4-5. Unfortunately for the petitioner, and as described by the Third Circuit in *Moore*, Judge Pollak adopted a Report and Recommendation that recommended a denial of the petition because "the ineffective assistance of trial counsel claim was procedurally defaulted *and that, even if it was not*, Moore could not prevail because he had not satisfied the elements of a claim for ineffective assistance of trial counsel." *Moore v. DiGuglielmo*, 489 F. App'x 618, 621 (3d Cir. 2012) (emphasis added). Indeed, *Moore* itself passed upon the merits of the claim. *See id.* at 624-27; *see also United States v. Zaragoza-Santa Cruz*, 584 F. App'x 739, 739-40 (9th Cir. 2014) (finding a Rule 60(b) motion to be an unauthorized second or successive habeas petition where the district court denied the petition as untimely and, in the alternative, on the merits). As a result, the court lacks jurisdiction to reconsider the merits of this claim absent authorization from the Third Circuit. The balance of the motion either advances new grounds for relief or attempts to relitigate previous merits determinations. The court similarly lacks power to consider these arguments.

Although the court recognizes the availability of 28 U.S.C. § 1631, the court declines to transfer this matter to the Third Circuit as such a transfer would not be in the interest of justice. Critically, the instant motion reveals no grounds for relief under 28 U.S.C. § 2244.

As a final matter, the court also declines to issue a certificate of appealability as jurists of reason would not find it debatable that the instant motion constitutes an unauthorized second or successive petition. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MOORE, | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. 05-2796 |
| | : | |
| v. | : | |
| | : | |
| DAVID GIGUGLIELMO, THE DISTRICT | : | |
| ATTORNEY OF THE COUNTY OF | : | |
| PHILADELPHIA, and THE ATTORNEY | : | |
| GENERAL OF THE STATE OF | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Respondents. | : | |

## ORDER

**AND NOW**, this 18th day of June, 2015, after considering the motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) filed by the petitioner (Doc. No. 85), it is hereby **ORDERED** as follows:

1.    To the extent that the motion (Doc. No. 85) is construed as an unauthorized second or successive habeas corpus petition under 28 U.S.C. § 2254, it is **DISMISSED** for lack of subject-matter jurisdiction and a certificate of appealability **SHALL NOT** issue; and

2.    To the extent that the motion (Doc. No. 85) is construed as a true Rule 59(e) motion, it is **DENIED**.[1]

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] After the court denied his previous motion to reopen the judgment pursuant to, in part, Federal Rule of Civil Procedure 60(b), the petitioner filed the instant Rule 59(e) motion. *See* Mot. for Recons., Doc. No. 85. In this motion, the petitioner seeks reconsideration of the court's prior ruling with respect to the Rule 60(b) motion. *See id.*

at 1. Given the appearance of a circuit split "as to whether a Rule 59(e) motion should . . . be treated as a second or successive [petition]," the court views the instant motion under two lenses, namely a jurisdictional lens and a merits lens. *United States v. Rising*, No. 11-CR-00117-WYD, 2015 WL 3457725, at *2 (D. Colo. May 29, 2015) (footnote omitted). Unfortunately for the petitioner, neither one warrants relief from the court's prior ruling. Due to the nature of Third Circuit precedent, with which the following discussion begins, the court first addresses the merits and then moves to jurisdiction.

As to the first lens, the Third Circuit has held that "a timely Rule 59(e) motion to amend or alter a judgment is not a second or successive petition, whether or not it advances a claim, and therefore such a motion lies outside the reach of the jurisdictional limitations that AEDPA imposes upon multiple collateral attacks." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). To the extent that this statement is broad enough to allow the court to exercise jurisdiction over the instant motion, the court begins the merits review by noting that "[t]he scope of a motion for reconsideration . . . is extremely limited." *Id.* "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citation omitted).

Here, the petitioner has not satisfied any of the grounds necessary to obtain Rule 59(e) relief. In large part, the instant motion rehashes arguments previously presented in the Rule 60(b) motion. *See* Mot. for Recons. at 3-6. For the sake of completeness, the court notes that some of those arguments have even been previously presented to, and rejected by, the Third Circuit in considering the petitioner's prior application to file a second or successive petition. *In re: John Moore*, No. 13-2794. The instant motion, to the extent that the court must consider its merits, is therefore denied.

On the other hand, and with respect to the second lens, it appears that *Blystone* allows for the possibility that the merits of the instant motion may not be presently before this court. In footnote twelve, the Third Circuit explained away two cases as unhelpful "because they each concerned Rule 59(e) motions to reconsider the dismissal of Rule 60(b) motions that the district court had determined to be second or successive petitions requiring court of appeals permission." *Blystone*, 664 F.3d at 415 n.12. That, though, is precisely the situation facing this court with respect to the instant motion.

Concerning this situation, the Tenth Circuit has held that "the portion of [a] Rule 59(e) motion that raise[s] substantive arguments in support of a second § 2255 claim is itself a second § 2255 motion." *United States v. Pedraza*, 466 F.3d 932, 934 (10th Cir. 2006). Although that case involved a section 2255 motion, there is no reason why its holding would not apply with equal force to a section 2254 petition. To the extent, then, that the instant motion, as with the Rule 60(b) motion itself, is best viewed as a second or successive section 2254 petition because it seeks to either raise new habeas claims or to relitigate the merits of old ones, the court must dismiss it for want of subject-matter jurisdiction because the petitioner failed to obtain authorization from the Third Circuit. And for the reasons previously stated in the court's June 5, 2015 order, to the extent that they are applicable, the court both declines to transfer this matter to the Third Circuit and to issue a certificate of appealability. *See* Order, Doc. No. 84.

DLD-095                                          December 30, 2015
**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

C.A. No. **15-2633**

JOHN MOORE, Appellant

v.

SUPERINTENDENT GRATERFORD SCI; et al.

(E.D. Pa. Civ. No. 2-05-cv-02796)

*FILED*

*FEB 05 2016*

*MICHAEL E. KUNZ, Clerk*
*By_____ Deputy*

Present:    CHAGARES, GREENAWAY, JR. and SLOVITER, Circuit Judges

Submitted is Appellant's application for a certificate of appealability
pursuant to 28 U.S.C. § 2253(c)

in the above-captioned case.

Respectfully,

Clerk

MMW/CAC/tmm

_____ORDER_____

Appellant's request for a certificate of appealability is denied. Jurists of reason
would not debate the District Court's conclusion that he was not entitled to reopening
under Rule 60(b) of the Federal Rules of Civil Procedure. See Slack v. McDaniel, 529
U.S. 473, 484-85 (2000); Gonzalez v. Crosby, 545 U.S. 524, 530-31 (2005). To the
extent that Appellant challenged his underlying convictions, the District Court correctly
construed his claims as unauthorized claims arising under 28 U.S.C. § 2254. See
Gonzalez v. Crosby, 545 U.S. 524, 531 (2005) (explaining that a purported Rule 60(b)
motion that contends that a change in substantive law justifies relief is in substance a
successive habeas petition). Because this Court previously rejected Appellant's request
to raise these claims in a successive petition pursuant to 28 U.S.C. § 2254, the District
Court did not err in declining to transfer the motion here to be construed as another

application pursuant to 28 U.S.C. § 2244. See 28 U.S.C. § 1631. To the extent Appellant's challenge to the District Court's procedural default determination was proper under Rule 60(b), it was meritless.

By the Court,

s/ Joseph A. Greenaway, Jr.
Circuit Judge

Dated: February 5, 2016

A True Copy:

Marcia M. Waldron

Marcia M. Waldron, Clerk
Certified order issued in lieu of mandate.